Exhibit A


CT Corporation

**Service of Process Transmittal**
07/27/2018
CT Log Number 533774099

TO: ███████████████

RE: **Process Served in Washington**

FOR: Transworld Systems Inc. ████████████

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ESTHER HOFFMAN, ET AL., PLTFS. vs. TRANSWORLD SYSTEMS INCORPORATED, ET AL., DFTS.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | SUMMONS, AMENDED CLASS COMPLAINT, EXHIBIT(S) |
| **COURT/AGENCY:** | King County Superior Court, WA<br>Case # 18215483SEA |
| **NATURE OF ACTION:** | VIOLATIONS OF TILE FAIR DEBT COLLECTION PRACTICES ACT |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Olympia, WA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/27/2018 at 14:18 |
| **JURISDICTION SERVED :** | Washington |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after the service of this Summons, excluding the day of service (Document may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Sam Leonard<br>LEONARD LAW<br>1001 4th Ave, Suite 3200<br>Seattle, WA 98154<br>206-486-1176 |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780101084750<br><br>Image SOP<br><br>Email Notification, ████████████████<br><br>Email Notification, ████████████████ |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | CT Corporation System<br>711 Capitol Way S.<br>Suite 204<br>Olympia, WA 98501<br>602-277-4792 |

Page 1 of  1 / AV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

The Honorable Catherine Moore

1

2

3

4

5

6

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
7              IN AND FOR KING COUNTY

8  ESTHER HOFFMAN; SARAH DOUGLASS;
   ANTHONY KIM; and IL KIM and DARIA
9  KIM, husband and wife and the marital          NO.  18-2-15483-9 SEA
   community comprised thereof, on behalf of
10 themselves and on behalf of others similarly   **SUMMONS FOR**
   situated,                                      **AMENDED COMPLAINT**
11

12                    Plaintiffs,

13      vs.

14 TRANSWORLD SYSTEMS
   INCORPORATED; PATENAUDE AND
15 FELIX, A.P.C.; MATTHEW CHEUNG, and the
   marital community comprised of MATTHEW
16 CHEUNG and JANE DOE CHEUNG; and
   DOES ONE THROUGH TEN,
17

18                    Defendants.

19 TO THE DEFENDANTS:

20      A lawsuit has been started against you in the above-entitled Court by Plaintiffs Esther

21 Hoffman, Sarah Douglass, Anthony Kim, Il Kim, and Daria Kim. The Plaintiffs' claims are

22 stated in the written Amended Complaint, a copy of which is served on you with this

23

24 Summons.

25      In order to defend against this lawsuit, you must respond to the Complaint by stating

26 your defense in writing, and by serving a copy upon the person signing this Summons within

27
   SUMMONS FOR                              Leonard Law
   AMENDED COMPLAINT - 1                    1001 4th Ave, Suite 3200
                                            Seattle, Washington 98126
                                            Phone: 206-486-1176
                                            Fax: 206-458-6028

1    20 days after the service of this Summons, excluding the day of service, or a default judgment

2    may be entered against you without notice. A default judgment is one where the Plaintiffs are

3    entitled to what they request because you have not responded. If you serve a notice of

4    appearance on the undersigned person, you are entitled to notice before a default judgment may

5    be entered.

6
          You may demand that the Plaintiffs file this lawsuit with the Court.  If you do so, the
7
     demand must be in writing and must be served upon the person signing this Summons. Within
8
     14 days after you serve the demand, the Plaintiffs must file this lawsuit with the Court, or the
9

10   service on you of this Summons and Amended Complaint will be void.

11        If you wish to seek the advice of an attorney in this matter, you should do so promptly

12   so that your written response, if any, may be served on time.

13        This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

14   State of Washington.

15
          DATED this 26th day of July, 2018
16

17   ***Attorneys for Plaintiffs***:

18   LEONARD LAW                              BERRY & BECKETT, PLLP

19    */s/ Sam Leonard*                        */s/ Guy Beckett*
     Sam Leonard, WSBA #46498                 Guy W. Beckett, WSBA #14939
20   1001 4th Ave, Suite 3200                 1708 Bellevue Avenue
     Seattle, Washington 98154               Seattle, WA 98122
21   Telephone:  (206) 486-1176              Telephone:  (206) 441-5444
     Facsimile:  (206) 458-6028              Facsimile:    (206) 838-6346
22   E-mail: sam@seattledebtdefense.com       E-mail: gbeckett@beckettlaw.com
23

24   (signatures continued on page 3)

25

26

27
     SUMMONS FOR                                         Leonard Law
     AMENDED COMPLAINT - 2                        1001 4th Ave, Suite 3200
                                                  Seattle, Washington 98126
                                                    Phone: 206-486-1176
                                                     Fax: 206-458-6028

1   HENRY & DeGRAAF, P.S.                     NORTHWEST CONSUMER LAW CENTER

2    */s/ Christina Henry*
     Christina L. Henry, WSBA #31273          */s/ Amanda Martin*
3    150 Nickerson St., Ste. 311              Amanda Martin, WSBA #49581
     Seattle, WA 98109                        214 East Galer St., Ste. 100
4    Telephone: (206) 330-0595                Seattle, WA 98102
     Facsimile:  (206) 400-7609               Telephone: (206) 805-0989
5    E-mail: chenry@HDM-legal.com             Facsimile:  (206) 805-1716
                                              E-mail: Amanda@NWCLC.org
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

SUMMONS FOR
AMENDED COMPLAINT - 3

The Honorable Catherine Moore

1

2

3

4

5

6

7

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

8

ESTHER HOFFMAN; SARAH DOUGLASS;
ANTHONY KIM; and IL KIM and DARIA
KIM, husband and wife and the marital
community comprised thereof, on behalf of
themselves and on behalf of others similarly
situated,

                        Plaintiffs,

        vs.

TRANSWORLD SYSTEMS
INCORPORATED; PATENAUDE AND
FELIX, A.P.C.; MATTHEW CHEUNG, and the
marital community comprised of MATTHEW
CHEUNG and JANE DOE CHEUNG; and
DOES ONE THROUGH TEN,

                        Defendants.

NO. 18-2-15483-9 SEA

**AMENDED CLASS COMPLAINT FOR
INJUNCTIVE RELIEF AND
DAMAGES FOR VIOLATIONS OF
THE FAIR DEBT COLLECTION
PRACTICES ACT, THE
WASHINGTON COLLECTION
AGENCY ACT AND THE
WASHINGTON CONSUMER
PROTECTION ACT**

## I. INTRODUCTION

Plaintiffs are Washington consumers from whom Defendants Transworld Systems
Incorporated ("TSI"), Patenaude and Felix, A.P.C. ("P&F"), and Attorney Matthew Cheung
("Cheung"), collected or attempted to collect payment for alleged student loan debt, interest
and charges using affidavits signed by TSI employees (hereinafter collectively referred to as
"the Affidavits"). The Affidavits were used by the Defendants to obtain default judgments and

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 1

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

orders of summary judgment in Washington's Superior Courts. The Affidavits were false and misleading, leading the Consumer Financial Protection Bureau ("CFPB") to issue a Consent Order in *In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018 (Sept. 18, 2017). Pursuant to the Consent Order, the terms of which were stipulated to by TSI,[1] TSI agreed to cease all collection on alleged National Collegiate Master Student Loan Trust, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-4 (hereinafter the National Collegiate Student Loan Trusts will be referred to collectively as "NCSLTs") accounts until such time that it can prove it is entitled to collect on the alleged debts. Since entry of the Consent Order on September 18, 2017, Defendants, in violation of the Consent Order, have continued to attempt to collect on alleged NCSLTs accounts in Washington State without submitting proper proof that they are entitled to collect on the alleged debts.

Defendants' collection practices and the use of false and misleading statements made

---

[1] TSI consented to the issuance of the Consent Order by the CFPB without admitting or denying any of the findings of fact or conclusions of law, except as necessary to establish the CFPB's jurisdiction over TSI and the subject matter of the Consent Order. *See In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018, at 2 (available online at: http://s3amazonaws.com/files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_stipulation.pdf.)

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 2

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1     under oath to obtain judgments are willful violations of law. Plaintiffs seek to enjoin

2     Defendants' unlawful collection practices, to vacate any unlawful judgments entered against

3     Plaintiffs and the Class, and to recover damages to which Plaintiffs and the Class are entitled.

4                              **II. JURISDICTION AND VENUE**

5          1.     Defendants are within the jurisdiction of this Court. TSI is a Washington

6     licensed debt collector operating a collection business in Washington under UBI 600-169-996.

7
8     P&F is a Washington licensed debt collector operating a collection business in Washington

9     under UBI #602-953-078. Cheung does business in Washington by collecting or attempting to

10     collect debts from debtors who TSI alleges owe a debt on an NCSLT account. Cheung is also a

11     resident of Washington. Therefore, Defendants have obtained the benefits of the laws of

12     Washington, Cheung is a resident, and Defendants are subject to the jurisdiction of this Court.

13          2.     Venue is proper in King County Superior Court because many of the acts and

14     transactions occurred, and all Defendants transact business, in King County, Washington.

15
16                                  **III. PARTIES**

17          3.     Plaintiff Esther Hoffman ("Esther" or "Ms. Hoffman") is a person residing in

18     King County, Washington who is a "consumer" as that term is defined by 15 U.S.C.

19     § 1692a(3), and a "debtor" as defined in RCW 19.16.100(7).

20          4.     Plaintiff Sarah Douglass ("Ms. Douglass") is a person residing in King County,

21     Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a

22
23     "debtor" as defined in RCW 19.16.100(7).

24          5.     Plaintiff Anthony Kim is a person residing in Snohomish County, Washington

25     who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as defined

26     in RCW 19.16.100(7).

27     AMENDED CLASS COMPLAINT FOR INJUNCTIVE             Leonard Law
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR     1001 4th Ave, Suite 3200
DEBT COLLECTION PRACTICES ACT, THE           Seattle, Washington 98126
WASHINGTON COLLECTION AGENCY ACT AND THE       Phone: 206-486-1176
WASHINGTON CONSUMER PROTECTION ACT - 3          Fax: 206-458-6028

6.      Plaintiff Daria Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as defined in RCW 19.16.100(7).

7.      Plaintiff Il Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as defined in RCW 19.16.100(7).

8.      The NCSLTs, who are not Defendants herein, are fifteen separate Delaware statutory trusts which allegedly own student loan obligations purchased from banks or other financial institutions. The NCSLTs do not function with any employees, and the actions of the NCSLTs, whether through litigation or otherwise, are carried out by third parties. Since 2012, U.S. Bank has held the role of Successor Special Servicer to the NCSLTs and is responsible for collection activities for past-due and defaulted student loans. U.S. Bank uses special sub-servicers to conduct collections and oversee law firms that file collection lawsuits.

9.      TSI is a successor to NCO Financial Systems, Inc. (hereinafter "NCO"), which is located at 507 Prudential Road, Horsham, Pennsylvania 19044.

10.     NCO and TSI are related entities. *See United States v Expert Global Solutions, Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., NCO Financial Systems Inc., ALW Sourcing, LLC, Transworld Systems, Inc.*, 3:13cv2611 (N.D. Tex.).

11.     Among the debts that NCO collected and that TSI now collect are private student loan obligations allegedly owed to a large number of NCSLT trusts.

12.     Defendant TSI has been a successor sub-servicer to the successor special servicer of the NCSLTs since November 1, 2014. Since that time, TSI has been responsible for collecting on defaulted loans alleged to be in the NCSLTs. TSI also oversees various law firms

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 4

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1   that file collection lawsuits against debtors whose loans are allegedly included in the NCSLTs.

2   TSI oversees collection efforts against Washington consumers and oversees lawsuits filed in

3   Washington courts.

4       13.    Defendant TSI is incorporated under the laws of the State of California and

5   maintains a principal place of business in Fort Washington, Pennsylvania.

6       14.    TSI is a Washington licensed debt collection agency that operates in

7
8   Washington, collecting debts allegedly owed on student loans that are pooled into the NCSLTs.

9       15.    TSI is directly or indirectly engaged in soliciting claims for collection, or

10   collecting or attempting to collect claims owed or due or asserted to be owed or asserted to be

11   due to another person.

12       16.    TSI is a "collection agency" as defined in Washington's Collection Agency Act,

13   RCW 19.16., *et seq.* ("WCAA").

14       17.    TSI's activities in Washington are governed by the WCAA.

15
16       18.    P&F is a collection agency that also operates as a law firm.

17       19.    P&F sends collection letters to Washington consumers who allegedly have loans

18   included in the NCSLTs.

19       20.    P&F collects money from consumers and communicates with consumers prior to

20   filing suit.

21       21.    P&F is a licensed Washington collection agency whose activities in Washington

22
23   are governed by the WCAA.

24       22.    P&F is directly or indirectly engaged in soliciting claims for collection, or

25   collecting or attempting to collect claims owed or due or asserted to be owed or asserted to be

26   due to another person.

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 5

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

23. P&F is engaged in a business, the principal purpose of which is the collection of debts, and regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

24. P&F is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). P&F is a "collection agency" as that term is defined in the WCAA. P&F is a "person" as that term is defined in the Washington Consumer Protection Act, RCW 19.86, *et seq.* ("WCPA") and engages in "trade" and "commerce" as those terms are defined in the WCPA.

25. P&F regularly uses the telephone in its attempts to collect debts.

26. P&F uses the instrumentalities of interstate commerce and the United States Postal Service ("mail") in its business.

27. P&F uses the "mail" in its attempts to collect debts.

28. Cheung is an attorney licensed to practice law in Washington. All actions taken by Cheung alleged herein were taken for his personal benefit, and for the benefit of his marital community.

29. In Washington, Cheung collects and attempts to collect debts referred to him by TSI and the NCSLTs, and he is engaged in a business in which he regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

30. Cheung is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

31. When P&F and Cheung collect or attempt to collect debts referred to them by NCO, TSI and the NCSLTs, they act as the NCSLTs' agents.

32. On information and belief, P&F is one of the firms in the TSI/NCO Attorney Network, and was hired to collect the debts described herein as such.

33. On information and belief, Plaintiffs allege that TSI knows the collection

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 6

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1  methods and procedures that P&F and Cheung use, that it has the right to control P&F's and

2  Cheung's collection activities, and that it exercises that right as it deems necessary.

3      34.    Plaintiffs are ignorant of the true names and capacities, whether individual,

4  corporate, or otherwise, of defendants sued herein as Does One through Ten. Plaintiffs will

5  seek leave to amend this complaint when the true names and capacities of said defendants are

6  ascertained. Plaintiffs allege on information and belief that each Defendant herein is acting in

7  concert with, and is the agent and/or employee of, each other Defendant. Plaintiffs also allege

8  on information and belief that the interests of all Defendants have been so unified that their

9  

10  separate personalities no longer exist and that if the acts of the corporate Defendants are treated

11  as those of the corporation alone, an inequitable result will follow.

12                          **IV. FACTS**

13    **A. Plaintiff Esther Hoffman.**

14      35.    In 2004, Esther took out a student loan with Bank of America in the amount of

15  $6,000.00.

16  

17      36.    Esther's mother, Pat Hoffman (hereinafter "Pat"), agreed at the time the loan

18  was taken out that she would make the payments on the student loan.

19      37.    Pat failed to make those payments.

20      38.    Nine years later, Esther found out that her mother was served with a summons

21  and complaint naming Esther as a defendant in an action brought by National Collegiate

22  Student Loan Trust 2004-2 (hereinafter referred to individually as "NCSLT 2004-2"). Esther

23  had not heard of NCSLT 2004-2, or P&F and Mr. Cheung who were listed as counsel for

24  

25  NCSLT 2004-2 in the complaint. Esther began making small payments to P&F because she

26  could not afford to defend herself in court.

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 7

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    39.    Due to a serious physical injury, Esther became unable to continue making the

2  agreed monthly payments.

3    40.    On June 8, 2016, P&F filed with the Snohomish County Superior Court the

4  summons and complaint it had served on Esther's mother.

5    41.    On August 25, 2016, NCSLT 2004-2, through P&F, filed a Motion and

6  Declaration for Default and Judgment signed by Cheung. The proposed Order of Default and

7  Default Judgment, which was granted, included an award of $833.66 in interest and $337.50 in

8

9  costs.

10    42.    In support of the Motion and Declaration for Default and Judgment, Defendants

11  filed the "Affidavit and Verification of Account" of Dudley Turner ("Turner"), a TSI

12  employee.

13    43.    In Turner's affidavit, he declared "under penalty of perjury under the laws of the

14  forum" that:

15

16    a.  He was "competent and authorized to testify relating to this action through

17        personal knowledge of the business records, including the electronic data, sent

18        to TSI that detail the education loan records"; and

19    b.  He had "personal knowledge of the record management practices and

20        procedures of [NCSLT 2004-2] and the practices and procedures [NCSLT 2004-

21        2] requires of its loan servicers and other agents."

22    44.    Attached to Turner's affidavit was a "Pool Supplement" (hereinafter "2004-2

23  Pool Supplement") pulled from the Securities and Exchange Commission's ("SEC") online

24  archives, "EDGAR." The Pool Supplement states,

25

26        In consideration of the Minimum Purchase Price set forth in Schedule 1

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE                        Leonard Law
    RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR         1001 4th Ave, Suite 3200
    DEBT COLLECTION PRACTICES ACT, THE                    Seattle, Washington 98126
    WASHINGTON COLLECTION AGENCY ACT AND THE                 Phone: 206-486-1176
    WASHINGTON CONSUMER PROTECTION ACT - 8                    Fax: 206-458-6028

attached hereto, [First Marblehead Corporation and Bank of America, N.A.] hereby sells, sets over and assigns to the National Collegiate Funding LLC [...] each student loan set forth on the attached Schedule 2....

[National Collegiate Funding LLC] in turn will sell the Transferred Bank of America Loans to the [NCSLT 2004-2].

45.     Attached to the 2004-2 Pool Supplement was a document titled "Schedule 2" (hereinafter "2004-2 Schedule 2"). It did not contain a list of loans. It stated: "On file with the Indenture Trustee."

46.     Also attached to the Turner Affidavit was a document titled "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2004-2" (hereinafter "2004-2 Sale Agreement.")

47.     The Sale Agreement 2004-2 is between The National Collegiate Funding LLC as seller and NCSLT 2004-2 as purchaser. It states that "[2004-2] Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto...." Schedules A and B are attached to the Sale Agreement, and they give descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers. Schedule 2 is not attached to Schedule A or B.

48.     Neither the 2004-2 Pool Supplement nor the 2004-2 Sale Agreement are mentioned in Turner's affidavit.

49.     On information and belief, none of the defendants know the location of the 2004-2 Schedule 2.

50.     On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2004-2 Schedule 2, and they are aware that it is lost.

AMENDED CLASS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, THE WASHINGTON COLLECTION AGENCY ACT AND THE WASHINGTON CONSUMER PROTECTION ACT - 9

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

51.     NCSLT 2004-2, through P&F, filed Applications for Writs of Garnishment seeking to collect on the Hoffman judgment on November 29, 2016; February 10, 2017; March 21, 2017; May 23, 2017; August 1, 2017; and September 29, 2017. All were signed by Cheung, and all sought amounts in addition to the principal balance of the judgment.

52.     On October 5, 2017, Ms. Hoffman's attorney, Sam Leonard, sent Cheung a letter demanding that he cease all collection efforts against Ms. Hoffman, vacate the judgment against her and dismiss the action with prejudice. The letter explained that TSI had entered into a Consent Order with the Consumer Financial Protection Bureau ("CFPB") whereby it agreed that it would cease collection on loans allegedly owned by NCSLT in which it used a TSI employee declaration like Turners, because the CFPB found many of them to be not truthful. A copy of the Consent Order was attached to Sam Leonard's letter.

53.     Over two weeks later, Esther received a letter in the mail from P&F signed by Cheung dated October 20, 2017 that included copies of a Writ of Garnishment and Application for Writ of Garnishment to Umpqua Bank.

**B. Plaintiff Sarah Douglass.**

54.     Plaintiff Sarah Douglass ("Sarah") is a King County resident.

55.     In 2005, Sarah took out a student loan with Bank of America in the amount of $2,000.00.

56.     In 2006, Sarah took out a student loan with Bank of America in the amount of $2,500.00.

57.     Over ten years later, Sarah found out that National Collegiate Student Loan Trust 2006-3 (hereinafter referred to individually as "NCSLT 2006-3") had filed two separate lawsuits against her and had obtained default judgments against her in each case without first

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 10

1  properly serving her with copies of the summonses and complaints. Sarah found out about the

2  default judgments after receiving copies in the mail from P&F and Cheung in June 2017.

3      58.    On April 24, 2017, P&F filed the summons and complaint in both cases with the

4  King County, Washington, Superior Court.

5      59.    On April 25, 2017, NCSLT 2006-3, through P&F, filed Motions and

6  Declarations for Default and Judgment signed by Cheung. In King County Superior Court Case

7  No. 17-2-10604-6, the proposed Order of Default and Default Judgment, which was entered by

8  the Court, included an award of $233.83 in interest and $395.80 in costs. In King County

9  Superior Court Case No. 17-2-10605-4, the proposed Order of Default and Default Judgment,

10  which was entered by the Court, included an award of $165.10 in interest and $395.80 in costs.

11

12      60.    In support of the Motions and Declarations for Default and Judgment,

13  Defendants filed the "Affidavit and Verification of Account" of Brian Jackson ("Jackson").

14      61.    In Jackson's affidavit, he declared "under penalty of perjury under the laws of

15  the forum" that:

16

17          a.  He was "competent and authorized to testify regarding this educational loan

18              through personal knowledge of the business records maintained by TSI as

19              custodian of records, including the electronic data provided to TSI related to

20              Defendant's educational loan, and the business records attached to this

21              Affidavit...."

22      62.    Attached to Jackson's affidavit was a "Pool Supplement" (hereinafter "2006-3

23  Pool Supplement") pulled from the SEC's EDGAR online archives. The Pool Supplement

24  states,

25

26          In consideration of the Minimum Purchase Price set forth below, [First

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 11

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

Marblehead Corporation and Bank of America, N.A.] hereby transfers, sells, sets over, and assigns to The National Collegiate Funding LLC [...] each student loan set forth on the attached Schedule 1....

[National Collegiate Funding LLC] in turn will sell the Transferred Bank of America Loans to the [NCSLT 2006-3].

63.     Attached to the Jackson Affidavit was a document titled "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2006-3" (hereinafter "2006-3 Sale Agreement.")

64.     The Sale Agreement 2006-3 is between The National Collegiate Funding LLC as seller and NCSLT 2006-3 as purchaser. It states that "[2006-3] Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto...." Schedules A and B are attached to the Sale Agreement and they give descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers. Schedule 2 is not attached to Schedule A or B.

65.     Neither the 2006-3 Pool Supplement nor the 2006-3 Sale Agreement are mentioned in Jackson's affidavit.

66.     On information and belief, none of the defendants know the location of the 2006-3 Schedule 2.

67.     On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2006-3 Schedule 2, and they are aware that it is lost.

68.     On November 3, 2017, Sarah's attorney, Amanda N. Martin, filed a Motion to Set Aside Default Order and Judgment based on the improper service. The Motion states that the CFPB filed a complaint against Defendants NCSLTs and that TSI entered into the Consent

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 12

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    Order with the CFPB. A copy of the Motion with the Consent Order was served on NCSLT

2    2006-3, P&F, and Cheung.

3        69.    On November 17, 2017, the King County Superior Court entered an order

4    vacating the default orders and judgments entered in both cases.

5        70.    On March 20, 2017, an Order Dismissing Case was entered in Case No. 17-2-

6    10605-4 upon NCSLT 2006-3's Motion to Dismiss.

7
        71.    Case No. 17-2-10604-6 is still pending.
8

9        **C. Plaintiffs Anthony Kim, Il Kim, and Daria Kim.**

10       72.    From 2005 to 2007, while enrolled in the business program at St. John's

11   University in New York City, Anthony Kim ("Anthony") took out a number of federal and

12   private student loans, including a total of six student loans from Bank One (which later merged

13   with JP Morgan Chase Bank) and Bank of America in the amount of $76,500.00.

14
        73.    Anthony graduated from St. John's in 2008.
15

16       74.    On January 23, 2015, Daria Kim ("Daria,") Anthony's mother, was served with

17   a summons for a case filed by P&F on behalf of National Collegiate Student Loan Trust 2005-2

18   (Snohomish County Superior Court Case No. 15-2-04465-4) against Anthony Kim and Il Kim

19   ("Il"), Anthony's father and Daria's husband. Daria immediately informed her husband and son

20   about the summons when she received it.

21       75.    Daria Kim has declared under penalty of perjury that she did not receive any

22   summonses related to the lawsuits initiated by the Defendants against the Kims individually or
23
     collectively (Snohomish County Superior Court Case No's. 15-2-03144-7, 15-2-03146-3, 15-2-
24
25   04014-4, 15-2-04015-2, and 15-2-04016-1), despite the Defendants' claims to the contrary, and

26   that she would have given all of the documents to her son if she had received any other

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE
     RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
     DEBT COLLECTION PRACTICES ACT, THE
     WASHINGTON COLLECTION AGENCY ACT AND THE
     WASHINGTON CONSUMER PROTECTION ACT - 13

1  summonses.

2        76.     On January 31, 2015, Anthony Kim responded to the suit for which his mother

3  had been served by filing a Pro Se Notice of Appearance in Snohomish County Superior Court

4  Case No. 15-2-04465-4, and delivering a copy thereof to Defendants P&F and Cheung.

5        77.     In June 2015, Anthony received notification that P&F had initiated a

6  garnishment of his bank account on behalf of National Collegiate Student Loan Trusts 2005-2,

7  2005-3, 2006-1, and 2007-4. Although the Kims had been working with P&F on Snohomish

8  County Superior Court Case No. 15-2-04465-4 in good faith for half a year, it was only at this

9  time that Anthony and his parents learned of the existence of the four other lawsuits that P&F

10  had filed against them, and of the fact that P&F had obtained default judgments against them

11  individually and collectively for each student loan without first properly serving any of them

12  with copies of the summonses and complaints for the cases.

13        78.     In support of their Motions and Declarations for Default and Judgment,

14  Defendants filed five separate "Affidavit and Verification of Account" documents sworn to by

15  Dudley Turner.

16        79.     In these affidavits, Turner declares "under penalty of perjury under the laws of

17  the forum" that:

18        a.  He was "competent and authorized to testify relating to this action through

19            personal knowledge of the business records, including the electronic data, sent

20            to TSI that detail the education loan records"; and

21        b.  He had "personal knowledge of the record management practices and

22            procedures of [the NCSLTs] and the practices and procedures [the NCSLTs]

23            requires of its loan servicers and other agents."

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 14

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

80.    Attached to Turner's affidavits for Snohomish County Superior Case No's. 15-2-04015-2 and 15-2-040161 were documents titled "Pool Supplement," which purport to document the transfer of student loans from Bank One to NCSLT Trusts 2006-1 and 2005-3, respectively, pulled from the SEC's EDGAR online archives. Both Pool Supplements state,

> In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to the National Collegiate Funding, LLC (the "Depositor") ... each student loan set forth on the amended Schedule.... The Depositor in turn will sell the Transferred Bank One Loans to the National Collegiate Student Loan Trust ....

81.    The Pool Supplements included attachments titled "Schedule 2" and "Schedule 1," respectively. They did not contain lists of loans. They both state: "On file with the Indenture Trustee."

82.    For the other cases, Snohomish County Superior Court Case No.'s 15-2-03144-7, 15-2-03146-3, and 15-2-04014-4, the affidavits contained pool supplements for Bank One that were sold to the respective NCLST Trusts 2005-2 and 2007-4. Those pool supplements all contained references to "Schedules" for related loans, but no schedules were attached.

83.    Also attached to each of the Turner affidavits was a document titled "Deposit and Sale Agreement" for the relevant NCSLT trust (hereinafter the "Deposit and Sale Agreements").

84.    The Deposit and Sale Agreements set forth the terms under which the Seller was selling and the Purchaser was purchasing the student loans listed on the relevant numeric schedule (variously Schedule 1, Schedule 2, Schedule 3, or combinations thereof) as set forth in Schedule A of the Deposit and Sale Agreement. For each Deposit and Sale Agreement, Schedule A gave descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers.

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 15

85.    Neither the Pool Supplements nor the Deposit Sale Agreements are mentioned in Turner's affidavits.

86.    On information and belief, none of the defendants know the location of the relevant Schedules 1 and 2 that are referred to in the Pool Supplements.

87.    On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed any of the Schedules and they are aware that they are lost.

**D.  NCSLTs Collection History.**

88.    On information and belief, P&F and Cheung have been suing Washington consumers in Washington's courts on behalf of the NCSLTs since at least 2006.

89.    P&F, Cheung, and the NCSLTs have obtained hundreds of judgments against Washington consumers in Washington courts.

90.    In November 2014, TSI became the sub-servicer of the NCSLTs' accounts.

91.    On information and belief, since November 1, 2014, Defendants initiated over 37,698 collection lawsuits across the nation on behalf of the NCSLTs. Many of those lawsuits were initiated in Washington against Washington consumers.

92.    TSI, P&F, and Cheung acted as servicer providers to the NCSLTs and acted as agents of the NCSLTs.

93.    TSI, P&F, and Cheung only collected on those accounts believed to be in default.

94.    After November 2014, Defendants filed numerous motions for default and motions for summary judgment that included affidavits and/or declarations from TSI employees made under penalty of perjury (hereinafter "TSI Affidavits.")

95.    On information and belief, the TSI affiants in the TSI Affidavits falsely stated

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 16

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1  under penalty of perjury:

2          a.      They had personal knowledge of the educational loan records evidencing

3  the alleged student loan debt;

4          b.      They were authorized and competent to testify about the alleged student

5  loan debt through review of and "personal knowledge" of the business records, including

6  electronic data in their possession; and

7          c.      They had "personal knowledge of the record management practices and

8
9  procedures of the NCSLTs and the practices and procedures the NCSLTs requires of its loan

10 servicers and other agents."

11      96.      On information and belief, in some instances, the affiants claimed in the TSI

12 Affidavits to have reviewed the chain of title records as business records regarding the relevant

13 account, when in fact they had only reviewed the online records of the Securities and Exchange

14 Commission, which did not include the schedule of the individual accounts assigned to the

15
16 NCSLTs.

17      97.      On information and belief, Defendants, at the time of filing suit and at the time

18 of filing motions for default against Washington consumers, did not have in their possession

19 the schedule of loans sold to them by the original creditor and knew they did not have this

20 information in their possession.

21      98.      On information and belief, Defendants filed lawsuits against Washington

22
23 consumers without the intent or ability to prove the claims if contested.

24      99.      On information and belief, Defendants filed affidavits in Washington courts

25 attached to motions for default and motions for summary judgment that were notarized by

26 Defendants despite the notaries not having witnessed the affiants signing the affidavits.

27 AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 17

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    100.    Defendant Cheung was told numerous times by at least one King County

2    Superior Court judge that affidavits submitted by the NCSLTs along with motions for summary

3    judgment and motions for default to prove assignment of accounts were not sufficient to prove

4    the NCSLTs were the real party in interest on the specific loans that the NCSLTs sued upon.

5    Despite being told by the judge that the affidavits submitted were insufficient proof of

6    assignment, Cheung continued to file the same form affidavits with the same information as

7    those the court deemed unacceptable.

8

9    **E. Consumer Financial Protection Bureau's TSI Consent Order.**

10    101.    The CFPB investigated the debt collections litigation practices of the attorney

11    network business unit of TSI.

12    102.    Through its investigation, the CFPB identified violations of the federal

13    Consumer Financial Protection Act of 2010 ("CFPA"), and TSI and the CFPB stipulated to the

14    entry of a Consent Order that was filed on September 18, 2017 (hereinafter the "Consent

15    Order"), in the administrative proceeding *In the Matter of Transworld Systems, Inc.*, 2017-

16    CFPB-0018.

17

18    103.    The Consent Order is attached hereto as Exhibit A, and is incorporated herein by

19    this reference.

20    104.    The Consent Order made numerous findings of fact. *See* Consent Order pgs. 5-9,

21    ¶¶ 4-29.

22    105.    Under the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), covered persons are

23

24    prohibited from engaging "in any unfair, deceptive, or abusive act or practice" in violation of

25    the CFPA.

26    106.    An act or practice is deceptive under the CFPA if it involves a material

27    AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 18

1  representation or omission that misleads, or is likely to mislead, a consumer acting reasonably

2  under the circumstances.

3     107.   Pursuant to 12 U.S.C. § 5531(c)(1), an act or practice is unfair if "(A) the act or

4  practice causes or is likely to cause substantial injury to consumers which is not reasonably

5  avoidable by consumers; and (B) such substantial injury is not outweighed by countervailing

6  benefits to consumers or competition."

7     108.   The CFPB found, through its investigation, that the TSI Affidavits violated the

8

9  CFPA:

10        33. In numerous instances, in connection with collecting or attempting to
           collect Debt from Consumers, [TSI] executed [TSI] Affidavits that were used by

11        Law Firms with many of the Collections Lawsuits filed by Law Firms on behalf
           of the [NCSLTs] in courts across the country, and in live testimony, [TSI]

12        represented, directly or indirectly, expressly or by implication, that:

13        a. Affiants had personal knowledge of the account records and the Debt;

14
           b. Affiants had personal knowledge of the chain of assignment records
15        evidencing [NCSLT] ownership of the subject loan; and

16        c. Affiants had personal knowledge of the record management practices
           and procedures of the [NCSLTs] and all prior servicers.
17

18        34. In fact, ... , in numerous instances, these representations were either
           false or the Affiant did not have a basis for making the representation.
19

20        35. The representations are material because they are likely to affect a
           Consumer's choice or conduct regarding how to respond to a Collections
21        Lawsuit and are likely to mislead a Consumer acting reasonably under the
           circumstances.
22

23        36. Thus, representations by Respondent, as described in Paragraphs 18-
           24, constitute deceptive acts or practices in violation of sections 1031(a) and
24        1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

25  Consent Order pgs. 10-11, ¶¶ 33-36.

26     109.   The CFPB found, through its investigation, violations of the CFPA relating to

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
    RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
    DEBT COLLECTION PRACTICES ACT, THE
    WASHINGTON COLLECTION AGENCY ACT AND THE
    WASHINGTON CONSUMER PROTECTION ACT - 19

TSI and its attorney network's other litigation practices:

37. In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, [TSI], acting through the Law Firms hired by [TSI] on behalf of the [NCSLTs], represented, directly or indirectly, expressly or by implication, that it could be proven in the Collections Lawsuits that the [NCSLTs] owned the loans in question and that the Consumers in question owed Debts to the [NCSLTs], if contested.

38. In fact, in numerous instances, [TSI] lacked the complete chain of assignment documentation needed to prove [NCSLT] ownership of the subject loans and the promissory note needed to prove the existence of certain loans.

39. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

40. Thus, [TSI]'s representations, as described in [the facts section of the Consent Order], constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

41. In addition, [TSI]'s acts and practices, caused or were likely to cause substantial injuries to consumers.

42. The injuries to consumers included, but were not limited to, all payments made, including garnishments of wages and bank accounts, to settle Debts not enforceable.

43. The injuries to consumers were not reasonably avoidable by consumers and were not outweighed by any countervailing benefits to consumers or to competition.

44. Thus, Respondent's conduct, as described in [the fact section of the Consent Order], constitutes unfair acts or practices in violation of sections 1031(c) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

Consent Order pgs. 11-12, ¶¶ 37-44.

110.    TSI stipulated to the issuance of the Consent Order in a Stipulation and Consent to the Issuance of a Consent Order (hereinafter the "TSI Stipulation") filed in *In the Matter of: Transworld Systems, Inc.*, 2017-CFBP-0018, Dkt. #2.

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 20

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

111.    A copy of the TSI Stipulation is attached hereto as Exhibit B, and is incorporated herein by this reference.

112.    TSI agreed to the issuance of the Consent Order and admits in the TSI Stipulation to "the facts necessary to establish the [CFPB]'s jurisdiction over [TSI] and the subject matter of the [Consent Order]." TSI Stipulation pg. 2, ¶ 2.

113.    TSI agreed in the Consent Order "that the facts described in Section V of the Consent Order will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding before the [CFPB] to enforce the Consent Order, or in any subsequent civil litigation by the [CFPB] to enforce the Consent Order...." TSI Stipulation pg. 2, ¶ 6.

114.    Through the TSI Stipulation, TSI waived any "right to challenge or contest the validity of the Consent Order." TSI Stipulation pg. 3-4, ¶ 9.

115.    It is a violation of the Consent Order for:

        a.      TSI or any agent, service provider or attorneys that have notice of the Consent Order to cause law firms hired by TSI on behalf of the NCSLTs "to collect any Debt through Collection Lawsuits that [TSI] or its agents have any reason to believe may be unenforceable." Consent Order pgs. 14-15, ¶ 45.k.

        b.      TSI, P&F, or Cheung to continue pending NCSLT lawsuits in which a false TSI Affidavit was filed after receiving notice of the Consent Order until TSI, P&F, or Cheung provides the court with a copy of the Consent Order and submits a notice to the court stating "Plaintiff withdraws the affidavit of [name of affiant] pursuant to Consent Order entered into by the Consumer Financial Protection Bureau and Transworld Systems, Inc."

        c.      TSI, P&F, and Cheung to continue garnishment, or fail to quash or withdraw a pending garnishment, in any case in which the NCSLTs obtained a judgment where

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 21

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    a TSI Affidavit with misrepresentations was filed.

2         d.    TSI, P&F, and Cheung to accept any settlement payments relating to any

3    such collection lawsuits in which a TSI Affidavit with misrepresentations was filed.

4    **F. NCSLTs Agreed to a Consent Judgment with the CFPB Whereby They Would**
     **Cease Litigation and All Collection Until They Verified They Had**
5    **Documentation Proving The Right to Collect on Accounts.**

6         116.   On September 18, 2017, the same day the Consent Order was filed, the CFPB

7
     filed a civil action for injunctive relief against the NCSLTs in the United State District Court
8
9    for the District of Delaware. *Consumer Financial Protection Bureau v. The National Collegiate*

10   *Master Student Loan Trust et al.*, Cs. No. 17-cv-01323-GMS (D. Del Sep. 18, 2017)

11   (hereinafter the "CFPB Trust Action").

12        117.   The NCSLTs and the CFPB reached an agreement to enter a Consent Judgment
13
     in the CFPB Trust Action (hereinafter the "Trust Consent Judgment").
14
          118.   A copy of the Trust Consent Judgment is attached hereto as Exhibit C, and is
15
16   incorporated herein by this reference.

17        119.   The Trust Consent Judgment include the following findings of fact:

18        a.    "Since at least November 1, 2012, in order to collect on defaulted private

19   student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state

20   courts across the country."

21        b.    "In support of these lawsuits, Subservicers on behalf of Defendants
22
     executed and filed affidavits that falsely claimed personal knowledge of the account records
23
24   and the consumer's debt, and in in many cases, personal knowledge of the chain of assignments

25   establishing ownership of the loans."

26        c.    "[NCSLT]s' Servicers on behalf of [NCSLTs] filed more than 2,000 debt

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE          Leonard Law
     RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR   1001 4th Ave, Suite 3200
     DEBT COLLECTION PRACTICES ACT, THE              Seattle, Washington 98126
     WASHINGTON COLLECTION.AGENCY ACT AND THE        Phone: 206-486-1176
     WASHINGTON CONSUMER PROTECTION ACT - 22         Fax: 206-458-6028

1   collections lawsuits without the documentation necessary to prove [a NCSLT's] ownership of

2   the loans or on debt that was time-barred."

3       d.    "Notaries for [NCSLT]s' Servicers notarized over 25,000 affidavits even

4   though they did not witness the affiants' signatures."

5       e.    Entry of the "Order is in the public interest."

6       120.    NCSLTs waived any rights to seek judicial review or otherwise challenge or

7   contest the validity of this Order.

8

9       121.    NCSLTs also agreed to provide to all NCSLTs servicers copies of the Trust

10   Consent Judgment within 30 days of the Trust Consent Judgment being entered on the Docket

11   of the CFPB Trust Action.

12       122.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of

13   the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on

14   the NCSLTs' behalf cease initiation of collection lawsuits to collect on accounts unless:

15

16       a.    They possessed a record of the complete chain of assignment from the

17   original creditor to the specific trust claiming ownership;

18       b.    They possessed a signed copy of the student loan contract;

19       c.    The statute of limitations on enforcement of the loan has not expired; and

20       d.    They have no reason to believe the debt may be unenforceable.

21       123.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of

22   the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on

23   the NCSLTs' behalf dismiss all pending collection lawsuit to collect on accounts unless:

24

25       a.    They possessed a record of the complete chain of assignment from the

26   original creditor to the specific trust claiming ownership;

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 23

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

b. They possessed a signed copy of the student loan contract;

c. The statute of limitations on enforcement of the loan has not expired; and

d. They have no reason to believe the debt may be unenforceable.

124. Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on the NCSLTs' behalf cease enforcement of any judgment obtained in a collection lawsuit to collect on accounts unless:

a. They possessed a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

b. They possessed a signed copy of the student loan contract;

c. The statute of limitations on enforcement of the loan has not expired; and

d. They have no reason to believe the debt may be unenforceable.

125. The NCSLTs, their servicers, and the law firms representing the NCSLTs would also be barred under the Trust Consent Judgment from filing any false affidavits, and would be required to withdraw any affidavits they determined were false or were notarized when the notary had not witnessed the signing of the affidavit.

126. As of the date of the filing of this Class Complaint, the Trust Consent Judgment has not been entered and multiple entities have sought to intervene in the CFPB Trust Action. Included in the list of intervenors is TSI, which received and reviewed the proposed Trust Consent Judgment.

G. TSI and Attorney Networks.

127. TSI manages an Attorney Network that utilizes outside law firms to collect on defaulted private student loans.

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 24

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

128.    On information and belief, the collection attorneys filing collection cases, including Defendant P&F, are part of TSI's Attorney Networks, and the alleged debts of Plaintiffs were handled through the "Attorney Network."

129.    Network firms are expressly informed that they are required to follow Network Attorney Standard Operating Procedures.

**H. Defendant's Current Collection Actions In Washington.**

130.    Since entry of the TSI Consent Order on September 18, 2017, Defendants have continued filing collection lawsuits in Washington on accounts they allege are owned by the NCSLTs.

131.    Since entry of the TSI Consent Order on September 18, 2017, Defendants have not voluntarily dismissed all NCSLT collection actions in Washington in which they have not verified that: (1) they have a record of the complete chain of assignment; (2) they have a copy of the signed student loan agreement; (3) the action was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized.

132.    Since entry of the TSI Consent Order on September 18, 2017, Defendants have continued to seek to enforce judgments obtained in NCSLTs suits when they have not verified that: (1) they have a record of the complete chain of assignment; (2) they have a copy of the signed student loan agreement; (3) the action was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized.

**V. CLASS ALLEGATIONS**

133.    **Class Definition.** Pursuant to CR 23(b)(2) and 23(b)(3), Plaintiffs bring this case as a class action on behalf of the following "Class," who are

All persons residing in Washington against whom Defendants

AMENDED CLASS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, THE WASHINGTON COLLECTION AGENCY ACT AND THE WASHINGTON CONSUMER PROTECTION ACT - 25

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    sought to collect on an alleged NCSLT loan debt, on or after four
     years prior to the filing of this action,

2    and four Subclasses thereof, defined as:

3
4        **Litigation FDCPA Subclass**: All persons in the Class against
         whom Defendants maintained a lawsuit in Washington, on or
5        after one year prior to the filing of this action.

6        **CPA Judgment Subclass**: All persons in the Class against
         whom Defendants obtained a judgment in any Washington Court
7        where a NCSLT was a Plaintiff and the judgment was obtained
         using a declaration of a TSI employee.
8
9        **FDCPA Judgment Subclass**: All persons in the Class against
         whom Defendants obtained a judgment in any court in
10       Washington where a NCSLT was a Plaintiff and the judgment
         was obtained using a declaration of a TSI employee, on or after
11       one year prior to the filing of this action.

12       **Post CFPB Consent Order Subclass**: All persons in the Class
13       against whom Defendants maintained or filed a lawsuit to collect
         an alleged debt owed to the NCSLTs after the CFPB Consent
14       Order was entered.

15   134.   **Numerosity.** The Class and Subclasses are so numerous that joinder of all

16   members is impracticable. On information and belief, there are over 300 people in the Class.

17   135.   **Commonality.** There exist questions of law and fact common to Plaintiffs and

18   the proposed Class and Subclasses, including but not limited to:

19
         a.    Whether Defendants have a standard practice of filing and maintaining
20
21   lawsuits, and obtaining judgments in favor of the NCSLTs and against Washington residents

22   without proof that the loan they are suing on was assigned to or owned by the NCSLTs;

23       b.    Whether Defendants sue Washington residents without standing or proof

24   of ownership or assignment of ownership of the specific debt each Washington consumer is

25   being sued upon;

26

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE
     RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
     DEBT COLLECTION PRACTICES ACT, THE
     WASHINGTON COLLECTION AGENCY ACT AND THE
     WASHINGTON CONSUMER PROTECTION ACT - 26                    Leonard Law
                                                          1001 4th Ave, Suite 3200
                                                          Seattle, Washington 98126
                                                          Phone: 206-486-1176
                                                          Fax: 206-458-6028

1          c.      Whether Defendants have sufficient evidence of the existence of the

2   alleged NCSLT education debts when they negotiated settlements or obtained default

3   judgments against Washington consumers;

4          d.      Whether Defendants engaged in unfair or deceptive business practices

5   when they filed lawsuits without proof that the NCSLTs they were representing had proof of

6   assignment entitling them to collect on the alleged debts;

7          e.      Whether Defendants are filing lawsuits on behalf of NCSLTs knowing

8   that they lack the necessary paperwork and proof to complete or try the case and are filing the

9

10  lawsuits to obtain defaults on or settlements of the claims;

11         f.      Whether Defendants have a standard practice of filing affidavits they

12  know or believe to be false and misleading in an attempt to obtain judgments against

13  Washington residents;

14         g.      Whether the Defendants maintaining collection lawsuits in Washington

15  when they did not have both complete chain of title and a signed copy of the loan agreement is

16

17  an unfair or deceptive practice in trade or commerce that affects the public interest and causes

18  injury to Washington consumers' personal property or business and therefore violates the

19  WCPA;

20         h.      Whether Defendants violated the FDCPA by filing false or misleading

21  affidavits in Washington courts;

22         i.      Whether Defendants violated the WCPA by filing false or misleading

23

24  affidavits in Washington courts;

25         j.      Whether Defendants P&F and Cheung violated their duty of candor to

26  the tribunal when they filed lawsuits on behalf of NCSLTs knowing that the NCSLTs did not

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE                     Leonard Law
    RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR          1001 4th Ave, Suite 3200
    DEBT COLLECTION PRACTICES ACT, THE                   Seattle, Washington 98126
    WASHINGTON COLLECTION AGENCY ACT AND THE                Phone: 206-486-1176
    WASHINGTON CONSUMER PROTECTION ACT - 27                   Fax: 206-458-6028

1   have the schedule of loans transferred to the NCSLTs and therefore could not prove the loans

2   sued upon were owned by the NCSLTs;

3           k.      Whether Defendant P&F and Cheung violated the FDCPA by violating

4   their duty of candor to the Court;

5           l.      Whether Defendants violated the CAA, RCW 19.16.250(16) and (21), by

6   failing to dismiss without prejudice all NCSLT lawsuits after the Consent Order was entered on

7   September 18, 2017;

8

9           m.      Whether Defendants violated the CAA, RCW 19.16.250(16) and (21),

10  where they had already obtained a judgment after the Consent Order was entered on September

11  18, 2017, by failing to quash all garnishments and cease of collection activities in all NCSLT

12  lawsuits;

13          n.      Whether Defendants' violations of the CAA constitute *per se* violations

14  of the WCPA;

15          o.      Whether Defendants engaged in unfair or deceptive practices in violation

16

17  of the WCPA;

18          p.      Whether Defendants' violations of other statutory provisions subject

19  them to the mandatory penalty provisions set forth in RCW 19.16.450; and

20          q.      The nature and extent of class wide injury and the measure of

21  compensation for such injury.

22      136.    **Typicality.** The claims of Plaintiffs are typical of the claims of the Class and

23  Subclasses. They arise out of the same common course of conduct by Defendants and are based

24  on the same legal and remedial theories. The collection actions that Defendants engaged in

25  against Washington consumers that make up the Class and Subclasses are the same collection

26

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE            Leonard Law
    RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR     1001 4th Ave, Suite 3200
    DEBT COLLECTION PRACTICES ACT, THE                Seattle, Washington 98126
    WASHINGTON COLLECTION AGENCY ACT AND THE          Phone: 206-486-1176
    WASHINGTON CONSUMER PROTECTION ACT - 28           Fax: 206-458-6028

1   actions Defendant engaged in against the Plaintiffs. Defendants maintained NCSLT collection

2   lawsuits or sought to enforce judgments obtained in NCSLT lawsuits from all Plaintiffs and

3   Class members. Defendants filed a TSI Affidavit in each and every action it maintained against

4   Plaintiffs and Class members during the Class period.

5         137.   **Adequacy of Representation.** Plaintiffs are appropriate representatives for the

6   Class and Subclasses and will fairly and adequately protect the interests of the Class and

7   Subclasses. Plaintiffs understand and are willing to undertake the responsibilities of acting in a

8   representative capacity on behalf of the proposed Class and Subclasses. Plaintiffs will fairly

9   and adequately protect the interests of the Class and Subclasses and have no interests that

10  directly conflict with interests of the Classes. Plaintiffs have retained competent and capable

11  attorneys who are experienced trial lawyers with experience in complex and class action

12  litigation, including consumer class actions. Plaintiffs and their counsel are committed to

13  prosecuting this action vigorously on behalf of the Class and Subclasses and have the financial

14  resources to do so.

15

16        138.   **Predominance.** Defendants have a standard practice of maintaining lawsuits

17  like those maintained against the Plaintiffs and the Class, and Defendants have a standard

18  practice of filing TSI Affidavits like the ones filed in cases against the Plaintiffs and the Class.

19  The common issues arising from this conduct predominate over any individual issues.

20  Adjudication of these common issues in a single action has important and desirable advantages

21  of judicial economy.

22

23        139.   **Superiority.** Plaintiffs and members of the Class and Subclasses have suffered

24  harm and damages as a result of Defendants' unlawful and wrongful conduct. Absent a class

25  action, however, most Class members likely would find the cost of litigating their claims

26

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
    RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
    DEBT COLLECTION PRACTICES ACT, THE
    WASHINGTON COLLECTION AGENCY ACT AND THE
    WASHINGTON CONSUMER PROTECTION ACT - 29

1  prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation

2  because it conserves judicial resources, promotes consistency and efficiency of adjudication,

3  provides a forum for small claimants, and deters illegal activities. The members of the Class

4  and Subclasses are readily identifiable from Defendants' records, and there will be no

5  significant difficulty in the management of this case as a class action.

6          140.    **Injunctive Relief.** Defendants' conduct is uniform to all members of the Class

7  and Subclasses. Defendants have acted or refused to act on grounds that apply generally to the

8

9  Class and Subclasses, so that final injunctive relief or declaratory relief is appropriate with

10  respect to the Class and Subclasses as a whole.

11          141.    Accordingly, class certification of the Class and Subclasses is appropriate

12  pursuant to CR 23(b)(2) and 23(b)(3).

13                          **VI.  CAUSES OF ACTION**

14                          **FIRST CLAIM FOR RELIEF**

15
          **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT,**
16                          **15 U.S.C. § 1692 *et seq.***

17          142.    Plaintiffs re-allege and incorporate by reference all of the paragraphs of this

18  complaint as though fully stated herein.

19
          143.    Defendants' violations of the FDCPA include, but are not necessarily limited to,
20
   the following:
21

22      **A.**     **False, Deceptive, or Misleading Representations.**

23          144.    Pursuant to 15 U.S.C. §§ 1692e(2)(a), and 1692e(10), the FDCPA prohibits debt

24  collectors from making false representations of the character, amount, or legal status of any

25  debt and from using any false representation or deceptive means to collect or attempt to collect

26

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
   RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
   DEBT COLLECTION PRACTICES ACT, THE
   WASHINGTON COLLECTION AGENCY ACT AND THE
   WASHINGTON CONSUMER PROTECTION ACT - 30

1    any debt or obtain information concerning a consumer.

2        145.    Defendants violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) by making

3    false, deceptive, and misleading representations to debtors and Washington courts concerning

4    the documents they possessed or reviewed that allegedly showed that the NCSLTs were

5    entitled to collect on student loan debt.

6        146.    Pursuant to 15 U.S.C. § 1692e(5), the FDCPA specifically prohibits debt

7    collectors from threatening to take any action that cannot be taken or that is not intended to be

8
     taken.
9

10       147.    Defendants violated 15 U.S.C. § 1692e(5) when they filed lawsuits knowing that

11   they could not prove chain of title and knowing that they would not take the cases they filed to

12   trial.

13       148.    Defendants violated 15 U.S.C. § 1692e(5) when they continued to collect and

14   attempt to collect on NCSLT debt after they entered into a consent order with the CFPB

15   agreeing to stop all collection efforts until they audited the NCSLT accounts and verified they
16
     had proof of assignment.
17

18       **B.    Unfair or Unconscionable Means to Collect or Attempt to Collect on a Debt.**

19       149.    Pursuant to 15 U.S.C. § 1692f, the FDCPA generally prohibits debt collectors

20   from engaging in "any unfair or unconscionable means to collect or attempt to collect the

21   alleged debt."

22       150.    Defendants violated 15 U.S.C. § 1692f by filing and sending as verification of
23
     debt TSI employee affidavits that were misleading or false in order to obtain debt settlements,
24
     default judgments and summary judgments;
25

26       151.    Defendants' conduct in violation of the FDCPA caused and proximately caused

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE
     RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
     DEBT COLLECTION PRACTICES ACT, THE
     WASHINGTON COLLECTION AGENCY ACT AND THE
     WASHINGTON CONSUMER PROTECTION ACT - 31

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1 | injury and damages to plaintiffs and Class members.

2 |      152.   Plaintiffs and the class are entitled to compensatory, special, and general

3 | damages as allowed by law.

4 |      153.   Plaintiffs and the Class are also entitled to statutory damages, attorneys' fees,

5 | and costs pursuant to 15 U.S.C. § 1692k.

6 | ### SECOND CLAIM FOR RELIEF

7 |

8 | ### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: PER SE VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT

9 |      154.   Plaintiffs re-allege and incorporate by reference the allegations set forth in each

10 | of the preceding paragraphs of this complaint.

11 |

12 |      155.   In RCW 19.86.020, the WCPA provides that "unfair methods of competition

13 | and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby

14 | declared unlawful."

15 |      156.   A WCPA claim consists of the following elements: (1) an unfair or deceptive act

16 | or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff

17 | in his or her business or property; and (5) causation.

18 |

19 |      157.   Violations of the FDCPA are *per se* violations of the WCPA.

20 |      158.   Defendants violated the FDCPA through their conduct described herein and as

21 | detailed in Plaintiffs' first claim for relief.

22 |      159.   The FDCPA violations are *per se* violations of the WCPA. Defendants' unfair

23 | and deceptive acts and practices repeatedly occurred in their trade and commerce, were capable

24 | of deceiving a substantial portion of the public, and have already injured many hundreds, if not

25 | thousands, of Washington residents.

26 |

27 | AMENDED CLASS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, THE WASHINGTON COLLECTION AGENCY ACT AND THE WASHINGTON CONSUMER PROTECTION ACT - 32

160.    Defendants' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiffs and Class members.

161.    Class members generally are unaware that Defendants' collection practices are unlawful, and that Defendants are using false declarations to obtain judgments.

162.    Plaintiffs and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

163.    Plaintiffs and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants' continuing misconduct.

164.    Preliminary and injunctive relief is necessary to prevent further injury to Plaintiffs and Class members.

165.    Defendants' conduct in violation of the WCPA has proximately caused and continues to cause injury to Plaintiffs and Class members in their business or property.

166.    Plaintiffs and Class members are entitled to recover compensatory, special, and general damages as allowed by law.

167.    Plaintiffs and the Class are entitled to recover treble damages, attorneys' fees, and costs pursuant to RCW 19.86.090.

### THIRD CLAIM FOR RELIEF

### VIOLATIONS OF WASHINGTON'S COLLECTION AGENCY ACT:
### *PER SE* VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT, RCW 19.86 *et seq*.

168.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

169.    Pursuant to RCW 19.16.440, a collection agency that violates the Prohibited Practices section of the WCAA, RCW 19.16.250, commits unfair and deceptive trade practices

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 33

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1  for the purposes of application of the WCPA.

2      170.   The WCAA, in RCW 19.16.250(16), prohibits a collection agency from

3  threatening to take any action against a debtor that the licensee cannot legally take at the time

4  the threat is made.

5      171.   Defendants violated RCW 19.16.250(16) when they continued litigation and

6  collection against Washington consumers after they had agreed with the CFPB to cease

7  collection on NCSLT accounts until they verified that NCSLT was actually assigned the

8  accounts they were collecting on or attempting to collect on.

9      172.   Pursuant to RCW 19.16.450, if an act or practice of a collection agency violates

10  RCW 19.16.250, neither the licensee nor any other entity can ever collect anything other than

11  the principal amount of the debt owed.

12      173.   Because Defendants violated RCW 19.16.250, they are never entitled to collect

13  anything other than the principal amount of the debts owed by Class members against whom

14  they sought to collect after the CFPB Consent Order was entered.

15      174.   RCW 19.16.250(21) prohibits debt collectors from collecting or seeking to

16  collect in addition to the principal amount of any claim, any sum other than allowable interest,

17  collection costs or handling fees, and in the case of suit attorney's fees and taxable court costs.

18      175.   Defendants violated and continue to violate RCW 19.16.250(21) by seeking to

19  collect amounts other than principal from Washington consumers after the entry of the CFPB

20  consent order.

21      176.   Defendants' violations of the WCAA affect the public interest and are the direct

22  and proximate cause of injuries to the business or property of Plaintiffs and the Class.

23      177.   Defendants' violations of the WCAA and WCPA have damaged Plaintiffs and

24  the Class in an amount to be proven at trial, in an amount no less than all sums collected by

25  Defendants in excess of principal on Plaintiffs' and the Classes' alleged student loan

26

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
   RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
   DEBT COLLECTION PRACTICES ACT, THE
   WASHINGTON COLLECTION AGENCY ACT AND THE
   WASHINGTON CONSUMER PROTECTION ACT - 34

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1   obligations.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE
     RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
     DEBT COLLECTION PRACTICES ACT, THE
     WASHINGTON COLLECTION AGENCY ACT AND THE
     WASHINGTON CONSUMER PROTECTION ACT - 35

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

# FOURTH CLAIM FOR RELIEF

## VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT, RCW 19.86 *et seq.*

178.   Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

179.   Defendants are "persons" within the meaning of the WCPA, RCW 19.86.010(1) and conduct "trade" and "commerce" within the meaning of the WCPA, RCW 19.86.010(2).

180.   Plaintiffs and Class members are "persons" within the meaning of the WCPA. RCW 19.86.010(1).

181.   Defendants' actions described herein were unfair or deceptive acts or practices occurring in trade or commerce, and were capable of injuring a substantial number of Washington consumers. The unfair and deceptive acts include the following:

   a.   Filing or sending Class members, including Plaintiffs, false and misleading affidavits in the attempted collection of debts;

   b.   Entering into a consent order with the CFPB whereby Defendants agreed to discontinue collection on NCSLT accounts until which time Defendants could audit their records to determine collectability of accounts, but nevertheless continuing to collect on NCSLT accounts without performing the audit or determining the collectability of accounts;

   c.   Knowingly filing false affidavits in Washington courts; and

   d.   Taking all other actions described herein that violate applicable collection laws.

182.   Defendants' actions proximately caused and continue to cause injury to Plaintiffs and Class members in their business or property.

AMENDED CLASS COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT, THE
WASHINGTON COLLECTION AGENCY ACT AND THE
WASHINGTON CONSUMER PROTECTION ACT - 36

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1   183.   Defendants' actions warrant an injunction to protect Plaintiffs and other

2   Washington consumers from similar harm.

3   **VII.  PRAYER FOR RELIEF**

4   WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

5   1.   For an order certifying the identified Class and Subclasses pursuant to CR

6
    23(b)(2) and/or 23(b)(3), with Plaintiffs as the Class representatives and the undersigned as

7
8   Class Counsel;

9   2.   For an injunction preventing Defendants from all future collection attempts upon

10  the alleged NCSLT loan debts of Plaintiffs and Class members, pursuant to RCW 19.86.090;

11  3.   For actual and compensatory damages pursuant to RCW 19.86, *et seq.* and 15

12  U.S.C. §1692 *et seq.*, in an amount to be proven at trial, but no less than the sum of all amounts

13  that Defendants have collected on judgments or claims against Class and Subclass members in

14
    excess of the principal amount of the alleged obligations that were/are the subject of the

15
16  Defendants' collection efforts;

17  4.   For statutory damages in the amount of $1,000 for each violation of the FDCPA,

18  pursuant to 15 U.S.C. §1692 *et seq.*;

19  5.   For treble damages, pursuant to RCW 19.86 *et. seq.*;

20  6.   For costs and reasonable attorney's fees in an amount to be proven at trial,

21  pursuant to RCW 19.86.090, 15 U.S.C. §1692 *et seq.*, and as otherwise allowed by law;

22
23  7.   For an award of pre-judgment and post-judgment interest at the rate of 12% per

24  annum on all liquidated sums awarded to Plaintiffs and the Class and Subclasses as damages;

25  8.   For leave to conform the pleadings to the proof presented at trial; and

26  9.   For such other relief as the Court deems justice and equitable.

27  AMENDED CLASS COMPLAINT FOR INJUNCTIVE
    RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR
    DEBT COLLECTION PRACTICES ACT, THE
    WASHINGTON COLLECTION AGENCY ACT AND THE
    WASHINGTON CONSUMER PROTECTION ACT - 37

    Leonard Law
    1001 4th Ave, Suite 3200
    Seattle, Washington 98126
    Phone: 206-486-1176
    Fax: 206-458-6028

1    DATED this 26th day of July, 2018

2    *Attorneys for Plaintiffs*:

3    LEONARD LAW                            BERRY & BECKETT, PLLP

4    */s/ Sam Leonard*                       */s/ Guy Beckett*
5    Sam Leonard, WSBA #46498               Guy W. Beckett, WSBA #14939
     1001 4th Ave, Suite 3200               1708 Bellevue Avenue
6    Seattle, Washington 98154              Seattle, WA 98122
     Telephone: (206) 486-1176             Telephone: (206) 441-5444
7    Facsimile: (206) 458-6028             Facsimile: (206) 838-6346
8    E-mail: sam@seattledebtdefense.com    E-mail: gbeckett@beckettlaw.com

9    HENRY & DeGRAAF, P.S.                  NORTHWEST CONSUMER LAW CENTER

10   */s/ Christina Henry*                  */s/ Amanda Martin*
     Christina L. Henry, WSBA #31273        Amanda Martin, WSBA #49581
11   150 Nickerson St., Ste. 311           214 East Galer St., Ste. 100
     Seattle, WA 98109                     Seattle, WA 98102
12   Telephone: (206) 330-0595            Telephone: (206) 805-0989
13   Facsimile: (206) 400-7609            Facsimile: (206) 805-1716
     E-mail: chenry@HDM-legal.com         E-mail: Amanda@NWCLC.org

14

15

16

17

18

19

20

21

22

23

24

25

26

27   AMENDED CLASS COMPLAINT FOR INJUNCTIVE                    Leonard Law
     RELIEF AND DAMAGES FOR VIOLATIONS OF THE FAIR        1001 4th Ave, Suite 3200
     DEBT COLLECTION PRACTICES ACT, THE                  Seattle, Washington 98126
     WASHINGTON COLLECTION AGENCY ACT AND THE               Phone: 206-486-1176
     WASHINGTON CONSUMER PROTECTION ACT - 38                 Fax: 206-458-6028

The Honorable Catherine Moore

1

2

3

4

5

6

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON

7

IN AND FOR KING COUNTY

8

ESTHER HOFFMAN; SARAH DOUGLASS;
ANTHONY KIM; and IL KIM and DARIA

9

KIM, husband and wife and the marital

community comprised thereof, on behalf of

10

themselves and on behalf of others similarly

11

situated,

NO.  18-2-15483-9 SEA

**SUMMONS FOR
AMENDED COMPLAINT**

12

Plaintiffs,

13

vs.

14

TRANSWORLD SYSTEMS
INCORPORATED; PATENAUDE AND

15

FELIX, A.P.C.; MATTHEW CHEUNG, and the

marital community comprised of MATTHEW

16

CHEUNG and JANE DOE CHEUNG; and

DOES ONE THROUGH TEN,

17

18

Defendants.

19

TO THE DEFENDANTS:

20

A lawsuit has been started against you in the above-entitled Court by Plaintiffs Esther

21

Hoffman, Sarah Douglass, Anthony Kim, Il Kim, and Daria Kim. The Plaintiffs' claims are

22

stated in the written Amended Complaint, a copy of which is served on you with this

23

Summons.

24

25

In order to defend against this lawsuit, you must respond to the Complaint by stating

26

your defense in writing, and by serving a copy upon the person signing this Summons within

27

SUMMONS FOR
AMENDED COMPLAINT - 1

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1  20 days after the service of this Summons, excluding the day of service, or a default judgment

2  may be entered against you without notice. A default judgment is one where the Plaintiffs are

3  entitled to what they request because you have not responded. If you serve a notice of

4  appearance on the undersigned person, you are entitled to notice before a default judgment may

5  be entered.

6      You may demand that the Plaintiffs file this lawsuit with the Court. If you do so, the

7
   demand must be in writing and must be served upon the person signing this Summons. Within
8
   14 days after you serve the demand, the Plaintiffs must file this lawsuit with the Court, or the
9

10  service on you of this Summons and Amended Complaint will be void.

11      If you wish to seek the advice of an attorney in this matter, you should do so promptly

12  so that your written response, if any, may be served on time.

13      This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

14  State of Washington.

15      DATED this 26th day of July, 2018

16

17  **Attorneys for Plaintiffs:**

18  LEONARD LAW                    BERRY & BECKETT, PLLP

19   _/s/ Sam Leonard_             _/s/ Guy Beckett_
    Sam Leonard, WSBA #46498       Guy W. Beckett, WSBA #14939
20  1001 4th Ave, Suite 3200       1708 Bellevue Avenue
    Seattle, Washington 98154      Seattle, WA 98122
21  Telephone: (206) 486-1176      Telephone: (206) 441-5444
    Facsimile: (206) 458-6028      Facsimile:  (206) 838-6346
22  E-mail: sam@seattledebtdefense.com   E-mail: gbeckett@beckettlaw.com

23

24  (signatures continued on page 3)

25

26

27
   SUMMONS FOR                              Leonard Law
   AMENDED COMPLAINT - 2                    1001 4th Ave, Suite 3200
                                            Seattle, Washington 98126
                                            Phone: 206-486-1176
                                            Fax: 206-458-6028

| | | |
|---|---|---|
| 1 | HENRY & DeGRAAF, P.S. | NORTHWEST CONSUMER LAW CENTER |
| 2 | /s/ Christina Henry | /s/ Amanda Martin |
| | Christina L. Henry, WSBA #31273 | Amanda Martin, WSBA #49581 |
| 3 | 150 Nickerson St., Ste. 311 | 214 East Galer St., Ste. 100 |
| | Seattle, WA  98109 | Seattle, WA  98102 |
| 4 | Telephone:  (206) 330-0595 | Telephone:  (206) 805-0989 |
| | Facsimile:   (206) 400-7609 | Facsimile:   (206) 805-1716 |
| 5 | E-mail:  chenry@HDM-legal.com | E-mail:  Amanda@NWCLC.org |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

SUMMONS FOR
AMENDED COMPLAINT - 3

# EX. A

## UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING File
2017-CFPB-0018

| In the Matter of: | **CONSENT ORDER** |
|---|---|
| **TRANSWORLD SYSTEMS, INC.** | |

## I.
### Overview

The Consumer Financial Protection Bureau (Bureau) has reviewed the debt
collections litigation practices of the Attorney Network business unit of Transworld
Systems, Inc. ("TSI") ("Respondent"), the agent and Service Provider for fifteen (15)
Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts
("NCSLTs", or "the Trusts", which are the National Collegiate Master Student Loan
Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2,
NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4,
NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4), and has identified
violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act
of 2010 (CFPA). Under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the
Bureau issues this Consent Order (Consent Order).

To collect on defaulted private student loans, Law Firms engaged by
Respondent's Attorney Network business unit filed debt Collections Lawsuits in state

1



courts across the country on behalf of the Trusts. In support of many of these lawsuits, Respondent executed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, since November 1, 2014, Law Firms hired by Respondent filed hundreds of debt Collections Lawsuits without the documentation necessary to prove Trust ownership of the loans.

## II

## Jurisdiction

1.    The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

## III
## Stipulation

2.    Respondent has executed a "Stipulation and Consent to the Issuance of a Consent Order," dated September 14, 2017 (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondent has consented to the issuance of this Consent Order by the Bureau under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

## IV
## Definitions

2

**EX A**

3.    The following definitions apply to this Consent Order:

a.   "Affiant" means any signatory to an Affidavit, signing in his or her capacity as
     an employee or agent of Respondent, but excluding one signing solely as a
     notary or witness to the act of signing.

b.   "Affidavit" means any sworn statement filed with a court in connection with a
     Collections Lawsuit.

c.   "Board" means TSI's duly elected and acting Board of Directors.

d.   "Clearly and Prominently" means:

     i.   as to written information: written in a type size and location sufficient
          for an ordinary consumer to read and comprehend it, and disclosed in
          a manner that would be easily recognizable and understandable in
          language and syntax to an ordinary consumer; if the information is
          contained in a multi-page print document, the disclosure appears on
          the first page.

     ii.  as to information presented orally: spoken and disclosed in a volume,
          cadence, and syntax sufficient for an ordinary consumer to hear and
          comprehend.

e.   "Collections Lawsuits" means attempts by a Law Firm engaged by
     Respondent's Attorney Network business unit, for an account owned or
     alleged to be owned by a Trust, through judicial processes in the United States
     of America, to collect or establish a Consumer's liability for a Debt.

f.   "Consumer" means any natural person obligated or allegedly obligated to pay
     any Debt.

3

**EX A**

g.  "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

h.  "Effective Date" means the date on which the Consent Order is issued.

i.  "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegate.

j.  "Law Firm" means a law firm engaged by Respondent's Attorney Network business unit to collect student loan Debt on behalf of the National Collegiate Student Loan Trusts.

k.  "Regional Director" means the Regional Director for the Northeast Region for the Office of Supervision for the Consumer Financial Protection Bureau, or his/her delegate.

l.  "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Respondent based on substantially the same facts as described in Section V of this Consent Order.

m.  "Relevant Period" includes the period from November 1, 2014 to April 25, 2016.

n.  "Respondent" means Transworld Systems, Inc., and its successors and assigns.

4

**EX A**

o.  "Service Providers" means any service provider, as defined in section
1002(26) of the CFPA, 12 U.S.C. § 5481, that provides or provided services
with respect to the servicing of the student loans owned by a NCSLT.

**V.**

**Bureau Findings and Conclusions**

The Bureau finds the following:

4.  The National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts")
comprise fifteen (15) Delaware statutory trusts created between 2001 and
2007. The basic purpose of each Trust is to acquire a pool of student loans,
enter into the so-called trust-related agreements, and provide for the
administration of the Trusts and the servicing of student loans.

5.  The Trusts do not have any employees and all actions taken by the Trusts in
connection with loan servicing and collecting Debt are carried out by third
parties.

6.  Debt-collection activities on behalf of the Trusts are carried out by the
successor special servicer's sub-servicer pursuant to servicing agreements
with the successor special servicer.

7.  Sub-servicers that executed and notarized the deceptive affidavits did so as
Service Providers and agents of the Trusts.

8.  Law Firms that filed lawsuits on behalf of the Trusts did so as Service
Providers and agents of the Trusts.

5

**EX A**

9.    Respondent Transworld Systems, Inc. (TSI) is incorporated under the laws of the State of California and maintains a principal place of business in Ft. Washington, Pennsylvania.

10.   TSI maintains an office in Peachtree Corners, Georgia, where its employees execute and notarize affidavits for Collections Lawsuits brought on behalf of the Trusts.

11.   A national network of Law Firms engaged by Respondent file and prosecute Collections Lawsuits on behalf of the Trusts in courts across the country.

12.   TSI has operated as the successor sub-servicer to the successor special servicer of the Trusts since November 1, 2014.

13.   TSI is a "covered person" under 12 U.S.C. § 5481(6) because it is engaged in the collection of debt and is a Service Provider. 12 U.S.C. § 5481(15)(A)(x), (26).

14.   TSI is an agent and Service Provider of the Trusts.

### FALSE AND MISLEADING AFFIDAVITS AND TESTIMONY

15.   In connection with collecting or attempting to collect Debt from Consumers, between November 1, 2014 and April 25, 2016, Law Firms hired by Respondent on behalf of the Trusts initiated 37,689 Collections Lawsuits in courts across the country on behalf of the Trusts.

16.   In support of the Collections Lawsuits, Law Firms submitted Affidavits executed by Respondent and documents in support of the Trusts' claims that Consumers owed Debts to a Trust.

17.   Respondent executed and notarized Affidavits–often with attached exhibits–that were used by Law Firms in many of the Collections Lawsuits

6



brought on behalf of the Trusts between November 1, 2014 and April 25, 2016.

18.   In these Affidavits, the Affiants swore that they had personal knowledge of the education loan records evidencing the Debt. In fact, in numerous instances, Affiants lacked personal knowledge of the education loan records evidencing the Debt when they executed the Affidavits.

19.   The Affiants also asserted that they were authorized and competent to testify about the Consumers' Debts through review of and "personal knowledge" of the business records, including electronic data in their possession. In fact, in certain instances, Affiants lacked personal knowledge of the business records, including the electronic data, showing that Consumers owed Debts to the Trusts. Affiants were instructed to review certain data on a computer screen as part of an effort to verify some information in the Affidavits about the Debts. Affiants, however, did not always know the source of the data on that screen, how the data was obtained or maintained, whether it was accurate, or whether that data meant that the Debt was in fact owed to the Trusts.

20.   Each Affiant also swore that he/she had "personal knowledge of the record management practices and procedures of Plaintiff [the Trust] and the practices and procedures Plaintiff requires of its loan servicers and other agents." In fact, certain Affiants lacked personal knowledge of the record management practices and procedures of the Trusts and the practices and procedures the Trusts required of its loan servicers and other agents.

7

**EX A**

21.    In many Affidavits, the Affiants also stated that "I have reviewed the chain
       of title records as business records" regarding the relevant account. In some
       cases, Affiants did not possess the chain of title records but reviewed "chain
       of title" records that were found online on a government portal maintained
       by the Securities and Exchange Commission. In numerous instances,
       Affiants did not review the chain of title records prior to executing the
       Affidavits.

22.    In certain Affidavits, the Affiants asserted that they had personal knowledge
       that the loans were transferred, sold, and assigned to the plaintiff Trusts on
       dates certain. In fact, in numerous instances, Affiants lacked personal
       knowledge of the chain of assignment records necessary to prove that the
       relevant Trust owned the subject loans.

23.    In some instances, certain Affiants complained to supervisors that they did
       not have personal knowledge of the representations made in the Affidavits.
       These affiants continued to execute Affidavits, however, for fear of losing
       their jobs.

24.    Affiants also provided live testimony in court, purportedly based on
       personal knowledge, similar to the statements made in the Affidavits as
       described in Paragraphs 18-22.

## FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

25.    From November 1, 2014 to April 25, 2016, on behalf of the Trusts, Law
       Firms filed numerous Collections Lawsuits against Consumers even though

8

**EX A**

the complete documentation needed to prove that the Trusts owned the loans did not exist.

26.   In these lawsuits, documentation of a complete chain of assignment evidencing that the subject loan was transferred to and owned by the Trust was lacking.

27.   In addition, Law Firms hired by Respondent on behalf of the Trusts filed numerous Collections Lawsuits where the loans in question were disbursed to the Consumers after the loans allegedly were transferred to the Trusts according to the chain of assignment documents.

28.   On numerous occasions, Law Firms hired by Respondent filed Collections Lawsuits even though the promissory note to prove that a Debt was owed did not exist.

29.   For each Collections Lawsuit described in Paragraphs 25-28, Law Firms hired by Respondent could not prove that a Debt was owed to the Trusts, if contested.

### Violations of the Consumer Financial Protection Act

30.   Covered persons are prohibited from engaging "in any unfair, deceptive, or abusive act or practice" in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

31.   An act or practice is deceptive under the CFPA if it involves a material representation or omission that misleads, or is likely to mislead, a consumer acting reasonably under the circumstances.

32.   An act or practice is unfair if "(A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by

9

**EX A**

consumers; and (B) such substantial injury is not outweighed by

countervailing benefits to consumers or competition." 12 U.S.C.

§ 5531(c)(1).

## FALSE AND MISLEADING COLLECTION AFFIDAVITS AND TESTIMONY

33.   In numerous instances, in connection with collecting or attempting to
collect Debt from Consumers, Respondent executed Affidavits that were
used by Law Firms with many of the Collections Lawsuits filed by Law
Firms on behalf of the Trusts in courts across the country, and in live
testimony, Respondent represented, directly or indirectly, expressly or by
implication, that:

   a.  Affiants had personal knowledge of the account records and the Debt;

   b.  Affiants had personal knowledge of the chain of assignment records
       evidencing Trust ownership of the subject loan; and

   c.  Affiants had personal knowledge of the record management practices
       and procedures of the Trusts and all prior servicers.

34.   In fact, as described in Paragraphs 18 to 24, in numerous instances, these
representations were either false or the Affiant did not have a basis for
making the representation.

35.   The representations are material because they are likely to affect a
Consumer's choice or conduct regarding how to respond to a Collections
Lawsuit and are likely to mislead a Consumer acting reasonably under the
circumstances.

10



EX A

36.    Thus, representations by Respondent, as described in Paragraphs 18-24,
       constitute deceptive acts or practices in violation of sections 1031(a) and
       1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

37.    In numerous instances, in connection with collecting or attempting to
       collect Debt from Consumers, Respondent, acting through the Law Firms
       hired by Respondent on behalf of the Trusts, represented, directly or
       indirectly, expressly or by implication, that it could be proven in the
       Collections Lawsuits that the Trusts owned the loans in question and that
       the Consumers in question owed Debts to the Trusts, if contested.

38.    In fact, in numerous instances, Respondent lacked the complete chain of
       assignment documentation needed to prove Trust ownership of the subject
       loans and the promissory note needed to prove the existence of certain
       loans.

39.    The representations are material because they are likely to affect a
       Consumer's choice or conduct regarding how to respond to a lawsuit and
       are likely to mislead a Consumer acting reasonably under the
       circumstances.

40.    Thus, Respondent's representations, as described in Paragraphs 25-29,
       constitute deceptive acts or practices in violation of sections 1031(a) and
       1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

41.    In addition, Respondent's acts and practices, caused or were likely to cause
       substantial injuries to consumers.

**EX A**

42. The injuries to consumers included, but were not limited to, all payments made, including garnishments of wages and bank accounts, to settle Debts not enforceable.

43. The injuries to consumers were not reasonably avoidable by consumers and were not outweighed by any countervailing benefits to consumers or to competition.

44. Thus, Respondent's conduct, as described in Paragraph 25-29, constitutes unfair acts or practices in violation of sections 1031(c) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

## ORDER
## VI
## Conduct Provisions

**IT IS ORDERED,** under sections 1053 and 1055 of the CFPA, that:

45. Respondent and its officers, Service Providers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

    a. Respondent shall take all actions necessary to comply with the terms of the Consent Order.

    b. Respondent must require that any Law Firm it retains in connection with the collection of student loans owned by the Trusts agree to abide by the terms and conditions of the Consent Order.

    c. Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed between November 1,

12

**EX A**

2014 and the Effective Date and that are missing the documentation described in subsection (f)(i)and (ii) of this Paragraph.

d.  Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed seeking Debt outside the statute of limitations and provide this information to the successor special servicer or any other Service Provider of the Trusts.

e.  Within one-hundred twenty (120) days of the Effective Date, Respondent must provide to the successor special servicer and to the Bureau for each Consumer named in the suits identified in Paragraph 45c and 45d: the Consumer's name, all available contact information for the Consumer (including information in the possession of the attorneys who filed the suit), and the total amount of all payments made by the Consumer on or after the date on which the suit was filed.

f.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not initiate a Collections Lawsuit to collect Debt unless Respondent possesses:

   i.  the documentation necessary to prove that a Trust owns the loan, including but not limited to, documentation reflecting the complete chain of assignment from the Debt's originator to the specific Trust claiming ownership; and

   ii.  a document signed by the Consumer, such as a promissory note, evidencing the agreement to pay the loan forming the basis of the Debt.

13

**EX A**

g.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to initiate a Collections Lawsuit to collect on a loan for which the applicable statute of limitations has expired.

h.  Respondent shall establish written policies requiring Law Firms to confirm that the applicable statute of limitations has not expired at the time of the filing of the Collections Lawsuit;

i.  Respondent shall require Law Firms to provide a quarterly report to Respondent that includes, for each Collections Lawsuit, any data relevant to determining the applicable statute of limitations, such as date of lawsuit, date of default, and date of last payment, as well as identifies any lawsuits in which a consumer alleges in his pleadings that the lawsuit was filed outside the statute of limitations.

j.  Respondent shall not collect any Debt through a Collections Lawsuit that Respondent knows or learns was filed outside the statute of limitations, and if any such cases are pending, Respondent shall seek the immediate withdrawal or dismissal of the lawsuit.

k.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to collect any Debt through

14

**EX A**

Collections Lawsuits that Respondent or its agents have any reason to
believe may be unenforceable.

l.   Respondent, its officers, agents, Service Providers, servants,
employees, and attorneys, and all other persons in active concert or
participation with any of them, who receive actual notice of this
Consent Order, whether acting directly or indirectly, are permanently
restrained and prohibited from, in connection with the collection of a
Debt, executing any Affidavit containing any misrepresentations,
including false statements that:

   i.   the Affiant is familiar with or has personal knowledge of the
Consumer's education loan records or the maintenance of those
records;

   ii.  the Affiant has personal knowledge of the Consumer's debt;

   iii. the Affiant has personal knowledge of the loan's chain of
assignment or ownership;

   iv.  the Affiant has personal knowledge of the documents relating to
the loan's chain of assignment or ownership;

   v.   the Affidavit has been properly notarized if the Affidavit was not
executed in the presence of a notary or if the notarization was
otherwise not compliant with applicable notary laws; or

   vi.  certain documents or records concerning the Debt forming the
basis of the Collections Lawsuit have been reviewed by the Affiant.

46.  Respondent, its officers, agents, Service Providers, servants, employees, and
attorneys, and all other persons in active concert or participation with any

15

**EX A**

of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, providing any testimony that contains any misrepresentations, including false statements that the witness:

    a.  is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

    b.  has personal knowledge of the Consumer's debt;

    c.  has personal knowledge of the loan's chain of assignment or ownership; or

    d.  has personal knowledge of the documents relating to the loan's chain of assignment or ownership.

47.  If Respondent determines that it engages in any conduct prohibited by this Order, including but not limited to Paragraphs 45-46 of this Order, Respondent promptly will take the necessary steps to ensure that it ceases any and all practices that violate this Order.

48.  Within ten (10) days of making the determination described in Paragraph 47 Respondent must submit to the Regional Director a report detailing (a) the practices that violate the Order, (b) the specific agents engaged in the practices in question, and (c) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

49.  With regard to pending Collections Lawsuits filed by a Law Firm in which Respondent executed an Affidavit that was filed in support of the pending Collection Lawsuit and that contains any misrepresentations—including but

**EX A**

not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to withdraw such Affidavit unless the Trusts dismiss the suit in which the Affidavit was filed. Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to notify the court of the following in writing and must also simultaneously provide the court with a copy of the Consent Order entered into between the Bureau and the Respondent: "Plaintiff withdraws the affidavit of [insert name of Affiant] pursuant to Consent Order entered into by the Consumer Financial Protection Bureau and Transworld Systems, Inc."

50.   With regard to Collections Lawsuits that were filed in which Respondent executed an Affidavit that was filed with a court or in arbitration, and a judgment was entered, that contained any misrepresentations—including but not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the

17

**EX A**

Consumer's indebtedness, (3) has personal knowledge of the loan's chain of
assignment or ownership, (4) has personal knowledge about the
maintenance of documents relating to the loan's chain of assignment or
ownership, or (5) has attached as an exhibit a true and correct copy of a
document—Respondent must instruct the Law Firms to cease post-
judgment enforcement activities and Respondent will take the steps
necessary, including getting permission from the successor special servicer,
to instruct the Law Firms acting on behalf of the Trusts to seek to remove,
withdraw, or terminate any active wage garnishment, bank levies, and
similar means of enforcing those judgments or settlements as well as cease
accepting settlement payments related to any such Collections Lawsuits.

51.     Respondents must cooperate in all respects with any directive from the
successor special servicer acting on behalf of the Trusts to:

    a.   Make certain disclosures in connection with the collection of Debt
owned by the Trusts;

    b.   Withdraw any Affidavit or Collection Lawsuit; or

    c.   Provide loan information or documents to the successor special
servicer, including but not limited to, information and documents
related to:

        i.   Whether certain loans owned by the Trusts are no longer legally
enforceable because the applicable statute of limitations has
expired;

        ii.  Whether Collections Lawsuits have been filed on any loans where
sufficient documentation, including signed promissory notes and

18



documentation reflecting the complete chain of assignment from the Debt's originator to the Collection Lawsuit's named plaintiff, is not in the possession, custody or control of the Collection Lawsuit's named plaintiff to prove the existence of the Debt owed to the named plaintiff, or where the applicable statute of limitations has expired; and

iii.  Whether judgments were obtained in Collections Lawsuits described in Paragraph 51(c)(ii) and the identity of Consumers from whom the Trusts obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers.

## VII

## Compliance Plan

**IT IS FURTHER ORDERED** that:

52.   Within ninety (90) days of the Effective Date, Respondent must submit to the Regional Director for review and determination of non-objection a compliance plan designed to ensure that the Attorney Network business unit of Respondent complies with all applicable Federal consumer financial laws with respect to Collections Lawsuits and the terms of this Consent Order (Compliance Plan). The Compliance Plan must include, at a minimum:

a. Detailed steps for addressing each action required by this Consent Order;

19



**EX A**

b. Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers with respect to Collections Lawsuits;

c. An effective employee training program required for all employees with any involvement in Collections Lawsuits, including but not limited to Affiants, whose duties include reviewing, executing, preparing, processing, verifying, , or notarizing of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

d. Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

e. Implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit;

f. Comprehensive, written policies and procedures designed to ensure that any Law Firms engaged by Respondent to collect Debt do not violate any Federal consumer financial laws, which must include at a minimum:

   i. the Law Firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

   ii. the Law Firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and

20

**EX A**

Respondent's policies and procedures related to Collections Lawsuits;

iii.   Respondent's authority to conduct periodic onsite reviews of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

iv.   periodic review by Respondent of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

g.   Specific timeframes and deadlines for implementation of the steps described above.

53.   The Regional Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Respondent to revise it. If the Regional Director directs Respondent to revise the Compliance Plan, Respondent must make the revisions and resubmit the Compliance Plan to the Regional Director within thirty (30) days.

54.   After receiving notification that the Regional Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## VIII

## Role of the Board

**IT IS FURTHER ORDERED** that:

21

**EX A**

55. Respondent's Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order prior to submission to the Bureau.

56. Although this Consent Order requires Respondent to submit certain documents for the review or non-objection by the Regional Director, the Board will have the ultimate responsibility for proper and sound management of Respondent and for ensuring that Respondent complies with Federal consumer financial law and this Consent Order.

57. In each instance that this Consent Order requires the Board to ensure adherence to or perform certain obligations of Respondent, the Board must:

   a. Authorize whatever actions are necessary for Respondent to fully comply with the Consent Order;

   b. Require timely reporting by management to the Board on the status of compliance obligations; and

   c. Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## IX

## Order to Pay Civil Money Penalties

**IT IS FURTHER ORDERED** that:

58. Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Section V of this Consent Order, and taking

**EX A**

into account the factors in 12 U.S.C. § 5565(c)(3), Respondent must pay a civil money penalty of $2.5 million to the Bureau.

59. Within ten (10) days of the Effective Date, Respondent must pay $1.5 million of the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions. The remainder of the civil money penalty shall be paid in one installment within sixty (60) days of the Effective Date.

60. The civil money penalty paid under this Consent Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

61. Respondent must treat the civil money penalty paid under this Consent Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Respondent may not:

    a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Consent Order; or

    b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Consent Order.

62. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Respondent may not argue that Respondent is entitled to, nor may Respondent benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any

23

**EX A**

payment that the Bureau makes from the Civil Penalty Fund (Penalty
Offset). If the court in any Related Consumer Action grants such a Penalty
Offset, Respondent must, within thirty (30) days after entry of a final order
granting the Penalty Offset, notify the Bureau, and pay the amount of the
Penalty Offset to the U.S. Treasury. Such a payment will not be considered
an additional civil money penalty and will not change the amount of the
civil money penalty imposed in this action.

X

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

63.    In the event of any default on Respondent's obligations to make payment
under this Consent Order, interest, computed under 28 U.S.C. § 1961, as
amended, will accrue on any outstanding amounts not paid from the date of
default to the date of payment, and will immediately become due and
payable.

64.    Respondent must relinquish all dominion, control, and title to the funds
paid to the fullest extent permitted by law and no part of the funds may be
returned to Respondent.

65.    Under 31 U.S.C. § 7701, Respondent, unless it already has done so, must
furnish to the Bureau its taxpayer identifying numbers, which may be used
for purposes of collecting and reporting on any delinquent amount arising
out of this Consent Order.

24

**EX A**

66.    Within thirty (30) days of the entry of a final judgment, consent order, or
settlement in a Related Consumer Action, Respondent must notify the
Regional Director of the final judgment, consent order, or settlement in
writing. That notification must indicate the amount of redress, if any, that
Respondent paid or is required to pay to Consumers and describe the
Consumers or classes of Consumers to whom that redress has been or will
be paid.

## XI

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

67.    Respondent must notify the Bureau of any development that may affect
compliance obligations arising under this Consent Order, including but not
limited to a dissolution, assignment, sale, merger, or other action that
would result in the emergence of a successor company; the creation or
dissolution of a subsidiary, parent, or affiliate that engages in any acts or
practices subject to this Consent Order; the filing of any bankruptcy or
insolvency proceeding by or against Respondent; or a change in
Respondent's name or address. Respondent must provide this notice, if
practicable, at least thirty (30) days before the development, but in any case
no later than fourteen (14) days after the development.

68.    Within ninety (90) days of the Effective Date, and again one year after the
Effective Date, Respondent must submit to the Regional Director an

25

**EX A**

accurate written compliance progress report (Compliance Report) that has been approved by the Board, which, at a minimum:

    a.  Describes in detail the manner and form in which Respondent has complied with this Consent Order; and

    b.  Attaches a copy of each Order Acknowledgment obtained under Section XII unless previously submitted to the Bureau.

## XII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that,

69.    Within thirty (30) days of the Effective Date, Respondent must deliver a copy of this Consent Order to each of its board members as well as to any managers, employees, Service Providers, or other agents and representatives who have responsibilities related to the subject matter of the Consent Order.

70.    For five (5) years from the Effective Date, Respondent must deliver a copy of this Consent Order to any business entity resulting from any change in structure referred to in Section XI, any future board members or executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Consent Order before they assume their responsibilities.

71.    Respondent must secure a signed and dated statement acknowledging receipt of a copy of this Consent Order, ensuring that any electronic

**EX A**

signatures comply with the requirements of the E-Sign Act, 15 U.S.C.
§§ 7001-7031, within thirty (30) days of delivery, from all persons receiving
a copy of this Consent Order under this Section.

## XIII

### Recordkeeping

**IT IS FURTHER ORDERED** that

72. Respondent must create, or if already created, must retain for at least five
(5) years from the Effective Date, the following business records:

    a. All documents and records necessary to demonstrate full compliance
    with each provision of this Consent Order, including all submissions to
    the Bureau.

73. Respondent must retain the documents identified in Paragraph 72 for the
duration of the Consent Order.

74. Respondent must make the documents identified in Paragraph 72 available
to the Bureau upon the Bureau's request.

## XIV

### Notices

**IT IS FURTHER ORDERED** that:

75. Unless otherwise directed in writing by the Bureau, Respondent must
provide all submissions, requests, communications, or other documents
relating to this Consent Order in writing, with the subject line, "*In re
Transworld Systems, Inc., File No. Year-CFPB- 0018*," and send them
either:

    a. By overnight courier (not the U.S. Postal Service), as follows:



Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017]

or

b. By first-class mail to the below address and contemporaneously by

   email to Enforcement_Compliance@cfpb.gov:

Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017

## XV

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

76.  Respondent must cooperate fully with the Bureau in this matter and in any

investigation related to or associated with the conduct described in Section

V. Respondent must provide truthful and complete information, evidence,

and testimony and Respondent must cause its officers, employees,

representatives, or agents to appear for interviews, discovery, hearings,

trials, and any other proceedings that the Bureau may reasonably request

upon ten (10) days written notice, or other reasonable notice, at such places

and times as the Bureau may designate, without the service of compulsory

process.

## XVI

## Compliance Monitoring

28

**EX A**

**IT IS FURTHER ORDERED** that, to monitor Respondent's compliance with this Consent Order:

77.    Within fourteen (14) days of receipt of a written request from the Bureau, Respondent must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

78.    Respondent must permit Bureau representatives to interview any employee or other person affiliated with Respondent who has agreed to such an interview. The person interviewed may have counsel present.

79.    Nothing in this Consent Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XVII
### Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

80.    Respondent may seek a modification to non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Regional Director.

81.    The Regional Director may, in his/her discretion, modify any non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) if he/she determines good cause justifies the modification. Any such modification by the Regional Director must be in writing.

**EX A**

## XVIII

### Administrative Provisions

82.    The provisions of this Consent Order do not bar, estop, or otherwise prevent the Bureau, or any other governmental agency, from taking any other action against Respondent, except as described in Paragraph 83.

83.    The Bureau releases and discharges Respondent from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in Section V of this Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Consent Order in future enforcement actions against Respondent and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Consent Order, or to seek penalties for any violations of the Consent Order.

84.    This Consent Order is intended to be, and will be construed as, a final Consent Order issued under section 1053 of the CFPA, 12 U.S.C. § 5563, and expressly does not form, and may not be construed to form, a contract binding the Bureau or the United States.

85.    This Consent Order will terminate five (5) years from the Effective Date or five (5) years from the most recent date that the Bureau initiates an action alleging any violation of the Consent Order by Respondent. If such action is dismissed or the relevant adjudicative body rules that Respondent did not

30

**EX A**

violate any provision of the Consent Order, and the dismissal or ruling is either not appealed or upheld on appeal, then the Consent Order will terminate as though the action had never been filed. The Consent Order will remain effective and enforceable until such time, except to the extent that any provisions of this Consent Order have been amended, suspended, waived, or terminated in writing by the Bureau or its designated agent.

86.  Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

87.  Should Respondent seek to transfer or assign all or part of its operations that are subject to this Consent Order, Respondent must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Consent Order.

88.  The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondent wherever Respondent may be found and Respondent may not contest that court's personal jurisdiction over Respondent.

89.  This Consent Order and the accompanying Stipulation contain the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Consent Order and the accompanying Stipulation. This Consent Order and the

**EX A**

accompanying Stipulation supersede any prior oral or written

communications, discussions, or understandings.

90.   Nothing in this Consent Order or the accompanying Stipulation may be

construed as allowing the Respondent, its Board, officers, or employees to

violate any law, rule, or regulation.

**IT IS SO ORDERED**, this ⟋⟋ day of September, 2017.

Richard Cordray
Director
Consumer Financial Protection Bureau

*32*

**EX A**

# EX. B

UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

**2017-CFPB-0018**

|  | **STIPULATION AND CONSENT TO THE ISSUANCE OF A CONSENT ORDER** |
|---|---|
| In the matter of: | |
| **TRANSWORLD SYSTEMS, INC.** | |

The Consumer Financial Protection Bureau (Bureau) intends to initiate an administrative proceeding against Transworld Systems, Inc. (Respondent), under 12 U.S.C. §§ 5563 and 5565, for its unfair and deceptive practices with regard to Collections Lawsuits in violation of the CFPA's prohibition on unfair and deceptive acts or practices, 12 U.S.C. §§ 5531, 5536.

Respondent, in the interest of compliance and resolution of the matter, and without admitting or denying any wrongdoing, consents to the issuance of a Consent Order substantially in the form of the one to which this Stipulation and Consent to the Issuance of a Consent Order is attached (Consent Order), which is incorporated by reference.

In consideration of the above premises, Respondent agrees to the following:

### Jurisdiction

1. The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5563, 5565.

1

**EX B**

## Consent

2. Respondent agrees to the issuance of the Consent Order, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

3. Respondent agrees that the Consent Order will be deemed an "order issued with the consent of the person concerned" under 12 U.S.C. § 5563(b)(4), and agrees that the Consent Order will become a final order, effective upon issuance, and will be fully enforceable by the Bureau under 12 U.S.C. §§ 5563(d)(1) and 5565.

4. Respondent voluntarily enters into this Stipulation and Consent to the Issuance of a Consent Order.

5. The Consent Order resolves only Respondent's potential liability for law violations that the Bureau asserted or might have asserted based on the practices described in Section V of the Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. Respondent acknowledges that no promise or representation has been made by the Bureau or any employee, agent, or representative of the Bureau, about any liability outside of this action that may have arisen or may arise from the facts underlying this action or immunity from any such liability.

6. Respondent agrees that the facts described in Section V of the Consent Order will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding before the Bureau to enforce the Consent Order, or in any subsequent civil litigation by the Bureau to enforce the Consent Order or its rights to any payment or monetary judgment under the Consent Order.

2

EX B

7. The terms and provisions of this Stipulation and the Consent Order will be binding upon, and inure to the benefit of, the parties hereto and their successors in interest.

8. Respondent agrees that the Bureau may present the Consent Order to the Bureau Director for signature and entry without further notice.

## Waivers

9. Respondent, by consenting to this Stipulation, waives:

   a. Any right to service of the Consent Order, and agrees that issuance of the Consent Order will constitute notice to the Respondent of its terms and conditions;

   b. Any objection to the jurisdiction of the Bureau, including, without limitation, under section 1053 of the CFPA, 12 U.S.C. § 5563;

   c. The rights to all hearings under the statutory provisions under which the proceeding is to be or has been instituted; the filing of proposed findings of fact and conclusions of law; proceedings before, and a recommended decision by, a hearing officer; all post-hearing procedures; and any other procedural right available under section 1053 of the CFPA, 12 U.S.C. § 5563, or 12 C.F.R. pt. 1081;

   d. The right to seek any administrative or judicial review of the Consent Order;

   e. Any claim for fees, costs, or expenses against the Bureau, or any of its agents or employees, and any other governmental entity, related in any way to this enforcement matter or the Consent Order, whether arising under common law or under the terms of any statute, including, but not

3

EX B

limited to the Equal Access to Justice Act and the Small Business
Regulatory Enforcement Fairness Act of 1996; for these purposes,
Respondent agrees that Respondent is not the prevailing party in this
action because the parties have reached a good-faith settlement;

f.  Any other right to challenge or contest the validity of the Consent Order;

g.  Such provisions of the Bureau's rules or other requirements of law as may
be construed to prevent any Bureau employee from participating in the
preparation of, or advising the Director as to, any order, opinion, finding
of fact, or conclusion of law to be entered in connection with this
Stipulation or the Consent Order; and

h.  Any right to claim bias or prejudgment by the Director based on the
consideration of or discussions concerning settlement of all or any part of
the proceeding.

TRANSWORLD SYSTEMS, INC.  BY:

_____           *SEPTEMBER 14, 2017*
Joseph Laughlin                                                  Date
Chief Executive Officer

4

**EX B**

# EX. C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Consumer Financial Protection Bureau,

      Plaintiff,

      v.

THE NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST; NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2003-1; NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2004-1;
NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2004-2; NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2005-1; NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2005-2;
NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2005-3; NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2006-1; NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2006-2;
NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2006-3; NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2006-4; NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2007-1;
NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-2; NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2007-3; and NATIONAL COLLEGIATE
STUDENT LOAN TRUST 2007-4,
Delaware Statutory Trusts,

      Defendants.

Case No.

# [PROPOSED] CONSENT JUDGMENT

1

EX C

Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), commenced this civil action against fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts"), which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4 on September 14, 2017, to obtain injunctive relief, damages and other monetary relief, and civil money penalties.

The Complaint alleges violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1).

Plaintiff and Defendants request that the Court enter this Consent Judgment. The parties have agreed to resolve this case without further litigation. The Defendants waive service, answering the Complaint, and consent to the entry of this Consent Judgment against them by this Court, the terms of which are set forth herein.

## FINDINGS

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Plaintiff and Defendants agree to entry of this Order to settle and resolve all matters in this dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

3. Defendants neither admit nor deny any allegations in the Complaint, except as specifically stated in this Order. For the purposes of this Order,

2



Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

4. Since at least November 1, 2012, in order to collect on defaulted private student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state courts across the country. In support of these lawsuits, Subservicers on behalf of Defendants executed and filed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, Defendants' Servicers on behalf of Defendants filed more than 2,000 debt collections lawsuits without the documentation necessary to prove Trust ownership of the loans or on debt that was time-barred. Finally, notaries for Defendants' Servicers notarized over 25,000 affidavits even though they did not witness the affiants' signatures.

5. Defendants waive any rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including without limitation attorneys' fees.

6. Entry of this Order is in the public interest.

## DEFINITIONS

7. The following definitions apply to this Order:

3

EX C

a.     "Administration Agreements" means the agreements by and among each of the Trusts and the Administrator dated November 1, 2001 (Master Trust); December 11, 2003 (NCSLT 2003-1); September 10, 2004 (NCSLT 2004-1); October 28, 2004 (NCSLT 2004-2); February 23, 2005 (NCSLT 2005-1); June 9, 2005 (NCSLT 2005-2); October 12, 2005 (NCSLT 2005-3); March 9, 2006 (NCSLT 2006-1); June 9, 2006 (NCSLT 2006-2); June 8, 2006 (NCSLT 2006-3); December 7, 2006 (NCSLT 2006-4); March 8, 2007 (NCSLT 2007-1); June 14, 2007 (NCSLT 2007-2); September 20, 2007 (NCSLT 2007-3); and September 20, 2007 (NCSLT 2007-4).

b.     "Administrator" means the Administrator, as defined in the Trust Indenture, providing certain duties of the Trusts pursuant to the Administration Agreements.

c.     "Affected Consumers" includes Consumers who are or were subject to a Collections Lawsuit filed by Defendants' agents on behalf of Defendants on or after November 1, 2012 to collect a Debt where (a) the documentation necessary to prove the existence of the Debt does not exist or cannot be located by Defendants; (b) the documentation necessary to prove Trust ownership of the Debt does not exist or cannot be located by Defendants; or (c) the lawsuit was time-barred.

d.     "Affiant" means any signatory to an Affidavit, other than one signing solely as a notary or witness to the act of signing, signing in his or her capacity as an employee or agent of Defendants,

4

EX C

including employees or agents of Defendants' Servicers or Subservicers.

e.   "Affidavit" means any sworn statement filed with a court in connection with litigation to collect on a Debt.

f.   "Board" means the registered owner of a majority of the beneficial interest in each of the Trusts.

g.   "Clearly and Prominently" means

    i.   as to written information: written in a type size and location sufficient for an ordinary consumer to read and comprehend it and disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer; if the information is contained in a multi-page print document, the disclosure appears on the first page.

    ii.   as to information presented orally: spoken and disclosed in a volume, cadence, and syntax sufficient for an ordinary consumer to hear and comprehend.

h.   "Collections Lawsuits" means attempts by Defendants' Servicers on behalf of Defendants (or a third party acting on their behalf for an account owned or alleged to be owned by Defendants) through judicial processes in the United States of America, to collect or establish a Consumer's liability for a Debt.

i.   "Consumer" means any natural person obligated or allegedly obligated to pay any Debt.

5

EX C

j.    "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services that are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

k.    "Effective Date" means the date on which the Order is entered on the docket by the Court.

l.    "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

m.    "Primary Servicer" means the Servicer servicing student loans for Defendants under the Amended and Restated Private Student Loan Servicing Agreement dated September 28, 2006.

n.    "Related Consumer Action" means a private action by or on behalf of one or more Consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

o.    "Relevant Period" includes the period from November 1, 2012 to the Effective Date.

p.    "Defendants" means any or all of the fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts," which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT

6

EX C

2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4) and their successors and assigns.

q.   "Servicer" (or "Trusts' Servicer") means any Servicer, Primary Servicer, Subservicer, Special Servicer, Administrator, and any other individual or entity acting on behalf of Defendants with respect to the servicing of the student loans owned by Defendants, whether retained directly by Defendants or retained by an individual or entity acting on behalf of Defendants.

r.   "Servicing Agreement" means any Servicing Agreement that meets the definition of Servicing Agreement in each Trust's Indenture.

s.   "Special Servicer" means the Servicer providing services to the Trusts with respect to defaulted and delinquent student loans under the Special Servicing Agreements dated March 1, 2009 and May 1, 2009 (the "Special Servicing Agreements").

t.   "Subservicer" means any service provider that was retained by, and contracted with, directly or indirectly, the Special Servicer, as an agent of the Special Servicer, to provide services, including default prevention, and collection services, including but not limited to litigation, with respect to the servicing of the student loans owned by Defendants.

u.   "The Trust Agreements" are the Trust Agreements creating each of the Trusts.

7

## ORDER

**IT IS ORDERED** that:

### I. Conduct Requirements

8.   Defendants must provide all Defendants' Servicers that are engaged in the servicing or collection of Debts with actual notice of this Order within thirty (30) days of the Effective Date.

9.   Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

   a.   Defendants shall take all actions necessary to comply with the terms of the Order, including but not limited to ensuring that all of Defendants' Servicers acting as Defendants' agents comply with the terms of the Order.

   b.   Defendants must require that any of Defendants' Servicers or other agents retained by Defendants in connection with servicing or collection of student loans (1) agree to abide by the terms and conditions of the Order and (2) require any agents that Defendants' Servicers hire in connection with servicing or collection of student loans to abide by the terms and conditions of the Order.

   c.   Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or

8

EX C

indirectly, may not initiate a Collections Lawsuit to collect Debt
unless they possess:

i.      the documentation necessary to prove that a Trust owns the
loan, including but not limited to, documentation reflecting
the complete chain of assignment from the Debt's originator
to the specific Trust claiming ownership; and

ii.     a document signed by the Consumer, such as a promissory
note, evidencing the agreement to pay the loan forming the
basis of the Debt.

d.    Defendants and their officers, agents, servants, employees, and
attorneys who have actual notice of this Order, including but not
limited to all of Defendants' Servicers, whether acting directly or
indirectly, may not initiate a Collections Lawsuit to collect on a loan
for which the applicable statute of limitations has expired.

e.    Defendants and their officers, agents, servants, employees, and
attorneys who have actual notice of this Order, including but not
limited to all of Defendants' Servicers, whether acting directly or
indirectly, may not collect any Debt through Collections Lawsuits
that Defendants or their agents have any reason to believe may be
unenforceable.

f.    Defendants, their officers, agents, servants, employees, and
attorneys, and all other persons in active concert or participation
with any of them, who receive actual notice of this Order, including
but not limited to all of Defendants' Servicers, whether acting

9

EX C

directly or indirectly, are permanently restrained and prohibited, in connection with the collection of a Debt, from submitting any Affidavit:

i.      containing an inaccurate statement;

ii.     in which the Affiant represents, expressly or by implication, that the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records when that is not the case;

iii.    in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the Consumer's Debt when that is not the case;

iv.     in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the loan's chain of assignment or ownership when that is not the case;

v.      in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership when that is not the case;

vi.     representing, expressly or by implication, that the Affidavit has been properly notarized if the Affidavit was not executed in the presence of a notary or if the notarization was otherwise not compliant with applicable notary laws; or

vii.    in which the Affiant represents, expressly or by implication, that any documents or records concerning the Debt that

10

EX C

> forms the basis of the Collections Lawsuit have been
>
> reviewed by the Affiant when that is not the case.

10.    Defendants are permanently restrained and prohibited from reselling Debt that is time-barred or for which Defendants lack the necessary documentation required by Paragraph 9(c) without obtaining the written agreement of the purchaser to comply with this Order.

11.    Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, providing any testimony in a Collections Lawsuit that contains any misrepresentations, including false statements that the witness:

    a.    is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

    b.    has personal knowledge of the Consumer's Debt;

    c.    has personal knowledge of the loan's chain of assignment or ownership; or

    d.    has personal knowledge of the documents relating to the loan's chain of assignment or ownership.

12.    If Defendants determine that any of their agents, including but not limited to all of Defendants' Servicers, are on behalf of Defendants engaging in any conduct prohibited by this Order, including but not limited to Paragraphs

EX C

9 and 11 of this Order, Defendants promptly will take the necessary steps to ensure that their agents cease any and all practices that violate this Order.

13. Within thirty (30) days of making any determination described in Paragraph 12, Defendants must submit to the Enforcement Director a report detailing (1) the practices that violate the Order, (2) the specific agents engaged in the practices in question, and (3) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

14. With regard to pending Collections Lawsuits in which Defendants, through actions taken by Defendants' Servicers acting on behalf of Defendants, have filed an Affidavit that contains any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must either withdraw the pending Collections Lawsuit or ensure that the Affidavit is withdrawn. Defendants must instruct their attorneys, Defendants' Servicers, and their agents to either withdraw the pending Collections Lawsuit or notify the court of the following in writing while simultaneously providing the court with a copy

12

EX C

of the Order entered into between the Bureau and Defendants: "Plaintiff withdraws the affidavit of [insert name of affiant] pursuant to an Order entered into by the Consumer Financial Protection Bureau and the National Collegiate Student Loan Trusts."

15. With regard to concluded Collections Lawsuits in which Defendants, through actions of Defendants' Servicers acting on behalf of Defendants, filed with a court or in arbitration an Affidavit that contained any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must instruct their attorneys, the Defendants' Servicers, and their agents to cease post-judgment enforcement activities and will seek, and will instruct their agents to seek, to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any such concluded Collections Lawsuits.

16. With regard to servicing of Debt owned by Defendants, Defendants shall within ten (10) days of the Effective Date (1) direct the Primary Servicer to cease transferring any Debt to the Special Servicer and any Subservicer and

13

EX C

instead retain possession of the Debt pending approval and implementation of the Compliance Plan provided for in Section III; (2) direct the Special Servicer and any Subservicer to suspend further collection efforts on all Debt owned by Defendants pending approval and implementation of the Compliance Plan provided for in Section III; (3) direct the Special Servicer and any Special Servicer agent to discontinue making outbound call attempts, sending collection letters, providing negative reports to any of consumer reporting agencies the credit bureaus, or other efforts as may be instructed by Defendants and are necessary to effectuate compliance with this Order; (4) direct the Primary Servicer to instruct the Special Servicer and all Subservicers to return to the Primary Servicer all student loans in their portfolio owned by Defendants that are completed and the subject of each monthly Compliance Audit Report described in Paragraph 20; and (5) direct Defendants' Servicers to take any other appropriate actions necessary to effectuate compliance with this Order as instructed by the Defendants.

17.    Defendants shall direct (1) the Primary Servicer and Special Servicer to remit all payments from Consumers to an escrow account as designated by Defendants pursuant to Paragraph 18; (2) the Subservicer to remit funds to the Special Servicer and the Special Servicer to remit those payments to the escrow account as designated by Defendants pursuant to Paragraph 18; and (3) the Primary Servicer and Special Servicer to provide an itemized report to the Defendants identifying the payments remitted at the loan level in a format approved by the Defendants.

18.     Nothing in this Order shall prohibit Defendants or their Servicers from accepting payments from Consumers made in the regular course on Debt that is not subject to a Collections Lawsuit. All such payments shall be held in escrow until the requirements of Paragraphs 9(c)(1) and (2) are satisfied and Defendants have determined that sufficient loan documentation exists to either retain the payment or refund the amount paid as to be provided for in the Compliance Plan of Section III. Defendants may use funds from the escrow to carry out Trust operations, including payments to noteholders sufficient to avoid events of default under the Indenture Trust, auditors, consultants, accountants, legal counsel, and other necessary professionals.

## II. Compliance Audit

19.     Within thirty (30) days of the Effective Date, Defendants must secure and retain one or more qualified, independent consultants or auditors with specialized experience in the servicing of student loans, and acceptable to the Enforcement Director, to conduct an independent audit of all of the servicing and collecting conducted by Defendants' Servicers on student loans owned by Defendants from inception of each of the Trusts to the present, using procedures and standards generally acceptable to the student loan–servicing industry. The purposes of the Compliance Audit must be to determine, at a minimum:

a.     For each and every student loan, whether Defendants, or their agents (including Defendants' Servicers), have or ever had in their possession sufficient loan documentation, including signed

15

EX C

promissory notes and documentation reflecting the complete chain of assignment since the loan's origination, to support the claim that a Debt is currently owed to a Trust, including but not limited to, assignments from the Debt's originator to the Trust claiming ownership and any subsequent assignments by the Trust to a student loan guarantor (such as The Education Resources Institute or its successors);

b.    Whether certain loans owned by Defendants are no longer legally enforceable because the applicable statute of limitations has expired;

c.    Whether Collections Lawsuits have been filed on any loans for which sufficient documentation, including signed promissory notes and documentation reflecting the complete chain of assignment from the Debt's originator to the Collections Lawsuit's named plaintiff, is not in the possession of the Collections Lawsuit's named plaintiff, or a Defendants' Servicer acting on behalf of the named plaintiff, to prove the existence of the Debt owed to the Trust in question, or where the applicable statute of limitations has expired;

d.    Whether judgments were obtained in Collections Lawsuits described in Paragraph 19(c), the identity of Consumers from whom the Defendants obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers;

16

EX C

e.   Whether any student loans were disbursed to the Consumers after the loans allegedly were transferred to the Defendants;

f.   Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, have failed to comply with any Federal consumer financial law or any of the Servicers' Servicing Guidelines; and

g.   Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, are or have engaged in any practices on behalf of Defendants after the Effective Date that violate this Order.

20.   Within one hundred and eighty (180) days of the Effective Date and each thirty (30) days thereafter until finished, the independent consultant(s) must provide a written report to Defendants detailing the findings of the audit (the "Compliance Audit Reports"). The Compliance Audit Report with respect to additional Affected Consumers shall be completed within one hundred and eighty (180) days of the Effective Date, and the remainder of the Compliance Audit Reports within three hundred and sixty (360) days of the Effective Date. The Compliance Audit Report shall include the auditors' findings, conclusions, and a description of its methodology.

21.   Defendants must provide the Compliance Audit Reports to the Enforcement Director within fourteen (14) days of receipt by Defendants.

22.   Within thirty (30) days of receiving the final Compliance Audit Report identified in Paragraph 20, Defendants must submit to the Enforcement

17

EX C

Director for review and non-objection an amendment to the Compliance Plan ("Amended Compliance Plan") described in Section III to:

a.    ensure the withdrawal and dismissal without prejudice of any pending Collections Lawsuits identified in Paragraph 19(c);

b.    ensure that Defendants and their agents, including but not limited to any of Defendants' Servicers, will not take any steps to initiate collections or furnish negative reports to consumer reporting agencies, on loans identified in Paragraph 19(a), or accept payments on any defaulted Debts, unless and until Defendants first verify the existence of the documentation referenced in that subparagraph in order to prove the existence of the Debt and the identity of the current owner;

c.    ensure that Defendants and their agents, including but not limited to any of Defendants' Servicers, will not take any steps to collect Debts by any means on any loans identified in Paragraph 19(b) without Clearly and Prominently disclosing to the Consumer as follows:

i.    For those time-barred debts that generally cannot be included in a consumer report under the provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(a), but can be collected through other means pursuant to applicable state law, Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt and how long a debt can appear on your

18

EX C

credit report. Due to the age of this debt, we will not sue you

for it or report payment or non-payment of it to a credit

bureau."

ii.     For those time-barred debts that can be collected through

other means pursuant to applicable state law, and may be

included in a consumer report under the provisions of FCRA,

15 U.S.C. § 1681c(a), Defendants will instruct their agents to

include the following statement: "The law limits how long

you can be sued on a debt. Because of the age of your debt,

we will not sue you for it."

23.     Defendants and their agents are prohibited from making any

representation or statement, or from taking any other action that

interferes with, detracts from, contradicts, or otherwise undermines the

disclosures required in Paragraph 22.

24.     Defendants will be deemed to have complied with the disclosure

requirements of Paragraph 22 if Defendants or their agents makes a

disclosure to Consumers in a specific jurisdiction that (1) is required by the

laws or regulations of that jurisdiction, (2) complies with those laws or

regulations, and (3) is substantially similar to the disclosure required by

Paragraph 22.

25.     The Enforcement Director will have the discretion to make a

determination of non-objection to the Amended Compliance Plan or to

direct the Defendants to revise it. If the Enforcement Director directs the

Defendants to revise the Amended Compliance Plan, Defendants must

EX C

make the requested revisions and resubmit the Amended Compliance Plan to the Enforcement Director within thirty (30) days.

26.    After receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Amended Compliance Plan.

27.    Within thirty (30) days of receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants will provide the Amended Compliance Plan and the Compliance Audit Reports to Transworld Systems, Inc. ("TSI"), or, if applicable, to the Defendants' successor Special Servicer or Subservicer.

## III.    Compliance Plan

28.    Within one hundred and twenty (120) days of the Effective Date, Defendants must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendants and Defendants' Servicers acting on their behalf comply with all applicable Federal consumer financial laws and the terms of this Order ("Compliance Plan"). The Compliance Plan must include, at a minimum:

a.    Detailed steps for addressing each action required by this Order including operations meetings with the Primary Servicer;

b.    Specific timeframes and deadlines for implementation of the steps described above; and

EX C

c.     Comprehensive, written policies and procedures designed to ensure that any agents acting on behalf of the Defendants do not engage in practices in violation of this Order. These policies and procedures must include:

    i.    Detailed steps for addressing each action required of the Defendants or their agents, including but not limited to the Defendants' Servicers, by this Order;

    ii.    Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers including regular operations meetings with and audits of each Servicer and establishment of procedures to respond to exception requests;

    iii.    An effective employee training program required for all of the agents' employees, including but not limited to Affiants, whose duties include reviewing, drafting, preparing, processing, verification, execution or notarization of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

    iv.    Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

21

EX C

v.   Implementation of reasonable and appropriate written
     policies and procedures to ensure that Affiants verify the
     accuracy of each statement made in an Affidavit before
     executing the Affidavit; and

vi.  Comprehensive, written policies and procedures designed to
     ensure that any law firms engaged by any agent to collect
     Debt does not violate any Federal consumer financial laws,
     which must include, at a minimum:

     (1)   the law firm's duty to maintain adequate internal
           controls to ensure compliance with Federal consumer
           financial laws;

     (2)   the law firm's duty to provide adequate training on
           compliance with all applicable Federal consumer
           financial laws and the agent's policies and procedures
           related to Collections Lawsuits;

     (3)   the agent's authority to conduct periodic onsite
           reviews of the law firm's controls, performance, and
           information systems related to Collections Lawsuits;
           and

     (4)   periodic review by the agent of the law firm's controls,
           performance, and information systems related to
           Collections Lawsuits.

29.  The Enforcement Director will have the discretion to make a
     determination of non-objection to the Compliance Plan or direct

22

EX C

Defendants to revise it. If the Enforcement Director directs Defendants to revise the Compliance Plan, Defendants must make the revisions and resubmit the Compliance Plan to the Enforcement Director within thirty (30) days.

30. After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## IV.    Role of the Board

31. The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Bureau.

32. Although this Order requires Defendants to submit certain documents for the review or non-objection by the Enforcement Director, the Board of Defendants will have the ultimate responsibility for proper and sound management of Defendants and for ensuring that Defendants comply with Federal consumer financial law and this Order.

33. In each instance that this Order requires the Board to ensure adherence to or perform certain obligations of Defendants, the Board must:

a. Authorize whatever actions are necessary for Defendants to fully comply with the Order;

b. Require timely reporting by Defendants' Servicers to the Board on the status of compliance obligations; and

EX C

    c.    Require timely and appropriate corrective action to remedy any

            material non-compliance with any failures to comply with Board

            directives related to this Section.

### V. Order to Pay Redress

34.    Within ten (10) days of the Effective Date, the Defendants must reserve or

deposit into a segregated deposit account $3,500,000, for the purpose of

providing redress to Affected Consumers as required by this Section.

35.    Within one-hundred and twenty (120) days of the Effective Date, the

Defendants must submit to the Enforcement Director for review and non-

objection a comprehensive written plan for providing redress to the

previously identified Affected Consumers consistent with this Order

("Redress Plan"). The Enforcement Director will have the discretion to

make a determination of non-objection to the Redress Plan or direct

Defendants to revise it. If the Enforcement Director directs Defendants to

revise the Redress Plan, Defendants must make the revisions and resubmit

the Redress Plan to the Enforcement Director within thirty (30) days.

After receiving notification that the Enforcement Director has made a

determination of non-objection to the Redress Plan, Defendants must

implement and adhere to the steps, recommendations, deadlines, and

timeframes outlined in the Redress Plan.

36.    The Redress Plan must apply to all Affected Consumers and:

    a.    Specify how Defendants will identify all Affected Consumers;

EX C

b.   Provide processes for providing redress covering all Affected
     Consumers including providing redress for:

i.   Affected Consumers where the documentation necessary to
     prove the existence of the Debt did not exist or cannot be
     located by Defendants;

ii.  Affected Consumers where the documentation necessary to
     prove Trust ownership of the Debt did not exist or cannot be
     located by Defendants; and

iii. Affected Consumers who were subject to a Collections
     Lawsuit outside the applicable statute of limitations.

c.   Include a description of the following:

i.   Methods used to compile a list of potential Affected
     Consumers;

ii.  Methods used to calculate the amount of redress to be paid
     to each Affected Consumer;

iii. Procedures for issuance and tracking of redress to Affected
     Consumers; and

iv.  Procedures for monitoring compliance with the Redress
     Plan.

37.  The Redress Plan, at a minimum, must provide full restitution of all
     amounts collected since the initiation of the Collections Lawsuit filed
     against them from:

a.   The approximately 2,700 Affected Consumers identified prior to the
     Effective Date, who paid approximately $3,500,000; and

25

EX C

     b.     The Affected Consumers identified by the Compliance Audit in Section II.

38.    The Redress Plan must describe the process for providing redress for Affected Consumers and must include the following requirements:

     a.     A timetable for providing restitution to Affected Consumers identified in Paragraph 37(a) and (b) that provides restitution to each group of Affected Consumers as soon as practicable;

     b.     Defendants must mail a bank check to each Affected Consumer along with a Redress Notification Letter (as defined below);

     c.     Defendants must send the bank check by United States Postal Service first-class mail, address correction service requested, to the Affected Consumer's last known address as maintained by Defendants' records;

     d.     Defendants must make reasonable attempts to obtain a current address for any Affected Consumer whose Redress Notification Letter or redress check is returned for any reason, using the National Change of Address System, and must promptly re-mail all returned letters and redress checks to current addresses, if any; and

     e.     Processes for handling any unclaimed funds.

39.    With respect to redress paid to Affected Consumers, the Redress Plan must include:

     a.     The form of the letter ("Redress Notification Letter") to be sent notifying Affected Consumers of the redress, which must include language explaining the manner in which the amount of redress

EX C

was calculated and a statement that the provision of the refund payment is in accordance with the terms of this Order; and

b.    The form of the envelope that will contain the Redress Notification Letter.

40.    Defendants must not include in any envelope containing a "Redress Notification Letter" any materials other than the approved letters and redress checks, unless Defendants have obtained written confirmation from the Enforcement Director that the Bureau does not object to the inclusion of such additional materials.

41.    Within ninety (90) days of completion of the Redress Plan, Defendants must submit a report ("Redress Plan Report") to the Enforcement Director, which must include a review and assessment from an independent auditor agreed upon by Defendants and the Enforcement Director, on Defendants' compliance with the terms of the Redress Plan, including:

a.    The methodology used to determine the population of Affected Consumers;

b.    The redress amount for each Affected Consumer;

c.    The total number of Affected Consumers;

d.    The procedures used to issue and track redress payments;

e.    The amount, status, and planned disposition of all unclaimed redress payments; and

27

EX C

    f.    A description of the work of independent consultants that Defendants have used, if any, to assist and review their execution of the Redress Plan.

42.    Defendants must submit an Amended Redress Plan within thirty (30) days of the completion of the Compliance Audit with respect to additional Affected Consumers required by Section II that incorporates the results of that Audit. The amended Redress Plan must contemplate providing full restitution to all additional Affected Consumers identified in the Compliance Audit within 120 days of submission of the Amended Redress Plan.

43.    Defendants must provide all of the relief to Consumers required by the Order, regardless of whether the total of such relief exceeds the amount reserved or deposited into a segregated account in this Section.

44.    After completing the Redress Plan, if the amount of redress provided to Affected Consumers is less than $3,500,000, within thirty (30) days of the completion of the Redress Plan, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to Affected Consumers and $3,500,000.

45.    The Bureau may use these remaining funds to pay additional redress to Affected Consumers. If the Bureau determines, in its sole discretion, that additional redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as

28

EX C

disgorgement. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

46. Defendants may not condition the payment of any redress to any Affected Consumer under this Order on that Affected Consumer's waiving any right.

47. With regard to the Debt that has yet to be collected from Affected Consumers for whom Defendants and their agents do not possess or cannot locate the documentation necessary to prove the existence of the Debt or Defendants' ownership of the Debt, Defendants must within one hundred and twenty (120) days of the Effective Date—and for Affected Consumers identified in the Compliance Audit Reports, within thirty (30) days of the completion of the Compliance Audit Reports—instruct that their agents within 90 days:

    a. Withdraw, dismiss, or terminate all pending Collections Lawsuits filed against Affected Consumers;

    b. Release or move to vacate all judgments obtained during the Relevant Time Period in connection with these Collections Lawsuits;

    c. Cease post-judgment enforcement activities and seek to remove, withdraw, or terminate its active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any Collections Lawsuits;

29

EX C

    d.    Refrain from (i) representing to a Consumer or any other person that Defendants are or were owed a Debt, (ii) taking any steps to collect or to seek to collect the Debt in question, (iii) furnishing reports on the Debt in question, except as otherwise required by this Order; and

    e.    Request that the consumer reporting agencies correct any affected collection account or tradeline, which may include amending, deleting, or suppressing the incorrect account or tradeline.

48.    With regard to time-barred Debt that has yet to be collected from Affected Consumers, Defendants and their agents will not take any steps to collect Debts by any means without Clearly and Prominently disclosing to the consumer:

    a.    For those time-barred debts that generally cannot be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), but can be collected through other means pursuant to applicable state law, Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

    b.    For those time-barred debts that can be collected through other means pursuant to applicable state law, and may be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), Defendants will instruct their agents to include the

30

EX C

following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

49. Defendants and their agents are prohibited from making any representation or statement, or from taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in Paragraph 48.

50. Defendants will be deemed to have complied with the disclosure requirements of Paragraph 48 if Defendants or their agents make a disclosure to Consumers in a specific jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the disclosure required by Paragraph 48.

## VI.    Order to Pay Disgorgement

51. Defendants shall pay $7,800,000 as disgorgement for the proceeds they received from the unlawful practices related to the filing of Collections Lawsuits during the Relevant Period.

52. Within ten (10) days of the Effective Date, Defendants shall pay the above amount in the form of a wire transfer to the Bureau or such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the CFPB. The Bureau will then transfer the payment to the United States Treasury as disgorgement.

53. In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended,

EX C

will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

## VII.  Order to Pay Civil Money Penalty

54.  Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), the Defendants must pay a civil money penalty of $7,800,000 to the Bureau.

55.  Within ten (10) days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

56.  The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

57.  Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

   a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b.  Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

58.  To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled

32

EX C

to, nor may Defendants benefit by, any offset or reduction of any
compensatory monetary remedies imposed in the Related Consumer
Action because of the civil money penalty paid in this action or because of
any payment that the Bureau makes from the Civil Penalty Fund ("Penalty
Offset"). If the court in any Related Consumer Action grants such a Penalty
Offset, Defendants must, within thirty (30) days after entry of a final order
granting the Penalty Offset, notify the Enforcement Director, and pay the
amount of the Penalty Offset to the U.S. Treasury. Such a payment will not
be considered an additional civil money penalty and will not change the
amount of the civil money penalty imposed in this action.

## VIII.  Additional Monetary Provisions

59.   In the event of any default on Defendants' obligations to make payment
under this Order, interest, computed under 28 U.S.C. § 1961, as amended,
will accrue on any outstanding amounts not paid from the date of default
to the date of payment and will immediately become due and payable.

60.   Defendants must relinquish all dominion, control, and title to the funds
paid to the fullest extent permitted by law and no part of the funds may be
returned to Defendants.

61.   Under 31 U.S.C. § 7701, Defendants, unless they already have done so,
must furnish to the Bureau their taxpayer identifying numbers, which may
be used for purposes of collecting and reporting on any delinquent amount
arising out of this Order.

62.   Within thirty (30) days of the entry of a final judgment, consent order, or
settlement in a Related Consumer Action, Defendants must notify the

EX C

Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendants paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

## IX.   Reporting Requirements

63.   Defendants must notify the Enforcement Director of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' name or address. Defendants must provide this notice, if practicable, at least thirty (30) days before the development but in any case no later than fourteen (14) days after the development.

64.   Within one hundred and twenty (120) days of the Effective Date, and again one year after the Effective Date, Defendants must submit to the Enforcement Director an accurate written compliance progress report ("Compliance Report") that has been approved by the Board, which, at a minimum:

   a.   Describes in detail the manner and form in which Defendants have complied with this Order; and

34

# EX C

     b.    Attaches a copy of each Order Acknowledgment obtained under

          Section X, unless previously submitted to the Enforcement Director.

## X. Order Distribution and Acknowledgment

65.    Within thirty (30) days of the Effective Date, Defendants must deliver a

     copy of this Order to each of their board members or owners as well as to

     any managers, employees, Servicers, or other agents and representatives

     who have responsibilities related to the subject matter of the Order.

66.    For five (5) years from the Effective Date, Defendants must deliver a copy

     of this Order to any business entity resulting from any change in structure

     referred to in Section IX, any future board members, executive officers, or

     owners, as well as to any managers, employees, Servicers, or other agents

     and representatives who will have responsibilities related to the subject

     matter of the Order before they assume their responsibilities.

67.    Defendants must secure a signed and dated statement acknowledging

     receipt of a copy of this Order, ensuring that any electronic signatures

     comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001–31,

     within thirty (30) days of delivery, from all persons receiving a copy of this

     Order under this Section.

## XI.   Recordkeeping

68.    Defendants must create, or if already created, must retain for at least five

     (5) years from the Effective Date, the following business records:

     a.    All documents and records necessary to demonstrate full

          compliance with each provision of this Order, including all

          submissions to the Bureau.

35

EX C

      b.     All documents and records pertaining to the Redress Plan,

           described in Section V.

69.    Defendants must retain the documents identified in Paragraph 68 for the

      duration of the Order.

70.    Defendants must make the documents identified in Paragraph 68 available

      to the Bureau upon the Bureau's request.

## XII.   Notices

71.    Unless otherwise directed in writing by the Enforcement Director,

      Defendants must provide all submissions, requests, communications, or

      other documents relating to this Order in writing, with the subject line, "*In*

      *re* [name of Respondent], File No. Year-CFPB-   ," and send them either:

      a.     By overnight courier (not the U.S. Postal Service), as follows:

           Assistant Director for Enforcement
           Consumer Financial Protection Bureau
           ATTENTION: Office of Enforcement
           1625 Eye Street, N.W.
           Washington D.C. 20006; or

      b.     By first-class mail to the below address and contemporaneously by

           email to Enforcement_Compliance@cfpb.gov:

           Assistant Director for Enforcement
           Consumer Financial Protection Bureau
           ATTENTION: Office of Enforcement
           1700 G Street, N.W.
           Washington D.C. 20552

## XIII.   Cooperation with the Bureau

72.    Defendants must cooperate fully with the Bureau in this matter and in any

      investigation related to or associated with the conduct described in the

      Complaint. Defendants must provide truthful and complete information,

EX C

evidence, and testimony, and Defendants must cause their officers,

employees, representatives, or agents to appear for interviews, discovery,

hearings, trials, and any other proceedings that the Bureau may

reasonably request upon five (5) days' written notice, or other reasonable

notice, at such places and times as the Bureau may designate, without the

service of compulsory process.

## XIV.  Compliance Monitoring

73.   Within fourteen (14) days of receipt of a written request from the Bureau,

Defendants must submit additional Compliance Reports or other

requested information, which must be made under penalty of perjury;

provide sworn testimony; or produce documents.

74.   Defendants must permit Bureau representatives to interview any

employee or other person affiliated with Defendants who has agreed to

such an interview. The person interviewed may have counsel present.

75.   Nothing in this Order will limit the Bureau's lawful use of civil

investigative demands under 12 C.F.R. § 1080.6 or other compulsory

process.

## XV.   Retention of Jurisdiction

76.   The Court will retain jurisdiction of this matter for purposes of

construction, modification, and enforcement of this Order.

77.   Notwithstanding the provisions of Paragraph 76, any time limits for

performance fixed by this Order may be extended by mutual written

agreement of the parties and without further Court approval. Additionally,

details related to administration of §§ IX through XIV of this Order may be

37

EX C

modified by written agreement of the parties and without further Court approval. Any other modifications to this Order may be made only upon approval of the Court, upon motion by any party.

## XVI. Administrative Provisions

78. The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Order in future enforcement actions against Defendants and their affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order or to seek penalties for any violations of the Order.

79. Should Defendants seek to transfer or assign all or part of its operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

**IT IS SO ORDERED.**

Dated: _____

_____
UNITED STATES DISTRICT JUDGE

EX C

Consented and agreed to:

FOR THE CONSUMER FINANCIAL PROTECTION BUREAU:

ANTHONY ALEXIS
*Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

/s/ Carolyn Hahn
Carolyn Hahn
(E-mail: Carolyn.Hahn@cfpb.gov)
(Phone: 202-435-7250)
Edward Keefe
(E-mail: Edward.Keefe@cfpb.gov)
(Phone: 202-435-9198)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau

EX C

FOR THE NATIONAL COLLEGIATE STUDENT LOAN TRUSTS

Defendants National Collegiate Student Loan Trusts
Waive service and answer of the Complaint and
Consent to entry of this Consent Judgment.

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com

/s/ James A. Kosch
JAMES A. KOSCH
(E-mail: jkosch@mccarter.com)
(Telephone: 973-639-2028)
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Fax (973) 297-3964

EX C