# EXHIBIT 1

## Case Information

16-2-15162-31 | National Collegiate Student Loan Trust 2004-2 vs Esther Hoffman

| Case Number | Court | |
|---|---|---|
| 16-2-15162-31 | Snohomish | |
| File Date | Case Type | Case Status |
| 06/08/2016 | COL Collection | Completed/Re-Completed |

## Party

Plaintiff
National Collegiate Student Loan Trust 2004-2

Defendant
Hoffman, Esther

## Disposition Events

08/25/2016 Judgment ▾

Judicial Officer
Brudvik, Jacalyn D

Judgment Type
General Recovery

Monetary/Property Award

· Creditors: **National Collegiate Student Loan Trust 2004-2**

Debtors: Hoffman, Esther

Signed Date: 08/24/2016

Filed Date: 08/25/2016

Effective Date: 08/25/2016

Current Judgment Status:

Status: **Active**

Status Date: 08/25/2016

Monetary Award:

Fee: **Principal,** Amount: **$8,161.00** , Interest: **12.00 %**

Fee: **Other Fees,** Amount: **$833.66** , Interest: **12.00 %**

Fee: **Costs,** Amount: **$337.50** , Interest: **12.00 %**

Total: **$9,332.16**

Satisfaction Details:

Date: 08/25/2016

Amount: **$1,928.25**

Comment: PARTIAL - PAYMENTS REC'D PRE-JUDGMENT

Comment

Comment ()

## Events and Hearings

06/08/2016 Summons

06/08/2016 Complaint

06/08/2016 Case Information Cover Sheet

06/08/2016 Affidavit Declaration Certificate Confirmation of Service

06/08/2016 Notice

08/25/2016 Declaration of Mailing

08/25/2016 Cost Bill

08/25/2016 Affidavit in Support ▾

Comment
Re Judgment

08/25/2016 Notice ▾

Comment
Notice of Intent to Apply for Order of Default

08/25/2016 Motion for Default

08/25/2016 Default Judgment ▾

Judicial
Officer
Brudvik,
Jacalyn D

08/25/2016 Ex Parte Action With Order

08/25/2016 Case Resolution Default Judgment

11/29/2016 Writ of Garnishment

01/20/2017 Notice of Appearance

01/27/2017 Answer to Writ

02/10/2017 Writ of Garnishment

03/06/2017 Answer to Writ

03/21/2017 Writ of Garnishment

05/01/2017 Answer to Writ

05/23/2017 Writ of Garnishment

07/13/2017 Answer to Writ

08/01/2017 Writ of Garnishment

09/18/2017 Answer to Writ

09/29/2017 Writ of Garnishment

11/08/2017 Answer to Writ

# EXHIBIT 2

FILED

2016 JUN -8 AM II: 46

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH

16-2-15162-31
CMP
Complaint
329109



## IN THE SUPERIOR COURT OF STATE OF WASHINGTON
## FOR SNOHOMISH COUNTY

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2004-2, A DELAWARE
STATUTORY TRUST(S)

                    Plaintiff,

vs.

ESTHER HOFFMAN

                  Defendant.

No. **16 2 15162 31**

**COMPLAINT FOR MONIES DUE**

The plaintiff alleges as follow:

1.    The plaintiff NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, A DELAWARE STATUTORY TRUST(S) is duly authorized to bring this action in the State of Washington.

2.    The defendant is believed to be a married individual and as such incurred the below-referenced separate and community obligation.

3.    The defendant is a resident of Snohomish County, Washington.

4.    The defendant entered into a loan agreement with the plaintiff or the plaintiff's assignor.

5.    At all times relevant to this action, the plaintiff had in effect a loan agreement on which the defendant was and continues to be the primary obligor on that loan.

///

-1-

COMPLAINT FOR MONIES DUE
P&F FILE# 13-33591
WA_85 Complaint

ORIGINAL

PATENAUDE & FELIX, A.P.C.
2200 6th Avenue, Suite 790, Seattle, WA 98121
Tel: (206) 441-4065  Toll Free: (800) 832-7675

6.   As a result of the terms of the agreement, the defendant is indebted to the plaintiff on said loan in the amount of $8,994.66.

7.   Although demand has repeatedly been made upon the defendant for the unpaid balance of $8,994.66 on said loan, the defendant is now in default under the terms and conditions of the agreement.

8.   The plaintiff's attorneys are debt collectors. This is an attempt to collect a debt and any information obtained will be used for that purpose.

WHEREFORE, the plaintiff prays for judgment against the defendant as follows:

1.   For the principal sum of $8,994.66.

2.   Its costs and disbursements incurred in this action.

3.   For Post Judgment interest to run at the rate of 12% per annum from the date of judgment.

4.   Such other further and equitable relief as the Court finds just and proper.

DATED: December 13, 2013

PATENAUDE & FELIX, A.P.C.

MATTHEW CHEUNG, WSBA #43067
Attorney for Plaintiff
2200 6th Avenue, Suite 790
Seattle, WA 98121
Tel: (206) 441-4065

-2-

COMPLAINT FOR MONIES DUE
P&F FILE# 13-33591
WA_85 Complaint

PATENAUDE & FELIX, A.P.C.
2200 6th Avenue, Suite 790, Seattle, WA 98121
Tel: (206) 441-4065  Toll Free: (800) 832-7675

# EXHIBIT 3



FILED

2016 JUN -8 AM 11:46

SONYA KRASKI
CLERK
SNOHOMISH CO. WASH

SUPERIOR COURT, IN AND FOR THE COUNTY OF SNOHOMISH
STATE OF WASHINGTON

National Collegiate Student Loan Trust 2004-2  A
Delaware Statutory Trust(s)

Plaintiff / Petitioner.

vs.

ESTHER  HOFFMAN, ET AL.

Defendant / Respondent

Cause #:  **16  2  15162  31**

Declaration of Service of:

Hearing Date:

Declaration:

The undersigned hereby declares: That s(he) is now and at all times herein mentioned, a citizen of the United States and a resident of the State of Washington, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and competent to be a witness therein.

On the date and time of:  12/28/13 4:05 PM
at the address of:     8808 EMERSON PL
                       EVERETT                    WA        982081946
within the County of   SNOHOMISH
State of WASHINGTON, the declarant duly served the above-described documents upon:
        ESTHER HOFFMAN
by then and there personally delivering 2 true and correct copy(ies) thereof, by then presenting to and leaving the same with: PAT HOFFMAN
        CO-RESIDENT/MOTHER
        WHITE FEMALE 51-65 YRS. BROWN HAIR 5FT 4IN - 5FT 8IN 161-200 LBS
A person of suitable age and discretion residing at the defendant's/respondent's usual place of abode listed above.

No information was provided that indicates that the subjects served are members of the U.S. military.

I hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: 2013-12-29      Lynnwood WA 98036

by _____                Service Fee Total: $67.50
    MARCO A. RUISLA SR          2011-26

Specialized Attorney Services

(206) 906-9694

**ORIGINAL
PROOF OF SERVICE**

13-33591
Patenaude & Felix, APC
4727 44th SW Ave, #103
Seattle, WA 98116
(206) 906-9694

# EXHIBIT 4

15- 33591
WA

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2004-2
A Delaware Statutory Trust(s)                    )
                                                 )
                                                 )
Plaintiff                                        )          Docket #
                                                 )
v.                                               )
                                                 )
ESTHER HOFFMAN                                   )
                                                 )
                                                 )
Defendant(s)                                     )

## AFFIDAVIT AND VERIFICATION OF ACCOUNT

STATE OF GEORGIA                    )
                                    )
COUNTY OF  GWINNETT                 )

BEFORE ME, the undersigned authority, personally appeared Affiant ___Dudley Turner_____,

who being first duly sworn, deposes and states:

    1.    I am employed by Transworld Systems Inc. (hereinafter TSI), the designated

Custodian of Records for Plaintiff pertaining to the Defendant's education loan(s) forming the

subject matter of the above-captioned Complaint. I am duly authorized by Plaintiff to make the

representations contained in this Affidavit and I am over the age of 18 and competent to testify to

the matters stated in this Affidavit.

    2.    I am competent and authorized to testify relating to this action through personal

knowledge of the business records, including the electronic data, sent to TSI that detail the

education loan records.  I also have personal knowledge of the record management practices and

procedures of Plaintiff and the practices and procedures Plaintiff requires of its loan servicers and other agents.

3.      This lawsuit arose out of an unpaid loan or loans owed by defendant ESTHER HOFFMAN to Plaintiff.  Specifically Defendant entered into an education loan agreement at Defendant's special instance and request.  A loan was extended for Defendant to use pursuant to the terms of the loan agreements.  Defendant has failed, refused, and/or neglected to pay the balance or balances pursuant to the agreed repayment schedule or schedules.

4.      Education loan account records are compiled and recorded as part of Plaintiff's regularly conducted business activity at or near the time of the event and from information transmitted from a person with knowledge of said event, by or from information transmitted by a person with knowledge of the accounts or events described within the business record.  Such records are kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

5.      I am familiar with the education loan records within my possession as custodian of records related to this matter.  I have been authorized by Plaintiff to make this certification on behalf of Plaintiff for this case.

6.      I have reviewed the education loan records as business records described in this affidavit regarding account number xxxxx9189/001-001000.  No payment has been made since 06/03/2015.  After all payments, credits and offsets have been applied, defendant ESTHER HOFFMAN owes the principal sum of $7,566.41, together with accrued interest in the amount of $0.00, totaling the sum of $7,566.41 as of 8/3/2015.  Attached hereto and incorporated as Exhibit "A" is a true copy of the underlying Credit Agreement/Promissory Note.  In the event the Defendant(s) faxed the executed Credit Agreement/Promissory Note, per its terms they agreed

their facsimile/electronic signature is deemed to be an original.  Under applicable federal and state law, all copies of signatures executed via facsimile or electronic email are considered to be legal, binding agreement.

7.    Based on records maintained by Plaintiff, the Defendant is not a minor or incompetent.  A reasonable inquiry has been made to determine if the Defendant is in the military service of the United States of America, and to the best of my knowledge, Defendant is not in such military services and is therefore not entitled to the rights and privileges provided under the Soldiers and Sailors Civil Relief Act of 1940, as amended.

8.    I declare under the penalty of perjury under the laws of the forum state that the foregoing is true and correct to the best of my knowledge, information and belief.

**FURTHER AFFIANT SAYETH NAUGHT.**

AFFIANT
Print Name:   Dudley Turner
Title:          Legal Case Manager

SWORN AND SUBSCRIBED to before me this ___5___ day of ___August___, 20 15

NOTARY PUBLIC
My Commission Expires on



# EXHIBIT A

## *Creditworthy Student* • Loan Request/Credit Agreement – Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan                    Academic Period: 09/2004-05/2005

Lender: Bank of America, National Association          School: SMITH COLLEGE

Loan Amount Requested: $6000.00        Repayment Option: Deferred Principal and Interest

Deferral Period Margin: 4.65          Repayment Period Margin: 4.65          Loan Origination Fee Percentage: 9.50

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name: Esther R Hoffman          Home Address: 8808 Emerson Pl Everette, WA 98205
Social Security #: [redacted]9199       *Cucina*     Date of Birth: [redacted]1983     Home Telephone: 4255136584
Current Employer: Girl and Boys Club          Employer Telephone: 4252270132
Current Position: Other *Serve*     Years There: 4 Years NA
Years at Previous Employment: *Boys & Girls Club 4 years → Cucina just for this summer*

All money, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):   ☒ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name: Karen Shelton Johnson          Reference Home Tel #: (425) 745-8350          Work Tel #:
Reference  Street Address: 1912 N 203rd St
Reference City/State/Zip:  Shoreline, WA 98133

By my signature, I certify that I have read, understand and agree to the terms of and underrate the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement BK.04-05.CRWO.10DC.0104 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a)  **DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
(b)  **DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
(c)  **YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.**
(d)  **YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

**PLEASE SIGN BELOW – RETURN** This Page With Proof of Income and Other Information (if applicable)
**FAX TO:** 800-704-9406.

Signature of Borrower _[signature: Esther R. Hoffman]_          Date _07-30-2004_

JUL 31 A

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7.).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following:
(a) endorsing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I received the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.
(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
(c) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 5 ¾ years after the Disbursement Date; provided, however, that if the Student begins a medical

residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¾ years after the Disbursement Date.
(d) *Residency Loan Program:* 270 days after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The Index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default and the loan has been sold to TERI (see Section L.11), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period.

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to, make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly

Installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to, make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - if any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. INFORMATION:
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L. ADDITIONAL AGREEMENTS:
1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

M. DISCLOSURE NOTICES

ALL APPLICANTS:
IMPORTANT FEDERAL LAW NOTICE—

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

> **What this means for you:**
> When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

## NOTE DISCLOSURE STATEMENT

$ ___6,629.83___    Borrower(s)   ESTHER R HOFFMAN
___02314625___
Loan No.

Student:   ESTHER R HOFFMAN
Date:      August 4, 2004

ESTHER R HOFFMAN              Lender Name and Address:
8808 EMERSON PL               BANK OF AMERICA, N.A.
EVERETTE, WA  98208           600 WILSHIRE BLVD, 4TH FLOOR
                              LOS ANGELES, CA 90017

This disclosure statement relates to your Loan Note disbursed on    August 4, 2004
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| 6.724 % | $ 6,758.40 | $ 6,000.00 | $ 12,758.40 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 53.16 | On the 30th day of each month beginning on 12/2006 |
| | | |
| | | |

VARIABLE RATE: The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payment on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $ 91.01, and your monthly principal and interest payments would increase by $ 9.37.

SECURITY: You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
LATE CHARGES: If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
PREPAYMENT: If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Estimates: All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)          $ ___6,629.83___

Itemization of Amount Financed
Amount paid to ESTHER R HOFFMAN           $ ___6,000.00___
Amount paid to                            $ _____
Total Amount Financed                     $ ___6,000.00___

Itemization of Prepaid Finance Charge
  Origination Fee                         $ ___629.83___
  Total Prepaid Finance Charge(s)         $ ___629.83___

```
<DOCUMENT>
<TYPE>EX-10.15
<SEQUENCE>16
<FILENAME>d281317.txt
<DESCRIPTION>POOL SUPPLEMENT (BANK OF AMERICA, N.A.)
<TEXT>
```

EXHIBIT 10.15


POOL SUPPLEMENT
BANK OF AMERICA, N.A.


This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain (i) Note Purchase Agreement dated as of April 30, 2001 and (ii) Note Purchase Agreement dated as of June 30, 2003, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of October 28, 2004. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1:  Purchase and Sale.

In consideration of the Minimum Purchase Price set forth in Schedule 1 attached hereto, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 2 (the "Transferred Bank of America Loans"), along with all of the Program Lender's rights under the Guaranty Agreement relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2004-2 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2:  Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 1 attached hereto.

Article 3:  Representations and Warranties.

3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a) The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and

authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

<PAGE>

(b) The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c) The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d) This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e) The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f) There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate

to the Transferred Bank of America Loans described in Schedule 2, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.

2

<PAGE>

        IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

                        THE FIRST MARBLEHEAD CORPORATION


                        By: /s/ John A. Hupalo
                            ----------------------------------
                            Name: John A. Hupalo
                            Title: Executive Vice President



                        BANK OF AMERICA, N.A.


                        By: /s/ Kathy Cannon
                            ----------------------------------
                            Kathy Cannon
                            Senior Vice President



                        THE NATIONAL COLLEGIATE FUNDING LLC

                        By: GATE Holdings, Inc., Member


                        By: /s/ Stephen Anbinder
                            ----------------------------------
                            Name: Stephen Anbinder
                            Title: President



<PAGE>


                        SCHEDULE 1


                        [**]

[Confidential Treatment Requested]

<PAGE>

SCHEDULE 2

[On file with the Indenture Trustee]

</TEXT>
</DOCUMENT>

# DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2

This Deposit and Sale Agreement (the "Sale Agreement"), dated as of October 28, 2004, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2004-2, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

## ARTICLE II
## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of October 1, 2004 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

## ARTICLE III
## SALE AND PURCHASE

Section 3.01.  Sale of Loans.  The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.  Assignment of Rights.  The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.  Settlement of the Payment.  The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.  In addition, the Purchaser will also issue the Class A-5 Notes to the Seller pursuant to the Indenture.

Section 3.04. <u>Assistance by Seller</u>. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01. <u>General</u>. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02. <u>Loan Representations</u>. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on <u>Schedule B</u> attached hereto.

Section 4.03. <u>Covenants</u>. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicer, First Marblehead Data Services, Inc. and Wachovia Trust Company, National Association (the "<u>Owner Trustee</u>") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents of the Purchaser and the Owner Trustee from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation.  If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

### ARTICLE VII
### MERGER OR CONSOLIDATION OF, OR ASSUMPTION
### OF THE OBLIGATIONS OF SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following:  (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders and holders of the grantor trust certificates (the "Certifcates") (the "Certificateholders", together with the Noteholders, the "Securityholders") and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in

3

the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee and the Grantor Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such

communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

        If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2004-2
> c/o Wachovia Trust Company, National Association, as Owner Trustee
> One Rodney Square, 1st Floor
> 920 King Street
> Wilmington, Delaware 19801
> Attention:  Mr. Sterling C. Correia

    If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> 230 Park Avenue, 10th Floor
> New York, NY 10169
> Attention:  Mr. Rob Baron

> with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street – 34th Floor
> Boston, MA 02199-8157
> Attention: Mr. Richard P. Zermani

or to such other address as either party shall have provided to the other parties in writing.  Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand-delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

    This Sale Agreement may be amended by the parties hereto without the consent of the related Securityholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Securityholders; provided that such action will not, in the opinion of counsel satisfactory to the Indenture Trustee and the Grantor Trustee, materially affect the interest of any such Securityholder.

    In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of

adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Securityholders or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Grantor Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Securityholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement, the Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES, HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wachovia Trust Company, National Association, not in its individual capacity but

6

solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wachovia Trust Company, National Association in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser.  For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By: _____
   Name:
   Title:
          Stephen Anbinder
          President
          GATE Holdings, Inc.

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, as Purchaser

By:    Wachovia Trust Company, National Association, not in its individual capacity but solely as Owner Trustee


By: _____
   Name:
   Title:

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By:_____
      Name:
      Title:


THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, as Purchaser

By:    Wachovia Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By:_____
Name:  STERLING C. CORREIA
Title:      VICE PRESIDENT

**Deposit and Sale Agreement**

**SCHEDULE A**

Pool Supplements

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated October 28, 2004, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.
- Bank One, N.A., dated October 28, 2004, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program and M&T REFERRAL Loan Program.
- Charter One Bank, N.A., dated October 28, 2004, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, (AMS) TuitionPay Diploma Loan Program, Brazos Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Loan Corporation Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, Education Assistance Services Loan Program, ESF Alternative Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, Navy Federal Alternative Loan Program, NextStudent Alternative Loan Program, PNC Bank Resource Loan Program, SAF Alternative Loan Program, Start Education Loan Program, Southwest Loan Program and WAMU Alternative Student Loan Program.
- Chase Manhattan Bank USA, N.A., dated October 28, 2004, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated October 28, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Loan Program, Navy Federal Referral Loan Program, Xanthus Loan Program and Pennsylvania State University Undergraduate and Continuing Education Loan Program.
- GMAC Bank, dated October 28, 2004, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- The Huntington National Bank, dated October 28, 2004, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated October 28, 2004, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.
- PNC Bank, dated October 28, 2004, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program.
  SunTrust Bank, dated October 28, 2004, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

**SCHEDULE B**
Student Loan Purchase Agreements

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program and ISLP Loan Program.
- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.
- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.
- Bank One, N.A., dated July 26, 2002, for loans that were originated under Bank One's M&T REFERRAL Loan Program
- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.
- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's (AMS) TuitionPay Diploma Loan Program.
- Charter One Bank, N.A., dated July 15, 2003, for loans that were originated under Charter One's Brazos Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.
- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Flexible Education Loan Program.
- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.
- Charter One Bank, N.A., dated December 4, 2002, for loans that were originated under Charter One's Comerica Alternative Loan Program.
- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's Education Assistance Services Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's ESF Alternative Loan Program.
- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).
- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.
- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's Navy Federal Alternative Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.
- Charter One Bank, N.A., dated March 17, 2003, for loans that were originated under Charter One's PNC Bank Resource Loan Program.
- Charter One Bank, N.A., dated May 1, 2003, for loans that were originated under Charter One's SAF Alternative Loan Program.
- Charter One Bank, N.A., dated September 20, 2002, for loans that were originated under Charter One's Southwest Loan Program.
- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Start Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.
- Chase Manhattan Bank USA, N.A., dated September 30, 2003, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Alternative Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Navy Federal Referral Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Xanthus Loan Program.
- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Pennsylvania State University Undergraduate and Continuing Education Loan Program.
- GMAC Bank, dated May 30, 2003, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.
- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program.
- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

# EXHIBIT 5

```
16-2-15162-31
NT
Notice
554163
```

**FILED**

**2016 AUG 25  AM 10: 48**

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR SNOHOMISH COUNTY**

| | |
|---|---|
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, A DELAWARE STATUTORY TRUST(S) | Case No.: 16-2-15162-31 |
| Plaintiff, | **NOTICE OF INTENT TO APPLY FOR ORDER OF DEFAULT** |
| vs. | |
| ESTHER HOFFMAN | |
| Defendant. | |

TO: ESTHER HOFFMAN
      8808 EMERSON PL
      EVERETT WA 98208-1946

    The defendant has failed to appear, plead, or otherwise defend against the allegations in the Complaint within twenty (20) days from the date of service of the Summons and Complaint. The defendant is hereby notified of the plaintiff's intent to apply for an order of Default Judgment in the above entitled case in no less than 10 days after service of this Notice in accordance with CR 55(f).

    Application for the order of Default Judgment will be made in the Ex Parte Department of SNOHOMISH County Court at:

3000 ROCKEFELLER AVE FL 2, MS 605

EVERETT, WA 98201-4046

DATED: __7/21/2016__, at Lynnwood, WA

Presented by:

**PATENAUDE & FELIX, A.P.C.**

MATTHEW CHEUNG, WSBA #43067
19401 40th Avenue West, Suite 280
Lynnwood, WA 98036
-1- Tel: (425) 361-1662

**NOTICE OF INTENT TO APPLY FOR ORDER OF DEFAULT**

WA_68A Ntc Intent App Ordr Deflt        P&F File No. 13-33591



# EXHIBIT 6

FILED

2016 AUG 25  AM 10: 48

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH

16-2-15162-31
MTDFL
Motion for Default
554164

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR SNOHOMISH COUNTY

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2004-2, A DELAWARE
STATUTORY TRUST(S)

Plaintiff,

vs.

ESTHER  HOFFMAN

Defendant.

Case No.: 16-2-15162-31

**MOTION & DECLARATION FOR
DEFAULT AND JUDGMENT**

### I. MOTION

The plaintiff, by and through its attorneys, Patenaude & Felix, A.P.C., respectfully moves the Court for an Order of Default and Judgment against the defendant, ESTHER  HOFFMAN, in the principal sum of $8,994.66, together with costs, as requested in the judgment.

This Motion is based on the affidavits or declarations in support of entry of judgment submitted herewith and the subjoined declaration of counsel.

### II. DECLARATION

The undersigned declares under penalty of perjury under the laws of the State of Washington that the following is true and correct:

1.      I am the attorney of record for the plaintiff herein. I base this declaration on my review of the file maintained by this law firm with regard to this matter.

/ / /

-1-

MOTION & DECLARATION FOR DEFAULT JUDGMENT

PATENAUDE & FELIX, A.P.C.
19401 40th Avenue West, Suite 280, Lynnwood, WA 98036
Tel: (425) 361-1662  Toll Free: (800) 832-7675

WA_90 Mtn and Dec DJ                    P&F File No. 13-33591

2.      That on 12/28/2013, in Snohomish County, Washington, the defendant, ESTHER HOFFMAN, was served with a Summons and Complaint in the above referenced action. The Affidavit of such service is filed herein. More than 20 days have elapsed since the date of service.

3.      The defendants have failed to serve an appearance/answer or otherwise defend, in accordance with CR55 within the time permitted by law.

4.      Venue is appropriate under R.C.W. 4.28, because Snohomish County is the county in which the defendant resides.

5.      The defendant is not a person in the Military Service of the United States, as defined in the Soldier's and Sailor's Civil Relief Act of 1940 as amended by the The Service member's Civil Relief Act of 2003. The declarant's staff has checked the U.S. Department of Defense Manpower Date Center, and the report provided and attached states that the Department of Defense does not possess any information indicating the defendant is on Military Duty. Attached as an addendum is the information that the above statement if based upon. The declarant is unable to determine whether the defendant is a dependent of a service member.

I declare under penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

DATED: July 06, 2016, at Lynnwood, WA.

Presented by:

**PATENAUDE & FELIX, A.P.C.**

MATTHEW CHEUNG, WSBA #43067
Attorney for Plaintiff
Patenaude & Felix, A.P.C.
19401 40th Avenue West, Suite 280
Lynnwood, WA 98036
(425) 361-1662

-2-

MOTION & DECLARATION FOR DEFAULT JUDGMENT

PATENAUDE & FELIX, A.P.C.
19401 40th Avenue West, Suite 280, Lynnwood, WA 98036
Tel: (425) 361-1662  Toll Free: (800) 832-7675

WA_90 Mtn and Dec DJ                    P&F File No. 13-33591

# EXHIBIT 7

```
16-2-15162-31
DFJG
Default Judgment
654168
```

FILED

2016 AUG 25  AM 10: 48

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR SNOHOMISH COUNTY

| | |
|---|---|
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, A DELAWARE STATUTORY TRUST(S)<br><br>Plaintiff,<br><br>vs.<br><br>ESTHER  HOFFMAN<br><br>Defendant. | Case No.: 16-2-15162-31<br><br>**ORDER OF DEFAULT AND DEFAULT JUDGMENT**<br><br>**(CLERK'S ACTION REQUIRED)** |

## I. JUDGMENT SUMMARY

Judgment Creditor:                    NATIONAL COLLEGIATE STUDENT LOAN

TRUST 2004-2, A DELAWARE STATUTORY

TRUST(S)

Attorney for Judgment Creditor:       MATTHEW CHEUNG;
PATENAUDE & FELIX, A.P.C.

Judgment Debtor:                      ESTHER  HOFFMAN

Principal Amount:          $8,161.00

Interest to Date of Judgment:   $833.66

Costs:                     $337.50

Principal Total:           $9,332.16

Attorney's Fee:            $0.00

Less: Credit of            $1,928.25

TOTAL JUDGMENT:            $7,403.91

For Post Judgment interest to run at the rate of 12% per annum from the date of judgment.

-1-

**ORDER OF  DEFAULT AND DEFAULT JUDGMENT**

Ex parte



**PATENAUDE & FELIX, A.P.C.**
19401 40th Avenue West, Suite 280, Lynnwood, WA 98036
Tel: (425) 361-1662  Toll Free: (800) 832-7675

WA_91 Ord of Def Jg                    P&F File No. 13-33591

## II. ORDER AND JUDGMENT

The plaintiff's motion for an Order of Default and Default Judgment against the above named defendant came before the undersigned judge/court commissioner of this Court. The Court, having found that: (1) the defendant was duly served with a Summons and Complaint and has failed to appear, answer, or otherwise defend within the time provided by law; (2) finds that the venue is proper; and (3) the defendant is justly indebted to the plaintiff, as evidence by the proof presented herewith, now, therefore, it is hereby ORDERED, ADJUDGED, AND DECREED that the defendant, ESTHER HOFFMAN, is hereby in default.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff shall have judgment against the defendant, ESTHER HOFFMAN, for the principal amount of $8,161.00, together with the plaintiff's costs of $337.50 and interest in the amount of $833.66, and less credits of 1,928.25, for a total Judgment of $7,403.91, and said Judgment shall bear interest at the highest legal rate.

AUG 2 4 2016

ENTERED this_____ day of _____, 20____

_____
JUDGE/COURT COMMISSIONER

Presented by:

**PATENAUDE & FELIX, A.P.C.**

_____
MATTHEW CHEUNG, WSBA #43067
Attorney for Plaintiff
19401 40th Avenue West, Suite 280
Lynnwood, WA 98036
Tel: (425) 361-1662

-2-
ORDER OF DEFAULT AND DEFAULT JUDGMENT

PATENAUDE & FELIX, A.P.C.
19401 40th Avenue West, Suite 280, Lynnwood, WA 98036
Tel: (425) 361-1662  Toll Free: (800) 832-7675

WA_91 Ord of Def Jg                    P&F File No. 13-33591

# EXHIBIT 8

16-2-15162-31
NTAPR
Notice of Appearance
973529

FILED

2017 JAN 20  AM 11:00

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH.

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR SNOHOMISH COUNTY

National Collegiate Student Loan Trust,

        Plaintiff,

vs.

Esther Hoffman

        Defendant

Case No.: 16-2-15162-31

NOTICE OF APPEARANCE OF COUNSEL

**TO:**    **CLERK OF THE COURT;**
**AND TO:**  **Attorneys for National Collegiate Student Loan Trust**

**YOU AND EACH OF YOU** will please take notice that Sam Leonard of Leonard Law, hereby appears in the above-entitled action as counsel for the Defendant Esther Hoffman and requests that all further papers and pleadings herein be served upon her at the following address:

Samuel Leonard
Leonard Law
801 2nd Avenue, Suite 1410
Seattle, WA 98104

The undersigned requests a copy of the Case Management Schedule, and that any unfiled pleadings be filed, and that the undersigned be notified of the cause number for this case if not on the initial pleadings.

NOTICE OF APPEARANCE - 1

**Leonard Law**
801 2nd Avenue, Suite 1410
Seattle, WA 98104
Ph. (206) 486-1176
Fax (206) 458-6028

DATED this 17th of January 2017.

Sam Leonard WSBA #46498
Attorney for Defendant

NOTICE OF APPEARANCE - 2

**Leonard Law**
801 2nd Avenue, Suite 1410
Seattle, WA 98104
Ph. (206) 486-1176
Fax (206) 458-6028

## CERTIFICATE OF SERVICE

I, Sam Leonard, hereby certify that on the date set forth below I caused to be served true and correct copies of the foregoing to the parties listed below in the manner indicated:

| Name and Address of Party: | Method of Service: | |
|---|---|---|
| Attorney Mathew Cheung<br>Patenaude and Felix, APC<br>19401 40th Avenue West, Suite 280<br>Lynwood, WA 98036<br>Matthew.Cheung@pandf.us | | Legal Messenger |
| | X | US Mail |
| | | Facsimile |
| | X | Email |
| | | Hand Delivery |

DATED this 17th of January, 2017.

Sam Leonard WSBA #46498
Attorney for Defendant

NOTICE OF APPEARANCE - 3

EXHIBIT 9

8/21/2018                                  Washington Courts - Search Case Records



**Courts Home** | **Search Case Records**



Search | Site Map | ? eService Center

Home  |  Summary Data & Reports  |  Resources & Links  |  Get Help

# Superior Court Case Summary

# About Dockets

**Court:** King Co Superior Ct
**Case Number:** 17-2-10605-4

| Sub | Docket Date | Docket Code | Docket Description | Misc Info |
|---|---|---|---|---|
| 1 | 04-24-2017 | COMPLAINT | Complaint | |
| 2 | 04-24-2017 | SET CASE SCHEDULE JDG0026 | Set Case Schedule Judge David S. Keenan Dept 26 | 04-23-2018ST |
| 3 | 04-24-2017 | CASE INFORMATION COVER SHEET LOCK | Case Information Cover Sheet Original Location - Kent | |
| 4 | 04-24-2017 | SUMMONS | Summons | |
| 5 | 04-25-2017 | AFFIDAVIT/DCLR/CERT OF SERVICE | Affidavit/dclr/cert Of Service | |
| 6 | 04-25-2017 | COST BILL | Cost Bill | |
| 7 | 04-25-2017 | MOTION FOR DEFAULT JUDGMENT | Motion For Default Judgment /pla | |
| 8 | 04-25-2017 | DEFAULT JUDGMENT | Default Judgment | |
| 9 | 07-07-2017 | AFFIDAVIT FOR GARNISHMENT | Affidavit For Garnishment | |
| 10 | 07-13-2017 | NOTICE OF APPEARANCE | Notice Of Appearance/def | |
| 11 | 08-22-2017 | ANSWER TO WRIT OF GARNISHMENT | Answer To Writ Of Garnishment | |
| 12 | 09-07-2017 | AFFIDAVIT FOR GARNISHMENT | Affidavit For Garnishment | |
| 13 | 10-19-2017 | MOTION FOR ORDER TO SHOW CAUSE | Motion For Order To Show Cause/def | |
| 14 | 10-19-2017 | MOTION FOR DEFAULT | Motion For Default/def | |
| 15 | 10-19-2017 | DECLARATION | Declaration Of Sarah Douglass | |
| 16 | 10-19-2017 | DECLARATION | Declaration Of Keith Douglass | |
| 17 | 10-19-2017 | DECLARATION | Declaration Of Joseph Wilde | |
| 18 | 10-19-2017 | DECLARATION | Declaration Of Amanda Martin | |
| 19 | 10-19-2017 | ORDER TO SHOW CAUSE | Order To Show Cause /set Aside Jdgt | 11-03-2017 |
| 20 | 10-20-2017 | NOTICE OF HEARING ACTION | Notice Of Hearing Set Aside Default & Judgment | 11-03-20171T |
| 20A | 10-20-2017 | ANSWER TO WRIT OF GARNISHMENT | Answer To Writ Of Garnishment | |
| 21 | 10-23-2017 | AFFIDAVIT OF MAILING | Affidavit Of Mailing | |
| 22 | 11-01-2017 | NOTE FOR MOTION DOCKET-LATE FILING | Note For Motion Docket-late Filing | 11-02-2017 |
| 23 | 11-01-2017 | DECLARATION | Declaration Of Marco Ruisla | |
| 24 | 11-01-2017 | RESPONSE | Response /pla | |
| 25 | 11-01-2017 | MOTION TO CONTINUE | Motion To Continue /pla | |
| 26 | 11-01-2017 | MOTION | Motion /pla | |
| 27 | 11-01-2017 | MOTION | Motion /pla | |

## About Dockets

You are viewing the case docket or case summary. Each Court level uses different terminology for this information, but for all court levels, it is a list of activities or documents related to the case. District and municipal court dockets tend to include many case details, while superior court dockets limit themselves to official documents and orders related to the case.

If you are viewing a district municipal, or appellate court docket, you may be able to see future court appearances or calendar dates if there are any. Since superior courts generally calendar their caseloads on local systems, this search tool cannot display superior court calendaring information.

### Directions

King Co Superior Ct
516 3rd Ave, Rm C-203
Seattle, WA 98104-2361
Map & Directions
206-477-1400[Phone]
206-296-0986[Fax]
✉[Office Email]
**Visit Website**

### Disclaimer

**What is this website?** It is a search engine of cases filed in the municipal, district, superior, and appellate courts of the state of Washington. The search results can point you to the official or complete court record.

**How can I obtain the complete court record?** You can contact the court in which the case was filed to view the court record or to order copies of court records.

**How can I contact the court?**

8/21/2018                                    Washington Courts - Search Case Records

| 28 | 11-01-2017 | NOTE FOR MOTION DOCKET-LATE FILING | Note For Motion Docket-late Filing | 11-02-2017 |
| 29 | 11-02-2017 | RESPONSE | Response /def | |
| 30 | 11-02-2017 | RESPONSE | Response /def | |
| 31 | 11-14-2017 | AFFIDAVIT/DCLR/CERT OF SERVICE | Affidavit/dclr/cert Of Service | |
| 32 | 11-14-2017 | DECLARATION | Declaration Of Sarah K Douglass | |
| 33 | 11-14-2017 | DECLARATION | Declaration Of Joseph Wilde | |
| 34 | 11-14-2017 | DECLARATION | Declaration Of Keith Douglass | |
| 35 | 11-14-2017 | MOTION HEARING JDG0034 | Motion Hearing Judge Aaron C. Allred, Dept 34 | |
| - | 11-14-2017 | AUDIO LOG | Audio Log Dr 4b | |
| 36 | 11-17-2017 | ORDER VACATING JUDGMENT | Order Vacating Judgment /reinstate Case | |
| 37 | 03-20-2018 | MOTION TO DISMISS | Motion To Dismiss /pla | |
| 38 | 03-20-2018 | MOTION TO DISMISS | Motion To Dismiss /pla | |
| 39 | 03-20-2018 | ORDER OF DISMISSAL W/OUT PREJUDICE | Order Of Dismissal W/out Prejudice | |

Click here for a court directory with information on how to contact every court in the state.

**Can I find the outcome of a case on this website?**
No. You must consult the local or appeals court record.

**How do I verify the information contained in the search results?**
You must consult the court record to verify all information.

**Can I use the search results to find out someone's criminal record?**
No. The Washington State Patrol (WSP) maintains state criminal history record information. Click here to order criminal history information.

**Where does the information come from?**
Clerks at the municipal, district, superior, and appellate courts across the state enter information on the cases filed in their courts. The search engine will update approximately twenty-four hours from the time the clerks enter the information. This website is maintained by the Administrative Office of the Court for the State of Washington.

**Do the government agencies that provide the information for this site and maintain this site:**
▸ **Guarantee that the information is accurate or complete?**
NO
▸ **Guarantee that the information is in its most current form?**
NO
▸ **Guarantee the identity of any person whose name appears on these pages?**
NO
▸ **Assume any liability resulting from the release or use of the information?**
NO

Courts | Organizations | News | Opinions | Rules | Forms | Directory | Library
Back to Top | Privacy and Disclaimer Notices

S3

# EXHIBIT 10

FILED

17 APR 24 PM 1:35

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-10605-4 KNT

**IN THE SUPERIOR COURT OF STATE OF WASHINGTON
FOR KING COUNTY**

| | |
|---|---|
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, A DELAWARE STATUTORY TRUST(S) | No. |
| Plaintiff, | **COMPLAINT FOR MONIES DUE** |
| vs. | |
| SARAH K DOUGLASS | |
| Defendant. | |

The plaintiff alleges as follow:

1.      The plaintiff NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, A DELAWARE STATUTORY TRUST(S) is duly authorized to bring this action in the State of Washington.

2.      The defendant is believed to be a married individual and as such incurred the below-referenced separate and community obligation.

3.      The defendant is a resident of King County, Washington.

4.      The defendant entered into a loan agreement with the plaintiff or the plaintiff's assignor BANK OF AMERICA, NA.

5.      At all times relevant to this action, the plaintiff had in effect a loan agreement on which the defendant was and continues to be the primary obligor on that loan.

///

-1-

**COMPLAINT FOR MONIES DUE**
P&F FILE# 15-40570
WA_85 Complaint

**PATENAUDE & FELIX, A.P.C.**
19401 40th Avenue West, Suite 280, Lynnwood, WA 98036
Tel: (425) 361-1662  Toll Free: (800) 832-7675

6.    As a result of the terms of the agreement, the defendant is indebted to the plaintiff on said loan in the amount of $1,931.11.

7.    Although demand has repeatedly been made upon the defendant for the unpaid balance of $1,931.11 on said loan, the defendant is now in default under the terms and conditions of the agreement.

8.    The plaintiff's attorneys are debt collectors. This is an attempt to collect a debt and any information obtained will be used for that purpose.

WHEREFORE, the plaintiff prays for judgment against the defendant as follows:

1.    For the principal sum of $1,931.11.

2.    Its costs and disbursements incurred in this action.

3.    Post judgment interest to be determined at judgment.

4.    Such other further and equitable relief as the Court finds just and proper.

DATED: February 09, 2017

PATENAUDE & FELIX, A.P.C.

MATTHEW CHEUNG, WSBA #43067
Attorney for Plaintiff
19401 40th Avenue West, Suite 280
Lynnwood, WA 98036
Tel: (425) 361-1662

-2-

COMPLAINT FOR MONIES DUE
P&F FILE# 15-40570
WA_85 Complaint

PATENAUDE & FELIX, A.P.C.
19401 40th Avenue West, Suite 280, Lynnwood, WA 98036
Tel: (425) 361-1662  Toll Free: (800) 832-7675