THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ESTHER HOFFMAN; SARAH DOUGLASS; ANTHONY KIM; and IL KIM and DARIA KIM, husband and wife and the marital community comprised thereof, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>TRANSWORLD SYSTEMS INCORPORATED; PATENAUDE AND FELIX, APC; MATTHEW CHEUNG and the martial community comprised of MATTHEW W. CHEUNG AND JANE DOE CHEUNG; and DOES ONE THROUGH TEN,<br><br>   Defendants. | Case No.: 2:18-cv-01132 JCC<br><br>**RESPONSE TO DEFENDANT TRANSWORLD SYSTEMS, INC.'S JOINDER IN MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## I.  INTRODUCTION

  Plaintiffs Esther Hoffman; Sarah Douglass; and Anthony, Il, and Daria Kim ("Plaintiffs") are the victims of unlawful collection practices by Defendants Patenaude and Felix, A.P.C. ("P&F") and Matthew Cheung ("Cheung"), debt collectors and/or collection agencies (collectively, "Defendants"). Plaintiffs originally filed this case in King County (Wash.) Superior Court, and the Defendants removed the case to this Court. Defendant Transworld Systems, Inc. ("TSI") now joins its fellow Defendants' motion to dismiss the Plaintiffs' Complaint.

  Plaintiffs' First Amended Complaint ("FAC") thoroughly spells out Defendants'

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

violations of both federal and state debt collection law. Through their debt collection efforts, Defendants have filed state court collection lawsuits supported by false affidavits signed by TSI, claiming they had a complete chain of title for the alleged debt owed to one of the trusts formed by National Collegiate Student Loan Trusts (referred to collectively as "NCSLTs") when they did not have such documentation.

In its joinder to its co-defendants' Motion to Dismiss, TSI misleads the court and improperly relies on extrinsic factual assertions that are outside the four corners of the FAC. Without the benefit of any discovery, TSI now seeks early adjudication of this matter on the merits in an attempt to end run around the discovery process. The matters at issue here are limited to whether the Plaintiffs have met the applicable pleading standard. The Ninth Circuit only requires a complaint to be a notice pleading that sets forth the *claims for relief*, not causes of action, statutes or legal theories. *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). As required, the Plaintiffs' FAC gives the Defendants fair notice of the claims and allows this Court to infer that the Defendants are liable for unlawful conduct. Therefore, this Court should deny TSI's motion to dismiss, or in the alternative, grant Plaintiffs leave to amend.

In addition to the arguments made herein, Plaintiffs incorporate all of the arguments they made in their Response to Defendants P & F and Cheung's Motion to Dismiss (Dkt. #15), which is being filed contemporaneously with this brief.

## II.  FACTS

### A.  Relevant Facts Contained in Plaintiffs' Amended Complaint

Plaintiffs alleged in their FAC that TSI only collected on those accounts believed to be in default. FAC ¶ 93. The student loans at issue in this lawsuit have been in default since at least November 1, 2014, the date when TSI became the successor sub-servicer to the NCSLTs, with the responsibility for collecting on defaulted loans alleged to be in the NCSLTs. FAC ¶ 12. As part of its responsibilities, TSI also oversees various law firms that file collection lawsuits against debtors whose loans are allegedly included in the NCSLTs. *Id.* TSI also manages

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 2

**HENRY & DEGRAAFF, P.S.**
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON  98109
telephone (206) 330-0595
fax (206) 400-7609

collection efforts against Washington debtors and lawsuits filed in Washington courts. *Id.* TSI is directly or indirectly engaged in soliciting claims for collection or collecting or attempting to collect claims owed or due or asserted to be due to another person. FAC ¶ 15. TSI is also a Washington state licensed debt collection agency. FAC ¶ 14.

TSI claims that the custodian of records affidavits ("Affidavits") filed in collection lawsuits in Washington provided proof of assignment and ownership by NCSLT without addressing allegations in the FAC. Motion to Dismiss, Dkt. #17 at 4. As alleged in the FAC, claims by the affiant TSI employees that they reviewed documents concerning assignments, namely "Schedule 1" and "Schedule 2," must be false because Plaintiffs allege that those documents are lost or never existed. *See* FAC ¶¶ 47-50, 64-67, 81-86, 97-99. Since the lost Schedules 1 and 2 allegedly contain a list of all those accounts assigned to the NCSLTs by the originators, TSI's misrepresentations in the Affidavits that they possessed Schedules 1 and 2 are material to Plaintiffs' claims and the issues before this Court. FAC ¶¶ 44, 62, 80-81.

Additionally, TSI fails to acknowledge Plaintiffs' allegations that their attorneys, P&F and Cheung, were told numerous times by at least one King County Superior Court judge that the Affidavits were insufficient proof of assignment because they did not show that the defendant's loan had been transferred to the trust. FAC ¶ 100. These actions caused the Consumer Financial Protection Bureau ("CFPB") to launch an investigation into the collection practices of TSI, finding that TSI and its collection agents' practices violated the Consumer Financial Protection Act of 2012. FAC at 18-22. The CFPB found that affidavits like the ones filed in Plaintiffs' cases were often false and that the notaries that signed the affidavits often did not witness them being signed. *Id.* Put more generally, the violations alleged in the FAC are supported by the CFPB's findings. *See* FAC ¶¶ 108-109 and Ex. C.

III. **REQUEST TO STRIKE INADMISSIBLE HEARSAY STATEMENTS**

TSI makes unsubstantiated factual assertions without citation throughout the factual section of TSI's Motion to Dismiss that are not accurate. *See* Dkt #17 at 3-6. Plaintiffs request

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 3

HENRY & DeGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

that the Court strike all statements in the Motion to Dismiss that are not supported by citations to

the Complaint or by citations to a filed Request for Judicial Notice. This includes much of the

factual information stated on page 3 of the Motion to Dismiss, lines 12-22 are unsubstantiated

statements. Pursuant to the Local Civil Rules, parties must support factual assertions with a

citation to the record, including a pin cite to the relevant page or pages. *See* LCR 10(e)(6).

Additionally, the statement on page 5, lines 5-9 that "During and after the CFPB investigation,

TSI conducted a review of all NCSLT accounts, including each student loan account pertaining

to Plaintiffs here, and determined that Plaintiffs' account were not subject to the Consent Order"

is not supported by any citations and should be stricken. There is no evidence that Defendants

have verified any of the accounts they are suing upon since the CFPB Consent Order. Dkt. #17 at

5. Reviewing the dockets in each state court case, there were no amendments or withdrawals of

the affidavits filed in state court against the Plaintiffs and no additional evidence supplied that

the judgments TSI obtained on behalf of NCSLT since the Consent Order are for accounts that

were actually assigned to the NCSLTs. Dkt. ##16-1 at 3-5, 16-1 at 50-51, 16-3 at 8-9, 16-3 at 11-

12, 16-3 at 42-47, 16-4 at 41-44, 16-4 at 46-49, 16-4 at 51-54.

## IV. STANDARD OF REVIEW FOR MOTION TO DISMISS

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a judge must

accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551

U.S. 89, 94, 127 S. Ct. 2197 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937

(2009) ("When there are well-pleaded factual allegations, a court should assume their veracity").

After accepting as true plaintiff's allegations and drawing all reasonable inferences in its favor, a

court must then determine whether the complaint alleges a plausible claim for relief. *See Iqbal*,

556 U.S. at 679; *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2

(9th Cir. 2008) (court must also draw all reasonable inferences in favor of the plaintiff).

The Ninth Circuit has explained the "plausibility" requirement as follows: "If there are

two alternative explanations, one advanced by defendant and the other advanced by plaintiff,

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 4

**Henry & DeGraaff, P.S.**
150 Nickerson St. Ste 311
Seattle, Washington 98109
telephone (206) 330-0595
fax (206) 400-7609

both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6) … The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1951). Stated more succinctly, "*Iqbal* demands more of plaintiffs than bare notice pleading, *but it does not require us to flyspeck complaints looking for any gap in the facts*." *Lacey v. Maricopa County (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (en banc) (citations omitted and emphasis added).

It remains the case that a complaint requires a "short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 550 U.S. 544 (2007)). A plaintiff's allegations need "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 556 U.S. at 570. "[W]e do not require heightened fact pleading of specifics. . . ." *Id*.

The question, thus, is whether TSI has been given fair notice of Plaintiffs' claims and the grounds upon which they rest. Here, Plaintiffs meet and exceed the applicable pleading standards, and the motion to dismiss should be denied.

## V.  LAW AND ARGUMENT

### A.  Defendants' Representations About NCSLT's Status as Assignee of the Plaintiffs' Student Loans Were False and Misleading

TSI argues that it provided sufficient evidence to the trial courts through affidavits filed by TSI employees that NCSLT was the proper assignee of Plaintiffs' student loan contracts. Motion to Dismiss, Dkt. #17, at 7-9 TSI also argues that as NCSLT's servicer, TSI properly commenced its lawsuits against the Plaintiffs to recover the unpaid student loan balances. *Id*. Further, TSI argues that the Plaintiffs have no standing to contest the validity of the alleged assignments in any event. *Id*. On all these issues, TSI is incorrect.

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 5

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

Most importantly, TSI misperceives Plaintiffs' claims: the Plaintiffs' claims do not depend on whether NCSLT was the assignee of their loans, and the Plaintiffs are not challenging the validity of any judgments against the Plaintiffs. Rather, Plaintiffs' claims are that the defendants filed false, deceptive and misleading pleadings and affidavits with the courts because they had no verifiable proof that NCSLT was in fact the assignee of the loans. These false, deceptive and misleading representations did, or could have had, an impact on how the Plaintiffs and other consumers responded to the lawsuits, and they violated the FDCPA, the CAA, and the CPA.

In each of the state court lawsuits against the Plaintiffs, NCSLT alleged in their complaints that NCSLT was the original lender for the Plaintiffs' loans, or was the original lenders' assignee. Rosenberg Decl., Dkt. ##16-1 at 7 and 53, 16-3 at 49. TSI provided no valid proof, however, that it was in fact the assignee of the loans. TSI directs the Court to Exhibits 4, 13 and 36 to Marc Rosenberg's declaration to support its statement in its Motion to Dismiss that "each Affidavit prepared by TSI sets forth sufficient evidence of the assignment of each loan to the respective NCSLT trust and therefore provided sufficient chain of title and ownership." Dkt. #17 at 7. Exhibit 4 to Mr. Rosenberg's declaration is the affidavit of Dudley Turner, submitted in NCSLT 2004-2's state court action against Plaintiff Esther Hoffman. Mr. Turner does not identify himself in the affidavit as TSI's Records Custodian, and there is no testimony or mention in the affidavit that NCSLT 2004-2 was the assignee of the student loan claim against Ms. Hoffman. Attached to Mr. Turner's affidavit without identification or reference in the affidavit is a "Pool Supplement" between The First Marblehead Corporation and Bank of America, N.A. that provides that "each student loan set forth on the attached Schedule 2" was being assigned to The National Collegiate Funding LLC. The Pool Supplement contains no actual signatures of its parties, and "Schedule 2" was not attached to the Pool Supplement – the document states that Schedule 2 is "[o]n file with the Indenture Trustee," but the contents of Schedule 2 or a summary of the information in it was never provided to the courts or to the

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 6

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

Plaintiffs. In the Pool Supplement, the Hoffman loan was not identified as one of the loans assigned to The National Collegiate Funding LLC. Also attached to Mr. Turner's affidavit was a "Deposit and Sale Agreement" whereby The National Collegiate Funding LLC sold "certain student loans" to NCSLT 2004-2, but the Hoffman loan was not identified in the Agreement as one of those loans. Similar evidence was found to be insufficient in *Unifund CCR Partners v. Sunde*, 163 Wn. App. 473, 260 P.3d 915 (2011), to establish that the credit account claim in that case had been assigned to the plaintiff debt collector. *Id.* at 482 ("A bill of sale with no name, account number or any other information identifying Sunde's debt as having been sold or assigned to Unifund is insufficient to establish that US Bank assigned the rights and obligations on Sunde's contract to Unifund."). In other words, neither NCSLT nor any of the defendants provided evidence that NCSLT 2004-2 was the assignee of the claim to recover on the Hoffman loan, and there is no such evidence. Because there was no other evidence provided in the support of the validity of the assignment, the clear implication that the defendants intended to be drawn from attaching the Pool Supplement and the Deposit and Sale Agreement to Mr. Turner's affidavit was that NCSLT was the proper assignee of the Hoffman loan. *See* TSI's Motion to Dismiss (Dkt. #17) at 7 ("TSI affidavits were sufficient to prove assignment and ownership, plaintiffs' default under each loan, and admit the student loan records as business records.").

Plaintiffs have alleged that, upon information and belief, Defendants do not know the location of Schedule 2 to the Pool Supplements, have never seen or reviewed it, and know that it is lost. FAC ¶¶ 49-50, 97. Without any valid proof in or attached to Mr. Turner's affidavit showing that NCSLT was the assignee of the loan, the implicit representation contained in Mr. Turner's declaration that NCSLT was the assignee of the Hoffman loan was false, deceptive, or at a minimum, misleading, in violation of 15 U.S.C. §§ 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.") and 1692f (debt collectors are generally prohibited from engaging in "any unfair or unconscionable means to collect or attempt to collect the alleged debt"), and RCW 19.16.250(16)

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

(collection agencies are prohibited from threatening to take any action against a debtor that the licensee cannot legally take at the time the threat is made).

Exhibit 13 to Mr. Rosenberg's declaration is the affidavit of Brian Jackson, an employee of TSI, submitted by NCSLT 2006-3 in the state court action against Plaintiff Sarah Douglass. Mr. Jackson did not identify himself as the Records Custodian of TSI or of NCSLT 2006-3. In the affidavit, Mr. Jackson testified that he was "competent to testify" regarding Ms. Douglass's loan "through personal knowledge of the business records maintained by TSI as custodian of records, including electronic data provided to TSI related to [Ms. Douglass's educational loan, and the business records attached to [the] Affidavit." Dkt. #16-2 at 8. While Mr. Jackson testified that NCSLT 2006-3 purportedly obtained the assignment of the Douglass student loan claim, that testimony is insufficient to prove the assignment, as it is not the testimony of the purported assignor, Bank of America, N.A. *MRC Receivables Corp.,* 152 Wn. App. at 630, n.8 (Washington law recognizes an exception to the writing requirement of RCW 4.08.080 when the assignor personally testifies to the assignment). Further, while Mr. Jackson attached an alleged copy of the assignment agreement to his declaration (the "2006-3 Pool Supplement"), the agreement contains no actual signatures of the purported parties to it and does not identify the Douglass loan contract as one being assigned to NCSLT 2006-3. As with the affidavit submitted in the Hoffman state court action, the assignment agreement was insufficient to prove the existence or validity of the purported assignment of the Douglass loan to NCSLT 2006-3. *Sunde,* 163 Wn. App. at 482.

Plaintiffs have alleged that, upon information and belief, the defendants do not know the location of Schedule 2 to the Pool Supplements, have never seen or reviewed it, and know that it is lost. FAC ¶¶ 66-67. Without any valid proof in or attached to his affidavit to support the bald claim that NCSLT was the assignee of the loan, the affiant's representation was false, deceptive and misleading, in violation of 15 U.S.C. §§ 1692e and 1692f and RCW 19.16.250(16). The statement in Mr. Jackson's affidavit that his representations contained therein were based on his

**HENRY & DEGRAAFF, P.S.**
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

review of TSI's records was similarly false, deceptive and misleading, because TSI had and has no records to confirm whether it is, in fact, the assignee of the Douglass loan, and have never seen or reviewed any such records.

False, deceptive and misleading representations made by debt collectors in litigation, including by lawyers, are actionable under the FDCPA. *McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 950-52 (9th Cir. 2011); *see also Currier v. First Resolution Inv. Corp.,* 762 F.3d 529, 535 (6th Cir. 2014) ("The fact that the [alleged violation] appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA."). Thus, courts have held that the FDCPA provides for a creditor's liability when there are false, deceptive, or misleading representations in complaints (*e.g., Donohue v. Quick Collect, Inc.,* 592, F.3d 1027, 1031-32 (9th Cir. 2010), requests for admission (*McCollough,* 637 F.3d at 952), and interrogatories and motions for summary judgment motions (*Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 229 (4th Cir. 2007). Therefore, Ms. Douglass has a valid FDCPA claim against TSI, P&F, and Cheung for Mr. Jackson's false affidavit testimony.

Further, several courts have held that the failure of a debt collector to identify the original creditor for an assigned claim in a collection complaint filed in state court is a material violation of § 1692e of the FDCPA, because it "may frustrate a consumer's ability to intelligently choose his or her response." *Caudillo v. Portfolio Recovery Associates, LLC,* No. 12-CV-200-IEG (RBB), 2013 WL 4102155 (S.D. Cal. Aug. 13, 2013) (citation omitted); *see also Heathman v. Portfolio Recovery Associates, LLC,* No. 12-CV-515-IEG RBB, 2013 WL 3746111, at *4-5 (S.D. Cal. July 15, 2013) (a debt collection complaint that "fail[s] to identify … the original creditor, is both deceptive and material under the least sophisticated consumer standard, [and thus] constitutes a violation of § 1692e"). The complaint filed on behalf of NCSLT by TSI, P & F, and Cheung against Ms. Douglass did not clearly identify the original creditor (*see* Dkt. #16-1

Henry & DeGraaff, P.S.
150 Nickerson St. Ste 311
Seattle, Washington 98109
telephone (206) 330-0595
fax (206) 400-7609

at 53),[1] and this too constituted a violation of § 1692e that Ms. Douglass did not discover until June 2017, when she received copies of the judgments entered in the state court action by mail.

Finally, Exhibit 36 to Mr. Rosenberg's declaration is the affidavit of Dudley Turner, which was submitted to the trial court in NCSLT 2005-2's state court action against Plaintiffs Anthony Kim and Daria Kim. Mr. Turner did not identify himself in the affidavit as the Records Custodian for TSI, and the affidavit is silent about whether the Kim student loans had been assigned to NCSLT 2005-2. Attached to Mr. Turner's affidavit, although not identified or referenced in it, was a copy of a "Pool Supplement" between The First Marblehead Corporation and Bank One, N.A. by its successor by merger, JPMorgan Chase Bank, N.A. whereby "each student loan set forth on the attached Schedule 2" was to be assigned to The National Collegiate Funding LLC. However, the agreement contained no actual signatures of the parties, and no Schedule 2 was attached to it. Also attached to Mr. Turner's affidavit, although neither identified nor referenced in it, was a copy of a "Deposit and Sale Agreement" between The National Collegiate Funding LLC and NCSLT 2005-2, whereby The National Collegiate Funding LLC sold "certain student loans" to NCSLT 2005-2. The specific student loans sold are not identified in the Agreement, and there is no mention of the Kim student loans in the document. Again, this is insufficient to prove the existence or validity of the purported assignment of the Kim loans to NCSLT 2005-2. *Id.*

Plaintiffs have alleged that, upon information and belief, the defendants do not know the location of Schedule 2 to the Pool Supplements, have never seen or reviewed it, and know that it is lost. FAC ¶¶ 86-87. Without any valid proof in or attached to Mr. Turner's affidavit showing

---

[1] The Complaint did not definitively identify the original creditor; it stated, "The defendant entered into a loan agreement with the plaintiff or plaintiff's assignor, BANK OF AMERICA, N.A." Dkt. #16-1 at 53. This statement is misleading in two respects: First, it does not specifically disclose that Bank of America, N.A. was the original creditor. Second, it was The National Collegiate Funding LLC, not Bank of America, N.A., that was NCSLT's assignor.

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 10

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

that NCSLT was the assignee of the loan, the implicit representation contained in the declaration that NCSLT was the assignee of the Hoffman loan was false, deceptive, and misleading, in violation of 15 U.S.C. §§ 1692e and 1692f, and RCW 19.16.250(16).

Plaintiffs submit that Defendants' representations concerning the ownership of the loans and their attempts to collect on the claims against them, where there is no evidence that NCSLT owned the right to collect on their loans and where the Defendants knew that they had no such evidence and could not obtain such evidence, were false, deceptive, and misleading, and constituted unfair and deceptive acts. 15 U.S.C. §1692e(5) prohibits debt collectors from threatening to take any action that cannot be taken or that is not intended to be taken. Because the Defendants knew that they could not prove that NCSLT owned the loans, they violated § 1692e(5) by filing the lawsuits and submitting the false affidavits. FAC ¶¶ 146-147. And Defendants P&F and Cheung knew that their attempts to collect on the loans without valid evidence of the assignments was improper, as they were informed by at least one judge of the King County Superior Court that they had insufficient proof of the assignments. *See* Declaration of Guy W. Beckett Regarding Judicial Notice ("Beckett Decl."), Ex. 1 at 12-15.[2]

The investigation completed by the CFPB supports Plaintiffs' claims. The CFPB concluded that TSI and its attorneys had "in numerous instances in connection with collecting or attempting to collect Debt from Consumers" executed affidavits and/or "represented, directly or indirectly, expressly or by implication," that it could be proven that NCSLTs owned the loans in

_____

[2] The transcript attached as Exhibit 1 to the Beckett Declaration is the transcript of a 2014 hearing before King County Superior Court Judge Mary Roberts. One of the NCSLT trusts was the Plaintiff, represented by P & F and Mr. Cheung, and the defendant was represented by Plaintiff's co-counsel Sam Leonard. The Court may take judicial notice of "adjudicative fact[s]" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)-(b)(2). Such facts include proceedings and papers filed in other courts, both within and without the federal judicial system, *U.S. ex rel. Robinson Ranchereia Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992). The Court must take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(c)(2). Therefore, the Court may take judicial notice of the communications between the court and counsel in the transcript.

**HENRY & DEGRAAFF, P.S.**
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

question and that "the Consumers in question owed Debts" to the NCSLTs, but that these representations were false. FAC ¶¶ 108-109.

Although Plaintiffs don't need to challenge the validity of the alleged assignments to NCSLT in order to prevail in this action, nevertheless, the Plaintiffs clearly have the right to challenge the validity of the assignments. RCW 4.08.08 provides, in relevant part, as follows:

> Any assignee or assignees of any judgment, bond, specialty, book account, or other chose in action, for the payment of money, *by assignment in writing,* signed by the person authorized to make the same, may, by virtue of such assignment, sue and maintain an action or actions in his or her name, against the obligor or obligors, debtor or debtors, named in such judgment, bond, specialty, book account, or other chose in action, notwithstanding the assignor may have an interest in the thing assigned[.]

RCW 4.08.08 (emphasis added). Proof of the assignment is essential to a recovery by the assignee, and the burden of proof of the assignment is on the one claiming to be the assignee. *Sunde,* 163 Wn. App. at 481. Proof of a valid assignment of a claim is a question of fact. *Id.* Thus, in *MRC Receivables Corp. v. Zion,* 152 Wn. App. 625 (2009), the Washington Court of Appeals reversed a trial court's summary judgment in favor of a debt collector on an alleged credit card debt, where the debt collector had provided no proof of any written assignment of the claim from the original creditor: "Even if [debt collector] had established beyond question that [alleged debtor] had a delinquent account with [original credit card company] for the claimed amount, without proving a written assignment, [debt collector] still failed to meet its burden of establishing that it was entitled to judgment as a matter of law." *Id.* at 631.

Because it is the assignee's burden to prove the existence of an assignment and the matter is an issue of fact, a defendant debtor clearly has standing to challenge the existence and validity of an assignment of a contract claim, like those at issue in this case. TSI's citations to out-of-jurisdiction legal authority that may hold to the contrary are non-binding and irrelevant to this proceeding. Clearly, the Plaintiffs' FAC sufficiently asserts that there was insufficient proof submitted in the state courts that the NCSLTs were the assignees of the student loan claims, that the Defendants knew they had insufficient proof of the assignments, and that they nevertheless

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 12

**Henry & DeGraaff, P.S.**
150 Nickerson St. Ste 311
Seattle, Washington 98109
telephone (206) 330-0595
fax (206) 400-7609

filed the lawsuits against the Plaintiffs and, in the cases against Ms. Hoffman and the Kims, continued to attempt to collect on the judgments they had obtained against them even though they had no proof of the assignments, contrary to the provisions of the stipulation entered into between NCSLT and the CFPB. This conduct supports Plaintiffs' claims that the defendants violated 15 U.S.C. §§ 1692e and 1692f, RCW 19.16.250(16), and RCW 19.86.090.

**B.      Plaintiffs Have Properly Alleged That TSI Is A "Debt Collector" Under 1692a(6).**

TSI asserts that its role as a student loan servicer to the NCSLT trusts insulates it from liability under the FDCPA. Its position is rooted in an argument that it stands in the shoes of the owners of the debt, NCSLT, who obtained the student loans at issue prior to any alleged defaults. Motion to Dismiss, Dkt. #17 at 9. However, neither the language of the statute nor its purpose support such an interpretation. 15 U.S.C. § 1692a(6). The Plaintiffs have alleged that TSI has regularly collected on defaulted student loans for the NCSLT trusts since November 1, 2014. FAC ¶ 93. As part of its duties as successor sub-servicer to U.S. Bank, TSI coordinates the activities of various law firms that file collection lawsuits against debtors on behalf of NCSLT trusts. FAC ¶¶ 12, 127. TSI is not a stand-in for NSCLT, rather, it is a third party that regularly collects debts on behalf of others after they are in default. *cf. Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir.1998) ("Common sense and the plain meaning of [the FDCPA] require that we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan, or forbearance agreement that is current."); *Johnson v. Sallie Mae Servicing Corp.*, 102 F. App'x 484, 487 (7th Cir.2004) ("The FDCPA exempts attempts to collect debts that were not in default when obtained."). Thus, the cases cited regarding NCSLT's assignment of the loan while it was not in default are inapposite. *See* Motion to Dismiss, Dkt. #17 at 10; *Brenner v. Am. Educ. Servs.*, 2014 WL 65370, *2 (E.D. Mo. Jan. 8, 2014), *vacated and remanded on other grounds* (case addresses servicing by AES, a loan servicer who collects on loans prior to any delinquency or default); *Weber v. Great Lakes Educ. Loan Servs., Inc.*, 2014 WL 1683299 (W.D. Wis. Apr.

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 13

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON  98109
telephone (206) 330-0595
fax (206) 400-7609

29, 2014) (the FDCPA does not apply because the servicer Great Lakes obtained the loan when it was not in default); *Edmond v. Am. Educ. Servs., Inc.*, 2010 WL 4269129, *1 (D.D.C. Oct. 28, 2010) (Absent an allegation that plaintiff's loan was in default when AES acquired it, AES is not a debt collector); *Elder v. Student Loan Mktg. Ass'n*, 1993 WL 625570, *1 (D.D.C. Dec. 13, 1993) (because Elder's loans were not in default when EduServ began to service them, the FDCPA did not apply).

The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due . . . another." 15 U.S.C. § 1692a(6). The U.S. Supreme Court has in turn defined "debt collection" as an act "[t]o collect a debt . . . to obtain payment." *Henitz v. Jenkins*, 514 U.S. 291, 294 (1995) (quoting BLACK'S LAW DICTIONARY 263 (6th ed. 1990)). The FDCPA does not limit the term "debt collector" to formal debt collection activities. *See, e.g., Heintz v. Jenkins*, 514 U.S. 291, 292, (1995) (finding that lawyers and litigation activity are covered under the Act).

Congress intended the FDCPA "to cover all third persons who regularly collect debts for others." S.Rep. No. 95–382, 95th Cong. 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697–98; *Bartell v. National Collegiate Student Loan Trust 2005-3*, 2015 WL 1907337, at *2, Case No. 14-cv-04238-RS, (N.D. Cal. April 27, 2015). Therefore, an entity may qualify as a "debt collector" if it regularly performs debt collection services, regardless of what percentage of its services relate to debt collection. *See* S.Rep. No. 95–382, at 3; *see also Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1146 (9th Cir.1998) ("Had Congress intended to limit the Act to licensed or registered collection agencies, it would have confined the statutory language to businesses for which debt collection is the 'principal purpose.'").

Even if TSI could somehow argue that it was a servicer of NCSLT student loan debt that was not in default, the question is not whether TSI is ever a student loan servicer of nondelinquent student loan debt. Rather, the question is whether, in these cases, TSI was acting as a student loan servicer or merely as a debt collector. *Rowe v. Educational Credit Management*

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

Corp, 559 F.3d 1028, 1029 (9th Cir. 2009). Here, the FAC adequately alleges that TSI regularly performs debt collection activities when it orchestrates the actions of third parties to collect on NCSLT's defaulted debt, providing services that are more than incidental. *Bartell*, 2015 WL 1907337, at *3. Also, there cannot be any dispute that a lawsuit against an alleged student loan borrower is a "direct" attempt to collect a debt. TSI is trying to hide behind the definition of loan servicer, but the difference between loan servicers who are not subject to the FDCPA and those who are is whether the debt that is being collected was already in default when taken for servicing and TSI certainly meets this definition. *Amini v. Bank of America Corp.*, 2013 WL 1898211, at *5, Case No. C11-0974-RSL, (W.D. WA. May 6, 2013). The default status attributed to the owner of the debt itself is irrelevant to the obligations of the servicer. *Amini*, 2013 WL 1898211, at *5. Here, it is without dispute that the Plaintiffs' Complaint alleges that TSI only became the "sub-servicer" on this debt after the loans at issue were already in default. *See* FAC ¶¶ 12, 93, 127.

**C.  Plaintiffs Have Alleged a Factually Sufficient FDCPA Claim Against TSI.**

Plaintiffs' allegations in Counts I and II of the FAC include sufficient factual content to allow this court to draw the reasonable inference that TSI's actions were misleading and deceptive. *Iqbal*, 129 S.Ct. at 1949. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C.§ 1692e. Likewise, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. Assessing violations under these FDCPA provisions requires an objective analysis that considers whether "the least sophisticated debtor would likely be misled by the communication." *Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

Plaintiffs have made sufficient factual allegations to allege that TSI "made false, deceptive, and misleading representations . . . concerning the documents they possessed or reviewed that allegedly showed that the NCSLTs were entitled to collect on student loan debt."

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 15

**HENRY & DEGRAAFF, P.S.**
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

FAC ¶¶ 144-145. The Plaintiffs have alleged that Pool Supplements attached to the affidavits filed in state court do not include the necessary attachments titled variously Schedule 1, Schedule 2, Schedule 3, or combinations thereof that supposedly identify the borrower's individual loans. FAC ¶¶ 45, 64, 81, and 84.

Courts have applied the FDCPA to debt collection lawsuits where the plaintiff in the underlying debt collection action knows that they have no means of proving the debt, finding that such allegations will survive a motion to dismiss. *See, e.g. Delawder v. Platinum Financial Services*, 443 F.Supp.2d 942, 945 (S.D. Ohio 2005) (false affidavit attached to complaint "all the while knowing that they did not have means of proving the debt"). In *Turner v. Lerner, Sampson & Rothfuss*, 776 F.Supp.2d 498, 506 (N.D. Ohio 2011), a consumer alleged that the defendant knowingly filed foreclosure actions without the means to prove the ownership of the debt; they also alleged that the defendant knowingly executed misleading affidavits and unauthorized assignments of the notes to their clients. There, the court found such conduct would survive a motion to dismiss under the FDCPA under both sections 1692e and 1692f. *Turner*, 776 F.Supp.2d at 506; *see also Hartman v. Asset Acceptance Corp.,* 467 F.Supp.2d 769, 779 (S.D. Ohio 2004) (holding that a representation that defendant was a "holder in due course" of a debt is actionable as a representation concerning the "legal status" of the debt, if the representation is false and if the defendant does not satisfy the bona fide error defense).

TSI argues that Plaintiffs' failure to challenge the accuracy of the documents submitted to the trial court is enough to defeat an FDCPA claim. Motion to Dismiss, Dkt #17 at 12. However, TSI misstates the law. Many other courts have concluded that FDCPA applies to "testimonial" documents and to pleadings filed in state court actions. See e.g., *Miller v. Wolpoff & Abramson*, 321 F.3d 292 (2nd Cir. 2003) (verified complaint filed in state collection action by defendant attorneys subject to FDCPA); *Gearing v. Check Brokerage Corporation*, 233 F.3d 469 (7th Cir. 2000) (debt collector's complaint, incorrectly alleging it was "subrogated" to rights of creditor, subject to FDCPA).

HENRY & DeGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

When Congress enacted the FDCPA, it intended to regulate the "process" of debt collection, without any exemption for testimonial documents filed by a debt collector. *Hartman*, 467 F.Supp.2d at 775. When a statute's language is plain, "the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023 (2004). Given Congress' use of very broad language in the FDCPA to regulate debt collection practices, the fact that there is no immunity doctrine for a private plaintiff initiating a civil lawsuit with a false affidavit bars this court from finding one. *Hartman*, 467 F.Supp.2d at 775. Thus, TSI's request for dismissal of Plaintiffs' FDCPA allegations regarding the filing of affidavits without personal knowledge of the testimony in the Affidavits and the documents attached to them is without merit.

**D.  Plaintiffs Have Pled a Viable FDCPA Claim That is Not Barred by the Statute of Limitations.**

The Plaintiffs do not dispute that under 15 U.S.C. § 1692k(d), FDCPA claims must be brought within one year of the date of violation. In *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), the Ninth Circuit held that the statute of limitations begins to run when a complaint is filed. However, the Plaintiffs dispute that *Naas* is applicable and dispute that their claims are barred by the statute of limitations.

The Ninth Circuit applies the discovery rule to all FDCPA violations. *Lyons v. Michael & Assoc.*, 824 F.3d 1169, 1171 (9th Cir. 2016). Under the discovery rule, the limitations period "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009); *Lyons*, 824 F.3d at 1171. In *Lyons*, Plaintiff alleged that defendant violated the FDCPA when they sued her in the wrong judicial district to collect a debt. *Lyons*, 824 F.3d at 1171-72. The court applied the discovery rule and held that the one-year statute of limitations began when plaintiff was served with the complaint (thereby discovering defendants had filed sue against her); and not on the date the debt collection action was filed. *Id.* at 1172. The Ninth Circuit rejected the debt

**Henry & DeGraaff, P.S.**
150 Nickerson St. Ste 311
Seattle, Washington  98109
telephone (206) 330-0595
fax (206) 400-7609

collector's argument that the discovery rule should be applied narrowly. *Id.* The court opined that "[a]pplying the discovery rule to some FDCPA claims but not others would be out of step with our general approach to the discovery rule, and would threaten to capriciously limit the broad, remedial scope of the FDCPA." *Id.* The Court stated that the "discovery rule" should apply when . . . the filing date would not be "easily ascertainable" to the debtor absent some other form of notice, such as service of process." *Id.* at 1173. The facts in this case are similar to the facts in *Lyons*; therefore, *Naas* is not controlling, and the Court should apply the discovery rule as the Ninth Circuit did in *Lyons*.

Here, the Plaintiffs allege that only Ms. Douglass's claims are within the one-year statute of limitation for the FDCPA. As alleged in the FAC, Ms. Douglass was not properly served with the two complaints after they were filed on April 24, 2017. FAC ¶ 57. Thus, she only learned about them when she received default judgments in the mail in June 2017, not when they were originally filed in April 2017. FAC ¶ 57. Thus, Douglass discovered the misrepresentations within one year of the filing, and this action, filed on June 20, 2018, was therefore timely.

**E.  Plaintiffs' CPA Claim Survives.**

Defendants argue that actions taken after a matter is filed with a court do not fall under Washington's Consumer Protection Act ("CPA") because "such events do not satisfy the requisite element that such acts be within the sphere of trade or commerce." Motion to Dismiss, Dkt. #17, at 14 (citing *Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302, 312, 698 P.2d 578, 584 (1985)). To prevail on a CPA claim, a plaintiff must establish five distinct elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

**1.  Violations of the FDCPA Are Per Se Violations of the CPA, Including Violations of the FDCPA That Occur After the Filing of a Lawsuit.**

Defendants argue that their litigation conduct cannot constitute a CPA violation. This

argument conflicts with the applicable legal authority and ignores that violations of the FDCPA are per se violations of the CPA. Thus, should this Court decide Plaintiffs have viable FDCPA claims, their CPA claims should survive TSI's Motion to Dismiss.

The Washington Supreme Court in *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885 (2009), explained that "violations of the regulations applicable to either [the insurance industry or the debt collection] industry implicate the public interest and constitute a *per se* violation of the CPA." *Id.* at 44. "A claim under the Washington CPA may be predicated upon a *per se* violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Washington Mut. Bank,* 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). This Court previously explained, "a valid FDCPA claim establishes the first three prongs of a WCPA claim: (1) an unfair or deceptive act or practice (2) occurred in trade or commerce and (3) affects the public interest." *Linehan v. AllianceOne Receivables Mgmt.*, No. C15-1012-JCC, 2017 WL 3724816, at *2 (W.D. Wash. Jan. 27, 2017). Other district courts in this jurisdiction have also held that FDCPA violations are *per se* CPA violations. In *Dibb v. Allianceone Receivables Mgmt.*, Judge Bryan denied the debt collector's Motion to Dismiss as it related to Plaintiff's CPA claims, explaining that Plaintiff's CPA claims were predicated on plausible violations of the FDCPA and "a violation of the FDCPA is a *per se* violation of the CPA." No. 14-5835 RJB, 2014 WL 10987392, at *3 (W.D. Wash. Dec. 16, 2014). Similarly, in a case very relevant to the question here, Judge Martinez recently found that FDCPA violations by a debt collection attorney resulting from his litigation conduct was a *per se* violation of the CPA. *Brandt v. Columbia Credit Servs.*, No. C17-703 RSM, 2018 WL 1757114, at *5 (W.D. Wash. Apr. 12, 2018). Thus, because the Plaintiffs have plausible FDCPA claims, their CPA claims should also survive TSI's motion.

## 2.    The Prongs of Unfair or Deceptive Act or Practice Occurring in Trade or Commerce are Met.

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 19

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

In cases considering whether attempts to collect debts violated Washington consumer protection laws, courts have concluded that lawyers and law firms can be liable for conduct occurring in litigation. *See, e.g.*, *Mandelas v. Gordon*, 785 F. Supp. 2d 951, 959–61 (W.D. Wash. 2011) (discussing when a law firm can be considered a collection agency subject to WCCA and CPA claims); *Evergreen Collectors v. Holt*, 60 Wn. App. 151, 156-57, 803 P.2d 10 (1991) (discussing liability for litigation conduct under Washington Collection Agency Act ("CAA")); *see also Paris v. Stenberg & Stenberg*, 828 F. Supp. 2d 1212, 1220 (W.D. Wash. 2011) (lawyer could be liable under CAA "if his activity went beyond merely acting as legal counsel and included activities similar to that of a collection agency").

In the context of debt collection, the first three elements are established by showing that the alleged act constitutes a *per se* unfair trade practice. *Linehan,* 2017 WL 3724816, at *2. A *per se* unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated. *Hangman Ridge*, 105 Wn.2d at 780. Conduct that violates the CAA is an unfair act or practice occurring in trade or commerce for purposes of the CPA. RCW 19.16.440.

### 3. Debt Collectors, Whose Business is to File Lawsuits to Collect Debts, are not Immune from the WCPA When They File Lawsuits.

Defendants argue that Plaintiffs may not bring a claim against a person based on his or her conduct in prior litigation. Dkt. #17 at 15 (citing *Bruce v Byrne-Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 125, 776 P.2d 666 (1989)). However, the Washington Court of Appeals has rejected that argument in cases involving consumer debt. *See Evergreen Collectors*, 60 Wn. App. at 156-57. The usual rule that filing a lawsuit takes a defendant's conduct out of the sphere of trade or commerce does not apply, "where the very business of a collection agency often requires it to sue debtors in court," even though they may be lawyers, that conduct qualifies as trade or commerce under the CPA. *Id.* at 156; *Allstate Ins. Co. v. Tacoma Therapy, Inc.,* No. 13-CV-052114-RBL, 2014 WL 1494100, at *5 (W.D. Wash. Apr. 16, 2014) ("[I]f a party routinely files

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON 98109
telephone (206) 330-0595
fax (206) 400-7609

lawsuits as part of its business, its conduct, pleadings, affidavits and testimony within those lawsuits *are* within the sphere of trade or commerce.") (emphasis in original); s*ee also Paris v. Stenberg & Stenberg*, 828 F. Supp. 2d 1212, 1220 (W.D. Wash. 2011) (lawyer could be liable under CAA "if his activity went beyond merely acting as legal counsel and included activities similar to that of a collection agency"). As explained above, just this year the Western District of Washington found a collection attorney liable under the CPA for collection abuses relating to garnishment on a debt not owed. *Brandt*, 2018 WL 1757114, at *5.

TSI's business is collecting on outstanding debts. TSI is a Washington licensed debt collector (FAC ¶¶ 1, 14), and it engages in soliciting claims for collection. *Id.* ¶ 15. TSI is a collection agency as defined in the CAA and its activities in Washington are governed by the CAA. *Id.* ¶¶ 14-15. TSI only collects on those accounts alleged to be in default that it claims are held by the NCSLTs. *Id.* at ¶ 12. It does so by hiring law firms on behalf of the NCSLTs and managing an Attorney Network to file lawsuits on defaulted private student loans. FAC ¶¶ 127-129. As part of these lawsuits, TSI files Affidavits in support of the debt allegations falsely stating under penalty of perjury without any personal knowledge of the statements therein and without any information supporting whether the individual accounts were actually assigned to the NCSLTs. FAC ¶¶ 94 – 100.

This case is therefore similar to *Evergreen Collectors,* where a collection agency brought suit to collect on a claim. 60 Wn. App. at 153. Before the trial, the parties reached an agreement that if the plaintiffs paid a settlement amount, Evergreen would agree to dismiss the lawsuit. *Id.* The plaintiffs paid the required amount and requested that Evergreen send a dismissal order to them. *Id.* The plaintiffs never received the dismissal order, failed to file an answer and yet more than a year later, discovered that Evergreen wanted a trial date to recover its costs. *Id.* Evergreen never disclosed the exact amount of those costs, and instead attempted to recover an additional amount for their attorney's fees. *Id.* at 153-54.

The *Evergreen Collectors* court distinguished *Blake* on the grounds that when a

**Henry & DeGraaff, P.S.**
150 Nickerson St. Ste 311
Seattle, Washington 98109
telephone (206) 330-0595
fax (206) 400-7609

collection agency's business is to file lawsuits in court, conduct of that kind may be violative of the WCAA as a *per se* violation. *Id.* at156. Tellingly, when discussing *Blake*, the court stated that "it would be ludicrous to hold that an agency's tactics after filing suit are exempt from [WCPA] coverage," and that *Blake* does not bar recovery in these types of cases. *Id.* at 156-57.

### 4. The Public Interest Impact.

Defendants' next contention, that under Washington law, adversaries of a lawyer's client cannot sue the lawyer under the CPA because it did not meet the public interest prong, is foreclosed under *Panag*. *See* 166 Wn. 2d at 44. In *Panang*, the Washington Supreme Court explicitly stated "violations of the regulations applicable to either [the insurance industry or the debt collection] industry implicate the public interest." If TSI's practices are those of an entity acting in the "debt collection industry" the public interest prong of *Hangman Ridge* must be satisfied. *Panag*, 166 Wn.2d at 43.

### 5. Injury to Business or Property Caused by Violation of the CAA.

The final element of a CPA claim is whether the defendant's conduct caused injury to the plaintiff in his or her business or property. "The injury involved need not be great, but it must be established." *Hangman Ridge*, 105 Wn.2d at 792. "The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). Time away from one's business and "pecuniary losses occasioned by inconvenience may be recoverable as actual damages." *Panag,* 166 Wn.2d at 58, (citing *Keyes v. Bollinger*, 31 Wn. App. 286, 295, 640 P.2d 1077 (1982)); *see also Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.,* 64 Wn. App. 553, 825 P.2d 714 (1992).

The extent of the injury caused may be great in this case. Defendants used false affidavits to obtain judgments. They also used the threat of trial, when they knew they could not prove assignment, and continued to collect from Washington consumers without verifying they were entitled to collect on debts. These injuries and others cannot reasonably be dismissed at this stage

Henry & DeGraaff, P.S.
150 Nickerson St. Ste 311
Seattle, Washington 98109
telephone (206) 330-0595
fax (206) 400-7609

of the case. In *Panang*, the Plaintiff suffered investigation expenses that went beyond the expenses of litigating her personal injury claim, and caused injury through additional costs that stemmed from the direct result of the deceptive collection method, thus satisfying the injury element. 166 Wn.2d at 62-64. Further, each of the Plaintiffs here retained legal counsel to deal with the state court litigation,[3] which constitutes the requisite injury to support the "injury" component for a CPA claim. *Id.* TSI's actions, even though they were done in the context of litigation, therefore constitute injury to the Plaintiffs. *Id.*

Thus, Plaintiffs' CPA claims should not be dismissed because they have met all the prongs under *Hangman Ridge* and since TSI's business includes filing lawsuits, its activities are regulated by the CAA and there is no applicable exemption under the CPA.

## VI.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny TSI's Motion to Dismiss. However, in the event the Court determines that the motion should be granted in whole or in part, Plaintiffs request leave to file an amended complaint to rectify any infirmities that might be identified in their pleading. *See Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009) ("Dismissal [on a Rule 12(b)(6) motion] is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment."); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (where trial court dismisses plaintiff's complaint for failure to state a claim, the plaintiff should be given leave to amend to state a claim if it can).

---

[3] *See* Patenaude & Felix' Motion to Dismiss (Dkt. #15) at 2-4.

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 23

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON  98109
telephone (206) 330-0595
fax (206) 400-7609

Dated: October 1, 2018.

**Attorneys for Plaintiffs:**

LEONARD LAW

 _/s/ Sam Leonard_____
Sam Leonard, WSBA #46498
1001 4th Ave, Suite 3200
Seattle, WA  98154
Telephone:  (206) 486-1176
Facsimile:  (206) 458-6028
E-mail:  sam@seattledebtdefense.com


HENRY & DeGRAAF, P.S.

 _/s/ Christina Henry_____
Christina L. Henry, WSBA #31273
150 Nickerson St., Ste. 311
Seattle, WA  98109
Telephone:  (206) 330-0595
Facsimile:  (206) 400-7609
E-mail:  chenry@HDM-legal.com

BERRY & BECKETT, PLLP

 _/s/ Guy Beckett_____
Guy W. Beckett, WSBA #14939
1708 Bellevue Avenue
Seattle, WA  98122
Telephone:  (206) 441-5444
Facsimile:   (206) 838-6346
E-mail:  gbeckett@beckettlaw.com


NORTHWEST CONSUMER LAW CENTER

 _/s/ Amanda Martin_____
Amanda Martin, WSBA #49581
214 East Galer St., Ste. 100
Seattle, WA  98102
Telephone:  (206) 805-0989
Facsimile:  (206) 805-1716
E-mail:  Amanda@NWCLC.org

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 24

HENRY & DeGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON  98109
telephone (206) 330-0595
fax (206) 400-7609

## CERTIFICATE OF SERVICE

I, Christina L Henry, declare under penalty of perjury as follows:

1.      I am over the age of eighteen years, a citizen of the United States, not a party herein, and am competent to testify to the facts set forth in this Declaration.

2.      That on Monday, October 1st, 2018, I caused the foregoing document attached to this Certificate of Service plus any supporting documents, declarations and exhibits to be served upon the following individuals via the methods outlined below:

| | |
|---|---|
| Damian P. Richard, Esq<br>SESSIONS FISHMAN NATHAN & ISRAEL, LLP<br>1545 Hotel Circle South, Ste 150<br>San Diego, CA 92108<br>Tel# (619) 758-1891<br>drichard@sessions-law.biz,<br>acoito@sessions-law.biz,<br>dkirkpatrick@sessions-law.biz,<br>mwinder@sessions-law.biz | ☐ Legal Messenger<br>☒ Electronic Mail<br>☐ Federal Express |
| Marc Rosenberg<br>LEE SMART, P.S., INC.<br>1800 One Convention Place<br>701 Pike St.<br>Seattle, WA 98101-3929<br>Tel# 206-624-7990<br>mr@leesmart.com<br>Lawyermarc@comcast.net | ☐ Legal Messenger<br>☒ Electronic Mail<br>☐ Federal Express |

I certify under penalty of perjury under the laws of the State of Washington that the foregoing statement is both true and correct.

Dated this 1st of October, 2018, at Bothell, Washington.

/s/  Christina L Henry
Christina L Henry

RESPONSE TO DEFENDANT TRANSWORLD
SYSTEMS, INC.'S JOINDER IN MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(2:18-CV-01132 JCC) - 25

HENRY & DEGRAAFF, P.S.
150 NICKERSON ST. STE 311
SEATTLE, WASHINGTON  98109
telephone (206) 330-0595
fax (206) 400-7609