THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

ESTHER HOFFMAN and SARAH
DOUGLASS; ANTHONY KIM; and IL KIM
and DARIA KIM, husband and wife and the
marital community comprised thereof, on behalf
of themselves and on behalf of others similarly
situated,

9

10

11

12                                  Plaintiffs,

            vs.

13

TRANSWORLD SYSTEMS
INCORPORATED; PATENAUDE AND
FELIX, A.P.C.; MATTHEW CHEUNG, and the
marital community comprised of MATTHEW
CHEUNG and JANE DOE CHEUNG; and
DOES ONE THROUGH TEN,

14

15

16

17

18                                  Defendants.

NO.  2:18-cv-01132 JCC

**RESPONSE TO PATENAUDE AND
FELIX'S AND MATTHEW CHEUNG'S
MOTION TO DISMISS**

**NOTED ON MOTION CALENDAR:
October 5, 2018**

**ORAL ARGUMENT REQUESTED**

19

20

21

22

23

24

25

26

27

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## I.    INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") states plausible claims upon which relief can be granted. Patenaude and Felix's ("PF's") and Cheung's Motion to Dismiss should be denied.

A debt collector engaging in a pattern or practice of filing false and misleading affidavits to expedite collection of claims its client may or may not have been assigned is a violation of the Fair Debt Collection Practices Act ("FDCPA"), Washington's Collection Agency Act ("CAA") and Washington's Consumer Protection Act ("CPA"). Whether or not PF and Cheung did so intentionally or took any measures to right the wrongs they engaged in is not relevant to liability and requires a factual inquiry not properly determined on a motion to dismiss.

## II.    FACTS

**A.  Facts Contained In Plaintiffs' First Amended Complaint.**

PF's and Cheung's Motion to Dismiss misrepresents or omits many of the material facts contained in Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs address some of these misrepresentations in the footnotes here. The following facts are included in Plaintiffs' FAC:

1.    PF is a collection agency and debt collector whose actions are governed by the CAA and the FDCPA (*See e.g.* FAC ¶¶ 19-27);

2.    Cheung is a collection agent who works for PF and is a debt collector within the meaning of the FDCPA (*id.* ¶¶ 28-34);

3.    PF and Cheung were and are agents of TSI (*See id.* pgs. 31-34);

4.    PF and Cheung filed false affidavits of Transworld Systems Inc. ("TSI") employees (the "Affidavits") in order to obtain judgments in Washington courts (*See e.g., id.* ¶¶ 42-48, 60-67, 78-85);

5.    In the Affidavits, the affiant TSI employees claim to have reviewed documents concerning assignment, namely "Schedule 1" and "Schedule 2" (FAC ¶¶ 47-50, 64-67, 81-86, 97-99);

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 1

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

6.      The employees could not have reviewed Schedule 1 and 2 because those documents are lost or never existed (*see id.*)[1];

7.      The TSI affiants also fail to authenticate many of the attached documents making them inadmissible, and in many instances the affiants did not even review the documents attached (FAC ¶¶ 48, 65, Ex. A ¶85);

8.      The lost Schedules 1 and 2 allegedly contain a list of all those accounts assigned to the NCSLTs by the loan originators (*id.* ¶¶ 44, 62, 80-81);

9.      Defendants' misrepresentations that they possessed Schedules 1 and 2 are material to Plaintiffs' claims and the issues before this Court. The Consumer Financial Protection Bureau ("CFPB") found that the false Affidavits were "material [and violated the Consumer Financial Protection Act of 2010 ("CFPA")] because they are likely to affect a Consumer's choice or conduct regarding how to respond to a Collection Lawsuit and are likely to mislead a Consumer acting reasonable under the circumstances." (FAC ¶ 108, Ex. A ¶¶ 33-36)[2];

10.     The CFPB engaged in an investigation of TSI's collection practices and litigation tactics and found that TSI employees had been creating false affidavits to obtain judgments, like those filed in the Plaintiffs' cases, and TSI's attorneys had been misrepresenting to courts that they had a complete chain of title when they did not (FAC ¶¶ 108-109, Ex. A ¶¶ 33-44).

11.     PF and Cheung know that Schedules 1 and 2 are lost; they have never seen Schedule 1 or 2; and, they continued to file the false affidavits to obtain judgments, including in Plaintiffs'

---

[1] PF and Chueng repeat time and time again that "Plaintiffs complain that [affiant], who signed the Affidavit, may not have had personal knowledge as to certain immaterial attached documents…." *See* Dkt. #15 at pgs. 3:12-14, 4:5-6, 5:19-21 (emphasis added). These are false statements. In the portions of the FAC PF and Cheung cite to, Plaintiffs specifically explain that the affiants did not attach Schedule 1 and Schedule 2, which allegedly contain a list of the individual loans transferred to the NCSLTs, to their affidavits because those Schedules are lost. *See* FAC at 9 ¶¶ 47-50, 12 ¶¶ 64-67, 15 ¶¶81-86.

[2] PF and Cheung assert that the attached documents are immaterial. *See* Dkt. #15 at pgs. 3:12-14, 4:5-6, 5:19-21. While more a legal conclusion than statement of fact, this statement is false. The attached and absent documents that the affiants seek to authenticate, but have not reviewed, are explicitly alleged in the collection actions to be proof of assignment. The materiality of documents alleging to show proof of assignment to a trust that a collection agent seeks to collect on by submitting false affidavits is anything but immaterial to the collection action or this collection abuse case. The CFPB found the false affidavits to be material to finding a CFPA consumer protection violation.

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 2

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1   underlying state court actions, knowing the affidavits are false (FAC ¶¶ 49-50, 66-67, 86-87)[3];

2         12.     Cheung was told numerous times by at least one King County Superior Court judge

3 that the Affidavits were insufficient proof of assignment because they did not show that the

4 defendant's loan had been transferred to the trust (*id.* ¶ 100);

5         13.     The CFPB investigation into the collection practices of TSI found that TSI and its

6 collection agents' practices violated the CFPA (FAC, Ex. A ¶¶ 15-44);

7         14.     CFPB found that affidavits, like the Affidavits filed in Plaintiffs' cases, were often

8 false and that the notaries that signed the Affidavits often did not witness them being signed (*id.*);

9         15.     TSI entered into a Consent Order with the CFPB that became effective September

10 15, 2017, which barred TSI and its agents (including PF and Cheung) from collecting on NCSLT

11 accounts unless the terms of the Consent Order were complied with (FAC, Ex. B; Ex. A);

12         16.     "Defendants have not voluntarily dismissed all NCSLT collection actions in

13 Washington in which they have not verified that: (1) they have a record of the complete chain of

14 assignment; (2) they have a copy of the signed student loan agreement; (3) the action was not time

15 barred at the time of suit; and (4) the TSI Affidavit filed in the lawsuit was not false or misleading

16 and was properly notarized." (FAC ¶ 131)[4];

17         17.     "Defendants have continued to seek to enforce judgments obtained in NCSLTs suits

18 when they have not verified that: (1) they have a record of the complete chain of assignment; (2)

19 they have a copy of the signed student loan agreement; (3) the action was not time barred at the

20 time of suit; and (4) the TSI Affidavit filed in the lawsuit was not false or misleading and was

21

22  [3] PF and Cheung assert "there is no allegation that Patenaude had any awareness that there was any impropriety as to the affidavits it submitted in any lawsuit." Dkt. #15 at pg. 7. This statement is false. *See* Dkt. 1-1 at pg. 9 ¶¶49-50, pg.

23 12 ¶¶66-67, pg. 16 ¶¶86-87).
 [4] PH and Cheung assert, "Plaintiffs do not allege that TSI failed to conduct the **review** required by the Consent Order."

24 Dkt. #15 at 8:1-2 (emphasis added). PF and Cheung also allege, "Nor do Plaintiffs allege that the Affidavits involved in their specific cases did not fall outside the terms of the Consent Order after such **review**." *Id.* at pg. 8:3-4. These

25 statements are misleading and false. The Consent Order requires "verification," not just "review," and Plaintiffs alleged Defendants have failed to verify assignment and the accuracy of the proof of claims they submit. Dkt. 1-1 at pg. 25 ¶¶

26 131-32.

27

RESPONSE TO PATENAUDE AND FELIX'S AND                   Leonard Law
MATTHEW CHEUNG'S MOTION TO DISMISS            1001 4th Ave, Suite 3200
(2:18-cv-01132 JCC) - 3                             Seattle, Washington 98126
                                            Phone: 206-486-1176
                                              Fax: 206-458-6028

1  properly notarized." (*Id.* ¶ 132)[5];

2       18.     The violations alleged in Plaintiffs' FAC are supported by the CFPB's findings

3  (*compare* FAC, *with* FAC, Ex. A);

4       19.     Plaintiff Sarah Douglass did not discover the NCSLTs lawsuits against her, or the

5  default judgments that Defendants obtained with the help of the false Affidavits until June 2017

6  (FAC ¶ 57).

7                          **III.    RESPONSE**

8  **A.      Shotgun Pleading.**

9       PF and Cheung allege that Plaintiffs' claims should be dismissed because they are a shotgun

10  pleading. Plaintiffs' FAC contains detailed factual assertions and detailed claims against the

11  Defendants. It is not subject to dismissal on the basis that it is a "shotgun pleading."

12  **B.      To Survive A Motion to Dismiss, A Complaint Need Only Set Forth Enough Facts to
         Raise A Reasonable Expectation That Discovery Will Reveal Evidence Supporting the**
13       **Claim.**

14       To survive a motion to dismiss, Plaintiffs' complaint merely needs to set forth enough facts

15  to raise a reasonable expectation that discovery will reveal evidence supporting the claim.  *Bell*

16  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007); *see also Ashcroft v. Iqbal*,

17  556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The motion should be denied if the Court finds that

18  Plaintiffs' claim "may be supported by showing any set of facts consistent with the allegations in

19  the complaint." *Twombly*, 550 U.S. at 563. Material allegations are taken as admitted and the

20  complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983)

21  *Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry Plaintiffs'

22  burden of proof and pleading a plausible ground to infer the existence of a claim for relief is

23  sufficient: [A plausibility requirement] "does not impose a probability requirement at the pleading

24  stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

25  evidence" to prove that claim. *Twombly*, 550 U.S. at 556. The Court must also consider the

26  ────────────────
[5] *See supra* note 4.

27

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 4

complaint in its entirety without isolating allegations in it for individualized review. *Id.* at 569 n.14.

**C.   Plaintiffs' Claims Are Supported By Significant Factual Assertions That, When Taken As True, Surpass the Plausibility Standard as it Relates to PF.**

PF argues that Plaintiffs fail to provide plausible factual basis for claims specifically as to PF. Dkt. #15 at 9. PF does not state which of Plaintiffs' claims its argument attaches to. *See id.* PF asserts that "Plaintiffs do not allege any failure on the part of the NCSLTs to conduct the review and verification discussed in the proposed consent order."[6] *Id.* This statement is false and immaterial to a vast majority of Plaintiffs' claims.

Plaintiffs' allege Defendants (including PF) engaged in a pattern and practice of submitting false declarations made under penalty of perjury to Washington courts to expedite collection. FAC ¶¶ 145, 149-150, 158, 181. Plaintiffs allege that Defendants filed suits knowing they could not verify or show what accounts were assigned to the NCSLTs and that Defendants had no intention of bringing the cases to trial. FAC ¶¶ 146-47. These violations are supported by the CFPB's finding in the Consent Order , and are not dependent on the Consent Order. Thus, PF's and Cheung's assertion that their compliance with the Consent Order absolves them of liability fails. The making and filing of false declarations in attempts to obtain default judgments is a violation of the FDCPA. *See Rubio v. LVNV Funding, LLC*, No. C 14-05395 JSW, 2015 U.S. Dist. LEXIS 193101, at *15-16 (N.D. Cal. July 21, 2015) (holding that false declarations of service may violate the FDCPA).

Plaintiffs also explicitly allege that Defendants continue to try to collect on NCSLT accounts without having verified "(1) they have a record of the complete chain of assignment; (2) they have a copy of the signed student loan agreement; (3) the action was not time barred at the time of suit; and (4) the TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized." FAC ¶¶ 131-32. These items of verification are required under the Consent Order. FAC, Ex. A ¶¶ 45f-g, 45k, 46, 49, 50.  Plaintiffs also alleged in their FAC that Schedules 1

---

[6] The Consent Order was not "proposed" as PF and Cheung allege. Under section 1053 and 1055 of the CFPA, a Consent Order that is consented to is "effective at the time specified [within the consent order]." 12 U.S.C. § 5563(b)(2). Pursuant to 12 U.S.C. § 5563, no ratification by a court of a consent order needs to occur to make the consent order effective.

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 5

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

and 2 are still missing and Defendants have never seen them. FAC ¶¶ 47-50, 64-67, 81-86, 97-99. The only way that TSI and its law firm network (which includes PF and Cheung) could comply with the Consent Order if it has not located the Schedules is to withdraw the Affidavits filed in the cases against the Plaintiffs and others, or dismiss the lawsuits. FAC, Ex. A ¶¶ 49-50. In fact the NCSLTs are currently engaged in litigation against a former servicer for losing proof of assignment. *See* Beckett Decl., Ex. 5. Thus, Defendants' assertions that they have complied with the Consent Order are false.

**D.      Plaintiffs' FDCPA Claims Against PF and Cheung Are Plausible and Based On Facts Alleged In Plaintiffs' FAC.**

Because it is a remedial statute, the FDCPA must be construed liberally in favor of consumers. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1175-76 (9th Cir. 2006); *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1246 (W.D. Wash. 2006). Courts interpret its language "extraordinarily" broadly so as to advance its purpose of protecting consumers from unfair, abusive or deceptive debt collection practices. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992); *see also Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) ("The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices"); *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004) ("Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers"). The FDCPA is also a strict liability statute, meaning that a "plaintiff does not need to prove knowledge or intent . . . and does not have to have suffered actual damages" in order to prevail. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 & 952 (9th Cir. 2011). And importantly here, the FDCPA applies to litigation activity of debt collectors and the lawyers who regularly sue on their behalf. *Id.* at 948 (citing *Heintz v. Jenkins*, 514 U.S. 291, 293-94, 115 S.Ct. 1489 (1995)).

**1.      PF and Cheung do not dispute that the FDCPA applies to them, they only dispute that it is plausible they violated its provisions.**

"When alleging a claim under the FDCPA, a plaintiff must establish that (1) the plaintiff is a

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 6

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

consumer, as defined by the FDCPA; (2) the debt arises out of a transaction primarily for personal, family or household purposes; (3) the defendant is a debt collector, as that phrase is defined by the FDCPA; and (4) the defendant violated a provision of the Act." *Miran v. Convergent Outsourcing, Inc.*, No. 16-CV-0692-AJB-(JMA), 2016 U.S. Dist. LEXIS 173030, at *6 (S.D. Cal. Dec. 13, 2016) (quoting *Heritage Pacific Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 997, 156 Cal. Rptr. 3d 26 (2013)).

Here, Plaintiffs have alleged all the required elements of an FDCPA claim. Plaintiffs' are consumers. *See e.g.* FAC ¶¶ 3-7. The debts arise out of student loans which are transactions within the FDCPA application. *See Cutler ex rel. Jay v. Sallie Mae, Inc.*, No. EDCV-13-2142-MWF (DTBx), 2014 U.S. Dist. LEXIS 181914, at *4 (C.D. Cal. Sep. 9, 2014). PF and Cheung are debt collectors. FAC ¶¶ 28-34 And PF and Cheung violated the FDCPA through their conduct described in the FAC, specifically 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692e(5), and 1692f. *See* FAC at 30-32.

The Court should overrule all of PF's and Cheung's objections and deny their motion to dismiss.

## 2. PF's and Cheung's violations were material.

Determining whether a debt collector violated the FDCPA is an objective test and does not depend on whether the debt collector intended to deceive or mislead the consumer. *Clark*, 460 F.3d at 1171. The "least sophisticated" debtor standard applies in FDCPA actions. *Id.* "Material false statements … are those that could 'cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort.'" *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 773 (9th Cir. 2017) (quoting *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014)).

PF and Cheung argue that Plaintiffs fail to state a material claim because the false affidavits they filed in Washington courts did not undermine the "Plaintiffs' ability to intelligently choose action concerning the debt." Dkt. #15 at 11. This argument fails to stay within the bounds of

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 7

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1   rational argument. It also directly contradicts the CFPB's findings and begs the question, if the lie

2   or misrepresentation was not material, why was it made?

3        In the Consent Order, the CFPB found that the false Affidavits were "material [and violated

4   the CFPA] because they are likely to affect a Consumer's choice or conduct regarding how to

5   respond to a Collection Lawsuit and are likely to mislead a Consumer acting reasonably under the

6   circumstances." [7] FAC ¶ 108, Ex. A ¶ 35. The CFPB also found that the law firms TSI hired to

7   collect on the NCSLT accounts engaged in material misrepresentations when they filed lawsuits

8   without the intent or ability to prove the claims. *Id.,* Ex. A ¶ 39.

9        TSI own assertions also show that the violations alleged were material. To this day, TSI

10  argues that the false and misleading affidavits prove assignment. *See* Dkt. #17 at 7-8. That TSI still

11  seeks to argue the assignments are proved through the Affidavits, indicates the Affidavits'

12  importance. The false and misleading Affidavits clearly affected how the least sophisticated

13  consumer would respond. This is material injury under the FDCPA. *See Afewerki*, 868 F.3d at 773.

14       Also, Plaintiffs' liability for the underlying student loan debt is not determinative of whether

15  Plaintiffs' FDCPA claims are material. "The FDCPA is designed to protect consumers from the

16  unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists." *Keele v.*

17  *Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998) Were this not true, debt collectors would never be

18  liable under the FDCPA if the consumer owed the debt.

19       Finally, PF and Cheung argue that the *Donohue* case supports their contention that

20  Plaintiffs' claims are not material. *Donohue* is not factually analogous to the situation here, and not

21  instructive on the materiality of the violations in this case. In *Danohue*, Quick Collect mislabeled a

22  portion of the total debt owed as interest. *Donohue*, 592 F.3d at 1034. The total sum, however, was

23  correct. *Id.* Quick Collect's error did not affect the collectability or the total amount of the debt. *Id.*

24

25  [7] The CFPA granted rulemaking authority under the FDCPA to the CFPB and, with respect to entities under its jurisdiction, granted authority to the CFPB to supervise for and enforce compliance with the FDCPA. Dodd-Frank Act §§ 1002(12)(H), 1024(b)-(c), and 1025(b)-(c); 12 USC §§ 5481(12)(H), 5514(c), and 5515(c)). The CFPB's authority

26  to enter Consent Orders is derived from the CFPA. *See* 12 U.S.C. § 5563. Thus, the CFPB's determinations of whether a collector violated the CFPA is instructive.

27

1  Here, the exact opposite is true. Defendants' false or misleading statements made to the courts

2  concerning assignment call into question the NCSLTs right to collect on the debt. The sum the

3  NCSLTs can prove they are entitled to rest on the Affidavits. That such a fraud and

4  misrepresentation to courts and consumers could be immaterial, tests the bounds of reason.

5  **3.   Law firms like PF can be held liable for FDCPA violations.**

6  PF argues it is not "vicariously liable under the FDCPA for the acts of its client." Dkt. #15

7  at 11. This argument ignores PF's and Cheung' own liability and is legally incorrect.

8  The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection

9  activity, even when that activity consists of litigation." *Heintz*, 514 U.S. at 299. Attorney debt

10  collectors cannot blindly rely on their clients to avoid liability under the FDCPA. *McCollough*, 637

11  F.3d at 948. A consumer need not prove that a debt collector violated the act knowingly or

12  intentionally to create debt collector liability. *Clark*, 460 F.3d at 1175 – 1176. "[T]he degree of a

13  [debt collector's] culpability may only be considered in computing damages." *Clark*, 460 F.3d at

14  1176.

15  PF and Cheung filed affidavits in the collection actions against the Plaintiffs. They do not

16  argue that they Affidavits were not false or misleading. Plaintiffs also allege and have support for

17  the proposition that PF and Cheung were aware that the documents proving assignment were lost or

18  do not exist. FAC ¶¶ 49-50, 66-67, 86-87. PF's argument that it cannot be held vicariously liable for

19  TSI's actions ignores its own obligations under the FDCPA. PF can be held liable for the filing of

20  false and misleading affidavits. Even if they did so unknowingly, they are strictly liable under the

21  FDCPA.

22  **4.   Plaintiffs state viable FDCPA claims that are not barred by the one-year FDCPA
         statute of limitations.**

23  Under 15 U.S.C. § 1692k(d), FDCPA claims must be brought within one year of the date of

24  violation. In *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), the Ninth Circuit held that the

25  statute of limitations begins to run when a complaint is filed. However, the Ninth Circuit applies the

26

27

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 9

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

discovery rule to determine when the statute of limitations begins to run on a FDCPA violation. *Lyons v. Michael & Assoc.*, 824 F.3d 1169, 1171 (9th Cir. 2016). Under the discovery rule, the limitations period "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009); *Lyons*, 824 F.3d at 1171.

In *Lyons*, Plaintiff alleged that defendant violated the FDCPA when it sued her in the wrong judicial district to collect a debt. *Lyons*, 824 F.3d at 1171-72. The Court applied the discovery rule and the Court held the one-year statute of limitations began when plaintiff was served with the Complaint (thereby discovering defendants had filed suit against her), and not on the date the debt collection action was filed. *Id.* at 1172.

Here, the facts are similar to the facts in *Lyons*. Plaintiffs allege that Sarah Douglass' claims are within the one-year statute of limitation for the FDCPA. Sarah Douglass was not properly served with the two complaints when they were filed on April 24, 2017. FAC ¶ 57.  She only learned of the lawsuits and the default judgments when she received default judgments in the mail in June 2017. FAC ¶ 57. This action was filed on June 20, 2018. Douglass discovered the misrepresentations within one year of the filing and her FDCPA claims are timely. Additionally, the CFPB Consent Order was not published until September 2017. Prior to that, the parties here could not have reasonably understood the fraud and misrepresentations committed by the Defendants.

### 5. Plaintiffs state plausible claims against PF and Cheung under 15 U.S.C. §§ 1692e(2) and (10).

PF and Cheung argue that Plaintiffs' claims under §§ 1692e(2)(a) and (10) should be dismissed because PF and Cheung did not make the false or misleading representations and they are allowed to rely on their client. PF's Cheung's arguments fail because (1) PF and Cheung made the false representations by filing and serving the false affidavits in an attempt to obtain judgments; and for reasons already explained, (2) they have failed to provide any authority for their claims.

Under the FDCPA a debt collector "may not use any false, deceptive, or misleading

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 10

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The FDCPA lays out specific violations under § 1692e that do not limit its general application. *Id.* Section 1692e(2)(a) bars debt collectors from "making false representation of the character, amount, or legal status of any debt." Section 1692e(a)(10) specifically bars debt collectors from the "use of any false representations or deceptive means to collect or attempt to collect any debt." (emphasis added).

Plaintiffs allege "Defendants violated 15 U.S.C. §§ 1692e and [e(10] by making false, deceptive, and misleading representations to debtors and Washington courts concerning the documents they possessed or reviewed that allegedly show that the NCSLTs were entitled to collect on student loan debt." FAC at 31. A debt collector's filing or serving of a pleading is a communication subject to the requirements of §§1692e and 1692f. *See Donohue*, 592 F.3d at 1031-32. PF and Cheung filed and served the false or misleading affidavits on Plaintiffs. FAC at 7-18. Thus, PF's and Cheung's filing and service of those affidavits were violations of §§1692e, e(2)(a), and e(10).

PF and Cheung's representation that Plaintiffs' claims under §§1692e(2)(a) and e(10) claims should be dismissed because PF and Cheung reasonably relied on their client is an affirmative defense that requires factual inquiry and is not an issue that is appropriate at the 12(b)(6) stage. Even if it was appropriate to consider here, the law in the Ninth Circuit relating to reasonable reliance is clear. It requires a showing that the debt collector had reasonable procedures in place to prevent the alleged wrong. *Reichert v. National Credit Systems, Inc.,* 531 F.3d 1002, 1005-06 (9th Cir. 2008). It requires that a debt collector prove that its reliance on its client was reasonable. *Id.* PF and Cheung have not shown any of the above; thus, their request for dismissal on this ground must fail.

PF's and Cheung's arguments do not challenge Plaintiffs' general claims that PF and Cheung violated 15 U.S.C. 1692e. Thus, these claims are not in dispute and must survive.

**6.  Plaintiffs have stated plausible claims against PF and Cheung under § 1692e(5).**

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 11

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    Plaintiffs allege in their FAC that Defendants (including PF and Cheung) "violated §
2    1692e(5) when they filed lawsuits knowing that they could not prove chain of title and knowing that
3    they would not take the cases they filed to trial." FAC ¶147. Plaintiffs also allege Defendants
4    violated § 1692e(5) when they continued to collect and attempt to collect on NCSLT debt after TSI
5    entered into the Consent Order. *Id.* ¶ 148.

6    A debt collector violates § 1692e(5) when it makes a "threat to take any action that cannot
7    legally be taken or that is not intended to be taken." 15 U.S.C § 1692e(5). PF and Cheung argue that
8    filing a lawsuit is not a "threat" for the purposes of § 1692e(5), it is an action. Dkt. #15 at 14. PF's
9    and Cheung's argument turns on the meaning of "threat," and requires statutory interpretation.

10   "No single argument has more weight in statutory interpretation than [the statute's plain
11   meaning]." *Browder v. United States*, 312 U.S. 335, 338, 61 S. Ct. 599, 601, 85 L.Ed. 862, 865
12   (1941). To ascertain the plain meaning of terms, [the Ninth Circuit often] consult[s] the definitions
13   of those terms in popular dictionaries *See e.g., Metro One Telcoms., Inc. v. Commissioner*, 704 F.3d
14   1057, 1061 (9th Cir. 2012) (citations omitted). In fact, both the United States Supreme Court and
15   Ninth Circuit have turned to dictionaries to interpret the meaning of provisions of the FDCPA. *See*
16   *Heintz*, 514 U.S. at 294, 115; *and Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1080 (9th Cir.
17   2005).

18   The plain meaning of "threat" includes actions. The FDCPA's origins date back to the
19   Consumer Credit Protection Act of 1968 ("CCPA"). *See* Consumer Credit Protection Act of 1968,
20   Pb. L. No. 90-321, 82 Stat. 146-164 (1968). The CCPA made collecting debts using extortionate
21   means illegal. *Id.* at 160 § 891(7). This prohibition applied to express or implicit threats to use
22   criminal means to collect on a debt. *Id.* Webster's New Twentieth Century Dictionary (unabridged)
23   from 1968 defines "threat" as: "[A] statement or expression of intention to hurt, destroy, punish
24   etc.…" Webster's Dictionary 1901 (2d ed. 1968). Webster's definition of "threat" explicitly
25   includes actions other than statements. Hence, under the plain meaning of § 1692e(5) a threat could
26   be an action, not a statement.

27

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 12

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    The filing of a lawsuit would most certainly communicate to an unsophisticated consumer a

2    threat of trial. Even an attorney worth their hourly rate would have to consider the possibility of

3    trial when an adversary files suit. Thus, filing suit is an implied threat of trial, as well as other

4    litigation tasks.

5    PF and Cheung point to the Seventh Circuit's decision in *St. John v. CACH LLC*, 822 F.3d

6    388, 390 (7th Cir. 2016), for the proposition that filing a lawsuit is not a threat. But, *St. John* has not

7    been adopted by the Ninth Circuit and is not binding on this Court. In fact, the Ninth Circuit has

8    specifically refused to follow another circuit's interpretation of the FDCPA, where the other

9    circuit's interpretation conflicted with the plain meaning of the statute. *See Camacho*, 430 F.3d at

10   1080.

11   *Camacho* is instructive here because it dealt with an issue very closely related to the one

12   here. In *Camacho*, the debt collector argued that it had not violated § 1692g(a)(3)'s notice

13   requirement when it required the debtor to send a validation request in writing. *Id.* at 1080. Section

14   1692g(a)(3) requires that debt collectors include in its first communication notice to the consumer

15   that they have thirty-days to dispute the debt otherwise it will be deemed valid. Section 1692g(a)(3)

16   is silent on how a consumer must dispute the debt. *See* §1692g(a)(3). The Court in *Camacho*

17   explained that because the statute was silent on how a debt must be disputed, the plain meaning was

18   clear that a consumer was not limited to only disputing a debt in writing. *Camacho*, 430 F.3d at

19   1081-83.

20   Like the debt collector in *Camacho*, PF and Cheung ask the Court to read into the FDCPA

21   limitations it does not contain. "Threat" under its plain meaning includes threatening actions.

22   Interpreting "threats" to only include written or spoken communications but not actions would

23   frustrate the purpose of the FDCPA to protect consumers. Such an interpretation would likely lead

24   to the filing of even more lawsuits by debt collectors to coerce consumers into settling debts that the

25   collector cannot prove is owed.

26   PF's and Cheung's other argument that there can be no § 1692e(5) violation because the

27

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 13

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

lawsuits and Affidavits were all filed prior to the Consent Order, is not correct and misrepresents the facts and Plaintiffs' claims. First, this argument only relates to Plaintiffs' second § 1692e(5) claim that Defendants violated the statute by continuing to collect or attempt to collect on NCSLT accounts after they Consent Order. The Consent Order required that TSI and its attorneys validate and confirm that they had complete chain of title prior to continuing to collect on the debts. FAC Ex. A ¶ 49. Defendants have not been able to verify they have complete chain of title, because Schedules 1 and 2 are lost and they know they are lost (both facts they do not dispute.) FAC ¶¶ 47-50, 64-67, 81-86, 97-99; *see also* Beckett Decl., Ex. 5. PF and Cheung continued to collect against Plaintiffs in violation of the Consent Order. This was illegal and their attempts to do so were threats to take action that could not legally be taken.

**7. PF and Cheung misrepresent Plaintiffs' allegations relating to their §1692f claims, and Plaintiffs' claims under §1692f are plausible.**

Section 1692f prohibits debt collectors, like PF and Cheung, from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." PF and Cheung do not dispute that the Affidavits they filed and served to collect from the Plaintiffs and others were false or misleading. Instead, they argue Plaintiffs' § 1692f claims are not plausible because "Plaintiffs do not allege Patenaude was aware of any such deficiency when it filed the affidavits in litigation." Dkt. #15 at 16. This statement is false and misleading. Even if it were not, the FDCPA is a strict liability statute that does not require a showing of intent or knowledge.

Plaintiffs allege multiple times in the FAC that PF and Cheung have never seen the schedules that prove assignment and "they are aware that it is [or they are] lost." FAC ¶¶ 47-50, 64-67, 81-86, 97-99. Plaintiffs also allege that Cheung was told numerous times by at least one King County Superior Court judge that the affidavits submitted in support of NCSLT summary judgment motions were not sufficient to prove the NCSLTs were the real party in interest on the specific loans, but Cheung continued to use the same defective and misleading affidavits. FAC ¶ 100. Plaintiffs do not need to challenge the authenticity or accuracy of the attached documents to prove a

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 14

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

violation of § 1692f. The fact that the affidavits were, in many instances, false or misleading is a § 1692f violation on its own.

Even if the above were not true, intent is not a required element of a § 1692f claim. As discussed previously "[i]n concluding that the FDCPA imposes strict liability, we reasoned in *Clark* that allowing a debt collector to escape liability for unintentional violations would render the bona fide error defense superfluous." *Reichert*, 531 F.3d at 1006. PF and Cheung over and over argue that they reasonably relied on TSI, with their bare assertions unsupported by any evidence that they maintained procedures to avoid what happened. This is simply not enough to avoid a § 1692f claim, where they do not deny they filed false and misleading affidavits.

**E.** **The Plaintiffs Have Asserted Plausible Claims That The Defendants Violated the CPA, and Their CPA Claims Should Not Be Dismissed.**

The Plaintiffs have sufficiently pleaded facts that support their claims that the Defendants violated the CPA, and these claims should not be dismissed.

**1.** **Because Plaintiff Douglas has established that she has a valid FDCPA claim, she has also established a per se violation of the CPA.**

As explained above, Plaintiff Sarah Douglass discovered in June 2017 that the Defendants had filed lawsuits and had obtained default judgments against her, that the complaint filed in the state court action violated § 1692e of the FDCPA because it did not identify the original creditor, and that the affidavit of Brian Jackson violated § 1692e because it contained false representations concerning his alleged review of documents pertaining to her loan and the assignment of the loan to NCSLT. A violation of the FDCPA is a *per se* violation of the CPA. *Panag v. Farmers Ins. Co. of Wa.*, 166 Wn.2d 27, 52, 204 P.3d 885 (2009); *Dibb v. AllianceOne Receivables Management, Inc.*, No. 15-5835 RJB, 2015 WL 1527606, at *5 (W.D. Wash. April 2, 2015). Therefore, Ms. Douglass has sufficiently pleaded a CPA claim.

**2.** **Plaintiffs Hoffman and Kim have also sufficiently pleaded a claim for a *per se* violation of the CPA, because the Defendants committed acts which would have been FDCPA violations had the statute of limitations not expired prior to the commencement of this case.**

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 15

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

The Defendants also filed complaints against Defendants Hoffman and Kim that did not specifically identify the original creditors for their loans, and filed affidavits that contained false, deceptive, and/or misleading representations about the scope of the affiants' review of business documents, specifically about the existence of assignments purportedly made to NCSLT of the Kims' and Ms. Hoffmans' loans. Dkt. #16-1, at 7-8, 16-1 at 12-14, 16-3 at 49-50, 16-3 at 57-59. These acts would be violations of § 1692e of the FDCPA, but for the expiration of the one-year statute of limitations before this case was filed. But the defendants' violations of § 1692e that occurred outside the FDCPA statute of limitations and within the four-year CPA statute of limitations constitute *per se* violation of the CPA, even though the FDCPA actions are no longer actionable. In *In re Bryce*, 491 B.R. 157 (Bankr. W.D. Wash. 2013), the court concluded that the violation of a statute which would be a *per se* violation of CPA still is a CPA violation even if the statute of limitations has run on the claim under the statute. Although the court was dealing with the defendants' violation of the federal Truth in Lending Act, the court's comment on the issue is instructive here:

> If the only flaw in the TILA claim was that it was time barred, that would not mean that she could not assert the violation as a basis for her (timely) CPA claim. The successful assertion of a statute of limitations does not mean that the violation did not occur, it means that the claim based on it is stale. Where, as here, the actual claim asserted—the CPA—has a longer limitations period, the violation may still be used to support the timely claim.

*Id.* at 184-85; *see also Anderson v. Wells Fargo Home Mortg., Inc.,* 259 F. Supp.2d 1143, 1147 (2003) (violation of RESPA constitutes *per se* unfair or deceptive act or practice in trade or commerce for CPA claim even after expiration of statute of limitations on RESPA claim). Accordingly, the Defendants' violations of § 1692e within four years of the commencement of the Plaintiffs' actions here constitute *per se* violations of the CPA, even if the FDCPA claims are barred by the statute of limitations.

Other cases from this district where courts have ruled differently are distinguishable. In *Kotok v. Homecomings Financial,* No. C09-662 RSM, 2009 WL 2057046 (W.D. Wash. July 14,

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 16

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

2009), the court considered plaintiffs' TILA, RESPA, and CPA claims. Judge Martinez concluded that the TILA and RESPA claims were time-barred, so, without any analysis, simply dismissed the CPA claim supported by the same allegations to be time-barred. *Id.* at *4. In *Bednaruk v. Northwest Trustee Services, Inc.,* No. C09-1586Z, 2010 WL 545643 (W.D. Wash. Feb. 9, 2010), plaintiffs sought a determination that conduct that would support claims for time-barred TILA and RESPA violations constituted *per se* violations of the CPA. Judge Zilly, citing *Kotok,* ruled that the time-barred claims did not support *per se* CPA violations, noting that the plaintiffs had failed to cite any legal authority in support of this conclusion. *Id.* at *4. Similarly, in *Lyons v. Homecomings Financial LLC,* No. C10-584 RAJ, 770 F. Supp.2d 1163 (W.D. Wash. 2011), plaintiff argued that a mortgagor's conduct that would have supported a TILA violation was a *per se* CPA violation. Relying solely on *Kotok,* Judge Jones ruled that since the TILA claim was time-barred, the underlying conduct did not constitute a *per se* CPA violation. *Id.* at 1167.

This Court should reject the decisions in *Kotok, Bednaruk,* and *Lyons* and follow the decisions in *In re Bryce* and *Anderson.* The purpose of the FDCPA is "to protect consumers from improper conduct and illegitimate collection practices without imposing unnecessary restrictions on ethical debt collectors," and "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e; *Clark v. Capital Credit & Collection Srvs.,* 460 F.3d 1162, 1169-70 (9th Cir. 2006). These purposes will be furthered if the Court treats time-barred violations of the FDCPA as sufficient predicate acts, *per se,* for a CPA violation. Under this analysis, each of the Plaintiffs have established *per se* violations of the CPA.

### 3.   The Defendants violated RCW 19.16.250(16), which is a *per se* violation of the CPA.

A violation by a "licensee" or an employee of a licensee of any act or practice prohibited by RCW 19.16.250 is a *per se* unfair act or practice, or an unfair method of competition in the conduct of trade or commerce, for purpose of the application of the CPA. RCW 19.16.440. A "licensee" is a person licensed under RCW Chapter 19.16. RCW 19.16.100(9). P & F is a "licensee" under RCW

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 17

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    Chapter 19.16. FAC ¶ 21. *See also* Declaration of Sam Leonard Regarding Judicial Notice, Ex. 2.[8]

2    Matthew Cheung is an employee of P & F. Dkt. #15, at 19 ("Matthew Cheung is an attorney at

3    Patenaude.

4         RCW 19.16.250(16) prohibits any "licensee" or an "employee of a licensee" from

5    threatening to take any action against a debtor which the licensee could not legally take at the time

6    the threat was made. Here, TSI executed the stipulation by which it agreed to the entry of the CFPB

7    Consent Order on September 14, 2017. FAC, Ex. B at 4. The Consent Order is dated September 15,

8    2017. Under the Consent Order, TSI agreed that (1) neither it nor its attorneys would continue

9    pending NCSLT lawsuits in which a false affidavit was filed after receiving notice of the Consent

10   Order until TSI, P & F, or Cheung provided the court with a copy of the Consent Order and

11   submitted a notice to the court stating, "Plaintiff withdraws the affidavit of [name of affiant]

12   pursuant to Consent Order entered into by the Consumer Financial Protection Bureau and

13   Transworld Systems, Inc., and (2) neither it nor its attorneys would continue garnishment, or fail to

14   quash or withdraw a pending garnishment, in any NCSLT case where a TSI affidavit with

15   misrepresentations was filed. FAC ¶ 115.

16        On September 29, 2017, following TSI's execution of the stipulation for the Consent Order,

17   TSI, through P & F and Cheung, obtained a Writ of Garnishment against Ms. Hoffman. Rosenberg

18   Decl. (Dkt. #16-1, at 5). With respect to Ms. Douglass, TSI, P & F and Cheung obtained Writs of

19   Garnishment in September 2017, prior to the stipulation, but never quashed or withdrew the

20   garnishments, and did not file a motion to dismiss its lawsuit against Ms. Hoffman until March,

21   2018, six months after TSI signed the stipulation and *after* Ms. Douglass prevailed on a hotly

22

23   [8] Attached as Exhibit 2 to the Beckett declaration is a copy of a page from the Washington Department of Revenue
     website, which shows that P & F is the holder of a Washington collection agency license. The Court may take judicial

24   notice of "adjudicative fact[s]" that are "capable of accurate and ready determination by resort to sources whose
     accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)-(b)(2). Such facts include information made publicly

25   available by government entities on their web pages. *See Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th
     Cir. 2010). The Court must take judicial notice of a judicially noticeable fact "if requested by a party and supplied with

26   the necessary information." Fed. R. Evid. 201(c)(2). Therefore, the Court may take judicial notice that P & F is a
     licensed Washington collection agency.

27

1   contested motion to vacate the judgment against her, which she filed on October 17, 2019. *Id.*, Dkt

2   #16-1, at 50-51, Dkt. #16-3, at 2-3, Dkt. #16-3, at 8-9. Finally, with respect to the Kims, the

3   Defendants took no steps to dismiss the cases they had filed against them, contrary to the provisions

4   of the Consent Order; the actions, however, were later dismissed by the court for lack of

5   prosecution. *Id.*, Dkt. #16-3, at 11-13; #16-3, at 42-47; #16-4, at 36-39; #16-4, at 41-44; #16-4, at

6   46-49; #16-4, at 51-54. Accordingly, the defendants' failure to comply with the terms of the

7   Consent Order, particularly their failure to immediately dismiss the actions against the Plaintiffs,

8   constituted implicit threats to continue the proceedings, which they could not legally do. These

9   were violations of RCW 19.16.250(1).

10       *Taylor v. Merchants Credit Corp.,* No. C13-395RSM, 2013 WL 4675958 (W.D. Wash.

11   Aug. 30, 2013), cited by defendants in support of their request for dismissal of the Plaintiffs' CAA

12   claim, is not on point. In that case, the issue was whether the debt collector was legally permitted to

13   file the lawsuits when they did. Because the collector was legally permitted to file the lawsuit at the

14   time it did, there was no violation of the statute. But here, Plaintiffs are not seeking to impose

15   liability for the alleged CAA violations for acts that occurred prior to TSI's execution of the

16   stipulation for the Consent Order on September 14, 2017; the violations occurred after the

17   execution of the stipulation, and the Defendants are liable for those violations.

18       Defendants claim that the Plaintiffs "did not provide factual allegations suggesting that TSI

19   did not conform to the requirements of the Consent Order, and provide the verification and

20   confirmation that NCSLT was assigned [Plaintiffs'] accounts …." Dkt. #15 at 17-18. That is

21   incorrect. In paragraphs 148 and 181 of the FAC, Plaintiffs alleged that the Defendants agreed to

22   stop collection efforts on NCSLT accounts until audits had been performed of the accounts,

23   verifying that the accounts were collectible and that NCSLT had proof of the assignments, but they

24   nevertheless continued to collect and attempt to collect the accounts without performing the

25   required audit and verification. Defendants' contention that the Plaintiffs did not allege that the

26   Defendants had not performed the required audit and verification is simply false.

27

RESPONSE TO PATENAUDE AND FELIX'S AND            Leonard Law
MATTHEW CHEUNG'S MOTION TO DISMISS              1001 4th Ave, Suite 3200
(2:18-cv-01132 JCC) - 19                        Seattle, Washington 98126
                                                Phone: 206-486-1176
                                                Fax: 206-458-6028

#### 4. Defendants Violated RCW 19.16.250(21) by Failing to Immediately Dismiss the Lawsuits Against the Plaintiffs After Stipulating to the CFPB Consent Order.

The CFPB Consent Order prohibited the Defendants from continuing to attempt to collect on the claims against the Plaintiffs until such time as they performed the required audit to determine whether the Turner and Jackson affidavits were false and whether NCSLT had documentation to verify that it owned the right to collect the loans, and filed documents in the case files to confirm that the audit and verification process was complete. Nevertheless, the Defendants continued to pursue litigating the cases after the CFPB Consent Order without regard to those requirements, and without affirmatively limiting the claims to recover only principal allegedly owed on the debts. For example, on November 1, 2017, P & F and Cheung filed a response to Ms. Douglass's motion to vacate the default judgment entered against her in King County Superior Court Case No. 17-2-10605-4 KNT without regard to the Consent Order. Dkt. #16-2, at 68-78. Because the Defendants continued to try to collect the entire balance alleged to be due in their state court complaints against the Plaintiffs after the stipulation to the Consent Order, without regard to the limitations required by the Consent Order, they violated RCW 19.16.250(21).

#### 5. Lawyers who are debt collectors may be sued for violations of the CPA for their collection activities.

The Defendants argue that P & F and Cheung can only be held liable for violations of the CPA for conduct implicating the entrepreneurial aspects of their law practice. Dkt. #15 at 19. But if the lawyers committed violations of the FDCPA and/or RCW 19.16.250(16) and/or (21), those violations constitute *per se* violations of the CPA; the fact that the defendant may be an attorney is irrelevant.

In *Khachatourians v. Bishop White Marshall and Weibel, P.S.,* No. C12-1528-JCC (W.D. Wash. Nov. 15, 2012), this Court addressed a very similar argument from defendant attorneys. There, the defendant filed a debt collection complaint against the plaintiff, who then made an agreement with the attorneys whereby the lawyers would receive an automatic monthly payment directly from her bank account, to be applied to a credit card debt. The lawyers agreed that as long

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 20

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    as the payments were being made, proceedings in the lawsuit would be stayed. Despite the

2    agreement, and while the defendant was current on her payments, the lawyers obtained an ex parte

3    default order and judgment in the collection lawsuit. The plaintiff sued for, *inter alia,* violations of

4    the FDCPA, CAA, and CPA. The lawyers moved to dismiss her complaint, arguing they were

5    immune from liability because the actions they had taken were done in litigation, for which

6    attorneys typically are immune from liability. This Court denied the attorneys' motion:

> In general, attorneys enjoy … immunity for conduct in judicial proceedings on
> behalf of a client. [Citations omitted]. In cases over whether attempts to collect
> debts violated Washington consumer protection laws, however, courts have
> concluded that lawyers and law firms can be liable for conduct in prior litigation.
> [Citations omitted]. The Court does not agree with Defendants' argument that the
> conduct of lawyers in litigation can never give rise to suit by an opposing party. *See
> Paris v. Stenberg & Stenberg,* 828 F. Supp.2d 1212, 1220 (W.D. Wash. 2011)
> (lawyer could be liable under the WCAA "if his activity went beyond merely acting
> as legal counsel and included activities similar to that of a collection agency").
> Plaintiff's complaint contains sufficient factual allegations to conclude that
> Defendants were acting as a collection agency under Washington law when they
> sought a default judgment against her in state court. Accordingly, they are
> potentially liable for their conduct in that proceeding.

14   *Id.* at 7.[9]

15        Neither the FDCPA nor the CAA exempts attorneys attempting to collect a debt owed to a

16   third party from liability for violations of their provisions. *Fox v. Citicorp Credit Servs., Inc.,* 15

17   F.3d 1507, 1512 (9th Cir. 1994) ("The plain language of the statute unambiguously precludes any

18   continued doctrine of special treatment for attorneys under the FDCPA."); *Paris v. Steinberg &

19   Steinberg,* 828 F. Supp.2d 1212 (2011). Thus, if attorneys defined as "debt collectors" under the

20   FDCPA or as "collection agencies" or licensees under the CAA commit violations of the relevant

21   statutes, the attorneys will be determined to have committed a *per se* violation of the CPA, and to

22   have committed an unfair act or practice or unfair method of competition in the conduct of trade or

23   commerce for the purpose of the application of the CPA. *Dibb,* 2015 WL 1527606, at *5; RCW

24   19.16.440. *See also Brandt v. Columbia Credit Services, Inc.,* 2018 WL 1757114 (W.D. Wash.

---

[9] A copy of the Court's Order in *Khachatourians* is attached to the Beckett Decl. as Exhibit 3.

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 21

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

April 12, 2018) (attorney who was "debt collector" under FDCPA and who violated FDCPA committed *per se* violation of CPA).

With respect to whether an attorney who collects debts on behalf of another can be determined to have committed a CPA violation when there is no predicate violation of the FDCPA or CAA, in *Lang v. Gordon*, No. C10-819-RSL, 2011 WL 62141 (W.D. Wash. Jan. 6, 2011), an alleged debtor sued a debt collector attorney for alleged violations of the FDCPA, CAA, and CPA. The defendant attorney filed a 12(b)(6) motion to dismiss, arguing in part that the CAA was unconstitutional as it constituted an impermissible attempt by the legislature to regulate the conduct of lawyers. *Id.* at *3. Judge Lasnik rejected this argument:

> The … "entrepreneurial aspects" of the practice of law "fall within the sphere of 'trade or commerce'" under the CPA. … Similarly, in this case, the WCAA can be constitutionally applied to attorneys who are engaged in collecting debts on behalf of third parties. In essence, lawyers who are acting as debt collectors are engaging in the entrepreneurial aspects of law rather than practicing law. Applying the WCAA and CPA to that type of conduct does not run afoul of the separation of powers doctrine. Rather, it is no different than applying other generally applicable statutes, such as criminal laws, to attorneys. Accordingly, plaintiff may pursue her WCAA claim.

*Id.*

Judge Lasnik's opinion in *Lang* is applicable here. P & F and Cheung are debt collectors who filed and litigated debt collection cases against the Plaintiffs. FAC ¶¶ 24, 30, 38, 41, 57-59, 74; Dkt. #16-3, at 14-15. By doing so, they engaged in the entrepreneurial aspects of legal practice. They are not exempt from liability under the CPA, and they should be required to answer for their CPA violations.

### 6. Litigation conduct by debt collectors and collection agencies and licensees is trade or commerce for purposes of the CPA.

Citing *Blake v. Fed Way Cycle Ctr.,* 40 Wn. App. 302, 698 P.2d 578 (1985), the Defendants argue that the false affidavits submitted to the courts occurred in litigation, and therefore did not occur "within the sphere of trade or commerce." Dkt. #15 at 20. While normally conduct occurring during litigation constitutes a private dispute, "if a party routinely files lawsuits as part of its

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 22

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

business, its conduct, pleadings, affidavits and testimony within those lawsuits *are* within the sphere of trade or commerce. *Allstate Ins. Co. v. Tacoma Therapy, Inc.,* No. 13-CV-052114-RBL, 2014 WL 1494100, at *5 (W.D. Wash. Apr. 16, 2014) (emphasis in original). In *Evergreen Collectors v. Holt,* 60 Wn. App. 151, 803 P.2d 10 (1991), the court ruled that because lawsuits are a part of a collection agency's business, a collection agency's litigation conduct is within the sphere of trade or commerce, and is subject to liability under the CPA:

> [T[he language in *Blake* indicating that the filing of a lawsuit took the defendant's ensuing conduct out of the sphere of trade or commerce does not apply here, where the very business of a collection agency often requires it to sue debtors in court. In light of the Collection Agency Act's clear intention to bring collection agency activities within the coverage of the Consumer Protection Act, it would be ludicrous to hold that an agency's tactics after filing suit are exempt from such coverage.

*Id.* at 156-57.

P & F is a debt collector for purposes of the FDCPA and a collection agency and licensee under the CAA. Cheung is P & F's employee. Therefore, their litigation conduct is within the sphere of trade or commerce for purposes of the CPA, and they can be held liable under the CPA for that litigation conduct.

### 7. The litigation privilege does not immunize Defendants from liability for their litigation conduct.

Nor are the Defendants immune from liability under the CPA due to the so-called "litigation privilege". The privilege is not applicable to protect attorneys for their conduct in debt collection litigation.

Defendants cite *Jeckle v. Crotty,* 120 Wn. App. 374, 386, 85 P.3d 931 (2004) and *Benz v. Rashleigh,* 189 Wn. App. 1009, 2015 WL 4522626 (2015), for the broad proposition that attorneys are always immune from suit for their litigation conduct. However, neither *Jeckle* nor *Benz* involved a claim that attorneys acting as debt collectors or collection agencies had violated the CPA, and the Court of Appeals clarified subsequent to *Jeckle* that "there is no broad-based litigation immunity doctrine," and that "[c]laims of immunity must be considered narrowly and in relation to the purpose of the immunity to allow counsel freedom to fully present a case." *Montecito*

RESPONSE TO PATENAUDE AND FELIX'S AND
MATTHEW CHEUNG'S MOTION TO DISMISS
(2:18-cv-01132 JCC) - 23

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028

1    *Estates, LLC v. Himsl*, 177 Wash. App. 1017, 2013 WL 5758860 (2013) (unpublished).[10] Because

2    attorneys acting as debt collectors and collection agencies are liable to debtors for their abusive and

3    deceptive litigation conduct, the litigation privilege doctrine cannot serve to shield them from that

4    liability.

5            As discussed above, debt collector/collection agency attorneys and law firms are liable for

6    their improper litigation conduct under both the FDCPA and CAA. Clearly, attorneys are entitled to

7    no broad immunity under the litigation privilege for their conduct that violates those statutes. And

8    because a violation of the FDCPA is a *per se* violation of the CPA, and a violation of RCW

9    19.16.250 is an unfair act or practice or unfair method of competition in the conduct of trade or

10   commerce for the purpose of the CPA, attorneys can be liable under the CPA for their litigation

11   conduct that violates those statutes when they act as debt collectors and collection agencies and

12   licensees. *See, e.g., Brandt,* 2018 WL 1757114, at *5; *Hartman v. Great Seneca Fin. Corp.,* 467 F.

13   Supp.2d 769, 776-78 (S.D. Ohio 2004) (common law witness immunity and litigation privilege

14   doctrines do not immunize attorneys from liability to an alleged debtor under the FDCPA for false

15   statements made in an affidavit filed in state court proceedings against that debtor).

16                                   **IV.    CONCLUSION**

17           For all of these reasons, the Court should deny P & F's and Cheung's motion to dismiss

18   Plaintiffs' claims against them. **[11]**

19

20

21

22   ---

     [10] Consistent with Washington GRE 14.1, a copy of *Montecito Estates, LLC* is attached to the Leonard declaration.

23   [11] However, in the event the Court determines that the motion should be granted in whole or in part, Plaintiffs request
     leave to file an amended complaint to rectify any infirmities that might be identified in their pleading. *See Moss v. U.S.*

24   *Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009) ("Dismissal [on a Rule 12(b)(6) motion] is improper unless it is clear,
     upon *de novo* review, that the complaint could not be saved by any amendment."); *Eminence Capital, LLC v. Aspeon,*

25   *Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (where trial court dismisses plaintiff's complaint for failure to state a claim,
     the plaintiff should be given leave to amend to state a claim if it can).

26

27

Leonard Law
                                                                            1001 4th Ave, Suite 3200
                                                                            Seattle, Washington 98126
                                                                            Phone: 206-486-1176
                                                                            Fax: 206-458-6028

1

DATED this 1st day of October, 2018.

2

*Attorneys for Plaintiffs*:

3

LEONARD LAW                                    BERRY & BECKETT, PLLP

4

/s/ Sam Leonard                                /s/ Guy Beckett

5

Sam Leonard, WSBA #46498                       Guy W. Beckett, WSBA #14939

6

1001 4th Ave, Suite 3200                       1708 Bellevue Avenue
Seattle, Washington  98154                     Seattle, WA  98122
Telephone:  (206) 486-1176                     Telephone:  (206) 441-5444

7

Facsimile:   (206) 458-6028                    Facsimile:    (206) 838-6346
E-mail:  sam@seattledebtdefense.com            E-mail:  gbeckett@beckettlaw.com

8

9

HENRY & DeGRAAF, P.S.                           NORTHWEST CONSUMER LAW CENTER

10

/s/ Christina Henry                            /s/ Amanda Martin
Christina L. Henry, WSBA # 31273               Amanda Martin, WSBA #49581

11

150 Nickerson St., Ste. 311                    214 East Galer St., Ste. 100
Seattle, WA  98109                             Seattle, WA  98102

12

Telephone:  (206) 330-0595                     Telephone:  (206) 805-0989
Facsimile:  (206) 400-7609                     Facsimile:  (206) 805-1716

13

E-mail:  chenry@HDM-legal.com                  E-mail:  Amanda@NWCLC.org

14

15

16

17

18

19

20

21

22

23

24

25

26

27

RESPONSE TO PATENAUDE AND FELIX'S AND                              Leonard Law
MATTHEW CHEUNG'S MOTION TO DISMISS                          1001 4th Ave, Suite 3200
(2:18-cv-01132 JCC) - 25                                   Seattle, Washington 98126
                                                             Phone: 206-486-1176
                                                              Fax: 206-458-6028

1

**CERTIFICATE OF SERVICE**

2

I, Christina L Henry, declare under penalty of perjury as follows:

3

4

1.      I am over the age of eighteen years, a citizen of the United States, not a party herein, and am competent to testify to the facts set forth in this Declaration.

5

6

2.      That on Monday, October 1st, 2018, I caused the foregoing document attached to this Certificate of Service plus any supporting documents, declarations and exhibits to be served upon the following individuals via the methods outlined below:

7

8

| | |
|---|---|
| Damian P. Richard, Esq<br>SESSIONS FISHMAN NATHAN & ISRAEL, LLP<br>1545 Hotel Circle South, Ste 150<br>San Diego, CA 92108<br>Tel# (619) 758-1891<br>drichard@sessions-law.biz,<br>acoito@sessions-law.biz,<br>dkirkpatrick@sessions-law.biz,<br>mwinder@sessions-law.biz | ☐ Legal Messenger<br>☒ Electronic Mail<br>☐ Federal Express |
| Marc Rosenberg<br>LEE SMART, P.S., INC.<br>1800 One Convention Place<br>701 Pike St.<br>Seattle, WA 98101-3929<br>Tel# 206-624-7990<br>mr@leesmart.com<br>Lawyermarc@comcast.net | ☐ Legal Messenger<br>☒ Electronic Mail<br>☐ Federal Express |

9

10

11

12

13

14

15

16

17

18

19

20

21

I certify under penalty of perjury under the laws of the State of Washington that the foregoing statement is both true and correct.

22

23

24

Dated this 1st of October 2018, at Bothell, Washington.

25

*/s/  Christina L Henry*_____
Christina L Henry

26

27

Leonard Law
1001 4th Ave, Suite 3200
Seattle, Washington 98126
Phone: 206-486-1176
Fax: 206-458-6028