UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTHER HOFFMAN, *et al.*, | CASE NO. C18-1132-JCC |
| Plaintiffs, | ORDER |
| v. | |
| TRANSWORLD SYSTEMS INCORPORATED, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants Patenaude & Felix, APC ("P&F") and Matthew Cheung's ("Cheung") motion to dismiss (Dkt. No. 15) and Defendant Transworld Systems Inc.'s ("TSI") joinder to the motion (Dkt. No. 17) (collectively, "the motion to dismiss") Plaintiffs' amended complaint (Dkt. No. 1-4). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES the motion in part for the reasons explained herein.

I.  **BACKGROUND**

   **A.  Defendants**

There are a number of National Collegiate Student Loan Trusts (collectively, the "NCSLTs") at issue, which are not named as defendants in this case. (Dkt. No. 1-4.)[1] The

---

[1] In their complaint, Plaintiffs state that the NCSLTs at issue are, "National Collegiate Master Student Loan Trust, National Collegiate Student Loan Trust 2003-1, National Collegiate

NCSLTs are Delaware statutory trusts that allegedly own student loan obligations purchased from banks or other financial institutions. (*Id.*) TSI is incorporated under the laws of California, and is a Washington licensed debt collection agency. (*Id.*) Since November 2014, TSI has served as a successor sub-servicer to the successor special servicer of the NCSLTs. (*Id.*) TSI has been responsible for collecting on defaulted loans allegedly contained in the NCSLTs, and oversees law firms that file collection lawsuits against debtors whose debts are allegedly held in the NCSLTs. (*Id.*)

P&F is a Washington licensed debt collector that also operates as a law firm. (*Id.*) P&F provides services as both a collection agency and a law firm. (*Id.*) Cheung is an attorney licensed to practice law in Washington. (*Id.*) P&F and Cheung (collectively, "Law Firm") were retained by TSI, and collect or attempt to collect debts referred by TSI and the NCSLTs. (*Id.*)

**B.  Judicial Notice**

Defendants request that the Court take judicial notice of documents that were filed in various collection lawsuits filed in King County Superior Court and in litigation in the United States District Court for the District of Delaware. (Dkt. Nos. 15 at 2; 17 at 2; *see* Dkt. No. 16.) Plaintiffs request that the Court take judicial notice of various documents related to litigation in Washington and Delaware, unpublished cases, and a page from the Washington Department of Revenue website. (Dkt. No. 21.) Pursuant to Federal Rules of Evidence 201(b)(2) and 201(c)(2), the Court takes judicial notice of the offered documents.[2]

---

Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-4[.]" (Dkt. No. 1-4 at 2.)

[2] Although the Court generally may not consider material outside of the pleadings in ruling on a Federal Rule of Civil Procedure 12(b)(6) motion, "documents whose contents are alleged in a complaint and whose authority no party questions, but which are not physically attached to the pleading" may be considered. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

### C. Plaintiff Esther Hoffman

In 2004, Hoffman took out a student loan in the amount of $6,000. (Dkt. No. 1-4.) Her mother agreed to make payments on the loan, but failed to do so. (*Id.*) In or around 2013, Hoffman's mother was served with a summons by Law Firm, and Hoffman began making payments to P&F. (*Id.*) After Hoffman became unable to make payments, Law Firm filed a complaint against Hoffman on behalf of NCSLT 2004-2. (*Id.*; Dkt. No. 16-1 at 7.) In August 2016, Law Firm filed a motion for default judgment that was supported by an affidavit signed by Dudley Turner, an employee of TSI. (Dkt. Nos. 1-4; 16-1 at 2–36, 40–41.) The state court entered a default judgment against Hoffman, and Law Firm subsequently filed several writs of garnishment attempting to collect the judgment balance. (Dkt. Nos. 1-4; 16-1 at 43–44.)

In January 2017, counsel appeared on behalf of Hoffman and sent a letter to Cheung that referenced a stipulated consent order TSI had entered into with the Consumer Financial Protection Bureau ("CFPB"), discussed *infra*. (Dkt. No. 1-4.) Two weeks after her counsel sent the letter, Hoffman received a letter from Law Firm that included copies of a writ of garnishment and application for writ of garnishment. (*Id.*)

### D. Plaintiff Sarah Douglass

In 2005 and 2006, Douglass took out two student loans in the amounts of $2,000 and $2,500. (*Id.*) On April 24, 2017, Law Firm filed two complaints on behalf of NCSLT 2006-3 against Douglass in King County Superior Court. (*Id.*; Dkt. No. 16-1 at 53.) The next day, Law Firm filed a motion for entry of a default judgment against Douglass in both cases, each of which were supported by an affidavit signed by Brian Jackson, a TSI employee. (Dkt. Nos. 1-4; 16-2 at 4, 7–36.) The state court entered default judgment against Douglass in both cases. (Dkt. Nos. 1-4; 16-2 at 38–40.)

---

1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The Court may also take judicial notice of matters of public record while considering a motion to dismiss. *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Douglass learned of the default judgments in June 2017, when she received copies of the judgments in the mail from Law Firm. (Dkt. No. 1-4.) In July 2017, Law Firm filed an affidavit of garnishment. (Dkt. No. 16-1 at 50.) In November 2017, counsel appeared on behalf of Douglass. (Dkt. No. 1-4; Dkt. No. 16-2 at 42.) Douglass challenged the service of process as improper in both cases, and the state court vacated the default judgments. (Dkt. Nos. 1-4; 16-2 at 45–82.) One case was dismissed without prejudice following Law Firm's motion for voluntary dismissal, and the other remains pending. (Dkt. Nos. 1-4, 16-3 at 1–6.)

### E. Plaintiffs Anthony Kim, Il Kim, and Daria Kim[3]

From 2005 to 2007, Anthony took out six student loans totaling $76,500. (Dkt. No. 1-4.) In January 2015, his mother Daria was served with a summons for a collection lawsuit filed by Law Firm on behalf of NCSLT 2005-2 against Anthony and his father Il. (*Id.*) Anthony responded to the suit *pro se*. (*Id.*) In June 2015, Anthony learned that P&F had initiated garnishment of his bank account on behalf of NCSLTs 2005-2, 2005-3, 2006-1, and 2007-4. (*Id.*) The Kims learned that Law Firm had obtained default judgments against them individually and collectively for each NCSLT. (*Id.*) In support of its motions for default judgment, Law Firm had filed affidavits signed by Turner. (*Id.*)

In October 2015, counsel appeared on behalf of the Kims. (*Id.*; Dkt. No. 16-3 at 28–29, 89–90.) Counsel for the Kims filed an amended complaint in one suit and moved to set aside the default judgments in the others, arguing that Daria had only received the summons and complaint for one of the lawsuits. (Dkt. Nos. 1-4; 15 at 5; 16-3 at 89–105.) The state court vacated the default judgments, and all of the lawsuits against the Kims were ultimately dismissed for lack of prosecution. (Dkt. Nos. 1-4; 15 at 5–6; 16-3 at 8–35, 37–40.)

### F. Affidavits and Verifications of Amounts

Plaintiffs allege that each of the affidavits filed in support of Law Firm's motions for

---

[3] Individual members of the Kim family will be referred to by their first names for clarity. The Court means no disrespect by using this naming convention.

default judgment were deficient. (Dkt. No. 1-4.) For example, Plaintiffs assert that the affiants falsely stated they had personal knowledge and were thereby authorized and competent to testify about the alleged debts (*Id*.) Plaintiffs further allege that Defendants neither possessed documentation necessary to establish that the NCSLTs owned the debts or Defendants' right to collect on the debts nor knew where such documentation was located. (*Id*.) Plaintiffs further assert that Defendants filed lawsuits without the intent or ability to prove their claims, as they were aware of the affidavits' deficiencies. (*Id*.)

### G. Delaware Litigation

#### 1. Stipulated Consent Order

TSI and the CFPB stipulated to entry of a consent order, which was filed on September 18, 2017 (the "Consent Order"). (Dkt. No. 1-1 at 48, 81–84.) The Consent Order applies to actions taken by TSI and the law firms it hired between November 1, 2014 and April 25, 2016. (*Id*. at 53, 55.) The Consent Order applies to the parties to it and their successors in interest, and TSI does not admit or deny any of the Consent Order's findings of fact or conclusions of law. (*Id*. at 49, 83.) The Consent Order's findings of fact state that in numerous instances law firms retained by TSI filed false and misleading affidavits in support of the NCSLTs' claims that consumers owed debts to the NCSLTs. (*Id*. at 53.) The Consent Order also found that law firms retained by TSI had filed collection lawsuits without the intent or ability to prove the claims if contested because they lacked documentation of the chain of assignment and could not prove that a debt was owed to the relevant NCSLT. (*Id*. at 55–56.)

The Consent Order prohibited TSI from causing the law firms it had retained to continue to pursue collection lawsuits that TSI had any reason to believe may be unenforceable. (*Id*. at 61–62.) It also required TSI to direct the law firms that were engaged in collection lawsuits to either withdraw misleading affidavits or dismiss the lawsuits, and to halt post-judgment enforcement activities if a collection lawsuit involving a misleading affidavit had already been resolved. (*Id*. at 62–64.)

2. Consent Judgment

Also on September 18, 2017, the CFPB filed a civil action for injunctive relief against the NCSLTs in Delaware. (Dkt. No. 1-4) (citing *Consumer Financial Protection Bureau v. The National Collegiate Master Student Loan Trust et al.*, Cs. No. 17-cv-01323-GMS (D. Del. 2017) ("the CFPB Trust Action"). TSI and the CFPB filed a proposed consent judgment with the Delaware district court. (Dkt. No. 1-1 at 86–125.) The proposed consent judgment has not been entered by the district court, and multiple entities have intervened in the ongoing litigation. (*Id.*; Dkt. No. 16-4 at 56–65.)

**H.    Collection Actions in Washington**

The amended complaint alleges that, "[s]ince entry of the TSI Consent Order on September 18, 2017, Defendants have continued filing collection lawsuits in Washington on accounts they allege are owned by the NCSLTs." (Dkt. No. 1-4 at 30.) The amended complaint further alleges that Defendants have failed to voluntarily dismiss all NCSLT collection lawsuits in Washington in which Defendants have not complied with the Consent Order, and have continued to seek to enforce judgments without having complied with the Consent Order. (*Id.*)

Plaintiffs filed a complaint on behalf of themselves and others similar situated, alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, the Washington Consumer Protection Act ("CPA"), Washington Revised Code section 19.86, and the Washington Collection Agencies Act ("CAA"), Washington Revised Code section 19.16. (Dkt. No. 1-1 at 35–42.) Defendants now move to dismiss Plaintiffs' amended complaint for failure to state a claim upon which relief can be granted. (Dkt. Nos. 15, 17.)[4]

---

[4] Plaintiffs request that the Court strike parts of the statement of facts in TSI's joinder to the motion to dismiss as unsupported by citation to the record and as alleging facts outside the present record. (Dkt. No. 20 at 3–4.) The request to strike is DENIED, but the Court will not rely on improperly cited factual assertions or factual assertions outside the scope of the amended complaint.

## II. DISCUSSION

### A. Shotgun Pleading

Defendants request that the Court dismiss Plaintiffs' amended complaint with leave to amend as an improper shotgun pleading. (Dkt. No. 15 at 8.) A pleading may constitute an impermissible shotgun pleading if, after incorporating all antecedent facts by reference, it "fails to connect its factual allegations to the elements comprising the Plaintiffs' various claims." *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279–80 (E.D. Wash. 2007). Although each of Plaintiffs' claims for relief in their amended complaint incorporate all of the antecedent allegations of the complaint, each of Plaintiffs claims also provide citations to particular statutes and supporting factual allegations. (*See* Dkt. No. 1-4 at 30–36.) Therefore, the amended complaint does not constitute an impermissible shotgun pleading, and dismissal with leave to amend is not warranted on this ground.

### B. Motion to Dismiss

#### 1. Legal Standard

The Court may dismiss a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### 2. Factual Sufficiency

Defendants broadly argue that the amended complaint does not plead sufficient factual content to establish a plausible claim for relief because it does not allege that Defendants failed to comply with the Consent Order. (Dkt. No. 15 at 10.) But the amended complaint alleges both that the affidavits and documentation filed by Defendants were insufficient to establish their right to collect on the debts, and that Defendants failed to comply with the Consent Order when they did not voluntarily dismiss collection lawsuits or halt enforcing judgments in which they did not conduct required review and verification. (*See* Dkt. No. 1-4 at 16–17, 25.) Taken as true, the amended complaint contains factual allegations that suggest Defendants did not comply with the Consent Order, and thus establishes a plausible claim for relief on its face. Defendants' motion to dismiss is DENIED on this ground.[5]

### 3. Sufficiency of the Affidavits

TSI argues that the affidavits filed in the collection lawsuits against Plaintiffs were sufficient to prove the assignment of the debts to the NCSLTs and that the affiants were "custodians" or "other qualified witnesses" qualified to testify to the NCSLTs' ownership of the debts and Defendants' right to collect on the debts. (Dkt. No. 17 at 7–8) (citing *State v. Quincy*, 95 P.3d 353, 355 (Wash. Ct. App. 2005); *Bavand v. OneWest Bank*, 385 P.3d 233, 246 (Wash. Ct. App. 2016), *as modified* (Dec. 15, 2016)). But the amended complaint alleges that each affidavit does not provide documentation sufficient to prove that Plaintiffs' debts had been assigned to the respective NCSLTs, that Defendants did not possess or review such documentation, and that Defendants were aware the documentation was lost. (*See, e.g.*, Dkt. Nos. 1-4 at 8–9; 16-1 at 22–24) (allegations concerning Turner affidavit filed in Hoffman's case). The

---

[5] TSI argues for the first time in its reply brief that Plaintiffs' primary allegation is based solely on "information and belief," and thus "does not provide a sufficient factual basis to sustain either an FDCPA or WCPA/WCAA claim." (Dkt. No. 27 at 2–3.) "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). The Court declines to address TSI's untimely argument.

amended complaint also alleges that the affiants falsely swore to having reviewed the relevant documents and having personal knowledge of the relevant record management practices. (*See* Dkt. No. 1-4 at 17.) TSI's arguments are insufficient to overcome the amended complaint's well-pled facts, which the Court accepts as true when considering a motion to dismiss. *Iqbal*, 556 U.S. at 677–78.

TSI also argues that Plaintiffs lack standing to challenge the assignment of Plaintiffs' debts to the NCSLTs because Plaintiffs were not parties to the relevant deposit and sale agreements and pool supplements. (Dkt. No. 17 at 8–9.) This is irrelevant. Plaintiffs' arguments focus on the insufficiency of the affidavits to establish that the NCSLTs owned the debts or that Defendants were entitled to bring collection lawsuits against Plaintiffs, and therefore were misleading. (Dkt. No. 1-4 at 15–18.) The amended complaint does not challenge the purported underlying assignment of debts to the NCSLTs as improper. Thus, Defendants' motion to dismiss is DENIED on these grounds.

### 4. FDCPA Claims

"[T]he FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors[.]" *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). "An FDCPA plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* 'least sophisticated debtor' likely would be misled." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1117-18 (9th Cir. 2014) (emphasis in original). The least sophisticated debtor standard is lower than examining whether a reasonable debtor would be deceived or mislead by particular language. *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988).

#### i. *FDCPA Statute of Limitations*

A claim arising under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Generally, the FDCPA's statute of limitations

begins to run when the allegedly improper collection lawsuit is filed. *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997). The discovery rule, under which "the statute of limitations for a particular claim does not accrue until that claim is discovered, or could have been discovered with reasonable diligence, by the plaintiff," applies to FDCPA claims. *Gabelli v. S.E.C.*, 568 U.S. 442, 447 (2013) (quoting *S.E.C. v. Gabelli*, 653 F.3d 49, 59 (2d Cir. 2011)); *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009). Therefore, a complaint will be timely if it is served within one year of when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Mangum*, 575 F.3d at 940 (internal quotations omitted); *see Lyons v. Michael & Assocs.*, 824 F.3d 1169, 1171–72 (9th Cir. 2016) (if a plaintiff is unaware that a debt collection lawsuit has been filed, the one-year statute of limitations under the FDCPA begins to run when he or she receives service of process).

The parties agree that the initial complaint in this case was filed on June 20, 2018. (Dkt. Nos. 22 at 11; 25 at 4.) Hoffman was notified that a summons and complaint had been served on her mother in 2013, and a default judgment was entered against her on August 25, 2016 after Defendants filed an affidavit signed by Turner. (Dkt. Nos. 1-4 at 7–10; 16-1 at 43–44.) Defendants have not taken any action in the collection lawsuits filed against the Kims since 2015. (Dkt. Nos. 1-4 at 14; 15 at 12; 16-3 at 11–108; 16-4 at 1–49.) Thus, Hoffman and the Kims' claims are time-barred because they were aware of the injury that forms the basis of their FDCPA claims over a year before the filing of the initial complaint in this case. Therefore, Hoffman and the Kims' claims for violation of the FDCPA are DISMISSED with prejudice.[6]

The amended complaint alleges that Douglass learned of the lawsuits when she received copies of the default judgments entered against her in June 2017. (Dkt. No. 1-4 at 11.) Taking the amended complaint's allegation as true and applying the discovery rule, the FDCPA's statute of limitations began to run on the day Douglass received the copies of the default judgments. But

---

[6] A dismissal with prejudice is appropriate because amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

ORDER
C18-1132-JCC
PAGE - 10

Plaintiffs do not assert the particular day on which Douglass received the default judgments. Certain days of June 2017 fall outside of the statute of limitations period extending back from June 20, 2018. Thus, Plaintiffs have not alleged sufficient factual matter to establish that Douglass's claim complied with the FDCPA's statute of limitations. Therefore, Douglass's claim for violation of the FDCPA is DISMISSED without prejudice and with leave to amend.[7]

Plaintiffs argue that because the CFPB Consent Order was not published until September 2017, "the parties here could not have reasonably understood the fraud and misrepresentations committed by the Defendants." (Dkt. No. 22 at 11.) This is unavailing, as the cases applying the discovery rule to the FDCPA's statute of limitations focus on when the plaintiff discovered or could have discovered the facts underlying the FDCPA claim, not the plaintiff's subjective understanding of the violation. *See Mangum*, 575 F.3d at 941; *Lyons*, 824 F.3d at 1171–72. Plaintiffs could have discovered the insufficiency of the affidavits through the exercise of reasonable diligence, regardless of whether the Consent Order was entered. Therefore, the date on which the Consent Order was published is not the operative date from which the statute of limitations began to run on Plaintiffs' FDCPA claims.

*ii. Materiality*

Defendants argue that the flaws in the affidavits identified by Plaintiffs are not material under the FDCPA because they "did not undermine Plaintiffs' ability to intelligently choose action concerning the debt." (Dkt. No. 15 at 11.) "Material false representations . . . are those that could 'cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort.'" *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 776 (9th Cir. 2017) (quoting *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014), *as*

---

[7] Law Firm appears to have mistakenly argued that Hoffman, as opposed to Douglass, learned of the collection lawsuit prior to June 2017. (Dkt. No. 25 at 4.) Plaintiffs filed a surreply requesting that the Court strike Law Firm's argument as beyond the scope of Plaintiffs' response. (Dkt. No. 28.) Because Law Firm's argument regarding Hoffman had no bearing on the Court's conclusion, the Court declines to strike the argument.

*amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014)). "Immaterial false representations, by contrast, are those that are 'literally false, but meaningful only to the 'hypertechnical' reader.'" *Id*. The affidavits at issue purported to establish that the NCSLTs owned the debts at issue and that Defendants were entitled to bring collection lawsuits against Plaintiffs. (Dkt. No. 1-4 at 17–18.) The amended complaint alleges that the affidavits were insufficient to establish either ground due to misrepresentations concerning the affiants' personal knowledge and the attached documentation. (*Id*.) Such misrepresentations are plainly material under the FDCPA. The hypothetical least sophisticated debtor's decision whether to challenge that the debt was owed to a particular NCSLT or that Defendants were entitled to bring a collection lawsuit against him or her would certainly be affected by a sworn affidavit purporting to establish the same. Defendants' motion to dismiss is DENIED on this ground.

### iii. Defendants' Liability under the FDCPA

TSI contends that it cannot be liable to Plaintiffs for violation of the FDCPA because the amended complaint alleges that TSI was the servicer of the NCSLTs, and the NCSLTs were assigned the relevant debts before they were in default. (Dkt. No. 17 at 9–11.)

The amended complaint does not explicitly name TSI as a "debt collector;" however, it alleges that TSI has been a successor sub-servicer to the successor special servicer of the NCSLTs since November 2014, and has been responsible for collecting on defaulted loans alleged to be owed to the NCSLTs since that time. (Dkt. No. 1-4 at 9–10.) The amended complaint further alleges that "TSI is directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or asserted to be due to another person." (*Id*.) Thus, the amended complaint has pled sufficient factual allegations, taken as true, to plausibly bring TSI within the definition of a "debt collector" under the FDCPA. *See* 15 U.S.C. §§ 1692a(6), (6)(F)(iii); *Amini v. Bank of Am. Corp.*, 2013 WL 1898211, slip op. at 5 (W.D. Wash. 2013) (noting that "the difference between loan servicers who are not subject to the FDCPA and those who are is whether the debt that is being collected

was already in default when taken for servicing").

The amended complaint has also alleged that the documents attached to the affidavits filed in support of the motions for default judgment against Plaintiffs were insufficient to establish either that the NCSLTs were owed the debts at issue or that Defendants were entitled to collect on the debts. (*See* Dkt. Nos. 1-4 at 14, 22, 30; 16-1 at 22–24.) TSI's reliance on the same documents to argue that it cannot be liable under the FDCPA is misplaced, because it cannot overcome the deficiencies identified by the amended complaint and the amended complaint's allegation that TSI has been responsible for collecting defaulted loans since 2014. (Dkt. No. 1-4 at 4–5.)[8]

Law Firm argues that it cannot be held vicariously liable under the FDCPA for the acts of its clients or its loan servicer. (Dkt. No. 15 at 11.) But "lawyers who regularly collect debts through litigation" fall within the scope of the FDCPA. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (citing *Heintz v. Jenkins*, 514 U.S. 291, 293–94 (1995) (holding attorney who represented bank liable under the FDCPA as a debt collector based on actions taken in litigation to collect or attempt to collect consumer debts)). The amended complaint alleges that Law Firm has been filing collection lawsuits against Washington consumers on behalf of the NCSLTs since 2006. (Dkt. No. 1-4 at 16.) The amended complaint further alleges that Law Firm knowingly filed false and misleading affidavits in support of motions for default judgment in their efforts to collect on debts allegedly owed by Plaintiffs to the NCSLTs. (*See, e.g.*, *id.* at 13–14.) Therefore, the amended complaint states a plausible cause of action against Law Firm for violation of the FDCPA for actions taken as an attorney.

---

[8] TSI appears to argue for the first time in its reply brief that Plaintiffs "cannot challenge, either preemptively or after the judgment has been entered, the evidentiary ruling of the state court under the guise of FDCPA and WCPA/WCAA claims," relying on an unpublished, out-of-circuit case. (Dkt. No. 27 at 5) (quoting *Delisi v. Midland Funding*, LLC, 2015 WL 4393901, slip op. at 7 (E.D. Mo. 2015)). The Court rejects TSI's argument as untimely. *Zamani*, 419 F.3d at 997.

ORDER
C18-1132-JCC
PAGE - 13

####        iv.   15 U.S.C. §§ 1692e(2)(A), (10)

A debt collector may not make a "false representation of . . . the character, amount, or legal status of a debt." 15 U.S.C. § 1692e(2)(A). Further, a debt collector is prohibited from "[t]he use of any false misrepresentation or deceptive means to collect or attempt to collect any debt[.]" 15 U.S.C. § 1692e(10). The amended complaint alleges that Defendants filed affidavits in support of their motions for default judgment that were insufficient to establish that the NCSLTs owned the debts at issue or that Defendants were entitled to collect on the loans on behalf of the NCSLTs. (Dkt. No. 1-4 at 36; *see also* Dkt. Nos. 1-4 at 8–9; 16-1 at 22–24.) The amended complaint further alleges that Defendants did not possess or review the relevant documentation prior to filing suit, and were aware that the documentation was unavailable. (*See, e.g.*, Dkt. No. 1-4 at 6.) Thus, the amended complaint has alleged a plausible claim that Defendants falsely represented the legal status of the student loans at issue when they filed the affidavits, and thus violated 15 U.S.C. § 1692e(2)(A). Further, the amended complaint has alleged a plausible claim that the affidavits constituted a deceptive means of collecting or attempting to collect Plaintiffs' debts, and thereby violated 15 U.S.C. § 1692e(10). Therefore, Defendants' motions to dismiss are DENIED on this ground.[9]

####        v.   15 U.S.C. § 1692e(5)

A debt collector is prohibited from "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). The Seventh Circuit has held that filing a collection lawsuit is not a "threat" within the meaning of 15 U.S.C. § 1692e(5), even

---

[9] TSI argues that it did not violate 15 U.S.C. §§ 1692e(2)(A) and (10) because Plaintiffs concede that they took out the underlying loans and do not challenge the documents submitted to the state courts as insufficient to have judgment entered against them. (Dkt. No. 17 at 12.) Neither argument has merit. First, the FDCPA "is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Servs. Corp.*, 667 F.2d 775, 777 (9th Cir. 1982). Second, the amended complaint repeatedly alleges that the documentation attached to the affidavits, which purported to establish that the NCSLTs owned the debts at issue and that Defendants were entitled to collect on the debts, were insufficient. (*See, e.g.*, Dkt. No. 1-4 at 8–9, 16–18.)

if the debt collector filed the lawsuit with no intention to proceed to trial. *St. John v. Cach, LLC*, 822 F.3d 388, 391–92 (7th Cir. 2016). The Court finds the Seventh Circuit's reasoning persuasive, and hereby adopts it. The amended complaint's allegations concerning 15 U.S.C. § 1692e(5) focus on Defendants' litigation efforts to collect the debts. (*See* Dkt. No. 1-4 at 36.) Therefore, Douglass's FDCPA claim for violation of 15 U.S.C. § 1692e(5) is DISMISSED without prejudice and with leave to amend.

### vi. 15 U.S.C. § 1692f

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The amended complaint alleges that Defendants filed affidavits purporting to establish that the Plaintiffs' debts were owned by the NCSLTs and that Defendants were entitled to collect on the debts, although the affidavits lacked the necessary documentation and Defendants knew that the necessary documentation was unavailable. (*See, e.g.*, Dkt. No. 1-4 at 14; *see also id.* at 36–37.) These allegations are sufficient to raise a reasonable inference that Defendants are liable for violation of 15 U.S.C. § 1692f. Therefore, Defendants' motion to dismiss is DENIED on this ground.

## 5. CPA Claims

### i. Per Se Violation of the CPA - FDCPA

"When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA . . . under state and federal law, reflecting the public policy significance of the industry." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (Wash. 2009) (citing 15 U.S.C. § 1692). Because Hoffman and the Kims' FDCPA claims are dismissed with prejudice, their claims for *per se* violations of the CPA based on their FDCPA claims are also DISMISSED with prejudice.[10] Douglass's claims for *per se* violations of the FDCPA are DISMISSED without

---

[10] Plaintiffs argue that the Court should allow Hoffman and the Kims to proceed with their claims for *per se* violations of the CPA based on their FDCPA claims, which were meritorious other than being time-barred. (Dkt. No. 22 at 16–18.) Plaintiffs ask the Court to reject recent decisions of other courts in this district, which have rejected similar arguments. *See*

prejudice. If Plaintiffs can show upon amendment that Douglass was notified of the default judgments against her within one year of the present lawsuit being filed on June 20, 2018, she may proceed with her claims for *per se* violations of the CPA based on her remaining FDCPA claims.

### ii. Per Se Violation of the CPA – CAA

"[A] violation of the provisions of the Collection Agency Act is a per se violation of the Consumer Protection Act." *Evergreen Collectors v. Holt*, 803 P.2d 10, 12 (Wash. Ct. App. 1991); Wash. Rev. Code § 19.16.440.

### a. RCW 19.16.250(16)

"No licensee or employee of a licensee shall . . . [t]hreaten to take any action against the debtor which the licensee cannot legally take at the time the threat is made." Wash. Rev. Code § 19.16.250(16). The amended complaint alleges that Defendants violated this provision by continuing litigation and collection activities after the Consent Order was executed without conducting the necessary review and verification. (Dkt. No. 1-4 at 34.) Plaintiffs contend that Defendants' failure to comply with the Consent Order "constituted implicit threats to continue the proceedings, which they could not legally do." (Dkt. No. 1-4 at 19.) Plaintiffs' allegations concern only actions taken by Defendants that they allegedly did not have a legal right to take, not threats to take such action. The parties have not offered, and the Court is not aware of, a case applying Revised Code of Washington section 19.16.250(16) to unlawful actions to collect debts, as opposed to threats to take such action. Therefore, Plaintiffs' claims for *per se* violations of the

---

*Kotok v. Homecomings Fin.*, 2009 WL 2057046, slip op. at 4 (W.D. Wash. 2009) (dismissing *per se* CPA claim where predicated on time-barred Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA") claims); *Bednaruk v. NW Trustee Servs., Inc.*, 2010 WL 545643, slip op. at 3 (W.D. Wash. 2010) (dismissing *per se* CPA claim where predicated on time-barred TILA and RESPA claims, relying on *Kotok*); *Lyons v. Homecomings Fin. LLC*, 770 F. Supp. 2d 1163, 1167 (W.D. Wash. 2011) (dismissing *per se* CPA violation predicated on time-barred TILA claim, relying on *Kotok*). The Court declines to reject these recent cases, and concludes that Plaintiffs' time-barred FDCPA claims cannot be a basis for their claims of *per se* violations of the CPA.

CPA based on violation of Revised Code of Washington section 19.16.250(16) are DISMISSED without prejudice and with leave to amend.

### b. RCW 19.16.250(21)

Licensees and their employees are generally restricted to collecting or attempting to collect the principal amount of a claim plus allowable interest, collection cost or handling fees authorized by statute, or attorney fees and taxable court costs if a suit has been brought. Wash. Rev. Code § 19.16.250(21). If a violation of Revised Code of Washington section 19.16.250 occurs, anyone collecting on a claim is thereafter limited to the amount of the original claim or obligation. Wash. Rev. Code § 19.16.450.

The amended complaint alleges, in order, that: (1) "Defendants violated RCW 19.16.250(16) when they continued litigation and collection . . . after they had agreed . . . to cease collection . . . until they verified that NCSLT was actually assigned the accounts;" (2) "Pursuant to RCW 19.16.450, if an act or practice of a collection agency violates RCW 19.16.250, neither the licensee nor any other entity can ever collect anything other than the principal amount of the debt owed;" (3) "Because Defendants violated RCW 19.16.250, they are never entitled to collect anything other than the principal amount of the debts owed by Class members against whom they sought to collect after the CFPD Consent Order was entered;" and (4) "Defendants violated and continue to violate RCW 19.16.250(21) by seeking to collect amounts other than the principal from Washington consumers after entry of the CFPB consent order." (*Id.*)

The amended complaint appears to premise Defendants' alleged violation of Revised Code of Washington section 19.16.250(21) on Defendants' initial violation of Revised Code of Washington sections 19.16.250(16) and 19.16.450. Plaintiffs' response to Defendants' motion to dismiss appears to advance this argument again, as it first cites Defendants' continuing collection efforts following the execution of the Consent Order before arguing that Defendants violated Revised Code of Washington section 19.16.250(21) by "contin[ing] to try to collect the entire

balance alleged to be due in their state court complaints against Plaintiffs." (Dkt. No. 22 at 21.) As discussed above, the amended complaint does not contain sufficient factual allegations to establish a plausible claim that Defendants violated Revised Code of Washington section 19.16.250(16). Therefore, Plaintiffs' claim for violation of Revised Code of Washington section 19.16.250(21) is also DISMISSED without prejudice and with leave to amend.

### iii. Private CPA Claim

"[T]o prevail in a private CPA action . . . a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Generally, "[t]he term 'trade' as used by the Consumer Protection Act includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided." *Ramos v. Arnold*, 169 P.3d 482, 486 (Wash. 2007). "In a legal practice entrepreneurial aspects include 'how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients.'" *Michael v. Mosquera-Lacy*, 200 P.3d 695, 699 (Wash. 2009) (quoting *Short v. Demopolis*, 691 P.2d 163, 168 (Wash. 1984)).

The amended complaint's allegations in support of Plaintiffs' private CPA claim focus on Defendants' litigation actions. (Dkt. No. 1-4 at 36.) Specifically, the amended complaint alleges that Defendants acted unfairly and deceptively by filing and sending false and misleading affidavits, violating the Consent Order, and knowingly filing false affidavits. (*Id.*) These actions do not implicate the entrepreneurial or commercial aspects of Defendants' services, and cannot support a private CPA claim. *Ramos*, 169 P.3d at 486; *Michael*, 200 P.3d at 699. Therefore, Plaintiffs' private CPA claim is DISMISSED with prejudice.[11]

---

[11] A dismissal with prejudice is appropriate because amendment would be futile. *Cervantes*, 656 F.3d at 1041.

## C. Litigation Privilege

Defendants contend that Plaintiffs' CPA claims are barred by Washington's litigation privilege. (Dkt. Nos. 15 at 21–22; 17 at 15.) Under Washington law, witnesses and attorneys participating in the legal process are immune from civil liability for claims based on their testimony. *Wynn v. Earin*, 181 P.3d 806, 810 (Wash. 2008); *Twelker v. Shannon & Wilson, Inc.*, 564 P.2d 1131, 1133 (Wash. 1977). Plaintiffs' surviving CPA claim is premised on Defendants' alleged violation of the FDCPA, which in turn constitutes a *per se* violation of the CPA. Neither party has cited, and the Court is not aware of, case law holding that *per se* violations of the CPA based on violations of the FDCPA are barred by Washington's litigation privilege. Therefore, Plaintiffs may proceed with their *per se* claim for violation of the CPA where based on Defendants' alleged violation of the FDCPA. If Plaintiffs choose to amend their complaint to assert factual allegations supporting their claims for violation of the CAA, their claims for *per se* violations of the CPA based on the violations of the CAA may proceed under the same analysis. But if Plaintiffs choose to amend their complaint to assert additional factual allegations supporting their private CPA claim, they must also establish why such claim is not barred by Washington's litigation privilege.

## III. CONCLUSION

For the foregoing reasons, Defendant Patenaude & Felix, APC and Matthew Cheung's motion to dismiss (Dkt. No. 15) and Defendant Transworld Systems Inc.'s joinder to the motion to dismiss (Dkt. No. 17) Plaintiffs' amended complaint (Dkt. No. 1-4) are GRANTED in part and DENIED in part. Pursuant to this order:

1. Plaintiffs Esther Hoffman, Anthony Kim, Daria Kim, and Il Kim's claims for violation of the FDCPA are DISMISSED with prejudice.
2. Plaintiff Sarah Douglass's claim for violation of the FDCPA is DISMISSED without prejudice and with leave to amend.
    a. Defendants' motion to dismiss Plaintiff Douglass's claims for

|   |   |   |
|---|---|---|
| 1 | | violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(10) is DENIED. |
| 2 | b. | Plaintiff Douglass's claim for violation of 15 U.S.C. § 1692e(5) is |
| 3 | | DISMISSED without prejudice and with leave to amend. |
| 4 | c. | Defendants' motion to dismiss Plaintiff Douglass's claim for violation |
| 5 | | of 15 U.S.C. § 1692e is DENIED. |
| 6 | 3. | Plaintiffs Hoffman and the Kims' claims for *per se* violations of the CPA |
| 7 | | based on their claims for violation of the FDCPA are DISMISSED with |
| 8 | | prejudice. |
| 9 | 4. | Plaintiff Douglass's claim for *per se* violations of the CPA based on her |
| 10 | | claims for violation of the FDCPA are DISMISSED without prejudice and |
| 11 | | with leave to amend. |
| 12 | 5. | Plaintiffs' claim for violation of Revised Code of Washington section |
| 13 | | 19.16.250(16) is DISISSED without prejudice and with leave to amend. |
| 14 | 6. | Plaintiffs' private CPA claim is DISMISSED with prejudice. |

If Plaintiffs choose to file an amended complaint, they must plead additional allegations to cure the deficiencies identified in this order. The amended complaint must be filed within 30 days of the issuance of this order. If filed, the amended complaint shall only include additional allegations regarding those claims that were dismissed without prejudice and with leave to amend.

DATED this 2nd day of November 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE