1

2

3

4                                                                          Hon. Thomas S. Zilly

5

6                          UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON AT SEATTLE
7

8   ESTHER HOFFMAN; SARAH
    DOUGLASS; ANTHONY KIM; and IL KIM;
9   and DARIA KIM, on behalf of themselves        No. 2:18 cv 1132-TSZ
    and on behalf of others similarly situated,
10                                                 DEFENDANTS PATENAUDE & FELIX,
             Plaintiffs,                           APC AND MATTHEW CHEUNG'S
11                                                 RULE 12(B)(6) MOTION TO DISMISS
             vs.
12                                                 NOTED FOR HEARING:
    TRANSWORLD SYSTEMS                              DECEMBER 4, 2020
13  INCORPORATION; *et al.*,

14           Defendants.

15                              **I.  INTRODUCTION**

16         Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants Patenaude & Felix, APC and Matthew

17  Cheung (collectively "Patenaude") request that this Court dismiss with prejudice the claims

18  alleged against them in Plaintiffs' Second Amended Complaint.  (Dkt 61).

19         Plaintiffs' allege two claims against Patenaude under chapter 19.86, RCW, the

20  Consumer Protection Act ("CPA"); (1) a private CPA claim, and (2) a claim based on alleged

21  *per se* violations of the Fair Debt Collection Practices Act ("FDCPA").   Both claims fail.

22  Plaintiffs' claims against Patenaude sound in fraud, yet they fail to plead claims with specificity

23  as to Patenaude.   Plaintiffs' claims against Patenaude also fail under the "judicial action

24  privilege," which differs from "litigation privilege."   Plaintiffs also fail to support required

25  elements of a CPA claim under the *Hangman Ridge* test.

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 1
2:18 cv 1132-TSZ
6707201.doc

## II.  FACTS

**A.      Patenaude requests judicial notice of underlying state-court documents.**

In ruling on a Rule 12(b)(6) motion, a court may consider the Complaint, material attached to the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n19 (9th Cir.1990); and, documents subject to judicial notice under Fed.R.Evid. 201, including matters of public record. *Mack v. South Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986).   Pursuant to Fed.R.Evid. 201, Patenaude previously requested judicial notice of documents filed in the underlying collection actions brought by the National Collegiate Student Loan Trusts (the "Trusts" or "*NCSLT*") against Plaintiffs.  (Dkt 15, 16).   Judicial notice was granted as to these documents, (Dkt 29 at 2), which documents are again cited to herein.

**1.      Ester Hoffman, Snohomish County, cause no. 16-2-15162-31.**

Hoffman and her mother took out a student loan and then failed to make payments on the loan.  (Dkt 61 at ¶¶ 42-44).   When served with a summons, Ms. Hoffman made some payments, then ceased making payments.  (*Id*. at ¶¶ 45-46).

<u>06/08/16</u>      Patenaude filed a Complaint on behalf of its client in *NCSLT 2004-2 v. Hoffman*, Snohomish County Superior Court, cause no. 16-2-15162-31.  (Dkt 61 at 8 ¶ 47); (Dkt 16-1, Ex. 2).  Service was made upon Hoffman.  (Dkt 16-1, Ex. 3).

<u>08/25/16</u>      Patenaude moved for default judgment, supported by the Affidavit of Dudley Turner, an employee of the sub-servicer of the loan, Transworld Systems, Inc. ("TSI").  (Dkt 16-1, Exs. 4-6).  Hoffman complains that Mr. Turner did not have personal knowledge as to certain loan documents, (Dkt 16-1, Ex. 4); (Dkt 61 at ¶¶ 49-55); but she does not dispute either that she owed the debt or the accuracy of the attached documents.

<u>08/25/16</u>      Judgment was entered against Hoffman.  (Dkt 16-1, Ex. 7).

<u>01/20/17</u>      Samuel Leonard of Leonard Law appeared on behalf of Hoffman.  (Dkt 16-1, Ex. 8).  Hoffman has never moved to set aside the default judgment.

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

**2.** **Sara Douglass, King County, cause no. 17-2-10605-4-KNT.**

2

Douglass admits she took out student loans, and does not deny that she failed to make

3

payments on them.  (Dkt 61 at ¶¶ 69-70).

4

04/24/17       Patenaude filed a Complaint on behalf of its client in *NCSLT 2006-3 v.*

5

*Douglass*, King County Superior Court, cause no. 17-2-10605-4-KNT.  (Dkt 61 at ¶¶ 71-73);

6

(Dkt 16-1, Ex. 10).  Service was made upon Douglass.  (Dkt 16-2, Ex. 11).

7

04/25/17       Patenaude moved for default judgment, supported by the Affidavit of

8

Brian Jackson, an employee of TSI.  (Dkt 16-2, Ex. 12, Ex. 13); (Dkt 61 at ¶¶ 73-74).  Douglass

9

complains that Mr. Jackson did not have personal knowledge as to certain loan documents,

10

(Dkt 16-2, Ex. 13); (Dkt 61 at ¶¶ 74-79); but she does not dispute that she owes the debt or

11

accuracy of the attached documents.

12

04/25/17       Judgment was entered against Douglass.  (Dkt 16-2, Ex. 14).

13

07/13/17       Attorney Amanda Martin appeared on behalf of Douglass in the superior

14

court action.  (Dkt 16-2, Ex. 15).

15

10/19/17       Douglass moved to set aside the judgment because service was made on

16

Brett Douglass, whom Douglass said she was dating, and who did not live in her residence at

17

the time of service.  (Dkt 16-2, Ex. 16 at pp. 3-4; Ex. 17 at 2 ¶¶ 8-15); (Dkt 61 at ¶  81).

18

11/01/17       Patenaude responded with a sworn declaration of process server Marco

19

Ruisla, who testified and provided contemporaneous notes that he served Brett Douglass at the

20

proper address, and who stated he was married to Ms. Douglass.  (Dkt 16-2, Ex. 18, Ex. 19).

21

11/17/17       The superior court vacated the default judgment, though Ms. Douglass

22

did not show that the service was improper. (Dkt 16-2, Ex. 20 at 1); (Dkt 61 at ¶ 82).

23

03/20/18       Patenaude voluntarily dismissed the case without prejudice.  (Dkt 16-3,

24

Ex. 21 and 22); (Dkt 61 at 83-84).

25

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 3
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

There was a second, almost identical, lawsuit captioned *NCSLT 2006-3 v. Douglass*, King County Superior Court, cause no. 17-2-10604-6-KNT.  (Dkt 16-3, Ex. 23).  The docket reflects these events, *id*., and additional duplicative materials are not being provided here.

### 3.     Anthony Kim, Snohomish County, cause no. 15-2-04465-4.

Anthony Kim admits that he took out six student loans, and he does not deny that he failed to make payments on the loans.  (Dkt 61 at ¶ 86).

06/15/15     Patenaude filed a complaint in *NCSLT 2006-3 v. Kim*, Snohomish County Superior Court, cause no. 15-2-04465-4.  (Dkt 61 at ¶ 88); (Dkt 16-3, Ex. 25).  Service was made upon Kim.  (Dkt 16-3, Ex. 26).

06/15/15     The Kims answered the complaint.  (Dkt 16-3, Ex. 27).

10/28/15     Attorney Christina Henry appeared as counsel for the Kims in the superior court action.  (Dkt 16-3, Ex. 28).

12/17/15     The Kims filed an Amended Answer to the Complaint in superior court case no. cause no. 15-2-04465-4.  (Dkt 16-3, Ex. 29).

No action was taken after 2015, and the case was dismissed.  (Dkt 16-3, Ex. 30, Ex. 31).

### 4.     Anthony Kim, Snohomish County, cause no. 15-2-03144-7.

Anthony Kim took out six student loans, and does not deny that he failed to make payments on the loans.  (Dkt 61 at ¶ 86).

04/02/15     Patenaude filed a complaint on behalf of its client in *NCSLT 2005-2 v. Kim*, Snohomish County Superior Court, cause no. 15-2-03144-7.  (Dkt 16-3, Ex. 33).  Service was made upon Kim.  (Dkt 16-3, Ex. 34).  Patenaude filed a Motion for Default and Judgment, and supporting Affidavit and Verification of Account.  (Dkt 16-3, Ex. 35, Ex. 36).  Kim complains that Mr. Turner, who signed the Affidavit, may not have had personal knowledge as

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
to certain loan documents, (Dkt 16-3, Ex. 36); (Dkt 61 at ¶¶ 98-105); but does not dispute either that they owe the debt or the accuracy of the attached documents.

3
4
04/02/15     Judgment was entered against Kim.  (Dkt 16-3, Ex. 37).

5
6
10/28/15     Attorney Christina Henry appeared for Kim.  (Dkt 16-3, Ex. 38).  Kim moved to set aside the judgment on the ground that Daria Kim only recalled receiving one of the six lawsuits that were served at the same time.  (Dkt 16-3, Ex. 39, Ex. 40).

7
8
9
11/01/15     Patenaude responded with a sworn declaration of process server Marco Ruisla, who testified and provided contemporaneous notes that he served all six lawsuits at the same time.  (Dkt 16-3, Ex. 41, Ex. 42).

10
11
12/01/15     The superior court vacated the default judgment. (Dkt 16-3, Ex. 44).

12
12/17/15     The Kims filed an answer to the complaint.  (Dkt 16-3, Ex. 45).

13
07/10/18     No additional action was taken after 2015, except that the matter was dismissed in 2018.  (Dkt 16-3, Ex. 46).

14
15
16
17
There were four almost identical lawsuits filed in Snohomish County Superior Court, cause no. 15-2-04014-4, 15-2-03146-3, 15-2-04015-2, 15-2-04016-1.  (Dkt 16-3, Ex. 47-50); (Dkt 1-1 at 13 ¶ 75).  The dockets reflect that Patenaude did not take any action in any of these lawsuits after 2015, and that each lawsuit has been dismissed.

18
19
**B.     The Delaware district court rejected the proposed consent judgment and Patenaude has moved to strike reference to the document.**

20
21
22
23
24
25
Plaintiffs offer a Proposed Consent Judgment ("PCJ") submitted to a Delaware district court, but the court where the proposed order was offered rejected it as having been signed by persons without authority. *See Consumer Financial Protection Bureau v. The National Collegiate Master Student Loan Trust et al.*, 2020 WL 2915759 (D. Del. May 31, 2020). Plaintiffs knew this when they filed the Second Amended Complaint, and it is improper for them to rely on it.  This Court should not consider the rejected PCJ.

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 5
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

2        **C.      Patenaude is not a signatory to the Consent Order.**

3        Plaintiffs offer a purported Consent Order that was not signed by TSI until September

4   2017. (Dkt 61 at ¶¶ 128-129, Exs. A-B). Patenaude is not a party to the purported Consent

5   Order, is not bound by its terms, and almost all actions taken by Patenaude as to Plaintiffs

6   occurred in 2015, prior to the purported Consent Order even existing. Plaintiffs did not allege

7   as to when Patenaude first learned of the Consent Order, or whether it was even aware of this

    document when events alleged in Plaintiffs' Second Amended Complaint occurred.

8                        **III.  POINTS AND AUTHORITIES**

9        **D.      Standard for motions under Rule 12(b)(6).**

10       A defendant may move for dismissal when a plaintiff "fails to state a claim upon which

11  relief can be granted." Fed.R.Civ.P. 12(b)(6). Courts accept well-pleaded facts as true, but

12  "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

13  motion to dismiss." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). To survive a

14  motion to dismiss, a plaintiff must allege facts supporting a plausible cause of action. *Bell Atl.*

15  *Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

16  If allegations encompass a wide swath of conduct, much of it innocent, then the plaintiffs have

17  not nudged their claims across the line from conceivable to plausible. *Id.* at 570. "A claim has

18  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

19  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

20  556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

21       **E.      Plaintiffs fail to plead fraud against Patenaude with specificity.**

22       "In alleging fraud or mistake, a party must state with particularity the circumstances

23  constituting fraud or mistake." Fed.R.Civ.P. 9(b).

24       In cases where fraud is not a necessary element of a claim, a plaintiff may
         choose nonetheless to allege in the complaint that the defendant has engaged in
25       fraudulent conduct. In some cases, the plaintiff may allege a unified course of
         fraudulent conduct and rely entirely on that course of conduct as the basis of a

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 6
2:18 cv 1132-TSZ
6707201.doc

1   claim. In that event, the claim is said to be "grounded in fraud" or to "sound in
2   fraud," and the pleading of that claim as a whole must satisfy the particularity
    requirement of Rule 9(b).

3   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (citing cases).

4       The crux of Plaintiffs' claims against Patenaude essentially boils down to the allegation

5   that Patenaude furthered a fraud by knowingly filing false affidavits in Washington courts, and

6   concealed this knowledge from Plaintiffs and the superior courts. *See* (Dkt 61 at ¶ 184(c).

7   Plaintiffs even call the declaration used by Patenaude fraudulent, alleging.

8       Patenaude and Felix, A.P.C. ("P&F"), Attorney Matthew Cheung ("Cheung"),
9       … engaged in unfair and deceptive practices in the collection or attempted
        collection of alleged student loan debt, interest, and charges **using fraudulent**,
        deceptive, and misleading **affidavits prepared by TSI employees**.
10
    (Dkt 61 at 2) (emphasis added).

11
12      To plead fraud with the particularity required by Rule 9(b), a complaint "must
        identify the who, what, when, where, and how of the misconduct charged, as
13      well as what is false or misleading about the purportedly fraudulent statement,
        and why it is false." *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 964 (9th
14      Cir. 2018). "Rule 9(b) does not allow a complaint to merely lump multiple
        defendants together but requires plaintiffs to differentiate their allegations
15      when suing more than one defendant and inform each defendant separately of the
        allegations surrounding his alleged participation in the fraud." *United States v.*
16      *United Healthcare Ins. Co*., 848 F.3d 1161, 1184 (9th Cir. 2016). Additionally,
        when the defendant is an entity, a complaint generally must also *identify the*
17      *person who made the false representations on behalf of the entity. See United*
        *States ex. Lee v. SmithKline Beecham*, 245 F.3d 1048, 1051 (9th Cir. 2001).

18  *Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 713 (E.D. Cal. 2019).

19      Plaintiffs did not allege who advised Patenaude that the Trusts allegedly could not show

20  ownership, who at Patenaude received such information, when such information was allegedly

21  conveyed, why Patenaude would knowingly file fraudulent affidavits, and a host of similar

22  facts needed to show Patenaude knowingly participated in an allegedly fraudulent concealment.

23  "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its

24  allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court

25  may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107.  Since Plaintiffs' claims against

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 7
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Patenaude sound in fraud, and fail to meet the heightened pleading standard under Fed.R.Civ.P. 9(b), Plaintiffs' claims against Patenaude should be dismissed.

The plausibility standard asks for more than a possibility that a defendant has acted unlawfully. *Iqbal*, 129 S.Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id*. at 1950. Without additional facts, the court cannot infer from Patenaude's submission of declarations in litigation more than a possibility of misconduct.

**F.     Plaintiffs' CPA claims against Patenaude are barred by judicial-action privilege and Washington public policy.**

**1.     Claims fail under judicial-action privilege.**

Plaintiff alleges two claims: (1) a private CPA claim, and (2) a *per se* CPA claim.  Both claims are subject to dismissal under Washington State privilege and policy.  In Washington, the "judicial-action privilege" has extended immunity for lawyers' actions beyond defamation cases and litigation privilege.  *Jeckle v. Crotty,* 120 Wn. App. 374, 385, 85 P.3d 931, 937 (2004).  Washington courts have applied the privilege to bar claims of interference with a business relationship, outrage, infliction of emotional distress, civil conspiracy.  *Id.* "Judicial-action privilege" differs from witness immunity and litigation privilege, since the latter protects the testimony of witnesses, whereas the former protects the actions that a lawyer takes during litigation.  *Id.*, 120 Wn. App. at 386.

In *Jeckle*, Washington's Medical Quality Assurance Commission investigated Dr. Jeckle.  *Id.* at 378.  The Commission obtained copies of 10 of the doctor's patient files, but then closed the investigation.  *Id.*  Attorney Crotty, who represented plaintiffs in a class action against Jeckle, asked the Commission to reopen its investigation, which it did.  *Id.*  Crotty shared his litigation information with the Commission, obtained a copy of one of the patient files the Commission had copied during its initial investigation, and shared this patient file with

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

other attorneys having similar litigation against the doctor. *Id.* at 379.  None of this activity consisted in giving testimony, but was an attorney's conduct in litigation.  Jeckle sued Crotty and his law firm, alleging many causes of action, including CPA violations. *Id.* at 379-80.  The law firm and lawyer defendants moved under CR 12(b)(6) to dismiss Jeckle's causes of action. *Id.* at 380.  The motions were granted, and Jeckle appealed. *Id.*  The Court of Appeals affirmed trial court holding that **"attorneys and law firms have absolute immunity from liability for acts arising out of representing their clients."** *Jeckle*, 120 Wn. App. 374 (emphasis added).

This district court has similarly applied *Jeckle* to bar claims based on litigation action, including claims alleging CPA causes of action, holding:

> The Court agrees with the KBM Defendants that at the very least, Plaintiff's claims fail as a matter of law because the KBM Defendants enjoy absolute immunity for their alleged litigation conduct serving as the basis for Plaintiff's claims. Generally, Washington law establishes that an attorney is immune from litigation by an opposing party for actions taken on behalf of a client against that party, under the doctrine of the "judicial action privilege." *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.2d 931 (2004); *McNeal v. Allen*, 95 Wash. 2d 265, 621 P.2d 1285 (1980). This doctrine bars a plaintiff from suing attorneys and law firms for actions undertaken in litigation while "representing their clients." *Id.*

*Block v. Snohomish Cty.*, No. C18-1048-RAJ, 2019 WL 954809, at *5 (W.D. Wash. Feb. 27, 2019), *appeal dismissed*, No. 19-35529, 2019 WL 3297382 (9th Cir. July 9, 2019).  *See also McClain v. 1st Sec. Bank of Washington*, C15-1945-JCC, 2016 WL 8504775, at *5 (W.D. Wash. Apr. 21, 2016) (applying *Jeckle* and determining that because "[a]ll of McClain's state law claims against Huffington, McKay, and their firm are based on actions they took on behalf of FSBW ... [t]hey are therefore immune from liability for these actions").

In each of these cases, dismissed claims included statutory causes of action, and in some cases, CPA claims were dismissed by judicial-action privilege.  Thus, as in *Jeckle*, *Block*, and *McClain*, this Court should dismiss all CPA claims against Patenaude since Plaintiffs' claims are based on actions taken by Patenaude in the course of judicial actions.

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 9
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

**2.    The CPA claims fail under Washington public policy.**

Likewise, under Washington public policy, adversaries of a lawyer's client generally cannot sue the opposing lawyer. *Jeckle*, 120 Wn. App. at 383-85, 85 P.3d 931.[1]  "[A]llowing a plaintiff to sue his or her adversary's attorney under a consumer theory infringes on the attorney-client relationship." *Jeckle*, 120 Wn. App. at 384, 85 P.3d at 937.

> Providing a private cause of action [under a CPA theory] to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf.

*Id*. at 384-85 (citation omitted).

As in *Jeckle*, all of Plaintiffs' CPA claims should be dismissed on public policy grounds, since Plaintiffs' claims stand the attorney-client relationship on its head, would compromise Patenaude's duty of undivided loyalty to its client, and thwart the exercise of Patenaude's independent professional judgment on its client's behalf.

**G.    Hoffman's claims are barred because a judgment, which must be accorded full faith and credit, remains against her in the State Case.**

Orders from a state court "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.  The State Court Judgment against Hoffman, (Dkt 16-1, Ex. 7), thus has the same force here as in the State Court.  28 U.S.C. § 1738; *Kremer v. Chem. Const. Corp*., 456 U.S. 461, 466, 102 S. Ct. 1883, 1889, 72 L. Ed. 2d 262 (1982).  The doctrine of *res judicata* bars a party from litigating claims that either were, or should have been, litigated in a former action. *Schoeman v. New York Life Ins. Co*., 726 P.2d 1, 3 (Wash. 1986). The doctrine applies where there is a judgment on the

---

[1] In its initial motion to dismiss, Patenaude previously argued that Plaintiffs' CPA should fail under *Jeckle*'s public policy holdings; but Judge Coughenour never reached the public policy issue, having dismissed Plaintiffs' claims on other grounds.  (Dkt 29).  Nor was the public policy issue ever addressed by the Ninth Circuit.  (Dkt 51). There has been no ruling on this point of law, so Patenaude re-asserts it here.

LEE・SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

merits that dealt with the same (1) persons and parties, (2) causes of action, (3) subject matter, and (4) quality of parties. *Karlberg v. Otten*, 280 P.3d 1123, 1130 (Wash. Ct. App. 2012). *See also Pederson v. ACC*, 112 Wn. App. 1046 (2002) (unpublished) (dismissing *per se* CPA claims under *res judicata* where debtor could have raised issues in underlying state court case).

### 1.    Final Judgment on the Merits.

"The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit." *Ensley v. Pitcher*, 222 P.3d 99, 103 (Wash. Ct. App. 2009). Default judgments are considered "final judgments on the merits" and are thus effective for the purposes of issue preclusion. *In re Garcia*, 313 B.R. 307, 311 (B.A.P. 9th Cir. 2004).[2] The judgment against Hoffman has not been vacated. (Dkt 16-1, Ex. 7). A judgment, which has not been set aside, is presumptively valid. *Haller v. Wallis*, 89 Wn.2d 539, 549, 573 P.2d 1302, 1308 (1978).

### 2.    Persons and Parties.

Parties may be nominally different, but the same for res judicata purposes. *Rains v. State*, 674 P.2d 165, 169 (Wash. 1983). While a party does not have to be identical, there must be at least privity between a party to the first suit and the party to the second suit. *Kuhlman v. Thomas*, 897 P.2d 365, 368 (Wash. Ct. App. 1995). Privity exists "where a person is in actual control of the litigation, or substantially participates in it." *Loveridge v. Fred Meyer, Inc.*, 887 P.2d 898, 900 (Wash. 1995). Courts in Washington have found privity where the parties to successive lawsuits share an employer-employee or principal-agent relationship. *See Kuhlman*, 897 P.2d at 368. Hoffman and the Trusts were parties to the State Case. (Dkt 16-1, Ex. 2). While Patenaude was not a party to the first case, it acted as the Trust's attorney in the

---

[2] *Lenzi v. Redland Ins. Co.*, 140 Wn.2d 267, 281-82, 996 P.2d 603, 610 (2000) (UIM insurer was barred by res judicata from contesting default judgment obtained by its insureds against uninsured tortfeasor on amount of UIM claim); *Berschauer Phillips Const. Co. v. Mut. of Enumclaw Ins. Co.*, 175 Wn. App. 222, 227–28, 308 P.3d 681, 683 (2013) (judgment creditor's action against general liability insurer of judgment debtor following default judgment in construction contract dispute was precluded by res judicata, where both actions were based on whether the judgment debtor was liable for a loss covered by the general liability policy).

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 11
2:18 cv 1132-TSZ
6707201.doc

**LEE·SMART**

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

litigation. (*Id.*).  Patenaude was in privity with the Trusts because it shared a principal-agent relationship and substantially participated in the litigation. *See Kuhlman*, 897 P.2d at 368. Therefore, the parties in both actions are the same for purposes of res judicata.

### 3.    Causes of Action.

To determine if the same causes of action are asserted in successive lawsuits, courts consider whether: (1) the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) substantially the same evidence is presented in the two actions; (3) the suits involved infringement of the same right; and (4) the two suits arise out of the same transactional nucleus of facts. *Ensley*, 222 P.3d at 108 (citation omitted). These factors are "analytical tools" none of which must be present to apply *res judicata*. *Id.* at 105; *see also Kuhlman*, 897 P.2d at 369; *Abramson v. University of Hawaii*, 594 F.2d 202, 206 (9th Cir. 1979). The final consideration, whether the two suits arise from the same transactional nucleus of facts, is the most important consideration in determining whether the causes of action are identical. *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982) (cited in Rains, 674 P.2d at 168).

Allowing Hoffman to pursue this lawsuit would impair or destroy the rights established by the state court judgment. The State Case established that Hoffman was liable to the Trusts for unpaid student loans.  (Dkt 16-1, Ex. 7).  Hoffman seeks to vacate the state court judgments. (Dkt 61 at 2).  Evidence in the two cases is practically identical.  The State Case evidence consisted in the Affidavit of Dudley Turner, (Dkt 16-1, Ex. 4), and the heart of Hoffman's case is a challenge to the sufficiency of this evidence. (Dkt 61 at ¶¶ 61-55).  The suits involve infringement of the same right (i.e., whether the Trusts had a right to collect amounts sought, and whether or not Hoffman had to pay it).  Hoffman now seeks to hold Defendants liable for allegedly trying to illegally collect this debt.  Hoffman's claims in this case arise out of the

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

same transactional nucleus of facts as in the State Case.  Both actions arise directly out of the filing of the Turner affidavit in the State Case.  Hoffman's claims deal with a series of occurrences that are "intimately related in time, origin, and motivation … ."  *Hadley*, 804 P.2d at 1276.  *See also Smith v. State Farm Mut. Auto. Ins. Co*., No. C12-1505-JCC, Dkt. No. 39 (W.D. Wash. April 11, 2013); *Zweber v. State Farm Mut. Auto. Ins. Co*., 39 F. Supp. 3d 1161, 1166–67 (W.D. Wash. 2014).  If Hoffman wanted to challenge the sufficiency of the Turner affidavit, it was incumbent on her to challenge it in the State Case.  Considering all of the above factors, the causes of action in both lawsuits are the same for purposes of res judicata.

### 4. Subject Matter.

"Although similar to the cause-of-action prong, the critical factors for subject matter are the nature of the claim or cause of action and the parties." *Landry v. Luscher*, 976 P.2d 1274, 1278 (Wash. Ct. App. 1999). The present case and the State Case share essentially the same subject matter – whether the Turner affidavit presented sufficient evidence on which to award judgment against Hoffman and in favor of the Trusts.  The state-court judge was satisfied that the affidavit presented sufficient evidence on which to enter judgment.  Given that the claims and parties are all substantially related to the state case, the lawsuits share the same subject matter for purposes of res judicata.

Hoffman's allegation that the Judgment was procured through deception also triggers the *Rooker-Feldman* doctrine.

> Moreover, if adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment. *See Jordahl v. Democratic Party*, 122 F.3d 192, 202 (4th Cir.1997). Were we to accept [plaintiff's] argument that the defendants misrepresented … that they would take no further steps in the state court action without first contacting him, our ruling would effectively declare the state court judgment fraudulently procured and thus void. This is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid: "The *Rooker–Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
3

jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998); see also *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995) ("*Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling").

4

*Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002).

5
6
7
8

Where this Court must give full faith and credit to the state-court judgment, and the state-court judgment determined the Turner affidavit was sufficient to show that Hoffman owed money to the Trusts for her unpaid student loans, Hoffman is barred from asserting that obtaining the judgment was due to any unfair or deceptive act or practice.

9
10
11
12
13
14
15
16

Res judicata, 28 U.S.C. § 1738, and the *Rooker-Feldman* Doctrine apply to bar Hoffman from using this case to vacate the State case judgment or claim it was obtained through deception.  Because of the judgment, it must be accepted that Hoffman owed money to the Trusts and did not pay, and therefore Hoffman cannot show an unfair or deceptive act or practice; and there is no proximate cause or injury since, as discussed more fully below under the *Hangman Ridge* analysis, there is no injury for purposes of the CPA where a person must pay a debt they owe, even if they violated a state law by doing so.  As a result, Hoffman's claims fail on this independent ground.

17

**H.    All Plaintiffs fail to meet the elements of the *Hangman Ridge* test.**

18
19
20
21
22

"[T]o prevail in a private CPA action … a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531, 533 (1986).  The failure of any element is fatal to plaintiffs' claim.  *Id.*, 719 P.2d at 539.

23
24

**1.    Plaintiffs do not articulate a plausible unfair or deceptive act or practice against Patenaude under the CPA.**

25

Plaintiffs allege *per se* CPA claims based on §§ 1692e and 1692f of the FDCPA.

DEFENDANTS PATENAUDE & FELIX, APC AND MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO DISMISS - 14
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

a.      **15 U.S.C. §§ 1692e(2)(A) and (10).**

Debt collectors are prohibited from "misrepresenting the character, amount, or legal status of any debt," § 1692e(2)(A), and the "use of any false representation or deceptive means to collect or attempt to collect any debt." § 1692e(10). Plaintiffs allege that Patenaude violated §§ 1692e(2)(A) and 1692e(10) by making representations to Plaintiffs and the state courts about "the documents they possessed or reviewed that allegedly showed that the NCSLTs were entitled to collect on student loan debt." (Dkt 61 at ¶ 167).

Patenaude did not make the challenged statements, but merely filed affidavits later challenged by Plaintiffs. Plaintiffs do not challenge anything affirmative in the declarations other than the affiants' claims to have personal knowledge about certain loan documents, and they primarily claim that what was contained in the declarations was insufficient to show the Trusts owned the debt. Plaintiffs allege "False affidavits were used by the Defendants to obtain default judgments and orders of summary judgment in Washington state courts." (Dkt 61 at 2). According to Plaintiffs, hundreds, if not thousands of such judgments were entered. (Dkt 61 at ¶¶ 119, 173). In other words, the declarations satisfied hundreds, if not thousands of judges that the declarations are sufficient. Plaintiffs do not provide any plausible basis as to how Patenaude would know that these declarations, which they received from a client's agent between 2015 – 2017 were not sufficient, when they were considered sufficient for hundreds if not thousands of judges.

In fact, Patenaude was permitted to reasonably rely on the affidavits it was supplied, and it was not required to conduct an independent investigation as to the validity of a witness claiming to have personal knowledge. *See McStay v. I.C. Sys., Inc.*, 174 F. Supp. 2d 42, 47 (S.D.N.Y. 2001), *aff'd*, 308 F.3d 188 (2d Cir. 2002) ("FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt"); *Shapiro v. Haenn*, 222 F. Supp. 2d 29, 44 (D. Me. 2002) ("debt collectors may rely on

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

the information their clients provide, and the FDCPA does not require them to conduct their own investigation into the amount or validity of the underlying loan"); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1210 (D. Or. 2002) (debt collection law firm should be able to rely on the creditor regarding the debt, and is not required to conduct an independent investigation as to the debt); *In re Cooper*, 253 B.R. 286, 292 (Bankr. N.D. Fla. 2000) ("Attorneys and debt collectors are entitled to rely on the information they receive from the creditor"); *Ducrest v. Alco Collections, Inc*., 931 F.Supp. 459, 462 (M.D.La.1996) (debt collector should be able to rely on representation from its client that the amount was due; FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt).

Plaintiffs also do not support claims that Patenaude misrepresented the "character, amount, or legal status" of the debt. The "character" of a debt is a reference to the type of obligation; for example, "a secured auto loan would be of one character, an unsecured credit-card debt another, a judgment debt a third." *Rhone v. Med. Bus. Bureau, LLC*, 915 F.3d 438, 440 (7th Cir. 2019) (holding "the number of transactions between a debtor and a single merchant does not affect the genesis, nature, or priority of the debt and so does not concern its character"). Compare with *Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020) (finding mischaracterization of a debt where defendants "disguised thousands of dollars in attorneys' fees as 'recoverable corporate advances'"). Patenaude represented the debt as being an unpaid student loan, and that was the correct character of the debt. Plaintiffs admit they owe the debt, and have not presented any allegations that the amounts sought by Patenaude were anything but accurate. The status of the debt was also accurate, it was an unpaid student debt that had been taken to litigation.

Plaintiffs have not stated a plausible claim against Patenaude. Patenaude merely filed client affidavits in litigation. Patenaude had a right to rely on these affidavits, and is not

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 16
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
vicariously liable under the FDCPA if the affidavits were later claimed to be objectionable.

3
*Clark*, 460 F.3d at 1173.  Also, as stated, the alleged objectionable portions of the affidavit are

4
immaterial to Plaintiffs' claims because they did not undermine Plaintiffs' ability to

intelligently choose action concerning the debt.  *Donohue*, 592 F.3d at 1034.

5
6
### b.    15 U.S.C. § 1692f.

Debt collectors are prohibited from using "unfair or unconscionable means to collect or

7
8
attempt to collect any debt." 15 U.S.C. § 1692f.  The term "unfair" means "marked by injustice,

9
partiality, or deception." *Echlin v. Asset Sys., Inc.*, No. 3:12-CV-05954-BHS, 2013 WL

10
12108082, at *3 (W.D. Wash. Mar. 6, 2013) (quoting *LeBlanc v. Unifund CCR Partners*,

11
601 F.3d 1185, 1200 (11th Cir. 2010).   The term "unconscionable" means "having no

12
conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of

justice, decency, or reasonableness." *Id*. (quoting *LeBlanc*, 601 F.3d at 1200).

13
14
Plaintiffs allege that Patenaude violated § 1692f by filing a client's facially adequate

15
sworn affidavits during litigation so as to obtain settlement and judgments.  (Dkt 61 at ¶ 169).

16
Each Plaintiff concedes they took out the student loans at issue, and either admit they did not

17
pay or do not deny it.  (Dkt 61 at ¶¶ 42-44, 69-70, 86).  Plaintiffs do not challenge the accuracy

18
of the affidavits submitted to the underlying trial courts, other than the affiants' personal

19
knowledge as to certain loan documents, and do not challenge that the documentation attached

20
to the affidavits, in and of itself, is accurate.  Rather, based on a PCJ that a Delaware Court has

21
found void, and a Consent Order that Patenaude did not sign, and which did not even exist

22
during the relevant events, Plaintiffs alleged that certain affiants did not have personal

23
knowledge as to some loan documents.  Plaintiffs do not plausibly allege how or when

24
Patenaude would have become aware of any such alleged deficiency, or presented plausible

25
facts that it even knew of any inaccurate statement when it filed the affidavits in litigation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

If allegations encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.   Plaintiffs allegations are completely consistent with a scenario in which Patenaude filed sworn affidavits provided to it by its client, for which there was no reason at the time to question the veracity, as thousands of judges had found the affidavits sufficient.   This is innocent conduct, and Plaintiffs havenot nudged their claims across the line from conceivable to plausible.   Plaintiffs have not shown anything unfair or unconscionable in Patenaude's actions, and there are no plausible factual allegations to suggest otherwise.   The § 1692f claim should be dismissed.

### 2.     No trade or commerce.

Patenaude challenges the second element of "trade or commerce."   Generally, events occurring solely in litigation do not constitute "trade or commerce."   *Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302, 312, 698 P.2d 578, 584 (1985); *Medialdea v. Law Office of Evan L. Loeffler PLLC*, No. C09-55RSL, 2009 WL 1767185, at *8 (W.D. Wash. June 19, 2009) ("a court proceeding does not constitute "trade or commerce" under the CPA").

Claims directed at the competence of and strategy employed by a lawyer are exempt from the CPA.   *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 603, 200 P.3d 695, 699 (2009). Only claims implicating entrepreneurial aspects of a law practice meet the "trade or commerce" element of a CPA claim, so only such claims are actionable under the CPA.   *Id.*   "In a legal practice entrepreneurial aspects include how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients."   *Id.*

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
        Filing allegedly false affidavits is not an "entrepreneurial aspect[] of the practice of

3
law." *Short v. Demopolis*, 691 P.2d 163, 168 (Wash. 1984) (en banc).  Litigation strategy and

4
tactics are not acts in "trade of commerce."  This Court held in a similar context:

5
        Plaintiffs allege that they challenge Friedman's entrepreneurial practices,
        because "Friedman is a debt collector who brought debt collection cases in
6
        [King County District Court] for Merchants" and "was able to secure default
        judgments [which] are enforced on a continuing basis by Friedman." (Dkt. No.
7
        54 at 14.) This argument does not hold water. The challenged conduct relates
        squarely to Friedman's representation of his client, as opposed to the financial
8
        management of his firm. Thus, Plaintiffs' claims are based on conduct that is not
        actionable under the WCPA.

9
*Linehan v. Allianceone Receivables Mgmt.*, Inc., No. C15-1012-JCC, 2016 WL 5944564, at *3

10
(W.D. Wash. Oct. 13, 2016).

11
        Likewise, in *Genschorck v. Suttell & Hammer, P.S.*, 2013 WL 6118678 (E.D. Wash.

12
Nov. 21, 2013), the district court held:

13
        Here Suttell and Filer's blunder in **filing for a garnishment based on a vacated
        judgment implicate a core practice of the law, the filing of pleadings.** It does
14
        not concern any entrepreneurial aspect of the practice, and therefore does not
        impact trade and commerce as those concepts are used in the WCPA.

15
*Id*. at *3 (emphasis added).

16
        The conduct alleged against Patenaude is likewise that it filed allegedly false affidavits.

17
Filing affidavits in lawsuits implicates a core practice of law.  Judge Coughenour dismissed the

18
CPA claims on this ground, (Dkt 18 at20), and the Ninth Circuit held: "We instruct the district

19
court to grant Plaintiffs leave to amend their complaint to give them the opportunity to address

20
whether P&F's and Cheung's involvement **in the alleged deceptive practices** went beyond

21
legal representation and included debt-collection activities." (Dkt 51 at 6) (emphasis added).

22
Plaintiffs have amended their complaint but, while they have made boilerplate allegations about

23
such things as Patenaude using the mail and the phones as a general principal, the specific

24
"alleged deceptive practices" that Patenaude is being sued on remain that it has filed allegedly
25

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 19
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

false affidavits. *See e.g.,* (Dkt 61 at ¶ 24) ("Defendant P&F and its lawyer in Washington, Matthew Cheung, has, by service and/or filing, commenced over 1,400 lawsuits in the state of Washington with the plaintiff identified in such cases as one or more of the NCSLTs"). Plaintiffs then claim that Patenaude files false declarations.

> Defendants have a common practice of obtaining judgments against Washington consumers using declarations executed by TSI employees that are filed in Washington courts that falsely claim personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans.

(Dkt 61 at ¶ 122).

This is the meat and substance of Plaintiffs' claims against Patenaude, and the claims consist of litigation that is outside the scope of "trade or commerce" as contemplated by the CPA. Plaintiffs' allegations do not implicate the financial management of Patenaude's law firm, and therefore they fail to support the CPA's trade or commerce element.

### 3.    Public interest impact reserved.

Patenaude does not concede the public interest element of Plaintiffs' CPA claim; however, it is unlikely Patenaude would prevail on this element in a Rule 12(b)(6) motion to dismiss. Therefore, Patenaude reserves on this element of the CPA claim.

### 4.    Patenaude did not injure Plaintiffs.

To support the fourth element of the *Hangman Ridge* test, a plaintiff must show injury to business or property. RCW 19.86.090. "[P]ersonal injuries, including mental pain and suffering, are not compensable under the Consumer Protection Act." *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 158, 930 P.2d 288, 300 (1997). Plaintiffs do not state a claim for injury based on the State Court judgment.

"[P]laintiffs are not injured in the amount collected when the plaintiff owed the debt even where the debt collector violated state law in doing so." *Moritz v. Daniel N. Gordon, P.C.*,

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

895 F. Supp. 2d 1097, 1117 (W.D. Wash. 2012) (citing *Gray v. Suttell & Assocs.*, 2012 WL 1067962, at *6 (E.D.Wash. Mar. 28, 2012) ("To the extent that Mr. Scott alleges an injury as a result of the garnished amount [of the debt he owed] based solely on the underlying debt and interest thereon, Mr. Scott fails to allege an injury to his business or property [for the purposes of his CPA claim]."); *Flores v. The Rawlings Co., LLC*, 177 P.3d 341, 358 (Hawaii 2008) (finding that although the defendant's collection activities might have violated state statutes, the plaintiffs were not injured by paying the underlying debt because the debt was valid); *Camacho v. Auto. Club of S. Cal.*, 142 Cal.App.4th 1394, 1405, 48 Cal.Rptr.3d 770 (2006) (finding that the plaintiff could not establish an injury from the allegedly unfair collection practice where he conceded liability and owed the amounts that were collected).  Plaintiffs do not deny that they owe the debts at issue in this case, so collection of these amounts is not an injury.

An investigative expense that would have been incurred regardless of whether a violation existed does not constitute injury. *See Sambor v. Omnia Credit Servs., Inc.*, 183 F.Supp.2d 1234 (D. Haw. 2002) (in Hawaiian CPA claim, expenses associated with determining whether a collection agency was registered under state law did not constitute injury because plaintiff would have been incurred this expense even if the collection agency was registered).  Likewise, having to pay an initial consultation fee related to obtaining an attorney's assistance in investigating claims is not injury under the CPA if the plaintiffs were not injured prior to bringing suit.  *Babrauskas v. Paramount Equity Mortg.*, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013) ("the fees and costs incurred in litigating the CPA claim cannot satisfy the injury to business or property element: if plaintiff were not injured prior to bringing suit, he cannot engineer a viable claim through litigation").

Expenses incurred for defending against a collection action and prosecuting a CPA counterclaim are insufficient to show injury. *Sign–O–Light, Inc. v. DeLaurenti Florists, Inc*.,

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

64 Wn. App. 553, 564, 825 P.2d 714 (1992) ("mere involvement in having to defend against Sign's collection action and having to prosecute a CPA counterclaim is insufficient to show injury to her business or property.").

A bare alleged procedural violation in itself may not cause any injury. For example, in *Paris v. Steinberg*, 828 F. Supp. 2d 1212 (W.D. Wash. 2011), the Court determined on a Rule 12(b)(6) motion that, while a lawyer was not "categorically exempt" from the CAA, the failure of a lawyer to have a collection agency license was not, in itself, the cause of any damage to the plaintiff. *Id*. at 1217. *See also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550, 194 L. Ed. 2d 635 (2016) (bare procedural violations of the Fair Credit Reporting Act, without showing of actual injury, did not give rise to Article III standing).

Patenaude did not injure Plaintiffs, who borrowed student loans that they could not, or would not, repay. Plaintiffs were not injured by Patenaude, who merely represented its client as to student loan obligations Plaintiffs admittedly owed, and will owe regardless of any investigation they might have made, or attorney they might have hired.

### 5.    The proximate cause of Plaintiffs' damages was their admitted or uncontroverted failure to pay their debts.

To support the fifth element of the *Hangman Ridge* test, "there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10, 22 (2007). "A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Id*.

Each Plaintiff concedes they took out student loans, and either admit they did not pay or do not deny it. (Dkt 61 at ¶¶ 42-44, 69-70, 86). Plaintiffs seem to think that they can simply cease paying and everyone will simply forget that the money is owed, and they will never need to make a payment or face legal action. Plaintiffs have made a "show me the note" type

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 22
2:18 cv 1132-TSZ
6707201.doc

LEE · SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

argument that is consistently rejected in Washington state and federal court. Plaintiffs challenge the Trusts ownership of the debt, despite copious documentation in the affidavits, but never indicate any other person or entity other than the Trusts whom they believe actually own the debt.  This is just a ploy by Plaintiffs to escape paying their obligations.  The proximate cause of any "injuries" alleged by Plaintiffs is that they admittedly borrowed money. And te cause of their "injury" is the debt they chose to incur, and not any action taken by Patenaude.

## I.    *Per se* CPA claims fail where the underlying FDCPA claims fail.

Plaintiffs allege *per se* violations of the CPA based on alleged violations of the FDCPA. (Dkt 1 at ¶ 127).  The *per se* CPA claims alleged by Plaintiffs fail where the underlying FDCPA claims fail.  *See e.g., Fidelity Mort. Corp. v. Seattle Times Co*., 131 Wn. App. 462, 128 P.3d 621 (2005) (dismissing CPA claims based on violations of TILA where TILA claims previously dismissed); *Henery v. Robinson*, 67 Wn.App. 277, 834 P.2d 1091 (1992)[3] (finding that plaintiff could not show per se violation of CPA as it could not show a violation of the underlying statute as a matter of law).  They also fail for lack of injury and/or proximate cause.

## J.    Dismissal should be with prejudice, since amendment is futile.

On a Rule 12(b)(6) motion, the Court can dismiss a plaintiff's claims with prejudice where amendment of the pleadings would be futile.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  "Futility alone can justify the denial of a motion to amend." *Id*. (citing *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir.2003)).  Here, amendment of the pleadings would be futile because Plaintiffs' claims are barred by such things as judicial action privilege, full faith and credit, and failure to meet the elements of the claims.

---

[3] Abrogated in part on other grounds by *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179 (2013).

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 23
2:18 cv 1132-TSZ
6707201.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### IV.  CONCLUSION

For the reasons provided herein, Defendants Patenaude & Felix, APC and Matthew Cheung request that this Court dismiss with prejudice all of Plaintiffs' claims against them, and dismiss them as parties from this case.

DATED this 12th day of November, 2020.

LEE SMART, P.S., INC.

By: /s Marc Rosenberg
Marc Rosenberg, WSBA No. 31034
Jeffrey R. Kaatz, WSBA No. 49709
Of Attorneys for Defendants
Patenaude and Felix, A.P.C., and
Matthew Cheung

1800 One Convention Place
701 Pike St.
Seattle, WA 98101-3929
(206) 624-7990
mr@leesmart.com

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 24
2:18 cv 1132-TSZ
6707201.doc

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on the date provided at the signature below, I electronically filed
the preceding document with the Clerk of the Court using the CM/ECF system, which will send

3

notification of such filing to the following individuals:

4

     Mr. Sam Leonard                    sam@seattledebtdefense.com

5

     Ms. Christina L. Henry             chenry@hdm-legal.com

6

     Mr. Guy W. Beckett                 gbeckett@beckettlaw.com

7

     Ms. Amanda Martin                  amanda@nwclc.org

8

     Mr. Brian C. Shartle               bshartle@sessions.legal

9

     Mr. Stephen G. Skinner             Stephen.skinner@andrews-skinner.com

10

     James K. Schultz                   jschultz@sessions.legal

11

12

     I certify under penalty of perjury under the laws of the State of Washington that the
foregoing is true and correct, to the best of my knowledge.

13

     Dated this 12th day of November, 2020 at Seattle, Washington.

14

                          LEE SMART, P.S., INC.

15

                          By:_ /s Marc Rosenberg_____

16

                               Marc Rosenberg, WSBA No. 31034
                               Of Attorneys for Defendant

17

                               Patenaude and Felix, A.P.C., and
                               Matthew Cheung

18

                               1800 One Convention Place

19

                               701 Pike St.
                               Seattle, WA 98101-3929

20

                               (206) 624-7990
                               mr@leesmart.com

21

22

23

24

25

DEFENDANTS PATENAUDE & FELIX, APC AND
MATTHEW CHEUNG'S RULE 12(B)(6) MOTION TO
DISMISS - 25
2:18 cv 1132-TSZ
6707201.doc

LEE · SMART

P.S., Inc. · Pacific Northwest Law Offices

1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944