The Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTHER HOFFMAN; SARAH DOUGLASS; ANTHONY KIM; and IL KIM and DARIA KIM, husband and wife and the marital community comprised thereof, on behalf of themselves and on behalf of others similarly situated,<br><br>          Plaintiffs,<br><br>   vs.<br><br>TRANSWORLD SYSTEMS INCORPORATED; PATENAUDE AND FELIX, A.P.C.; MATTHEW CHEUNG, and the marital community comprised of MATTHEW CHEUNG and JANE DOE CHEUNG, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-4, National Collegiate Master Student Loan Trust, and DOES ONE THROUGH TEN,<br><br>          Defendants. | NO.  2:18-cv-01132 TSZ<br><br>PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS<br><br>Noted on Motion Calendar: December 11, 2020<br><br>**ORAL ARGUMENT REQUESTED** |

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

## I.  **RELIEF REQUESTED**

Plaintiffs, by and through undersigned counsel, hereby request that the Court deny Transworld Systems Inc.'s ("TSI's") and Patenaude & Felix, A.P.C.'s ("P&F's") and Matthew Cheung's ("Cheung's") second Fed. R. Civ. P. 12(b)(6) motions to dismiss (Dkt. No's. 100 &103) and the National Collegiate Student Loan Trusts' ("NCSLTs'") first motion to dismiss. (Dkt. No. 104).

## II.  **INTRODUCTION**

For all its pleading, this case is rather simple. It comes down to one question: Is the Defendants' use of false affidavits to collect on NCSLT accounts an unfair or deceptive collection practice in violation of Washington's Consumer Protection Act? The Consumer Financial Protection Bureau ("CFPB") believes the use of these false affidavits violates the Consumer Financial Protection Act (CFPA). The New York State Attorney General agrees with the CFPB and also believes the use of these false affidavits violates the Fair Debt Collection Practice Act ("FDCPA") (15 U.S.C. § 1692 et seq.) and New York's Executive Law and New York General Business Law. *See* Declaration of Christina Henry In Support of Response to Defendants' Motions to Dismiss SAC,  Exhibit A (Assurance of Discontinuance, Assurance No. 20-061 between of Transworld System Inc's and the New York Attorney General). Defendants' numerous Fed. R. Civ. P. 12 motions have sought to distract the Court away from this primary question. In the end, however, the plausible answer here can only be "Yes."

In their barrage of attempts to get this case dismissed and avoid the light of discovery, P&F, Cheung, and TSI have filed a total of four motions to dismiss and one joint motion to strike. The Court and the Ninth Circuit ultimately rejected most of P&F's, Cheung's, and TSI's arguments in their motions to dismiss Plaintiffs' First Amended Complaint ("FAC"). The Court

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 2
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

also completely rejected P&F's, Cheung's, and TSI's recent joint attempt to strike the portions of Plaintiffs' Second Amended Complaint ("SAC") referencing the CFPB investigation and the CFPB's findings regarding Defendants' use of false affidavits. The instant motion is the second attack on Plaintiffs' SAC and restates and rehashes many of the same arguments that failed in the defendants' original motions to dismiss the FAC. The few arguments that are new to P&F's, Cheung's, and TSI's motions to dismiss were available when they filed their first motions to dismiss, and are thus, not properly asserted now.

P&F's, Cheung's, and TSI's motions to dismiss fail for several reasons. Two procedural reasons they should be denied are: (1) the motions to dismiss are barred under Rule 12(g)(2) because they were not included with their motion to strike Plaintiffs' SAC; and (2) their motions are de-facto appeals of this Court's and the Ninth Circuit's earlier rulings and are contrary to controlling law. The NCSLTs' motion to dismiss fails because they are liable for the actions of their agents, TSI, P&F, and Cheung, and Plaintiffs have pled plausible claims against the NCSLTs arising out of the actions of their agents. For these reasons, the Court should deny all of the defendants' motions to dismiss and permit discovery to finally begin.

### III.   STATEMENT OF FACTS

**A.   This Case, Which Concerns Defendants' Knowing Use of False Affidavits to Collect Alleged Debts, Has Been Pending For Nearly Two and One-Half Years.**

Almost two and one-half years after this case was filed, it still has not proceeded to discovery. Plaintiffs filed their initial Complaint on June 20, 2018 in the King County Superior Court. Dkt. No. 1-1. TSI was served with the Summons and the FAC on July 27, 2018. Dkt. No. 1, at 2. The FAC alleged claims under the FDCPA, the Washington State Collection Agency Act (RCW 19.16 et seq.) ("CAA"), and Washington Consumer Protection Act (RCW 19.86 et seq.) ("CPA"). *See* Dkt. No. 1-4. Plaintiffs' claims concerned Defendants' unfair and deceptive

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

collection practices: all Defendants knowingly used false affidavits to obtain settlements and judgments, and then continued using the false affidavits to collect from Washington consumers despite being caught by the CFPB. *See e.g.,* Dkt. No. 1-4, at ¶¶ 43-50, 52-53, 59-68, 77-87, 94-126, 131-132.

Plaintiffs' First Claim For Relief in the FAC was an FDCPA claim brought under 15 U.S.C. §§ 1692e, e(2)(a), e(10) and e(5), 1692f. Dkt. No. 1-4, at 30-32. Plaintiffs' Second Claim for Relief was a per se CPA claim based on Defendants' numerous violations of the FDCPA. *Id.*, at 32-33. Plaintiffs' Third Claim for Relief was a per se CPA claim based on Defendants' violation of the CAA. *Id.*, at 33-35. Plaintiffs' Fourth Claim for Relief was a private right of action, non-per se CPA claim for Defendants' unfair and deceptive collection conduct. *Id.*, at 36-37.

## B. The First Round of Motions to Dismiss

### 1. This Court dismissed this lawsuit, the Plaintiffs appealed, and the Ninth Circuit affirmed in part, reversed in part and remanded.

On Defendants TSI's, P&F's, and Cheung's first motions to dismiss,[1] the District Court dismissed the Plaintiffs' FAC. Dkt. No. 29. The Plaintiffs appealed the dismissal of their CPA claims. Dkt. No. 47. On appeal, the Ninth Circuit reversed and remanded, finding that Plaintiffs made plausible claims that the Defendants used false affidavits and did not possess assignment documentation to support their collection actions. The Ninth Circuit reinstated Plaintiffs' per se CPA claims based on time-barred FDCPA violations under 15 U.S.C. §§ 1692e(2)(A), 10, and §1692f and their stand-alone CPA claims, while affirming dismissal of per se CPA claims based on alleged violations of the CAA and 15 U.S.C. §§ 1692e(5). Dkt No. 47; *Hoffman v. Transworld Sys.*, 806 Fed. Appx. 549, 552 (9th Cir. 2020). In reinstating the stand-alone CPA

---

[1] Dkt. No. 15, at 19, Dkt. No. 17, at 13-15, Dkt. No. 18.

claims, the Ninth Circuit focused solely on the trade or commerce element,[2] the only element rejected by the District Court below. 806 Fed. Appx. at 551. The Ninth Circuit rejected the Defendants' argument that they were immune from liability under Washington's litigation privilege. *Id.*

The Ninth Circuit further instructed the District Court to permit the Plaintiffs to amend their FAC to clarify whether the Plaintiffs' claims against P&F and Cheung were based on their actions providing legal services or associated with their debt collection activities. *Id.* The Ninth Circuit did so despite P&F's and Cheung's extensive briefing and arguments that *Jeckle v. Crotty*, 120 Wn. App. 374, 85 P.3d 931 (2004), and other cases that discuss the judicial action privilege, barred Plaintiffs' claims. Appeal Dkt. No. 22, at 20-23.

Defendants filed a Petition for Rehearing En Banc of the Ninth Circuit's decision, but the Motion was denied. (Appeal Dkt. No.'s 63-1 & 64). On April 30, 2020, Defendants filed a Joint Motion for Stay of Mandate, seeking a 90-day stay of the mandate "pending the filing of a petition for a writ of certiorari to the Supreme Court." (Appeal Dkt. No. 65 at 1). The Ninth Circuit also denied this motion. (Appeal Dkt. No. 67). The Mandate issued on May 19, 2020, remanding the case back to this Court. (Dkt No.'s 51 & 54).

### 2. After Remand, P&F, Cheung and TSI Filed Fed. R. Civ. P. 12 Motions and Joined In Each Other's Arguments.

After remand, the Plaintiffs filed their SAC, which does not add additional claims against the original defendants, but merely adds facts, removes dismissed claims and adds the NCLSTs as defendants. Dkt No. 61. Plaintiffs also added facts clarifying the nature of P&F's and

---

[2] Concerning Defendants' motion to dismiss Plaintiffs' stand-alone CPA claims, the District Court observed that it was unaware of any case that had held that "per se violations of the CPA based on violations of the FDCPA are barred by Washington's litigation privilege." Dkt. No. 29, at 19.

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

Cheung's business as debt collectors, and added facts supporting the injuries Defendants' actions had caused to Plaintiffs. Dkt. No. 61. Plaintiffs otherwise left their claims and causes of action against P&F, Cheung and TSI undisturbed.

### 3. Defendants stated that they intended to file a Fed. R. Civ. P. 12(b)(6) motion and then filed successive motions under 12(f) and 12(b)(6).

On August 19, 2020, Defendants P&F, Cheung, and TSI disclosed in an agreed motion to continue the deadline for their responses to the SAC that they intended to file a joint Fed. R. Civ. P. 12(b)(6) motion to dismiss:

> 7. The unanticipated withdrawal of the remand motion by plaintiffs has accelerated an answer deadline so that defendants do not have adequate time to prepare the appropriate responsive pleading. *At this point, defendants anticipate filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).*
>
> 8. This request for additional time is being brought in good faith and for a necessary enlargement to provide defendants needed time to properly respond to the second amended complaint, and is not being brought for the purpose of delay or to otherwise impede the progression of this case.

Dkt. No. 73, at 3 (emphasis added).

Less than a month later, on September 11, 2020, rather than file a Rule 12(b)(6) motion, P&F, Cheung and TSI filed a Rule 12(f) motion seeking to strike parts of the SAC that had been restated in the FAC. Dkt. No. 76. On October 13, 2020, the Court denied P&F's, Cheung's, and TSI's motion to strike. Dkt. No. 99.

On November 12, 2020, P&F and Cheung filed another Fed. R. Civ. P. 12 motion, this time a motion to dismiss the SAC under Rule 12(b)(6). Dkt. No. 100. TSI also filed another Fed. R. Civ. P. motion under 12(b)(6). Dkt. No. 103. And, for the first time, the NCSLTs filed a motion to dismiss, which was also brought under Fed. R. Civ. P. 12(b)(6). Dkt. No. 104. P&F, Cheung, and TSI argued in their Rule 12(b)(6) motions that the Plaintiffs had not plausibly pled per se CPA claims based on violatio`ns of 15 U.S.C. §§ 1692e(2)(a), e(10) and 1692f, and that

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 6
(No. 2:18-cv-01132 TSZ)

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

Plaintiffs did not allege in their SAC plausible non-per se CPA claims against P&F and Cheung. Dkt. No. 100, at 15-18; Dkt. No. 103, at 18-25. These arguments were essentially the same arguments raised in their motions to dismiss the FAC. *See supra* at 4-5. P&F, Cheung, and TSI also now argue, as they did in their motions to dismiss the Plaintiffs' FAC, that the Plaintiffs cannot satisfy all of the elements of their non-per se CPA claims. Dkt. No. 100, at 18-21; Dkt. No. 103, at 25-29. Finally, they repeat the same argument raised in their motion to dismiss the FAC relying on *Jeckle*, 120 Wn. App. at 386, that they cannot be held liable for their conduct because it occurred in a judicial proceeding. Dkt. No. 100, at 8. This time they call the *Jeckle* argument the "judicial action privilege," instead of what they called it in their motion to dismiss the FAC, the "litigation privilege." *Compare* Dkt. No. 15, at 21-22, *with* Dkt. No. 100, at 8-9.

**C. Facts Contained In Plaintiffs' Second Amended Complaint**

In general, the factual allegations relevant to the instant motions are below. Pin citations to the portions of the SAC that contain the specific details relevant to the instant response are also included in the response. The following are relevant facts regarding the Defendants' scheme of using false and misleading representations to collect alleged student loan debts:

1. Defendants TSI, P&F and Cheung are all debt collectors that attempt to collect debts they claim are owed to the NCSLTs through the sending of collection letters and through the Washington courts. Dkt. No. 61, at ¶¶ 12, 21, 24-32, 34-41, 45, 48, 66, 71-73, 88, 93, 95, 111, 112, 117, 118, 119, 120, 122, 124.

2. Defendants obtained judgments against Plaintiffs and other Washington residents on claims that Plaintiffs and other Washington residents owed student loan debt to the NCSLTs. Dkt. No. 119-122.

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

3.   To obtain the judgments and in attempting to collect from Plaintiffs and other Washingtonians, Defendants used and filed in Washington courts false and misleading declarations from TSI employees. Dkt. No. 61, at ¶ 123-26.

4.   The CFPB investigated TSI, the NCSLTs and TSI's attorney networks, which includes P&F and Cheung, and its findings support Plaintiffs' allegations that TSI and its collection attorney network (of which P&F and Cheung are members) had been filing false and misleading declarations in courts to collect on debts allegedly owed to the NCSLTs. Dkt. No. 61, at ¶ 132, Ex. A, Ex. C. The CFPB investigation also found that members of TSI's Attorney Networks made material misrepresentations to Courts in collection lawsuits to support the NCSLT claims. Dkt. No. 61, at ¶ 133, Ex.'s A & C.

5.   The CFPB entered into a Consent Order with TSI whereby TSI on behalf of itself and its attorney network (which includes P&F and Cheung), agreed to stop collecting NCSLT accounts using false affidavits, and agreed that Defendants would stop collecting on judgments it obtained using false affidavits *Id*., at ¶ 135, Ex. A at 17-18. The Consent Order also required Defendants to stop garnishing on judgments obtained in cases where a false affidavit was filed and to stop collecting settlement payments on accounts where false affidavits were used. *Id*.

6.   The TSI employees' affidavits were false and misleading in a common way. They were false or misleading in that the affiants oftentimes had not reviewed the documents they sought to authenticate, had no personal knowledge of the facts to which they were attesting, were not actually competent to authenticate the records they sought to authenticate, and did not have personal knowledge of the record management practices of which they claimed to have knowledge of. *Id*., at ¶¶ 121, 124, 132, 135, 139, 154, Ex. A at 2, Ex. C.

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 8
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

7.   In many instances, the Defendants cannot prove assignment because the loans

schedules, which are claimed to evidence the assignment, are lost and all defendants know they

are lost. *Id.*, at ¶¶ 57, 81, 109, 110, 124,

8.   Plaintiffs did not have loan relationships with the NCSLTs, did not and do not know

whether the NCSLTs were the true owners of the loans when they contacted them, and were not

aware that the NCSLTs do not have the schedules showing what loans were in-fact assigned to

the NCSLTs from other creditors. Dkt. No. 61, at ¶¶ 45,57,63, 66, 67, 71, 73, 80, 85, 91, 92, 93,

96, 97, 106-10, 113-16, 123-24.

9.   Plaintiffs were each injured by the Defendants' collection practices, and Defendants'

collection practices have likely already injured many hundreds, if not thousands, of Washington

residents. *Id.*, at ¶¶ 63, 67, 85, 93, 113, 116, 173.

10. Defendants have garnished and collected on the judgments they obtained against

Plaintiffs and other consumers using the false and misleading affidavits. *Id.*, at ¶¶ 58-66, 94-97,

113-116, 133, 135.d.

## IV.   LAW AND ARGUMENT

### A.   The Legal Standard On Motions Brought Under Fed. R. Civ. P. 12(b)(6)

A court "may dismiss a complaint that 'fails to state a claim upon which relief can be

granted.'" Dkt. No. 29, at 7; *Hoffman v. Transworld Sys.*, No. C18-1132-JCC, 2018 U.S. Dist.

LEXIS 188158, at *10, 2018 WL 5734641 (W.D. Wash. Nov. 2, 2018) (quoting Fed. R. Civ. P.

12(b)(6)). Upon review of Defendants' new motions to dismiss, the Court must read the SAC in

the light most favorable to the Plaintiffs. *See Hoffman v. Transworld Sys.*, 806 Fed. Appx. 549,

551 (9th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d

868 (2009)). A complaint should survive a motion to dismiss where it contains sufficient factual

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 9
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677-678.

Plaintiffs do not need to plead "detailed factual allegations" for a claim to survive a motion to dismiss. *Id*. at 678. To defeat a motion to dismiss, Plaintiffs' complaint merely needs to set forth enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007); *see also Iqbal*, 556 U.S. at 678. The motion should be denied if the Court finds that Plaintiffs' claim "may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. Under this standard, the Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in support of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (citation omitted). Further, *Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry Plaintiffs' burden of proof, and pleading plausible grounds to infer the existence of a claim for relief,

> [D]oes not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to prove that claim.

*Twombly*, 550 U.S. at 556. The Court must also consider the complaint in its entirety without isolating each allegation in it for individualized review. *Id.* at 569 n.14.

## B. P&F, Cheung and TSI Waived any Right They Had to File A New Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(g) prohibits successive Rule 12 motions. It unequivocally provides, with respect to Fed. R. Civ. P. 12 motions,

> A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

12] must not make another motion under this rule raising a defense or
objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g). Thus, unless a 12(h)(2) or (3) exception applies, a defendant is

procedurally forbidden from filing successive Rule 12 motions in which it raises defenses or

objections that were available to that defendant but omitted from its earlier motion. That is

precisely the improper course of action taken here by defendants TSI, P&F, and Cheung.

### 1. A. TSI, P&F and Cheung Waived Any Right They Had to File Rule 12(b)(6) Motions When They Did Not Combine Them With Their Rule 12(f) Motion.

TSI, P&F, and Cheung are procedurally forbidden from bringing their Rule 12(b)(6)

motions because they did not combine them with their prior Rule 12(f) motion. Dkt. No. 76.

"Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a

pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule

12(b)(6). " *Pepper v Apple, Inc.*, 856 F.3d 313, 318 (9th Cir. 2017), *aff'd*, __ U.S. __, 139 S.Ct.

1514 (2019). Rule 12(b)(6) motions are waived when raised after a Rule 12(f) motion to strike in

response to the same complaint:

> Rule 12(g) is written in broad terms and requires consolidation of Rule 12
> defenses and objections whenever a party makes a motion under "this rule."
> Motions to strike and for a more definite statement are motions under Rule
> 12 and thus clearly are within the language of subdivision (g). Nor is there a
> policy reason why a party should be permitted first to attack the opposing
> party's pleading under Rule 12(e) or Rule 12(f) and then be allowed to
> follow with a Rule 12(b) motion when these defenses and objections might
> have been presented together.
> . . .
> Therefore, a litigant moving to strike or for a more definite statement should
> be barred from making a second preliminary motion based on any Rule 12
> defense that he reasonably was capable of asserting with the initial motion.

*Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation*, 329 F.R.D.

247, 255 (S.D. Cal. 2018) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 11
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

and Procedure § 1388 (3d ed. 2018)). A Rule 12(b)(6) motion is a "defense or objection" for purposes of Rule 12, and therefore falls under the Rule's limitation on further motions under 12(g)(2). *First Citizens Bank & Tr. Co. v. Taipei Investments LLC,* No. CV197582PSGAFMX, 2020 WL 3891461, at *3 (C.D. Cal. June 23, 2020). Thus, a defendant cannot file a motion to dismiss under Rule 12(b)(6) after having first filed a motion to strike under Rule 12(f). Fed.R.Civ.P. 12(g)(2); *Williams & Cochrane, LLP*, 329 F.R.D. at 254-55; *see also Wyles v. Sussman*, No. CV-17-7722 DMG (SKx), 2019 U.S. Dist. LEXIS 220597, at *6-7, 2019 WL 6899069 (C.D. Cal. Aug. 6, 2019); *Clark v. Assocs. Commercial Corp.*, 149 F.R.D. 629, 632 (D. Kan. 1993) (denying Rule 12(b) motion as waived when defendant previously filed a Rule 12(e) motion). TSI, P&F and Cheung violated the plain language of Rule 12(g)(2) and the Court need look no further to deny their Rule 12(b)(6) motions.

Should the Court decide to dive deeper, it is also evident that TSI's, P&F's and Cheung's successive Rule 12(f) and Rule 12(b)(6) motions violate one of the primary purposes of Rule 12(g)(2), to prevent dilatory tactics. *See Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (quoting 2A J. Moore, J. Lucas and G. Grother, Moore's Federal Practice (2d ed. 1987), ¶ 12.22 at 12-186) ("The philosophy underlying [Rule 12(g)] is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics."). At the time TSI, P&F, and Cheung filed their Rule 12(f) motion to strike, they knew they intended on filing Rule 12(b)(6) motions. *See* Dkt. No. 73, at 3 ("At this point, defendants anticipate filing a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6)."). This demonstrates that part of the aim of defendants' Rule 12 motion practice has been to further delay this action and to prevent Plaintiffs from beginning to engage in discovery, the exact behavior Rule 12(g)(2) is meant to prevent. Allowing defendants to file successive motions as

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 12
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

occurred in this case also violates Local Court Rule 7(e)(3)'s prohibition on filing more than one dispositive motion, "each one directed toward a discrete issue or claim." Thus, the motions should be denied without further inquiry.

### 2. TSI, P&F and Cheung Also Waived Any Right They Had to bring Their Rule 12(b)(6) Motions Because the Same Arguments Were Available When They Brought Their Rule 12(b)(6) Motions to Dismiss the FAC.

Except for rare situations, a defendant may not file successive Rule 12 motions that raise a defense or objection that was available to the party but omitted from its earlier motion, with exceptions only allowed under Rule 12(h)(2) or (3). Fed. R. Civ. P. 12(g)(2); *Pepper*, 856 F.3d at 318. While it is generally error for a district court to consider successive motions to dismiss where each is lodged at discrete amendments of the same complaint, the Ninth Circuit may deem the error harmless where the motions "do not appear to have been filed for any strategically abusive purpose." *See Pepper,* 846 F.3d at 320. However, issues that could have been raised in a motion to dismiss under Rule 12(b)(6) brought against an earlier version of the complaint cannot be raised for the first time or again in a subsequent Rule 12(b)(6) motion against an amended version of that complaint, where the delay is not justified. *Interior Elec. v. T.W.C. Constr.*, No. 2:18-cv-01118-JAD-VCF, 2020 U.S. Dist. LEXIS 186658, at *9, 2020 WL 5983882 (D. Nev. Oct. 8, 2020).

Here, there is no justification for TSI's, P&F's and Cheung's delay in making many of the arguments they now make for the first time in their motions to dismiss Plaintiffs' FAC. Plaintiffs have not changed their claims against TSI, P&F, and Cheung in the SAC from those asserted in the FAC, except to discard those claims the Ninth Circuit agreed were properly dismissed by the District Court in its November 2, 2018 Order on Defendants' first Rule 12(b)(6) motions to dismiss. *See* Dkt. No. 29. Allowing them to assert additional bases for dismissal at

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 13
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

this juncture, unduly prejudices the Plaintiffs, as it countenances yet another appeal process if the motions are granted in any respect. Almost one year and four months passed between the time the Plaintiffs filed their Notice of Appeal of the District Court's Order dismissing their First Amended Complaint to the time the Ninth Circuit Court of Appeals issued its Mandate. *See* Dkt. No.'s 47 & 54. Had the Defendants asserted all their bases for dismissal in their first Rule 12(b)(6) motions, the Plaintiffs could have challenged the District Court's ruling on these new issues at the same time they challenged the previous erroneous bases for dismissal. Allowing the Defendants to now assert new bases for dismissal of the causes of action asserted against them in the FAC unfairly prejudices the Plaintiffs due to the potential for inordinate delay and the expense of yet another appeal. *See Swasey v. Seterus*, No. 2:16-cv-01633-TLN-EFB, 2020 WL 1433156, at *2 (E.D. Cal. Mar. 24, 2020) (relying on Fed. R. Civ. P. 12(g), court denied defendant's Rule 12(b)(6) motion to dismiss plaintiff's causes of action in amended complaint that were unchanged from causes of action in original complaint, where defendant filed prior 12(b)(6) motion as to original complaint but did not request dismissal of those causes of action); *see also Interior Elec.*, 2020 U.S. Dist. LEXIS 186658, at *9.

This Court already found that the Plaintiffs have stated plausible claims under 15 U.S.C. §§ 1692e(2)(A), e(10) and 1692f, which form the bases for Plaintiffs' per se CPA claims. Dkt. No. 29, at 14-16. The Ninth Circuit agreed. *Hoffman v. Transworld Sys.*, 806 Fed. Appx. 549, 552 (9th Cir. 2020). Yet, TSI, P&F and Cheung now argue the Plaintiffs have not plausibly pled violations of these very same provisions. Dkt. No. 100, at 15-18; Dkt. No. 103, at 18-25. The Court should not permit these defendants to make these new arguments now that were available when they filed their motions to dismiss the FAC.

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 14
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

This Court was also previously tasked with determining whether Plaintiffs had adequately pled all five elements of their non-per se CPA claims in their FAC. Dkt. No. 15, at 19; Dkt. No. 17, at 13-15. This Court found that Plaintiffs had only not adequately pled the second element of their non-per se CPA claim: that the unfair and deceptive conduct of TSI, P&F and Cheung occurred "in trade or commerce." Dkt. No. 29, at 18. The Ninth Circuit disagreed and held that Plaintiffs' non-per se CPA claims should not have been dismissed with prejudice and that the alleged wrongful conduct of TSI, P&F, and Cheung could have occurred in "trade or commerce." *Hoffman*, 806 Fed. Appx. at 552. Plaintiffs were granted leave to amend on this element and to articulate in more detail the injuries they alleged they sustained. *Id*.

Finally, TSI, P&F, and Cheung again argue that Plaintiffs' claims against them are barred because the alleged wrongful conduct occurred in litigation. *Compare* Dkt. No. 15, at 21-22, *with* Dkt. No. 29, at 19. This argument was rejected by the Ninth Circuit. *Hoffman*, 806 Fed. Appx. at 551. While the defendants have renamed the argument from "litigation privilege" to "judicial action privilege," the "new" argument relies on the same case, *Jeckle*, 120 Wn. App. 374, 85 P.3d 931 (2004). *Compare* Dkt. No. 15, at 21-22 *and* Appeal Dkt. No. 22, at 20-23, *with* Dkt. No. 100, at 8. Thus, Defendants' new argument that Plaintiffs' claims should be dismissed under the "judicial action" doctrine is an impermissible attempt to relitigate an issue that has already been decided, and an unwarranted attempt to delay the ultimate resolution of this case.

Plaintiffs filed this case in 2018, but after nearly two and one-half years of litigation, they still have not been able to propound one interrogatory and not one request for production of documents. The Court should not countenance any more strategic delay tactics that are prejudicial and expensive to the Plaintiffs, and should deny TSI's, P&F's, and Cheung's motions to dismiss, in their entireties. Fed. R. Civ. P. 12(g)(2).

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 15
(No. 2:18-cv-01132 TSZ)

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

**C. Even If Defendants' Motions to Dismiss Are Considered On Their Merits, Plaintiffs Allege Plausible Violations of the FDCPA in Support of Their Per Se CPA Claims.**

### A. Law of the Case

As explained, Plaintiffs' allegations regarding TSI's, P&F's and Cheung's violations of the FDCPA have not changed between the FAC and the SAC. This Court concluded that the Plaintiffs have asserted plausible claims that the Defendants violated the FDCPA under sections 1692e(2)(a), e(10) and 1692f, and this decision was not disturbed on appeal. Dkt. No.'s 12-15; *Hoffman*, Fed. Appx. at 549-552. This Court's earlier decisions affirmed on appeal regarding violations of the FDCPA remains the law of the case and the Court should not revisit them. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.1983) ("Under [the law of the case] doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case."). None of the reasons for deviating from the law of the case apply here. *See Gaudin v. Remis*, 379 F.3d 631, 636 (9th Cir. 2004) (reasons for deviating from the law of the case are "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.").

### B. The Plaintiffs' Second Amended Complaint

The Plaintiffs have pleaded facts sufficient to sustain their claims that TSI's, P&F's, Cheung's, and the NCSLTs' attempts to collect debts that the Plaintiffs do not owe with false affidavits and without the necessary documentation to prove their claims were false, deceptive, misleading, unfair, and unconscionable, and violated the CPA. "[Washington's] CPA [is] a carefully drafted attempt to bring within its reaches *every* person who conducts unfair or

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 16
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

deceptive acts or practices in *any* trade or commerce." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785, 719 P.2d 531, 535 (1986).

"[A] CPA claimant must establish five elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation." *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728, 406 P.3d 1149, 1153 (2017) (citing *Hangman Ridge Training Stables, Inc*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). "When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA ... under state and federal law, reflecting the public policy significance of the industry." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885, 897 (2009). A finding of a violation of a debt collection regulation satisfies the first two elements of a CPA claim. *Smith v. Bank of New York Mellon*, 2019 WL 2994695, at *3 (W.D. Wash. July 9, 2019).

The Plaintiffs have pleaded that they did not have loan relationships with the NCLSTs and that they did know whether the NCSLTs were the true owners of their loans, so they relied on the misrepresentations made by NCSLTs to their detriment. *See* RCW 19.86*, et seq.*; 15 U.S.C. §§ 1629d(2)(a), 1692e, 1629e(10), and 1692f; Dkt. No. 61, at ¶¶ 45, 57, 63, 66, 67, 71, 73, 80, 85, 91, 92,93, 96, 97, 106, 107, 108, 109, 110, 113, 114, 115, 116, 123, 124. The Plaintiffs have specifically pleaded that they paid attorneys to investigate Defendants' collection attempts and review the court files and garnishments. *Id*., at ¶¶ 62, 63, 85, 115, 116. The Plaintiffs have also alleged that the Defendants knew that the NCSLTs did not own the debts and/or could not prove their ownership of them in court. *Id*., at ¶¶ 38-41, 49-57, 76, 77, 78, 79, 80, 101, 102, 105-110, 119, 121-124, 125-126, 132, 135 and 154.

These factual allegations, when taken as true, show that the Plaintiffs have pleaded plausible claims for liability against all the Defendants. Further, the Plaintiffs have alleged that

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

the Defendants acted in a scheme to obtain default judgments with false evidence and in concert with one another to file more than 2000 debt collection lawsuits without proper documentation. *Id.*, at ¶¶ 41, 121, 122, 124, and 154. The implication from the SAC is that the Defendants were collecting debts they did not own or could not prove they owned, and never had any legal right to collect or did not have the required documents to prove assignment of the alleged accounts. Taken together with the pleaded facts that the Defendants filed lawsuits, concealed their fraudulent actions from the Plaintiffs and the tribunals, wrongly obtained default judgments and effected garnishments requiring the Plaintiffs to spend their time and money to hire attorneys to investigate their collection actions, state plausible claims for relief which should withstand Defendants' new Rule 12(b)(6) motions.

Under 15 U.S.C. §1692e(10) of the FDCPA, "a literally true statement can still be misleading" and is a violation of the FDCPA. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011)." Also, arguments under §1692f do not speak to the truth or falsity of a statement, but instead prohibit "unfair or unconscionable means to collect or attempt to collect any debt." Thus, even if the Court ultimately determines that the Defendants were collecting debts owned by the NCSLTs and the affidavits they relied on to do so were not false, the Plaintiffs have nevertheless pleaded plausible claims for recovery under the CPA.

**C.** **TSI's Argument That the False Declarations Could Not Have Violated the FDCPA Because They are Based on Personal Knowledge and Lay Opinion Ignores the Binding Precedent of This Case and Relies on Misstatements of Plaintiffs' Claims and Existing Law.**

When considering a motion to dismiss, the Court must accept plaintiffs' factual allegations as true and construe all inferences in favor of the plaintiffs. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1136 (9th Cir. 2017) ("We take as true the complaint's plausible and properly pleaded allegations[.]"). As discussed below, Defendants' arguments relating to some of

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 18
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

the Plaintiffs' claims ask the Court to simply ignore the allegations in the SAC and instead improperly accept the Defendants' allegations as controlling.

TSI makes two arguments that it contends justifies dismissal of Plaintiffs' per se CPA claims based on its violations of the FDCPA. It argues that "(mis)representations of 'personal knowledge,' without more, generally do not give rise to viable FDCPA claims" (Dkt. No. 103, at 19- 20), and that statements containing opinions or representations of law are not actionable (*Id.*, at 20-25). Both arguments are legally incorrect and rely on misstatements of Plaintiffs' allegations and should be rejected.

### 1. There are only two defenses to FDCPA claims.

There are only two viable affirmative defenses to the FDCPA. One is that the conduct was in conformance with an advisory opinion of the CFPB. *Jerman*, 559 U.S. at 578 (citing § 1692k(e)). The other is a "narrow exception to strict liability under the FDCPA" that only applies when defendants can demonstrate their violation was a result of a bona fide error. 15 U.S.C. §1692k(b); *see also Jammeh v. HNN Assocs., LLC,* No. C19-0620JLR, 2020 U.S. Dist. LEXIS 106256, at *15, 2020 WL 3266221 (W.D. Wash. June 17, 2020) (quoting *Clark*, 460 F.3d at 1177). Defendants raise neither and thus their arguments fail.

Further, Defendants*'* arguments also fail because they ask the Court to rule on its alleged affirmative defenses on a Rule 12(b)(6) motion. Ordinarily, a Rule 12(b)(6) motion cannot be used to raise an affirmative defense. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (citing C. Wright and A. Miller, Fed. Prac. and Proc. § 1277, at 328-330). Complaints need not contain any information about potential defenses and may not be dismissed for that omission. *Xechem, Inc. v. Bristol-Myers Squibb Co*., 372 F.3d 899, 901 (7th Cir. 2004); *see also Brownmark Films, LLC v. Comedy Partners* 682 F.3d 687, 690 (7th Cir. 2012) ("courts should

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" because "a plaintiff may state a claim even though there is a defense to that claim."). Thus, to the extent defendants rely on one or more affirmative defenses to support their motions to dismiss the SAC, the motions should be denied.[3]

### 2. TSI's arguments should be rejected because they contradict the law of the case.

TSI's arguments concerning the false declarations submitted for them by P&F and Cheung rely upon the same "materiality" argument TSI, P&F, and Cheung made in their motions to dismiss Plaintiffs' FAC (Dkt. No. 15, at 10-11). *See Clark v. Main St. Acquisition Corp.*, No. 1:12-cv-408, 2013 U.S. Dist. LEXIS 73947, at *15, 2013 WL 3015166 (S.D. Ohio May 24, 2013) (finding a false declaration of personal knowledge was not an FDCPA violation on a motion for summary judgment because "it was not a material misrepresentation"); *Manlapaz v. Unifund CCR Partners*, No. 08 C 6524, 2009 U.S. Dist. LEXIS 85527, at *8, 2009 WL 3015166 (N.D. Ill. Sep. 15, 2009) ("[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable.") (quotation omitted). This Court has already determined that the alleged misrepresentations by the Defendants were material. *See* Dkt. No. 29, at 12 ("[the misstatements Plaintiffs' allege] are plainly material under the FDCPA."). The Court's finding of materiality was not disturbed on appeal and thus, this should be the end of TSI's argument its misrepresentations were "not material."

### 3. TSI's argument, to the extent it relies on the contention that Plaintiffs have not alleged the affidavits were literally false, is a misstatement of the SAC.

Plaintiffs allege the affidavits submitted to the state courts in support of Defendants' collection efforts against the Plaintiffs were false. *See infra* at IV.C.3.c. Plaintiffs allege the

---

[3] A potential defense can support a Rule 12(b)(6) motion to dismiss for failure to state a claim only when a plaintiff has included allegations in the complaint that, on their face, disclose some absolute defense or bar to recovery. *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997). That is not the case here.

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 20
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

Defendants knowingly filed the false affidavits and made "false, deceptive, and misleading representations to debtors and Washington courts concerning the documents they possessed or reviewed that allegedly showed that the NCSLTs were entitled to collect on the student loans." Dkt. No. 61, at ¶¶ 124-126, 165. Plaintiffs have also specifically alleged that Defendants engaged in the same wrongful conduct discovered by the CFPB in the course of its investigation. *Id*. ¶ 135. The CFPB found that in many instances TSI affiants' statements that "they were authorized and competent to testify about the Consumers' Debts through review of and 'personal knowledge' of the business records, including electronic data, in their possession" were false. *Id*., Ex. A p. 7, at ¶ 19. The CFPB explained that "[TSI] Affiants [in certain instances] lacked personal knowledge of the business records including the electronic data, showing that the Consumers owed Debts to the Trusts." *Id*.[4] Plaintiffs further pleaded that TSI's affiants could not attest that the NCSLTs had been assigned the loans because proof of the assignments, if it ever existed, has been lost, and Defendants know that proof of the assignments of the loans did not exist or has been lost. *Id*., at ¶¶ 55-57, 79-81, 110, 124. These allegations are sufficient to make Plaintiffs' claims plausible. *See Hoffman*, 806 Fed. Appx. at 551; Dkt. No. 29, at 8-10.

The Court must accept the facts pleaded in the SAC as true for purposes of the motion to dismiss, and any arguments supporting dismissal relying on potential affirmative defenses about the TSI Consent Order are inappropriate at this procedural stage of the litigation. The Defendants

---

[4] The findings of the CFPB are contained in Section V of the Stipulation and Consent to the Issuance of a Consent Order, which is attached to the SAC as Exhibit B. TSI's CEO stipulated to entry of the Consent Order, but not the facts contained therein. Dkt. No. 61, at 73 (Ex. B, at ¶ 2). In stipulating to the Consent Order, TSI agreed that the factual findings of the CFPB would be taken as true in any proceeding to enforce the Consent Order and waived its right to challenge the validity of the Consent Order. *Id*., at 74-76 (Ex. B, at ¶¶ 6, 9.f.). Plaintiffs maintain, and both this Court and the Ninth Circuit agreed, that the findings of fact in the Consent Order support the conclusion that Plaintiffs' claims of FDCPA violations by TSI, P&F, and Cheung are plausible. Defendants' violations of the FDCPA support Plaintiffs' assertions that the Defendants violated the CPA.

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 21
(No. 2:18-cv-01132 TSZ)

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

argue that the Consent Order attached to the SAC as Exhibit A is not relevant to a finding of

plausibility here (*see* Dkt. No. 103, at 23-24), but the Ninth Circuit has explicitly held otherwise:

> Reading the complaint in the light most favorable to the Plaintiffs ... the consent order that TSI entered into with the Consumer Financial Protection Bureau ("CFPB") <u>makes it plausible that the affidavits filed by the Defendants in the collection actions against the Plaintiffs were false</u> and that the supporting documentation was lost or missing.

*Hoffman*, 806 Fed. Appx. at 551 (emphasis added).

To the extent that Defendants argue the CFPB Proposed Consent Judgment is not

relevant (Dkt. No. 103, at 22-23), this is also false. The Consent Judgment has a "direct relation

to matters at issue in this case." Dkt. No. 99, at 2. The findings of the CFPB, which are contained

in the Consent Judgment, support Plaintiffs' claims that the declarations were false or

misleading. Finally, to the extent that TSI argues that the schedules Plaintiffs allege to be lost are

not lost (Dkt. No. 103, at 25), that is a factual issue that Plaintiffs cannot address because

discovery has not begun, and it is an argument not appropriate on this Rule 12(b)(6) motion. The

out-of-circuit opinions TSI relies on for its "lay opinion" argument,[5] are also inapposite to the

facts here and not binding precedent. Neither *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d

889 (6th Cir. 2020), nor *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012)

concerns the submission of a false affidavit to collect on a debt. *Van Hoven* deals with an

attorney seeking to collect garnishment fees not allowed under Michigan law, which the trial

court and the Sixth Circuit Court of Appeals found to be a violation of the FDCPA. 674 F.3d at

891-92, 895-96 (explaining that a mistake of law can be a violation of the FDCPA even where

the debt collector does not realize it was mistaken on the law.) *Hemmingsen* was procedurally

different, in that the Eighth Circuit Court of Appeals was reviewing a lower court's decision on a

---

[5] *See* Dkt. No. 103, at 20-25.

summary judgment motion. 674 F.3d at 816. It was also factually different, as it did not concern a knowingly false or misleading statement and the debt collector's continuous use of false statements to collect on debt despite its knowledge that the affiants' statements were false, as is the case here. These opinions are neither binding on nor instructive for this Court in this case.

### 4. TSI's arguments should be rejected because the Defendants' misrepresentations were material.

If the Court decides to dig deeper than the law of the case, TSI's statements of the law are wrong. "Material false representations . . . are those that could 'cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort.'" *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 776 (9th Cir. 2017) (quoting *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014)); *see also Toohey v. Portfolio Recovery Assocs.*, LLC, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *9 (S.D.N.Y. Aug. 22, 2016) (Where defendant debt buyer firm and his law firm "brought and maintained consumer debt lawsuits without having sufficient evidence to prove the claimed debts, and filed false, deceptive, and misleading affidavits in support of their claims to obtain default judgments" the court found plausibly misleading and unconscionable conduct under the FDCPA because the defendants did not possess, and the affiant had not reviewed, evidence sufficient to establish the plaintiff's debt)." TSI's argument that mistakes of law cannot form the basis of an FDCPA violation is contrary to law.

TSI's argument that the false declarations could not have violated the FDCPA because they are based on personal knowledge and lay opinion ignores the binding law of this case and misstatements of Plaintiffs' claims and existing law. To the extent that TSI argues that Defendants could not have violated the FDCPA because false statements of lay opinion or representations of law are not actionable (Dkt. No. 103, at 20-22), its arguments fail. It is settled

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 23
(No. 2:18-cv-01132 TSZ)

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

law that an unintentional mistake of law is not a defense to an FDCPA claim. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 581, 130 S. Ct. 1605, 1611, 176 L.Ed.2d 519, 527 (2010).

### 5. TSI's argument that good faith is a defense to Plaintiffs' non-per se CPA claims presents an issue of fact issue not properly decided here.

Any assertion that making and submitting the false declarations to the state courts was a "good faith mistake" presents a factual issue, not appropriately decided at this stage of litigation. The existence of good faith is a question for the jury. *Badgett v. Sec. State Bank*, 56 Wn. App. 872, 878–79, 786 P.2d 302, 306 (1990), *rev'd on other issues*, 116 Wn.2d 563, 807 P.2d 356 (1991); *see also, Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 143, 29 P.3d 777, 783 (2001) (explaining that a mistake must be reasonable and whether it is reasonable is determined "in light of all the facts and circumstances of the case."); *In re Estate of Palmer*, 145 Wn. App. 249, 262–63, 187 P.3d 758, 765 (2008) (good faith is an issue of fact, not of law).

Plaintiffs' claims rest on Defendants' years of knowingly submitting false affidavits and their continued use of false affidavits and collection on accounts where false affidavits were used after being caught by the CFPB and agreeing to stop. TSI seeks to frame Defendants' conduct as a simple mistake, but that is not what Plaintiffs allege. This Court and the Ninth Circuit have already found that Plaintiffs' claims are plausible. The Defendants' suggestion that the Defendants' misrepresentations in the declarations were simply a "good faith" mistake of law is false. And regardless, even if the misrepresentations were simply mistakes of law, such misrepresentations can constitute the very violations of the FDCPA that Plaintiffs allege occurred, and would in any event support the Plaintiffs' CPA claims.

Further, while generally "[a]cts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the [CPA]," *Leingang v. Pierce*

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

*County Medical Bureau, Inc.*, 131 Wn.2d 133, 155, 930 P.2d 288 (1997), the defense is not

available for CPA violations premised on deceptive acts. *Watkins v. Peterson Enterprises, Inc.*,

57 F. Supp.2d 1102, 1111 (E.D. Wash. 1999). Also, while no Washington state courts have

addressed this issue, at least one federal court in Washington has held that "good faith under an

arguable interpretation of existing law" defense is not available to shield conduct from a CPA

claim premised on per se unfair conduct, like TSI's, P&F's, and Cheung's conduct here. *Gray v.

Suttell & Assocs., P.S.,* No. 2:09-CV-251-RMP, 2016 WL 409706, at *8 (E.D. Wash. Feb. 2,

2016) (citation and internal quotation marks omitted).

Thus, even if the Court examines the Defendants' alleged good faith, despite that it

presents an issue of fact, the Defendants' good faith is irrelevant to whether they are liable to the

Plaintiffs under the CPA.

Further, in order to establish that the actor's conduct in question was done in "good faith

under an arguable interpretation of existing law," the proponent of the defense "may have to rely

on an official interpretation of state law." *Gray*, 2016 WL 409706 at *8. The Defendants have

not directed, and cannot direct, the Court to any official interpretation of state law that would

suggest that it reasonably believed that its violation of the FDCPA was in fact permitted.

Because the Defendants cannot show that their alleged incorrect interpretation of the

requirements and prohibitions of the FDCPA was based on and supported by some official

interpretation of law, the Defendants are unable to avail themselves of the good faith defense.

### D. P&F's and Cheung's Arguments that Plaintiffs Have Not Alleged Plausible Violations of the FDCPA to Support Their Per Se CPA Claims Similarly Fail.

The Plaintiffs have pleaded sufficient facts to support their claims that TSI, P&F, and

Cheung violated the FDCPA, and therefore also violated the CPA. *See infra* at § IV.C. P&F and

Cheung argue that Plaintiffs allege that TSI employees made false and misleading declarations,

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

but P&F and Cheung cannot be liable because Plaintiffs have not alleged how they were supposed to know the affidavits were defective. Dkt. No. 100, at 15. Scienter is not a required element of Plaintiffs' per se CPA claims based on violation of the FDCPA. *See e.g., Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1175 (9th Cir. 2006) (requiring knowledge negates § 1692k(c)). Regardless, Plaintiffs allege that P&F and Cheung knew the declarations were false and misleading and nevertheless continued to submit them to the state trial courts. Dkt. No. 61, ¶¶ 57, 81, 119, 124, 173. Plaintiffs also allege that TSI and Cheung continued to try and collect on accounts after they became aware that TSI had entered into a Consent Order with the CFPB and before they verified the accuracy of the collection records, as required by the Consent Order. *Id.*, ¶154a.-d. Plaintiffs further allege that Hoffman's counsel provided Mr. Cheung with a copy of the Consent Order and Defendants continued to attempt to collect from the Plaintiffs. *Id.*, ¶ 65. The Consent Order and the Proposed Consent Judgment support Plaintiffs' contentions that the declarations were false, that the Defendants knew they were false, and that the Defendants nevertheless used them for years to collect on alleged student loan debts. *Id.*, Exs. A & C.

P&F's and Cheung's argument that debt collectors can escape liability if they "merely filed affidavits," and that they are permitted to just "rely on the affidavits" they are supplied (Dkt. No. 100, at 15), is incorrect. There are only two affirmative defenses to the FDCPA's strict liability. *Jerman*, 559 U.S. at 578. One is that the conduct was in conformance with an advisory opinion of the CFPB. *Id.* (citing § 1692k(e)). The other is a "narrow exception to strict liability under the FDCPA" that only applies when defendants can demonstrate their violation was a result of a bona fide error. 15 U.S.C. § 1692k(b); *see also Jammeh*, 2020 U.S. Dist. LEXIS 106256, at *15 (quoting *Clark,* 460 F.3d at 1177). The Ninth Circuit has explained that a

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

violation of § 1692e may be predicated upon conduct that is neither knowingly nor intentionally of the type that violates the FDCPA. *Clark*, 460 F.3d at 1176. The bona fide error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(b).

Because bona fide error is an affirmative defense, debt collectors have the burden of proving the bona fide error exception applies. *Clark*, 460 F.3d at 1177 (citing *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1514 (9th Cir. 1994)). The statute explains that whether bona fide error applies is a factual inquiry and requires the evidence to be reviewed under the "preponderance of evidence" standard. 15 U.S.C. § 1692k(b). The preponderance of the evidence must show that (1) the violation was not intentional, and (2) the debt collector maintains procedures reasonably adapted to avoid the error. *Fox*, 15 F.3d at 1514. Because this requires a factual inquiry, a determination that P&F's and Cheung's collection through the use of false declarations was a result of bona fide error cannot be decided at this stage of the litigation. Further, even if a ruling on the application of the bona fide error defense was appropriate, for the defense to negate an FDCPA claim, the defendant must show that it employed reasonable procedures to avoid the error. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) ("reliance on a client is not a procedure to avoid error" for the purpose of the bona fide error defense.) P&F and Cheung have submitted no evidence that they employed reasonable procedures to avoid the error, or even that they did not know that the declarations were false. *Id*. Thus, their argument fails.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

P&F and Cheung also argue that their actions could not have been "unfair or unconscionable means to collect or attempt to collect any debt" under section 1692f. Dkt. No. 100, at 17. Their argument rests on a misstatement of Plaintiffs' allegations. Plaintiffs' allegations include that P&F and Cheung repeatedly used declarations they knew to be false to collect and attempt to collect claims (Dkt. No. 61, at ¶¶ 119, 173); that P&F and Cheung knowingly filed these false affidavits in Court to obtain judgments *(id.*, ¶¶ 121, 184.c.) *;* that P&F and Cheung continued to file and use the false affidavits to collect on accounts after a CFPB investigation found the improprieties (*id.*, 154) ; that TSI signed a Consent Order agreeing to stop using the false or misleading declarations and to stop collecting on accounts until the records for each account were verified (*id.*); and that Plaintiffs' counsel provided copies of the signed TSI Consent Order to P&F and Cheung. (*id.*, ¶¶ 65, 81). It is unfair and/or unconscionable for a debt collector to knowingly use and file false affidavits to collect and attempt to collect on accounts. Because Plaintiffs have pleaded plausible violations of the FDCPA, their per se CPA claims should not be dismissed.

### E. Plaintiffs Have Alleged Sufficient Facts to State Non-Per Se CPA Claims Against TSI, P&F and Cheung.

TSI, P&F and Cheung argue that Plaintiffs have failed to adequately plead four of the five elements of their non-per se CPA claims against them. Dkt. No. 100, at 2; Dkt. No. 103, at 25-28. TSI's, P&F's and Cheung's arguments are contrary to the binding law of this case, Washington law, and the facts alleged in the SAC.

#### 1. Unfair or Deceptive Act or Practice.

This Court and the Ninth Circuit have already determined that the conduct alleged in FAC, which is now alleged in the SAC, was plausibly unfair or deceptive. *See Hoffman*, 806 Fed. Appx. at 522 ("Taking the well-pleaded factual allegations of the complaint as true, *see*

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 28
(No. 2:18-cv-01132 TSZ)

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

*Iqbal*, 556 U.S. at 678, the Defendants' attempts to collect debts with false affidavits and without the necessary documentation to prove their claims plausibly alleged the use of 'unfair or unconscionable means to collect or attempt to collect any debt'); Dkt. No. 29, at 14-15 (finding that the allegations in the FAC "alleged a plausible claim that the affidavits constituted a deceptive means of collecting or attempting to collect Plaintiffs' debts" and that the allegation raised a reasonable inference that Defendants engaged in unfair or unconscionable conduct.)

### 2. Occurring in Trade or Commerce.

The Ninth Circuit has also already found that the wrongful conduct alleged in the FAC, which is also alleged in the SAC, "occurred within trade or commerce for the purposes of the CPA," because the FAC alleged "that TSI is a debt collector." *Hoffman*, 806 Fed. Appx. at 552 (citing *Evergreen Collectors v. Holt*, 60 Wn. App. 151, 155, 803 P.2d 10, 13 (1991)). Plaintiffs continue to allege TSI is a debt collector in the SAC, so the same conclusion as to TSI applies. *See* Dkt. No. 61, at ¶¶ 19, 118.

P&F's and Cheung's alleged unfair and deceptive conduct occurred in trade or commerce. Collection activities that occur in litigation can constitute violations of the CPA. *See Evergreen Collectors*, 60 Wn. App. at 155-56 (determining that attempt to collect more than legally due through litigation constituted a violation of the CPA). Lawyers' and law firms' actions occur in trade or commerce for the purpose of the CPA where they engage in a commercial enterprise, such as the collection of debts. *Hoffman*, 806 Fed. Appx. at 553 (citing *Styrk v. Cornerstone Invs., Inc.*, 61 Wn. App. 463, 810 P.2d 1366, 1371 (Wash. Ct. App. 1991)). Where a collection agency "routinely files lawsuits against debtors as part of its business, the agency's conduct, pleadings, affidavits and testimony within those lawsuits should be considered within the sphere of trade or commerce." *Cruson v. A.A.A.A., Inc.*, No. 58163-5-I,

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 29
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

140 Wn. App. 1012, 2007 Wash. App. LEXIS 2475, at *19-20, 2007 WL 2363475 (Ct. App. Aug. 20, 2007), *review denied*, 167 Wn.2d 1005, 220 P.3d 209 (2009).

This case is like *Mandelas v. Gordon*, where the court required the debt collector law firm to obtain a collection agency license despite regular appearances in court and litigation. 785 F. Supp. 2d 951, 960–61 (W.D. Wash. 2011). In that case, the court found that the law firm, with only two employee attorneys and between 13 to 18 non-attorney "collectors" who worked in the "collection department," engaged in the solicitation of claims for collection or attempted to collect claims owed or due another, was a debt collector. *Id.* at 960–61. Similarly, here, P&F and Cheung use non-attorney debt collectors at TSI to direct their actions concerning allegedly defaulted debt through the Attorney Network and use form complaints prepared by TSI employees to collect debts. *See* Dkt. No. 61, at ¶¶ 25, 65, 112. This conduct subjects P&F and Cheung to CPA liability. *See also Lang v. Gordon,* No. C 10–0819RSL, 2011 WL 62141, at *2 (W.D. Wash. Jan. 6, 2011) (finding that the legislature expressly allowed the regulation of traditional lawyer functions, such as filing lawsuits under the CAA , when it included provisions to suspend or revoke a lawyer's license for unprofessional conduct under RCW 19.16.120(4)(b)).

Where the main goal of a lawyer's business is to increase revenue while serving an ever greater number of clients and fewer lawyers to sue in multiple states and jurisdictions, while reaping more attorney's fees and costs in ever greater margins from such lawsuits, litigation ceases being a profession and becomes the business of debt collection and it occurs in trade or commerce. *Short v. Demopolis*, 103 Wn.2d 52, 62, 65-66, 691 P.2d 163 (1984). The Ninth Circuit recognized that P&F and Cheung could be held liable under the CPA and granted Plaintiffs leave to amend their complaint "to address whether P&F's and Cheung's involvement in their alleged deceptive practices went beyond legal representation and included debt-

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 30
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

collection activities." Dkt. No. 51, at 6. Plaintiffs have included significant allegations in their SAC regarding P&F's and Cheung's business, the primary purpose of which is debt collection. *See* Dkt. No. 61, at 28-29. In particular, Plaintiffs allege that P&F's and Cheung's business is the collection of debts, not the exercise of legal opinion or strategy. Plaintiffs allege that TSI manages the activities of the collection law firms that it uses and requires them to follow "Network Attorney Standard Operating Procedures." *Id*., at ¶¶ 147-149. The Network Attorney Standard Operating Procedures strip P&F and Cheung of much, if not all, of the independence lawyers and law firms usually enjoy, and turns them into nothing more than collection tools. Dkt. No. 61, at ¶ 150. P&F's and Cheung's actions are directed, monitored, and graded by non-attorney agents of TSI called "performance managers." *Id*., at ¶¶ 150-53. The performance managers determine the market share of accounts assigned to P&F and Cheung and base their evaluations on P&F's and Cheung's collection efficacy. *Id*. Plaintiffs allege that P&F and Cheung are debt collectors, because that is their primary function and "TSI controls P&F's and Cheung's collection activities." *Id*., at ¶¶ 29, 36, 39. Plaintiffs also allege that P&F and Cheung engage in numerous other collection agency activities that fall within the reach of the CPA. *See id*., at ¶¶15-39. These are sufficient factual allegations to find plausible CPA claims against P&F and Cheung based on their status and conduct as "debt collectors."

### 3. Public Interest Impact.

Defendants do not dispute this element is met.

### 4. Injury and Causation.

The injury requirement for a CPA violation is met upon proof that the proponent's property interest or money interest is diminished because of the unlawful conduct. *Panag*, 166 Wn.2d at 57-58 (citation omitted). Also, unquantifiable non-money damages may suffice to

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 31
(No. 2:18-cv-01132 TSZ)

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

prove the "injury" component where the opposing party's conduct results in delay in the refund of money. *Id.* at 58. The Plaintiffs here alleged that they incurred expenses for attorneys to investigate the claims that the NCSLTs, through TSI, P&F, and Cheung filed against them, and that they spent their own time and money related to the investigation of the claims. Dkt. No. 61, at ¶¶ 61, 63, 67, 85, 116. This is sufficient to meet the "injury" requirement of the CPA. *Panag*, 166 Wn.2d at 57-58

Nevertheless, P&F and Cheung argue that they have not injured the Plaintiffs through their litigation conduct in the state court collection suits because the Plaintiffs admit that they owe the debts for which they were sued. Thus, they argue, their attempts to collect the debts do not constitute "injuries" for purposes of the CPA. Dkt. No. 100, at 21. P&F and Cheung rely on *Babrauskas v. Paramount Equity Mortg.*, No. C13-0494 RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013), to contend that the Plaintiffs suffered no qualifying injury. Dkt No. 100, at 21. However, that argument is not supported by the decision. The *Babrauskas* court addressed the misidentification of a party as the beneficiary in a nonjudicial foreclosure proceeding, and whether that misidentification supported CPA liability. The court held that the plaintiff had failed to allege facts raising the plausible inference that, but for MERS' misidentification of the beneficiary on the deed of trust and its ineffective assignments of interest, the plaintiff would not have suffered an injury. 2013 WL 5743903, at *4. Therefore, the court found that the "but for" cause of the default, the threat of foreclosure, and other injuries the plaintiff claimed to have suffered, was due to the plaintiff's failure to pay his debt. *Id.*

P&F and Cheung try to shoehorn the *Babrauskas* holding into the facts of this case, focusing on the debt allegedly owed by the Plaintiffs, and ignoring that the Plaintiffs' allegations that P&F and Cheung are collecting on debts not owed to the NCSLTs, and that the NCSLTs do

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

not have any loan schedules showing that they own the Plaintiffs' loans, leaving them unable to

prove up their claims in court against the alleged borrowers if challenged. Indeed, the court in

*Babrauskas* recognized that had the plaintiff alleged that the misidentification itself caused any

of the injuries alleged in the complaint—for example, if the misidentification had required the

plaintiff to "incur[ ] costs while trying to locate the actual holder of the note"—the plaintiff's

complaint would have sufficiently pleaded facts to met the "injury" component of a CPA claim.

*Id.*, at *4. Here, the Plaintiffs have specifically alleged that they suffered injuries as a direct

result of the alleged unfair and deceptive acts of the Defendants. *See* Dkt. No. 61, ¶¶ 85, 63, 93,

113, 116. Therefore, *Babrauskas* is not relevant to the Plaintiffs' allegations of injury here and

does not compel the Court to conclude that the Plaintiffs have not suffered injuries due to the

Defendants' actions.

Further, the acts of P&F and Cheung are the acts of TSI and the NCSLTs, as P&F and

Cheung are their agents. *See* Dkt. No. 61, at ¶¶ 12, 20, 23, 29, 33, 38 & 119. The acts of an

authorized agent are the acts of his principal. *Smith v. Gray*, 52 Wash. 255, 256-57, 100 P. 339

(1909). Any injury inflicted on the Plaintiffs by P&F and Cheung is deemed to have been

inflicted by the NCSLTs, TSI, P&E and Cheung. *Id.*

Plaintiffs alleged that the Defendants filed lawsuits against them and Washington

consumers without the intent or ability to prove the claims if contested. *See* Dkt. No. 61, at ¶125.

P&F and Cheung, along with the other Defendants, also knew that the NCSLTs' business records

kept with American Education Services ("AES"), a/k/a Pennsylvania Higher Education

Assistance Agency ("PHEAA"), are unreliable, since many are missing collateral documentation

for the educational loans, and all of the loan files are missing assignments and other

documentation. *See* Dkt. No. 61, at ¶124(d) & (e). P&F and Cheung, along with the other

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 33
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

Defendants, also knew that they did not have in their possession the schedule of loans sold to the NCSLTs by the original creditor or creditors when the affidavits filed in the state court actions were signed. *Id.,* at ¶ 124(h). The Plaintiffs have pleaded sufficient facts to support the contention that P&H and Cheung were not mere lawyers without knowledge of their clients' fraudulent concealment, and that they should be held liable for their conduct. Dkt. No. 100, at 22.

Lastly, P&F, Cheung and TSI all claim that the Plaintiffs cannot prove a causal link between their alleged unfair and deceptive acts and Plaintiffs' alleged injuries. TSI claims that the Plaintiffs have not shown that the filing of fraudulent affidavits caused injury to the Plaintiffs, Dkt. No. 103, at 27, and P&F and Cheung claim that challenging the NCSLTs' ownership of the debts is merely a "show me the note" claim that has been rejected by Washington courts. Dkt. No. 100, at 22-23. However, P&F and Cheung citation to these cases is inapplicable because the "show me the note" theories the courts have largely rejected were asserted in cases seeking the recovery of debts memorialized by installment promissory notes, primarily for mortgage debt obligations. Ownership of hose types of loans are proved  not through assignment but rather but through proof that the holder possesses the promissory notes at issue. *See, e.g., Deutsche Bank Nat. Tr. Co. v. Slotke,* 192 Wn. App. 166, 175, 367 P.3d 600 (2016). In contrast, in this case, the loan agreements are not governed by Washington's Deed of Trust Act, RCW Chapter 64.24. The Plaintiffs maintain that proof of all assignments and the chain of title is necessary to prove ownership of the loans sought to be collected. *See* Dkt. No. 61, at ¶ 121. Thus, since all the Plaintiffs have adequately alleged that "but for" the fraudulently filed affidavits they could not prove ownership of the debts. Then, as a result of these unfair and deceptive acts, the Plaintiffs met with attorneys, spending time incurring investigation fees to learn about the true nature of the fraudulent conduct involve in the collection of their debts.

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 34
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

Therefore, the Plaintiffs have proved a causal link between the Defendants' actions and the injuries they have alleged to suffer as a result, meeting the requirements for pleading a CPA injury, and proximate cause.

**F.  The Kims Have Adequately Pleaded That They Suffered Injury As A Result of Defendants' Actions.**

The SAC alleges that Anthony Kim's bank account was wrongfully garnished, and that he therefore lost interest on the funds while they were in the court registry. Dkt. No. 61, at ¶¶ 114-115. This is sufficient "injury" to support a CPA claim. *Mason v. Mortg. Am., Inc.,* 114 Wn.2d 842, 854, 792 P.2d 142 (1990) (an injury can be found even if minimal and temporary); *Panag,* 166 Wn.2d at 58.

The NCSLTs and TSI claim that Daria and Il Kim have not alleged a "proximately caused" injury to their business or property. Dkt No. 103, at 12; Dkt No. 104, at 8-9. But the SAC alleges that the Kims collectively relied on the first filed complaint by NCSLT 2005-2, collectively agreeing to pay $50 a month for January, February, March, April, and May 2015 while trying to work out a more permanent agreement on the alleged debts. Dkt. No. 61, at ¶¶ 90-93. The Kims believed that their monthly payment agreement would cover any and all outstanding accounts with the NCSLTs. Thereafter, relying on NCSLTs' misrepresentations, the Kims met with and collectively paid their attorney funds "to investigate"…the Defendants' collection attempts, including a review of the underlying documents, a review [of] the court file and garnishments …." *Id.*, at ¶ 116. And it was not until that point in the investigation of the collection actions that the Kims knew that the NCSLT debts were not owed and that the default judgments had been obtained with false affidavits. Dkt. No. 61, at ¶114.

The Defendants failed to adequately review their files prior to filing lawsuits against the Kims, and they did not have the required evidence to establish the chain of title needed to prove

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

any judgment they sought. Due to the Defendants' misrepresentations and concealment, the Kims incurred attorneys' fees to investigate debts they did not owe; the Defendants' conduct is the "but for" cause of the Kims' injuries and their conduct is the but for cause of the Kims' injury. *Indoor Billboard/Wash.*, *Inc.*, 162 Wn.2d at 74–75.

The Kims' attorney's investigation of the student loan issues, and the Defendants' right to collect the loans, required review of the underlying documents, the court file, and garnishments. The investigation revealed that the NCSLTs had no proof that they owned the Kims' loans. Therefore, the investigation costs paid by the Kims constitute "injury" for purposes of the CPA. *Peoples v. United Servs. Auto. Ass'n,* 194 Wn.2d 771, 782, 452 P.3d 1218, 1223–24 (2019); *Frias v. Asset Foreclosure Servs., Inc.,* 181 Wash. 2d 412, 432, 334 P.3d 529, 538 (2014).

### G. Plaintiffs' Claims Against P&F and Cheung Are Not Barred By A "Judicial Action Privilege" or Washington's Public Policy.

P&F and Cheung seek to reargue their assertion that they are immune from liability under *Jeckle*, 120 Wn. App. 374, 85 P.3d 931 (2009), which this Court and the Ninth Circuit have already rejected. Dkt. No.'s 21, at 19 & 51, at 2-3. Their argument fails now for the same reasons it failed before. Defendants argue they are immunized from all actions taken against the Plaintiffs by virtue of suing them in the collection cases, and cited to *Jeckle* for the proposition that "the 'judicial-action privilege' has extended immunity for lawyers' actions beyond defamation and litigation privilege." Dkt No. 100, at 8. However, P&F intentionally left out the part that provides that the privilege, if applicable, applies only to tort claims, and not statutory claims. Finally, lawyers and law firms are specifically subject to the FDCPA, as explained by the U.S. Supreme Court in *Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489 (1995) (FDCPA applies to lawyers who regularly, through litigation, try to collect consumer debts).

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 36
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

The CPA covers claims for the provision of legal services. To be sure, not all collection agency law firms refrain from traditional areas of legal practice, such as litigation. But when firms like P&F and their attorney, Cheung, file lawsuits that are dictated and directed by the Attorney Network that controls their actions, "using 'performance managers' to monitor and assess the collection efficiency of accounts assigned to Network firms, including P&F and Cheung, on a weekly basis to determine the market share of accounts to assign to them," and use the courts to collect debt, it supports the implication that P&F and Cheung's main goal is to increase revenue while reaping more attorney's fees and costs in ever greater margins from lawsuits associated with the Attorney Network and collections from consumers as a result of those efforts. *See* Dkt. No. 61, at ¶¶ 23, 133, 147-153. In situations like those present in this case, where debt collectors' litigation is in fact the business of debt collection, P&F and Cheung are not immune from legal liability for their conduct in those collection cases. *Heintz v. Jenkins,* 514 U.S. at 292, 298-99; *Short v. Demopolis*, 103 Wn.2d at 65-66.

P&F and Cheung assert that the Plaintiffs' CPA claims are predicated on actions they took while representing their client in court and since "[n]one of this activity consisted in giving testimony" they are immune from liability. Dkt. No. 100, at 9. While this may be true for lawyers who are not licensed collection agencies, because P&F's and Cheung's debt collection conduct is overseen and directed by TSI non-lawyers with minimal attorney involvement, it inherently implicates the entrepreneurial aspects of legal practice. *Smith v. Bank of New York* Mellon, No. C-19-0538 JCC, 2019 WL 2994695, at *2 (W.D. Wash. July 9, 2019); *Eriks v. Denver*, 118 Wn.2d 451, 464, 824 P.2d 1207, 1214 (1992); *Mandelas v. Gordon*, 785 F. Supp. 2d at 960–61.

Similarly, in *Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 U.S. Dist. LEXIS 48526, at *2, 2016 WL 1408089 (W.D. Wash. Apr. 11, 2016), the plaintiff claimed that the

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 37
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

collection agency defendant had filed collection lawsuits in the wrong court, which constituted

violations of the FDCPA and CAA. The debt collectors argued that filing the lawsuits was

"related to litigation activities" and thus that they were protected from liability for that conduct

by the litigation privilege. Denying the defendants' motion to dismiss, this Court stated:

"[R]egarding [defendant's] litigation privilege claim, this privilege pertains to witness testimony

given in judicial proceedings. *See Wynn v. Earin*, 181 P.3d 806, 810 (Wash. 2008).  It is

irrelevant here." *Linehan*, 2016 U.S. Dist. LEXIS 48526, at *2.

Any other interpretation would be absurd. Applying the litigation privilege to absolve

debt collectors of all conduct in the course of debt-collection lawsuits would (1) encourage *en*

*masse* filing of lawsuits against debtors to immunize all of their future conduct from liability, (2)

encourage a multiplicity of CR 11 motions to reign in abusive conduct, and (3) ignore the entire

statutory mandate that debt collectors must follow the rules established by the legislature.

### H. Plaintiffs do not bring a claim that requires the heightened pleading of Rule 9(b); Regardless, their pleading is sufficient.

Fed. R. Civ. P. 9(b) requires "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." P&F and Cheung argue that

Plaintiffs must meet the heightened pleading standard under Fed. R. Civ. P. 9(b) because

Plaintiffs allege fraud. Dkt. No. 100, at 6-8 ("The crux of Plaintiffs' claims against [P&F]

essentially boils down to the allegation that [P&F] furthered a fraud by knowingly filing false

affidavits in Washington courts, and concealed this knowledge from Plaintiffs and the superior

courts.")

Plaintiffs have not asserted a fraud claim. The heightened pleading standard under Rule

9(b) does, however, pertain to those claims where fraud is an essential element or where a case is

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

"grounded in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). A claim is "grounded in fraud" where the allegations are based on a "unified course of fraudulent conduct." *Id*. citing *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994). In a recent case where a claim of false advertising was brought under the CPA, this Court held that a CPA claim must meet the heightened pleading standard of Rule 9(b). *Harris v. Gen. Motors LLC*, No. C20-257 TSZ, 2020 WL 5231198, at *5 (W.D. Wash. Sept. 2, 2020).

While it is true that false advertising claims are grounded in fraud, not all CPA claims are. Fraud has nine elements (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by plaintiff; (6) plaintiff's ignorance of its falsity; (7) reliance on the misrepresentation; (8) plaintiff's right to rely on it; and (9) actual harm. *Elcon Constr. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012). Many of Plaintiffs' CPA claims do not require a finding of falsity, intent or reliance. The CPA bars "unfair" or "deceptive" conduct. "Deception exists [for the purposes of the CPA] 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag*, 166 Wn.2d at 50 (*quoting Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)). "Even accurate information may be deceptive." *State v. Mandatory Poster Agency, Inc.*, 199 Wn. App. 506, 523, 398 P.3d 1271, 1279 (2017) (quoting *State v. Kaiser*, 161 Wn. App. 705, 719, 254 P.3d 850, 858 (2011). Thus, contrary to the requirement for fraud that a statement be false, a representation that is technically true can still be deceptive under the CPA. The CPA also does not require that an unfair or deceptive act or practice need be intended to deceive, but only that it has the capacity to deceive. *Indoor Billboard/Wash.*, *Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 74–75, 170 P.3d 10 (2007). "The purpose of the 'capacity-to-deceive test' is to deter deceptive conduct before it

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

happens." *Id*. Finally, in the Washington Supreme Court's latest decision on the CPA, issued on September 24, 2020, the Court explained that reliance is not a necessary element of a CPA claim. *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 321, 472 P.3d 990, 996 (2020) (citing *Indoor Billboard/Washington, Inc.* 162 Wn.2d at 83). Under the CPA an unfair or deceptive practice need only cause injury to a person, not be relied upon by the person injured. *Young*, 196 Wn.2d at 322. A plaintiff need only establish reliance where the plaintiff's theory of causation demands it; for example, where a consumer relies on a false representation in the purchasing of a vehicle, such as was the case in *Harris*. 2020 WL 5231198, at *4.

Plaintiffs' non-per se claims that go to the unfair conduct of Defendants in continuing to collect on judgments after TSI entered into a Consent Order with the CFPB and before auditing the accounts (Dkt. No. 61 at 37, ¶ 184.b.) are not grounded in fraud. Therefore, the heightened pleading standard of Rule 9(b) does not apply to these claims. Similarly, to the extent that Plaintiffs' CPA claims arise out of the "misleading" character of the affidavits and the deceptive use of them, and not to the falsity of the information contained therein (Dkt. No. 61 at 37, ¶184.a.), these claims also should not be held to the higher pleading standard. Requiring pleading that describes the particulars of fraud, to the extent of showing the elements of fraud that exist, on these claims would force Plaintiffs to allege facts not necessary to prove their claims.

The Ninth Circuit has not settled whether all of Plaintiffs' per se CPA claims brought under the FDCPA must necessarily be pled using the heightened pleading standard. *Bennett v. Cielo Homeowners Ass'n*, No. 19-cv-2131-WQH-BLM, 2020 U.S. Dist. LEXIS 78850, at *20 n.2, 2020 WL 2126161 (S.D. Cal. May 4, 2020) ("The Court of Appeals for the Ninth Circuit has not ruled on whether claims under the FDCPA for misrepresentation must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure...."). Plaintiffs are only

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 40
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

able to find a case in this district holding that those FDCPA claims "that require a showing of false or misleading communications must be pled with particularity under Rule 9(b)." *Quintanilla v. Bureaus, Inc.*, No. 3:19-cv-05161-RBL, 2019 U.S. Dist. LEXIS 115626, at *5, 2020 WL 3028104 (W.D. Wash. July 11, 2019). Plaintiffs' per se CPA claims based on Defendants' violations of 15 U.S.C. § 1692f only require a showing of an "unfair or unconscionable means to collect or attempt to collect any debt," which also does not require falsity of a statement. While there does not appear to be significant case law on this issue in this circuit, the district court in Oregon, when faced with this issue, decided that FDCPA claims brought under section 1692e do require pleading to conform to Rule 9(b), but did not hold the plaintiff's section 1692f claims to the same standard. *Barker v. JP Morgan Chase Bank*, No. 3:11-cv-00579-MO, 2016 U.S. Dist. LEXIS 87945, at *16, 2016 WL 3647329 (D. Or. July 7, 2016). For the reasons stated *supra* at VI.C. Plaintiffs have alleged plausible CPA claims for relief where the heightened pleading standard is not required.

Admittedly, Plaintiffs have alleged significant fraud and misrepresentation by the Defendants, and their claims that rely on these assertions must meet the higher pleading standard to the extent they sound in fraud. Even were the heightened pleading standard to be applied to all Plaintiffs' claims, their SAC still satisfies that requirement. "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Particularly the rule requires "the pleader must state the time, place, and specific content of the false representations as well as

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

the identities of the parties to the misrepresentation" *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Plaintiffs have particularly stated the required allegations. The false representations were those of TSI affiants made in documents titled "Affidavit and Verification of Account" that were filed with Washington courts and provided to consumers to try to prove that the NCSLTs had the right to collect against specific Washington consumers. *See e.g.* Dkt. No. 61, at 9 (Hoffman facts), 13 (Douglas facts), 17 (Kims facts), 20-22 (detailing Defendants' collection history and practices), 23-25 (CFPB's findings), 25 (TSI Consent Order barring the specific conduct), 26 (NCSLT Consent Judgment containing CFPB findings), 29 (Defendants' continuing fraudulent practices), 41 (CFPB Consent Order). Plaintiffs have particularly pled the role P&F and Cheung played in this scheme. *See e.g.*, Dkt. No. 61, at 9-10, 13-14, 16-17, 19, 21 (alleging that P&F and Cheung represented to the Plaintiffs that the NCSLTs were entitled to collect on the judgments and that P&F filed the false and misleading affidavits in collection actions against each plaintiff with motions for default signed by Cheung when they had never reviewed the required schedules and knew them to be lost). Plaintiffs have also pleaded in detail how, to the extent Plaintiffs have personal knowledge, P&F and Cheung obtained knowledge of the falsity of the affidavits and the facts that the required documentation was lost. Dkt. No. 61, at 11-12 (Sam Leonard sent P&F and Cheung a copy of the TSI Consent Order, which details the falsity of the affidavits), 14 (the Consent Order was served on P&F and Cheung), 23, Ex. B (TSI's CEO signed a Stipulation and Consent to the Issuance of a Consent Order), 25-26 (Defendants continued to collect on NCSLT accounts after learning of the Consent Order, which bars them from collecting on accounts where the false affidavits were used).

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 42
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

P&F and Cheung argue that Plaintiffs must plead who advised P&F and Cheung that the NCSLTs could not show ownership, who provided them that information, when that information was conveyed, and why P&F would file such false statements. Dkt. No. 100, at 7. The standard they demand would require Plaintiffs to plead with particularity facts not necessary for their CPA claims. P&F and Cheung's insistence that Plaintiffs must provide details of information "peculiarly within the opposing party's knowledge" also ignores that knowledge is not required by Fed.R.Civ.P. 9(b):

> Even under the more rigid pleading standard of Federal Rule of Civil Procedure 9, however, the pleader is not required to allege facts that are "peculiarly within the opposing party's knowledge, and allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded.

*Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) (internal quotations omitted). Regardless, Plaintiffs have alleged that P&F and Cheung were provided, by Plaintiffs' counsel, a copy of the Consent Order which detailed the falsehoods in the TSI affidavits, and TSI signed a stipulation to the issuance of the Consent Order. Dkt. No. 61, at pp. 11-12 (Sam Leonard sent P&F and Cheung a copy of the TSI Consent Order, which details the falsity of the affidavits), 14 (the Consent Order was served on P&F and Cheung), 23, Ex. B (TSI's CEO signed a Stipulation and Consent to the Issuance of a Consent Order). Plaintiffs have also alleged that P&F's and Cheung's performance in collecting on NCSLT accounts was monitored by TSI and that the number of accounts they were assigned could be impacted by their ability to collect on accounts. Dkt. No. 61, at p. 29. Plaintiffs also allege, in numerous places, that Defendants used the affidavits with the false representations because they did not in fact have the documentation proving assignment, the documentation was lost, and they knew the

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 43
(No. 2:18-cv-01132 TSZ)

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

documentation was lost. *See e.g.* Dkt. No. 61, at pp. 10, 14, 19. Their motive was profit and therefore related to the entrepreneurial aspect of their collection business.

Finally, to the extent that P&F's and Cheung's arguments seek to require Plaintiffs to meet a heightened pleading standard to rebut Defendants affirmative defenses, that is not allowed. "The burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Schaffer*, 546 U.S. at 57, 126 S.Ct. 528 (citing *Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 44–45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948)). In *Tourgeman*, this court reviewed provisions of the FDCPA in affirming a district court's dismissal of the plaintiff's consumer class action. *Tourgeman*, 900 F.3d at 1107. The court stated that "certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Id*. at 1109 (quoting *Schaffer ex rel. Schaffer*, 546 U.S. at 57, 126 S.Ct. 528). The Plaintiffs do more here than offer only conclusory allegations and "formulaic recitation of the elements of a ….claim" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (noting that no plausible claim is made if the complaint "tenders naked assertions devoid of further factual enhancement"). Their pleading in the SAC meets the standard required to permit them to proceed with their claims.

### I. Plaintiff Hoffman's Claims Are Not Barred By Res Judicata and Are Not an Impermissible Collateral Attached on the Judgments Against Her.

The Defendants argue that res judicata and the *Rooker-Feldman/*Full Faith and Credit Doctrines prohibit Ms. Hoffman from obtaining the relief she seeks. The Defendants are incorrect.

Res judicata and the *Rooker-Feldman/* Full Faith and Credit doctrines do not apply to bar Ms. Hoffman's claims, even though a final judgment was entered against her in state court,

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 44
(No. 2:18-cv-01132 TSZ)

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

because Ms. Hoffman asserted her claims here only *after* being garnished and learning about the TSI consent order and the CFPB Proposed Consent Judgment, both of which occurred after the default judgment was entered. *See* Dkt. No. 61, at ¶ 60. Since the claims in this lawsuit are different than the claims that *could* have been brought in the prior state court action, and because Ms. Hoffman only learned of her claims against the Defendants after the judgment was entered against her, they are not barred. *Weinstein v. Mandarich Law Grp., LLP,* No. C17-1897RSM, 2018 WL 6199249, at *3 (W.D. Wash. Nov. 28, 2018), *aff'd,* 798 Fed. Appx. 88 (9th Cir. 2019).

In addition to attacking Ms. Hoffman's claims based on the *Rooker-Feldman*/Full Faith and Credit Doctrines, TSI urges the Court to dismiss her claims pursuant to collateral estoppel, arguing that the issues before the court regarding Ms. Hoffman's default judgment were already litigated in the prior action. Dkt No. 103, at 29-30. Under Washington law, the party asserting collateral estoppel must show: (1) the issue decided in the prior action is identical to the issue in the present action; (2) a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior action; and (4) application of the doctrine would not work an injustice. *State v. Vasquez*, 148 Wn.2d 303, 308, 59 P.3d 648 (2002). The injustice element of collateral estoppel is generally concerned with procedural unfairness. *Christensen v. Grant Cty. Hosp. Dist.* No. 1, 152 Wn.2d 299, 309. 96 P.3d 957 (2004).

TSI argues that the affidavit submitted in the state court action against Ms. Hoffman was used to support the default judgment and any challenges to it in this lawsuit are nothing more than a defense to the NCSLT's claim in that case and that should have been litigated in the state court action. Dkt No. 103, at 30. However, the issue decided in the prior state court action is not identical to the issue in this case. *State v. Vasquez*, 148 Wn.2d at 308. As discussed in more

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 45
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

detail below regarding the *Rooker-Feldman* doctrine, Ms. Hoffman is not attacking any errors the state court made in entering the default judgment, but merely the manner by which the Plaintiffs used collection practices to obtain those judgments. *Bianchi v. Rylaarsdam,* 334 F.3d 895, 898 (9th Cir.2003).

The *Rooker-Feldman*/Full Faith and Credit Doctrines ("*Rooker-Feldman*") do not apply. Under *Rooker-Feldman*, a federal district court is prohibited from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment. *Bianchi,* 334 F.3d at 898. In this case, Hoffman's claims are not barred, because she is merely challenging the collection practices of the Defendants and is not seeking to invalidate the judgment based on errors by the state court. Although Ms. Hoffman, on behalf of herself and a class of putative plaintiffs, is seeking an injunction to enjoin the Defendants' unlawful collection practices, including an order requiring the NCSLT Defendant to obtain an order vacating the judgment against her, she is not attacking any errors the state court made in granting the default judgment.

*Rooker-Feldman* is a narrow doctrine that is generally "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198 (2006) (citing *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 292, 125 S.Ct. 1517 (2005)). However, here, Ms Hoffman is not a "state-court loser" complaining of injuries caused by an allegedly erroneous state court judgment. Rather, she is "assert[ing]….[that] an allegedly illegal act or omission by an adverse party," caused her injury in the form of a default judgment and garnishments. *Rooker–Feldman* does not bar the court from jurisdiction on this basis. *See e.g., Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir.2003) (an affirmative independent legal wrong asserted against a party

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 46
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

involved in the state court action in a subsequent federal action is not barred under *Rooker-Feldman*); *Collins v. Erin Capital Mgmt.*, 991 F.Supp.2d 1195 (11th Cir. 2013) (allegation premised on defendants' conduct and practices in collecting debt were not brought to challenge the validation or legitimacy of the debt itself, thus precluding application of *Rooker-Feldman*).

It has long been the law that a plaintiff in federal court can seek to set aside a state court judgment obtained through extrinsic fraud. *MacKay v. Pfeil,* 827 F.2d 540, 543–44 (9th Cir. 1987) (quoting *Barrow v. Hunton,* 99 U.S. (9 Otto) 80, 25 L.Ed. 407 (1878) ("On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and … the case might be within the cognizance of the Federal court."). This lawsuit is not about whether Ms. Hoffman owes the state court judgment but rather about the manner by which the Defendants obtained it.

In situations like the one here, when a plaintiff alleges extrinsic fraud on a state court, she is "not alleging a legal error by the state court" but fraudulent conduct by the defendants. *Kougasian,* 359 F.3d 1136, 1141 (9th Cir. 2004). "*Rooker-Feldman* thus applies only when the federal plaintiff both asserts as her injury, legal error or errors by the state court *and* seeks relief [from the state court judgment] as her remedy." *Kougasian,* 359 F.3d at 1140 (emphasis in original). If the plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). When claims of extrinsic fraud have already been litigated in state court, such as through a failed motion to set aside a default judgment, *Rooker-Feldman* bars these claims in federal court. *Id.* Ms. Hoffman's claims sounding under the FDCPA and state statutes like the CPA do not collaterally attack the propriety of the state court judgment; rather,

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 47
(No. 2:18-cv-01132 TSZ)

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

they go to the fraudulent actions defendants took in obtaining the judgment. *Rubio v. LVNV Funding, LLC,* No. C 14-05395 JSW, 2015 WL 13650046, at *3 (N.D. Cal. July 21, 2015) (quoting *Sykes v. Mel Harris and Associates, LLC*, 780 F.3d 70, 95 (2nd Cir. 2015). Lastly, TSI, P&F and Cheung claim have no standing to attack Ms. Hoffman's claims based on these doctrines since they were not a party to the judgment. Dkt No. 103, at 29-30, and Dkt No. 104, at 11.

If this court agrees that it cannot grant Ms. Hoffman's request for an order requiring the NCSLT defendant with the judgment against her to vacate the judgment, nevertheless, Ms. Hoffman can still recover statutory and actual damages under the CPA for Defendants' debt collection practices without obtaining any relief from the judgment entered against her in state court. In *Druther v. Hamilton*, No. C09-5503 FDB, 2009 WL 4667376, at *4 (W.D. Wash. 2009), Judge Burgess explained the distinction between an action like this case from an underlying debt collection action: "Because an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, a claim under the FDCPA is an 'independent claim' from a state court action to collect a debt and federal courts have jurisdiction over the case." *Druther*, 2009 WL 4667376, at *4 (internal cites omitted). Likewise, in *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006), this Court held that a plaintiff's claims for recovery under the FDCPA and CPA were not precluded on the basis of collateral estoppel:

> The ultimate issue of fact in the present matter is not the judgment itself, but rather, the debt collection practices that led to that judgment…. Thus, no identity of issues exists…. Furthermore, Defendants have not ushered any facts supporting the contention that the garnishment procedures and unlawful collection arguments made under the FDCPA, WCAA and WCPA were finally adjudicated by the state court.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

*Sprinkle*, 472 F. Supp. 2d at 1242. There is no reason this action should be treated any differently; the Court should agree that Ms. Hoffman's claims under the CPA are not barred by res judicata.[6]

### J. None of Plaintiffs' Claims Against the NCSLTs Should Be Dismissed

#### 1. The NCSLTs are Liable for TSI's, P&F's, and Cheung's Actions Because NCSLT is Their Principal.

The NCSLTs' contention that the Plaintiffs have alleged no facts supporting the conclusion that the NCSLTs are liable to them is incorrect. The Plaintiffs alleged in their SAC that the NCSLTs were the principals of TSI, P&F, and Cheung. *See* Dkt. No. 61, at ¶¶ 12, 20, 23, 29, 33, 38 & 119.[7] The acts of an authorized agent are the acts of his principal. *Smith v. Gray*, 52 Wash. at 256-57. Thus, the NCSLTs are liable for the actions of TSI, P&F, and Cheung.

#### 2. All the Defendant NCSLTs are Liable to the Plaintiffs Under the Juridical Link Doctrine.

The NCSLTs argue that Plaintiffs' claims against the NCSLTs that are not trying to collect against Plaintiffs must be dismissed, because those entities have not caused Plaintiffs' injuries. Dkt No. 104, at 7-8. Their challenge ignores the "juridical link" doctrine. Under the juridical link doctrine, a plaintiff with standing to pursue class claims against one entity, may in limited circumstances, also pursue claims against related entities that were not the direct cause of

---

[6] *Pederson v. Allied Credit Companies*, 112 Wn. App. 1046, 2002 WL 1732572 (Ct. App. July 26, 2002), cited by the NCSLTs to support their argument that a Plaintiff is barred from bringing a CPA claim after a default judgment, Dkt No. 104, at 11, is an unpublished Washington case that is inappropriate for citation, contradicts several cases permitting plaintiffs to sue debt collectors for violations of collection requirements in separate actions even where a debt collection lawsuit has been commenced against the consumer, and should be ignored by this court. GR 14.1.

[7] *See also In re Butler,* 550 B.R. 860, 867 (W.D. Wash. 2015 (quoting *Bain v. Metropolitan Mortg. Group, Inc.*, 175 Wn.2d 83, 1010, 106 (2012)) (an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control). There can be no dispute that TSI, P&F, and Cheung were all agents of the NCSLTs.

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

the named plaintiffs injuries. *LaMar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir. 1973).

The juridical link doctrine is very limited and requires a showing by a representative plaintiff that his/her injuries resulted from a conspiracy or concerted scheme. *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). The juridical link exception "is limited to cases where the defendants' conduct is standardized by a common link to an *agreement, contract or enforced system* which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class." *See Leer v. Wash. Educ. Ass'n*, 172 F.R.D. 439, 448 (W.D. Wash. 1997) (quoting and emphasizing the test put forth in *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 75 (S.D.N.Y. 1986)).

Although the application of the juridical link doctrine is rare, the circumstances of this case warrant it. Plaintiffs' claims against the Defendants arise out of their common enforcement system, which relies upon the use of false and misleading affidavits to obtain judgments and collect upon NCSLT accounts. Notably, the CFPB's findings were not limited to any specific NCSLT, and the CFPB's proposed Consent Judgment against the NCSLTs addresses its allegations to all of the Trusts jointly. Dkt. No. 61, Ex. C. Similarly, the Consent Order against TSI does not separate out the allegations by Trusts. *Id.*, Ex. A. Including all fifteen NCSLTs in this litigation is the most judicially economical way to address the alleged wrong, which is occurring in the collection on all NCSLTs accounts.

As Plaintiffs have alleged, the Defendants, acting in concert, have filed more than 2000 debt collection lawsuits without proper documentation, using false affidavits to prove ownership of the loans. Dkt. No. 61, at ¶ 122. Defendants' notaries have notarized over 25,000 affidavits on NCSLT accounts through the country even though, in many instances the notaries did not

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 50
(No. 2:18-cv-01132 TSZ)

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

witness the affiants signature. Dkt. No. 61, at ¶ 123. Defendants' scheme is uniform across the NCSLTs and does not vary depending on the NCSLT involved.

In many instances in the Ninth Circuit where courts did not find a juridical link sufficient to meet the requirement of standing, plaintiffs there only sued "Class–Only Trusts," and failed to sufficiently plead any conspiracy among them. *See e.g., Easter,* 381 F.3d at 961-62 (court found that Class Only Trusts did not have juridical link where they were competitors for the purchase of secured loans in the same market place and thus did not act in concert); *Blyden v. Navient Corp.*, No. EDCV1402456JGBKKX, 2015 WL 4508069, at *10 (C.D. Cal. July 23, 201 5)(court found a lack of Article III jurisdiction because Class–Only Trusts do not meet the standards needed to find a juridical link). That is not the case here. As stated by the Eleventh Circuit in *Moore v. Comfed Sav. Bank*, the doctrine applies when there was a contractual obligation among the defendants … requiring common action by the defendants." 908 F.2d 834, 838 (11th Cir. 1990); *see also*, *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682 (D.D.C. 1977), *Doss v. Long,* 93 F.R.D. 112 (N.D. Ga. 1981), *In re Alexander Grant & Co.,* 110 F.R.D. 528 (S.D. Fla. 1986), and *In re Computer Memories Securities Litigation,* 111 F.R.D. 675 (N.D. Cal. 1986). That is exactly the situation here where all fifteen of the NCSLT Trusts have no employees and internal management is governed by the common contractual Trust Related Agreements. *CFPB v. Nat'l Collegiate Master Student Trust*, 2018 WL 5095666, at *1. Thus, this is the rare circumstance where the allegation of a common scheme and means of enforcement warrants application of the juridical link doctrine.

### 3. The Plaintiffs Have Adequately Alleged That They Suffered Injuries to Their Business and/or Property.

The Plaintiffs have demonstrated above how they have met the "injury" requirement to allege a CPA claim. *See supra* at VI.E.4. As discussed above, fees paid to an attorney for

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 51
(No. 2:18-cv-01132 TSZ)

787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

"investigation" are a cognizable injury. *Peoples,* 194 Wn.2d at 782. Despite the allegations in Plaintiffs' SAC, the NCSLTs contend that all the Plaintiffs have failed to allege an injury, arbitrarily limiting the conduct supporting the Plaintiffs' claims to the filing of false affidavits. Dkt. No. 104, at 8. But the Plaintiffs' claims are not so limited. Plaintiffs have alleged the Defendants devised a scheme to obtain default judgments on the basis of TSI's feigned existence of admissible evidence by falsely submitting materially false and misleading affidavits to state courts. *See* Dkt. No. 61, at ¶ 124. The NCSLTs also acted in concert with TSI, P&F, and Cheung, filing more than 2,000 debt collection lawsuits within the four years prior to filing this lawsuit on behalf of the NCSLTs, without the documentation necessary to prove NCSLTs' ownership of the loans. *See* Dkt. No. 61, at ¶ 122.

Resulting from all of the Defendants' conduct, the Plaintiffs have alleged that they suffered sufficient injuries to prove their CPA claims against all the Defendants. Based on the allegations in the Plaintiffs' SAC, and all reasonable inferences to be drawn from them, the Plaintiffs have alleged sufficient injuries to defeat the Defendants' attempt to dismiss their claims.

### K. The Kims' CPA Claims Against the NCSLTs Are Not Barred by the Statute of Limitations.

#### 1. The statute of limitations on the Kims' claims against the NCSLTs was tolled during the pendency of Plaintiffs' appeal of the District Court's dismissal of their suit.

The NCSLTs argue that the Kims' claims are barred by the statute of limitations, because the Kims asserted claims against the NCSLTs in the SAC more than four years after the events giving rise to their claims. *See* Dkt. No. 104, at 11-13. The NCSLTs are incorrect.

The Plaintiffs alleged that Anthony Kim learned of the judgments obtained against him for the NCSLTs in June 2015, when P&F initiated a garnishment to collect on the judgment

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 52
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

against him. *See* Dkt. No. 61, at ¶ 94. It was only then that the Kims learned of the numerous collection lawsuits P&F had filed against Anthony, Daria, and Il Kim. *Id.,* at ¶ 95.

The Kims timely asserted CPA claims against TSI, P & F, and Cheung when they filed their original Complaint on June 20, 2018. These claims were restated in the FAC. Dkt. No. 6, at ¶¶ 72-87, 168-183. After the Plaintiffs filed the FAC, TSI, P & F, and Cheung moved to dismiss the action, and on November 2, 2018, the Court granted the motion to dismiss. Dkt. No. 29. The Plaintiffs filed a Motion for Reconsideration of the dismissal order, which was denied on January 4, 2019. Dkt. No.'s 33, 44. Also on January 4, 2019, the Court entered Judgment dismissing the Plaintiffs' action with prejudice. Dkt. No. 46. Plaintiffs appealed the dismissal order and Judgment on January 25, 2019. Dkt. No. 47.

In its March 19, 2020 Memorandum Decision, the Ninth Circuit Court of Appeals reinstated Plaintiffs' per se and stand-alone CPA claims. Appeal Dkt. No. 62-1. After several unsuccessful post-decision motions filed by TSI, P&F, and Cheung, the Ninth Circuit Court of Appeals issued its Mandate on May 19, 2020. Dkt. No. 54. The SAC was filed, with the new claims asserted against the NCSLTs, on July 7, 2020. Dkt. No. 61. Thus, Plaintiffs had no pending claims in the trial court against TSI, P&F, and Cheung, and were barred from asserting claims against those defendants based on the allegations in the FAC from January 4, 2019, when the District Court denied Plaintiffs' Motion for Reconsideration, to May 19, 2020, when the Mandate issued, a period of one year, four months, and fifteen days.

The Plaintiffs' claims against the NCSLTs are premised on the NCSLTs' liability as principal for TSI's, P & F's, and Cheung's acts as their agents. *See* Dkt. No. 61 at ¶¶ 20, 24, & 119. *Smith* 52 Wash. at 256-57 (acts of an authorized agent are the acts of his principal). Because the District Court dismissed with prejudice the Plaintiffs' claims against TSI, P&F, and Cheung

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 53
(No. 2:18-cv-01132 TSZ)

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

that support their claims against the NCSLTs, the Plaintiffs were also prohibited from suing the NCSLTs based on TSI's, P&F's, and Cheung's conduct, for that one year, four month, and fifteen-day period. Accordingly, the four-year statute of limitations on the Plaintiffs' claims against the NCSLTs was tolled during that time. *Elliott v.* Peterson, 92 Wn.2d 586, 589-90, 599 P.2d 1282 (1979). Approximately five years and one month passed between the time the Kims discovered their claims to when they first asserted claims against the NCSLTs, but if one subtracts the period the claims were tolled, it is clear that the Kims asserted their claims against the NCSLTs about two and one-half months before the statute of limitations ran on their CPA claims. The Kims' claims against the NCSLTs were therefore timely asserted.

In *Elliott,* the plaintiff filed suit to recover for the wrongful death of his wife. He moved to dismiss his suit without prejudice, but the trial court would not dismiss it without prejudice and instead granted the defendant's motion to dismiss with prejudice. The plaintiff appealed, and Washington's Supreme Court ruled that the trial court had committed error and should have dismissed the case without prejudice. *Id.* at 643. The plaintiff refiled his lawsuit in the trial court, but by this time more than three years had passed since the alleged negligent act. The defendant promptly moved for summary judgment, arguing that dismissal was warranted because the statute of limitations had passed. The trial court denied the motion, and the defendant appealed.

The Supreme Court ruled that the statute of limitations on the plaintiff's wrongful death claim was tolled while the orders denying the plaintiff's motion to dismiss without prejudice and granting defendant's motion to dismiss with prejudice were on appeal. *Elliott,* 92 Wn.2d at 588-89. The court stated,

> The right to a voluntary nonsuit is fixed at the time the motion is made. In order to accord to the plaintiff the full benefit of that right, it must be held that his right to file a new suit based on the same claim is also fixed as of that moment. An important aspect of that right is the period of time remaining before the expiration of the statute of limitations. Accordingly,

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

when the right to a nonsuit is erroneously denied, and it is so held on appeal, a plaintiff is entitled to an equal period of time, after the remittitur, within which to file a new action. Otherwise, the right is but a delusion in all cases where the statute of limitations expires pending appeal.

This court, in *Elliott v. Kundahl,* [89 Wn.2d 639, 643, 574 P.2d 732 (1978)], reversed the trial court's order denying the plaintiff's motion for voluntary nonsuit. The effect of this was to grant that motion[.]. . . These procedures did not disturb the right of the plaintiff to bring a new action within the period of time remaining before the expiration of the statute of limitations, when the original motion was made.

The defendants argue that it is contrary to the intent of the legislature, as expressed in the statutes which govern the limitation of actions, to allow the plaintiff a period of time after the appellate decision in which to file a new action. It is true that those statutes contain no express exception for a situation of this kind. . . . No provision is made for the case where a judgment for the defendant is reversed on appeal. . . .

While the legislature did not take cognizance of the peculiar problem arising where a plaintiff is erroneously denied the right to a voluntary nonsuit, judgment is entered for the defendant, and the statute of limitations runs pending the plaintiff's appeal, it is evident that it intended that a plaintiff should not be denied the fruits of his appeal because of the passing of the period of limitations.

*Id.* at 589-90.

While the precise circumstances here are not the same as existed in *Elliott,* the effect of the decision in *Elliott* is the same: because the Plaintiffs were prevented from asserting any new claims against all of the defendants based on the facts recited in the FAC and because the FAC had been dismissed in its entirety with prejudice, the Plaintiffs were unable to file an action against the NCSLTs within the four-year statute of limitations for CPA actions. Therefore, the Court should agree that the statute of limitations on the Kims' CPA claims was tolled from the date the District Court entered Judgment dismissing their claims until the date the Ninth Circuit Court of Appeals issued its Mandate. With the consideration of this tolling period, it is clear that the Kims timely filed their CPA claims against the NCSLTs.

The NCSLTs may argue that *Afoa v. China Airlines, Ltd.*, No. C11-0028-JCC, 2013 WL 12064879 (W.D. Wash. Apr. 12, 2013), holds that the statute of limitations is not tolled under the

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

circumstances of this case. In *Afoa*, a person not employed by the Port of Seattle was injured in a workplace incident at Sea-Tac Airport. The injured person filed a negligence lawsuit against the Port to recover for his injuries in state court, which dismissed the plaintiff's claims on summary judgment. The Washington Supreme Court ultimately held that the trial court's dismissal was error, and reinstated the plaintiff's action. After the trial court dismissed the plaintiff's lawsuit and before that decision was reversed, the plaintiff filed a second lawsuit arising from the same incident against several airlines and a vehicle manufacturer the plaintiff alleged had also been negligent and thus liable for his injuries. The second action was removed to federal court on the basis of diversity jurisdiction. After the Washington Supreme Court's reversal of the lawsuit against the Port, the plaintiff found himself litigating actions in state court (against the Port) and in federal court (against the airlines and the manufacturer).

The plaintiff filed a motion in federal court to amend his complaint to add the Port, and then to remand the entire action to state court, where he would move to consolidate the two actions. The plaintiff argued that under *Elliott*, the statute of limitations on his claims against the airlines and the manufacturer were tolled during the pendency of his appeal of the order granting the Port's motion to dismiss. Judge Coughenour disagreed and denied the motion, ruling that the statute of limitations had run on the claim against the Port, and that "there was no need for tolling [of the claims against the Port] because the reversal of the trial court's decision resulted in a remand of Plaintiff's case to the trial court for further proceedings against the Port." *Afoa*, 2013 WL 12064879, at *3.

The facts in *Afoa* were significantly different than the facts here. In *Afoa*, none of the airlines and the manufacturer were alleged to be a principal of the Port, so their liability was not dependent on a determination of liability against the Port. There was nothing that prevented the

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

plaintiff from timely commencing suit against the airlines or the manufacturer, unlike in this case, where the NCSLTs' liability is entirely premised on the liability of TSI, P&F, and Cheung under principal-agent law, and where the claims against TSI, P&F, and Cheung had been dismissed with prejudice.

The dismissal with prejudice in the District Court of the Plaintiffs' claims against TSI, P&F, and Cheung prevented the Kims from commencing another action against the NCSLTs based on those same facts and claims. Fed. R. Civ. P. 11. Since the viability of the Kims' claims against the NCSLTs is entirely dependent on the viability of their claims against TSI, P&F, and Cheung, the Kims should not be denied the fruits of their appeal because of the expiration of the statute of limitations on those claims. The Court should agree that the statute of limitations on the Kims' claims was tolled during their appeal and reject the NCSLTs' contention that their claims against it are barred.

**2. The Kims' CPA claims against the NCSLTs were timely commenced because they didn't discover their claims against the NCSLTs until the CFPB published the Consent Order, and because the NCSLTs, through their agents, concealed the conduct giving rise to the claims.**

**a. The Kims were unaware of the factual bases supporting their CPA claims until the CFPB released the Consent Order.**

Because the Kims were not aware of the NCSLTs' conduct, through their agents, giving rise to their CPA claims until the CFPB published the Consent Order, the Kims' CPA claims against the NCSLTs were timely commenced because they asserted those claims within four years of that event.

The statute of limitations for CPA claims is four years from the date the claim accrues. RCW 19.86.120. The discovery rule applies to claims asserted under the CPA. *Mayer v. Sto Indus. Inc.,* 123 Wn. App. 443, 463, 98 P.3d 116 (2004), *reversed in part on other grounds*, 156 Wn.2d 677, 132 P.3d 115 (2006). Thus, a plaintiff has four years from the date he or she knew,

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

or had reason to know, the factual basis for the cause of action to commence a CPA action to recover on that claim. *Shepherd v.* Holmes, 185 Wn. App. 730, 739, 345 P.3d 786 (2019) (for purposes of determining when the statute of limitations expires, CPA claim begins to accrue when the claimant, with the exercise of due diligence, should have discovered the basis for the cause of action); *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 79-80, 847 P.2d 44 (1993) ("Under the discovery rule, a cause of action does not accrue—and as a result the statute of limitations does not begin to run—until the plaintiff knows, or has reason to know, the factual basis for the cause of action."). When a plaintiff should have discovered the cause of action is a question of fact. *Samuelson v. Community College District No. 2*, 75 Wn. App. 340, 346, 877 P.2d 734 (1994).

Although not explicitly stated in Plaintiffs' SAC, the Kims did not know about TSI's conduct giving rise to their claims against the NCSLTs until shortly after September 18, 2017, when the Consent Order was filed in CFPB Administrative Proceeding No. 2017-CFPB-0018. *See* Dkt. No. 61, at 40.[8] Plaintiffs filed their SAC on July 7, 2020,[9] less than three years after their CPA claims accrued. Therefore, their claims against the NCSLTs were timely asserted.

### b. The statute of limitations on the Kims' CPA claims was equitably tolled due to TSI's, P&F's, and Cheung's fraudulent concealment of the conduct giving rise to the claims.

In Washington, a defendant's fraudulent concealment of a cause of action tolls the statute of limitations for that claim. *Giraud v. Quincy Farm & Chem.*, 102 Wn. App. 443, 452, 6 P.3d 104 (2000). Fraudulent concealment is recognized in Washington as a basis to toll the statute of limitations for a CPA claim. *Tucker v. BMW of North America, LLC*, No. C20-5050 BHS, 2020 WL 5701844, at *5 (W.D. Wash. Sept. 24, 2020). In order to establish fraudulent concealment,

---

[8] *See* Declaration of Christina Henry In Support of Response to Defendants' Motions To Dismiss SAC at ¶¶2-3.
[9] *See* Dkt. No. 61.

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 58
(No. 2:18-cv-01132 TSZ)

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

the plaintiff must show that he or she was ignorant of the cause of action and that the defendant engaged in some conduct of an affirmative nature designed to prevent the plaintiff from becoming aware of the claim. *Giraud*, 102 Wn. App. at 452.

Here, TSI, P&F, and Cheung, acting as agents and on behalf of the NCSLTs, concealed the conduct giving rise to the Kims' CPA claims until the CFPB Consent Order was filed. Therefore, the statute of limitations on the Kims' CPA claims did not begin to run until July 7, 2017. The Kims' CPA claims against the NCSLTs were asserted well within four years of that date, as required by RCW 19.86.120.

The facts in this case are similar to those in *Michelo v. National Collegiate Student Loan Trust 2007-2007-2*, 419 F. Supp.3d 668 (S.D.N.Y. 2019). In that case, several plaintiffs asserted claims under the FDCPA and New York's consumer protection statute against NCSLTs, TSI, and the NCSLTs' and TSI's attorneys, among others, arguing as the plaintiffs do in this case that the defendants orchestrated a scheme to fraudulently obtain default judgments for unprovable debts against them in state court, and that the scheme involved the filing of affidavits and other documents containing false or deceptive information. The defendants moved to dismiss the plaintiffs' claims, arguing in part that they were barred by the FDCPA's one-year statute of limitations and the three-year statute of limitations applicable to claims under New York's consumer protection statutes. *Id.* at 696-699.

The plaintiffs argued that the statutes of limitation on their FDCPA and consumer protection causes of action were equitably tolled due to the defendants' fraudulent concealment of their conduct, and that they (the plaintiffs) did not learn of that conduct, and could not have learned of that conduct, until the CFPB published the Consent Order. *Id.* at 684-85. The court

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 59
(No. 2:18-cv-01132 TSZ)

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

sided with the plaintiffs and denied the defendants' motion to dismiss the plaintiffs' claims,

agreeing that they had been timely asserted:

> The Court finds, however, that the … Plaintiffs have pled facts
> demonstrating that equitable tolling applies to their FDCPA claims to the
> extent those claims rely on misrepresentations in Defendants' default
> filings. The Court agrees that the allegedly false affidavit accompanying
> those filings – in which Transworld employee James H. Cummins testified
> that he was "competent and authorized to testify relating to this action
> through personal knowledge of the business records, including the
> electronic data, sent to [Transworld] that detail the education loan records"
> ... – is inherently self-concealing." As the *Toohey* court found on identical
> facts, "the allegedly false affidavit – purporting that the affiant personally
> reviewed underlying documentation establishing the existence and amount
> of Toohey's debt – is inherently self concealing," because "[i]ts alleged
> falsity is information of which only the Defendants could be aware."
> *Toohey*, 2016 WL 4473016, at *6…. And given the self-concealing nature
> of the false affidavits, the Court concludes that the … Plaintiffs plausibly
> allege that their lack of knowledge was "not attributable to a lack of
> diligence" on their part.
>
> … [T]he court concludes that to the extent the … Complaint was filed more
> than three years after these plaintiffs' [New York state consumer law] GBL
> Section 349 claims accrued, the claims are equitably tolled for the same
> reasons that their FDCPA claims are tolled.

*Id.,* at 697-98.

Just as the court concluded that the plaintiffs' state consumer protection law claims in

*Michelo* were timely asserted due to the defendants' self-concealment of their conduct, so too

should this Court conclude that the statute of limitations on the Kims' CPA claims was equitably

tolled, and that the Kims therefore timely asserted their CPA claims against the NCSLTs.

### 3. The Plaintiffs Have Pleaded Sufficient Facts to Authorize Their Requests for Injunctive Relief to Proceed.

The NCSLTs' argue that the Plaintiffs have no basis to obtain injunctive relief, and

therefore, that the Court should dismiss this cause of action. The NCSLTs are wrong.

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 60
(No. 2:18-cv-01132 TSZ)

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

The NCSLTs attempt to limit a plaintiff's right to obtain injunctive relief in a CPA action to situations where there is an "immediate controversy that is about to erupt." Dkt. No. 104, at 13. But this is not the law. Plaintiffs may seek to obtain an injunction against the Defendants' under the CPA, and the injunctive powers granted to courts under that Act are broad and not limited to the immediate concerns of plaintiffs. *Hockley v. Hargitt,* 82 Wn. 2d 337, 351, 510 P.2d 1123, 1133 (1973). Under the CPA, potential relief includes injunctive relief, actual and treble damages, and attorney fees and costs. RCW 19.86.090. Since the purpose of the CPA is "to protect the public and foster fair and honest competition" as described in RCW 19.86.920, courts have construed the act liberally and permit an injured individual to enjoin future violations of RCW Chapter 19.86, even if such violations would not directly affect the individual's own private rights. *Id*.

If the requirements of a CPA claim are met and the Plaintiffs in this lawsuit demonstrate that they have a threat of an irreparable injury, under the CPA they can seek and obtain an injunction that besides protecting their own interests, would also protect the public's interest. *Hockley,* 82 Wn. 2d. at 1133. Plaintiffs are also not prohibited from obtaining broader injunctive relief that would accrue to the benefit of the general public, even if future violations against the general public would not directly affect their private interests. *Id.* Additionally*,* individual consumers were meant to act as "'private attorneys general,' harnessing individual interests in order to promote the public good." *Id.* The only limitation on the ability to obtain injunctive relief under the CPA is that the Plaintiffs must show that they are in danger of suffering a future injury at the hands of any of the Defendants. *Harris v. Gen. Motors LLC*, No. C20-257 TSZ, 2020 WL 5231198, at *5 (W.D. Wash. Sept. 2, 2020).

**Henry & DeGraaff, P.S.**
787 Maynard Ave S.
Seattle, WA 98104
V (206) 330-0595 / F (206) 400-7609

Here, the NCSLT Trusts dismissed the state court collection lawsuits without prejudice for all the Plaintiffs, with the exception of Ms. Hoffman, leaving them subject to future harm. Even though the statue of limitations has likely run on the underlying debts, the debts are not extinguished. *Jordan by Prappas v. Bergsma*, 63 Wn. App. 825, 828 (1992). "[A] statute of limitation does not invalidate a claim, but rather 'deprives a plaintiff of the opportunity to invoke the power of the courts in support of an otherwise valid claim.' " *Nelson v. Specialized Loan Servicing, LLC,* No. 3:20-CV-05461-RBL, 2020 WL 5065292, at *3 (W.D. Wash. Aug. 27, 2020), *reconsideration denied,* No. C20-5461BHS, 2020 WL 6318690 (W.D. Wash. Oct. 28, 2020). Additionally, the Plaintiffs may still receive a Form 1099-C tax form for these alleged debts at any time; expiration of the statute of limitations is only a cancellation or extinguishment of indebtedness under the tax code when "a debtor's affirmative statute of limitations defense is upheld in a final judgment or decision of a court and the appeal period has expired." 26 CFR § 1.6050p-1(b)(2)(ii).

Thus, the Plaintiffs are all in danger of suffering future harm at the hands of the Defendants. Accordingly, the Court should no dismiss their prayer for injunctive relief.

**L.  The Court Should Grant Leave to Amend if it Dismisses Any of Plaintiffs' Claims.**

If the Court determines that the Plaintiffs' SAC did not sufficiently allege facts which plausibly assert the bases for the equitable tolling arguments the Kims assert in response to NCSLTs' Motion to Dismiss, they request leave to amend the SAC to include allegations concerning those facts. *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009) ("Dismissal [on a Rule 12(b)(6) motion] is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment."); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (where trial court dismisses plaintiff's complaint for failure

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

to state a claim, the plaintiff should be given leave to amend to state a claim if she can). In any event, the Court should deny the NCSLTs' request to dismiss the Kims' CPA claims for failing to timely assert the claims.

## V. CONCLUSION

For the foregoing reasons, the Court should deny TSI,'s, P&F's, and Cheung's second Rule 12(b)(6) motions to dismiss.

DATED: December 7, 2020.

*Attorneys for Plaintiffs:*

LEONARD LAW

 */s/ Sam Leonard*
Sam Leonard, WSBA #46498
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 486-1176
Facsimile: (206) 458-6028
E-mail: sam@seattledebtdefense.com

HENRY & DeGRAAF, P.S.

 */s/ Christina Henry*
Christina L. Henry, WSBA #31273
787 Maynard Ave. S,
Seattle, WA 98104
Telephone: (206) 330-0595
Facsimile: (206) 400-7609
E-mail: chenry@HDM-legal.com

BERRY & BECKETT, PLLP

 */s/ Guy Beckett*
Guy W. Beckett, WSBA #14939
1708 Bellevue Avenue
Seattle, WA 98122
Telephone: (206) 441-5444
Facsimile: (206) 838-6346
E-mail: gbeckett@beckettlaw.com

NORTHWEST CONSUMER LAW CENTER

 */s/ Amanda Martin*
Amanda N. Martin, WSBA #49581
936 North 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 805-0989
Facsimile: (206) 805-1716
E-mail: Amanda@NWCLC.org

PLAINTIFFS' CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS - 63
(No. 2:18-cv-01132 TSZ)

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S.
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609