UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTHER HOFFMAN, et al., | |
| Plaintiffs, | |
| v. | C18-1132 TSZ |
| TRANSWORLD SYSTEMS INCORPORATED, et al., | ORDER |
| Defendants. | |

THIS MATTER comes before the Court on three motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) ("Motions") filed by Defendants Patenaude & Felix ("P&F") and Matthew Cheung ("Cheung"), docket no. 100; Defendant Transworld Systems Inc. ("TSI"), docket no. 103; and Defendants National Collegiate Student Loan Trusts ("NCSLT"), docket no. 104. Having reviewed all papers filed in support of, and in opposition to, the Motions, the Court enters the following Order.[1]

---

[1] Defendants' request for judicial notice of documents in the public record, including the underlying debt-collection actions, is GRANTED to the extent such documents are referenced in the Second Amended Complaint and whose authority no party questions. *See* P&F and Cheung Motion (docket no. 100 at 2–6); Fed. R. Evid. 201(b).

ORDER - 1

**Background**

**1.     Factual Background**

Plaintiffs are Washington consumers to whom Defendants allegedly "made false and misleading representations and engaged in unfair and deceptive practices in the collection or attempted collection of alleged student loan debt, interest, and charges using fraudulent, deceptive, and misleading affidavits prepared by TSI employees." Second Amended Class Complaint ("SAC") (docket no. 61 at 2). Plaintiffs seek to represent a class of plaintiffs consisting of "[a]ll persons residing in Washington against whom Defendants sought to collect an alleged NCSLT loan debt, on or after four years prior to the filing of this action," and two subclasses thereof. SAC at ¶ 155.

The parties are familiar with the specific facts alleged in the SAC, which are, in all material aspects, the same as the facts alleged in the Amended Class Complaint ("FAC"), docket no. 1-4, and which are summarized in Judge Coughenour's order entered on November 2, 2018, docket no. 29. The Court therefore does not recount that factual background here. *See* Order (docket no. 29 at 1–6).

**2.     Procedural Background**

After the district court dismissed the FAC for failure to state a claim and for failure to prosecute, *see* docket nos. 29, 45, Plaintiffs appealed. The Ninth Circuit affirmed the dismissal of all claims except for (1) the per se claims under the Washington Consumer Protection Act ("CPA"), Chapter 19.86 RCW, based on certain violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; and (2) the stand-alone CPA claims. *See* Memorandum Disposition (docket no. 51). The Ninth

1  Circuit instructed the district court to grant Plaintiffs leave to amend their complaint "to

2  address whether P&F's and Cheung's involvement . . . went beyond legal representation

3  and included debt-collection activities" and "to address whether they have paid money to

4  the Defendants and thus incurred an injury as a result of the default judgment obtained

5  through the allegedly false affidavits." *Id.* at 6.  After remand, the case was reassigned to

6  this Court for further proceedings, docket no. 55.  Plaintiffs then filed the SAC, docket

7  no. 61, alleging additional facts to cure certain pleading deficiencies and asserting two

8  causes of action: (1) per se CPA claims, based on violations of 15 U.S.C. §§ 1692e(2)(a),

9  1692e(10), and 1692f; and (2) stand-alone CPA claims.  Defendants now move to dismiss

10  pursuant to Rule 12(b)(6).[2]

11  **Discussion**

12  **1.  Rule 12(b)(6) Standard**

13  To survive a motion to dismiss, "a complaint must contain sufficient factual

14  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

15  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial

16  plausibility when the plaintiff pleads factual content that allows the court to draw the

17  reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[2] Plaintiffs contend that the Court should deny Defendants' Rule 12(b)(6) Motions on procedural grounds. *See* Fed. R. Civ. P. 12(g), 12(h)(2).  Although Defendants technically should have answered the SAC and then filed Rule 12(c) motions, *see* Fed. R. Civ. P. 12(h)(2), the Court concludes that denying the Motions on this ground would "produce unnecessary and costly delays, contrary to the direction of Rule 1." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017).  The Court likewise denies Plaintiffs' request to strike portions of Defendant P&F and Cheung's Reply. *See* Surreply (docket no. 117).  The Court therefore turns to the merits of Defendants' Motions, docket nos. 100, 103, and 104.

**2.  Defendants' Preliminary Legal Challenges**

    **a.  Plaintiffs lack standing to assert CPA claims against nine NCSLT entities.**

Defendants NCSLT contend that because the SAC does not contain any allegations specific to nine of the NCSLT entities, those Defendants should be dismissed, including:  NCSLT 2003-1, NCSLT 2004-1, NCSLT 2005-1, NCSLT 2006-2, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and National Collegiate Master Student Loan Trust I.  NCSLT Motion (docket no. 104 at 7–8).  The Ninth Circuit has held that plaintiffs who have been injured by one defendant generally cannot "represent a class with actions against [other] defendants who have behaved similarly but ha[ve] not injured . . . plaintiff[s]."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 962–63 (9th Cir. 2004).

Plaintiffs respond that the SAC sufficiently alleges Defendants conspired or "act[ed] in concert," SAC at ¶ 122, and that Defendants are "juridically linked" to one another.  Response (docket no. 110-1 at 49–51).  Plaintiffs' allegations of concerted action among the NCSLT entities, however, are simply too conclusory to plausibly assert a claim against the nine NCSLT entities that did not purport to injure Plaintiffs.  *See Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013) (concluding that plaintiff's attempt to "sidestep" standing requirements by alleging conspiracy was nothing "more than conclusory and bare bones words and phrases without any factual content" and was thus "insufficient to establish standing").  Nor do Plaintiffs plausibly assert that the NCSLT entities are "juridically linked" or "related government entities."  *Easter*, 381

F.3d at 962 (citing *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973)); *see* Response (docket no. 110-1 at 51).  The Court therefore GRANTS in part Defendants NCSLT's Motion, docket no. 104, and DISMISSES without prejudice Plaintiffs' claims against the nine NCSLT entities identified above.

> **b.  Plaintiffs' CPA claims against Defendants P&F and Cheung are not barred by the judicial-action privilege or Washington public policy.**

On appeal to the Ninth Circuit, Defendants P&F and Cheung argued that under Washington law, "[a]ttorneys and law firms have absolute immunity from liability for acts arising out of representing their clients."  P&F and Cheung Answering Brief (Appeal No. 19-35058, docket no. 22 at 20–21) (citing *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.3d 931 (2004)).  They now make the same argument on remand.  P&F and Cheung Reply (docket no. 115 at 5–9).

Even assuming that this argument is not barred by the law of the case doctrine,[3] the Court concludes that, for the purposes of this Motion, the judicial-action privilege does not apply.  Plaintiffs have plausibly alleged that Defendants "P&F's and Cheung's involvement in the deceptive practices went beyond legal representation."  Memorandum Disposition (docket no. 51 at 6).  The SAC alleges that "Defendant P&F is a licensed Washington collection agency" whose "principal purpose . . . is the collection of debts."

---

[3] Although the Ninth Circuit did not expressly address whether Washington's "judicial-action privilege" applied, it rejected Defendants' invocation of the state's "litigation privilege" and instructed the district court to consider whether Plaintiffs' amended complaint plausibly alleged that "P&F's and Cheung's involvement in the alleged deceptive practices went beyond legal representation."  Memorandum Disposition (docket no. 51 at 2, 6).  These rulings suggest that the issue was decided "by necessary implication."  *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019).

ORDER - 5

SAC at ¶¶ 22, 28–29.  The SAC alleges that Defendant P&F sent "collection letters to Washington consumers who allegedly have loans included in the NCSLTs" and "commenced over 1,400 lawsuits in . . . Washington" on behalf of one or more NCSLT; and it further alleges that Defendant P&F "collects money from consumers and communicates with consumers prior to filing suit" and is "directly or indirectly engaged in soliciting claims for collection or collecting or attempting to collect claims owed or due."  *Id.* at ¶¶ 24–27.  Likewise, the SAC alleges that Defendant Cheung is "P&F's registered agent in Washington" and that he "collects and attempts to collect debts referred to him by TSI and the NCSLTs" and "regularly collects and attempts to collect, directly or indirectly, debts alleged to be due."  *Id.* at ¶¶ 21, 34–36.  The SAC further alleges that Defendants P&F and Cheung are either agents or employees of Defendants TSI and Defendants NCSLT and are otherwise "acting in concert with" those entities.  *Id.* at ¶¶ 38–41.

Because Plaintiffs allege that Defendants P&F and Cheung regularly "collect[ed] money from consumers" and engaged in other pre-litigation, debt-collection activity—as opposed to merely engaging in the practice of law—Defendants P&F and Cheung are not immune from liability based on this privilege, which they concede applies to "actions taken . . . in the course of judicial actions."  P&F and Cheung Motion (docket no. 100 at 9); *cf. Jeckle*, 120 Wn. App. at 386 (concluding the privilege applied because plaintiff's "complained of acts related to and were pertinent to the lawsuits").  For the same reason, the Court is unwilling to grant the Motion "on the theory that [the] cause[s] of action infringe[] on [Defendants P&F's and Cheung's] attorney-client privilege."  *See Seyfarth*

*v. Reese Law Grp., PLC*, No. C09-572BHS, 2010 WL 2698819, at *5 (W.D. Wash. July 7, 2010).

### c. Plaintiff Hoffman is not precluded from pursuing CPA claims based on the default judgment entered against her in state court.

Defendants also argue that either "collateral estoppel" or "res judicata" bars Plaintiff Hoffman's CPA claims because a prior default judgment was entered against her in state court. P&F and Cheung Motion (docket no. 100 at 11–13); TSI Motion (docket no. 103 at 29–30); NCSLT Motion (docket no. 104 at 10–11). Defendants further rely on the *Rooker-Feldman* doctrine to bar Plaintiff Hoffman's claims. P&F and Cheung Motion (docket no. 100 at 13–14).

Regardless of whether the Court characterizes Defendants' challenge as one of collateral estoppel (issue preclusion) or res judicata (claim preclusion), the Court concludes that neither doctrine applies. With respect to the former, the Washington Supreme Court has explained that issue preclusion, "which applies only to issues *actually* litigated," is generally not applicable where, as here, a *default* judgment was entered against the party now seeking to litigate certain issues. *Lenzi v. Redland Ins. Co.*, 140 Wn.2d 267, 280, 996 P.2d 603 (2000) (emphasis added); *see Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (concluding a state's preclusion rules apply to "judgments issued by courts of that state" ). The *Lenzi* court further explained that "claim preclusion[] is the operative principle" in the case of prior default judgments because, unlike issue preclusion, it "applies to what might, or should, have been litigated as well as to what was actually litigated." *Id*.

ORDER - 7

Although claim preclusion is the correct framework under which Defendants may seek to bar Plaintiff Hoffman's claims, Defendants have not shown that the doctrine applies to the facts of this case. A plaintiff is precluded from litigating claims that could have been raised in a prior action when there is a "concurrence of identity" between the prior judgment and the present action, including an identical "cause of action." *See Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983).[4] In determining whether the causes of action are identical, the court considers several factors, including whether the "interests established in the prior action would be . . . impaired by prosecution of the second action," "whether substantially the same evidence is presented in the two actions," whether the two actions "involve the infringement of the same right," and whether the two actions "arise out of the same transactional nucleus of facts." *Id.* (citation omitted). Claim preclusion, however, does not operate in the face of valid reasons for not previously asserting the claim; for example, when "the matter was an independent claim not required to be joined, or if the matter's omission from the prior proceeding actually benefitted, rather than vexed, the party now purporting to rely on res judicata." *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 331, 941 P.2d 1108 (1997).

The Court concludes that the causes of action at issue here are not the same as the one that was litigated in state court. Even if the "transactional nucleus of facts" in both the state court action and this action overlap, the actions do not involve the same

---

[4] Plaintiffs apparently do not dispute that, in both the prior judgment and present action, there is a "concurrence of identity" between the subject matter, persons or parties, and the quality of persons for or against whom the claim was made. Response (docket no. 110-1 at 44–45); *see Rains*, 100 Wn.2d at 663.

evidence or rights. The earlier state court action arose out of Plaintiff Hoffman's failure to pay student loan debt, requiring Defendants to present evidence that she owed a certain amount of debt to them. The present action, however, requires Plaintiff Hoffman to present evidence that Defendants submitted a "fraudulent, deceptive, and misleading affidavit[]" in that prior action and that they have a pattern and practice of filing such affidavits. SAC at 2; *see Thompson v. King County*, 163 Wn. App. 184, 197, 259 P.3d 1138 (2011) (declining to apply the doctrine where there was an insufficient showing of an "identity of claims" in part because the "same evidence would [not] be used to prove liability"). The Court also rejects Defendants' argument that the property rights they sought to enforce in the prior action are same statutory rights that Plaintiff Hoffman now seeks to enforce. *See* P&F and Cheung Motion (docket no. 100 at 12). Nor will Plaintiff Hoffman's assertion of CPA claims necessarily impair Defendants' interests in collecting the underlying debt.[5] Moreover, Defendants do not meaningfully address whether Plaintiff Hoffman had valid reasons for not asserting the CPA claims in the prior action—particularly whether she was required to join those claims or whether her omission vexed (as opposed to benefited) Defendants. *See Kelly-Hanson*, 87 Wn. App. at 331.[6]

---

[5] Although Plaintiff Hoffman seeks injunctive relief in the form of "an order requiring the NCSLT Defendant[s] to obtain an order vacating the judgment against her," she does not dispute that she "owes the state court judgment." Response (docket no. 110-1 at 46–47).

[6] Defendants cite an unpublished case, *Pederson v. Allied Credit Co.*, No. 26722-5-II, 2002 WL 1732572 (Wash. Ct. App. July 26, 2002), to support its argument that Plaintiff Hoffman should have brought her CPA claims in the underlying debt-collection action in state court. *See* NCSLT Motion (docket no. 104 at 11). *Pederson* is distinguishable because there, the CPA claim was based on the defendants' improper collection practices after the debt amount "was established." *Id.* at *3. By contrast here, Plaintiff Hoffman's CPA claim is based on Defendants' use of "fraudulent" affidavits *to establish* that the debt was owed to them at all. SAC at ¶¶ 49–57, 67. Furthermore, the *Pederson* court expressly acknowledged

ORDER - 9

Likewise, Defendants have failed to show that the *Rooker-Feldman* doctrine applies. Plaintiff Hoffman asserts that Defendants are liable for using a false affidavit in the prior action against her, SAC at ¶¶ 49–58, and for using "fraudulent, deceptive, and misleading affidavits" in other debt-collection actions. *Id.* at 2. "*Rooker-Feldman . . .* does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004). Defendants' public policy arguments to the contrary are unavailing. *See* P&F and Cheung Reply (docket no. 115 at 17–18).

### d. Plaintiffs Anthony and Il Kims' CPA claims are not time barred.

Defendants NCSLT argue that because they were not named as Defendants until Plaintiffs filed the SAC in July 2020, Plaintiffs Anthony and Il Kims' claims are time barred, as those Plaintiffs discovered the basis for their claims in 2015—meaning Washington's four-year limitations period, RCW 19.86.120, expired the year before the SAC was filed. NCSLT Motion (docket no. 104 at 12–13).

The Court is satisfied that Plaintiffs Anthony and Il Kims' allegations may support claims under Washington's "discovery rule." *See Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1118 (W.D. Wash. 2012) (acknowledging RCW 19.86.120's limitations period is subject to Washington's discovery rule).

---

that the doctrine is inapplicable where the plaintiff's claim was not required to be joined in the first action or where the plaintiff's omission worked to benefit the defendant. 2002 WL 1732572, at *3 (citing *Kelly-Hanson*, 87 Wn. App. at 330–31).

ORDER - 10

The SAC alleges that Defendants filed "fraudulent, deceptive, and misleading" affidavits to collect on debts owned by the NCSLT entities (SAC at 2), that the originally named Defendants are "NCSLT agents" (*id.* at ¶¶ 11–12), and that Plaintiffs Anthony and Il Kim relied on Defendants' misrepresentations (*id.* at ¶ 91).[7]

Based on Defendants' alleged fraudulent concealment, Plaintiffs have plausibly alleged that they did not discover (and could not have discovered through the exercise of due diligence) all material facts underlying their CPA claims until September 2017, when the Consumer Financial Protection Bureau's ("CFPB") investigation into Defendants' debt-collection practices became public. SAC at ¶¶ 128, 136; *see Giraud v. Quincy Farm and Chem.*, 102 Wn. App. 443, 449–50, 6 P.3d 104 (2000) ("The discovery rule operates to toll the date of accrual until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim."); *see also Matter of Estates of Hibbard*, 118 Wn.2d 737, 750–51, 826 P.2d 690 (1992) (explaining that the discovery rule applies when a plaintiff "relied on the defendant's reporting or in which there was active concealment by the defendant").[8] The SAC alleges sufficient facts to raise an issue as to whether Plaintiffs Anthony and Il Kims' claims were timely under Washington law.

---

[7] Defendants NCSLT do not dispute that RCW 19.86.120 is subject to the discovery rule, regardless of whether or not Washington law provides a more liberal standard than the one outlined in Rule 15(c). *See* NCSLT Motion (docket no. 104 at 12); NCSLT Reply (docket no. 114 at 8).

[8] These facts, as alleged by Plaintiffs, also raise an issue as to Washington's related, but distinct doctrine of "fraudulent concealment." *See Giraud*, 102 Wn. App. at 452–54.

**3.     Plaintiffs Have Plausibly Asserted CPA Claims.**

Defendants further argue that the SAC fails to plausibly allege facts in support of Plaintiffs' CPA claims.  To prevail on a CPA claim, Plaintiffs must establish the following elements: (1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, and (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85, 719 P.2d 531 (1986).  "When a violation of debt collection regulations occurs," including violations of the FDCPA or the Collection Agency Act (Washington's "counterpart to the FDCPA"), such a violation "constitutes a per se violation of the CPA . . . under state . . . law."  *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53–54, 204 P.3d 885 (2009) (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 (11th Cir. 1985) and *Evergreen Collectors v. Holt*, 60 Wn. App. 151, 155, 803 P.2d 10 (1991)).

     **a.     Per Se CPA Claims (First Cause of Action)**

Defendant TSI assumes, for the purposes of its Motion, that an FDCPA violation may serve as the basis of a per se CPA claim; but it argues that Plaintiffs have failed to plausibly assert an FDCPA claim based on allegations that Defendant TSI merely misrepresented "personal knowledge," "opinion," or "representations of law."  TSI Motion (docket no. 103 at 18–22).  Defendants P&F and Cheung likewise argue that Plaintiffs have not plausibly asserted claims under 15 U.S.C. §§ 1692e or 1692f, or plausibly alleged the first two elements of the *Hangman Ridge* test.  P&F and Cheung Motion (docket no. 100 at 14–20, 23).  They similarly argue that Plaintiffs have failed to

ORDER - 12

1 plead fraud against Defendant P&F with sufficient specificity. *Id.* at 6–8.

2     Defendants' arguments are largely barred by the law of the case doctrine. The
3 Ninth Circuit concluded that "[t]o the extent an FDCPA violation may serve as the basis
4 of a per se CPA claim . . . , then an FDCPA violation per se satisfies" the first three
5 elements of the *Hangman Ridge* test, including "the 'trade or commerce' element, along
6 with the 'unfair or deceptive' and 'public interest' elements, of the CPA." Memorandum
7 Disposition (docket no. 51 at 5 n.3). It further concluded that "[t]aking the well-plead
8 factual allegations of the complaint as true, . . . the Defendants' attempts to collect debts
9 with false affidavits and the necessary documentation to prove their claims plausibly
10 alleged the use of 'unfair or unconscionable means to collect or attempt to collect any
11 debt'" under 15 U.S.C. § 1692f. *Id.* at 4. Indeed, the Ninth Circuit expressly rejected
12 Defendants' argument that Plaintiffs "failed to make plausible allegations that the
13 Defendants used false affidavits and did not possess assignment documentation to
14 support their collection actions," explaining the "consent order that TSI entered into with
15 the [CFPB] makes it plausible that the affidavits . . . were false and the supporting
16 documentation was lost or missing." *Id.* at 2. That is, the Ninth Circuit has already
17 determined that Plaintiffs' allegations are sufficient to support their per se CPA claims—
18 which have been properly asserted in the SAC as based on violations of 15 U.S.C.
19 §§ 1692e(2)(A), 1692e(10), and 1692f—if not explicitly, then by necessary implication.
20 *See Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019).

21     To the extent Defendants P&F and Cheung argue that the SAC is insufficient
22 because it does not plausibly allege their "involvement in the alleged deceptive practices

23

ORDER - 13

went beyond legal representation and included debt-collection activities," the Court rejects that argument for the reasons discussed in the Ninth Circuit's decision and in Section 2(b) of this Order.  *See* Memorandum Disposition at 5 n.3 (concluding that "regardless of whether P&F and Cheung engaged in entrepreneurial activities, they can be held liable for FDCPA violations because . . . the FDCPA applies to 'attorneys who "regularly" engage in consumer-debt-collection activity, even when that activity consists of litigation.'" (quoting *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)).  The motions to dismiss Plaintiffs' first cause of action for failure to state a claim are therefore DENIED.

        **b.**        **Standalone CPA Claims (Second Cause of Action)**

Defendants also challenge the sufficiency of the pleadings with respect to Plaintiffs' standalone CPA claims.  P&F and Cheung Motion (docket no. 100 at 14–23); TSI Motion (docket no. 103 at 25–29).  Again, this Court is precluded from reconsidering whether the SAC alleges facts to plausibly support the first three elements of the *Hangman Ridge* test; but it may consider Defendants' arguments with respect to the last two elements, whether Plaintiffs plausibly allege that they suffered cognizable injuries and whether their injuries were proximately caused by Defendants' deceptive practices.  *See* 105 Wn.2d at 784–85.

Defendants argue that Plaintiffs failed to plausibly allege injury to their businesses or property.  P&F and Cheung Motion (docket no. 100 at 20–22); TSI Motion (docket no. 103 at 28–29); *see* RCW 19.86.090 (providing that "[a]ny person who is injured in his or her business or property by a violation of [the CPA] . . . may bring a civil action").  The Ninth Circuit concluded that "[b]esides their statement at oral argument, the

ORDER - 14

1 Plaintiffs have not alleged an injury to business or property resulting from the default judgments, as required to state a stand-alone CPA claim," and that "obtaining legal counsel to defend themselves against the collections actions filed against them in state court is not an actionable injury." Memorandum Disposition (docket no. 51 at 6–7) (citing *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 563–64, 825 P.2d 714 (1992)).

In the SAC, Plaintiff Hoffman alleges that she "had to spend time working with US Bank ensuring [her] funds were not garnished" and that she "paid her attorney $1,500 to investigate Defendants' collection attempts." SAC at ¶¶ 62–63. Plaintiff Douglass likewise alleges that she "spent time and money investigating the default judgment and underlying debt Defendants claim she owes," including "tak[ing] time off work." *Id.* at ¶ 85. Plaintiffs Kims allege that they paid Defendants $50 per month over three months in reliance on Defendants' misrepresentations "that NCSLTs were in fact the owners of these loans" (*id.* at ¶¶ 91–93), that their funds "were garnished" (*id.* at ¶ 113), and that they "paid their attorney $11,540.00 to investigate and defend Defendants' collection attempts" (*id.* at ¶ 116). Reading the SAC in the light most favorable to Plaintiffs, those allegations are sufficient to support actionable injuries under the CPA. As the state's highest court has explained, "consulting an attorney to institute a CPA claim . . . is insufficient to show injury to business or property," but "[c]onsulting an attorney to dispel uncertainty regarding the nature of an alleged debt" is sufficient and that "[i]nvestigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury." *Panag*, 166 Wn.2d at 62–63.

ORDER - 15

Likewise, Plaintiffs' allegations are sufficient to show that Defendants' "deceptive act[s] or practice[s] proximately caused injury to [Plaintiffs'] 'business or property.'" *Panag*, 166 Wn.2d at 63–64.  Even if the recipient of a deceptive demand payment was never induced to make that payment, he or she may have been injured in other ways, including by incurring "'expenses for experts, interpreters, transcribers, attorneys, and its own employees' during [an] investigation." *Id.* at 64 (quoting *State Farm Fire & Cas. Co. v. Huynh*, 92 Wn. App. 454, 468, 962 P.2d 854 (1998)).  The motions to dismiss Plaintiffs' second cause of action for failure to state a claim are therefore DENIED.

**4.     Plaintiffs Have Plausibly Asserted They Are Entitled to Injunctive Relief.**

Defendants NCSLT argue that because Plaintiffs cannot satisfy Article III's standing requirements, their request for injunctive relief should be dismissed.  NCSLT Reply (docket no. 114 at 5).  Under the CPA, a plaintiff "may bring a civil action . . . to enjoin further violations, to recover the actual damages . . . , or both, together with the costs of the suit, including a reasonable attorney's fee."  RCW 19.86.090.  "By the very language of the statute, [Plaintiffs] may obtain injunctive relief in addition to recovering actual damages."  *Hockley v. Hargitt*, 82 Wn.2d 337, 350, 510 P.2d 1123 (1973).  Nevertheless, "'plaintiff[s] whose cause of action [under state law] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if [they] cannot demonstrate the requisite injury' to establish Article III standing."  *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004) (citation omitted).

1 Plaintiffs have plausibly alleged both that they are entitled to injunctive relief
2 under the CPA and that they can satisfy Article III's standing requirements by
3 "demonstrat[ing] a *real or immediate threat* of an irreparable injury." *Hangarter*, 373
4 F.3d at 1022 (emphasis in original).  Plaintiffs bring this class action in part to enjoin
5 Defendants' unlawful collection practices "that affect the public interest and which cause
6 injury to Washington consumers' personal property or business."  SAC at ¶ 157(g); *see*
7 *Hockley*, 82 Wn.2d at 350.  Plaintiffs further allege facts that allow the Court to draw
8 reasonable inferences that they will individually suffer real or immediate threats of
9 irreparable injury, including writs of garnishment against Plaintiff Hoffman and the
10 refiling of new debt-collection actions against the other Plaintiffs.  SAC at ¶¶ 65–67, 82–
11 84, 114–116.[9]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendants P&F and Cheung's motion to dismiss, docket no. 100, is DENIED;

(2) Defendant TSI's motion to dismiss, docket no. 103, is DENIED;

(3) Defendants NCSLT's motion to dismiss, docket no. 104, is GRANTED in part and DENIED in part.  Defendants NCSLT 2003-1, NCSLT 2004-1, NCSLT 2005-1,

---

[9] Defendants NCSLT's reliance on this Court's decision in *Harris v. General Motors LLC*, No. C20-275-TSZ, 2020 WL 5231198 (W.D. Wash. Sep. 2, 2020) is unavailing because, unlike the plaintiff in that case, Plaintiffs here seek injunctive relief to protect the public interest and to protect against the prospect of individual future injuries.  *See id.* at *5.

ORDER - 17

NCSLT 2006-2, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and National Collegiate Master Student Loan Trust I are hereby DISMISSED without prejudice. Any motion for leave to amend the pleadings shall be filed within thirty (30) days of the date of this Order; and

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 4th day of January, 2021.

*/s/ Thomas S. Zilly*
THOMAS S. ZILLY
United States District Judge

ORDER - 18