1

2          The Hon. Thomas S. Zilly

3

4

5

6                    UNITED STATES DISTRICT COURT

7                 WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
8

9    ESTHER HOFFMAN; SARAH DOUGLASS;
     ANTHONY KIM; and IL KIM and DARIA            Case No. C18-1132 TSZ
10   KIM, husband and wife and the marital
     community comprised thereof, on behalf of
     themselves and on behalf of others similarly  DECLARATION OF GUY W.
11   situated,                                     BECKETT IN SUPPORT OF
                                                   PLAINTIFFS' MOTION FOR
12                      Plaintiffs,                LEAVE TO FILE THIRD AMENDED
                                                   COMPLAINT
13         vs.

14   TRANSWORLD SYSTEMS INCORPORATED;
     PATENAUDE AND FELIX, A.P.C.;
15   MATTHEW CHEUNG, and the marital
     community comprised of MATTHEW CHEUNG
16   and JANE DOE CHEUNG; National Collegiate
     Student Loan Trust 2004-2; National Collegiate
17   Student Loan Trust 2005-2; National Collegiate
     Student Loan Trust 2005-3; National Collegiate
18   Student Loan Trust 2006-1; National Collegiate
     Student Loan Trust 2006-3; National Collegiate
19   Student Loan Trust 2007-4,

20                      Defendants.

21         Guy W. Beckett declares:

22         1.      I am co-counsel for the Plaintiffs. I make this declaration from my personal

23   knowledge.

24         2.      Attached as Exhibit 1 is a clean version of Plaintiffs' proposed Third

25

26   DECLARATION OF GUY W. BECKETT                        Berry&Beckett
     IN SUPPORT OF PLAINTIFFS' MOTION                          LLP
     FOR LEAVE TO FILE THIRD AMENDED                    1708 Bellevue Avenue
     COMPLAINT - 1                                       Seattle, WA  98122
     (Case No. C18-1132 TSZ)                       (206) 441-5444 FAX (206) 838-6346

1    Amended Complaint.

2        3.    Attached as Exhibit 2 is a redline version of Plaintiffs' Third Amended

3    Complaint, which shows the differences between Plaintiffs' Second Amended Complaint

4    (Dkt. No. 61) and Plaintiffs' proposed Third Amended Complaint.

5        I declare under penalty of perjury under the laws of the State of Washington that the

6    foregoing is true and correct.

7        SIGNED in Seattle, Washington, on February 3, 2021.

8

9                                          */s/ Guy Beckett*
10                                         Guy W. Beckett, WSBA #14939

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    DECLARATION OF GUY W. BECKETT
      IN SUPPORT OF PLAINTIFFS' MOTION
      FOR LEAVE TO FILE THIRD AMENDED
      COMPLAINT - 2
      (Case No. C18-1132 TSZ)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

**EXHIBIT 1**

The Hon. Thomas S. Zilly

1

2

3

4              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
5                      AT SEATTLE

6

7  ESTHER HOFFMAN; SARAH DOUGLASS;
   ANTHONY KIM; and IL KIM and DARIA         NO.  C18-1132 TSZ
8  KIM, husband and wife and the marital
   community comprised thereof, on behalf of   **THIRD AMENDED CLASS**
9  themselves and on behalf of others similarly  **COMPLAINT FOR INJUNCTIVE**
   situated,                                 **RELIEF AND DAMAGES FOR**
10                                            **VIOLATIONS OF THE WASHINGTON**
                    Plaintiffs,              **CONSUMER PROTECTION ACT**
11      vs.                                  **(PROPOSED)**

12 TRANSWORLD SYSTEMS
   INCORPORATED; PATENAUDE AND
13 FELIX, A.P.C.; MATTHEW CHEUNG, and the
   marital community comprised of MATTHEW
14 CHEUNG and JANE DOE CHEUNG,
   National Collegiate Student Loan Trust 2003-1,
15 National Collegiate Student Loan Trust 2004-1,
   National Collegiate Student Loan Trust 2004-2,
16 National Collegiate Student Loan Trust 2005-1,
   National Collegiate Student Loan Trust 2005-2,
17 National Collegiate Student Loan Trust 2005-3,
   National Collegiate Student Loan Trust 2006-1,
18 National Collegiate Student Loan Trust 2006-2,
   National Collegiate Student Loan Trust 2006-3,
19 National Collegiate Student Loan Trust 2006-4,
   National Collegiate Student Loan Trust 2007-1,
20 National Collegiate Student Loan Trust 2007-2,
   National Collegiate Student Loan Trust 2007-3,
21 National Collegiate Student Loan Trust 2007-4,
   and National Collegiate Master Student Loan
22 Trust I,

23                    Defendants.

24

25

26

27 THIRD AMENDED CLASS COMPLAINT        Leonard Law
   FOR INJUNCTIVE RELIEF AND DAMAGES FOR   3614 California Ave SW, #151
   VIOLATIONS OF THE WASHINGTON CONSUMER   Seattle, Washington 98116
   PROTECTION ACT - 1                       Phone: 206-486-1176
   (Case No. C18-1132 TSZ)                   Fax: 206-458-6028

# I.  INTRODUCTION

Plaintiffs are Washington consumers to whom Defendants Transworld Systems Incorporated ("TSI"), Patenaude and Felix, A.P.C. ("P&F"), Attorney Matthew Cheung ("Cheung"), and National Collegiate Student Loan Trusts made false and misleading representations and engaged in unfair and deceptive practices in the collection or attempted collection of alleged student loan debt, interest, and charges using fraudulent, deceptive, and misleading affidavits prepared by TSI employees (hereinafter collectively referred to as "the Affidavits"). False affidavits were used by the Defendants to obtain default judgments and orders of summary judgment in Washington state courts to later obtain settlements and garnish wages and bank accounts. The Defendants are on notice of the problems since their misrepresentations in affidavits led to a finding by the Consumer Financial Protection Bureau ("CFPB") following an investigation that TSI's consumer collection lawsuits lacked admissible evidence to prove up their claims. Following the investigation TSI stipulated and consented to the entry of a Consent Order in *In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018 (Sept. 18, 2017) (hereinafter "Stipulation" and "Consent Order"). Pursuant to the Stipulation, TSI consented to the "Order" and "Compliance Plan" in the Consent Order therein.[1]

Plaintiffs seek to enjoin Defendants' unlawful collection practices, to vacate any unlawful judgments entered against Plaintiffs and the Class, and to recover damages to which Plaintiffs and the Class are entitled.

---

[1] TSI consented to the issuance of the Consent Order by the CFPB without admitting or denying any of the findings of fact or conclusions of law, except as necessary to establish the CFPB's jurisdiction over TSI and the subject matter of the Consent Order. *See In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018, at 2 (available online at: http://s3amazonaws.com/files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_stipulation.pdf.)

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 2
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

## II. JURISDICTION AND VENUE

1.      This action was originally filed in King County Superior Court and was removed by Defendants to this Court under 28 U.S.C. § 1331.

2.      After removal, Plaintiffs' federal claims were dismissed. This Court retains permissive supplemental jurisdiction over Defendants and the claims in this action under 28 U.S.C. § 1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events giving rise to the claims occurred in this judicial district.

## III. PARTIES

4.      Plaintiff Esther Hoffman ("Esther" or "Ms. Hoffman") is a person residing in King County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

5.      Plaintiff Sarah Douglass ("Ms. Douglass") is a person residing in King County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

6.      Plaintiff Anthony Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

7.      Plaintiff Daria Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

8.      Plaintiff Il Kim is a person residing in Snohomish County, Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 3
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1    defined in RCW 19.16.100(7).

2        9.      Defendants National Collegiate Student Loan Trust 2005-3, National Collegiate

3    Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-4, National

4    Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2007-4,

5    National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2006-

6    3, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust

7    2006-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan

8    Trust 2007-3, National Collegiate Student Loan Trust 2007-2, National Collegiate Student

9    Loan Trust 2005-2, National Collegiate Master Student Loan Trust I, and National Collegiate

10   Student Loan Trust 2003-1 (hereinafter collectively, "NCSLTs") are Delaware statutory trusts.

11

12       10.     The NCSLTs are "persons" for the purpose of the Washington Consumer

13   Protection Act, RCW 19.86, *et seq.* (the "WCPA").

14       11.     Since at least 2012, the NCSLTs have had agents collect debts on their behalf in

15   state courts across the country.

16

17       12.     The NCSLTs use agents to conduct collections and oversee law firms that file

18   collection lawsuits on their behalf. TSI, P&F, and Cheung are agents of the NCSLTs identified

19   as defendants in Paragraph No. 9 of this Third Amended Complaint.

20       13.     Defendant TSI is a successor to NCO Financial Systems, Inc. (hereinafter

21   "NCO"). TSI is a corporation chartered under California law with principal offices at 150 N.

22   Field Drive, Suite 200, Lake Forest, Illinois 60045. It does business in Washington. Its

23   registered agent in Washington is CT Corporation System, 711 Capitol Way S., Ste. 204,

24   Olympia, Washington 98501.

25

26       14.     NCO and TSI are related entities. *See United States v Expert Global Solutions,*

27   THIRD AMENDED CLASS COMPLAINT                          Leonard Law
FOR INJUNCTIVE RELIEF AND DAMAGES FOR            3614 California Ave SW, #151
VIOLATIONS OF THE WASHINGTON CONSUMER                Seattle, Washington 98116
PROTECTION ACT - 4                                     Phone: 206-486-1176
(Case No. C18-1132 TSZ)                                   Fax: 206-458-6028

*Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., NCO Financial Systems Inc., ALW Sourcing, LLC, Transworld Systems, Inc.*, 3:13cv2611 (N.D. Tex.).

15.     Among the debts that NCO collected and that TSI now collects are private student loan obligations allegedly owed to a large number of NCSLTs.

16.     Defendant TSI is a "collection agency" as defined in Washington's Collection Agency Act, RCW 19.16, *et seq.* (the "WCAA"). TSI holds a Washington collection agency license under UBI # 600-169-996.

17.     Defendant TSI seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone, and electronic wire services to do so, all in the general course of trade and commerce.

18.     Defendant TSI is also directly or indirectly engaged in soliciting claims for collection or collecting or attempting to collect claims owed or due or asserted to be owed or asserted to be due to another person.

19.     Defendant TSI is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

20.     Defendant TSI and its predecessor, NCO, have collected debt on behalf of the NCSLTs since at least 2012. As part of their debt collection activities, TSI directs all collection efforts against Washington consumers on behalf of the NCSLTs, including the conduct of litigation filed in the name of NCSLTs against consumers in Washington State. All actions alleged herein that were taken by Defendant TSI and its agents were taken for the benefit of TSI and the NCSLTs.

21.     Defendant P&F is professional corporation doing business under the laws of Washington. P&F's registered agent in Washington is Matthew Cheung, who conducts business out of an office in Lynnwood, Washington.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 5
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

22.     Defendant P&F is a licensed Washington collection agency whose activities in Washington are governed by the WCAA.

23.     Defendant P&F is a member of, or otherwise affiliated with, the Attorney Network of TSI.

24.     Defendant P&F and its lawyer in Washington, Matthew Cheung, has, by service and/or filing, commenced over 1,400 lawsuits in the state of Washington with the plaintiff identified in such cases as one or more of the NCSLTs.

25.     Defendant P&F sends collection letters to Washington consumers who allegedly have loans included in the NCSLTs.

26.     Defendant P&F collects money from consumers and communicates with consumers prior to filing suit.

27.     Defendant P&F is directly or indirectly engaged in soliciting claims for collection or collecting or attempting to collect claims owed or due or asserted to be owed or asserted to be due to another person.

28.     Defendant P&F is engaged in a business, the principal purpose of which is the collection of debts, and regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

29.     Defendant P&F is a "debt collector" within the meaning of 15 U.S.C. §1692a(6). P&F is a "collection agency" as that term is defined in the WCAA. P&F is a "person" as that term is defined in the WCPA and engages in "trade" and "commerce" as those terms are defined in the WCPA. All actions alleged herein that were taken by Defendant P&F and its agents were taken for the benefit of P&F, TSI, and the NCSLTs.

30.     Defendant P&F regularly uses the telephone in its attempts to collect debts.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 6
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

31.     Defendant P&F uses the instrumentalities of interstate commerce and the United States Postal Service ("mail") in its business.

32.     Defendant P&F uses the "mail" in its attempts to collect debts.

33.     Defendant Cheung is an attorney licensed to practice law in Washington, and he practices law from an office address in Lynnwood, Washington. All actions taken by Cheung alleged herein were taken for his personal benefit, for the benefit of his marital community, and for the benefit of P&F, TSI, and the NCSLTs.

34.     In Washington, Cheung collects and attempts to collect debts referred to him by TSI and the NCSLTs, and he is engaged in a business in which he regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

35.     Defendant Cheung seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone, and electronic wire services to do so, all in the general course of trade and commerce.

36.     Defendant Cheung is a "debt collector" within the meaning of 15 U.S.C. §1692a(6).

37.     The actions of Mr. Cheung on behalf of P&F were conducted in trade or commerce and primarily in connection with P&F's business as a collection agency.

38.     When P&F and Cheung collect or attempt to collect debts referred to them by NCO, TSI, and the NCSLTs, they act as agents for the NCSLTs and for TSI.

39.     TSI knows the collection methods and procedures that P&F and Cheung use, controls P&F's and Cheung's collection activities, and exercises that right as it deems necessary.

40.     P&F is also fully aware of, countenanced, permitted, and encouraged the actions

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 7
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

of its employee, Matthew Cheung, as set forth in this Third Amended Complaint.

41.     Plaintiffs allege on information and belief that each Defendant herein is acting in concert with, and is the agent and/or employee of, each other Defendant. Plaintiffs also allege on information and belief that the interests of all Defendants have been so unified that their separate personalities no longer exist and that if the acts of the corporate Defendants are treated as those of the corporation alone, an inequitable result will follow.

## IV.  FACTS

### A.  Plaintiff Esther Hoffman.

42.     In 2004, Esther took out a student loan with Bank of America in the amount of $6,000.00.

43.     Esther's mother, Pat Hoffman (hereinafter "Pat"), agreed at the time the loan was taken out that she would make the payments on the student loan.

44.     Pat failed to make those payments.

45.     Nine years later, Esther found out that her mother was served with a summons and complaint naming Esther as a defendant in an action brought by National Collegiate Student Loan Trust 2004-2 (hereinafter referred to individually as "NCSLT 2004-2"). That complaint was dated December 13, 2013. Esther had not heard of NCSLT 2004-2 or P&F and/or Mr. Cheung, who were listed as counsel for NCSLT 2004-2 in the complaint. Because the NCSLTs represented that they owned Esther's student loans and that they could prove the same, Esther began making small payments to P&F because she could not afford to defend herself in court.

46.     Due to a serious physical injury, Esther became unable to continue making the agreed monthly payments.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 8
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

47.     On June 8, 2016, P&F filed with the Snohomish County Superior Court the summons and complaint it had served on Esther's mother.

48.     On August 25, 2016, NCSLT 2004-2, through P&F, filed a Motion and Declaration for Default and Judgment signed by Cheung. The proposed Order of Default and Default Judgment, which were granted, included an award of $833.66 in interest and $337.50 in costs.

49.     In support of the Motion and Declaration for Default and Judgment, Defendants filed the "Affidavit and Verification of Account" of Dudley Turner ("Turner"), a TSI employee.

50.     In Turner's affidavit, he declared "under penalty of perjury under the laws of the forum" that:

    a.  He was "competent and authorized to testify relating to this action through personal knowledge of the business records, including the electronic data, sent to TSI that detail the education loan records"; and

    b.  He had "personal knowledge of the record management practices and procedures of [NCSLT 2004-2] and the practices and procedures [NCSLT 2004-2] requires of its loan servicers and other agents."

51.     Attached to Turner's affidavit was a "Pool Supplement" (hereinafter "2004-2 Pool Supplement") pulled from the Securities and Exchange Commission's ("SEC's") online archives, "EDGAR." The Pool Supplement states,

> In consideration of the Minimum Purchase Price set forth in Schedule 1 attached hereto, [First Marblehead Corporation and Bank of America, N.A.] hereby sells, sets over and assigns to the National Collegiate Funding LLC [...] each student loan set forth on the attached Schedule 2....

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 9
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

[National Collegiate Funding LLC] in turn will sell the Transferred Bank of America Loans to the [NCSLT 2004-2].

52.     Attached to the 2004-2 Pool Supplement was a document titled "Schedule 2" (hereinafter "2004-2 Schedule 2"). It did not contain a list of loans. It stated: "On file with the Indenture Trustee."

53.     Also attached to the Turner Affidavit was a document titled "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2004-2" (hereinafter "2004-2 Sale Agreement").

54.     The Sale Agreement 2004-2 is between The National Collegiate Funding LLC as seller and NCSLT 2004-2 as purchaser. It states that the "[2004-2] Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto…." Schedules A and B are attached to the Sale Agreement, and they give descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers. Schedule 2 is not attached to Schedules A or B.

55.     Neither the 2004-2 Pool Supplement nor the 2004-2 Sale Agreement are mentioned in Turner's affidavit.

56.     On information and belief, none of the defendants know the location of the 2004-2 Schedule 2.

57.     On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2004-2 Schedule 2, and they are aware that it is lost.

58.     NCSLT 2004-2, through P&F, filed Applications for Writs of Garnishment seeking to collect on the Hoffman judgment on November 29, 2016; February 10, 2017; March

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 10
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

21, 2017; May 23, 2017; August 1, 2017; and September 29, 2017. All were signed by Cheung, and all sought amounts in addition to the principal balance of the judgment.

59.     All garnishment paperwork was sent directly to Ms. Hoffman or her parents, not her attorney.

60.     The August 2017 garnishment was directed to Ms. Hoffman's US Bank account.

61.     The only funds Ms. Hoffman kept in the US Bank account were her disabled brother's social security payments, which she managed for him.

62.     Ms. Hoffman had to spend time working with US Bank ensuring those funds were not garnished and were properly exempted.

63.     After the Default Judgment was entered on November 4, 2016, Ms. Hoffman hired an attorney to investigate the debt underlying the default judgment and the default judgment, and to help her settle the account if she in fact owed the debt to the NCSLT 2004-2. Ms. Hoffman has paid her attorney $1,500.00 to investigate Defendants' collection attempts, review the underlying documents, review the court file and attempted garnishments, advise her on what her options were, and attempt to settle her account. Ms. Hoffman still owes her attorney legal fees for his investigation of the debt and other legal services relating to Defendants' collection attempts and the judgment they obtained.

64.     On September 18, 2017, TSI entered into a Consent Order with the CFPB pursuant to which it agreed that it would cease collection on loans allegedly owned by the NCSLTs for which it used a TSI employee declaration like Turner's, because the CFPB found many of them to not be truthful.

65.     On October 5, 2017, Ms. Hoffman's attorney, Sam Leonard, sent Cheung a letter demanding that he cease all collection efforts against Ms. Hoffman, vacate the judgment

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 11
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1   against her, and dismiss the action with prejudice because of the Consent Order. A copy of the

2   Consent Order was attached to Sam Leonard's letter.

3        66.    Over two weeks later, Esther received a letter in the mail from P&F signed by

4   Cheung dated October 20, 2017 that included copies of a new Writ of Garnishment and

5   Application for Writ of Garnishment to Umpqua Bank.

6        67.    Ms. Hoffman spent money and time investigating the debt that the Defendants

7   claim she owes them. She spent money and time working with an attorney to try and settle the

8   account, including the default judgment that she has now learned was likely obtained with a

9   false declaration. Ms. Hoffman has never seen the schedules that Defendants' agents relied

10   upon to obtain the judgment, despite spending money to hire an attorney to investigate the

11   proof of assignment.

12    

13   **B. Plaintiff Sarah Douglass.**

14        68.    Plaintiff Sarah Douglass ("Sarah") is a King County resident.

15        69.    In 2005, Sarah took out a student loan with Bank of America in the amount of

16   $2,000.00.

17        70.    In 2006, Sarah took out a student loan with Bank of America in the amount of

18   $2,500.00.

19        71.    Over ten years later, Sarah found out that National Collegiate Student Loan

20   Trust 2006-3 (hereinafter referred to individually as "NCSLT 2006-3") had filed two separate

21   lawsuits against her and had obtained default judgments against her in each case without first

22   properly serving her with copies of the summons and complaints. Sarah found out about the

23   default judgments after receiving copies of them in the mail from P&F and Cheung in June

24   2017.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 12
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1    72.    On April 24, 2017, P&F filed the summons and complaint in both cases with the

2    King County, Washington, Superior Court.

3    73.    On April 25, 2017, NCSLT 2006-3, through P&F, filed Motions and

4    Declarations for Default and Judgment signed by Cheung. In King County Superior Court Case

5    No. 17-2-10604-6, the proposed Order of Default and Default Judgment, which was entered by

6    the Court, included an award of $233.83 in interest and $395.80 in costs. In King County

7    Superior Court Case No. 17-2-10605-4, the proposed Order of Default and Default Judgment,

8    which was entered by the Court, included an award of $165.10 in interest and $395.80 in costs.

9

10    74.    In support of the Motions and Declarations for Default and Judgment,

11    Defendants filed the "Affidavit and Verification of Account" of Brian Jackson ("Jackson").

12    75.    In Jackson's affidavit, he declared "under penalty of perjury under the laws of

13    the forum" that:

14        a.    He was "competent and authorized to testify regarding this educational loan

15            through personal knowledge of the business records maintained by TSI as

16            custodian of records, including the electronic data provided to TSI related to

17            Defendant's educational loan, and the business records attached to this

18            Affidavit...."

20    76.    Attached to Jackson's affidavit was a "Pool Supplement" (hereinafter "2006-3

21    Pool Supplement") pulled from the SEC's EDGAR online archives. The Pool Supplement

22    states,

24        In consideration of the Minimum Purchase Price set forth below, [First
         Marblehead Corporation and Bank of America, N.A.] hereby transfers,
25        sells, sets over, and assigns to The National Collegiate Funding LLC
         [...] each student loan set forth on the attached Schedule 1....

27    THIRD AMENDED CLASS COMPLAINT                     Leonard Law
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR          3614 California Ave SW, #151
     VIOLATIONS OF THE WASHINGTON CONSUMER            Seattle, Washington 98116
     PROTECTION ACT - 13                                Phone: 206-486-1176
     (Case No. C18-1132 TSZ)                             Fax: 206-458-6028

[National Collegiate Funding LLC] in turn will sell the Transferred Bank of America Loans to the [NCSLT 2006-3].

77.     Attached to the Jackson Affidavit was a document titled "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2006-3" (hereinafter "2006-3 Sale Agreement.")

78.     The Sale Agreement 2006-3 is between The National Collegiate Funding LLC as seller and NCSLT 2006-3 as purchaser. It states that the "[2006-3] Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on <u>Schedule A</u> attached hereto…." Schedules A and B are attached to the Sale Agreement and they give descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers. Schedule 2 is not attached to Schedule A or B.

79.     Neither the 2006-3 Pool Supplement nor the 2006-3 Sale Agreement are mentioned in Jackson's affidavit.

80.     On information and belief, none of the Defendants know the location of the 2006-3 Schedule 2.

81.     On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2006-3 Schedule 2, and they are aware that it is lost. On November 3, 2017, Sarah's attorney, Amanda N. Martin, filed a Motion to Set Aside Default Order and Judgment based on the improper service of the summons and complaints in each case: King County Superior Court Case No. 17-2-10605-4 and King County Superior Court Case No. 17-2-10605-6. Each Motion states that the CFPB filed a complaint against Defendants NCSLTs and that TSI entered into the Consent Order with the CFPB. Copies of the Motions with the Consent

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 14
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1    Order were served on NCSLT 2006-3, P&F, and Cheung.

2       82.    On November 17, 2017, the King County Superior Court entered orders

3    vacating the default orders and judgments entered in both cases.

4       83.    On March 20, 2017, an Order Dismissing Case was entered in Case No. 17-2-

5    10605-4 upon NCSLT 2006-3's Motion to Dismiss.

6       84.    On August 1, 2018, a Clerk's Order of Dismissal was entered in Case No. 17-2-

7    10604-6.

8       85.    Ms. Douglass spent time and money investigating the default judgment and

10   underlying debt Defendants claim she owes. Ms. Douglass had to take time off work and paid

11   bus fare to attend a legal aid clinic and later to meet with her attorney. While at the legal clinic,

12   Ms. Douglass paid to print copies of the pleadings filed in the two cases so that she could

13   investigate the validity of the default judgment and underlying debt.

14      **C. Plaintiffs Anthony Kim, Il Kim, and Daria Kim.**

15      86.    From 2005 to 2007, while enrolled in the business program at St. John's

16   University in New York City, Anthony Kim ("Anthony") took out a number of federal and

18   private student loans, including a total of six student loans from Bank One (which later merged

19   with JP Morgan Chase Bank) and Bank of America in the amount of $76,500.00.

20      87.    Anthony graduated from St. John's in 2008.

21      88.    On January 23, 2015, Daria Kim ("Daria,") Anthony's mother, was served with

22   a summons for a case filed by P&F on behalf of National Collegiate Student Loan Trust 2005-2

23   (Snohomish County Superior Court Case No. 15-2-04465-4) against Anthony Kim and Il Kim

25   ("Il"), Anthony's father and Daria's husband. Daria immediately informed her husband and son

26   about the summons when she received it.

27   THIRD AMENDED CLASS COMPLAINT
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR
     VIOLATIONS OF THE WASHINGTON CONSUMER
     PROTECTION ACT - 15
     (Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

89.     Daria Kim has declared under penalty of perjury that she did not receive any summonses related to the lawsuits initiated by the Defendants against the Kims individually or collectively (Snohomish County Superior Court Case No's. 15-2-03144-7, 15-2-03146-3, 15-2-04014-4, 15-2-04015-2, and 15-2-04016-1), despite the Defendants' claims to the contrary, and that she would have given all of the documents to her son if she had received any other summons.

90.     On January 31, 2015, Anthony responded to the suit for which his mother had been served by filing a Pro Se Notice of Appearance in Snohomish County Superior Court Case No. 15-2-04465-4, and delivering a copy thereof to Defendants P&F and Cheung.

91.     The Kims did not know whether NCSLTs were the true owners of their loans since they had lost track of who owned the private student loans, so they relied on the misrepresentations made by the Defendants that NCSLTs were in fact the owners of these loans.

92.     In response to the lawsuits, the Kims contacted P&F related to Snohomish County Superior Court Case No. 15-2-04465-4 in good faith to set up an arrangement with P&F to pay $50.00 a month on the alleged debt that was the subject of that case.

93.     In accord with their promise, the Kims paid $50 a month for January, February, March, April, and May 2015 while trying to work out a more permanent agreement. They were led to believe this payment plan pertained to any and all outstanding accounts with the NCSLTs.

94.     However, in June 2015, Anthony received notification that P&F had initiated garnishment proceedings against him on behalf of National Collegiate Student Loan Trusts 2005-2, 2005-3, 2006-1, and 2007-4.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 16
(Case No. C18-1132 TSZ)

95.     It was only at this time that Anthony and his parents learned of the existence of the four other lawsuits that P&F had filed against them, and of the fact that P&F had obtained default judgments against them individually and collectively for each student loan without first properly serving any of them with copies of the summons and complaints for the cases.

96.     In August 2015, the NCSLTs initiated garnishment proceedings against Daria and Il.

97.     Before the garnishments stopped, the National Collegiate Student Loan Trust 2005-2 ("NCSLT 2005-2") succeeded in garnishing Anthony's bank account in the amount of $2,182.08.

98.     In support of their Motions and Declarations for Default and Judgment against the Kims, Defendants filed five separate "Affidavit and Verification of Account" documents sworn to by Dudley Turner.

99.     In these affidavits, Turner declares "under penalty of perjury under the laws of the forum" that:

a.  TSI is the "designated Custodian of Records for Plaintiff pertaining to the Defendants' education loan(s)";

b.  He was "competent and authorized to testify relating to this action through personal knowledge of the business records, including the electronic data, sent to TSI that detail the education loan records";

c.  He had "personal knowledge of the record management practices and procedures of [the NCSLTs] and the practices and procedures [the NCSLTs] requires of its loan servicers and other agents."

100.    Attached to Turner's affidavits for Snohomish County Superior Case No's. 15-

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 17
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

2-04015-2 and 15-2-040161 were documents titled "Pool Supplement," which purport to document the transfer of student loans from Bank One to NCSLTs 2006-1 and 2005-3, respectively, pulled from the SEC's EDGAR online archives. Both Pool Supplements state,

> In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to the National Collegiate Funding, LLC (the "Depositor") … each student loan set forth on the amended Schedule…. The Depositor in turn will sell the Transferred Bank One Loans to the National Collegiate Student Loan Trust ….

101.   The Pool Supplements included attachments titled "Schedule 2" and "Schedule 1," respectively. They did not contain lists of loans. They both state: "On file with the Indenture Trustee."

102.   For the other cases, Snohomish County Superior Court Case No.'s 15-2-03144-7, 15-2-03146-3, and 15-2-04014-4, the affidavits contained pool supplements for Bank One that were sold to the respective NCLSTs 2005-2 and 2007-4. Those pool supplements all contained references to "Schedules" for related loans, but no schedules were attached.

103.   Also attached to each of the Turner affidavits was a document titled "Deposit and Sale Agreement" for the relevant NCSLT trust (hereinafter the "Deposit and Sale Agreements").

104.   The Deposit and Sale Agreements set forth the terms under which the Seller was selling and the Purchaser was purchasing the student loans listed on the relevant numeric schedule (variously Schedule 1, Schedule 2, Schedule 3, or combinations thereof), as set forth in Schedule A of the Deposit and Sale Agreement. For each Deposit and Sale Agreement, Schedule A gave descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers.

105.   Neither the Pool Supplements nor the Deposit Sale Agreements are mentioned

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 18
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

in Turner's affidavits.

106.    In deposition testimony from Bradley Luke, the Senior Litigation paralegal for TSI and the designated CR 30(b)(6) deponent, it was revealed that TSI does not have custody of the records and that the legal case managers who signed the affidavits in the Kim lawsuits retrieve documents from a prior loan servicer's system, American Educational Services a/k/a Pennsylvania Higher Education Assistance Agency ("AES" or "PHEAA"), for whom he is not an employee. Additionally, Mr. Luke testified that TSI does not create any new servicing records in that system while collecting on the loans.

107.    Ms. Luke also testified that AES does not retain the billing statements for the loans. Additionally, Mr. Luke testified that there was no training on the document retention policies and procedures or knowledge of the records of whomever has held custody of the documents or how they were maintained by Bank of America, Bank One, JP Morgan Chase Bank, First Marblehead Corporation, and/or National Collegiate Funding, LLC.

108.    Mr. Luke further testified that he does not know about the retention practices or the procedures about the creation of student loan agreements. He also testified that he has no knowledge as to whether the loan disclosure statement which disclosed the essential terms of the loan, including the amount to be borrowed, the interest rate and the repayment period, was mailed to or received by the Kims.

109.    Additionally, none of the Defendants have any knowledge of the actual Schedules 1, 2, and 3 that are referred to in the Pool Supplements.

110.    Defendants TSI, P&F, and Cheung have never seen or reviewed any of the Schedules and they are aware that they are lost.

111.    After the judgment was entered in case number 15-2-03144-7, Cheung sent

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 19
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1   Anthony a collection letter dated April 6, 2015, advising Anthony that the NCSLTs were

2   willing to discuss resolution of the judgment and that it was imperative that he contact P&F.

3        112.    Cheung subsequently sent Anthony additional collection letters advising him to

4   contact P&F to settle his account.

5        113.    The Kims were garnished and the garnished funds were paid into the Superior

6   Court Registry.

7        114.    The Snohomish Superior Court disbursed by court order the $2,182.08 to

8   Anthony on September 6, 2018 after the lawsuits were dismissed for want of prosecution.

9        115.    Anthony lost interest on the garnished funds from the date they were garnished

10  until September 6, 2018.

11       116.    The Kims paid their attorney $11,540.00 to investigate and defend Defendants'

12  collection attempts, including a review of the underlying documents, a review of the court file

13  and garnishments, litigation to vacate the default judgments and discovery to prepare a defense

14  for trial.

15  **D.**    **NCSLTs' Collection History.**

16       117.    P&F and Cheung have been suing Washington consumers in Washington courts

17  on behalf of the NCSLTs since at least 2012.

18       118.    In November 2014, TSI became the NCSLTs' debt collector.

19       119.    Acting as agents for the NCSLTs, P&F, Cheung, and TSI have obtained

20  hundreds of default judgments against Washington consumers in Washington courts.

21       120.    TSI, P&F, and Cheung only collected on those accounts believed to be in

22  default.

23       121.    Defendants have a common practice of obtaining judgments against Washington

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 20
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

consumers using declarations executed by TSI employees that are filed in Washington courts that falsely claim personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans.

122.    Acting in concert, TSI, P&F, and Cheung filed more than 2,000 debt collection lawsuits within the four years immediately preceding the filing of this lawsuit without the documentation necessary to prove NCSLTs' ownership of the loans.

123.    Notaries for the NCSLTs notarized over 25,000 affidavits throughout the country even though they did not witness the affiants' signatures. Many of these affidavits were filed with Washington state courts in furtherance of efforts to collect alleged student loan debts owned by the NCSLTs.

124.    In furtherance of the scheme to obtain default judgments, TSI feigns the existence of admissible evidence by falsely submitting materially false and misleading affidavits to state courts.

a.    Fewer than ten TSI employees service NCSLT lawsuits for the entire country, and they sign 20 to 40 affidavits a day on average without personal knowledge of the educational loan records that would serve as the evidentiary basis for the collection of the alleged debts;

b.    TSI's affidavits are carefully drafted to appear as if the affiants have actual knowledge of the underlying facts, when in fact the facts are based on hearsay;

c.    In support of each affidavit filed to support a motion for default judgment, TSI's affiant swears that they are authorized and competent to testify about the alleged student loan debt through review of and "personal knowledge" of the business records, including electronic

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 21
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1   data in their possession, and that they have "personal knowledge of the record management

2   practices and procedures of the NCSLTs and the practices and procedures the NCSLTs require

3   of its loan servicers and other agents";

4       d.      TSI claims to be the designated custodian of records, but the actual records

5   custodian is American Education Services ("AES") a/k/a Pennsylvania Higher Education

6   Assistance Agency ("PHEAA"), and Defendants know PHEAA's records are missing

7   important collateral documentation for the student loans; all of the loan files are missing proof

8   of assignments to the NCSLTs;

9

10      e.      Defendants also knew or should have known that PHEAA's records are

11  unreliable, since many are missing collateral documentation for the educational loans, and all

12  of the loan files are missing assignments;

13      f.      The TSI employees regularly sign affidavits without reviewing any written

14  assignment documentation showing that the individual loan accounts were actually included in

15  the NCSLTs;

16

17      g.      The TSI affiants do not have any personal knowledge or training in the retention

18  of the collateral loan documents, how they are kept, their custody, where they are placed, and

19  how they are stopped from being tampered with by any of the entities who signed the

20  documents and currently have custody of them;

21      h.      Defendants did not have in their possession the schedule of loans sold to the

22  NCSLTs by the original creditor or creditors when the affidavits were signed.

23

24      125.    Defendants filed lawsuits against Washington consumers without the intent or

25  ability to prove the claims if contested.

26      126.    On information and belief, Defendants filed affidavits in Washington courts

27

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 22
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1  attached to motions for default and motions for summary judgment that were notarized by

2  Defendants despite the notaries not having witnessed the affiants signing the affidavits.

3  **E.      The Trusts Act Through Other Entities.**

4      127.    The <u>NCSLTs</u> were created between 2001 and 2007 pursuant to the Delaware

5  Statutory Trust Act, 12 Del. Code § 3801-26 ("DSTA"), to acquire private student loans, collect

6  payments from borrowers, and distribute gains to the holders of notes. *CFPB v. Nat'l Collegiate*

7  *Master Student Trust*, No. 17-cv-1323 (MN), 2018 WL 5095666, at *1 (D. Del. Oct. 19, 2018).

8      128.    The governing structures outlined in the trust agreement for each of the NCSLTs

9
10  are substantially identical.

11      129.    The NCSLTs have no employees or internal management agents and rely on

12  certain trust-related agreements to provide their operating structure. *CFPB v. Nat'l Collegiate*

13  *Master Student Trust*, 2018 WL 5095666, at *1. These agreements include trust agreements,

14  administration agreements, servicing agreements, and indentures (collectively, "Trust Related

15  Agreements"), and provide a structure that includes an Owner Trustee, Administrator,

16
17  Indenture Trustee, Primary Servicer, Special Servicer, and Sub-servicers. *Id.*.

18      130.    TSI was retained by the NCSLTs, through their managing agents, to direct

19  litigation for the collection of student loans purportedly owed to the NCSLTs. The retention of

20  TSI and its duties as agent of all of the NCSLTs is memorialized in two agreements, the Special

21  Servicing Agreement and the Default Prevention and Collection Services Agreement. There is

22  not a different collection servicing agreement for each NCSLT.

23  **F.      The AES/ PHEAA Partial Audit.**

24      131.    In September 2015, Boston Portfolio Advisors ("BPA") conducted a loan level

25
26  partial audit of the NCSLTs' collateral loan files, which are held by Pennsylvania Higher Education

27  THIRD AMENDED CLASS COMPLAINT
    FOR INJUNCTIVE RELIEF AND DAMAGES FOR
    VIOLATIONS OF THE WASHINGTON CONSUMER
    PROTECTION ACT - 23
    (Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

Assistance Agency ("PHEAA") and its student loan servicer American Educational Services ("AES").

132.    Among other things, the partial audit found:

a.    First Marblehead Corporation ("FMC") managed the origination of loans that were assigned to all of the NCSLTs.

b.    FMC partnered with PHEAA to handle custodial responsibilities for the loan documents. FMC was to transfer the loan documents to PHEAA, but PHEAA did not receive and does not have all the documents for each loan. PHEAA was not aware of the criteria used to bundle the loans.

c.    FMC also was responsible for bundling loans into the NCSLTs so that they could be marketed to investors.

d.    The formula FMC used to bundle the loans in the NCSLTs was never disclosed, but it appears that the FMC did not bundle loans by the year of origination.

e.    PHEAA communicated to FMC on numerous occasions that there were issues with the loan documents and that it did not receive and did not have all of the documents for each loan.

f.    The loans bundled into the NCSLTs were guaranteed by The Education Resource Institute ("TERI").

g.    Trust payment performance deteriorated and in 2008, after numerous lawsuits by bond holders, TERI filed for bankruptcy.

h.    In 2008, the servicing agreements for all NCSLTs were amended to add NCO as a servicer to collect on defaulted loans.

i.    In 2012, PHEAA was directed by FMC to send all charged off loans to NCO for collection.

j.    PHEAA noted that the NCSLT loans were the most complained about loans in its portfolio and sent all unresolved complaints to NCO. NCO would merely tell PHEAA to follow the servicing guidelines and often did not provide PHEAA with information on how to resolve borrower complaint.

k.    PHEAA regularly communicated to the managing agents of the NCSLTs about the issues with the loans and loan documents.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 24
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

l.     The audit determined that 100% of the accounts did not contain an Assignment. It is unknown whether Assignments were appropriately made. Based on representations made by PHEAA, it is likely that Assignments for the loans do not exist.

m.     358, or 94.5%, of the sample of loans reviewed in the audit did not have terms and conditions affixed to the Note. Pursuant to the Notes' terms, borrowers acknowledged receipt of the loans' terms and conditions, and PHEAA's servicing contract states that borrowers are only required to return the signature page with PHEAA responsible for maintaining the signed first and second (if applicable) pages.

133.     With actual knowledge of the problems with the NCSLTs' collateral files, the NCSLTs nonetheless acted in concert through other entities that serviced and/or collected on those loans to thwart any further audit of the loan files and with full knowledge of their inability to prove the "chain of title" for the NCSLTs through debt collection court proceedings continued to file collection lawsuits. For example, the NCSLTs, through their agents, served Ms. Hoffman's mother with a lawsuit in 2013, before the PHEAA audit, over Ms. Hoffman's loan. They then filed that lawsuit to collect on her loan in 2016, which was after the PHEAA audit that showed that the NCSLTs did not have the required loan documents.

134.     All NCSLTs knew that they had no ability to prove the ownership of the debts and would be unable to prove the debts if challenged in court.

135.     Since the entities that control the NCSLTs treat them similarly, they act in concert to carry out their scheme. Further, the NCSLTs, by and through their agent TSI, agreed among themselves to act in concert and have acted in concert in their loan collection efforts and directed their debt collection lawyers, including P&F and Cheung, to pursue litigation to collect from student loan borrowers whose loans were/are purportedly owned by NCSLTs, by presenting affidavits from TSI that included false information as described in Paragraphs 121-126 above, and with knowledge that the NCSLTs could not prove that they owned the loans,

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 25
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

and without proof of the actual amounts owed on the loans, if any. The NCSLTs, by and through their agent TSI, further agreed among themselves to act in concert and have acted in concert in their loan collection efforts and directed their debt collection lawyers, including P&F and Cheung, to cease litigation efforts to collect from student loan borrowers if the student loan borrowers appeared and defended in the debt collection lawsuits commenced against them.

**G.    Consumer Financial Protection Bureau's TSI Consent Order.**

136.    The CFPB investigated the debt collections litigation practices of the Attorney Network business unit of TSI.

137.    Through its investigation, the CFPB identified violations of the federal Consumer Financial Protection Act of 2010 ("CFPA"). TSI and the CFPB executed a Stipulation and consented to the entry of a Consent Order that was filed on September 18, 2017 (hereinafter the "Consent Order"), in the administrative proceeding *In the Matter of Transworld Systems, Inc.,* 2017-CFPB-0018.

138.    The Consent Order is attached hereto as Exhibit A, and is incorporated herein by this reference.

139.    The associated Stipulation and Consent to the Issuance of a Consent Order signed by Joseph Laughlin, CEO of TSI, is attached hereto as Exhibit B, and is incorporated herein by this reference.

140.    The Consent Order made numerous findings of fact. *See* Consent Order pgs. 5-9, ¶¶ 4-29.

141.    The CFPB found, through its investigation, that the TSI Affidavits violated the CFPA by doing the following:

33. In numerous instances, in connection with collecting or attempting to

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 26
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

collect Debt from Consumers, [TSI] executed [TSI] Affidavits that were used by Law Firms with many of the Collections Lawsuits filed by Law Firms on behalf of the [NCSLTs] in courts across the country, and in live testimony, [TSI] represented, directly or indirectly, expressly or by implication, that:

a. Affiants had personal knowledge of the account records and the Debt;

b. Affiants had personal knowledge of the chain of assignment records evidencing [NCSLT] ownership of the subject loan; and

c. Affiants had personal knowledge of the record management practices and procedures of the [NCSLTs] and all prior servicers.

34. In fact, … , in numerous instances, these representations were either false or the Affiant did not have a basis for making the representation.

35. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a Collections Lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

36. Thus, representations by Respondent, as described in Paragraphs 18-24, constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

Consent Order pgs. 10-11, ¶¶ 33-36.

142.    The CFPB found, through its investigation, violations of the CFPA relating to TSI and its Attorney Network's other litigation practices:

37. In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, [TSI], acting through the Law Firms hired by [TSI] on behalf of the [NCSLTs], represented, directly or indirectly, expressly or by implication, that it could be proven in the Collections Lawsuits that the [NCSLTs] owned the loans in question and that the Consumers in question owed Debts to the [NCSLTs], if contested.

38. In fact, in numerous instances, [TSI] lacked the complete chain of assignment documentation needed to prove [NCSLT] ownership of the subject loans and the promissory note needed to prove the existence of certain loans.

39. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 27
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

40. Thus, [TSI]'s representations, as described in [the facts section of the Consent Order], constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

41. In addition, [TSI]'s acts and practices, caused or were likely to cause substantial injuries to consumers.

42. The injuries to consumers included, but were not limited to, all payments made, including garnishments of wages and bank accounts, to settle Debts not enforceable.

43. The injuries to consumers were not reasonably avoidable by consumers and were not outweighed by any countervailing benefits to consumers or to competition.

44. Thus, Respondent's conduct, as described in [the fact section of the Consent Order], constitutes unfair acts or practices in violation of sections 1031(c) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

Consent Order pgs. 11-12, ¶¶ 37-44; TSI Stipulation pg. 2, ¶ 6.

143.     Through the TSI Stipulation, TSI waived any "right to challenge or contest the validity of the Consent Order." TSI Stipulation pg. 3-4, ¶ 9.

144.     It is a violation of the Consent Order for:

a.     TSI or any agent, service provider or attorneys that have notice of the Consent Order to cause law firms hired by TSI on behalf of the NCSLTs "to collect any Debt through Collection Lawsuits that [TSI] or its agents have any reason to believe may be unenforceable." Consent Order pgs. 14-15, ¶ 45(k).

b.     TSI, P&F, or Cheung are "permanently restrained and prohibited from…..executing any Affidavit containing any misrepresentations, including false statements that: (i) the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records; (ii) the Affiant has personal knowledge of the

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 28
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1   Consumer's debt; (iii) the Affiant has personal knowledge of the loan's chain of assignment or

2   ownership; (iv) the Affiant has personal knowledge of the documents relating to the loan's

3   chain of assignment or ownership; (v) the Affiant has been properly notarized….; (vi) certain

4   documents or records …… have been reviewed by the Affiant." Consent Order pgs. 15, ¶ 45(l).

5           c.      TSI, P&F, or Cheung to continue pending NCSLT lawsuits in which a

6   false TSI Affidavit was filed after receiving notice of the Consent Order until TSI, P&F, or

7   Cheung provides the court with a copy of the Consent Order and submits a notice to the court

8   stating "Plaintiff withdraws the affidavit of [name of affiant] pursuant to Consent Order entered

9   into by the Consumer Financial Protection Bureau and Transworld Systems, Inc." Consent

10  Order pgs. 17, ¶ 49.

11

12          d.      TSI, P&F, and Cheung to continue garnishment, or fail to quash or

13  withdraw a pending garnishment, in any case in which the NCSLTs obtained a judgment where

14  a TSI Affidavit with misrepresentations was filed.

15

16          e.      TSI, P&F, and Cheung to accept any settlement payments relating to any

17  such collection lawsuits in which a TSI Affidavit with misrepresentations was filed.

18      **H.      NCSLTs Agreed to a Consent Judgment with the CFPB Pursuant to Which
            They Would Cease Litigation and All Collection Until They Verified They
19          Had Documentation Proving the Right to Collect on Accounts.**

20      145.    On September 18, 2017, the same day the Consent Order was filed, the CFPB

21  filed a civil action for injunctive relief against the NCSLTs in the United States District Court

22  for the District of Delaware. *Consumer Financial Protection Bureau v. The National Collegiate*

23  *Master Student Loan Trust et al.*, Case No. 17-cv-01323-GMS (D. Del Sep. 18, 2017)

24  (hereinafter the "CFPB Trust Action").

25

26      146.    The NCSLTs and the CFPB reached an agreement to enter a Consent Judgment

27  THIRD AMENDED CLASS COMPLAINT
    FOR INJUNCTIVE RELIEF AND DAMAGES FOR
    VIOLATIONS OF THE WASHINGTON CONSUMER
    PROTECTION ACT - 29
    (Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1  in the CFPB Trust Action (hereinafter the "Trust Consent Judgment").

2      147.    A copy of the [Proposed] Trust Consent Judgment is attached hereto as Exhibit

3  C and is incorporated herein by this reference.

4      148.    The Trust Consent Judgment include the following findings of fact:

5          a.    "Since at least November 1, 2012, in order to collect on defaulted private

6  student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state

7  courts across the country."

8

9          b.    "In support of these lawsuits, Subservicers on behalf of Defendants

10  executed and filed affidavits that falsely claimed personal knowledge of the account records

11  and the consumer's debt, and in in many cases, personal knowledge of the chain of assignments

12  establishing ownership of the loans."

13          c.    "[NCSLT]s' Servicers on behalf of [NCSLTs] filed more than 2,000 debt

14  collections lawsuits without the documentation necessary to prove [a NCSLT's] ownership of

15  the loans or on debt that was time-barred."

16

17          d.    "Notaries for [NCSLT]s' Servicers notarized over 25,000 affidavits even

18  though they did not witness the affiants' signatures."

19          e.    Entry of the "Order is in the public interest."

20      149.    NCSLTs waived any right to seek judicial review or otherwise challenge or

21  contest the validity of this Order.

22      150.    NCSLTs also agreed to provide to all NCSLTs' servicers copies of the Trust

23  Consent Judgment within 30 days of the Trust Consent Judgment being entered on the Docket

24  of the CFPB Trust Action.

25

26      151.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of

27  THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 30
(Case No. C18-1132 TSZ)

the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on the NCSLTs' behalf cease initiation of collection lawsuits to collect on accounts unless:

      a.     They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

      b.     They possess a signed copy of the student loan contract;

      c.     The statute of limitations on enforcement of the loan has not expired; and

      d.     They have no reason to believe the debt may be unenforceable.

152.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on the NCSLTs' behalf dismiss all pending collection lawsuit to collect on accounts unless:

      a.     They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

      b.     They possess a signed copy of the student loan contract;

      c.     The statute of limitations on enforcement of the loan has not expired; and

      d.     They have no reason to believe the debt may be unenforceable.

153.    Upon the NCSLTs' delivery of the Trust Consent Judgment to the debt collectors of the NCSLTs, the NCSLTs were to require and ensure that all debt collectors and collection law firms acting on the NCSLTs' behalf cease enforcement of any judgment obtained in a collection lawsuit to collect on accounts unless:

      a.     They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

      b.     They possess a signed copy of the student loan contract;

      c.     The statute of limitations on enforcement of the loan has not expired; and

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 31
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

d.     They have no reason to believe the debt may be unenforceable.

154.    The NCSLTs, their debt collectors, and collection law firms representing the NCSLTs would also be barred under the Trust Consent Judgment from filing any false affidavits, and would be required to withdraw any affidavits they determined were false or were notarized when the notary had not witnessed the signing of the affidavit.

155.    As of the date of the filing of this Third Amended Complaint, the Trust Consent Judgment has not been entered and multiple entities have sought to intervene in the CFPB Trust Action. Included in the list of intervenors is TSI, which has received and reviewed the proposed Trust Consent Judgment.

**E. TSI and Attorney Networks.**

156.    TSI manages an Attorney Network that utilizes outside law firms to collect on defaulted private student loans.

157.    The collection attorneys filing collection cases, including Defendants P&F and Cheung, are part of TSI's Attorney Networks, and the alleged debts of Plaintiffs were handled through the "Attorney Network."

158.    Network firms are expressly informed by TSI that they are required to follow Network Attorney Standard Operating Procedures.

159.    TSI uses Network firms, including Defendant P&F and Cheung, as a collection tool, and their performance in collection is audited.

160.    TSI uses non-lawyer "performance managers" to monitor and assess the collection efficiency of accounts assigned to Network firms, including P&F and Cheung, on a weekly basis to determine the market share of accounts to assign to them.

161.    Upon review, the Network firms, including Defendant P&F and Cheung, are

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 32
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

graded with "attorney report cards."

162.     A bad "grade" from a performance manager can lead to TSI off-boarding accounts or firing the Network firm.

**F. Defendant's Current Collection Actions In Washington.**

163.     Since entry of the TSI Consent Order on September 18, 2017:

    a.     Defendants have continued filing collection lawsuits in Washington on accounts they allege are owned by the NCSLTs.

    b.     Defendants have not voluntarily dismissed all NCSLT collection actions in Washington in which they have not verified that: (1) they have a record of the complete chain of assignment; (2) they have a copy of the signed student loan agreement; (3) the action was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized.

    c.     Defendants have continued to file collection lawsuits where the Affiant has no personal knowledge of the Consumers' education loan records or maintenance of those records, has no personal knowledge of the Consumers' debt; has no personal knowledge of the loans' chain of assignment or ownership; or has no personal knowledge of the documents relating to the loans' chain of assignment or ownership.

    d.     Defendants have continued to seek to enforce judgments obtained in NCSLTs suits when they have not verified that: (1) they have a record of the complete chain of assignment; (2) they have the complete student loan agreements; (3) the action was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 33
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

164.    The NCSLTs, through their agent TSI, agreed to act in concert, and have acted in concert, by directing P&F and Cheung to continue taking the actions alleged herein in Paragraph 163 above in order to attempt to collect from borrowers on purported student loan debts owed to the NCSLTs.

## V.  CLASS ALLEGATIONS

165.    **Class Definition.** Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Plaintiffs bring this case as a class action on behalf of the following "Class," who are

> All persons residing in Washington against whom Defendants sought to collect an alleged NCSLT loan debt, on or after four years prior to the filing of this action,

and two Subclasses thereof, defined as:

> **CPA Judgment Subclass:** All persons in the Class against whom Defendants obtained a judgment in any Washington court where a NCSLT was a Plaintiff and the judgment was obtained using a declaration of a TSI employee.

> **Post CFPB TSI Consent Order Subclass:** All persons in the Class against whom Defendants maintained or filed a lawsuit to collect an alleged debt owed to the NCSLTs after the CFPB Consent Order was entered.

166.    **Numerosity.** The Class and Subclasses are so numerous that joinder of all members is impracticable. On information and belief, there are over 300 people in the Class.

167.    **Commonality.** There exist questions of law and fact common to Plaintiffs and the proposed Class and Subclasses, including but not limited to:

a.    Whether Defendants have a standard practice of filing and maintaining lawsuits, and obtaining judgments in favor of the NCSLTs and against Washington residents, without proof that the loan they are suing on was assigned to or owned by the NCSLTs;

b.    Whether Defendants sue Washington residents without standing or proof

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 34
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1   of ownership or assignment of ownership of the specific debt each Washington consumer is

2   being sued upon;

3           c.      Whether Defendants had sufficient evidence of the existence of the

4   alleged NCSLT education debts when they negotiated settlements or obtained default

5   judgments against Washington consumers;

6           d.      Whether Defendants engaged in unfair or deceptive business practices

7   when they filed lawsuits without proof that the NCSLTs they were representing had proof of

8   assignment entitling them to collect on the alleged debts;

9

10          e.      Whether Defendants are filing lawsuits on behalf of NCSLTs knowing

11  that they lack the necessary paperwork and proof to complete or try the case and are filing the

12  lawsuits to obtain defaults on or settlements of the claims;

13          f.      Whether Defendants have a standard practice of filing affidavits they

14  know or believe to be false and misleading in an attempt to obtain judgments against

15  Washington residents;

16

17          g.      Whether, by maintaining collection lawsuits in Washington when the

18  Defendants did not have both complete chain of title and a signed copy of the loan agreement,

19  the Defendants committed unfair or deceptive practices in trade or commerce that affect the

20  public interest and which causes injury to Washington consumers' personal property or

21  business, and therefore violate the WCPA;

22          h.      Whether Defendants violated the FDCPA by filing false or misleading

23  affidavits in Washington courts and thereby committed *per se* violations of the WCPA;

24

25          i.      Whether Defendants violated the WCPA by filing false or misleading

26  affidavits in Washington courts;

27  THIRD AMENDED CLASS COMPLAINT
    FOR INJUNCTIVE RELIEF AND DAMAGES FOR
    VIOLATIONS OF THE WASHINGTON CONSUMER
    PROTECTION ACT - 35
    (Case No. C18-1132 TSZ)

j.      Whether Defendants P&F and Cheung violated their duty of candor to tribunals when they filed lawsuits on behalf of NCSLTs knowing that the NCSLTs did not have the schedule of loans transferred to the NCSLTs and therefore could not prove the loans sued upon were owned by the NCSLTs;

k.      Whether Defendants P&F and Cheung violated the WCPA when they attempted to collect debts for the NCSLTs and TSI knowing that TSI and the NCSLTs did not have the schedule of loans that P&F and Cheung were attempting to collect upon and could not prove assignment of the debts.

l.      Whether Defendants P&F and Cheung engaged in unfair or deceptive practices in their business of debt collection outside their litigation activities.

m.      Whether Defendants engaged in unfair or deceptive practices in violation of the WCPA;

n.      Whether the NCSLTs acted in concert in directing their attorneys to attempt to collect on alleged student loan debts using affidavits containing false information, despite not having proof of assignments of the loans to the NCSLTs, and despite not having accurate loan balance information; and

o.      The nature and extent of classwide injury and the measure of compensation for such injury.

168.    **Typicality**. The claims of Plaintiffs are typical of the claims of the Class and Subclasses. They arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories. The collection actions that Defendants engaged in against Washington consumers that make up the Class and Subclasses are the same collection actions Defendant engaged in against the Plaintiffs. Defendants maintained NCSLT collection

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 36
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

lawsuits or sought to enforce judgments obtained in NCSLT lawsuits from all Plaintiffs and Class members. Defendants filed a TSI Affidavit in each and every action it maintained against Plaintiffs and Class members during the Class period.

169.   **Adequacy of Representation**. Plaintiffs are appropriate representatives for the Class and Subclasses and will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs understand and are willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class and Subclasses. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and have no interests that directly conflict with interests of the Classes. Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with experience in complex and class action litigation, including consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and Subclasses and have the financial resources to do so.

170.   **Predominance.** Defendants have a standard practice of maintaining lawsuits like those maintained against the Plaintiffs and the Class, and Defendants have a standard practice of filing TSI Affidavits like the ones filed in cases against the Plaintiffs and the Class. The common issues arising from this conduct predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

171.   **Superiority**. Plaintiffs and members of the Class and Subclasses have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 37
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class and Subclasses are readily identifiable from Defendants' records, and there will be no significant difficulty in the management of this case as a class action.

172. **Injunctive Relief**. Defendants' conduct is uniform to all members of the Class and Subclasses. Defendants have acted or refused to act on grounds that apply generally to the Class and Subclasses, so that final injunctive relief or declaratory relief is appropriate with respect to the Class and Subclasses as a whole.

173. Accordingly, class certification of the Class and Subclasses is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

## VI.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq., PER SE* VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT (Against Defendants TSI, P&F, and Cheung)

174. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs as though fully stated herein.

175. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

**A.      False, Deceptive, or Misleading Representations.**

176. Pursuant to 15 U.S.C. §§ 1692e(2)(a) and 1692e(10), the FDCPA prohibits debt collectors from making false representations of the character, amount, or legal status of any

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 38
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1   debt and from using any false representation or deceptive means to collect or attempt to collect

2   any debt or obtain information concerning a consumer.

3       177.    Defendants violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) by making

4   false, deceptive, and misleading representations to debtors and Washington courts concerning

5   the documents they possessed or reviewed that allegedly showed that the NCSLTs were

6   entitled to collect on student loan debt.

7       **B.    Unfair or Unconscionable Means to Collect or Attempt to Collect on a Debt.**

8

9       178.    Pursuant to 15 U.S.C. § 1692f, the FDCPA generally prohibits debt collectors

10  from engaging in "any unfair or unconscionable means to collect or attempt to collect the

11  alleged debt."

12      179.    Defendants violated 15 U.S.C. § 1692f by filing and sending as verification of

13  debt TSI employee affidavits that were misleading or false in order to obtain debt settlements,

14  default judgments, and summary judgments;

15      180.    Defendants' conduct in violation of the FDCPA proximately caused injury and

16  damages to Plaintiffs and Class members.

17

18      181.    In RCW 19.86.020, the WCPA provides that "unfair methods of competition

19  and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby

20  declared unlawful."

21      182.    A WCPA claim consists of the following elements: (1) an unfair or deceptive act

22  or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff

23  in his or her business or property; and (5) causation.

24

25      183.    The FDCPA violations are *per se* violations of the WCPA. Defendants' unfair

26  and deceptive acts and practices repeatedly occurred in trade and commerce, were capable of

27  THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 39
(Case No. C18-1132 TSZ)

deceiving a substantial portion of the public, and have already injured many hundreds, if not thousands, of Washington residents.

184.    Defendants' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiffs and Class members.

185.    Plaintiffs and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

186.    Plaintiffs and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants' continuing misconduct.

187.    Preliminary and injunctive relief is necessary to prevent further injury to Plaintiffs and Class members.

188.    Defendants' conduct in violation of the WCPA has proximately caused and continues to cause injury to Plaintiffs and Class members in their business or property.

189.    A juridical link exists between entities when they act in concert pursuant to an agreement among themselves. Plaintiffs and members of the proposed Class are entitled to the relief requested herein against all NCSLT Defendants because the NCSLTs' conduct created and creates the basis for relief under the juridical link doctrine.

190.    Plaintiffs and Class members are entitled to recover compensatory, special, and general damages as allowed by law.

191.    Plaintiffs and the Class are entitled to recover treble damages, attorneys' fees, and costs pursuant to RCW 19.86.090.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT, RCW 19.86 *et seq.*
### (Against All Defendants)

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 40
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

192.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Third Amended Complaint.

193.     Defendants are "persons" within the meaning of the WCPA, RCW 19.86.010(1) and conduct "trade" and "commerce" within the meaning of the WCPA, RCW 19.86.010(2).

194.     Plaintiffs and Class members are "persons" within the meaning of the WCPA. RCW 19.86.010(1).

195.     Defendants' actions described herein were unfair or deceptive acts or practices occurring in trade or commerce, and were capable of injuring a substantial number of Washington consumers. The unfair and deceptive acts include the following:

a.     Filing and/or sending Class members, including Plaintiffs, false and misleading affidavits in the attempted collection of debts;

b.     Entering into a Consent Order with the CFPB whereby Defendants agreed to discontinue collection on NCSLT accounts until which time Defendants could audit their records to determine collectability of accounts, but nevertheless continuing to collect on NCSLT accounts without performing the audit or determining the collectability of accounts;

c.     Knowingly filing false affidavits in Washington courts; and

d.     Taking all other actions described herein that violate applicable collection laws.

196.     Defendants' actions proximately caused and continue to cause injury to Plaintiffs and Class members in their business or property, which has damaged Plaintiffs and Class members.

197.     Defendants' actions warrant an injunction to protect Plaintiffs and other

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 41
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

Washington consumers from similar harm.

### VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

1.     For an order certifying the identified Class and Subclasses pursuant to Fed. R. Civ. P. 23(b)(2) and/or 23(b)(3), with Plaintiffs as the Class Representatives and the undersigned as Class Counsel;

2.     For an injunction preventing Defendants from all future collection attempts upon the alleged NCSLT loan debts of Plaintiffs and Class members, pursuant to RCW 19.86.090;

3.     For actual and compensatory damages pursuant to RCW 19.86, *et seq.* in an amount to be proven at trial, but no less than the sum of all amounts that Defendants have collected on judgments or claims against Class and Subclass members;

5.     For treble damages, pursuant to RCW 19.86 *et. seq.*;

6.     For costs and reasonable attorney's fees in an amount to be proven at trial, pursuant to RCW 19.86.090 and as otherwise allowed by law;

7.     For an award of pre-judgment and post-judgment interest at the highest allowable rate on all liquidated sums awarded to Plaintiffs and the Class and Subclasses as damages;

8.     For leave to conform the pleadings to the proof presented at trial; and

9.     For such other relief as the Court deems justice and equitable.


DATED this _____ day of _____ 2021.

THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 42
(Case No. C18-1132 TSZ)

Leonard Law
3614 California Ave SW, #151
Seattle, Washington 98116
Phone: 206-486-1176
Fax: 206-458-6028

1

***Attorneys for Plaintiffs*:**

2    LEONARD LAW                              BERRY & BECKETT, PLLP

3    _____                 _____

4    Sam Leonard, WSBA #46498                 Guy W. Beckett, WSBA #14939
     3614 California Ave SW, #151             1708 Bellevue Avenue
5    Seattle, Washington  98116              Seattle, WA  98122
     Telephone:  (206) 486-1176              Telephone:  (206) 441-5444
6    Facsimile:  (206) 458-6028              Facsimile:  (206) 838-6346
     E-mail:  sam@seattledebtdefense.com     E-mail:  gbeckett@beckettlaw.com
7

8    HENRY & DeGRAAFF, P.S.                    NORTHWEST CONSUMER LAW CENTER

9    _____                 _____

10   Christina L. Henry, WSBA #31273          Amanda N. Martin, WSBA #49581
     787 Maynard Ave S.                       936 North 34th Street, Suite 300
11   Seattle, WA  98104                       Seattle, WA 98103
     Telephone:  (206) 330-0595              Telephone:  (206) 805-0989
12   Facsimile:  (206) 400-7609              Facsimile:  (206) 805-1716
     E-mail:  chenry@HDM-legal.com            E-mail:  Amanda@NWCLC.org

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   THIRD AMENDED CLASS COMPLAINT                       Leonard Law
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR         3614 California Ave SW, #151
     VIOLATIONS OF THE WASHINGTON CONSUMER           Seattle, Washington 98116
     PROTECTION ACT - 43                                Phone: 206-486-1176
     (Case No. C18-1132 TSZ)                             Fax: 206-458-6028

EX. A

## UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING File
2017-CFPB-0018

| In the Matter of: | **CONSENT ORDER** |
| --- | --- |
| **TRANSWORLD SYSTEMS, INC.** | |

## I.
## Overview

The Consumer Financial Protection Bureau (Bureau) has reviewed the debt collections litigation practices of the Attorney Network business unit of Transworld Systems, Inc. ("TSI") ("Respondent"), the agent and Service Provider for fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs", or "the Trusts", which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4), and has identified violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA). Under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).

To collect on defaulted private student loans, Law Firms engaged by Respondent's Attorney Network business unit filed debt Collections Lawsuits in state

1



courts across the country on behalf of the Trusts. In support of many of these lawsuits, Respondent executed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, since November 1, 2014, Law Firms hired by Respondent filed hundreds of debt Collections Lawsuits without the documentation necessary to prove Trust ownership of the loans.

## II

## Jurisdiction

1.    The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

## III
## Stipulation

2.    Respondent has executed a "Stipulation and Consent to the Issuance of a Consent Order," dated September 14, 2017 (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondent has consented to the issuance of this Consent Order by the Bureau under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

## IV
## Definitions

2

**EX A**

3.     The following definitions apply to this Consent Order:

a.  "Affiant" means any signatory to an Affidavit, signing in his or her capacity as an employee or agent of Respondent, but excluding one signing solely as a notary or witness to the act of signing.

b.  "Affidavit" means any sworn statement filed with a court in connection with a Collections Lawsuit.

c.  "Board" means TSI's duly elected and acting Board of Directors.

d.  "Clearly and Prominently" means:

i.   as to written information: written in a type size and location sufficient for an ordinary consumer to read and comprehend it, and disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer; if the information is contained in a multi-page print document, the disclosure appears on the first page.

ii.  as to information presented orally: spoken and disclosed in a volume, cadence, and syntax sufficient for an ordinary consumer to hear and comprehend.

e.  "Collections Lawsuits" means attempts by a Law Firm engaged by Respondent's Attorney Network business unit, for an account owned or alleged to be owned by a Trust, through judicial processes in the United States of America, to collect or establish a Consumer's liability for a Debt.

f.  "Consumer" means any natural person obligated or allegedly obligated to pay any Debt.

3

**EX A**

g. "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

h. "Effective Date" means the date on which the Consent Order is issued.

i. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegate.

j. "Law Firm" means a law firm engaged by Respondent's Attorney Network business unit to collect student loan Debt on behalf of the National Collegiate Student Loan Trusts.

k. "Regional Director" means the Regional Director for the Northeast Region for the Office of Supervision for the Consumer Financial Protection Bureau, or his/her delegate.

l. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Respondent based on substantially the same facts as described in Section V of this Consent Order.

m. "Relevant Period" includes the period from November 1, 2014 to April 25, 2016.

n. "Respondent" means Transworld Systems, Inc., and its successors and assigns.

4

**EX A**

o. "Service Providers" means any service provider, as defined in section 1002(26) of the CFPA, 12 U.S.C. § 5481, that provides or provided services with respect to the servicing of the student loans owned by a NCSLT.

## V.

## Bureau Findings and Conclusions

The Bureau finds the following:

4.   The National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts") comprise fifteen (15) Delaware statutory trusts created between 2001 and 2007. The basic purpose of each Trust is to acquire a pool of student loans, enter into the so-called trust-related agreements, and provide for the administration of the Trusts and the servicing of student loans.

5.   The Trusts do not have any employees and all actions taken by the Trusts in connection with loan servicing and collecting Debt are carried out by third parties.

6.   Debt-collection activities on behalf of the Trusts are carried out by the successor special servicer's sub-servicer pursuant to servicing agreements with the successor special servicer.

7.   Sub-servicers that executed and notarized the deceptive affidavits did so as Service Providers and agents of the Trusts.

8.   Law Firms that filed lawsuits on behalf of the Trusts did so as Service Providers and agents of the Trusts.

5

**EX A**

9.     Respondent Transworld Systems, Inc. (TSI) is incorporated under the laws of the State of California and maintains a principal place of business in Ft. Washington, Pennsylvania.

10.    TSI maintains an office in Peachtree Corners, Georgia, where its employees execute and notarize affidavits for Collections Lawsuits brought on behalf of the Trusts.

11.    A national network of Law Firms engaged by Respondent file and prosecute Collections Lawsuits on behalf of the Trusts in courts across the country.

12.    TSI has operated as the successor sub-servicer to the successor special servicer of the Trusts since November 1, 2014.

13.    TSI is a "covered person" under 12 U.S.C. § 5481(6) because it is engaged in the collection of debt and is a Service Provider. 12 U.S.C. § 5481(15)(A)(x), (26).

14.    TSI is an agent and Service Provider of the Trusts.

**FALSE AND MISLEADING AFFIDAVITS AND TESTIMONY**

15.    In connection with collecting or attempting to collect Debt from Consumers, between November 1, 2014 and April 25, 2016, Law Firms hired by Respondent on behalf of the Trusts initiated 37,689 Collections Lawsuits in courts across the country on behalf of the Trusts.

16.    In support of the Collections Lawsuits, Law Firms submitted Affidavits executed by Respondent and documents in support of the Trusts' claims that Consumers owed Debts to a Trust.

17.    Respondent executed and notarized Affidavits–often with attached exhibits–that were used by Law Firms in many of the Collections Lawsuits

6



brought on behalf of the Trusts between November 1, 2014 and April 25, 2016.

18. In these Affidavits, the Affiants swore that they had personal knowledge of the education loan records evidencing the Debt. In fact, in numerous instances, Affiants lacked personal knowledge of the education loan records evidencing the Debt when they executed the Affidavits.

19. The Affiants also asserted that they were authorized and competent to testify about the Consumers' Debts through review of and "personal knowledge" of the business records, including electronic data in their possession. In fact, in certain instances, Affiants lacked personal knowledge of the business records, including the electronic data, showing that Consumers owed Debts to the Trusts. Affiants were instructed to review certain data on a computer screen as part of an effort to verify some information in the Affidavits about the Debts. Affiants, however, did not always know the source of the data on that screen, how the data was obtained or maintained, whether it was accurate, or whether that data meant that the Debt was in fact owed to the Trusts.

20. Each Affiant also swore that he/she had "personal knowledge of the record management practices and procedures of Plaintiff [the Trust] and the practices and procedures Plaintiff requires of its loan servicers and other agents." In fact, certain Affiants lacked personal knowledge of the record management practices and procedures of the Trusts and the practices and procedures the Trusts required of its loan servicers and other agents.

7

**EX A**

21.   In many Affidavits, the Affiants also stated that "I have reviewed the chain of title records as business records" regarding the relevant account. In some cases, Affiants did not possess the chain of title records but reviewed "chain of title" records that were found online on a government portal maintained by the Securities and Exchange Commission. In numerous instances, Affiants did not review the chain of title records prior to executing the Affidavits.

22.   In certain Affidavits, the Affiants asserted that they had personal knowledge that the loans were transferred, sold, and assigned to the plaintiff Trusts on dates certain. In fact, in numerous instances, Affiants lacked personal knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the subject loans.

23.   In some instances, certain Affiants complained to supervisors that they did not have personal knowledge of the representations made in the Affidavits. These affiants continued to execute Affidavits, however, for fear of losing their jobs.

24.   Affiants also provided live testimony in court, purportedly based on personal knowledge, similar to the statements made in the Affidavits as described in Paragraphs 18-22.

## FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

25.   From November 1, 2014 to April 25, 2016, on behalf of the Trusts, Law Firms filed numerous Collections Lawsuits against Consumers even though

8

**EX A**

the complete documentation needed to prove that the Trusts owned the loans did not exist.

26.   In these lawsuits, documentation of a complete chain of assignment evidencing that the subject loan was transferred to and owned by the Trust was lacking.

27.   In addition, Law Firms hired by Respondent on behalf of the Trusts filed numerous Collections Lawsuits where the loans in question were disbursed to the Consumers after the loans allegedly were transferred to the Trusts according to the chain of assignment documents.

28.   On numerous occasions, Law Firms hired by Respondent filed Collections Lawsuits even though the promissory note to prove that a Debt was owed did not exist.

29.   For each Collections Lawsuit described in Paragraphs 25-28, Law Firms hired by Respondent could not prove that a Debt was owed to the Trusts, if contested.

**Violations of the Consumer Financial Protection Act**

30.   Covered persons are prohibited from engaging "in any unfair, deceptive, or abusive act or practice" in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

31.   An act or practice is deceptive under the CFPA if it involves a material representation or omission that misleads, or is likely to mislead, a consumer acting reasonably under the circumstances.

32.   An act or practice is unfair if "(A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by

9

**EX A**

consumers; and (B) such substantial injury is not outweighed by countervailing benefits to consumers or competition." 12 U.S.C. § 5531(c)(1).

## FALSE AND MISLEADING COLLECTION AFFIDAVITS AND TESTIMONY

33. In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, Respondent executed Affidavits that were used by Law Firms with many of the Collections Lawsuits filed by Law Firms on behalf of the Trusts in courts across the country, and in live testimony, Respondent represented, directly or indirectly, expressly or by implication, that:

    a. Affiants had personal knowledge of the account records and the Debt;

    b. Affiants had personal knowledge of the chain of assignment records evidencing Trust ownership of the subject loan; and

    c. Affiants had personal knowledge of the record management practices and procedures of the Trusts and all prior servicers.

34. In fact, as described in Paragraphs 18 to 24, in numerous instances, these representations were either false or the Affiant did not have a basis for making the representation.

35. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a Collections Lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

**EX A**

36.     Thus, representations by Respondent, as described in Paragraphs 18-24, constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

37.     In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, Respondent, acting through the Law Firms hired by Respondent on behalf of the Trusts, represented, directly or indirectly, expressly or by implication, that it could be proven in the Collections Lawsuits that the Trusts owned the loans in question and that the Consumers in question owed Debts to the Trusts, if contested.

38.     In fact, in numerous instances, Respondent lacked the complete chain of assignment documentation needed to prove Trust ownership of the subject loans and the promissory note needed to prove the existence of certain loans.

39.     The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

40.     Thus, Respondent's representations, as described in Paragraphs 25-29, constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

41.     In addition, Respondent's acts and practices, caused or were likely to cause substantial injuries to consumers.

11

**EX A**

42.   The injuries to consumers included, but were not limited to, all payments made, including garnishments of wages and bank accounts, to settle Debts not enforceable.

43.   The injuries to consumers were not reasonably avoidable by consumers and were not outweighed by any countervailing benefits to consumers or to competition.

44.   Thus, Respondent's conduct, as described in Paragraph 25-29, constitutes unfair acts or practices in violation of sections 1031(c) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

## ORDER
## VI
## Conduct Provisions

**IT IS ORDERED**, under sections 1053 and 1055 of the CFPA, that:

45.   Respondent and its officers, Service Providers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

a.   Respondent shall take all actions necessary to comply with the terms of the Consent Order.

b.   Respondent must require that any Law Firm it retains in connection with the collection of student loans owned by the Trusts agree to abide by the terms and conditions of the Consent Order.

c.   Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed between November 1,



2014 and the Effective Date and that are missing the documentation described in subsection (f)(i)and (ii) of this Paragraph.

d.  Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed seeking Debt outside the statute of limitations and provide this information to the successor special servicer or any other Service Provider of the Trusts.

e.  Within one-hundred twenty (120) days of the Effective Date, Respondent must provide to the successor special servicer and to the Bureau for each Consumer named in the suits identified in Paragraph 45c and 45d: the Consumer's name, all available contact information for the Consumer (including information in the possession of the attorneys who filed the suit), and the total amount of all payments made by the Consumer on or after the date on which the suit was filed.

f.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not initiate a Collections Lawsuit to collect Debt unless Respondent possesses:

  i.  the documentation necessary to prove that a Trust owns the loan, including but not limited to, documentation reflecting the complete chain of assignment from the Debt's originator to the specific Trust claiming ownership; and

  ii.  a document signed by the Consumer, such as a promissory note, evidencing the agreement to pay the loan forming the basis of the Debt.

13

**EX A**

g. Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to initiate a Collections Lawsuit to collect on a loan for which the applicable statute of limitations has expired.

h. Respondent shall establish written policies requiring Law Firms to confirm that the applicable statute of limitations has not expired at the time of the filing of the Collections Lawsuit;

i. Respondent shall require Law Firms to provide a quarterly report to Respondent that includes, for each Collections Lawsuit, any data relevant to determining the applicable statute of limitations, such as date of lawsuit, date of default, and date of last payment, as well as identifies any lawsuits in which a consumer alleges in his pleadings that the lawsuit was filed outside the statute of limitations.

j. Respondent shall not collect any Debt through a Collections Lawsuit that Respondent knows or learns was filed outside the statute of limitations, and if any such cases are pending, Respondent shall seek the immediate withdrawal or dismissal of the lawsuit.

k. Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to collect any Debt through

14

**EX A**

Collections Lawsuits that Respondent or its agents have any reason to believe may be unenforceable.

l.  Respondent, its officers, agents, Service Providers, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, executing any Affidavit containing any misrepresentations, including false statements that:

   i.  the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

   ii.  the Affiant has personal knowledge of the Consumer's debt;

   iii.  the Affiant has personal knowledge of the loan's chain of assignment or ownership;

   iv.  the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership;

   v.  the Affidavit has been properly notarized if the Affidavit was not executed in the presence of a notary or if the notarization was otherwise not compliant with applicable notary laws; or

   vi.  certain documents or records concerning the Debt forming the basis of the Collections Lawsuit have been reviewed by the Affiant.

46.  Respondent, its officers, agents, Service Providers, servants, employees, and attorneys, and all other persons in active concert or participation with any

**EX A**

of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, providing any testimony that contains any misrepresentations, including false statements that the witness:

    a. is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

    b. has personal knowledge of the Consumer's debt;

    c. has personal knowledge of the loan's chain of assignment or ownership; or

    d. has personal knowledge of the documents relating to the loan's chain of assignment or ownership.

47. If Respondent determines that it engages in any conduct prohibited by this Order, including but not limited to Paragraphs 45-46 of this Order, Respondent promptly will take the necessary steps to ensure that it ceases any and all practices that violate this Order.

48. Within ten (10) days of making the determination described in Paragraph 47 Respondent must submit to the Regional Director a report detailing (a) the practices that violate the Order, (b) the specific agents engaged in the practices in question, and (c) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

49. With regard to pending Collections Lawsuits filed by a Law Firm in which Respondent executed an Affidavit that was filed in support of the pending Collection Lawsuit and that contains any misrepresentations—including but

**EX A**

not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to withdraw such Affidavit unless the Trusts dismiss the suit in which the Affidavit was filed. Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to notify the court of the following in writing and must also simultaneously provide the court with a copy of the Consent Order entered into between the Bureau and the Respondent: "Plaintiff withdraws the affidavit of [insert name of Affiant] pursuant to Consent Order entered into by the Consumer Financial Protection Bureau and Transworld Systems, Inc."

50.   With regard to Collections Lawsuits that were filed in which Respondent executed an Affidavit that was filed with a court or in arbitration, and a judgment was entered, that contained any misrepresentations—including but not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the

17

**EX A**

Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Respondent must instruct the Law Firms to cease post-judgment enforcement activities and Respondent will take the steps necessary, including getting permission from the successor special servicer, to instruct the Law Firms acting on behalf of the Trusts to seek to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any such Collections Lawsuits.

51. Respondents must cooperate in all respects with any directive from the successor special servicer acting on behalf of the Trusts to:

   a. Make certain disclosures in connection with the collection of Debt owned by the Trusts;

   b. Withdraw any Affidavit or Collection Lawsuit; or

   c. Provide loan information or documents to the successor special servicer, including but not limited to, information and documents related to:

      i. Whether certain loans owned by the Trusts are no longer legally enforceable because the applicable statute of limitations has expired;

      ii. Whether Collections Lawsuits have been filed on any loans where sufficient documentation, including signed promissory notes and

EX A

documentation reflecting the complete chain of assignment from the Debt's originator to the Collection Lawsuit's named plaintiff, is not in the possession, custody or control of the Collection Lawsuit's named plaintiff to prove the existence of the Debt owed to the named plaintiff, or where the applicable statute of limitations has expired; and

iii. Whether judgments were obtained in Collections Lawsuits described in Paragraph 51(c)(ii) and the identity of Consumers from whom the Trusts obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers.

## VII

## Compliance Plan

**IT IS FURTHER ORDERED** that:

52. Within ninety (90) days of the Effective Date, Respondent must submit to the Regional Director for review and determination of non-objection a compliance plan designed to ensure that the Attorney Network business unit of Respondent complies with all applicable Federal consumer financial laws with respect to Collections Lawsuits and the terms of this Consent Order (Compliance Plan). The Compliance Plan must include, at a minimum:

a. Detailed steps for addressing each action required by this Consent Order;

19



b.  Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers with respect to Collections Lawsuits;

c.  An effective employee training program required for all employees with any involvement in Collections Lawsuits, including but not limited to Affiants, whose duties include reviewing, executing, preparing, processing, verifying, , or notarizing of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

d.  Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

e.  Implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit;

f.  Comprehensive, written policies and procedures designed to ensure that any Law Firms engaged by Respondent to collect Debt do not violate any Federal consumer financial laws, which must include at a minimum:

    i.  the Law Firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

    ii.  the Law Firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and

**EX A**

Respondent's policies and procedures related to Collections Lawsuits;

iii.   Respondent's authority to conduct periodic onsite reviews of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

iv.   periodic review by Respondent of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

g.   Specific timeframes and deadlines for implementation of the steps described above.

53.   The Regional Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Respondent to revise it. If the Regional Director directs Respondent to revise the Compliance Plan, Respondent must make the revisions and resubmit the Compliance Plan to the Regional Director within thirty (30) days.

54.   After receiving notification that the Regional Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## VIII

## Role of the Board

**IT IS FURTHER ORDERED** that:

21

**EX A**

55. Respondent's Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order prior to submission to the Bureau.

56. Although this Consent Order requires Respondent to submit certain documents for the review or non-objection by the Regional Director, the Board will have the ultimate responsibility for proper and sound management of Respondent and for ensuring that Respondent complies with Federal consumer financial law and this Consent Order.

57. In each instance that this Consent Order requires the Board to ensure adherence to or perform certain obligations of Respondent, the Board must:

   a. Authorize whatever actions are necessary for Respondent to fully comply with the Consent Order;

   b. Require timely reporting by management to the Board on the status of compliance obligations; and

   c. Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## IX

## Order to Pay Civil Money Penalties

**IT IS FURTHER ORDERED** that:

58. Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Section V of this Consent Order, and taking

**EX A**

into account the factors in 12 U.S.C. § 5565(c)(3), Respondent must pay a civil money penalty of $2.5 million to the Bureau.

59. Within ten (10) days of the Effective Date, Respondent must pay $1.5 million of the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions. The remainder of the civil money penalty shall be paid in one installment within sixty (60) days of the Effective Date.

60. The civil money penalty paid under this Consent Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

61. Respondent must treat the civil money penalty paid under this Consent Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Respondent may not:

    a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Consent Order; or

    b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Consent Order.

62. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Respondent may not argue that Respondent is entitled to, nor may Respondent benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any

**EX A**

payment that the Bureau makes from the Civil Penalty Fund (Penalty Offset). If the court in any Related Consumer Action grants such a Penalty Offset, Respondent must, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## X

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

63. In the event of any default on Respondent's obligations to make payment under this Consent Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

64. Respondent must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Respondent.

65. Under 31 U.S.C. § 7701, Respondent, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Consent Order.

24

**EX A**

66. Within thirty (30) days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Respondent must notify the Regional Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Respondent paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

## XI

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

67. Respondent must notify the Bureau of any development that may affect compliance obligations arising under this Consent Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Order; the filing of any bankruptcy or insolvency proceeding by or against Respondent; or a change in Respondent's name or address. Respondent must provide this notice, if practicable, at least thirty (30) days before the development, but in any case no later than fourteen (14) days after the development.

68. Within ninety (90) days of the Effective Date, and again one year after the Effective Date, Respondent must submit to the Regional Director an

**EX A**

accurate written compliance progress report (Compliance Report) that has been approved by the Board, which, at a minimum:

    a.  Describes in detail the manner and form in which Respondent has complied with this Consent Order; and

    b.  Attaches a copy of each Order Acknowledgment obtained under Section XII unless previously submitted to the Bureau.

## XII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that,

69.    Within thirty (30) days of the Effective Date, Respondent must deliver a copy of this Consent Order to each of its board members as well as to any managers, employees, Service Providers, or other agents and representatives who have responsibilities related to the subject matter of the Consent Order.

70.    For five (5) years from the Effective Date, Respondent must deliver a copy of this Consent Order to any business entity resulting from any change in structure referred to in Section XI, any future board members or executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Consent Order before they assume their responsibilities.

71.    Respondent must secure a signed and dated statement acknowledging receipt of a copy of this Consent Order, ensuring that any electronic



signatures comply with the requirements of the E-Sign Act, 15 U.S.C.

§§ 7001-7031, within thirty (30) days of delivery, from all persons receiving

a copy of this Consent Order under this Section.

## XIII

## Recordkeeping

**IT IS FURTHER ORDERED** that

72. Respondent must create, or if already created, must retain for at least five (5) years from the Effective Date, the following business records:

   a. All documents and records necessary to demonstrate full compliance with each provision of this Consent Order, including all submissions to the Bureau.

73. Respondent must retain the documents identified in Paragraph 72 for the duration of the Consent Order.

74. Respondent must make the documents identified in Paragraph 72 available to the Bureau upon the Bureau's request.

## XIV

## Notices

**IT IS FURTHER ORDERED** that:

75. Unless otherwise directed in writing by the Bureau, Respondent must provide all submissions, requests, communications, or other documents relating to this Consent Order in writing, with the subject line, "*In re Transworld Systems, Inc.*, File No. Year-CFPB- 0018," and send them either:

   a. By overnight courier (not the U.S. Postal Service), as follows:



Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017]

or

b.  By first-class mail to the below address and contemporaneously by

email to Enforcement_Compliance@cfpb.gov:

Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017

## XV
## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

76.   Respondent must cooperate fully with the Bureau in this matter and in any

investigation related to or associated with the conduct described in Section

V. Respondent must provide truthful and complete information, evidence,

and testimony and Respondent must cause its officers, employees,

representatives, or agents to appear for interviews, discovery, hearings,

trials, and any other proceedings that the Bureau may reasonably request

upon ten (10) days written notice, or other reasonable notice, at such places

and times as the Bureau may designate, without the service of compulsory

process.

## XVI

## Compliance Monitoring

**EX A**

**IT IS FURTHER ORDERED** that, to monitor Respondent's compliance with this Consent Order:

77.   Within fourteen (14) days of receipt of a written request from the Bureau, Respondent must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

78.   Respondent must permit Bureau representatives to interview any employee or other person affiliated with Respondent who has agreed to such an interview. The person interviewed may have counsel present.

79.   Nothing in this Consent Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XVII
## Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

80.   Respondent may seek a modification to non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Regional Director.

81.   The Regional Director may, in his/her discretion, modify any non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) if he/she determines good cause justifies the modification. Any such modification by the Regional Director must be in writing.

**EX A**

## XVIII

### Administrative Provisions

82. The provisions of this Consent Order do not bar, estop, or otherwise prevent the Bureau, or any other governmental agency, from taking any other action against Respondent, except as described in Paragraph 83.

83. The Bureau releases and discharges Respondent from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in Section V of this Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Consent Order in future enforcement actions against Respondent and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Consent Order, or to seek penalties for any violations of the Consent Order.

84. This Consent Order is intended to be, and will be construed as, a final Consent Order issued under section 1053 of the CFPA, 12 U.S.C. § 5563, and expressly does not form, and may not be construed to form, a contract binding the Bureau or the United States.

85. This Consent Order will terminate five (5) years from the Effective Date or five (5) years from the most recent date that the Bureau initiates an action alleging any violation of the Consent Order by Respondent. If such action is dismissed or the relevant adjudicative body rules that Respondent did not

**EX A**

violate any provision of the Consent Order, and the dismissal or ruling is either not appealed or upheld on appeal, then the Consent Order will terminate as though the action had never been filed. The Consent Order will remain effective and enforceable until such time, except to the extent that any provisions of this Consent Order have been amended, suspended, waived, or terminated in writing by the Bureau or its designated agent.

86.   Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

87.   Should Respondent seek to transfer or assign all or part of its operations that are subject to this Consent Order, Respondent must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Consent Order.

88.   The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondent wherever Respondent may be found and Respondent may not contest that court's personal jurisdiction over Respondent.

89.   This Consent Order and the accompanying Stipulation contain the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Consent Order and the accompanying Stipulation. This Consent Order and the

31

**EX A**

accompanying Stipulation supersede any prior oral or written communications, discussions, or understandings.

90.   Nothing in this Consent Order or the accompanying Stipulation may be construed as allowing the Respondent, its Board, officers, or employees to violate any law, rule, or regulation.

**IT IS SO ORDERED**, this 15ᵗʰ day of September, 2017.

Richard Cordray
Director
Consumer Financial Protection Bureau

32

**EX A**

EX. B

UNITED STATES OF AMERICA

**CONSUMER FINANCIAL PROTECTION BUREAU**

**2017-CFPB-0018**

| | STIPULATION AND CONSENT |
| --- | --- |
| | TO THE ISSUANCE OF |
| | A CONSENT ORDER |
| In the matter of: | |
| TRANSWORLD SYSTEMS, INC. | |

The Consumer Financial Protection Bureau (Bureau) intends to initiate an administrative proceeding against Transworld Systems, Inc. (Respondent), under 12 U.S.C. §§ 5563 and 5565, for its unfair and deceptive practices with regard to Collections Lawsuits in violation of the CFPA's prohibition on unfair and deceptive acts or practices, 12 U.S.C. §§ 5531, 5536.

Respondent, in the interest of compliance and resolution of the matter, and without admitting or denying any wrongdoing, consents to the issuance of a Consent Order substantially in the form of the one to which this Stipulation and Consent to the Issuance of a Consent Order is attached (Consent Order), which is incorporated by reference.

In consideration of the above premises, Respondent agrees to the following:

### Jurisdiction

1. The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5563, 5565.

1

**EX B**

## Consent

2. Respondent agrees to the issuance of the Consent Order, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

3. Respondent agrees that the Consent Order will be deemed an "order issued with the consent of the person concerned" under 12 U.S.C. § 5563(b)(4), and agrees that the Consent Order will become a final order, effective upon issuance, and will be fully enforceable by the Bureau under 12 U.S.C. §§ 5563(d)(1) and 5565.

4. Respondent voluntarily enters into this Stipulation and Consent to the Issuance of a Consent Order.

5. The Consent Order resolves only Respondent's potential liability for law violations that the Bureau asserted or might have asserted based on the practices described in Section V of the Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. Respondent acknowledges that no promise or representation has been made by the Bureau or any employee, agent, or representative of the Bureau, about any liability outside of this action that may have arisen or may arise from the facts underlying this action or immunity from any such liability.

6. Respondent agrees that the facts described in Section V of the Consent Order will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding before the Bureau to enforce the Consent Order, or in any subsequent civil litigation by the Bureau to enforce the Consent Order or its rights to any payment or monetary judgment under the Consent Order.

EX B

7. The terms and provisions of this Stipulation and the Consent Order will be binding upon, and inure to the benefit of, the parties hereto and their successors in interest.

8. Respondent agrees that the Bureau may present the Consent Order to the Bureau Director for signature and entry without further notice.

## Waivers

9. Respondent, by consenting to this Stipulation, waives:

   a. Any right to service of the Consent Order, and agrees that issuance of the Consent Order will constitute notice to the Respondent of its terms and conditions;

   b. Any objection to the jurisdiction of the Bureau, including, without limitation, under section 1053 of the CFPA, 12 U.S.C. § 5563;

   c. The rights to all hearings under the statutory provisions under which the proceeding is to be or has been instituted; the filing of proposed findings of fact and conclusions of law; proceedings before, and a recommended decision by, a hearing officer; all post-hearing procedures; and any other procedural right available under section 1053 of the CFPA, 12 U.S.C. § 5563, or 12 C.F.R. pt. 1081;

   d. The right to seek any administrative or judicial review of the Consent Order;

   e. Any claim for fees, costs, or expenses against the Bureau, or any of its agents or employees, and any other governmental entity, related in any way to this enforcement matter or the Consent Order, whether arising under common law or under the terms of any statute, including, but not

EX B

limited to the Equal Access to Justice Act and the Small Business
Regulatory Enforcement Fairness Act of 1996; for these purposes,
Respondent agrees that Respondent is not the prevailing party in this
action because the parties have reached a good-faith settlement;

f.  Any other right to challenge or contest the validity of the Consent Order;

g.  Such provisions of the Bureau's rules or other requirements of law as may
be construed to prevent any Bureau employee from participating in the
preparation of, or advising the Director as to, any order, opinion, finding
of fact, or conclusion of law to be entered in connection with this
Stipulation or the Consent Order; and

h.  Any right to claim bias or prejudgment by the Director based on the
consideration of or discussions concerning settlement of all or any part of
the proceeding.

TRANSWORLD SYSTEMS, INC. BY:

_____          _____
Joseph Laughlin                                       SEPTEMBER 14, 2017
Chief Executive Officer                                       Date

4

EX B

EX. C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>        Plaintiff,<br><br>        v.<br><br>THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4, Delaware Statutory Trusts,<br><br>        Defendants. | Case No. |

# [PROPOSED] CONSENT JUDGMENT

EX C

Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), commenced this civil action against fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts"), which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4 on September 14, 2017, to obtain injunctive relief, damages and other monetary relief, and civil money penalties.

The Complaint alleges violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1).

Plaintiff and Defendants request that the Court enter this Consent Judgment. The parties have agreed to resolve this case without further litigation. The Defendants waive service, answering the Complaint, and consent to the entry of this Consent Judgment against them by this Court, the terms of which are set forth herein.

**FINDINGS**

1.   This Court has jurisdiction over the parties and the subject matter of this action.

2.   Plaintiff and Defendants agree to entry of this Order to settle and resolve all matters in this dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

3.   Defendants neither admit nor deny any allegations in the Complaint, except as specifically stated in this Order. For the purposes of this Order,

2

EX C

Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

4. Since at least November 1, 2012, in order to collect on defaulted private student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state courts across the country. In support of these lawsuits, Subservicers on behalf of Defendants executed and filed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, Defendants' Servicers on behalf of Defendants filed more than 2,000 debt collections lawsuits without the documentation necessary to prove Trust ownership of the loans or on debt that was time-barred. Finally, notaries for Defendants' Servicers notarized over 25,000 affidavits even though they did not witness the affiants' signatures.

5. Defendants waive any rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including without limitation attorneys' fees.

6. Entry of this Order is in the public interest.

## **DEFINITIONS**

7. The following definitions apply to this Order:

3

EX C

a.  "Administration Agreements" means the agreements by and among each of the Trusts and the Administrator dated November 1, 2001 (Master Trust); December 11, 2003 (NCSLT 2003-1); September 10, 2004 (NCSLT 2004-1); October 28, 2004 (NCSLT 2004-2); February 23, 2005 (NCSLT 2005-1); June 9, 2005 (NCSLT 2005-2); October 12, 2005 (NCSLT 2005-3); March 9, 2006 (NCSLT 2006-1); June 9, 2006 (NCSLT 2006-2); June 8, 2006 (NCSLT 2006-3); December 7, 2006 (NCSLT 2006-4); March 8, 2007 (NCSLT 2007-1); June 14, 2007 (NCSLT 2007-2); September 20, 2007 (NCSLT 2007-3); and September 20, 2007 (NCSLT 2007-4).

b.  "Administrator" means the Administrator, as defined in the Trust Indenture, providing certain duties of the Trusts pursuant to the Administration Agreements.

c.  "Affected Consumers" includes Consumers who are or were subject to a Collections Lawsuit filed by Defendants' agents on behalf of Defendants on or after November 1, 2012 to collect a Debt where (a) the documentation necessary to prove the existence of the Debt does not exist or cannot be located by Defendants; (b) the documentation necessary to prove Trust ownership of the Debt does not exist or cannot be located by Defendants; or (c) the lawsuit was time-barred.

d.  "Affiant" means any signatory to an Affidavit, other than one signing solely as a notary or witness to the act of signing, signing in his or her capacity as an employee or agent of Defendants,

4

EX C

including employees or agents of Defendants' Servicers or Subservicers.

e.    "Affidavit" means any sworn statement filed with a court in connection with litigation to collect on a Debt.

f.    "Board" means the registered owner of a majority of the beneficial interest in each of the Trusts.

g.    "Clearly and Prominently" means

  i.    as to written information: written in a type size and location sufficient for an ordinary consumer to read and comprehend it and disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer; if the information is contained in a multi-page print document, the disclosure appears on the first page.

  ii.   as to information presented orally: spoken and disclosed in a volume, cadence, and syntax sufficient for an ordinary consumer to hear and comprehend.

h.    "Collections Lawsuits" means attempts by Defendants' Servicers on behalf of Defendants (or a third party acting on their behalf for an account owned or alleged to be owned by Defendants) through judicial processes in the United States of America, to collect or establish a Consumer's liability for a Debt.

i.    "Consumer" means any natural person obligated or allegedly obligated to pay any Debt.

5

EX C

j.   "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services that are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

k.   "Effective Date" means the date on which the Order is entered on the docket by the Court.

l.   "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

m.   "Primary Servicer" means the Servicer servicing student loans for Defendants under the Amended and Restated Private Student Loan Servicing Agreement dated September 28, 2006.

n.   "Related Consumer Action" means a private action by or on behalf of one or more Consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

o.   "Relevant Period" includes the period from November 1, 2012 to the Effective Date.

p.   "Defendants" means any or all of the fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts," which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT

6

EX C

2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4) and their successors and assigns.

q.   "Servicer" (or "Trusts' Servicer") means any Servicer, Primary Servicer, Subservicer, Special Servicer, Administrator, and any other individual or entity acting on behalf of Defendants with respect to the servicing of the student loans owned by Defendants, whether retained directly by Defendants or retained by an individual or entity acting on behalf of Defendants.

r.   "Servicing Agreement" means any Servicing Agreement that meets the definition of Servicing Agreement in each Trust's Indenture.

s.   "Special Servicer" means the Servicer providing services to the Trusts with respect to defaulted and delinquent student loans under the Special Servicing Agreements dated March 1, 2009 and May 1, 2009 (the "Special Servicing Agreements").

t.   "Subservicer" means any service provider that was retained by, and contracted with, directly or indirectly, the Special Servicer, as an agent of the Special Servicer, to provide services, including default prevention, and collection services, including but not limited to litigation, with respect to the servicing of the student loans owned by Defendants.

u.   "The Trust Agreements" are the Trust Agreements creating each of the Trusts.

7

## ORDER

**IT IS ORDERED** that:

### I.  Conduct Requirements

8.     Defendants must provide all Defendants' Servicers that are engaged in the servicing or collection of Debts with actual notice of this Order within thirty (30) days of the Effective Date.

9.     Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

a.     Defendants shall take all actions necessary to comply with the terms of the Order, including but not limited to ensuring that all of Defendants' Servicers acting as Defendants' agents comply with the terms of the Order.

b.     Defendants must require that any of Defendants' Servicers or other agents retained by Defendants in connection with servicing or collection of student loans (1) agree to abide by the terms and conditions of the Order and (2) require any agents that Defendants' Servicers hire in connection with servicing or collection of student loans to abide by the terms and conditions of the Order.

c.     Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or

8

EX C

indirectly, may not initiate a Collections Lawsuit to collect Debt unless they possess:

   i.    the documentation necessary to prove that a Trust owns the loan, including but not limited to, documentation reflecting the complete chain of assignment from the Debt's originator to the specific Trust claiming ownership; and

   ii.   a document signed by the Consumer, such as a promissory note, evidencing the agreement to pay the loan forming the basis of the Debt.

d.   Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not initiate a Collections Lawsuit to collect on a loan for which the applicable statute of limitations has expired.

e.   Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not collect any Debt through Collections Lawsuits that Defendants or their agents have any reason to believe may be unenforceable.

f.   Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting

9

EX C

directly or indirectly, are permanently restrained and prohibited, in connection with the collection of a Debt, from submitting any Affidavit:

i.   containing an inaccurate statement;

ii.   in which the Affiant represents, expressly or by implication, that the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records when that is not the case;

iii.   in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the Consumer's Debt when that is not the case;

iv.   in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the loan's chain of assignment or ownership when that is not the case;

v.   in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership when that is not the case;

vi.   representing, expressly or by implication, that the Affidavit has been properly notarized if the Affidavit was not executed in the presence of a notary or if the notarization was otherwise not compliant with applicable notary laws; or

vii.   in which the Affiant represents, expressly or by implication, that any documents or records concerning the Debt that

10

EX C

forms the basis of the Collections Lawsuit have been reviewed by the Affiant when that is not the case.

10. Defendants are permanently restrained and prohibited from reselling Debt that is time-barred or for which Defendants lack the necessary documentation required by Paragraph 9(c) without obtaining the written agreement of the purchaser to comply with this Order.

11. Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, providing any testimony in a Collections Lawsuit that contains any misrepresentations, including false statements that the witness:

   a. is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

   b. has personal knowledge of the Consumer's Debt;

   c. has personal knowledge of the loan's chain of assignment or ownership; or

   d. has personal knowledge of the documents relating to the loan's chain of assignment or ownership.

12. If Defendants determine that any of their agents, including but not limited to all of Defendants' Servicers, are on behalf of Defendants engaging in any conduct prohibited by this Order, including but not limited to Paragraphs

11

EX C

9 and 11 of this Order, Defendants promptly will take the necessary steps to ensure that their agents cease any and all practices that violate this Order.

13. Within thirty (30) days of making any determination described in Paragraph 12, Defendants must submit to the Enforcement Director a report detailing (1) the practices that violate the Order, (2) the specific agents engaged in the practices in question, and (3) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

14. With regard to pending Collections Lawsuits in which Defendants, through actions taken by Defendants' Servicers acting on behalf of Defendants, have filed an Affidavit that contains any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must either withdraw the pending Collections Lawsuit or ensure that the Affidavit is withdrawn. Defendants must instruct their attorneys, Defendants' Servicers, and their agents to either withdraw the pending Collections Lawsuit or notify the court of the following in writing while simultaneously providing the court with a copy

12

EX C

of the Order entered into between the Bureau and Defendants: "Plaintiff withdraws the affidavit of [insert name of affiant] pursuant to an Order entered into by the Consumer Financial Protection Bureau and the National Collegiate Student Loan Trusts."

15. With regard to concluded Collections Lawsuits in which Defendants, through actions of Defendants' Servicers acting on behalf of Defendants, filed with a court or in arbitration an Affidavit that contained any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must instruct their attorneys, the Defendants' Servicers, and their agents to cease post-judgment enforcement activities and will seek, and will instruct their agents to seek, to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any such concluded Collections Lawsuits.

16. With regard to servicing of Debt owned by Defendants, Defendants shall within ten (10) days of the Effective Date (1) direct the Primary Servicer to cease transferring any Debt to the Special Servicer and any Subservicer and

13

EX C

instead retain possession of the Debt pending approval and implementation of the Compliance Plan provided for in Section III; (2) direct the Special Servicer and any Subservicer to suspend further collection efforts on all Debt owned by Defendants pending approval and implementation of the Compliance Plan provided for in Section III; (3) direct the Special Servicer and any Special Servicer agent to discontinue making outbound call attempts, sending collection letters, providing negative reports to any of consumer reporting agencies the credit bureaus, or other efforts as may be instructed by Defendants and are necessary to effectuate compliance with this Order; (4) direct the Primary Servicer to instruct the Special Servicer and all Subservicers to return to the Primary Servicer all student loans in their portfolio owned by Defendants that are completed and the subject of each monthly Compliance Audit Report described in Paragraph 20; and (5) direct Defendants' Servicers  to take any other appropriate actions necessary to effectuate compliance with this Order as instructed by the Defendants.

17.  Defendants shall direct (1) the Primary Servicer and Special Servicer to remit all payments from Consumers to an escrow account as designated by Defendants pursuant to Paragraph 18; (2) the Subservicer to remit funds to the Special Servicer and the Special Servicer to remit those payments to the escrow account as designated by Defendants pursuant to Paragraph 18; and (3) the Primary Servicer and Special Servicer to provide an itemized report to the Defendants identifying the payments remitted at the loan level in a format approved by the Defendants.

14

18.     Nothing in this Order shall prohibit Defendants or their Servicers from accepting payments from Consumers made in the regular course on Debt that is not subject to a Collections Lawsuit. All such payments shall be held in escrow until the requirements of Paragraphs 9(c)(1) and (2) are satisfied and Defendants have determined that sufficient loan documentation exists to either retain the payment or refund the amount paid as to be provided for in the Compliance Plan of Section III. Defendants may use funds from the escrow to carry out Trust operations, including payments to noteholders sufficient to avoid events of default under the Indenture Trust, auditors, consultants, accountants, legal counsel, and other necessary professionals.

## II. Compliance Audit

19.     Within thirty (30) days of the Effective Date, Defendants must secure and retain one or more qualified, independent consultants or auditors with specialized experience in the servicing of student loans, and acceptable to the Enforcement Director, to conduct an independent audit of all of the servicing and collecting conducted by Defendants' Servicers on student loans owned by Defendants from inception of each of the Trusts to the present, using procedures and standards generally acceptable to the student loan–servicing industry. The purposes of the Compliance Audit must be to determine, at a minimum:

a.      For each and every student loan, whether Defendants, or their agents (including Defendants' Servicers), have or ever had in their possession sufficient loan documentation, including signed

15

EX C

promissory notes and documentation reflecting the complete chain of assignment since the loan's origination, to support the claim that a Debt is currently owed to a Trust, including but not limited to, assignments from the Debt's originator to the Trust claiming ownership and any subsequent assignments by the Trust to a student loan guarantor (such as The Education Resources Institute or its successors);

b.   Whether certain loans owned by Defendants are no longer legally enforceable because the applicable statute of limitations has expired;

c.   Whether Collections Lawsuits have been filed on any loans for which sufficient documentation, including signed promissory notes and documentation reflecting the complete chain of assignment from the Debt's originator to the Collections Lawsuit's named plaintiff, is not in the possession of the Collections Lawsuit's named plaintiff, or a Defendants' Servicer acting on behalf of the named plaintiff, to prove the existence of the Debt owed to the Trust in question, or where the applicable statute of limitations has expired;

d.   Whether judgments were obtained in Collections Lawsuits described in Paragraph 19(c), the identity of Consumers from whom the Defendants obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers;

EX C

  e. Whether any student loans were disbursed to the Consumers after the loans allegedly were transferred to the Defendants;

  f. Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, have failed to comply with any Federal consumer financial law or any of the Servicers' Servicing Guidelines; and

  g. Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, are or have engaged in any practices on behalf of Defendants after the Effective Date that violate this Order.

20. Within one hundred and eighty (180) days of the Effective Date and each thirty (30) days thereafter until finished, the independent consultant(s) must provide a written report to Defendants detailing the findings of the audit (the "Compliance Audit Reports"). The Compliance Audit Report with respect to additional Affected Consumers shall be completed within one hundred and eighty (180) days of the Effective Date, and the remainder of the Compliance Audit Reports within three hundred and sixty (360) days of the Effective Date. The Compliance Audit Report shall include the auditors' findings, conclusions, and a description of its methodology.

21. Defendants must provide the Compliance Audit Reports to the Enforcement Director within fourteen (14) days of receipt by Defendants.

22. Within thirty (30) days of receiving the final Compliance Audit Report identified in Paragraph 20, Defendants must submit to the Enforcement

EX C

Director for review and non-objection an amendment to the Compliance

Plan ("Amended Compliance Plan") described in Section III to:

a.    ensure the withdrawal and dismissal without prejudice of any

pending Collections Lawsuits identified in Paragraph 19(c);

b.    ensure that Defendants and their agents, including but not limited

to any of Defendants' Servicers, will not take any steps to initiate

collections or furnish negative reports to consumer reporting

agencies, on loans identified in Paragraph 19(a), or accept payments

on any defaulted Debts, unless and until Defendants first verify the

existence of the documentation referenced in that subparagraph in

order to prove the existence of the Debt and the identity of the

current owner;

c.    ensure that Defendants and their agents, including but not limited

to any of Defendants' Servicers, will not take any steps to collect

Debts by any means on any loans identified in Paragraph 19(b)

without Clearly and Prominently disclosing to the Consumer as

follows:

i.    For those time-barred debts that generally cannot be

included in a consumer report under the provisions of the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(a), but

can be collected through other means pursuant to applicable

state law, Defendants will instruct their agents to include the

following statement: "The law limits how long you can be

sued on a debt and how long a debt can appear on your

18

EX C

credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

ii.    For those time-barred debts that can be collected through other means pursuant to applicable state law, and may be included in a consumer report under the provisions of FCRA, 15 U.S.C. § 1681c(a), Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

23.   Defendants and their agents are prohibited from making any representation or statement, or from taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in Paragraph 22.

24.   Defendants will be deemed to have complied with the disclosure requirements of Paragraph 22 if Defendants or their agents makes a disclosure to Consumers in a specific jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the disclosure required by Paragraph 22.

25.   The Enforcement Director will have the discretion to make a determination of non-objection to the Amended Compliance Plan or to direct the Defendants to revise it. If the Enforcement Director directs the Defendants to revise the Amended Compliance Plan, Defendants must

EX C

make the requested revisions and resubmit the Amended Compliance Plan to the Enforcement Director within thirty (30) days.

26. After receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Amended Compliance Plan.

27. Within thirty (30) days of receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants will provide the Amended Compliance Plan and the Compliance Audit Reports to Transworld Systems, Inc. ("TSI"), or, if applicable, to the Defendants' successor Special Servicer or Subservicer.

## III.   Compliance Plan

28. Within one hundred and twenty (120) days of the Effective Date, Defendants must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendants and Defendants' Servicers acting on their behalf comply with all applicable Federal consumer financial laws and the terms of this Order ("Compliance Plan"). The Compliance Plan must include, at a minimum:

   a.   Detailed steps for addressing each action required by this Order including operations meetings with the Primary Servicer;

   b.   Specific timeframes and deadlines for implementation of the steps described above; and

EX C

c. Comprehensive, written policies and procedures designed to ensure that any agents acting on behalf of the Defendants do not engage in practices in violation of this Order. These policies and procedures must include:

  i. Detailed steps for addressing each action required of the Defendants or their agents, including but not limited to the Defendants' Servicers, by this Order;

  ii. Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers including regular operations meetings with and audits of each Servicer and establishment of procedures to respond to exception requests;

  iii. An effective employee training program required for all of the agents' employees, including but not limited to Affiants, whose duties include reviewing, drafting, preparing, processing, verification, execution or notarization of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

  iv. Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

21

EX C

v.  Implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit; and

vi.  Comprehensive, written policies and procedures designed to ensure that any law firms engaged by any agent to collect Debt does not violate any Federal consumer financial laws, which must include, at a minimum:

(1)  the law firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

(2)  the law firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and the agent's policies and procedures related to Collections Lawsuits;

(3)  the agent's authority to conduct periodic onsite reviews of the law firm's controls, performance, and information systems related to Collections Lawsuits; and

(4)  periodic review by the agent of the law firm's controls, performance, and information systems related to Collections Lawsuits.

29.  The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct

22

EX C

Defendants to revise it. If the Enforcement Director directs Defendants to revise the Compliance Plan, Defendants must make the revisions and resubmit the Compliance Plan to the Enforcement Director within thirty (30) days.

30. After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## IV.   Role of the Board

31. The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Bureau.

32. Although this Order requires Defendants to submit certain documents for the review or non-objection by the Enforcement Director, the Board of Defendants will have the ultimate responsibility for proper and sound management of Defendants and for ensuring that Defendants comply with Federal consumer financial law and this Order.

33. In each instance that this Order requires the Board to ensure adherence to or perform certain obligations of Defendants, the Board must:

    a.    Authorize whatever actions are necessary for Defendants to fully comply with the Order;

    b.    Require timely reporting by Defendants' Servicers to the Board on the status of compliance obligations; and

23

**EX C**

c.    Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## V. Order to Pay Redress

34.    Within ten (10) days of the Effective Date, the Defendants must reserve or deposit into a segregated deposit account $3,500,000, for the purpose of providing redress to Affected Consumers as required by this Section.

35.    Within one-hundred and twenty (120) days of the Effective Date, the Defendants must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress to the previously identified Affected Consumers consistent with this Order ("Redress Plan"). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct Defendants to revise it. If the Enforcement Director directs Defendants to revise the Redress Plan, Defendants must make the revisions and resubmit the Redress Plan to the Enforcement Director within thirty (30) days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

36.    The Redress Plan must apply to all Affected Consumers and:

a.    Specify how Defendants will identify all Affected Consumers;

24

EX C

   b.    Provide processes for providing redress covering all Affected Consumers including providing redress for:

     i.    Affected Consumers where the documentation necessary to prove the existence of the Debt did not exist or cannot be located by Defendants;

     ii.    Affected Consumers where the documentation necessary to prove Trust ownership of the Debt did not exist or cannot be located by Defendants; and

     iii.    Affected Consumers who were subject to a Collections Lawsuit outside the applicable statute of limitations.

   c.    Include a description of the following:

     i.    Methods used to compile a list of potential Affected Consumers;

     ii.    Methods used to calculate the amount of redress to be paid to each Affected Consumer;

     iii.    Procedures for issuance and tracking of redress to Affected Consumers; and

     iv.    Procedures for monitoring compliance with the Redress Plan.

37.    The Redress Plan, at a minimum, must provide full restitution of all amounts collected since the initiation of the Collections Lawsuit filed against them from:

   a.    The approximately 2,700 Affected Consumers identified prior to the Effective Date, who paid approximately $3,500,000; and

EX C

     b.     The Affected Consumers identified by the Compliance Audit in Section II.

38.     The Redress Plan must describe the process for providing redress for Affected Consumers and must include the following requirements:

     a.     A timetable for providing restitution to Affected Consumers identified in Paragraph 37(a) and (b) that provides restitution to each group of Affected Consumers as soon as practicable;

     b.     Defendants must mail a bank check to each Affected Consumer along with a Redress Notification Letter (as defined below);

     c.     Defendants must send the bank check by United States Postal Service first-class mail, address correction service requested, to the Affected Consumer's last known address as maintained by Defendants' records;

     d.     Defendants must make reasonable attempts to obtain a current address for any Affected Consumer whose Redress Notification Letter or redress check is returned for any reason, using the National Change of Address System, and must promptly re-mail all returned letters and redress checks to current addresses, if any; and

     e.     Processes for handling any unclaimed funds.

39.     With respect to redress paid to Affected Consumers, the Redress Plan must include:

     a.     The form of the letter ("Redress Notification Letter") to be sent notifying Affected Consumers of the redress, which must include language explaining the manner in which the amount of redress

26

EX C

was calculated and a statement that the provision of the refund

payment is in accordance with the terms of this Order; and

    b.    The form of the envelope that will contain the Redress Notification

Letter.

40.    Defendants must not include in any envelope containing a "Redress

Notification Letter" any materials other than the approved letters and

redress checks, unless Defendants have obtained written confirmation

from the Enforcement Director that the Bureau does not object to the

inclusion of such additional materials.

41.    Within ninety (90) days of completion of the Redress Plan, Defendants

must submit a report ("Redress Plan Report") to the Enforcement

Director, which must include a review and assessment from an

independent auditor agreed upon by Defendants and the Enforcement

Director, on Defendants' compliance with the terms of the Redress Plan,

including:

    a.    The methodology used to determine the population of Affected

Consumers;

    b.    The redress amount for each Affected Consumer;

    c.    The total number of Affected Consumers;

    d.    The procedures used to issue and track redress payments;

    e.    The amount, status, and planned disposition of all unclaimed

redress payments; and

EX C

f.   A description of the work of independent consultants that Defendants have used, if any, to assist and review their execution of the Redress Plan.

42. Defendants must submit an Amended Redress Plan within thirty (30) days of the completion of the Compliance Audit with respect to additional Affected Consumers required by Section II that incorporates the results of that Audit. The amended Redress Plan must contemplate providing full restitution to all additional Affected Consumers identified in the Compliance Audit within 120 days of submission of the Amended Redress Plan.

43. Defendants must provide all of the relief to Consumers required by the Order, regardless of whether the total of such relief exceeds the amount reserved or deposited into a segregated account in this Section.

44. After completing the Redress Plan, if the amount of redress provided to Affected Consumers is less than $3,500,000, within thirty (30) days of the completion of the Redress Plan, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to Affected Consumers and $3,500,000.

45. The Bureau may use these remaining funds to pay additional redress to Affected Consumers. If the Bureau determines, in its sole discretion, that additional redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as

EX C

disgorgement. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

46.    Defendants may not condition the payment of any redress to any Affected Consumer under this Order on that Affected Consumer's waiving any right.

47.    With regard to the Debt that has yet to be collected from Affected Consumers for whom Defendants and their agents do not possess or cannot locate the documentation necessary to prove the existence of the Debt or Defendants' ownership of the Debt, Defendants must within one hundred and twenty (120) days of the Effective Date—and for Affected Consumers identified in the Compliance Audit Reports, within thirty (30) days of the completion of the Compliance Audit Reports—instruct that their agents within 90 days:

a.    Withdraw, dismiss, or terminate all pending Collections Lawsuits filed against Affected Consumers;

b.    Release or move to vacate all judgments obtained during the Relevant Time Period in connection with these Collections Lawsuits;

c.    Cease post-judgment enforcement activities and seek to remove, withdraw, or terminate its active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any Collections Lawsuits;

EX C

    d.    Refrain from (i) representing to a Consumer or any other person that Defendants are or were owed a Debt, (ii) taking any steps to collect or to seek to collect the Debt in question, (iii) furnishing reports on the Debt in question, except as otherwise required by this Order; and

    e.    Request that the consumer reporting agencies correct any affected collection account or tradeline, which may include amending, deleting, or suppressing the incorrect account or tradeline.

48.    With regard to time-barred Debt that has yet to be collected from Affected Consumers, Defendants and their agents will not take any steps to collect Debts by any means without Clearly and Prominently disclosing to the consumer:

    a.    For those time-barred debts that generally cannot be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), but can be collected through other means pursuant to applicable state law, Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

    b.    For those time-barred debts that can be collected through other means pursuant to applicable state law, and may be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), Defendants will instruct their agents to include the

30

EX C

following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

49.   Defendants and their agents are prohibited from making any representation or statement, or from taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in Paragraph 48.

50.   Defendants will be deemed to have complied with the disclosure requirements of Paragraph 48 if Defendants or their agents make a disclosure to Consumers in a specific jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the disclosure required by Paragraph 48.

## VI.   Order to Pay Disgorgement

51.   Defendants shall pay $7,800,000 as disgorgement for the proceeds they received from the unlawful practices related to the filing of Collections Lawsuits during the Relevant Period.

52.   Within ten (10) days of the Effective Date, Defendants shall pay the above amount in the form of a wire transfer to the Bureau or such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the CFPB. The Bureau will then transfer the payment to the United States Treasury as disgorgement.

53.   In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended,

31

EX C

will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

## VII.   Order to Pay Civil Money Penalty

54.   Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), the Defendants must pay a civil money penalty of $7,800,000 to the Bureau.

55.   Within ten (10) days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

56.   The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

57.   Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

a.   Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

b.   Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

58.   To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled

EX C

to, nor may Defendants benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset, Defendants must, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Enforcement Director, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VIII. Additional Monetary Provisions

59.   In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment and will immediately become due and payable.

60.   Defendants must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

61.   Under 31 U.S.C. § 7701, Defendants, unless they already have done so, must furnish to the Bureau their taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

62.   Within thirty (30) days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the

EX C

Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendants paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

## IX.   Reporting Requirements

63.   Defendants must notify the Enforcement Director of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' name or address. Defendants must provide this notice, if practicable, at least thirty (30) days before the development but in any case no later than fourteen (14) days after the development.

64.   Within one hundred and twenty (120) days of the Effective Date, and again one year after the Effective Date, Defendants must submit to the Enforcement Director an accurate written compliance progress report ("Compliance Report") that has been approved by the Board, which, at a minimum:

   a.   Describes in detail the manner and form in which Defendants have complied with this Order; and

34

EX C

    b.    Attaches a copy of each Order Acknowledgment obtained under Section X, unless previously submitted to the Enforcement Director.

## X. Order Distribution and Acknowledgment

65.    Within thirty (30) days of the Effective Date, Defendants must deliver a copy of this Order to each of their board members or owners as well as to any managers, employees, Servicers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

66.    For five (5) years from the Effective Date, Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section IX, any future board members, executive officers, or owners, as well as to any managers, employees, Servicers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

67.    Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001–31, within thirty (30) days of delivery, from all persons receiving a copy of this Order under this Section.

## XI.   Recordkeeping

68.    Defendants must create, or if already created, must retain for at least five (5) years from the Effective Date, the following business records:

    a.    All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

35

EX C

> b.   All documents and records pertaining to the Redress Plan, described in Section V.

69.   Defendants must retain the documents identified in Paragraph 68 for the duration of the Order.

70.   Defendants must make the documents identified in Paragraph 68 available to the Bureau upon the Bureau's request.

## XII.   Notices

71.   Unless otherwise directed in writing by the Enforcement Director, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*In re* [name of Respondent], File No. Year-CFPB-   ," and send them either:

> a.   By overnight courier (not the U.S. Postal Service), as follows:
>
> > Assistant Director for Enforcement
> > Consumer Financial Protection Bureau
> > ATTENTION: Office of Enforcement
> > 1625 Eye Street, N.W.
> > Washington D.C. 20006; or
>
> b.   By first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:
>
> > Assistant Director for Enforcement
> > Consumer Financial Protection Bureau
> > ATTENTION: Office of Enforcement
> > 1700 G Street, N.W.
> > Washington D.C. 20552

## XIII.   Cooperation with the Bureau

72.   Defendants must cooperate fully with the Bureau in this matter and in any investigation related to or associated with the conduct described in the Complaint. Defendants must provide truthful and complete information,

36

**EX C**

evidence, and testimony, and Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon five (5) days' written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XIV.  Compliance Monitoring

73.  Within fourteen (14) days of receipt of a written request from the Bureau, Defendants must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

74.  Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

75.  Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XV.  Retention of Jurisdiction

76.  The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

77.  Notwithstanding the provisions of Paragraph 76, any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties and without further Court approval. Additionally, details related to administration of §§ IX through XIV of this Order may be

EX C

modified by written agreement of the parties and without further Court approval. Any other modifications to this Order may be made only upon approval of the Court, upon motion by any party.

## XVI.  Administrative Provisions

78.  The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Order in future enforcement actions against Defendants and their affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order or to seek penalties for any violations of the Order.

79.  Should Defendants seek to transfer or assign all or part of its operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

**IT IS SO ORDERED.**

Dated: _____

_____
UNITED STATES DISTRICT JUDGE

38



Consented and agreed to:

FOR THE CONSUMER FINANCIAL PROTECTION BUREAU:

ANTHONY ALEXIS
*Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

/s/ Carolyn Hahn
Carolyn Hahn
(E-mail: Carolyn.Hahn@cfpb.gov)
(Phone: 202-435-7250
Edward Keefe
(E-mail: Edward.Keefe@cfpb.gov)
(Phone: 202-435-9198)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau

EX C

FOR THE NATIONAL COLLEGIATE STUDENT LOAN TRUSTS

Defendants National Collegiate Student Loan Trusts
Waive service and answer of the Complaint and
Consent to entry of this Consent Judgment.

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com

/s/ James A. Kosch
JAMES A. KOSCH
(E-mail: jkosch@mccarter.com)
(Telephone: 973-639-2028)
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Fax (973) 297-3964

40

EX C

**EXHIBIT 2**

The Hon. Thomas S. Zilly

1

2

3

4          UNITED STATES DISTRICT COURT
5         WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   ~~SECOND~~THIRD AMENDED CLASS COMPLAINT          Leonard Law
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR      ~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
     VIOLATIONS OF THE WASHINGTON CONSUMER                    #151
     PROTECTION ACT - 1                          Seattle, Washington ~~98154~~98116
     (Case No. C18-1132 TSZ)                        Phone: 206-486-1176
                                                     Fax: 206-458-6028

| | |
|---|---|
| 1   ESTHER HOFFMAN; SARAH DOUGLASS; ANTHONY KIM; and IL KIM and DARIA KIM, husband and wife and the marital community comprised thereof, on behalf of themselves and on behalf of others similarly situated, | NO.  C18-1132 TSZ |

ESTHER HOFFMAN; SARAH DOUGLASS;
ANTHONY KIM; and IL KIM and DARIA
KIM, husband and wife and the marital
community comprised thereof, on behalf of
themselves and on behalf of others similarly
situated,

                 Plaintiffs,

    vs.

TRANSWORLD SYSTEMS
INCORPORATED; PATENAUDE AND
FELIX, A.P.C.; MATTHEW CHEUNG, and the
marital community comprised of MATTHEW
CHEUNG and JANE DOE CHEUNG,
National Collegiate Student Loan Trust 2003-1,
National Collegiate Student Loan Trust 2004-1,
National Collegiate Student Loan Trust 2004-2,
National Collegiate Student Loan Trust 2005-1,
National Collegiate Student Loan Trust 2005-2,
National Collegiate Student Loan Trust 2005-3,
National Collegiate Student Loan Trust 2006-1,
National Collegiate Student Loan Trust 2006-2,
National Collegiate Student Loan Trust 2006-3,
National Collegiate Student Loan Trust 2006-4,
National Collegiate Student Loan Trust 2007-1,
National Collegiate Student Loan Trust 2007-2,
National Collegiate Student Loan Trust 2007-3,
National Collegiate Student Loan Trust 2007-4,
and National Collegiate Master Student Loan
Trust I,
~~and DOES ONE THROUGH TEN,~~

                 Defendants.

NO.  C18-1132 TSZ

~~SECOND~~THIRD AMENDED CLASS
COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON
CONSUMER PROTECTION ACT
(PROPOSED)

## I.  INTRODUCTION

Plaintiffs are Washington consumers to whom Defendants Transworld Systems

Incorporated ("TSI"), Patenaude and Felix, A.P.C. ("P&F"), Attorney Matthew Cheung

("Cheung"), and National Collegiate Student Loan Trusts made false and misleading

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 2
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1  representations and engaged in unfair and deceptive practices in the collection or attempted

2  collection of alleged student loan debt, interest, and charges using fraudulent, deceptive, and

3  misleading affidavits prepared by TSI employees (hereinafter collectively referred to as "the

4  Affidavits"). False affidavits were used by the Defendants to obtain default judgments and

5  orders of summary judgment in Washington state courts to later obtain settlements and garnish

6  wages and bank accounts. The Defendants are on notice of the problems since their

7  misrepresentations in affidavits led to a finding by the Consumer Financial Protection Bureau

8  ("CFPB") following an investigation that TSI's consumer collection lawsuits lacked admissible

9  
10  evidence to prove up their claims. Following the investigation TSI stipulated and consented to

11  the entry of a Consent Order in *In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018

12  (Sept. 18, 2017) (hereinafter "Stipulation" and "Consent Order"). Pursuant to the Stipulation,

13  TSI consented to the "Order" and "Compliance Plan" in the Consent Order therein.[1]

14  
15       Plaintiffs seek to enjoin Defendants' unlawful collection practices, to vacate any

16  unlawful judgments entered against Plaintiffs and the Class, and to recover damages to which

17  Plaintiffs and the Class are entitled.

18  **II.  JURISDICTION AND VENUE**

19       1.     This action was originally filed in King County Superior Court and was

20  removed by Defendants to this Court under 28 U.S.C. § 1331.

21       2.     After removal, Plaintiffs' federal claims were dismissed. This Court retains

22  
23  
---
[1] TSI consented to the issuance of the Consent Order by the CFPB without admitting or denying any of the findings of fact or conclusions of law, except as necessary to establish the CFPB's jurisdiction over TSI and the subject matter of the Consent Order. *See In the Matter of Transworld Systems, Inc.*, 2017-CFPB-0018, at 2 (available online at: http://s3amazonaws.com/files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_stipulation.pdf.)

24  
25  
26  
27  ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 3
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave, ~~Suite 3200~~ SW, #151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1  permissive supplemental jurisdiction over Defendants and the claims in this action under 28

2  U.S.C. § 1367.

3      3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), in that a

4  substantial part of the events giving rise to the claims occurred in this judicial district.

5  **III. PARTIES**

6      4.    Plaintiff Esther Hoffman ("Esther" or "Ms. Hoffman") is a person residing in

7  King County, Washington who is a "consumer" as that term is defined by 15 U.S.C.

8  § 1692a(3), and a "debtor" as that term is defined in RCW 19.16.100(7).

9

10      5.    Plaintiff Sarah Douglass ("Ms. Douglass") is a person residing in King County,

11  Washington who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a

12  "debtor" as that term is defined in RCW 19.16.100(7).

13      6.    Plaintiff Anthony Kim is a person residing in Snohomish County, Washington

14  who is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that

15  term is defined in RCW 19.16.100(7).

16

17      7.    Plaintiff Daria Kim is a person residing in Snohomish County, Washington who

18  is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is

19  defined in RCW 19.16.100(7).

20      8.    Plaintiff Il Kim is a person residing in Snohomish County, Washington who is a

21  "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and a "debtor" as that term is

22  defined in RCW 19.16.100(7).

23

24      9.    Defendants National Collegiate Student Loan Trust 2005-3, National Collegiate

25  Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-4, National

26

27  ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 4
(Case No. C18-1132 TSZ)

Leonard Law<br>~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,<br>#151<br>Seattle, Washington ~~98154~~98116<br>Phone: 206-486-1176<br>Fax: 206-458-6028

Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2007-4,

National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2006-

3, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust

2006-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan

Trust 2007-3, National Collegiate Student Loan Trust 2007-2, National Collegiate Student

Loan Trust 2005-2, ~~The~~ National Collegiate Master Student Loan Trust~~,~~ I, and National

Collegiate Student Loan Trust 2003-1 (hereinafter collectively, "NCSLTs") are Delaware

statutory trusts.

10.     The NCSLTs are "persons" for the purpose of the Washington Consumer

Protection Act, RCW 19.86, *et seq*. (the "WCPA").

11.     Since at least 2012, the NCSLTs have had agents collect debts on their behalf in

state courts across the country.

12.     The NCSLTs use agents to conduct collections and oversee law firms that file

collection lawsuits on their behalf. TSI, P&F, and Cheung are agents of the NCSLTs identified

as defendants in Paragraph No. 9 of this ~~Second~~Third Amended Complaint.

13.     Defendant TSI is a successor to NCO Financial Systems, Inc. (hereinafter

"NCO"). TSI is a corporation chartered under California law with principal offices at 150 N.

Field Drive, Suite 200, Lake Forest, Illinois 60045. It does business in Washington. Its

registered agent in Washington is CT Corporation System, 711 Capitol Way S., Ste. 204,

Olympia, Washington 98501.

14.     NCO and TSI are related entities. *See United States v Expert Global Solutions,*

*Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., NCO Financial*

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 5
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1    *Systems Inc., ALW Sourcing, LLC, Transworld Systems, Inc.*, 3:13cv2611 (N.D. Tex.).

2         15.    Among the debts that NCO collected and that TSI now collects are private

3    student loan obligations allegedly owed to a large number of NCSLTs.

4         16.    Defendant TSI is a "collection agency" as defined in Washington's Collection

5    Agency Act, RCW 19.16~, *et seq.* (the "WCAA"). TSI holds a Washington collection agency

6    license under UBI # 600-169-996.

7         17.    Defendant TSI seeks to collect on defaulted consumer debts that were originally

8    owed to others, using the mail, telephone, and electronic wire services to do so, all in the

9    general course of trade and commerce.

10

11        18.    Defendant TSI is also directly or indirectly engaged in soliciting claims for

12   collection or collecting or attempting to collect claims owed or due or asserted to be owed or

13   asserted to be due to another person.

14        19.    Defendant TSI is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

15        20.    Defendant TSI and its predecessor, NCO, have collected debt on behalf of the

16   NCSLTs since at least 2012. As part of their debt collection activities, TSI directs all collection

17   efforts against Washington consumers on behalf of the NCSLTs, including the conduct of

18   litigation filed in the name of NCSLTs against consumers in Washington State. All actions

19

20   alleged herein that were taken by Defendant TSI and its agents were taken for the benefit of

21   TSI and the NCSLTs.

22        21.    Defendant P&F is professional corporation doing business under the laws of

23   Washington. P&F's registered agent in Washington is Matthew Cheung, who conducts

24   business out of an office in Lynnwood, Washington.

25

26

27   ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR
     VIOLATIONS OF THE WASHINGTON CONSUMER
     PROTECTION ACT - 6
     (Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

22.     Defendant P&F is a licensed Washington collection agency whose activities in Washington are governed by the WCAA.

23.     Defendant P&F is a member of, or otherwise affiliated with, the Attorney Network of TSI.

24.     Defendant P&F and its lawyer in Washington, Matthew Cheung, has, by service and/or filing, commenced over 1,400 lawsuits in the state of Washington with the plaintiff identified in such cases as one or more of the NCSLTs.

25.     Defendant P&F sends collection letters to Washington consumers who allegedly have loans included in the NCSLTs.

26.     Defendant P&F collects money from consumers and communicates with consumers prior to filing suit.

27.     Defendant P&F is directly or indirectly engaged in soliciting claims for collection or collecting or attempting to collect claims owed or due or asserted to be owed or asserted to be due to another person.

28.     Defendant P&F is engaged in a business, the principal purpose of which is the collection of debts, and regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

29.     Defendant P&F is a "debt collector" within the meaning of 15 U.S.C. §1692a(6). P&F is a "collection agency" as that term is defined in the WCAA. P&F is a "person" as that term is defined in the WCPA and engages in "trade" and "commerce" as those terms are defined in the WCPA. All actions alleged herein that were taken by Defendant P&F and its agents were taken for the benefit of P&F, TSI, and the NCSLTs.

SECONDTHIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 7
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

30.    Defendant P&F regularly uses the telephone in its attempts to collect debts.

31.    Defendant P&F uses the instrumentalities of interstate commerce and the United States Postal Service ("mail") in its business.

32.    Defendant P&F uses the "mail" in its attempts to collect debts.

33.    Defendant Cheung is an attorney licensed to practice law in Washington, and he practices law from an office address in Lynnwood, Washington. All actions taken by Cheung alleged herein were taken for his personal benefit, for the benefit of his marital community, and for the benefit of P&F, TSI, and the NCSLTs.

34.    In Washington, Cheung collects and attempts to collect debts referred to him by TSI and the NCSLTs, and he is engaged in a business in which he regularly collects and attempts to collect, directly or indirectly, debts alleged to be due another.

35.    Defendant Cheung seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone, and electronic wire services to do so, all in the general course of trade and commerce.

36.    Defendant Cheung is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

37.    The actions of Mr. Cheung on behalf of P&F were conducted in trade or commerce and primarily in connection with P&F's business as a collection agency.

38.    When P&F and Cheung collect or attempt to collect debts referred to them by NCO, TSI, and the NCSLTs, they act as agents for the NCSLTs and for TSI.

39.    TSI knows the collection methods and procedures that P&F and Cheung use, controls P&F's and Cheung's collection activities, and exercises that right as it deems

SECOND THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 8
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th 3614 California Ave, Suite 3200 SW, #151
Seattle, Washington 98154 98116
Phone: 206-486-1176
Fax: 206-458-6028

1   necessary.

2       40.     P&F is also fully aware of, countenanced, permitted, and encouraged the actions

3   of its employee, Matthew Cheung, as set forth in this ~~Second~~Third Amended Complaint.

4       41.     Plaintiffs allege on information and belief that each Defendant herein is acting in

5   concert with, and is the agent and/or employee of, each other Defendant. Plaintiffs also allege

6   on information and belief that the interests of all Defendants have been so unified that their

7   separate personalities no longer exist and that if the acts of the corporate Defendants are treated

8   as those of the corporation alone, an inequitable result will follow.

9

10                              **IV.  FACTS**

11  **A. Plaintiff Esther Hoffman.**

12      42.     In 2004, Esther took out a student loan with Bank of America in the amount of

13  $6,000.00.

14      43.     Esther's mother, Pat Hoffman (hereinafter "Pat"), agreed at the time the loan

15  was taken out that she would make the payments on the student loan.

16

17      44.     Pat failed to make those payments.

18      45.     Nine years later, Esther found out that her mother was served with a summons

19  and complaint naming Esther as a defendant in an action brought by National Collegiate

20  Student Loan Trust 2004-2 (hereinafter referred to individually as "NCSLT 2004-2"). <u>That</u>

21  <u>complaint was dated December 13, 2013.</u> Esther had not heard of NCSLT 2004-2 or P&F

22  and/or Mr. Cheung, who were listed as counsel for NCSLT 2004-2 in the complaint. Because

23  the NCSLTs represented that they owned Esther's student loans and that they could prove the

24  same, Esther began making small payments to P&F because she could not afford to defend

25

26  ~~SECOND~~<u>THIRD</u> AMENDED CLASS COMPLAINT
27  FOR INJUNCTIVE RELIEF AND DAMAGES FOR
    VIOLATIONS OF THE WASHINGTON CONSUMER
    PROTECTION ACT - 9
    (Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~<u>3614 California</u> Ave<u>,</u> ~~Suite 3200~~ <u>SW,</u>
<u>#151</u>
Seattle, Washington ~~98154~~<u>98116</u>
Phone: 206-486-1176
Fax: 206-458-6028

1   herself in court.

2   46.     Due to a serious physical injury, Esther became unable to continue making the

3   agreed monthly payments.

4   47.     On June 8, 2016, P&F filed with the Snohomish County Superior Court the

5   summons and complaint it had served on Esther's mother.

6   48.     On August 25, 2016, NCSLT 2004-2, through P&F, filed a Motion and

7   Declaration for Default and Judgment signed by Cheung. The proposed Order of Default and

8   Default Judgment, which were granted, included an award of $833.66 in interest and $337.50 in

9   costs.

10  49.     In support of the Motion and Declaration for Default and Judgment, Defendants

11  filed the "Affidavit and Verification of Account" of Dudley Turner ("Turner"), a TSI

12  employee.

13  50.     In Turner's affidavit, he declared "under penalty of perjury under the laws of the

14  forum" that:

15      a.  He was "competent and authorized to testify relating to this action through

16          personal knowledge of the business records, including the electronic data, sent

17          to TSI that detail the education loan records"; and

18      b.  He had "personal knowledge of the record management practices and

19          procedures of [NCSLT 2004-2] and the practices and procedures [NCSLT 2004-

20          2] requires of its loan servicers and other agents."

21  51.     Attached to Turner's affidavit was a "Pool Supplement" (hereinafter "2004-2

22  Pool Supplement") pulled from the Securities and Exchange Commission's ("SEC's") online

SECOND̶THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 10
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th̶3614 California Ave̶, Suite 3200 SW,
#151
Seattle, Washington 98154̶98116
Phone: 206-486-1176
Fax: 206-458-6028

archives, "EDGAR." The Pool Supplement states,

> In consideration of the Minimum Purchase Price set forth in Schedule 1 attached hereto, [First Marblehead Corporation and Bank of America, N.A.] hereby sells, sets over and assigns to the National Collegiate Funding LLC [...] each student loan set forth on the attached Schedule 2....
>
> [National Collegiate Funding LLC] in turn will sell the Transferred Bank of America Loans to the [NCSLT 2004-2].

52.     Attached to the 2004-2 Pool Supplement was a document titled "Schedule 2" (hereinafter "2004-2 Schedule 2"). It did not contain a list of loans. It stated: "On file with the Indenture Trustee."

53.     Also attached to the Turner Affidavit was a document titled "Deposit and Sale Agreement The National Collegiate Student Loan Trust 2004-2" (hereinafter "2004-2 Sale Agreement").

54.     The Sale Agreement 2004-2 is between The National Collegiate Funding LLC as seller and NCSLT 2004-2 as purchaser. It states that the "[2004-2] Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto...." Schedules A and B are attached to the Sale Agreement, and they give descriptions of loan types that were being sold, but not the names of individual borrowers or loan account numbers. Schedule 2 is not attached to Schedules A or B.

55.     Neither the 2004-2 Pool Supplement nor the 2004-2 Sale Agreement are mentioned in Turner's affidavit.

56.     On information and belief, none of the defendants know the location of the 2004-2 Schedule 2.

SECONDTHIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 11
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

57.     On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2004-2 Schedule 2, and they are aware that it is lost.

58.     NCSLT 2004-2, through P&F, filed Applications for Writs of Garnishment seeking to collect on the Hoffman judgment on November 29, 2016; February 10, 2017; March 21, 2017; May 23, 2017; August 1, 2017; and September 29, 2017. All were signed by Cheung, and all sought amounts in addition to the principal balance of the judgment.

59.     All garnishment paperwork was sent directly to Ms. Hoffman or her parents, not her attorney.

60.     The August 2017 garnishment was directed to Ms. Hoffman's US Bank account.

61.     The only funds Ms. Hoffman kept in the US Bank account were her disabled brother's social security payments, which she managed for him.

62.     Ms. Hoffman had to spend time working with US Bank ensuring those funds were not garnished and were properly exempted.

63.     After the Default Judgment was entered on November 4, 2016, Ms. Hoffman hired an attorney to investigate the debt underlying the default judgment and the default judgment, and to help her settle the account if she in fact owed the debt to the NCSLT 2004-2. Ms. Hoffman has paid her attorney $1,500.00 to investigate Defendants' collection attempts, review the underlying documents, review the court file and attempted garnishments, advise her on what her options were, and attempt to settle her account. Ms. Hoffman still owes her attorney legal fees for his investigation of the debt and other legal services relating to Defendants' collection attempts and the judgment they obtained.

64.     On September 18, 2017, TSI entered into a Consent Order with the CFPB

SECOND THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 12
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th 3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 98154 98116
Phone: 206-486-1176
Fax: 206-458-6028

1    pursuant to which it agreed that it would cease collection on loans allegedly owned by the

2    NCSLTs for which it used a TSI employee declaration like Turner's, because the CFPB found

3    many of them to not be truthful.

4        65.    On October 5, 2017, Ms. Hoffman's attorney, Sam Leonard, sent Cheung a

5    letter demanding that he cease all collection efforts against Ms. Hoffman, vacate the judgment

6    against her, and dismiss the action with prejudice because of the Consent Order. A copy of the

7    Consent Order was attached to Sam Leonard's letter.

8        66.    Over two weeks later, Esther received a letter in the mail from P&F signed by

9    Cheung dated October 20, 2017 that included copies of a new Writ of Garnishment and

10   Application for Writ of Garnishment to Umpqua Bank.

11

12       67.    Ms. Hoffman spent money and time investigating the debt that the Defendants

13   claim she owes them. She spent money and time working with an attorney to try and settle the

14   account, including the default judgment that she has now learned was likely obtained with a

15   false declaration. Ms. Hoffman has never seen the schedules that Defendants' agents relied

16   upon to obtain the judgment, despite spending money to hire an attorney to investigate the

17   proof of assignment.

18

19   **B. Plaintiff Sarah Douglass.**

20       68.    Plaintiff Sarah Douglass ("Sarah") is a King County resident.

21       69.    In 2005, Sarah took out a student loan with Bank of America in the amount of

22   $2,000.00.

23

24       70.    In 2006, Sarah took out a student loan with Bank of America in the amount of

25   $2,500.00.

26

27   SECOND~~THIRD~~ AMENDED CLASS COMPLAINT
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR
     VIOLATIONS OF THE WASHINGTON CONSUMER
     PROTECTION ACT - 13
     (Case No. C18-1132 TSZ)

Leonard Law
1001 4th 3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 98154 98116
Phone: 206-486-1176
Fax: 206-458-6028

71.     Over ten years later, Sarah found out that National Collegiate Student Loan Trust 2006-3 (hereinafter referred to individually as "NCSLT 2006-3") had filed two separate lawsuits against her and had obtained default judgments against her in each case without first properly serving her with copies of the summons and complaints. Sarah found out about the default judgments after receiving copies of them in the mail from P&F and Cheung in June 2017.

72.     On April 24, 2017, P&F filed the summons and complaint in both cases with the King County, Washington, Superior Court.

73.     On April 25, 2017, NCSLT 2006-3, through P&F, filed Motions and Declarations for Default and Judgment signed by Cheung. In King County Superior Court Case No. 17-2-10604-6, the proposed Order of Default and Default Judgment, which was entered by the Court, included an award of $233.83 in interest and $395.80 in costs. In King County Superior Court Case No. 17-2-10605-4, the proposed Order of Default and Default Judgment, which was entered by the Court, included an award of $165.10 in interest and $395.80 in costs.

74.     In support of the Motions and Declarations for Default and Judgment, Defendants filed the "Affidavit and Verification of Account" of Brian Jackson ("Jackson").

75.     In Jackson's affidavit, he declared "under penalty of perjury under the laws of the forum" that:

   a.   He was "competent and authorized to testify regarding this educational loan through personal knowledge of the business records maintained by TSI as custodian of records, including the electronic data provided to TSI related to Defendant's educational loan, and the business records attached to this

SECOND THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 14
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th 3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 98154 98116
Phone: 206-486-1176
Fax: 206-458-6028

1        Affidavit….”

2        76.    Attached to Jackson's affidavit was a "Pool Supplement" (hereinafter "2006-3

3   Pool Supplement") pulled from the SEC's EDGAR online archives. The Pool Supplement

4   states,

5              In consideration of the Minimum Purchase Price set forth below, [First
6              Marblehead Corporation and Bank of America, N.A.] hereby transfers,
               sells, sets over, and assigns to The National Collegiate Funding LLC
7              […] each student loan set forth on the attached Schedule 1….

8              [National Collegiate Funding LLC] in turn will sell the Transferred Bank
               of America Loans to the [NCSLT 2006-3].
9

10        77.    Attached to the Jackson Affidavit was a document titled "Deposit and Sale

11   Agreement The National Collegiate Student Loan Trust 2006-3" (hereinafter "2006-3 Sale

12   Agreement.")

13        78.    The Sale Agreement 2006-3 is between The National Collegiate Funding LLC

14   as seller and NCSLT 2006-3 as purchaser. It states that the "[2006-3] Sale Agreement sets forth

15   the terms under which the Seller is selling and the Purchaser is purchasing the student loans

16   listed on Schedule 2 to each of the Pool Supplements set forth on <u>Schedule A</u> attached
17

18   hereto…." Schedules A and B are attached to the Sale Agreement and they give descriptions of

19   loan types that were being sold, but not the names of individual borrowers or loan account

20   numbers. Schedule 2 is not attached to Schedule A or B.

21        79.    Neither the 2006-3 Pool Supplement nor the 2006-3 Sale Agreement are

22   mentioned in Jackson's affidavit.
23

24        80.    On information and belief, none of the Defendants know the location of the

25   2006-3 Schedule 2.

26

27   <s>SECOND</s>THIRD AMENDED CLASS COMPLAINT
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR
     VIOLATIONS OF THE WASHINGTON CONSUMER
     PROTECTION ACT - 15
     (Case No. C18-1132 TSZ)

Leonard Law
<s>1001 4th</s>3614 California Ave<s>, Suite 3200</s> SW,
#151
Seattle, Washington <s>98154</s>98116
Phone: 206-486-1176
Fax: 206-458-6028

81.     On information and belief, Defendants TSI, P&F, and Cheung have never seen or reviewed the 2006-3 Schedule 2, and they are aware that it is lost. On November 3, 2017, Sarah's attorney, Amanda N. Martin, filed a Motion to Set Aside Default Order and Judgment based on the improper service of the summons and complaints in each case: King County Superior Court Case No. 17-2-10605-4 and King County Superior Court Case No. 17-2-10605-6. Each Motion states that the CFPB filed a complaint against Defendants NCSLTs and that TSI entered into the Consent Order with the CFPB. Copies of the Motions with the Consent Order were served on NCSLT 2006-3, P&F, and Cheung.

82.     On November 17, 2017, the King County Superior Court entered orders vacating the default orders and judgments entered in both cases.

83.     On March 20, 2017, an Order Dismissing Case was entered in Case No. 17-2-10605-4 upon NCSLT 2006-3's Motion to Dismiss.

84.     On August 1, 2018, a Clerk's Order of Dismissal was entered in Case No. 17-2-10604-6.

85.     Ms. Douglass spent time and money investigating the default judgment and underlying debt Defendants claim she owes. Ms. Douglass had to take time off work and paid bus fare to attend a legal aid clinic and later to meet with her attorney. While at the legal clinic, Ms. Douglass paid to print copies of the pleadings filed in the two cases so that she could investigate the validity of the default judgment and underlying debt.

**C.  Plaintiffs Anthony Kim, Il Kim, and Daria Kim.**

86.     From 2005 to 2007, while enrolled in the business program at St. John's University in New York City, Anthony Kim ("Anthony") took out a number of federal and

SECOND~~THIRD~~ AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 16
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

private student loans, including a total of six student loans from Bank One (which later merged with JP Morgan Chase Bank) and Bank of America in the amount of $76,500.00.

87.     Anthony graduated from St. John's in 2008.

88.     On January 23, 2015, Daria Kim ("Daria,") Anthony's mother, was served with a summons for a case filed by P&F on behalf of National Collegiate Student Loan Trust 2005-2 (Snohomish County Superior Court Case No. 15-2-04465-4) against Anthony Kim and Il Kim ("Il"), Anthony's father and Daria's husband. Daria immediately informed her husband and son about the summons when she received it.

89.     Daria Kim has declared under penalty of perjury that she did not receive any summonses related to the lawsuits initiated by the Defendants against the Kims individually or collectively (Snohomish County Superior Court Case No's. 15-2-03144-7, 15-2-03146-3, 15-2-04014-4, 15-2-04015-2, and 15-2-04016-1), despite the Defendants' claims to the contrary, and that she would have given all of the documents to her son if she had received any other summons.

90.     On January 31, 2015, Anthony responded to the suit for which his mother had been served by filing a Pro Se Notice of Appearance in Snohomish County Superior Court Case No. 15-2-04465-4, and delivering a copy thereof to Defendants P&F and Cheung.

91.     The Kims did not know whether NCSLTs were the true owners of their loans since they had lost track of who owned the private student loans, so they relied on the misrepresentations made by the Defendants that NCSLTs were in fact the owners of these loans.

92.     In response to the lawsuits, the Kims contacted P&F related to Snohomish

SECONDTHIRD AMENDED CLASS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT - 17 (Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW, #151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

County Superior Court Case No. 15-2-04465-4 in good faith to set up an arrangement with P&F to pay $50.00 a month on the alleged debt that was the subject of that case.

93.     In accord with their promise, the Kims paid $50 a month for January, February, March, April, and May 2015 while trying to work out a more permanent agreement. They were led to believe this payment plan pertained to any and all outstanding accounts with the NCSLTs.

94.     However, in June 2015, Anthony received notification that P&F had initiated garnishment proceedings against him on behalf of National Collegiate Student Loan Trusts 2005-2, 2005-3, 2006-1, and 2007-4.

95.     It was only at this time that Anthony and his parents learned of the existence of the four other lawsuits that P&F had filed against them, and of the fact that P&F had obtained default judgments against them individually and collectively for each student loan without first properly serving any of them with copies of the summons and complaints for the cases.

96.     In August 2015, the NCSLTs initiated garnishment proceedings against Daria and Il.

97.     Before the garnishments stopped, the National Collegiate Student Loan Trust 2005-2 ("NCSLT 2005-2") succeeded in garnishing Anthony's bank account in the amount of $2,182.08.

98.     In support of their Motions and Declarations for Default and Judgment against the Kims, Defendants filed five separate "Affidavit and Verification of Account" documents sworn to by Dudley Turner.

99.     In these affidavits, Turner declares "under penalty of perjury under the laws of

SECOND̶THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 18
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th̶3614 California Ave, Suite 3200 SW, #151
Seattle, Washington 9815̶498116
Phone: 206-486-1176
Fax: 206-458-6028

the forum" that:

    a.   TSI is the "designated Custodian of Records for Plaintiff pertaining to the Defendants' education loan(s)";

    b.   He was "competent and authorized to testify relating to this action through personal knowledge of the business records, including the electronic data, sent to TSI that detail the education loan records";

    c.   He had "personal knowledge of the record management practices and procedures of [the NCSLTs] and the practices and procedures [the NCSLTs] requires of its loan servicers and other agents."

100.    Attached to Turner's affidavits for Snohomish County Superior Case No's. 15-2-04015-2 and 15-2-040161 were documents titled "Pool Supplement," which purport to document the transfer of student loans from Bank One to NCSLTs 2006-1 and 2005-3, respectively, pulled from the SEC's EDGAR online archives. Both Pool Supplements state,

> In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to the National Collegiate Funding, LLC (the "Depositor") ... each student loan set forth on the amended Schedule.... The Depositor in turn will sell the Transferred Bank One Loans to the National Collegiate Student Loan Trust ....

101.    The Pool Supplements included attachments titled "Schedule 2" and "Schedule 1," respectively. They did not contain lists of loans. They both state: "On file with the Indenture Trustee."

102.    For the other cases, Snohomish County Superior Court Case No.'s 15-2-03144-7, 15-2-03146-3, and 15-2-04014-4, the affidavits contained pool supplements for Bank One that were sold to the respective ~~NCLST Trusts~~NCLSTs 2005-2 and 2007-4. Those pool

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 19
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1    supplements all contained references to "Schedules" for related loans, but no schedules were

2    attached.

3        103.    Also attached to each of the Turner affidavits was a document titled "Deposit

4    and Sale Agreement" for the relevant NCSLT trust (hereinafter the "Deposit and Sale

5    Agreements").

6        104.    The Deposit and Sale Agreements set forth the terms under which the Seller was

7    selling and the Purchaser was purchasing the student loans listed on the relevant numeric

8    schedule (variously Schedule 1, Schedule 2, Schedule 3, or combinations thereof), as set forth

9    in Schedule A of the Deposit and Sale Agreement. For each Deposit and Sale Agreement,

10   Schedule A gave descriptions of loan types that were being sold, but not the names of

11   individual borrowers or loan account numbers.

12       105.    Neither the Pool Supplements nor the Deposit Sale Agreements are mentioned

13   in Turner's affidavits.

14       106.    In deposition testimony from Bradley Luke, the Senior Litigation paralegal for

15   TSI and the designated CR 30(b)(6) deponent, it was revealed that TSI does not have custody

16   of the records and that the legal case managers who signed the affidavits in the Kim lawsuits

17   retrieve documents from a prior loan servicer's system, American Educational Services a/k/a

18   Pennsylvania Higher Education Assistance Agency ("AES" or "PHEAA"), for whom he is not

19   an employee. Additionally, Mr. Luke testified that TSI does not create any new servicing

20   records in that system while collecting on the loans.

21       107.    Ms. Luke also testified that AES does not retain the billing statements for the

22   loans. Additionally, Mr. Luke testified that there was no training on the document retention

SECONDTHIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 20
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

1  policies and procedures or knowledge of the records of whomever has held custody of the

2  documents or how they were maintained by Bank of America, Bank One, JP Morgan Chase

3  Bank, First Marblehead Corporation, and/or National Collegiate Funding, LLC.

4      108.   Mr. Luke further testified that he does not know about the retention practices or

5  the procedures about the creation of student loan agreements. He also testified that he has no

6  knowledge as to whether the loan disclosure statement which disclosed the essential terms of

7  the loan, including the amount to be borrowed, the interest rate and the repayment period, was

8  mailed to or received by the Kims.

9

10     109.   Additionally, none of the Defendants have any knowledge of the actual

11  Schedules 1, 2, and 3 that are referred to in the Pool Supplements.

12     110.   Defendants TSI, P&F, and Cheung have never seen or reviewed any of the

13  Schedules and they are aware that they are lost.

14     111.   After the judgment was entered in case number 15-2-03144-7, Cheung sent

15  Anthony a collection letter dated April 6, 2015, advising Anthony that the NCSLTs were

16  willing to discuss resolution of the judgment and that it was imperative that he contact P&F.

17

18     112.   Cheung subsequently sent Anthony additional collection letters advising him to

19  contact P&F to settle his account.

20     113.   The Kims were garnished and the garnished funds were paid into the Superior

21  Court Registry.

22     114.   The Snohomish Superior Court disbursed by court order the $2,182.08 to

23  Anthony on September 6, 2018 after the lawsuits were dismissed for want of prosecution.

24

25

26

27  ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
    FOR INJUNCTIVE RELIEF AND DAMAGES FOR
    VIOLATIONS OF THE WASHINGTON CONSUMER
    PROTECTION ACT - 21
    (Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

115.    Anthony lost interest on the garnished funds from the date they were garnished until September 6, 2018.

116.    The Kims paid their attorney $11,540.00 to investigate and defend Defendants' collection attempts, including a review of the underlying documents, a review of the court file and garnishments, litigation to vacate the default judgments and discovery to prepare a defense for trial.

**D.     NCSLTs' Collection History.**

117.    P&F and Cheung have been suing Washington consumers in Washington courts on behalf of the NCSLTs since at least 2012.

118.    In November 2014, TSI became the NCSLTs' debt collector.

119.    Acting as agents for the NCSLTs, P&F, Cheung, and TSI have obtained hundreds of default judgments against Washington consumers in Washington courts.

120.    TSI, P&F, and Cheung only collected on those accounts believed to be in default.

121.    Defendants have a common practice of obtaining judgments against Washington consumers using declarations executed by TSI employees that are filed in Washington courts that falsely claim personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans.

122.    Acting in concert, TSI, P&F, and Cheung filed more than 2,000 debt collection lawsuits within the four years immediately preceding the filing of this lawsuit without the documentation necessary to prove NCSLTs' ownership of the loans.

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 22
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

123.    Notaries for the NCSLTs notarized over 25,000 affidavits throughout the country even though they did not witness the affiants' signatures. Many of these affidavits were filed with Washington state courts in furtherance of efforts to collect alleged student loan debts owned by the NCSLTs.

124.    In furtherance of the scheme to obtain default judgments, TSI feigns the existence of admissible evidence by falsely submitting materially false and misleading affidavits to state courts.

a.    Fewer than ten TSI employees service NCSLT lawsuits for the entire country, and they sign 20 to 40 affidavits a day on average without personal knowledge of the educational loan records that would serve as the evidentiary basis for the collection of the alleged debts;

b.    TSI's affidavits are carefully drafted to appear as if the affiants have actual knowledge of the underlying facts, when in fact the facts are based on hearsay;

c.    In support of each affidavit filed to support a motion for default judgment, TSI's affiant swears that they are authorized and competent to testify about the alleged student loan debt through review of and "personal knowledge" of the business records, including electronic data in their possession, and that they have "personal knowledge of the record management practices and procedures of the NCSLTs and the practices and procedures the NCSLTs require of its loan servicers and other agents";

d.    TSI claims to be the designated custodian of records, but ~~on information and belief,~~ the actual ~~consumer loan files and loan documents are not in TSI's possession, but are rather kept with~~records custodian is American Education Services ("AES") a/k/a Pennsylvania

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 23
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1    Higher Education Assistance Agency ("PHEAA~~");~~"), and Defendants know PHEAA's records

2    are missing important collateral documentation for the student loans; all of the loan files are

3    missing proof of assignments to the NCSLTs;

4        e.    Defendants also knew or should have known that PHEAA's records are

5    unreliable, since many are missing collateral documentation for the educational loans, and all

6    of the loan files are missing assignments;

7        f.    The TSI employees regularly sign affidavits without reviewing any written

8    assignment documentation showing that the individual loan accounts were actually included in

9

10   the NCSLTs;

11       g.    The TSI affiants do not have any personal knowledge or training in the retention

12   of the collateral loan documents, how they are kept, their custody, where they are placed, and

13   how they are stopped from being tampered with by any of the entities who signed the

14   documents and currently have custody of them;

15

16       h.    Defendants did not have in their possession the schedule of loans sold to the

17   NCSLTs by the original creditor or creditors when the affidavits were signed.

18       125.   Defendants filed lawsuits against Washington consumers without the intent or

19   ability to prove the claims if contested.

20       126.   On information and belief, Defendants filed affidavits in Washington courts

21   attached to motions for default and motions for summary judgment that were notarized by

22   Defendants despite the notaries not having witnessed the affiants signing the affidavits.

23   **E.    The Trusts Act Through Other Entities.**

24

25       127.   The NCSLTs were created between 2001 and 2007 pursuant to the Delaware

26

27   ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 24
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave,~~ Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

Statutory Trust Act, 12 Del. Code § 3801-26 ("DSTA"), to acquire private student loans, collect payments from borrowers, and distribute gains to the holders of notes. *CFPB v. Nat'l Collegiate Master Student Trust*, No. 17-cv-1323 (MN), 2018 WL 5095666, at \*1 (D. Del. Oct. 19, 2018).

128.    The governing structures outlined in the trust agreement for each of the NCSLTs are substantially identical.

129.    The NCSLTs have no employees or internal management agents and rely on certain trust-related agreements to provide their operating structure. *CFPB v. Nat'l Collegiate Master Student Trust*, 2018 WL 5095666, at \*1. These agreements include trust agreements, administration agreements, servicing agreements, and indentures (collectively, "Trust Related Agreements"), and provide a structure that includes an Owner Trustee, Administrator, Indenture Trustee, Primary Servicer, Special Servicer, and Sub-servicers. *Id.*.

130.    TSI was retained by the NCSLTs, through their managing agents, to direct litigation for the collection of student loans purportedly owed to the NCSLTs. The retention of TSI and its duties as agent of all of the NCSLTs is memorialized in two agreements, the Special Servicing Agreement and the Default Prevention and Collection Services Agreement. There is not a different collection servicing agreement for each NCSLT.

**F.    The AES/ PHEAA Partial Audit.**

131.    In September 2015, Boston Portfolio Advisors ("BPA") conducted a loan level partial audit of the NCSLTs' collateral loan files, which are held by Pennsylvania Higher Education Assistance Agency ("PHEAA") and its student loan servicer American Educational Services ("AES").

132.    Among other things, the partial audit found:

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 25
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW, #151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

    a.    First Marblehead Corporation ("FMC") managed the origination of loans that were assigned to all of the NCSLTs.

    b.    FMC partnered with PHEAA to handle custodial responsibilities for the loan documents. FMC was to transfer the loan documents to PHEAA, but PHEAA did not receive and does not have all the documents for each loan. PHEAA was not aware of the criteria used to bundle the loans.

    c.    FMC also was responsible for bundling loans into the NCSLTs so that they could be marketed to investors.

    d.    The formula FMC used to bundle the loans in the NCSLTs was never disclosed, but it appears that the FMC did not bundle loans by the year of origination.

    e.    PHEAA communicated to FMC on numerous occasions that there were issues with the loan documents and that it did not receive and did not have all of the documents for each loan.

    f.    The loans bundled into the NCSLTs were guaranteed by The Education Resource Institute ("TERI").

    g.    Trust payment performance deteriorated and in 2008, after numerous lawsuits by bond holders, TERI filed for bankruptcy.

    h.    In 2008, the servicing agreements for all NCSLTs were amended to add NCO as a servicer to collect on defaulted loans.

    i.    In 2012, PHEAA was directed by FMC to send all charged off loans to NCO for collection.

    j.    PHEAA noted that the NCSLT loans were the most complained about loans in its portfolio and sent all unresolved complaints to NCO. NCO would merely tell PHEAA to follow the servicing guidelines and often did not provide PHEAA with information on how to resolve borrower complaint.

    k.    PHEAA regularly communicated to the managing agents of the NCSLTs about the issues with the loans and loan documents.

    l.    The audit determined that 100% of the accounts did not contain an Assignment. It is unknown whether Assignments were appropriately made. Based on representations made by PHEAA, it is likely that Assignments for the loans do not exist.

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 26
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

m.   358, or 94.5%, of the sample of loans reviewed in the audit did not have terms and conditions affixed to the Note. Pursuant to the Notes' terms, borrowers acknowledged receipt of the loans' terms and conditions, and PHEAA's servicing contract states that borrowers are only required to return the signature page with PHEAA responsible for maintaining the signed first and second (if applicable) pages.

133.   With actual knowledge of the problems with the NCSLTs' collateral files, the NCSLTs nonetheless acted in concert through other entities that serviced and/or collected on those loans to thwart any further audit of the loan files and with full knowledge of their inability to prove the "chain of title" for the NCSLTs through debt collection court proceedings continued to file collection lawsuits. For example, the NCSLTs, through their agents, served Ms. Hoffman's mother with a lawsuit in 2013, before the PHEAA audit, over Ms. Hoffman's loan. They then filed that lawsuit to collect on her loan in 2016, which was after the PHEAA audit that showed that the NCSLTs did not have the required loan documents.

134.   All NCSLTs knew that they had no ability to prove the ownership of the debts and would be unable to prove the debts if challenged in court.

135.   Since the entities that control the NCSLTs treat them similarly, they act in concert to carry out their scheme. Further, the NCSLTs, by and through their agent TSI, agreed among themselves to act in concert and have acted in concert in their loan collection efforts and directed their debt collection lawyers, including P&F and Cheung, to pursue litigation to collect from student loan borrowers whose loans were/are purportedly owned by NCSLTs, by presenting affidavits from TSI that included false information as described in Paragraphs 121-126 above, and with knowledge that the NCSLTs could not prove that they owned the loans, and without proof of the actual amounts owed on the loans, if any. The NCSLTs, by and through their agent TSI, further agreed among themselves to act in concert and have acted in

SECONDTHIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 27
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

concert in their loan collection efforts and directed their debt collection lawyers, including P&F and Cheung, to cease litigation efforts to collect from student loan borrowers if the student loan borrowers appeared and defended in the debt collection lawsuits commenced against them.

**E.G.  Consumer Financial Protection Bureau's TSI Consent Order.**

127.136.      The CFPB investigated the debt collections litigation practices of the Attorney Network business unit of TSI.

128.137.      Through its investigation, the CFPB identified violations of the federal Consumer Financial Protection Act of 2010 ("CFPA"). TSI and the CFPB executed a Stipulation and consented to the entry of a Consent Order that was filed on September 18, 2017 (hereinafter the "Consent Order"), in the administrative proceeding *In the Matter of Transworld Systems, Inc.,* 2017-CFPB-0018.

129.138.      The Consent Order is attached hereto as Exhibit A, and is incorporated herein by this reference.

130.139.      The associated Stipulation and Consent to the Issuance of a Consent Order signed by Joseph Laughlin, CEO of TSI, is attached hereto as Exhibit B, and is incorporated herein by this reference.

131.140.      The Consent Order made numerous findings of fact. *See* Consent Order pgs. 5-9, ¶¶ 4-29.

132.141.      The CFPB found, through its investigation, that the TSI Affidavits violated the CFPA by doing the following:

> 33. In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, [TSI] executed [TSI] Affidavits that were used by Law Firms with many of the Collections Lawsuits filed by Law Firms on behalf of the [NCSLTs] in courts across the country, and in live testimony, [TSI]

SECONDTHIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 28
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW, #151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

represented, directly or indirectly, expressly or by implication, that:

 a. Affiants had personal knowledge of the account records and the Debt;

 b. Affiants had personal knowledge of the chain of assignment records evidencing [NCSLT] ownership of the subject loan; and

 c. Affiants had personal knowledge of the record management practices and procedures of the [NCSLTs] and all prior servicers.

 34. In fact, … , in numerous instances, these representations were either false or the Affiant did not have a basis for making the representation.

 35. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a Collections Lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

 36. Thus, representations by Respondent, as described in Paragraphs 18-24, constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

Consent Order pgs. 10-11, ¶¶ 33-36.

 ~~133.~~142. The CFPB found, through its investigation, violations of the CFPA relating to TSI and its Attorney Network's other litigation practices:

 37. In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, [TSI], acting through the Law Firms hired by [TSI] on behalf of the [NCSLTs], represented, directly or indirectly, expressly or by implication, that it could be proven in the Collections Lawsuits that the [NCSLTs] owned the loans in question and that the Consumers in question owed Debts to the [NCSLTs], if contested.

 38. In fact, in numerous instances, [TSI] lacked the complete chain of assignment documentation needed to prove [NCSLT] ownership of the subject loans and the promissory note needed to prove the existence of certain loans.

 39. The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

 40. Thus, [TSI]'s representations, as described in [the facts section of the

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 29
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1    Consent Order], constitute deceptive acts or practices in violation of sections
     1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

2
     41. In addition, [TSI]'s acts and practices, caused or were likely to cause
3    substantial injuries to consumers.

4
     42. The injuries to consumers included, but were not limited to, all
5    payments made, including garnishments of wages and bank accounts, to settle
     Debts not enforceable.

6
     43. The injuries to consumers were not reasonably avoidable by
7    consumers and were not outweighed by any countervailing benefits to
     consumers or to competition.
8
9    44. Thus, Respondent's conduct, as described in [the fact section of the
     Consent Order], constitutes unfair acts or practices in violation of sections
10   1031(c) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(c)(1),
     5536(a)(1)(B).

11
     Consent Order pgs. 11-12, ¶¶ 37-44; TSI Stipulation pg. 2, ¶ 6.
12

13   ~~134.~~143.        Through the TSI Stipulation, TSI waived any "right to challenge or

14   contest the validity of the Consent Order." TSI Stipulation pg. 3-4, ¶ 9.

15   ~~135.~~144.        It is a violation of the Consent Order for:

16        a.        TSI or any agent, service provider or attorneys that have notice of the

17   Consent Order to cause law firms hired by TSI on behalf of the NCSLTs "to collect any Debt

18
     through Collection Lawsuits that [TSI] or its agents have any reason to believe may be
19
     unenforceable." Consent Order pgs. 14-15, ¶ 45(k).
20

21        b.        TSI, P&F, or Cheung are "permanently restrained and prohibited

22   from…..executing any Affidavit containing any misrepresentations, including false statements

23   that: (i) the Affiant is familiar with or has personal knowledge of the Consumer's education

24   loan records or the maintenance of those records; (ii) the Affiant has personal knowledge of the

25   Consumer's debt; (iii) the Affiant has personal knowledge of the loan's chain of assignment or

26
27

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

ownership; (iv) the Affiant has personal knowledge of the documents relating to the loan's

chain of assignment or ownership; (v) the Affiant has been properly notarized….; (vi) certain

documents or records …… have been reviewed by the Affiant." Consent Order pgs. 15, ¶ 45(l).

        c.     TSI, P&F, or Cheung to continue pending NCSLT lawsuits in which a

false TSI Affidavit was filed after receiving notice of the Consent Order until TSI, P&F, or

Cheung provides the court with a copy of the Consent Order and submits a notice to the court

stating "Plaintiff withdraws the affidavit of [name of affiant] pursuant to Consent Order entered

into by the Consumer Financial Protection Bureau and Transworld Systems, Inc." Consent

Order pgs. 17, ¶ 49.

        d.     TSI, P&F, and Cheung to continue garnishment, or fail to quash or

withdraw a pending garnishment, in any case in which the NCSLTs obtained a judgment where

a TSI Affidavit with misrepresentations was filed.

        e.     TSI, P&F, and Cheung to accept any settlement payments relating to any

such collection lawsuits in which a TSI Affidavit with misrepresentations was filed.

**~~F.~~H.**   **NCSLTs Agreed to a Consent Judgment with the CFPB Pursuant to Which They Would Cease Litigation and All Collection Until They Verified They Had Documentation Proving ~~The~~the Right to Collect on Accounts.**

~~136.~~145._____   On September 18, 2017, the same day the Consent Order was filed, the

CFPB filed a civil action for injunctive relief against the NCSLTs in the United States District

Court for the District of Delaware. *Consumer Financial Protection Bureau v. The National

Collegiate Master Student Loan Trust et al.*, Case No. 17-cv-01323-GMS (D. Del Sep. 18,

2017) (hereinafter the "CFPB Trust Action").

~~137.~~146._____   The NCSLTs and the CFPB reached an agreement to enter a Consent

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 31
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave, ~~Suite 3200~~ SW, #151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

Judgment in the CFPB Trust Action (hereinafter the "Trust Consent Judgment").

~~138.~~148.        A copy of the [Proposed] Trust Consent Judgment is attached hereto as Exhibit C and is incorporated herein by this reference.

~~139.~~148.        The Trust Consent Judgment include the following findings of fact:

       a.        "Since at least November 1, 2012, in order to collect on defaulted private student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state courts across the country."

       b.        "In support of these lawsuits, Subservicers on behalf of Defendants executed and filed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in in many cases, personal knowledge of the chain of assignments establishing ownership of the loans."

       c.        "[NCSLT]s' Servicers on behalf of [NCSLTs] filed more than 2,000 debt collections lawsuits without the documentation necessary to prove [a NCSLT's] ownership of the loans or on debt that was time-barred."

       d.        "Notaries for [NCSLT]s' Servicers notarized over 25,000 affidavits even though they did not witness the affiants' signatures."

       e.        Entry of the "Order is in the public interest."

~~140.~~149.        NCSLTs waived any right to seek judicial review or otherwise challenge or contest the validity of this Order.

~~141.~~150.        NCSLTs also agreed to provide to all ~~NCSLTs~~NCSLTs' servicers copies of the Trust Consent Judgment within 30 days of the Trust Consent Judgment being entered on the Docket of the CFPB Trust Action.

~~SECOND~~THIRD AMENDED CLASS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT - 32 (Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW, #151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

142.151.     Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on the NCSLTs' behalf cease initiation of collection lawsuits to collect on accounts unless:

      a.     They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

      b.     They possess a signed copy of the student loan contract;

      c.     The statute of limitations on enforcement of the loan has not expired; and

      d.     They have no reason to believe the debt may be unenforceable.

143.152.     Upon the NCSLTs' delivery of the Trust Consent Judgment to the servicers of the NCSLTs, the NCSLTs were to require and ensure that all servicers and law firms acting on the NCSLTs' behalf dismiss all pending collection lawsuit to collect on accounts unless:

      a.     They possess a record of the complete chain of assignment from the original creditor to the specific trust claiming ownership;

      b.     They possess a signed copy of the student loan contract;

      c.     The statute of limitations on enforcement of the loan has not expired; and

      d.     They have no reason to believe the debt may be unenforceable.

144.153.     Upon the NCSLTs' delivery of the Trust Consent Judgment to the debt collectors of the NCSLTs, the NCSLTs were to require and ensure that all debt collectors and collection law firms acting on the NCSLTs' behalf cease enforcement of any judgment obtained in a collection lawsuit to collect on accounts unless:

SECOND THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 33
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th 3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

1            a.       They possess a record of the complete chain of assignment from the

2     original creditor to the specific trust claiming ownership;

3            b.       They possess a signed copy of the student loan contract;

4            c.       The statute of limitations on enforcement of the loan has not expired; and

5            d.       They have no reason to believe the debt may be unenforceable.

6     ~~145.~~154.       The NCSLTs, their debt collectors, and collection law firms representing

7     the NCSLTs would also be barred under the Trust Consent Judgment from filing any false

8     affidavits, and would be required to withdraw any affidavits they determined were false or were

10    notarized when the notary had not witnessed the signing of the affidavit.

11    ~~146.~~155.       As of the date of the filing of this ~~Class~~Third Amended Complaint, the

12    Trust Consent Judgment has not been entered and multiple entities have sought to intervene in

13    the CFPB Trust Action. Included in the list of intervenors is TSI, which has received and

14    reviewed the proposed Trust Consent Judgment.

15    **~~G.~~E.   TSI and Attorney Networks.**

16

17    ~~147.~~156.       TSI manages an Attorney Network that utilizes outside law firms to

18    collect on defaulted private student loans.

19    ~~148.~~157.       The collection attorneys filing collection cases, including Defendants

20    P&F and Cheung, are part of TSI's Attorney Networks, and the alleged debts of Plaintiffs were

21    handled through the "Attorney Network."

22    ~~149.~~158.       Network firms are expressly informed by TSI that they are required to

23    follow Network Attorney Standard Operating Procedures.

24

25    ~~150.~~159.       TSI uses Network firms, including Defendant P&F and Cheung, as a

26

27    ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 34
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1    collection tool, and their performance in collection is audited.

2         ~~151.~~160.        TSI uses non-lawyer "performance managers" to monitor and assess the

3    collection efficiency of accounts assigned to Network firms, including P&F and Cheung, on a

4    weekly basis to determine the market share of accounts to assign to them.

5         ~~152.~~161.        Upon review, the Network firms, including Defendant P&F and Cheung,

6    are graded with "attorney report cards."

7         ~~153.~~162.        A bad "grade" from a performance manager can lead to TSI off-boarding

8    accounts or firing the Network firm.

9

10   **~~H.~~F.   Defendant's Current Collection Actions In Washington.**

11        ~~154.~~163.        Since entry of the TSI Consent Order on September 18, 2017:

12             a.        Defendants have continued filing collection lawsuits in Washington on

13   accounts they allege are owned by the NCSLTs.

14             b.        Defendants have not voluntarily dismissed all NCSLT collection actions

15   in Washington in which they have not verified that: (1) they have a record of the complete

16   chain of assignment; (2) they have a copy of the signed student loan agreement; (3) the action

17

18   was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false

19   or misleading and was properly notarized.

20             c.        Defendants have continued to file collection lawsuits where the Affiant

21   has no personal knowledge of the Consumers' education loan records or maintenance of those

22   records, has no personal knowledge of the Consumers' debt; has no personal knowledge of the

23   loans' chain of assignment or ownership; or has no personal knowledge of the documents

24

25   relating to the loans' chain of assignment or ownership.

26

27   ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR
     VIOLATIONS OF THE WASHINGTON CONSUMER
     PROTECTION ACT - 35
     (Case No. C18-1132 TSZ)

     Leonard Law
     ~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
     #151
     Seattle, Washington ~~98154~~98116
     Phone: 206-486-1176
     Fax: 206-458-6028

d.      Defendants have continued to seek to enforce judgments obtained in NCSLTs suits when they have not verified that: (1) they have a record of the complete chain of assignment; (2) they have the complete student loan agreements; (3) the action was not time barred at the time of suit; and (4) a TSI Affidavit filed in the lawsuit was not false or misleading and was properly notarized.

164.    The NCSLTs, through their agent TSI, agreed to act in concert, and have acted in concert, by directing P&F and Cheung to continue taking the actions alleged herein in Paragraph 163 above in order to attempt to collect from borrowers on purported student loan debts owed to the NCSLTs.

## V.  CLASS ALLEGATIONS

~~155.~~ 165.    **Class Definition.** Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Plaintiffs bring this case as a class action on behalf of the following "Class," who are

All persons residing in Washington against whom Defendants sought to collect an alleged NCSLT loan debt, on or after four years prior to the filing of this action,

and two Subclasses thereof, defined as:

**CPA Judgment Subclass:** All persons in the Class against whom Defendants obtained a judgment in any Washington court where a NCSLT was a Plaintiff and the judgment was obtained using a declaration of a TSI employee.

**Post CFPB TSI Consent Order Subclass:** All persons in the Class against whom Defendants maintained or filed a lawsuit to collect an alleged debt owed to the NCSLTs after the CFPB Consent Order was entered.

~~156.~~ 166.    **Numerosity**. The Class and Subclasses are so numerous that joinder of all members is impracticable. On information and belief, there are over 300 people in the Class.

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 36
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW, #151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

157.   167.   **Commonality**. There exist questions of law and fact common to Plaintiffs and the proposed Class and Subclasses, including but not limited to:

a.   a.   Whether Defendants have a standard practice of filing and maintaining lawsuits, and obtaining judgments in favor of the NCSLTs and against Washington residents, without proof that the loan they are suing on was assigned to or owned by the NCSLTs;

b.   b.   Whether Defendants sue Washington residents without standing or proof of ownership or assignment of ownership of the specific debt each Washington consumer is being sued upon;

c.   c.   Whether Defendants had sufficient evidence of the existence of the alleged NCSLT education debts when they negotiated settlements or obtained default judgments against Washington consumers;

d.   d.   Whether Defendants engaged in unfair or deceptive business practices when they filed lawsuits without proof that the NCSLTs they were representing had proof of assignment entitling them to collect on the alleged debts;

e.   Whether Defendants are filing lawsuits on behalf of NCSLTs knowing that they lack the necessary paperwork and proof to complete or try the case and are filing the lawsuits to obtain defaults on or settlements of the claims;

f.   Whether Defendants have a standard practice of filing affidavits they know or believe to be false and misleading in an attempt to obtain judgments against Washington residents;

g.   Whether, by maintaining collection lawsuits in Washington when the

SECONDTHIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 37
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

1  Defendants did not have both complete chain of title and a signed copy of the loan agreement,

2  the Defendants committed unfair or deceptive practices in trade or commerce that affect the

3  public interest and which causes injury to Washington consumers' personal property or

4  business, and therefore violate the WCPA;

5          h.      Whether Defendants violated the FDCPA by filing false or misleading

6  affidavits in Washington courts and thereby committed *per se* violations of the WCPA;

7          i.      Whether Defendants violated the WCPA by filing false or misleading

8  affidavits in Washington courts;

9          j.      Whether Defendants P&F and Cheung violated their duty of candor to

10 tribunals when they filed lawsuits on behalf of NCSLTs knowing that the NCSLTs did not have

11 the schedule of loans transferred to the NCSLTs and therefore could not prove the loans sued

12 upon were owned by the NCSLTs;

13         k.      Whether Defendants P&F and Cheung violated the WCPA when they

14 attempted to collect debts for the NCSLTs and TSI knowing that TSI and the NCSLTs did not

15 have the schedule of loans that P&F and Cheung were attempting to collect upon and could not

16 prove assignment of the debts.

17         l.      Whether Defendants P&F and Cheung engaged in unfair or deceptive

18 practices in their business of debt collection outside their litigation activities.

19         m.      Whether Defendants engaged in unfair or deceptive practices in violation

20 of the WCPA; ~~and~~

21         n.      Whether the NCSLTs acted in concert in directing their attorneys to

22 attempt to collect on alleged student loan debts using affidavits containing false information,

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 38
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98~~15498116
Phone: 206-486-1176
Fax: 206-458-6028

despite not having proof of assignments of the loans to the NCSLTs, and despite not having accurate loan balance information; and

   ~~n.~~o.  The nature and extent of classwide injury and the measure of compensation for such injury.

 ~~158.~~ 168. **Typicality**. The claims of Plaintiffs are typical of the claims of the Class and Subclasses. They arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories. The collection actions that Defendants engaged in against Washington consumers that make up the Class and Subclasses are the same collection actions Defendant engaged in against the Plaintiffs. Defendants maintained NCSLT collection lawsuits or sought to enforce judgments obtained in NCSLT lawsuits from all Plaintiffs and Class members. Defendants filed a TSI Affidavit in each and every action it maintained against Plaintiffs and Class members during the Class period.

 ~~159.~~ 169. **Adequacy of Representation**. Plaintiffs are appropriate representatives for the Class and Subclasses and will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs understand and are willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class and Subclasses. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and have no interests that directly conflict with interests of the Classes. Plaintiffs have retained competent and capable attorneys who are experienced trial lawyers with experience in complex and class action litigation, including consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and Subclasses and have the financial resources to do so.

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 39
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

160. 170.   **Predominance.** Defendants have a standard practice of maintaining lawsuits like those maintained against the Plaintiffs and the Class, and Defendants have a standard practice of filing TSI Affidavits like the ones filed in cases against the Plaintiffs and the Class. The common issues arising from this conduct predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

161. 171.   **Superiority**. Plaintiffs and members of the Class and Subclasses have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class and Subclasses are readily identifiable from Defendants' records, and there will be no significant difficulty in the management of this case as a class action.

162. 172.   **Injunctive Relief**. Defendants' conduct is uniform to all members of the Class and Subclasses. Defendants have acted or refused to act on grounds that apply generally to the Class and Subclasses, so that final injunctive relief or declaratory relief is appropriate with respect to the Class and Subclasses as a whole.

163. 173.   Accordingly, class certification of the Class and Subclasses is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

## VI.  CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

SECONDTHIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 40
(Case No. C18-1132 TSZ)

Leonard Law
1001 4th3614 California Ave, Suite 3200 SW,
#151
Seattle, Washington 9815498116
Phone: 206-486-1176
Fax: 206-458-6028

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT,
15 U.S.C. § 1692 *et seq., PER SE* VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT
(Against Defendants TSI, P&F, and Cheung)**

~~164.~~ 174.    Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs as though fully stated herein.

~~165.~~ 175.    Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

**A.      False, Deceptive, or Misleading Representations.**

~~166.~~ 176.    Pursuant to 15 U.S.C. §§ 1692e(2)(a) and 1692e(10), the FDCPA prohibits debt collectors from making false representations of the character, amount, or legal status of any debt and from using any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

~~167.~~ 177.    Defendants violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) by making false, deceptive, and misleading representations to debtors and Washington courts concerning the documents they possessed or reviewed that allegedly showed that the NCSLTs were entitled to collect on student loan debt.

**B.      Unfair or Unconscionable Means to Collect or Attempt to Collect on a Debt.**

~~168.~~ 178.    Pursuant to 15 U.S.C. § 1692f, the FDCPA generally prohibits debt collectors from engaging in "any unfair or unconscionable means to collect or attempt to collect the alleged debt."

~~169.~~ 179.    Defendants violated 15 U.S.C. § 1692f by filing and sending as verification of debt TSI employee affidavits that were misleading or false in order to obtain debt settlements, default judgments, and summary judgments;

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 41
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

170.  180.    Defendants' conduct in violation of the FDCPA ~~caused and~~ proximately caused injury and damages to Plaintiffs and Class members.

171.  181.    In RCW 19.86.020, the WCPA provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

172.  182.    A WCPA claim consists of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

173.  183.    The FDCPA violations are *per se* violations of the WCPA. Defendants' unfair and deceptive acts and practices repeatedly occurred in trade and commerce, were capable of deceiving a substantial portion of the public, and have already injured many hundreds, if not thousands, of Washington residents.

174.  184.    Defendants' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiffs and Class members.

175.  185.    Plaintiffs and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

176.  186.    Plaintiffs and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants' continuing misconduct.

177.  187.    Preliminary and injunctive relief is necessary to prevent further injury to Plaintiffs and Class members.

178.  188.    Defendants' conduct in violation of the WCPA has proximately caused and continues to cause injury to Plaintiffs and Class members in their business or property.

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 42
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

189.    A juridical link exists between entities when they act in concert pursuant to an agreement among themselves. Plaintiffs and members of the proposed Class are entitled to the relief requested herein against all NCSLT Defendants because the NCSLTs' conduct created and creates the basis for relief under the juridical link doctrine.

~~179.~~    190.    Plaintiffs and Class members are entitled to recover compensatory, special, and general damages as allowed by law.

~~180.~~    191.    Plaintiffs and the Class are entitled to recover treble damages, attorneys' fees, and costs pursuant to RCW 19.86.090.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT, RCW 19.86 *et seq.*
### (Against All Defendants)

~~181.~~    192.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Third Amended Complaint.

~~182.~~    193.    Defendants are "persons" within the meaning of the WCPA, RCW 19.86.010(1) and conduct "trade" and "commerce" within the meaning of the WCPA, RCW 19.86.010(2).

~~183.~~    194.    Plaintiffs and Class members are "persons" within the meaning of the WCPA. RCW 19.86.010(1).

~~184.~~    195.    Defendants' actions described herein were unfair or deceptive acts or practices occurring in trade or commerce, and were capable of injuring a substantial number of Washington consumers. The unfair and deceptive acts include the following:

~~a.~~    a.    Filing and/or sending Class members, including Plaintiffs, false

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 43
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave, ~~Suite 3200~~ SW, #151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1    and misleading affidavits in the attempted collection of debts;

2              ~~b.~~         b.      Entering into a Consent Order with the CFPB whereby

3    Defendants agreed to discontinue collection on NCSLT accounts until which time Defendants

4    could audit their records to determine collectability of accounts, but nevertheless continuing to

5    collect on NCSLT accounts without performing the audit or determining the collectability of

6    accounts;

7              ~~c.~~         c.      Knowingly filing false affidavits in Washington courts; and

8

9              ~~d.~~         d.      Taking all other actions described herein that violate applicable

10   collection laws.

11          ~~185.~~    196.    Defendants' actions proximately caused and continue to cause injury to

12   Plaintiffs and Class members in their business or property, which has damaged Plaintiffs and

13   Class members.

14          ~~186.~~    197.    Defendants' actions warrant an injunction to protect Plaintiffs and other

15   Washington consumers from similar harm.

16

17                                **VII.  PRAYER FOR RELIEF**

18          WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

19          1.      For an order certifying the identified Class and Subclasses pursuant to Fed. R.

20   Civ. P. 23(b)(2) and/or 23(b)(3), with Plaintiffs as the Class Representatives and the

21   undersigned as Class Counsel;

22          2.      For an injunction preventing Defendants from all future collection attempts upon

23   the alleged NCSLT loan debts of Plaintiffs and Class members, pursuant to RCW 19.86.090;

24

25          3.      For actual and compensatory damages pursuant to RCW 19.86, *et seq.* in an

26

27   ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
     FOR INJUNCTIVE RELIEF AND DAMAGES FOR
     VIOLATIONS OF THE WASHINGTON CONSUMER
     PROTECTION ACT - 44
     (Case No. C18-1132 TSZ)

                                                Leonard Law
                                        ~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
                                                    #151
                                        Seattle, Washington ~~98154~~98116
                                            Phone: 206-486-1176
                                             Fax: 206-458-6028

1   amount to be proven at trial, but no less than the sum of all amounts that Defendants have

2   collected on judgments or claims against Class and Subclass members;

3        5.     For treble damages, pursuant to RCW 19.86 *et. seq.*;

4        6.     For costs and reasonable attorney's fees in an amount to be proven at trial,

5   pursuant to RCW 19.86.090 and as otherwise allowed by law;

6        7.     For an award of pre-judgment and post-judgment interest at the highest

7   
8   allowable rate on all liquidated sums awarded to Plaintiffs and the Class and Subclasses as

9   damages;

10        8.     For leave to conform the pleadings to the proof presented at trial; and

11        9.     For such other relief as the Court deems justice and equitable.

12   

13   
14   DATED this ____ day of _____ 2021.

15   ***Attorneys for Plaintiffs*:**

16   LEONARD LAW                       BERRY & BECKETT, PLLP

17   

18   _____         _____

19   Sam Leonard, WSBA #46498      Guy W. Beckett, WSBA #14939
     3614 California Ave SW, #151      1708 Bellevue Avenue

20   Seattle, Washington 98116        Seattle, WA 98122
     Telephone: (206) 486-1176       Telephone: (206) 441-5444

21   Facsimile: (206) 458-6028        Facsimile: (206) 838-6346
     E-mail: sam@seattledebtdefense.com   E-mail: gbeckett@beckettlaw.com

22   
23   HENRY & DeGRAAFF, P.S.         NORTHWEST CONSUMER LAW CENTER

24   _____         _____

25   Christina L. Henry, WSBA #31273    Amanda N. Martin, WSBA #49581
     787 Maynard Ave S.            936 North 34th Street, Suite 300

26   Seattle, WA 98104             Seattle, WA 98103

27   ~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 45
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028

1

Telephone:  (206) 330-0595
Facsimile:   (206) 400-7609
E-mail:  chenry@HDM-legal.com

Telephone:  (206) 805-0989
Facsimile:   (206) 805-1716
E-mail:  Amanda@NWCLC.org

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

~~SECOND~~THIRD AMENDED CLASS COMPLAINT
FOR INJUNCTIVE RELIEF AND DAMAGES FOR
VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT - 46
(Case No. C18-1132 TSZ)

Leonard Law
~~1001 4th~~3614 California Ave~~, Suite 3200~~ SW,
#151
Seattle, Washington ~~98154~~98116
Phone: 206-486-1176
Fax: 206-458-6028