# TSI Motion for Summary Judgment
# EXHIBIT 1

Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTHER HOFFMAN, SARAH DOUGLAS, ANTHONY KIM, IL KIM and DARIA KIM,<br><br>Plaintiffs,<br><br>-vs-<br><br>TRANSWORLD SYSTEMS INC., et al.,<br><br>Defendants. | Case No.: 2:18-cv-01132 TSZ<br><br>DECLARATION OF<br>JOHN G. RICHARDS II |

JOHN G. RICHARDS II, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am over the age of 18 and have personal knowledge of each of the matters set forth in this Declaration, and if called as a witness, would testify competently to them.

2. I am a Vice President for U.S. Bank National Association ("U.S. Bank") and have been an employee of U.S. Bank since April 2, 2012. In my role as Vice President, I share responsibility for and have personal knowledge of U.S. Bank's contractual relationships related to the special servicing of the National Collegiate Student Loan Trusts. I also have access to and have reviewed the Bank's business records pertaining to its contractual relationships with National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student

DECLARATION OF JOHN G. RICHARDS II – 1

Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-4 and National Collegiate Master Student Loan Trust (collectively the "Trusts"), First Marblehead Education Resources, Inc. ("FMER"), and Transworld Systems Inc. ("TSI"), and I am familiar with the Trust Agreements, Trust Related Agreements, and related documents. I am duly authorized to make the representations contained in this Declaration for and on behalf of U.S. Bank.

3.   On or about March 1, 2009, U.S. Bank entered into a Special Servicing Agreement with FMER, as Special Servicer, and each Trust other than NCSLT 2007-3, NCSLT 2007-4, and National Collegiate Master Student Loan Trust . Attached as Exhibit A is a true and correct copy of the Special Servicing Agreement dated March 1, 2009. In addition, on or about May 1, 2009, U.S. Bank entered into a Special Servicing Agreement with FMER, as Special Servicer, Ambac Assurance Corporation, and NCSLT 2007-3, NCSLT 2007-4, and National Collegiate Master Student Loan Trust. The provisions of the March 1, 2009 and May 1, 2009 Special Servicing Agreements are materially similar and each operate in the same manner described below. For ease of reference, I refer to them together as the "Special Servicing Agreement" in this Declaration.

4.   Pursuant to the Special Servicing Agreement, U.S. Bank was named the Back-Up Special Servicer, and it would assume certain limited contractual obligations, or appoint another eligible entity to do so, if FMER was removed or resigned as Special Servicer (Ex. A at ¶¶ 8(A), (B)). Pursuant to the Default Prevention and Collection Services Agreement,

DECLARATION OF JOHN G. RICHARDS II – 2

contemporaneously executed and incorporated by reference into the Special Servicing Agreement if U.S. Bank became the Successor Special Servicer, NCO Financial Systems ("NCO"), would be the entity obligated to conduct collection activities, including the management of collection litigation on behalf of the Trusts (*Id*. at 1 8(G)).

     5.    In addition, the Special Servicing Agreement, among other things, designated FMER as a "Special Servicer" and as a "Servicer" pursuant to each Trust's respective Indenture. The agreement authorized the Special Servicer to, among other things: (1) "retain[] counsel on behalf of the applicable Trust (whether directly or through collections agencies) to further pursue enforcement and collection . . . including through litigation"; (2) engage Sub-servicers, "for and on behalf of the applicable Trust . . . to seek enforcement and collections of [defaulted or delinquent] Loans," and (3) commence any actions or proceedings "necessary or appropriate in connection with" such enforcement or collection efforts (*Id*. at ¶ 2(B)(i), (xv), and ¶ 4).

     6.    The Special Servicing Agreement was executed by Wilmington Trust Company, in its capacity as the Owner Trustee on behalf of the Trusts, and it was Acknowledged and Confirmed by First Marblehead Data Services, Inc., in its capacity as Administrator of the Trusts (*Id*. at 22).

     7.    Also on March 1, 2009, FMER, as Special Servicer, and NCO Financial Systems, Inc., which, upon information and belief, was a predecessor to TSI, entered into a Default Prevention and Collection Services Agreement. The Default Prevention and Collection Services Agreement was Exhibit II to the Special Servicing Agreement and incorporated therein by reference. Attached as Exhibit B is true and correct copy of the Default Prevention and

DECLARATION OF JOHN G. RICHARDS II – 3

Collection Services Agreement dated March 1, 2009 (the "TSI Agreement"), which has been redacted to protect confidential and proprietary information.

8. Under the TSI Agreement, NCO/TSI was retained to act as Special Sub-Servicer, on behalf of the Trusts, in the event U.S. Bank became the Special Servicer under the Special Servicing Agreement. The TSI Agreement provides for TSI to perform the vast majority of the duties of the Special Servicer under the Special Servicing Agreement, including all collections activities.

9. Under the TSI Agreement, TSI is retained as the Trusts' record keeper for the loans it services on behalf of the Trusts. TSI is also contracted to assist in providing information and documents related to the servicing and collection of defaulted student loans owned by the Trusts.

10. TSI is also contracted under the TSI Agreement to manage litigation of defaulted student loans owned by the Trusts and, upon the Special Servicer's request, to manage litigation of claims asserted against the Trusts as counterclaims or arising out of collection activity.

11. In 2012, FMER resigned as Special Servicer, and in or around November 2012, U.S. Bank assumed the role as Successor Special Servicer, and NCO undertook the special servicing and collection activities, including litigation.

12. On information and belief, in or around October 2014, NCO transferred the business to TSI, which was then sold. TSI has managed the past-due and default servicing for the Trusts since November 2014.

13. U.S. Bank, as Successor Special Servicer, requested TSI manage this litigation on behalf of the Trusts. In its role managing litigation, TSI is contracted to and regularly retains

DECLARATION OF JOHN G. RICHARDS II – 4

counsel to act for the Trusts at TSI's direction. U.S. Bank understands that TSI regularly retains Sessions, Fishman, Nathan & Israel ("The SESSIONS FIRM") to defend claims against the Trusts. U.S. Bank further understands that TSI retained The SESSIONS FIRM and Andrews Skinner, P.S. ("ANDREWS SKINNER") in the above-captioned case.

14. All of the foregoing statements are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of October, 2020 at Chicago, Illinois.

_____
JOHN G. RICHARDS II

DECLARATION OF JOHN G. RICHARDS II – 5

# TSI Motion for Summary Judgment
# EXHIBIT 1-A

*Execution version*

## SPECIAL SERVICING AGREEMENT

This Special Servicing Agreement, dated as of March 1, 2009 (this "Agreement"), is entered into by and among First Marblehead Education Resources, Inc. ("FMER"), as the Special Servicer (together with its successors and assigns, the "Special Servicer"), U.S. Bank National Association, as the Back-Up Special Servicer (the "Back-Up Special Servicer") and each of the Trusts listed on Schedule A attached hereto (the "Trusts").

WHEREAS, the Special Servicer, and other subservicing agents appointed from time to time by the Special Servicer, as provided herein, are experts in the management of student loan collections and default prevention services;

WHEREAS, each of the Trusts is appointing the Special Servicer as a Servicer under each Trust's respective Indenture, as listed on Schedule A attached hereto (the "Indentures"), to perform certain limited duties with respect to student loans (the "Student Loans") owned by the Trusts, including Student Loans that are delinquent or defaulted loans ("Delinquent Loans" and "Defaulted Loans," as defined below).

WHEREAS, the Trusts are appointing the Back-Up Special Servicer to serve in such capacity pursuant to the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties agree as follows:

Section 1.    Definitions. Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Indentures. For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below:

"Defaulted Loan" means any Student Loan as to which any of the following: (a) a TERI Guaranty Event has occurred, (b) the Servicer has determined that a TERI Guaranty Event has occurred and has submitted documents supporting that determination to the Special Servicer or (c) if the Student Loan is no longer subject to a valid TERI Guaranty Agreement, the Servicer has determined that a borrower has defaulted under his respective student loan credit agreement and has notified the Special Servicer of such occurrence.

"Delinquent Loan" means a Student Loan that is at least 31 days past due but is not yet a Defaulted Loan.

Section 2.    Appointment: Special Servicing Duties.

A.    Appointment. Each of the Trusts hereby hires, designates and appoints the Special Servicer as a Servicer under each Trust's respective Indenture to perform the special servicing duties (as defined below), and the Special Servicer accepts such appointment and agrees to perform such duties with respect to the Student Loans, including Delinquent Loans and Defaulted Loans, in accordance with the terms of this Agreement and each Indenture.

B.    Special Services. The Special Servicer shall take such actions as it shall deem reasonably necessary or appropriate to administer and oversee Early Awareness Services (as

Section 7.  Action upon Termination, Resignation or Removal.  Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Special Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Student Loans then in the custody of the Special Servicer pursuant to this Agreement. In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and the Back-Up Special Servicer and take all reasonable steps requested to assist the Trusts and Back-Up Special Servicer in making an orderly transfer of the duties of the Special Servicer to the Back-Up Special Servicer or other successor Special Servicer, as applicable.

Section 8.  Back-Up Special Servicer.

A.  In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Back-Up Special Servicer shall become the Special Servicer and shall assume the rights, duties and obligations of the Special Servicer to the extent expressly required to be assumed and performed by the Back-Up Special Servicer under this Agreement; provided that the Back-Up Special Servicer shall not under any circumstances be responsible for any representations and warranties made by FMER as the Special Servicer, or for any payment and indemnity obligations of FMER as the Special Servicer under this Agreement, or for any liability incurred by FMER as the Special Servicer prior to the date of the assumption by the Back-Up Special Servicer of the obligations of the Special Servicer under this Agreement or for any obligation to pay the fees and expenses of any Subservicer (except to the extent it receives funds from the Trusts for such purposes). In addition, nothing in this Agreement shall be construed to require or permit the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities including, without limitation, Early Awareness Services, with respect to consumer borrowers or other consumer obligors. Notwithstanding any term hereof or elsewhere to the contrary, the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) shall have no liability hereunder or otherwise in the event that it is unable to engage one or more Subservicers, upon reasonably acceptable terms and conditions (including compensation) and in accordance with the applicable terms and requirements of this Agreement, to perform Early Awareness Services, enforcement, collection and servicing of Delinquent Loans and Defaulted Loans; so long as the Back-Up Special Servicer shall have taken commercially reasonable efforts to engage one or more Subservicers to perform such Special Services. Notwithstanding the foregoing, the Back-Up Special Servicer, if it is unwilling or unable to so act, may designate a successor Special Servicer under this Agreement, subject to the satisfaction of the conditions set forth in Sections 6(E) hereof.

B.  In the event that the Special Servicer resigns or is removed as Special Servicer and the Back-Up Special Servicer begins performing Special Servicer's duties as Special Servicer under this Agreement, the Back-Up Special Servicer shall be compensated as the Special Servicer in accordance with this Agreement. Upon assuming the duties of Special Servicer pursuant to this Section 8, except as otherwise provided herein, the Back-Up Special

expense up to the Monthly Reimbursement Limit, with any remaining amounts for a Distribution Date payable as indemnities, fees and expenses of the Servicer after the payment on such date of the principal and interest due on the Notes on such Distribution Date), such reimbursement by the Trusts to be apportioned in accordance with the respective Pool Balance of Student Loans owned by each Trust as of the resignation or removal of FMER.

F.   As compensation for the performance of the Back-Up Special Servicer's obligations under this Agreement, the Back-Up Special Servicer shall be entitled to a monthly fee of $1,000 per Trust payable by the Trusts on each Distribution Date as a Servicing Fee pursuant to the terms of each Indenture, until such time as the Back-Up Special Servicer either begins performing the duties of the Special Servicer under this Agreement or otherwise ceases to be the Back-Up Special Servicer.

G.   The initial Special Servicer hereby represents and warrants that the Default Prevention and Collection Services Agreement, dated as of March 1, 2009 (the "NCO Agreement"), between the Special Servicer and NCO Financial Systems, Inc. ("NCO") (attached hereto as Exhibit II) is in full force and effect; and the initial Special Servicer hereby covenants and agrees with the Back-Up Special Servicer that the initial Special Servicer shall at all times maintain in full force (i) the NCO Agreement, and the engagement of NCO thereunder as Subservicer, or (ii) one or more other agreements upon terms reasonably acceptable to the Back-Up Special Servicer, with a Subservicer or Subservicers reasonably acceptable to the Back-Up Special Servicer and capable of performing the obligations of a Subservicer as contemplated by this Agreement. Without limiting or discharging any other liability or obligation the Special Servicer may have hereunder or otherwise in respect thereof, the initial Special Servicer hereby expressly agrees to indemnify and hold harmless the Back-Up Special Servicer for and from any and all losses, liabilities, damages, costs and expenses (including reasonable attorney's fees) that may be suffered, incurred or paid by the Back-Up Special Servicer as a result of, or arising from, any breach on the part of the Special Servicer of the representations, warranties, covenants or agreements set forth in the preceding sentence, including without limitation any cost associated with the engagement by the Back-Up Special Servicer of one or more acceptable Subservicers necessitated thereby. FMER shall give 10 days' prior notice to the Back-Up Special Servicer of any amendment, modification or waiver relating to the NCO Agreement (or such other agreement or agreements contemplated in subclause (ii) above), which notice shall be accompanied by the form of the proposed amendment, modification, waiver or agreement or agreements, as applicable.

Section 9.   Representations and Warranties.

A.   The Special Servicer hereby makes the following representations and warranties to each of the Trusts and to the Back-Up Special Servicer:

    (i)   Organization and Good Standing. The Special Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.