# TSI Motion for Summary Judgment
# EXHIBIT 2

Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTHER HOFFMAN, SARAH DOUGLASS, ANTHONY KIM, IL KIM and DARIA KIM, on behalf of themselves and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSWORLD SYSTEMS INCORPORATED, et al.,<br><br>Defendants. | Case No.: 2:18-cv-01132 TSZ<br><br>DECLARATION OF RALPH LYONS IN SUPPORT OF TRANSWORLD SYSTEMS INC.'S MOTION FOR SUMMARY JUDGMENT |

I, Ralph Lyons, declare under the laws of the State of Delaware and the United States of America under penalty of perjury:

1. I am over the age of 18 and have personal knowledge of each of the matters set forth in this Declaration, and if called as a witness, would testify competently to them.

2. I am a Senior Vice President for Transworld Systems Inc. ("TSI") and have been an employee of TSI since November 2014. In my role as Senior Vice President, I share responsibility for and am personally familiar with TSI's contractual relationships with its

DECLARATION OF RALPH LYONS – 1

1 clients, and I have reviewed the foregoing, including the documents described below, in
2 preparation of giving this declaration. I am also knowledgeable and personally familiar with
3 TSI's present business structure and its corporate history and predecessor companies, including
4 TSI's acquisition of certain assets of NCO Financial Systems, Inc.

5    3. I am duly authorized to make the representations contained in this Declaration
6 for and on behalf of TSI.

7    4. TSI is Special Subservicer and record keeper for loans subject to TSI's
8 administration for National Collegiate Student Loan Trust 2003-1, National Collegiate Student
9 Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student
10 Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student
11 Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student
12 Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student
13 Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student
14 Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student
15 Loan Trust 2007-4 and National Collegiate Master Student Loan Trust I (collectively the
16 "Trusts"), with respect to loans owned by those entities.

17    5. The Trusts entered into a Special Serving Agreement ("SSA"), dated March 1,
18 2009, with First Marblehead Education Resources, Inc. ("FMER") to act as Special Servicer.

19    6. Pursuant to the SSA, FMER appointed U.S. Bank, National Association ("U.S.
20 Bank"), as the Back-Up Special Servicer if FMER resigned, and FMER simultaneously retained
21 TSI's predecessor, NCO, as Special Subservicer if FMER resigned and U.S. Bank became
22 Successor Special Servicer.

23    7. Specifically, pursuant to a Default Prevention and Collection Services

DECLARATION OF RALPH LYONS – 2

Sessions, Israel & Shartle, LLC
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Phone: (504) 846-7931
Fax: (504) 828-3737

Agreement (hereinafter "Default Servicing Agreement"), entered into between FMER, as initial Special Servicer, and TSI's predecessor, NCO, as amended, TSI was contracted to act as Subservicer to U.S. Bank, as Successor Special Servicer.

8.  A true and complete copy (save redactions to protect the unnecessary public disclosure of confidential information) of the Default Servicing Agreement, including amendments, was attached as Exhibit A to the October 5, 2020 Declaration of John G. Richards II that was filed in the record of the above-captioned matter at Dkt. # 88.1 and also to my October 5, 2020 Declaration filed at Dkt. # 88.2. Relevant excerpts of the Default Servicing Agreement from the Default Servicing Agreement attached to my October 5, 2020 Declaration (Dkt. # 88.2), as redacted, are attached hereto *in globo* as Exhibit 2-A.

9.  TSI's predecessor, NCO, assumed its role as Special Subservicer in November 2012.

10. Later, in November 2014, 10, TSI assumed control over certain NCO business units to manage delinquent and defaulted Trust loans and thus began managing delinquent and defaulted loan servicing for the Trusts under the Default Servicing Agreement.

11. I have personally reviewed the Default Servicing Agreement, as amended, for the purpose of giving this declaration. It provides, in relevant part:

> Default Servicing Agreement, Article II, § 2.4
>
> <u>Litigation Management</u>. As part of the Default Collection Services, [TSI] shall administer collection litigation as described in this section and in Exhibit D attached hereto. Special Servicer may also from time to time designate loans as to which assessment and recovery of collection costs from the borrower in an extrajudicial context are allowed by applicable law, by way of contract or otherwise. [TSI] will use all reasonable and lawful efforts to collect such collection costs as directed by Special Servicer.
>
> [TSI] may, with Special Servicer's prior written approval,[50] forward accounts

---

[50] This "prior written approval" requirement was subsequently nullified. *See* Default Servicing

DECLARATION OF RALPH LYONS – 3

Sessions, Israel & Shartle, LLC
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Phone: (504) 846-7931
Fax: (504) 828-3737

for litigation to an attorney licensed to practice law in the applicable jurisdiction and acceptable to Special Servicer. [TSI] will handle all routine communication with the attorney on Special Servicer's behalf and will be responsible for monitoring the attorney's performance in litigating the case, collecting on the accounts pre-judgment and collecting on any judgment or settlement.

Default Servicing Agreement, Article II, § 2.4(c)

[TSI] will provide evidentiary support for collection attorneys, including basic factual orientation, copies of documents, records of account balances, affidavits and testimony, as reasonably required. Special Servicer will instruct Servicers to provide original documents to [TSI] upon request from [TSI]. For this purpose, Special Servicer on behalf of the Trusts hereby appoints [TSI] as keeper of the applicable Trust's records of all [education-purpose loans] that are the subject of [TSI] administration.

Default Servicing Agreement – 3rd Amendment, Article II, § 2.3

<u>Default Collection Services</u>. [U.S. Bank] shall cause the Servicers to provide to [TSI] all documents and information specified in the Servicing Agreements and/or Servicing Guidelines.

Default Servicing Agreement – 3rd Amendment, Article II, § 2.4(h)

Notwithstanding anything herein to the contrary, effective as of the date of the Third Amendment, [TSI] shall administer, manage and oversee collection litigation consistent with the terms of this Agreement [ ] and, except as contemplated in the Operating Guidelines, no further approval, consent or direction of the Special Servicer shall be required with respect to management of litigation relating to [education-purpose loans].

Default Servicing Agreement – 3rd Amendment, Article II, § 2.4(i)

The Special Servicer shall execute and deliver to [TSI] one or more powers of attorney appointing [TSI] as the attorney-in-fact and a custodian of records for the Special Servicer for the purpose of executing on behalf of the Special Servicer such affidavits, documents and instruments as may be required to be delivered in connection with the performance of the Services.

12.   Since November 2012, NCO and later TSI, has acted continuously and without interruption as Special Subservicer on behalf of the Trusts and a Custodian of Records for loans subject to TSI's administration owned by the Trusts pursuant to the Default Servicing

Agreement – 3rd Amendment, Article II, § 2.4(h), *infra*.

DECLARATION OF RALPH LYONS – 4

Sessions, Israel & Shartle, LLC
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Phone: (504) 846-7931
Fax: (504) 828-3737

1 | Agreement, as amended.

2 |     13. All of the foregoing statements are true and correct to the best of my knowledge,

3 | information and belief.

4 |     Executed this 9th day of June, 2021 at Middletown, Delaware.

*/s/ Ralph Lyons*
RALPH LYONS

DECLARATION OF RALPH LYONS – 5

Sessions, Israel & Shartle, LLC
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002-7227
Phone: (504) 846-7931
Fax: (504) 828-3737

# TSI Motion for Summary Judgment
# EXHIBIT 2-A

Case 2:18-cv-01132-TSZ   Document 86   Filed 06/10/21   Page 7 of 14
Case 2:18-cv-01132-TSZ   Document 123   Filed 06/10/21   Page 78 of 154

*Execution Version*

# DEFAULT PREVENTION AND COLLECTION SERVICES AGREEMENT

This Default Prevention and Collection Services Agreement (hereinafter "Agreement") is entered into by and between First Marblehead Education Resources, Inc. ("FMER"), a Delaware corporation with a principal place of business at 800 Boylston St., 34th Floor, Boston, MA 02199 (together with its successors and assigns, the "Special Servicer") and NCO Financial Systems, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania having a place of business at 507 Prudential Road, Horsham, PA 19044 (together with its successors and assigns, "NCO"). This Agreement is executed as of March 1, 2009.

**WHEREAS**, FMER as the initial Special Servicer currently provides administration services to certain Delaware statutory trusts (the "Trusts") consisting of alternative student loans ("ASLs"), including the provision of default prevention and collection management services pursuant to that certain Special Servicing Agreement entered into by and among FMER as Special Servicer, U.S. Bank National Association ("U.S. Bank"), as the Back-Up Special Servicer (in such capacity, the "Back-Up Special Servicer") and the Trusts party thereto and dated as of March 1, 2009 (the "Special Servicing Agreement");

**WHEREAS**, NCO provides default prevention and collections services (the "Services") to financial institutions;

**WHEREAS**, the initial Special Servicer desires to arrange for the outsourcing of certain default prevention and collections activities to NCO as hereinafter provided in the event that the Back-Up Special Servicer becomes the Special Servicer under the Special Servicing Agreement pursuant to Section 8 of the Special Servicing Agreement; and

WHEREAS, NCO is willing to provide certain default prevention and collection activities as herein provided in the event that the Back-Up Special Servicer becomes the Special Servicer.

**NOW THEREFORE**, in consideration of these presents and the covenants contained herein the parties hereto hereby agree as follows:

## ARTICLE 1 - DEFINITIONS

1.1   Definitions

"ASL" means an education-purpose loan made by a lender pursuant to the Program Guidelines and now or formerly guaranteed by The Education Resources Institute, Inc. ("TERI"), and such other education loans as the parties may agree to in writing in the future.

"ASL Lender" means the party that originally funded an ASL purchased by a Trust.

"Attempt" means a left message for the borrower or, if applicable, and cosigner of ASL.

"Borrower Data" has the meaning set forth in Section 7.1.

"Claims Package" has the meaning set forth in Section 2.3.

"Confidential Information" has the meaning set forth in Section 7.1.

"Contact" means a telephonic discussion with the borrower and/or cosigner(s) of an ASL.

{F0023945.1 }

(c) <u>Source and Timing of Fee Payments</u>. Notwithstanding the fee provisions set forth in Article III, fees due NCO for Default Collection Services, including costs and expenses related to litigation, will be paid on a loan-by-loan basis out of funds held in the Account (as defined in Section 2.6). Fees will be billed weekly and NCO may withdraw billed fees from the Account at such time (i.e., weekly) as it forwards the Account balances to Special Servicer.

2.4 <u>Litigation Management</u>. As part of the Default Collection Services, NCO shall administer collection litigation as described in this section and in Exhibit D attached hereto. Special Servicer may also from time to time designate loans as to which assessment and recovery of collection costs from the borrower in an extrajudicial context are allowed by applicable law, by way of contract or otherwise. NCO will use all reasonable and lawful efforts to collect such collection costs as directed by Special Servicer.

NCO may, with Special Servicer's prior written approval, forward accounts for litigation to an attorney licensed to practice law in the applicable jurisdiction and acceptable to Special Servicer. NCO will handle all routine communication with the attorney on Special Servicer's behalf and will be responsible for monitoring the attorney's performance in litigating the case, collecting on the accounts pre-judgment and collecting on any judgment or settlement. Except in the case where there is no media availability, any decision regarding settlement, dismissal of the action, or the removal of an attorney will require Special Servicer's written consent. Special Servicer recognizes that back up media, sworn statements of account, affidavits and other documentation may be required to pursue legal treatment on accounts placed with NCO. In the event that documentation is required, Special Servicer will comply with NCO's request for media and follow request procedures as agreed upon in work standards. If Special Servicer can not comply with media or documentation requests within a fourteen (14) day period, NCO reserves the right to dismiss any legal action, with our without prejudice and close and return the account back to Special Servicer. In the event that lack of media or documentation results in liability for NCO or Special Servicer, Special Servicer bears the burden of indemnification. At all times, Special Servicer and not NCO will be the client of the collection attorney. Special Servicer agrees promptly to provide all available documentation, written testimony, witnesses and other reasonably necessary materials and assistance requested by NCO in support of such litigation.

(a) NCO shall be responsible for selecting and directly supervising collection attorneys. NCO will submit lists of collection attorneys used by NCO to Special Servicer, and Special Servicer may, at any time, prohibit the submission of new litigation files to an attorney on its behalf.

(b) All collection attorneys shall be paid by NCO and Special Servicer shall have no obligation to pay such attorneys.

(c) NCO will provide evidentiary support for collection attorneys, including basic factual orientation, copies of documents, records of account balances, affidavits and testimony, as reasonably required. Special Servicer will instruct Servicers to provide original documents to NCO upon request from NCO. For this purpose, Special Servicer on behalf of the Trusts hereby appoints NCO as keeper of the applicable Trust's records of all ASLs that are the subject of NCO administration.

Case 2:18-cv-01132-TSZ   Document 86-23   Filed 06/10/21   Page 10 of 14
Case 2:18-cv-01132-TSZ   Document 123   Filed 06/30/21   Page 82 of 154

*EXECUTION VERSION*

## THIRD AMENDMENT TO
## DEFAULT PREVENTION AND COLLECTION SERVICES AGREEMENT

This Third Amendment to Default Prevention and Collection Services Agreement (this "Amendment") is entered into as of June 21, 2012, by and between U.S. Bank National Association, as successor Special Servicer, a national banking association with a principal place of business at 60 Livingston Avenue, Mailcode: EP-MN-WS3D, St. Paul MN 55107 (together with its successors and assigns, the "Successor Special Servicer") and NCO Financial Systems, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania having a place of business at 507 Prudential Road, Horsham, PA 19044 (together with its successors and assigns, "NCO"), and amends that certain Default Prevention and Collection Services Agreement entered into by and between First Marblehead Education Resources, Inc. ("FMER"), the initial Special Servicer, and NCO and dated as of March 1, 2009 (the "Original Agreement"), as amended by that certain First Amendment to Default Prevention and Collection Services Agreement entered into by and between FMER and NCO and dated as of May 1, 2009 (the "First Amendment") and by that certain Second Amendment to Default Prevention and Collection Services Agreement entered into by and between FMER and NCO and dated as of June 15, 2012 (the "Second Amendment" and, together with the Original Agreement and the First Amendment, the "NCO Agreement"; and the NCO Agreement, as supplemented and amended by this Amendment and as same may be further amended from time to time pursuant to Section 11.10, the "Agreement").

WHEREAS, pursuant to that certain (i) Special Servicing Agreement dated as of March 1, 2009 (the "March SSA") by and among FMER as special servicer, U.S. Bank National Association as back-up special servicer (in such capacity the "Back-Up Special Servicer") and each of the Trusts listed on Schedule A to the March SSA and (ii) Special Servicing Agreement dated as of May 1, 2009 (together with the March SSA, the "Special Servicing Agreements") by and among FMER as special servicer, U.S. Bank as back-up special servicer, Ambac Assurance Corporation ("Ambac") and each of the Trusts listed on Schedule A to the May SSA, the Trusts appointed FMER as the initial Special Servicer and U.S. Bank as the Back-Up Special Servicer for the purposes of providing default prevention, collection and other special services duties to the Trusts identified in the Special Servicing Agreements (collectively, the "Trusts" and individually, a "Trust") in accordance with the terms of the Special Servicing Agreements.

WHEREAS, pursuant to the Special Servicing Agreements, FMER as initial Special Servicer arranged for the outsourcing to NCO of certain default prevention and collection activities of the Special Servicer under the Special Servicing Agreements in the event that U.S. Bank became the successor Special Servicer under the Special Servicing Agreements;

WHEREAS, as of June 21, 2012, the Successor Special Servicer assumed the duties of the Special Servicer under the Special Servicing Agreements and FMER notified NCO of such assumption;

WHEREAS, pursuant to the NCO Agreement, upon being notified of the assumption by U.S. Bank as Back-up Special Servicer of the duties of the Special Servicer under the Special

14101092.7                                        1

2.1C   Global Portfolio Strategy Services. NCO agrees to meet from time to time with Special SubServicer and/or Special Servicer, as applicable, to review strategy with respect to the Student Loan Portfolios subject to this Agreement and performance of the Services and related functions, including, without limitation, the performance and market share of the Subservicers (including without limitation the OCAs), across all segments consistent with the Operating Guidelines. NCO shall perform the Services consistent with the terms of the Agreement and the Operating Guidelines. NCO will have no authority to, and agrees that it will not, make any changes to the procedures and operations set forth in this Agreement and/or the Operating Guidelines without the written consent of the Special Servicer and/or the Special SubServicer pursuant to Section 11.10."

2.1D   Outsourcing. For avoidance of doubt, the Services to be provided by NCO in accordance with Section 2.1A, 2.1B, 2.1C and, except as may otherwise be agreed by the Special SubServicer, 2.1D shall be performed directly by NCO.

2.5   The first paragraph of Section 2.3 and Section 2.3(a) of the Agreement are hereby amended and restated as follows:

"2.3   Default Collection Services. NCO shall perform Default Collection Services in conformity with those Default Collection Services set forth herein and in Exhibit D attached hereto and in conformity with the Operating Guidelines. NCO shall use Dedicated Staff to perform Default Collection Services. Special Servicer shall cause the Servicers to provide to NCO all documents and information specified in the Servicing Agreements and/or Servicing Guidelines.

(a)   Generally.

(i)   NCO shall review the Claims Package for conformity to the Servicing Guidelines and Program Guidelines. NCO shall return the Claims Package to the Servicers for further collection efforts and/or cure by the Servicers as provided in the Servicing Guidelines and Special Servicer's servicing agreement if it detects Servicer error as prescribed in the Servicing Guidelines.

(ii)   NCO shall reconcile all cash collections with its reported results of operations and transmit all cash receipts (net of the fees set forth on Exhibit H) weekly (or at such other agreed intervals) to Special Servicer. NCO shall provide the Default Collection Reports set forth in Exhibit E. NCO shall assign defaulted ASLs as needed to optimize collection."

2.6   Section 2.3(b) (iii)of the Agreement is hereby amended and restated as follows:

14101092.7                                                      6

"(iii) Special Servicer reserves the right to restrict or otherwise limit at any time, from time to time, the manner or means to be used by NCO in collecting any account, which restrictions may be communicated to NCO by Special Servicer orally or in writing, at Special Servicer's sole discretion. However, for so long as NCO's collection practices conform to the terms of this Agreement, the Operating Guidelines and applicable law, Special Servicer shall not exercise such right."

2.7   Section 2.4 of the Agreement is hereby amended by adding the following new clauses (h) and (i) at the end of the second paragraph thereof:

"(h)   Notwithstanding anything herein to the contrary, effective as of the date of the Third Amendment, NCO shall administer, manage and oversee collection litigation consistent with the terms of this Agreement, including without limitation, Exhibit D hereto and the Operating Guidelines and, except as contemplated in the Operating Guidelines, no further approval, consent or direction of the Special Servicer shall be required with respect to management of litigation relating to ASLs.

(i)   The Special Servicer shall execute and deliver to NCO one or more powers of attorney appointing NCO as the attorney-in-fact and a custodian of records for the Special Servicer for the purpose of executing on behalf of the Special Servicer such affidavits, documents and instruments as may be required to be delivered in connection with the performance of the Services. Notwithstanding anything contained herein to the contrary, neither NCO nor any Subservicer shall, without the Special Servicer's written consent: (i) hire or procure counsel to represent the applicable Trust or Special Servicer without indicating its representative capacity or (ii) prepare, execute or deliver any filings, forms, affidavits, pleading or other documents on behalf of a Trust or the Special Servicer without indicating its representative capacity. "

2.8   Section 2.5 of the Agreement is hereby amended and restated in its entirety as follows:

"2.5   Special Accounts.

(a)   Notwithstanding anything to the contrary in the NCO Agreement, NCO shall be responsible for servicing any ASL for which the related borrower or guarantor is subject to bankruptcy proceedings as generally described in Exhibit F, including without limitation, the filing of Proofs of Claim and monitoring of same by NCO's Bankruptcy Division. NCO shall also be responsible for fraud processes as generally described in Exhibit F.

(b)   In the event any debtor with respect to an ASL that is the subject of Services is deceased, NCO will accept from the Servicers the documentation

## FIFTH AMENDMENT TO
## DEFAULT PREVENTION AND COLLECTION SERVICES AGREEMENT

This Fifth Amendment to Default Prevention and Collection Services Agreement (this "Amendment") is entered into as of July 1, 2015, by and between U.S. Bank National Association, as successor Special Servicer, a national banking association with a principal place of business at 60 Livingston Avenue, Mailcode: EP-MN-WS3D, St. Paul MN 55107 (together with its successors and assigns, the "Successor Special Servicer") and Transworld Systems Inc. (including but not limited to as assignee of NCO Financial Systems, Inc. ("NCO")), a corporation organized under the laws of the State of California having a place of business at 507 Prudential Road, Horsham, PA 19044 (together with its successors and assigns, "TSI"), and amends that certain Default Prevention and Collection Services Agreement entered into by and between First Marblehead Education Resources, Inc. ("FMER"), the initial Special Servicer, and NCO and dated as of March 1, 2009 (the "Original Agreement"), as amended by that certain First Amendment to Default Prevention and Collection Services Agreement entered into by and between FMER and NCO and dated as of May 1, 2009 (the "First Amendment") and by that certain Second Amendment to Default Prevention and Collection Services Agreement entered into by and between FMER and NCO and dated as of June 15, 2012 (the "Second Amendment" and, together with the Original Agreement and the First Amendment, the "NCO Agreement"; and the NCO Agreement, as supplemented and amended by this Amendment and as same may be further amended from time to time pursuant to Section 11.10, the "Agreement").

WHEREAS, pursuant to that certain (i) Special Servicing Agreement dated as of March 1, 2009 (the "March SSA") by and among FMER as special servicer, U.S. Bank National Association as back-up special servicer (in such capacity the "Back-Up Special Servicer") and each of the Trusts listed on Schedule A to the March SSA and (ii) Special Servicing Agreement dated as of May 1, 2009 (together with the March SSA, the "Special Servicing Agreements") by and among FMER as special servicer, U.S. Bank as back-up special servicer, Ambac Assurance Corporation ("Ambac") and each of the Trusts listed on Schedule A to the May SSA, the Trusts appointed FMER as the initial Special Servicer and U.S. Bank as the Back-Up Special Servicer for the purposes of providing default prevention, collection and other special services duties to the Trusts identified in the Special Servicing Agreements (collectively, the "Trusts" and individually, a "Trust") in accordance with the terms of the Special Servicing Agreements.

WHEREAS, pursuant to the Special Servicing Agreements, FMER as initial Special Servicer arranged for the outsourcing to NCO of certain default prevention and collection activities of the Special Servicer under the Special Servicing Agreements in the event that U.S. Bank became the successor Special Servicer under the Special Servicing Agreements;

WHEREAS, as of June 21, 2012, the Successor Special Servicer assumed the duties of the Special Servicer under the Special Servicing Agreements and FMER notified NCO of such assumption;

14101092.6

WHEREAS, pursuant to the NCO Agreement, upon being notified of the assumption by U.S. Bank as Back-up Special Servicer of the duties of the Special Servicer under the Special Servicing Agreements, NCO began performance of the Services specified in the NCO Agreement;

WHEREAS, June 21, 2012, is the "Effective Date" for purposes of the Agreement;

WHEREAS, the Successor Special Servicer consented to the assignment of NCO's rights, obligations and duties under the Agreement to TSI and wish to amend the Agreement to update, expand and confirm the services, including, without limitation, collection and enforcement services, to be provided by TSI thereunder.

NOW THEREFORE, in consideration of the premises set forth above, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. Defined Terms. All capitalized terms in this Amendment shall have the same meaning given to them in the Agreement, unless otherwise expressly stated herein.

2. Amendments of the Agreement. The Agreement is hereby amended in the following respects:

> 2.1 All references to "NCO Financial Systems, Inc." and "NCO" are replaced with "Transworld Systems Inc." and "TSI", respectively.
>
> 2.2 The Exhibits to the Agreement are amended as follows:
>
> (a) Exhibit G to the Agreement, identified as version 7/1/14, is amended by adding the following language to the end of Section 3: Market Share Allocation and Adjustments, Sub-Section (c) Minimum Performance Standards – Post Defaults:
>
> "A separate consideration will be given to settlements secured in court, where there is no time available to submit for an under blanket request. In these circumstances a settlement will be negotiated that is deemed in the best interest of the trust. A log will be maintained of all settlements secured in this manner, along with the corresponding backup to substantiate the decision."
>
> (b) Exhibit H to the Agreement, identified as version 7/1/14, is amended by deleting the chart titled "Early Tier Bonus" and replacing it with the following:

14101092.6