The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ESTHER HOFFMAN; SARAH DOUGLASS; ANTHONY KIM; and IL KIM and DARIA KIM, husband and wife and the marital community comprised thereof, on behalf of themselves and on behalf of others similarly situated,

Plaintiffs,

vs.

TRANSWORLD SYSTEMS INCORPORATED; PATENAUDE AND FELIX, A.P.C.; MATTHEW CHEUNG, and the marital community comprised of MATTHEW CHEUNG and JANE DOE CHEUNG; National Collegiate Student Loan Trust 2004-2; National Collegiate Student Loan Trust 2005-2; National Collegiate Student Loan Trust 2005-3; National Collegiate Student Loan Trust 2006-1; National Collegiate Student Loan Trust 2006-3; National Collegiate Student Loan Trust 2007-4,

Defendants.

Case No. C18-1132 TSZ

PLAINTIFFS' RESPONSE TO TSI'S MOTION FOR SUMMARY JUDGMENT

NOTED FOR HEARING:
July 23, 2021

**(i) ORAL ARGUMENT REQUESTED**

## I. INTRODUCTION

Plaintiffs claims concern Defendants Transworld Systems Incorporated's ("TSI"), Patenaude and Felix, A.P.C.'s ("P&F") and the other Defendants' use of false and misleading affidavits TSI employees signed to obtain judgments against Washingtonians in the name of the six National Collegiate Student Loan Defendants ("NCSLTs"). Plaintiffs allege the TSI affidavits are false because the affiants did not have the personal knowledge they testified to having in their affidavits. Defendants claim that Plaintiffs owe debt to the NCSLTs relating to

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 1
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

student loans that the Plaintiffs took out between 2004 and 2007. TSI claims that it can prove the NCSLTs were assigned the at issue student loan debt.

Plaintiffs' claims that Defendants filed false and misleading affidavits are supported by public records, including findings of fact made by the Consumer Financial Protection Bureau ("CFPB"). Although the Plaintiffs have not had the opportunity to complete discovery,[1] available evidence shows: (1) TSI employees submitted false declarations under penalty of perjury in Defendants' attempts to collect on the alleged loan debts; (2) there are missing loan records and/or loan records that cannot be authenticated; (3) after being audited by the Consumer Financial Protection Bureau ("CFPB") and the CFPB finding that TSI affiants submitted false and misleading affidavits, TSI did not audit its files before continuing to collect on the student loans or give courts notice of the false affidavits as they agreed to do; and (4) that TSI lost the requisite paperwork required to prove they own the loans.

Without authentication and personal knowledge of the chain of title documents showing proof of assignment, the Defendants cannot show that the NCSLTs own the Plaintiffs' loans. (Second Amended Complaint ("SAC") (ECF 61)) at ¶¶ 11-13, 29, 38, 41, 119. Where business records are transferred through numerous entities, they can only be found to be business records if a proper affiant can testify that they meet the evidentiary requirement for authenticity. *Webb v. Midland Credit Mgmt., Inc.*, No. 11 C 5111, 2012 WL 2022013, at *4 (N.D. Ill. May 31, 2012). To properly admit the NCSLT documents into evidence, TSI is required to demonstrate that third-party authors created such documents on a regular basis and kept the documents at issue in the course of their regularly conducted business activity. *Id.* Defendants must satisfy these foundational requirements through the testimony of a qualified witness with knowledge of the process by which the third party created the documents, thereby demonstrating that the documents are trustworthy. *Id.* If Defendants cannot do this here, there is no way that the TSI affiant's statements could be true.

---

[1] The Plaintiffs' Fed. R. Civ. P. 56(d) motion for an order striking TSI's motion for summary judgment (Dkt. No. 176) remains pending. Plaintiffs incorporate that motion in this Response, and renew their request that the Court strike the summary judgment motion until such time as they have had a fair opportunity to conduct discovery.

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 2
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

TSI's argument that Plaintiffs claims should be dismissed on summary judgment because its employee Bradley Luke can prove the NCSLTs were assigned Plaintiffs' loans, misses the point. Regardless of whether TSI can now authenticate records, which available records indicate he likely cannot, Plaintiffs' claims should not be dismissed. Plaintiffs' claims concern the veracity of affidavits signed by TSI employees. Mr. Luke did not sign those affidavits. Those affiants have not submitted declarations in support of TSI's Motion for Summary Judgment and Plaintiffs have not had the opportunity to depose those affiants. Accordingly, the Court should deny TSI's motion.[2]

## II. BACKGROUND

### A. Relationship of the Defendants.

### B. Defendants' relationship with the Plaintiffs and putative class.

TSI and P&F have filed numerous lawsuits on behalf of the NCSLTs in Washington. *See* Dkt. No. 70-1, ¶ 8. In the debt collection cases like those that were brought against the Plaintiffs,

---

[2] P&F joined TSI's motion, Dkt. No. 162, but submitted no additional evidence or argument in support of the motion. Therefore, the Court should also deny the summary judgment motion as to P&F's joinder in it.

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 3
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

TSI employees file affidavits purporting to authenticate loan records and proof of assignment to the NCSLTs of those loans. *See* Declaration of Christina L Henry ("Henry Decl."), at ¶ 6, D-1, E-2, F-2, G-2, H-2, I-2, J-2, and K-2.

### C. Problems with the loan records filed in NCSLTs' lawsuits.

The loan records filed in these actions included a document titled "Loan Request/Credit Agreement – Signature Page" ("Loan Request"). *See* Declaration of Christina L Henry ("Henry Decl."), at ¶ 6, D-1, E-2, F-2, G-2, H-2, I-2, J-2, and K-2. Those Loan Request documents do not have a page number on them, except for the document filed in the collection action against Plaintiff Esther Hoffman. *Id*. The Loan Request filed in the Hoffman collection case appears to have a fax page number showing that it is page 1 of 3. *Id*. at I-2 at pg. 9. The pages following the Loan Request page appear to be terms for a loan agreement ("terms") with numbered pages starting at page 2. *Id*. at I-2 at pg. 9-12. Notably, the terms document following the Loan Request in Ms. Hoffman's case indicates that it is a four-page document, not a three-page document as identified on the Loan Request. *Id*. It appears from the Declaration of Bradley Luke that the terms may not have been transferred to TSI's at the same time as the Loan Requests. Dkt No. 161-4, at ¶ 12.r., Ex. 3-K.

The inconsistencies with TSI's Affidavits is perhaps most noticeable in *National Collegiate Student Loan Trust 2004-2 v. Esther Hoffman*, Snohomish County Superior Court No. 16-2-15162-31 ("Hoffman Case"). In the Hoffman Case, the Loan Request document and the documents TSI claims proves assignment of the loan to the NCSLT do not correspond and are not authenticated. An "Affidavit and Verification of Account" signed by Dudley Turner was filed in the Hoffman Case in support of a motion for default. Henry Decl., Henry Decl., at ¶ 6, Ex. I-2. In Dudley Turner's Affidavit submitted in the Hoffman Case, he testified that he had knowledge of Exhibit A attached to his declaration, and described it as "a copy of the underlying Credit Agreement/Promissory Note." *Id*. at pg. 3, ¶ 6. Yet also attached to Mr. Turner's affidavit is a document titled "Pool Supplement Bank of America, N.A.," that appears to have been pulled from EDGAR, the Securities and Exchange Commission's online records system. *Id*. at

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 4
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

PLA000310. Also attached to the declaration is a document titled "Deposit and Sale Agreement, The National Collegiate Student Loan Trust 2004-2," with a "Schedule A Pool Supplements" and "Schedule B, Student Loan Purchase Agreements." *Id*. at pg. 15-26. Also. Schedule A and Schedule B include a list of Loan Programs. *Id*. at at pg. 24-26. The Loan Request document attached to Mr. Turner's Affidavit lists the loan program as an "Education Maximizer Undergraduate Loan from Bank of America." *Id*. at pg. 5. No such loan program is listed on the Schedule A or Schedule B attached to Mr. Turner's Affidavit. *Id*. at at pg. 6. Mr. Turner does not attest to personal knowledge of the Schedule A or Schedule B or any other documents attached other than the Loan Request, which is a separate document not included in or as part of the other documents. The Pool Supplement Bank of America, N.A. document attached to the Turner Affidavit also states that the individual loans are listed on a "Schedule 2." *Id*. at pg. 11. No "Schedule 2" is included with the records attached to Mr. Turner's Affidavit, and it is not reference in the his Affidavit.

The schedules of individual loans are not attached to any of the affidavits used to obtain judgments against the Plaintiffs, and they are not referenced by the Affiants. The issue with authentication of the records other than the Loan Request is also apparent in some of the other affidavits filed in cases against the other Plaintiffs. *See e.g.* Henry Decl., Ex. *D-2* at pg. 3 (*See* the Affidavit of Dudley Turner in *National Collegiate Student Loan Trust 2005-2 v. Tony Kim and Daria Kim*, Snohomish County Superior Court No. 15-2-03144- - failing to authenticate any record other than the Loan Request). In discovery, TSI has not turned over a single document titled "Schedule 1" or "Schedule 2." Henry Decl., at ¶ 2.

### D. Public Records and Litigation Records in Other Cases Support Plaintiffs' Claims that Defendants Used False Affidavits to Obtain Judgments.

Plaintiffs' claims are supported by public enforcement actions, including factual findings contained in a Consent Order between the CFPB and TSI, a CFPB consent judgment against the NCSLTs that is the subject to litigation in Delaware District Court (case no), a New York Assurance Consent Decree, and a partial PHEAA Audit of the NCSLT trust documents

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 5
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

commenced on September 11, 2015 by the Boston Portfolio Advisors ("BPA") at the behest of the NCSLT owners. *Id.* at ¶ 8, Ex. M-1. These actions have addressed the conduct experienced by the Plaintiffs as described in their Second Amended Complaint. *See also Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 684 (S.D.N.Y. 2019)(applying and relying upon the CFPB's Consent Order with Transworld); *Hoffman v. Transworld Sys., Inc.*, 806 F. App'x 549, 551 (9th Cir. 2020)("the consent order that TSI entered into with the [CFPB] makes it plausible that the affidavits ... were false and the supporting documentation was lost or missing"). *Id.* at ¶ 8 and 9, Ex. M-1 and Ex. N.

Since the filing of this lawsuit, the "owners" of the NCSLT trusts have filed litigation in Delaware making allegations that TSI failed to obtain and safeguard "Schedule 1" to each of the Pool Supplement agreements, which is supposed to include the list of the loans the NCSLTs purchased, and that PHEAA, the prior custodian of records for the loan documents does not possess the Pool Supplement Agreements, including all related schedules for the NCSLT Trusts. *See* Henry Decl., at 8, M-2, (Verified Amended Complaint, ¶ 76). Additionally, the Owners claim that TSI has failed to obtain the Schedule 1's and other documents needed to prove ownership of the loans. Another entity, Turnstile, is required to ""instruct Servicers to provide original documents to" TSI but it has failed to do so. *See Id.* ¶ 76. following allegations regarding the "schedule."

### III. OBJECTION TO EVIDENCE AND MOTION TO STRIKE

Under the business records hearsay exception, a business' records custodian or other qualified witness may authenticate documents from transactions in which the business was involved, even if that witness did not personally witness the transaction. *See* Fed. R. Evid. 803(6). But "[w]here business records involve a chain of multiple assignments, each transaction requires supporting testimony from a qualified witness with knowledge of the assignee's record keeping procedures in order to qualify for the hearsay exception." *Cage v. CACH, LLC*, No. C13-01741RSL, 2014 U.S. Dist. LEXIS 71467, at *8 (W.D. Wash. May 22, 2014) (citing *Webb v. Midland Credit Mgmt., Inc.,* No. 11–C–5111, 2012 WL 2022013 (N.D.Ill. May 31, 2012)

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 6
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

(cardmember agreement was transferred four times; records custodian for final assignee could authenticate final assignment, but could not lay the foundation for the previous three assignments)). Additionally, Fed. R. Evid. 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Hearsay is inadmissible and cannot be considered on a motion for summary judgment. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012). A business document meets the business records exception to the hearsay rule if it is attached to a declaration that provides testimony from the custodian or another "qualified witness" and if it meets three requirements: (1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business"; and (3) "making the record was a regular practice of that activity." Fed. R. Evid. 803(6)(A)-(D). However, the business record exception applies only where a business record is trustworthy. *United States v. Olano*, 62 F.3d 1180, 1205 (9th Cir. 1995).

To support TSI's motion for summary judgment, Defendant TSI (and P&F through joinder), relies on hearsay, speculation, and documents which Defendants cannot properly authenticate under Rule 901. TSI's Director of Operations, Bradley Luke, attempts to prove the NCSLTs' ownership of the debts in question through documents he claims are the "Loan Schedules." Dkt. No. 161-4 at ¶¶ 12.d.-h, Exs. 3B – 3H. He contends the "Loan Schedules" were "excerpted from the digital Excel file constituting the schedules, re-formatted for ease of display, and printed on standard-sized printed paper for purposed of this declaration." *See id.* at ¶ 12 (d), Dkt. No. 161-4, Ex's 3-B, 3-C, 3-D, 3-E, 3-F, and 3-G. His testimony is clear that the documents were created solely for the purpose of litigation and were not created in the regular course of business. They are therefore not admissible under the business record exception to the hearsay rule. *Olano*, 62 F.3d at 1205.

Furthermore, Bradley Luke cannot testify about many of the documents attached as exhibits to his declaration, as he has failed to show that he is competent to testify. A witness is

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 7
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

only competent to testify to a matter if it is introduced with sufficient support to show that the witness has personal knowledge of the matter. Fed. R. Evid. 602; *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995). A declaration where personal knowledge cannot be inferred is entitled to no evidentiary weight. *Bank Melli Iran v. Shah Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995). Moreover, declarations filed in support of a motion for summary judgment are not admissible if they do not contain sworn testimony by competent fact witnesses. *See Teras Chartering, LLC v. Hyupjin Shipping Co.*, No. 2:16-CV-0188-RSM, 2017 WL 2363632, at *4 (W.D. Wash. May 31, 2017).

Exhibits 3A – 3L, identified in Paragraph 12 of Mr. Luke's declaration should be stricken, as his attempt to introduce them and his statements about them are made without personal knowledge, and the related documents lack the indicia of trustworthiness required to be admissible as business records. *See* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 803(6). Mr. Luke's statements largely rely on conclusory representations of "fact" without any foundation to support the admission of records created by entities other than TSI; TSI contends that the documents are admissible because Mr. Luke has "access to" and has "reviewed the records and information…" of the Plaintiffs and their student loans with the NCSLTs and that the records he possesses were received from other entities. *See* Dkt No. 164-4 at ¶ 12 and 17. But a third party cannot properly authenticate the business records merely "received" by a business different than the one for which they were created. *See N.L.R.B. v. First Termite Control Co.,* 646 F.2d 424, 429 (9th Cir. 1981) (holding that the bookkeeper of an entity who had no knowledge as to how the entity records were made or maintained, does not qualify as a "qualified witness" under Rule 803(6)). In *First Termite*, the court found that the business records exemption was not satisfied when a witness, testifying about the point of origin of a shipment by reference to a freight bill produced by a third party did not have any relevant knowledge about the record-keeping practices of the third party, and did not know how the freight bill was created or maintained. *First Termite*, 646 F.2d at 428–30.

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 8
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

In like circumstances here, Mr. Luke testified in his declaration that TSI received documents from First Marblehead. But Mr. Luke has previously admitted that he does not know how First Marblehead Corporation or its subsidiaries (collectively, "First Marblehead") compiles and maintains loan information. Declaration of Lawrence Silver, Ex. A at 19. In his declaration, Mr. Luke repeatedly states that NCO or TSI received documents from Frist Marblehead. Dkt. No. 161-4 ¶¶ 12.a-b, d. But "First Marblehead," as defined by Luke, is not a single entity, but instead is made up of First Marblehead Corporation and its subsidiaries. *Id*. ¶ 12.a. Luke says that the loan schedules were received by NCO from First Marblehead, Luke Decl. at ¶ 12.d-f, and continues that the schedules are "Excel files [and] have not been modified at any time." *Id*. at ¶ 12.f. Yet, Mr. Luke testified years ago, he does not know how First Marblehead Data Services compiled the information or received the documents, or how it maintained the records. Declaration of Lawrence Silver, Ex. A at 19. Additionally, in trial testimony in King County, Washington State Superior Court on February 29, 2020 in *National Collegiate Student Loan Trust 2006-1 v. Shauna M. Tachibana*, Case No. 18-2-08347-8 SEA, when Mr. Luke, testifying for TSI, was asked about receiving the so called "Schedules" from one of First Marblehead's subsidiaries, responded:

> Q. And have you ever obtained any sworn testimony from someone who knows that that Schedule 1 was actually attached to those documents at the time it was delivered to First Marblehead?
>
> A. I don't believe I've received sworn testimony from anyone specific in that regard.

Henry Decl. at ¶ 5, Ex. C at 828:21 – 829:1.

There is also no basis in the documentation for the NCSLTs to support Mr. Luke's assertions, as the pre-default servicing was done by Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("AES"). The servicing agreement between AES and First Marblehead provides that AES was responsible for maintaining the original records in a secure location and creating the digital copies of the records. Henry Decl., at ¶ 7, Ex. L-2, at ¶ 4.04. The verified amended complaint indicates that AES lost some, if not all, of the loan

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 9
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

records relating to the NCSLTs. *See* Henry Decl. at ¶ 6, Ex. I-2 (Verified Amended Complaint, ¶ 76). AES complained in an audit that the records were never transferred to it. *Id*. Thus, there is a question of fact regarding the accuracy of TSI's records and Mr. Luke's declaration.

Additionally, Mr. Luke's declaration directly contradicts testimony he gave on May 16, 2017 about lawsuits brought against Plaintiffs Anthony Kim, Il Kim and Daria Kim for lawsuits filed in Snohomish County Superior Court, Case Nos. 15-2-031447, 15-2-03146-3, 15-2-03146-3, 15-2-04016-1, 15-2-04015-2, 15-2-04465-4, and 15-2-04014-4 about the same loans. *See* Henry Decl. at ¶ 4, Ex. B. In relevant part, the contradicting testimony addressed the nature of loan documents to establish chain of title. Mr. Luke testified:

> Q. What entity did [the loan documents] go to?
> A. [Mr. Luke] For Mr. Kim's loans, they went to American Education Services.
> Q. Do you know when?
> A. Right after disbursement. I don't know the exact dates.
> Q. So TERI holds them between the time of signing through disbursement?
> A. Yes.
> Q. What else does TERI do during that time between origination and disbursement? Do you have any knowledge?
> A. No, ma'am.
> Q. How do you know at all about what they do?
> A. From First Marblehead.

*Id.* at ¶ 4, Ex. B at Pages 68:13 to 69:3

In connection with this summary judgment motion, Mr. Luke has substantially different testimony as follows:

> TSI (or its predecessor and my former employer, NCO) received documents relating to the Loans, as follows:
>
> b. On October 31, 2012, NCO received from First Marblehead the Pool Supplements relating to Anthony and Il Kim's loan with NCSLT 2007-4. As detailed below, the loan schedules to these Pool Supplements were received separately;
> …
> j. On May 30, 2014, NCO received from Goal Structured Solutions, Inc. ("Goal"), the Deposit and Sale Agreements relating to Anthony and Daria Kim's loans with NCSLT 2005-2 and NCLT 2005-3 and Anthony and Il's loan with NCST 2006-1;
> …

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 10
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

m. NCO received the Credit Agreement signature pages and Note Disclosure Statement relating to Hoffman's loan with NCSLT 2004-2 from First Marblehead on November 13, 2021, in connection with NCO's transition to Special Subservicer that occurred in November 2021;

n. NCO received the signature pages and Note Disclosure Statements relating to Anthony and Daria Kim's loans with NCSLT 2005-23 and Anthony and Il Kim's loans with NCSLT 2005-3, NCSLT 2006-1, and NCSLT 2006-3 from First Marblehead on November 13, 2012, in connection with NCO's transition to Special Subservicer;.

Dkt. No. 161-4 at ¶ 12.

Though Mr. Luke's affidavit may say that TSI maintains the documents he attaches as exhibits to his declaration, there is no foundation to assert that the records from multiple parties are admissible. He fails to lay any adequate foundation for how he obtained the personal knowledge he claims to have regarding the various "facts" to which he testifies throughout his declaration. Because there is no showing about how Mr. Luke could know how the origination records of TERI loan servicing were kept or its record keeping and maintenance procedures, the records are not admissible. *See Cage v. Cach, LLC*, No. C13-01741RSL, 2014 WL 2170431, at *2 (W.D. Wash. May 22, 2014). He cannot authenticate the records of Bank of America, Bank One, or First Marblehead, allegedly the original lenders, let alone testify concerning their record keeping practices and procedures that were in place from 2004 to 2007, when the Plaintiffs allegedly obtained their loans. Plaintiffs obtained their loans several years before Luke's employment at NCO Financial Systems, Inc. (the predecessor-in-interest to TSI) in January 2010, and he has not provided sufficient testimony regarding his personal knowledge to make the records admissible. *Miller v. Fairchild Indus., Inc.*, 885 F2d 498, 514 (9th Cir. 1989). He is not a person with knowledge that can attest that the records were prepared in the ordinary course of TSI's business, that the documents were received by TSI in the ordinary course of business, or that they were *"kept"* in the ordinary course of business. Thus, paragraph 12 of Mr. Luke's declaration, and the documents and records referenced in it should be stricken from the record under Fed. R. Evid. 901 and 803(6).

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 11
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

## IV. ARGUMENT

### A. Legal Standard for Summary Judgment.

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (internal quotation marks and citation omitted). Here, there are significant issues of fact that compel the denial of TSI's motion.

### B. Request for Continuance of Summary Judgment Motion.

Plaintiffs' Fed. R. Civ. P. 56(d) Motion for Order Striking Summary Judgment Motion (Dkt. No. 170) is pending, and the Plaintiffs incorporate that motion in this response and request that the Court permit them to complete discovery so that they can provide a comprehensive opposition to TSI's motion. Fed. R. Civ. P. 56(d).

### C. Summary Judgment Is Not Appropriate Because the Veracity of the TSI Affidavits is an Issue of Disputed Fact Not Properly Determined Without an Evidentiary Hearing.

Where the veracity of an affiant's affidavit is at issue, summary judgment is not appropriate:

> Because the veracity of the witnesses who signed the affidavits on which Earp based his claim was at issue, the claim could not be adjudicated without an

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 12
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

> evidentiary hearing on this disputed issue of material fact. Summary judgment is an inappropriate vehicle for resolving claims that depend on credibility determinations. *See Williams v. Calderon*, 48 F. Supp. 2d 979, 989 (C.D. Cal. 1998) (noting in the context of a habeas claim "the Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), aff'd *Williams*, 384 F.3d at 628; *see also United States v. Two Tracts of Land in Cascade County, Mont.*, 5 F.3d 1360, 1362 (9th Cir. 1993) (reversing and remanding summary judgment for live testimony where the district court concluded on the basis of affidavits that the affiants were not credible); *Kreisner v. San Diego*, 988 F.2d 883, 900 n.1) ("Determinations of credibility are inappropriate for summary judgment."), amended by 1 F.3d 775 (9th Cir. 1993); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("Summary judgment is singularly inappropriate when credibility is at issue.").

*Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005) (citations and quotes in the original).

Here, the personal knowledge TSI affiants had when they signed affidavits under penalty of perjury that were filed by the Defendants in Washington courts to obtain judgments is at the heart of this case. *See* Dkt. No. 61 ¶¶ 155, 166-169, 184.a-d. Although discovery has just begun in this case, there is ample evidence to establish genuine issues of material fact regarding what the TSI employees who signed the affidavits knew.

The nine-state court complaints Defendants filed against Plaintiffs are substantively identical, save for the identity of the originating lender, the specific NCSLT alleged to be the owner of the loan, and the alleged amount due. Each Complaint alleges that "The defendant[s] entered into a loan agreement with the plaintiff or the plaintiff's assignor…... the defendant is now in default under the terms and conditions of the agreement."[3] Dkt No. 16-1 at pg. 7-8. Thereafter, for eight of the nine loans, the NCSLTs filed affidavits in support of motions for default and default judgments from affiants Dudley Turner and Brian Jackson, employees of TSI, who claimed to have reviewed the records pertaining to the loans and verified that the alleged borrowers owed an outstanding principal balance on loans then-currently owned by one of the NCSLTs. *See* Henry Decl., at ¶ 6, D-1, E-2, F-2, G-2, H-2, I-2, J-2, and K-2. The affiants do not identify themselves in the affidavits as TSI's Records Custodians,[4] and there is no testimony or

---

[3] Complaints with multiple defendants are modified slightly to reflect that fact (e.g., "Defendants" rather than "Defendant"); otherwise, the wording is identical for all complaints.

[4] The affidavits say that TSI—not Dudley Turner or Brian Jackson—is the "designated Custodian of Records."

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 13
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

mention in the affidavits that the NCSLTs were the assignees of the student loan claims against the Plaintiffs in this lawsuit. *Id*.

Attached to each of the affidavits is an exhibit or exhibits purporting to substantiate the chain of assignment for the loan, including:

- Details of a student loan and credit agreement allegedly incurred by one of the borrower defendants.

- A "Pool Supplement" evidencing the purported sale of certain student loans from lenders to The National Collegiate Funding LLC, which would in turn sell them to one of the plaintiff trusts.

- A "Deposit and Sale Agreement" that purports to record the sale of the pool of loans from The National Collegiate Funding, LLC to the designated Plaintiff Trust.

*See* Henry Decl., at ¶ 6, D-1, E-2, F-2, G-2, H-2, I-2, J-2, and K-2 (Affidavits).

In each case, both the Pool Supplement and the Deposit and Sale Agreement state that the actual list of loans in each pool is specified by either Schedule 1 or Schedule 2 of the associated Pool Supplement. However, none of the Pool Supplements attached to any of the Affidavits includes Schedules 1 or Schedule 2. *Id.* Turner and Jackson never claim in any of the affidavits to have seen or reviewed Schedule 1 or Schedule 2, instead testifying vaguely about being "familiar with the process by which TSI receives prior account records," and having "reviewed the educational loan records described in this affidavit." *Id.* Most glaring, in the affidavits submitted in the collection action against Ms. Hoffman and the Kims, Dudley Turner does not even describe any of the assignment documents attached to his declaration. Henry Decl., at ¶ 5, Ex. D-1 at ¶ 6. There is nothing in any of the affidavits to tie any of the specific loans referenced in the state court complaints to any of the NCSLT plaintiffs in them.

Further, while Messrs. Turner and Jackson attached an alleged copy of the assignment agreement to their declarations (the various "Pool Supplements" and "Deposit and Sale Agreements"), the agreements do not contain all of the actual signatures of the

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 14
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

purported parties to them, and none of them identify the individual loan contracts that are being assigned to the NCSLTs. As with the affidavits submitted in the state court lawsuits, the assignment agreements are insufficient to prove the existence or validity of the purported assignments of the student loans to the NCSLTs. *Sunde,* 163 Wn. App. at 482. Given the paucity of the evidence the affiants presented in the state court lawsuits, and because TSI is required to possess all of the records necessary to prove its ownership of the loans in question, it is not unreasonable to assert that Messrs. Turner and Jackson must never have seen or reviewed documentation that the Plaintiffs' loans are indeed owned by the NCSLTs.

The affiants' ability to review the records relating to each loan is also questionable given the amount of loans they were required to review. The affiants reviewed and signed an average of 20 to 40 affidavits per day and procedures and checklists confirm that affiants only review the online CRS system.. *See* Henry Decl. at ¶ 3, Ex. B (Luke Kim Decl. at Pages 18:25 to 19:14); *See* Luke Decl. at ¶¶ 20 and 25, Ex's. 3-L (TSI_0023583-TSI_0023584) and 3-P (TSI_0023603).[5] There are detailed procedures for assembly of the documents from are attached to the affidavits signed and filed in state court. *Id.* at 166:2 to 166:9); Dkt No. 161-4, 23 and 25, Ex. 3-N and 3-P. Thus, the statements in the Turner and Jackson affidavits that their representations was based on their review of TSI's records appear false, deceptive, and misleading, because they did not review any records to confirm whether the NCSLTs are in fact the assignees of the Plaintiffs' loans, and never saw or reviewed any such assignment records before they signed their in their affidavits. Thus, there are issues of fact not only about whether the NCSLTs actually were the assignees of the loans, but also whether the Turner and Jackson affidavits were false.

The omission by Messrs Turner and Jackson to include in their affidavits the loan schedules showing that the Plaintiffs' loans were in fact assigned to the NCSLTs creates a genuine issue of fact about whether they made materially false misrepresentations or

---

[5] The CRS system is an account record system used by TSI to track borrower information and internal notes on a file. See Henry Decl. at ¶ 3, Ex. B (Luke Kim Dec. at Page 42:12 to 42:24).

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 15
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

deceptive statements in the state court actions, thereby providing the bases for Plaintiffs' CPA claims in this case. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

**D. Mr. Luke's Testimony Does Not Shore Up the Testimony of Affiants Turner and Jackson.**

To the extent TSI is relying on the testimony of Bradley Luke to shore up the testimony of Affiants Turner and Jackson, that effort fails. Mr. Luke was not the affiant who made the false statements, and he himself doesn't have the requisite knowledge to testify about those facts. He has testified that he lacks knowledge about the regular business practices and record keeping of Bank of America, Bank One, First Marblehead, or that of The National Collegiate Funding LLC, regarding the transfer of pooled loans, such that he cannot testify about the reliability and authenticity of those documents. Further, his previous testimony in 2014 confirms that he does not have personal knowledge of how First Marblehead Data Services obtained loan documents or maintained loan documents. Silverman Decl. Ex. A at 19:10-17.

Mr. Luke can only speak authoritatively about the record keeping and maintenance procedures of TSI, not for any other entities or alleged prior owners of the Plaintiffs' loans. He has testified previously that he has no information about the record keeping and maintenance practices of the predecessors-in-interest to the NCSLTs. TSI is also not, in any legal sense, the NCSLTs' "Custodian of Records," because TSI merely retrieves documents from the server of another entity, AES. *See* Henry Decl. at ¶ 3, at Ex. B. Mr. Luke has already admitted in prior deposition testimony concerning TSI's servicing of the NCSLTs' loans for Plaintiffs Anthony Kim, Il Kim and Daria Kim that TSI has no personal knowledge about the document storage and security policies of Bank of America, Bank One, or The National Collegiate Funding, LLC. As discussed above, he has also previously testified that he does not have any knowledge about the record keeping practices of First Marblehead or its subsidiaries. *See* Sec. III, infra. Thus, Mr. Luke's declaration filed by TSI in support of its summary judgment motion offers no evidence that the records he seeks to authenticate at paragraph 12 of his declaration were made at or near the time of the business activities in question by someone with knowledge, or that the records were kept in the course of the

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 16
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

regularly conducted activities of Bank of America, Bank One, TERI, First Marblehead, or National Collegiate Funding. *See Barkley v. Orlob-Radford v. Midland Funding LLC*, No. 2:15-CV-00307-JLQ, 2016 WL 5859002, at *5 (E.D. Wash. Oct. 5, 2016). Without this knowledge, no amount of checklists, procedures or documented review can save the affiants' testimony.

Additionally, Mr. Luke previously testified that he has not received any training from TERI that would give him knowledge to testify about TERI loan servicing documents. That entity is no longer in existence after filing for bankruptcy in 2008. Thus, neither TSI nor Mr. Luke can provide the requisite foundation for any testimony to establish the document retention policies in effect at the time of loan origination. Without that information, there is no way to verify that the documents attached to affidavits are actually the documents they are purported to be or that the loans are actually the loans that were purported to be transferred to the NCSLTs. In fact, the only knowledge Mr. Luke claims to know about TERI comes from First Marblehead, and as he testified, his training from First Marblehead was very limited.

But in the end, what Mr. Luke knew is irrelevant; what is at issue is not what he knew, but what Messrs. Turner and Jackson knew, and TSI has failed to show that there is an absence of a genuine issue of material fact about what they knew. This compels the denial of TSI's motion. *Earp*, 431 F.3d at 1170; *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

### E. The CFPB Order Against TSI is Admissible.

TSI claims that the TSI Consent Order is not admissible because it has not admitted to the findings and the findings were not vetted or proven at a trial or administrative hearing. Dkt. No. 161 at 18.-19. This Court has already ruled that the Ninth Circuit's ruling on Plaintiffs' appeal supports that the CFPB documents support Plaintiffs allegations that "the affidavits . . . were false and the supporting documentation was lost or missing." Dkt No. 118 at 12. Other courts, like the *Michelo* court have also found them admissible. To date, the Plaintiffs have not received any discovery from the Defendants regarding the CFPB documents; TSI has refused to produce

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 17
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

them, and Plaintiffs' requests for them is the subject of a motion for a protective order, whereby TSI seeks a ruling that it is not required to produce them. See Dkt. No. 156. In any event, the Plaintiffs offer the Consent Order and the Proposed Consent Judgment not to look backward at the NCSLTs' and TSI's prior bad acts, but to look forward from the date of those Orders to demonstrate that TSI has since performed *new* bad acts that the Order explicitly forbade it from performing.

In the CFPB Consent Order, TSI agreed that, when acting on behalf of the NCSLTs, it and its attorneys would not file affidavits falsely claiming that the affiant "has personal knowledge of the loan's chain of assignment or ownership, [or] about the maintenance of documents relating to the loan's chain of ownership." Dkt. No. 61, Ex. A It further agreed to implement policies and programs ensuring that all of its attorneys nationwide comply with the terms of the Consent Order as well as all applicable federal consumer finance laws. The Consent Order requires TSI to give notice of its prior bad acts to courts and to audit its records prior to collecting on NCSLT accounts, and it has failed to show that it has done so. That TSI has violated both of these edicts is absolutely relevant to this proceeding, and it is proper that the Court should take judicial notice of it and associated documents.

## V. CONCLUSION

Despite not having had the opportunity to obtain meaningful discovery or to take any depositions of witnesses with relevant knowledge, the Plaintiffs have amply demonstrated that there are genuine issues of material fact concerning TSI's motion for summary judgment. Accordingly, the Court should deny the motion.

Respectfully submitted this 19th day of July 2021.

*Attorneys for Plaintiffs*:

| LEONARD LAW | BERRY & BECKETT, PLLP |
|---|---|
| */s/ Sam Leonard* | */s/ Guy Beckett* |
| Sam Leonard, WSBA #46498 | Guy W. Beckett, WSBA #14939 |
| 3614 California Ave. SW, #151 | 1708 Bellevue Avenue |

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 18
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

| | |
|---|---|
| Seattle, Washington 98116 | Seattle, WA 98122 |
| Telephone: (206) 486-1176 | Telephone: (206) 441-5444 |
| Facsimile: (206) 458-6028 | Facsimile: (206) 838-6346 |
| E-mail: sam@seattledebtdefense.com | E-mail: gbeckett@beckettlaw.com |

HENRY & DeGRAAFF, P.S.                NORTHWEST CONSUMER LAW CENTER

 /s/ Christina Henry                   /s/ Amanda Martin
Christina L. Henry, WSBA #31273       Amanda N. Martin, WSBA #49581
119 1st Ave S, Ste 500                936 North 34th Street, Suite 300
Seattle, WA 98104                     Seattle, WA 98103
Telephone: (206) 330-0595             Telephone: (206) 805-0989
Facsimile: (206) 400-7609             Facsimile: (206) 805-1716
E-mail: chenry@HDM-legal.com          E-mail: Amanda@NWCLC.org

PLAINTIFFS' RESPONSE TO TSI'S
MOTION FOR SUMMARY JUDGMENT - 19
(No. C18-1132 TSZ)

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax