The Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTHER HOFFMAN; SARAH DOUGLASS; ANTHONY KIM; and IL KIM and DARIA KIM, husband and wife and the marital community comprised thereof, on behalf of themselves and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRANSWORLD SYSTEMS INCORPORATED; PATENAUDE AND FELIX, A.P.C.; MATTHEW CHEUNG, and the marital community comprised of MATTHEW CHEUNG and JANE DOE CHEUNG; National Collegiate Student Loan Trust 2004-2; National Collegiate Student Loan Trust 2005-2; National Collegiate Student Loan Trust 2005-3; National Collegiate Student Loan Trust 2006-1; National Collegiate Student Loan Trust 2006-3; National Collegiate Student Loan Trust 2007-4,<br><br>Defendants. | Case No. C18-1132 TSZ<br><br>PLAINTIFFS' MOTION FOR SANCTIONS AGAINST TRANSWORLD SYSTEMS INC. FOR VIOLATION OF DISCOVERY ORDER<br><br>NOTED FOR CONSIDERATION: April 1, 2022 |

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - i
(Case No. C18-1132 TSZ)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

# I. INTRODUCTION

On December 16, 2021 Plaintiffs deposedTransworld Systems Inc.'s ("TSI's") Fed. R. Civ. P. 30(b)(6) witness, Bradley Luke. Mr. Luke refused to testify about what actions TSI took to comply with the Consumer Financial Protection Bureau's ("CFPB's") Consent Order with TSI, which was entered with the CFPB on September 18, 2017. Upon the Plaintiffs' motion to compel Mr. Luke to provide such testimony, the Court ordered Mr. Luke, for TSI, to provide "testimony concerning the actions [TSI] took in response to the …Consent Order." Dkt. #258 at 1. The Court further ruled that "Plaintiffs' questions regarding whether TSI took actions prescribed in the Consent Order do not require TSI to disclose its attorneys' mental impressions, opinions, or conclusions about the provisions." *Id.*

Nevertheless, when Mr. Luke's deposition as TSI's Rule 30(b)(6) representative resumed on March 8, 2022, Mr. Luke refused to answer most of Plaintiffs' questions about the actions TSI took in response to the Consent Order. TSI's counsel interposed improper objections, instructed Mr. Luke not to answer numerous questions, and made speaking objections to coach Mr. Luke. Further, Mr. Luke did not know the answers to many of Plaintiffs' questions, despite knowing that TSI's compliance with the Consent Order was the subject matter of the resumed deposition.

Because TSI violated the Court's order to provide testimony about the actions it took in response to the Consent Order, the Court should enter an order providing as follows: (1) that TSI failed to comply with the CFPB's September 18, 2017 Consent Order and that TSI's failure to comply with the Consent Order was an unfair and deceptive act or practice in trade or commerce that impacted the public interest, for purposes of RCW Chapter 19.86; (2) ordering TSI's Rule 30(b)(6) witness to sit for another deposition and to provide complete answers to all of Plaintiffs' questions concerning TSI's response to the Consent Order; (3) removing any time restrictions for the completion of TSI's Rule 30(b)(6) deposition, (4) requiring TSI to pay for all expenses incurred by Plaintiffs for the March 8, 2022 deposition and the upcoming resumed deposition

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 1
(Case No. C18-1132 TSZ)



Berry&Beckett
ᴸᴸᴾ
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

following the Court's Order on this motion, and (5) requiring TSI to pay for all of Plaintiffs' attorney's fees incurred for the March 8, 2022 deposition and the upcoming resumed deposition, as well as for this motion.

## II. FACTS

On December 16, 2021, Plaintiffs attempted to depose TSI's Fed. R. Civ. P. 30(b)(6) witness, Bradley Luke, about, among other things, the actions TSI took to comply with the CFPB's September 18, 2017 Consent Order. Declaration of Guy W. Beckett in Support of Motion for Default and Other Sanctions ("Beckett Decl.") at 2. Mr. Luke, acting on the instructions of TSI's counsel, refused to provide such testimony. *Id.* The following is an illustrative example of Plaintiffs' questions to Mr. Luke about the Consent Order, the instructions TSI's counsel gave to Mr. Luke to not answer the questions, and Mr. Luke's responses to the questions:

> Q. Okay. And you are aware that TSI signed a consent order with the Consumer Financial Protection Bureau?
> MR. ROSENBERG: Objection to form.
> MR. HOMES: Join.
> A. Yes, I'm aware of that.
> BY MS. HENRY:
> Q. And do you recall any accounts from the attorney networks that were pulled as a result of that consent order with the CFPB?
> MR. HOMES: So I'm going to interject an objection here and assert a privilege regarding any communications or any actions with—that relate to the consent order and what was done as a result of the consent order. I think that's within privileges that we've asserted, investigatory and supervisory privileges at issue, we've mentioned in our briefing and in our responses to discovery.
> …
> Q. So we had some discussions before about the consent order and Mr. Homes has lodged an objection. Are you not going to answer any questions about the TSI consent order regarding the NCSLT trusts today?
> MR. HOMES: I think you need to hear the questions.
> BY MS. HENRY:
> Q. Well, the one question I asked is: Did you recall any accounts from attorney networks as a result of the TSI consent order?
> Are you going to answer that question?
> MR. HOMES: Right. And so as to that question, I'm instructing him that to the extent – I mean, I think that invades a privilege, an attorney-client privilege communication, and also might reveal, likely, attorneys' mental impressions and strategies about those matters, and I think that is within the

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 2
(Case No. C18-1132 TSZ)



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

```
        privilege that TSI is asserting.
        A [THE WITNESS].    I don't believe I can answer that without disclosing
        a privileged conversation.
```

Beckett Decl., Ex. 2 (transcript of TSI's December 16, 2021 30(b)(6) deposition) at 215-221. From this exchange and others that followed, TSI made it clear that Mr. Luke would not answer questions about what actions TSI took to comply with the obligations and requirements of the Consent Order. *See id.* at 221, 224-225, 229-231, & 235-236.

The Plaintiffs filed a motion to require TSI to provide testimony about the actions it took to comply with the Consent Order. *See* Dkt. #226. On February 8, 2022, the Court granted the Plaintiffs' motion in that respect and required TSI to provide the requested testimony:

> Plaintiff's Motion to Compel Testimony and Class Data, docket no. 226, is GRANTED in part, DENIED in part, and STRICKEN in part as moot.
>
>     a. Plaintiffs' motion is GRANTED as it relates to testimony concerning the actions Defendant [TSI] took in response to the [CFPB] Consent Order. The Court concludes that the requested testimony is relevant and proportional to the needs of the case. TSI's actions are not protected from disclosure under the attorney-client privilege, work-product doctrine, or common-interest doctrine. … Plaintiffs' questions regarding whether TSI took actions prescribed in the Consent Order do not require TSI to disclose its attorneys' mental impressions, opinions, or conclusions about the provisions.

Dkt. #258 at 1:14-21.

TSI's Rule 30(b)(6) deposition resumed on March 8, 2022, with Mr. Luke still its designated witness. Plaintiffs attempted to obtain Mr. Luke's testimony concerning the actions TSI took to comply with the Consent Order, but TSI's counsel instructed Mr. Luke not to answer most questions asked for that purpose. Mr. Luke also testified on several occasions he did not know what actions TSI took, despite the Court Order requiring TSI to provide that testimony. Below are some illustrative examples from the continued deposition[1]:

---

[1] The following excerpts do not encompass all of the instances when TSI's designee refused to answer questions or all of the instances when counsel for the various defendants interrupted the deposition testimony with long drawn-out speaking objections. At numerous points during the proceeding, the attorney for Patenaude & Felix, A.P.C. engaged in speaking objections that interrupted the proceedings. *See* Beckett Decl., Ex. 4 (rough draft of transcript of March 8, 2022 Luke deposition) at 12:1-12, 14:17-15:5, 24:21-24, 29:13-15. There were also additional interruptions from the attorney for TSI that are not excerpted in total below. *See id.* at 3:17-20, 7:9-8:9, 9:6-10:10, 16:8-15, 18:19-25, 19:19-20:1, 21:17-22:5, 26:6-10, 26:21-27:1, 28:20-29:2, 29:11-12, & 41:25-42:1.

PLAINTIFFS' MOTION FOR
SANDCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 3
(Case No. C18-1132 TSZ)

Berry&Beckett
    pllp
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Q. ... So in Paragraph 45 [of the Consent Order] it said that TSI and others, their agents, service – servants, employees, and attorneys who have actual notice of this consent order, acting directly or indirectly, must take the following affirmative actions. ... And do you see 45.b?

...

A. Yes, ma'am.

Q. So what instructions did TSI give Patenaude & Felix to comply with the terms and conditions of the consent order?

MR. HOMES: I'm – I'm going to object. What are you calling for, it necessarily implicates attorney-client communications, so I'm going to object on that basis, and communications and the content of those communications with counsel are privileged. I'm not sure how he can answer that question without violating that – that com – that attorney-client communication, but with that –

MS. HENRY: And are you instructing him not to answer, Justin?

MR. HOMES: I'm instructing him not to reveal contents of communications with lawyers. He can answer the question without revealing the content of that communication – do so.

Q. I –go ahead. I mean, I'm not going to tell you to not – are you going to answer, Mr. Luke?

A. I can confirm that TSI complied with Paragraph 45, Subparagraph B, but as far as the contents of – that communication, I'm going to follow the advice of counsel and not reveal the privileged nature of those communications.

Beckett Decl., Ex. 3, at 11-14.

A. So to – to answer – to answer the question, the – the consent order didn't require the recalling of any of the accounts, TSI recalling any accounts from – from its collection agencies or law firms. ... No accounts were recalled to – in order to comply with this consent order is – is what I just testified to.

BY MS. HENRY:

Q. Okay. And – why was that? Why were no accounts recalled as a result of the consent order?

MR. HOMES: So I'm going to object to the determination and decision-making that was involved in deciding how to comply with the consent order. I think it's clear we – this continuation deposition and the scope of it – permitted as to the actions that TSI took to comply with the consent order, but the decision –decision-making behind those actions necessarily implicates, I think, the mental impressions of its counsel, and so unless he can answer that question without revealing the impressions of his attorneys he can answer, but subject to that – that instruction, I have concerns that any information he may reveal[] will – will necessarily disclose attorney – any work product.

BY MS. HENRY:

Q. Mr. Luke?

A. I'm not sure I could answer further than what I previously testified to without disclosing any potential privileged communications.

*Id.*, at 20-21.

Q. ... Can you tell me what steps did TSI do to comply with Paragraph 49 in the consent order?

...

A. So in response to Paragraph 49, TSI requested on behalf of the Trusts that any suit that had a – any pending suit that had an affidavit that was identified or

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 4
(Case No. C18-1132 TSZ)



Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

subject to Paragraph 49 that that suit be dismissed.
    Q. And were any of those – was anything done to comply with Paragraph 49 in Washington state?
...
    A. I'm trying to remember if there was any Washington state one. I believe there – there was. I can't state with certainty. I don't recall specifically whether Washington was included or not or whether any Washington accounts were identified subject to Paragraph 49. ... I – I don't recall off the top of my head whether any Washington affidavits were – identified subject to Paragraph 49. No, I don't recall right at this moment.

*Id.* at 23-24.[2]

    Q. Can you explain to me what – what requirements TSI had under Paragraph 52 and what was done to comply?
    MR. HOMES: Objection to form.
    A. My – my understanding of Paragraph 52 is TSI had 90 days to submit their compliance plan, which included at a minimum the subparagraphs A through G.
BY MS. HENRY:
    Q. And was that done, Mr. Luke?
    A. Yes, ma'am, it was.
    Q. And were you involved in promoting that compliance plan?
    MR. HOMES: So I'm going to object to this line of questions. You are inquiring into matters that involve TSI's compliance with what I think is a supervisory portion of this consent order.
    Now, the compliance plan here was provided to the CFPB pursuant to that supervisory authority and it's confidential supervisory information subject to, I believe, for example, Section 1070.47, we've cited that provision to you previously. I think this is subject to the bank examiner's privilege. If you want to obtain information regarding this compliance plan or their – content of any communications between TSI and the CFPB, that is privileged information. I think if you want that information you need to subpoena it from the CFPB.
    As to this particular question about whether or not Mr. Luke was personally involved, I think he can answer that question, but anything beyond that regarding the specifics of any compliance plan that was submitted I think is within the privilege and I'm instructing him not to provide that information.
BY MS. HENRY:
    Q.    Mr. Luke?
    A.    Yes, I was involved with the compliance plan.
...
    Q. So maybe I need to ask it again. What was done to comply with Paragraph 45.1 and its various subparts, i, ii, iii, iv, v, vi, and when was it done?
    MR. HOMES: Once again, Paragraph 45.1 imposes some restrictions on activity, it does not compel particular activity be undertaken as mandated by the consent order, so I object to form of the question.
    MR. ROSENBERG: Also object to the form in that the question is

---

[2] Paragraph 49 of the CFPB Consent Order required TSI to "direct Law Firms acting on behalf of the Trusts to withdraw [false and misleading affidavits from lawsuits] unless the Trusts dismiss the suit in which the Affidavits was filed." It also required TSI to direct Law Firms acting on behalf of the Trusts to notify the court that the Trust "withdraws the affidavit .... pursuant to Consent Order" and "provide the court with a copy of the Consent Order." Beckett Decl., Ex. 2 at 16-17.

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 5
(Case No. C18-1132 TSZ)



Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

compound.
A. TSI reviewed its – its policies and procedures and job aids against this requirement, and – and I don't recall specifically at this time whether the current job aid was determined to be sufficient in light of this subparagraph or if additional language or procedures or processes were implemented in that job aid to further comply with Paragraph 45.1.
BY MS. HENRY:
Q. So you don't know, is that correct?
MR. HOMES: Object to form.
A. I mean, outside of what I just explained, I – I don't recall specific date and contents of any updates or enhancements to the job aid.
BY MS. HENRY:
Q. Well, my question is: What was done to ensure that the affidavits do not contain any misrepresentations or false statements in compliance with this consent order, and from what I heard from you, you did not know whether anything was actually done in order to comply with that. Is that your testimony?
A. No ma'am, that's not what I stated. What was done is we reviewed the job aid and training to ensure it met the requirement of Paragraph 45.1 of the consent order, and what I don't recall is to the extent something was - -was missing or an enhancement was identified, I don't recall whether that – anything was made or whether it was determined that the existing job aids and training and policies and procedures were sufficient and met the requirements of Paragraph 45.1. What was done is we reviewed the training in place at that time and the job aids in place at that time.
Q. So were the job aids and training in place at the time of the consent order sufficient?
MR. HOMES: Objection. That calls for a legal conclusion. I think it also broaches upon, again, the same subject as – as I mentioned previously. You're asking him to reveal what I think are mental impressions of TSI's counsel. If he can answer the questions without revealing those mental impressions he may do so.
A. As – as I stated previously, just now, I don't recall whether any revisions or additions were made to those processes based on this consent order. I don't – I don't recall.

*Id.* at 29-33.[3]

Q. Let's look at Paragraph 46. What was done to comply with Paragraph 46 of the consent order?
MR. HOMES: Objection. Paragraph 46, like Paragraph 45, imposes certain restrictions, does not require particularized action by TSI for compliance. Object to form.
A. Similar to Paragraph 45.1, TSI reviewed its training, training of witnesses, to ensure that those – that that training gave the witnesses the ability to make factual statements and prohibited them from making any misrepresentations or false statements that are outlined in Paragraph 46, A through D.
BY MS. HENRY:
Q. And – what specifically was done?

---

[3] Paragraph 45.1. and its subparts prohibited TSI and anyone who received actual notice of the CFPB Consent Order from "executing any Affidavit containing any misrepresentations, including false statements...." Beckett Decl., Ex. 2 at 15.

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 6
(Case No. C18-1132 TSZ)



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

...
     MR. HOMES: Object to form.
  A. –what was done was we reviewed the training that was in place at that time.
BY MS. HENRY:
  Q. And what changes to the training were made?
     MR. HOMES: Object to form.
  A. I don't specifically recall.
BY MS. HENRY:
  Q. What changes to procedures were made?
     MR. HOMES: Object to form.
  A. I don't recall.
BY MS. HENRY:
  Q. Do you recall if there was a need to have any changes to procedures?
     MR. HOMES: Objection. That calls for a legal conclusion and interpretation of the consent order, something that was done with the assistance and advice of counsel. So to the extent he can answer without revealing the mental impressions of counsel he may do so.
  A. I don't recall whether there was a need to make any changes to the training.

*Id.* at 34-35[4].

  Q. Okay. So did TSI determine that its conduct – that it had engaged in any conduct that was prohibited by the order?
     MR. HOMES: So objection. You are asking what TSI decided or determined, not what actions it took to fulfill any particular requirement of the consent order, so I think that's beyond the scope of the Court's February 8th, 2002 minute entry. The decisions that TSI made, it's informed by communications and consultations with its attorneys are privileged. If he can answer this question without revealing those privileges he can do so.
...
  A. I don't think I can answer that without disclosing privileged information.

*Id.* at 36[5].

  Q. And what plan was provided to cease and remediate any harm that resulted from the actions as described in Paragraph 48?
     MR. HOMES: So hold on. If you're asking what the contents of that compliance plan provides with respect to any particular topic or subject, again—and I mentioned this previously, you know, that plan was submitted pursuant to the CFPB's supervisory authority and is confidential information. It's subject of the bank examiner's privilege. If you want that information, or the contents that you are now seeking of that plan, that is privileged. If you want it you need to subpoena that from the CFPB to get it.
BY MS. HENRY:
  Q. Mr. Luke?

---

[4] Paragraph 46 prohibited TSI and anyone who received actual notice of the CFPB Consent Order from "providing any testimony that contains any misrepresentations, including false statements...." Beckett Decl., Ex. 2 at 16.
[5] Paragraph 47 requires TSI to determine if it has engaged in practices in violation of the CFPB Consent Order. Beckett Decl., Ex. 2 at 16.

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 7
(Case No. C18-1132 TSZ)

Berry&Beckett PLLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

...
          MR. HOMES: I'm instructing him not to answer that question for the reasons I explained, subject to privilege that the CFPB holds, their supervisory review.
          A. I'll follow the advice of counsel.

*Id.* at 37-38[6].

          Q. And so, Mr. Luke, also looking at Paragraph 48, which practices were identified that were in violation of the order?
          MR. HOMES: Again, you are now—you are asking for the determination and the decision-making involved. You are not asking what the Court allowed you and prescribed, which is specifically the actions that TSI took to comply with the consent order. What you're asking is … beyond the scope of your prior questions in this deposition, it's beyond the scope of your motion to compel, and it's beyond the scope of the Court's order.
          To the extent Mr. Luke can answer these – that question without revealing the mental impressions of counsel he can do so.
          A. I don't believe I can answer that question without divulging privileged information.

*Id.* at 38.

          Q. Mr. Luke, were any practices identified that were in violation of the order in Paragraph 48?
          MR. HOMES: Same objection. You're asking him to make a determination, a legal one, about whether or not [a] particular practice violated the order or not. That's a -- that's a decision or determination that TSI made in consultation with its attorneys.
...
          A. I don't believe I can answer that without divulging privileged information.

*Id.* at 39.

          Q. So did the special – successor special servicer give a directive to TSI to withdraw any affidavit or collection lawsuit in compliance with Paragraph 51?
          MR. HOMES: Objection to form. Speaking about Washington consumers and Washington accounts only?
          A. I don't recall any directive from the successor special servicer in regards to 51.b related to withdrawing of affidavits.
...
          Q. And – your answer, Mr. Luke, is that just for Washington state or is that for the entire country?
          MR. HOMES: Object to form. This deposition only concerns Washington state.
...
          A. I don't recall such directive regarding any account period.

---

[6] Paragraph 48 requires TSI to submit to the CFPB a report of its violations of the CFPB Consent Order. Beckett Decl., Ex. 2 at 16.

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 8
(Case No. C18-1132 TSZ)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

*Id.* at 42.

> Q. What was done to comply with the consent order 45.d provision?
> MR. HOMES: Right. So I'm going to object to that question. I think it's outside the scope of this case, it's not relevant to your lawsuit or proportional to the needs of this case. There is no allegations that this – these suits and the underlying actions were filed beyond the statute of limitations. So, you know, this case was about alleged missing documents. Again, this is not a question that you asked prior to – in his prior – Volume 1 of Mr. Luke's deposition, it's not a subject that you moved to compel. I don't think that this is appropriate discovery from this witness. I'm going to instruct him not to answer this question.
> ...
> A. I'll follow advice of counsel and not provide a response to this question.

*Id.* at 42-43.

> Q. And what did TSI do to comply with Paragraph 45.e of the consent order?
> MR. HOMES: And I'm going to object to that question on different grounds. This, of course, involves communications with the CFPB in reporting to the CFPB, and to that extent is subject to the CFPB's supervisory privilege. And I think I have stated previously the grounds on which I believe that information is confidential information subject to the banking privilege, it's beyond the scope of discovery in this case and it is not permissible.
> I'm instructing him not to answer, to revealing what is essentially and fundamentally information within the CFPB's purview in its supervisory capacity. If you want that information you need to subpoena it from the CFPB.
> A. So for Paragraph 45.e, I can confirm that TSI complied with this, subparagraph 45.e., and provided the information required under this paragraph, but subject and contents of that information, can't provide further—further answer on [that] without disclosing potentially privileged information.

*Id.* at 43-44.

> Q. ... And what did you do to comply with Paragraph 45.g...?
> MR. HOMES: Same objections. The statute of limitations is not at issue in this case, it's not a – this case is about missing documents, not a subject that you – that you raised in your subject, it's not a subject that you raised in the prior deposition, it's not a subject that you raised on your motion to compel, it's not a reasonable follow-up to those questions. I'm instructing him not to answer.
> A. I'll follow the advice of counsel and – and not answer this question.

*Id.* at 44-45.

> Q. And what did you do to comply with Paragraph 45.h of the consent order?
> ...
> MR. HOMES: --to—to the extent he can confirm that this in action he can do so (sic). The contents of this information I think is subject to the same privileges and instruction that I gave previously.
> A. And I'll follow the advice of counsel and not answer the question related to 45.h.

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 9
(Case No. C18-1132 TSZ)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

  Q Okay. And what did you do to comply with Paragraph 45.i of the consent order?
  MR. HOMES: I'm going to [object] to ... the question. It doesn't impose requirement to take action by TSI. Object to the form. To the extent he can answer without revealing attorney-client communications he can do so.

*Id.* at 45.

  Q. And what was done to comply with Paragraph 45.j?
  MR. HOMES: Again I'm going to object that this is beyond the scope of the prior deposition, beyond the scope of this case, beyond the scope of your motion to compel and the Court's order.
...
  A. So the extent TSI either knew or learned afterwards that a suit was filed beyond the statute of limitations it worked with counsel to cease that litigation and dismiss the lawsuit.
  Q. And do you know if any lawsuits were dismissed in the state of Washington in compliance with that provision?
  MR. HOMES: Same objections. I'm instructing him not to answer for the reasons stated.
  A. On the advice of counsel I will not answer.

*Id.* at 46.

## III. AUTHORITY AND ARGUMENT

Plaintiffs allege that TSI violated the Washington Consumer Protection Act ("WCPA") when it continued collection on NCSLT accounts in Washington after the CFPB found that many of the accounts TSI was collecting on were not collectable, and the CFPB required TSI to perform an audit to determine the collectability of NCSLT accounts. Dkt.#61 at ¶184. Plaintiffs also allege that TSI violated the WCPA by using false and misleading affidavits to collect on NCSLT accounts. *Id.* The CFPB Consent Order concerns TSI's collection practices on NCSLT accounts and its use of false and misleading affidavits. Beckett Decl, Ex, 2. Thus, it is critical to Plaintiffs' claims that the Plaintiffs obtain the discovery they seek concerning TSI's compliance with the CFPB Consent Order, and what actions TSI took to comply with it. This information is relevant both to TSI's collection practices prior to the Consent Order, which the CFPB found to violate the FDCPA, and whether TSI corrected its illegal collection practices and complied with the Consent Order's corrective requirements. TSI's refusal to provide such discovery following the Court's February 8, 2022 Order is an obvious and intentional violation of that Order.

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 10
(Case No. C18-1132 TSZ)



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Fed. R. Civ. P. 37(b)(2)(A) authorizes the Court to take the following actions against a party who has violated a discovery order: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Upon finding that a party violated a discovery order, the Court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the [violation], unless the [violation] was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(B) (emphasis supplied).

TSI's Rule 30(b)(6) witness' and its attorney's conduct during the March 8, 2022 deposition violated the Court's February 8, 2022 discovery order. Further, their conduct appears to have been designed to purposely obstruct and frustrate Plaintiffs' efforts to obtain the information, and (as illustrated by TSI's counsel's many speaking objections and coaching) to eat up the time available to the Plaintiffs to depose TSI's Rule 30(b)(6) witness within the seven hours permitted by Fed. R. Civ. P. 30(d)(1).

Accordingly, pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (B), Plaintiffs request the Court to provide the following relief for TSI's violations of the Court's February 8, 2022 Order: (1) entry of an order providing that TSI failed to comply with the CFPB's September 18, 2017 Consent Order and that TSI's failure to comply with the Consent Order was an unfair and deceptive act or practice in trade or commerce that impacted the public interest, for purposes of RCW Chapter 19.86; (2) ordering TSI's Rule 30(b)(6) witness to sit for another deposition session and to provide complete answers to all of Plaintiffs' questions concerning TSI's response

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 11
(Case No. C18-1132 TSZ)


Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

to the Consent Order; (3) removing any time restrictions for the completion of TSI's Rule 30(b)(6) deposition, (4) requiring TSI to pay for all expenses incurred by Plaintiffs for the March 8, 2022 deposition and the upcoming resumed deposition following the Court's Order on this motion, and (5) requiring TSI to pay for all of Plaintiffs' attorney's fees incurred for the March 8, 2022 deposition and the upcoming resumed deposition, and for this motion. Such relief is appropriate. *See, e.g., Commodity Futures Trading Com'n v. Noble Metals Intern., Inc.*, 67 F.3d 766, 771-72 (9th Cir. 1995) (appellate court affirmed district court's order that allegations in plaintiff's complaint were established following defendant's willful violation of discovery order).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court find that TSI willfully failed to comply with the Court's February 8, 2022 Order compelling testimony, sanction it in the manner requested in this motion, and order it to make available for deposition its Fed. R. Civ. P. 30(b)(6) Designated Representative for the completion of its deposition, within seven days of entry of its order.

DATED: March 17, 2022.

*Attorneys for Plaintiffs*:

| LEONARD LAW, PLLC | BERRY & BECKETT, PLLP |
|---|---|
| */s/ Sam Leonard* | */s/ Guy Beckett* |
| Sam Leonard, WSBA #46498 | Guy W. Beckett, WSBA #14939 |
| 3614 California Ave. SW, #151 | 1708 Bellevue Avenue |
| Seattle, WA 98116 | Seattle, WA 98122 |
| Telephone: (206) 486-1176 | Telephone: (206) 441-5444 |
| Facsimile: (206) 458-6028 | Facsimile: (206) 838-6346 |
| E-mail: sam@seattledebtdefense.com | E-mail: gbeckett@beckettlaw.com |

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 12
(Case No. C18-1132 TSZ)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

| HENRY & DeGRAAFF, P.S. | NORTHWEST CONSUMER LAW CENTER |
|---|---|
| */s/ Christina Henry* | */s/ Amanda Martin* |
| Christina L. Henry, WSBA #31273 | Amanda N. Martin, WSBA #49581 |
| 787 Maynard Ave. S. | 936 North 34th Street, Suite 300 |
| Seattle, WA 98104 | Seattle, WA 98103 |
| Telephone: (206) 330-0595 | Telephone: (206) 805-0989 |
| Facsimile: (206) 400-7609 | Facsimile: (206) 805-1716 |
| E-mail: chenry@HDM-legal.com | E-mail: Amanda@NWCLC.org |

PLAINTIFFS' MOTION FOR
SANCTIONS AGAINST TRANSWORLD
SYSTEMS INC. - 13
(Case No. C18-1132 TSZ)



Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346