1

2

3                                                                Hon. Thomas S. Zilly

4

5                        UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON AT SEATTLE
6

7   ESTHER HOFFMAN; SARAH
    DOUGLASS; ANTHONY KIM; and IL KIM;
8   and DARIA KIM, husband and wife and the     No. 2:18 cv 1132-TSZ
    marital community comprised thereof, on
    behalf of themselves and on behalf of others   DEFENDANTS MATTHEW CHEUNG
9   similarly situated,                          AND PATENAUDE & FELIX, APC'S
                                                 MOTION FOR SUMMARY JUDGMENT
10             Plaintiffs,
                                                 NOTED FOR HEARING:
11        vs.                                    MAY 20, 2022

12  TRANSWORLD SYSTEMS
    INCORPORATED; PATENAUDE AND
13  FELIX, A.P.C.; MATTHEW CHEUNG, and
    the marital community comprised of
14  MATTHEW CHEUNG and JANE DOE
    CHEUNG; National Collegiate Student Loan
15  Trust 2003-1; National Collegiate Student
    Loan Trust 2004-1; National Collegiate
16  Student Loan Trust 2004-2; National
    Collegiate Student Loan Trust 2005-1;
17  National Collegiate Student Loan Trust 2005-
    2; National Collegiate Student Loan Trust
18  2005-3; National Collegiate Student Loan
    Trust 2006-1; National Collegiate Student
19  Loan Trust 2006-2; National Collegiate
    Student Loan Trust 2006-3; National
20  Collegiate Student Loan Trust 2006-4;
    National Collegiate Student Loan Trust 2007-
21  1; National Collegiate Student Loan Trust
    2007-2; National Collegiate Student Loan
22  Trust 2007-3; National Collegiate Student
    Loan Trust 2007-4; National Collegiate
23  Master Student Loan Trust; and DOES ONE
    THROUGH TEN,
24
               Defendants.
25

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - i
2:18 cv 1132-TSZ
6920999.doc





701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2

## <u>CONTENTS</u>

**I. INTRODUCTION**...........................................................................................1

**II. FACTS** ......................................................................................................2

    A.   The Patenaude law firm represented the Trusts in underlying litigation, and relied on the sworn testimony and substantial amounts of documents provided by its client in that litigation. ...............................................................................2

    B.   Hoffman admits that she borrowed and failed to repay a student loan, and the Patenaude law firm permissibly conducted litigation against her. ...............................3

    C.   Douglass admits that she borrowed and failed to repay two student loans, the Patenaude law firm permissibly conducted litigation against her, and the state-law judge already held that she has not shown improper service. .......................................6

    D.   The Kims admit that they borrowed and failed to repay six student loans, and the Patenaude law firm permissibly conducted litigation against them. ............................9

**III. POINTS AND AUTHORITIES**......................................................................**14**

    A.   Summary judgment standard. ..........................................................14

    B.   Attorneys are not vicariously liable for their clients' actions......................14

    C.   The judicial action privilege bars the Borrowers from suing their adversary's lawyer for actions Patenaude took in the course of litigation. ...................................15

    D.   Plaintiff's private CPA claims fail under the *Hangman Ridge* test............................17

       1.  Patenaude did not engage in an unfair or deceptive act or practice. .........................18

       2.  For purposes of a private CPA action, Patenaude's actions did not occur in trade or commerce, as contemplated by the CPA. ..............................................24

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - ii
2:18 cv 1132-TSZ
6920999.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

3.  Patenaude reserves on the public interest aspect of the claim. ................................26

4.  The Borrowers were not injured by having the Patenaude law firm attempt to have them honor their student loan obligations. ........................................................26

5.  Patenaude did not proximately cause injury to the Borrowers. ................................29

E.  The Borrowers' per se CPA claims based on 15 U.S.C. §§ 1692e and f should be dismissed. .............................................................................................................31

1.  The Washington Legislature is aware of the FDCPA, but it appears the Legislature has not designated the FDCPA as a basis for an independent per se CPA claim. ........................................................................................................31

2.  The Borrowers' claims under §§ 1692e(2)(A) and 1692e(10) should be dismissed. .............................................................................................................32

3.  The Borrowers' § 1692f claim should be dismissed. .............................................34

**IV. CONCLUSION**...............................................................................................................**36**

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - iii
2:18 cv 1132-TSZ
6920999.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# I.  INTRODUCTION

Pursuant to Fed.R.Civ.P.56, defendants Patenaude & Felix, APC and its attorney Matthew Cheung (collectively "the Patenaude law firm") request dismissal of all claims in the Second Amended Complaint, (Dkt 61), alleged against them by plaintiffs Esther Hoffman ("Hoffman"), Sarah Douglass ("Douglass"), and Anthony Kim ("A. Kim"), Il Kim ("I. Kim"), and Daria Kim ("D. Kim") (collectively "the Kims").  Hoffman, Douglass, and the Kims are collectively referred to as "the Borrowers."  The sole cause of action alleged by the Borrowers against the Patenaude law firm is a claim under Washington's Consumer Protection Act ("CPA"), with one per se CPA claim and one private CPA claim.

The Borrowers' claims against the Patenaude law firm are largely based on innuendo and guilt by association.  But lawyers are not generally liable for acts alleged against clients, claims are barred by judicial action privilege where the Patenaude law firm acted in the course of litigation, and elements of the CPA claim are not met as related to the Patenaude law firm.

The Borrowers admit failing to repay student loans, but (1) claim co-defendants National Collegiate Student Loan Trusts (the "Trusts") and Transworld Systems, Inc. ("TSI") cannot show that they own the loans, and (2) challenge statements made in affidavits made by TSI employees based on a consent order between TSI and the Consumer Financial Protection Bureau ("CFPB").  The Patenaude law firm did not sign the consent order, and was not even aware of it until after it was published by the CFPB on September 18, 2017, by which time the Patenaude law firm's activities in the underlying lawsuits had essentially already concluded. The Borrowers primarily accuse the Patenaude law firm of "[k]nowingly filing false affidavits in Washington courts."  But even if the Borrowers could show the TSI affidavits filed in the underlying lawsuits were "false," the Borrowers cannot show that the Patenaude firm "knowingly" filed false declarations, because this never happened.

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

## II. FACTS

**A.     The Patenaude law firm represented the Trusts in underlying litigation, and relied on the sworn testimony and substantial amounts of documents provided by its client in that litigation.**

The Patenaude firm is a law firm headquartered in California with a branch office in Washington State.  Declaration of Raymond Patenaude at ¶ 2.  The Patenaude law firm represented the Trusts in underlying litigation discussed below.  *Id.* at *¶* 4. *See also generally* Declaration of Matthew Cheung. Since the Trusts have no employees, the Patenaude law firm worked with TSI in carrying out its representation of the Trusts.  *Id*. ¶ 4; (Dkt 252 at ¶¶ 4-5); (Dkt 258 at 2).  The Patenaude law firm's role in representing the Trusts is to act as their counsel in litigation to recover money owed to the Trusts.  Patenaude Decl. at ¶ 4.  The contract which Patenaude had with TSI, (formerly TDM), specified that the Trusts are the client.  *Id*. Patenaude is not aware of any entity claiming to own the Borrowers' loans other than the Trusts.  Patenaude Decl. at ¶ 10; Cheung Decl. at ¶¶ 5, 7, 9, 38, 54.

At that time lawsuits were commenced against the Borrowers, Patenaude had a history of working with TSI and successfully relying on the documents provided to support the Trusts' claims for ownership of the accounts Patenaude was asked to litigate.  Patenaude Decl. at ¶ 11; Cheung Decl. at ¶ 8.  The Patenaude law firm's past experience supported its reliance on the affidavits from TSI in the suits filed against the Borrowers.  *Id*.  Patenaude used a process server named Marco Ruisla and his company for serving summons and complaints and other documents for personal service in Washington for a period of time before the Patenaude law firm filed the complaints in superior court against the named plaintiffs in this matter.  Cheung Decl. at ¶ 10.  Based on the process server's past performance, the Patenaude law firm had no reason believe that the facts stated in the affidavits of service were not reliably true and correct.  Cheung Decl. at ¶ 10.  The Patenaude law firm was performing its duties as legal counsel in the ordinary course of its representation of the Trusts.  Cheung Decl. at ¶¶ 3-11, 61.  The filing of

1
2
complaints, motions, and sometimes garnishments were all actions taken on behalf of the

Patenaude law firm's clients in the course of litigation.  *Id.*

3
4
Some Borrowers' claims involve a consent order between defendant TSI and the CFPB.

(Dkt 61 at ¶¶ 127-135, Ex. A-B).[1]  The Patenaude law firm did not sign the consent order and
5
6
was not aware of its allegations until after it was published on September 18, 2017 by the

CFPB.  Patenaude Decl. at ¶¶ 6-7, Ex. 1; Cheung Decl. at ¶ 12, Ex. 1.  Almost all actions taken
7
8
by the Patenaude law firm in regard to the underlying lawsuits were taken prior to publication

of the consent order.  Cheung Decl. at ¶¶ 12, 29, 44, 60, 61.  After Patenaude became aware of
9
10
the consent order, a review was done.  Patenaude Decl. at ¶ 7.  It is Patenaude's understanding

that the Borrowers' accounts were not among accounts affected by the consent order.  *Id.*  The
11
12
Borrowers accuse Patenaude of "[k]nowingly filing false affidavits in Washington courts."

(Dkt 61 at ¶ 184(c)).  *See also* (*Id*. at ¶¶ 49-57, 73-80, 98-105).  Even if the Borrowers could
13
14
show the affidavits from TSI employees were "false," they have no evidence Patenaude filed

false declarations "knowingly," because this never happened.
15
16
### B.    Hoffman admits that she borrowed and failed to repay a student loan, and the Patenaude law firm permissibly conducted litigation against her.

17
18
Borrower Hoffman admits that she took out a student loan, then failed to make

payments on it.  (Dkt 61 at ¶¶ 42-44).  Hoffman used the residence at 8808 Emerson Place,
19
20
Everett, Washington as her home address ("the Emerson Residence"), including for loan

communications. E. Hoffman Dep. at 12-13, 33, 160, 174-75, Exs. 1, 3, 4.[2]  Hoffman's mother,
21
22

23
24
25

---

[1] The Borrowers rely on a proposed consent judgment involving the Trusts.  (Dkt 61 at ¶¶ 136-146, Ex. C). The Delaware District Court rejected the proposed consent judgment, *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Tr.*, 2020 WL 2915759, (D. Del. May 31, 2020), stayed the case, and certified to the Third Circuit Court of Appeals the question of whether the lawsuit is void where the CFPB filed it when it was unconstitutionally constituted.  *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 2022 WL 548123, at *1 (D. Del. Feb. 11, 2022).

[2] See the Declaration of Marc Rosenberg Attaching the Deposition of Ester Hoffman ("E. Hoffman Dep.").

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 3
2:18 cv 1132-TSZ
6920999.doc

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

Pat Hoffman, initially facilitated Hoffman's loan payments and received Hoffman's mail at the Emerson Residence.  P. Hoffman Dep. at 14, 29, 52, 56-57, 67, 70, 73-79, 99.[3]

On November 8, 2013, the Patenaude law firm sent Hoffman a letter in anticipation of litigation advising that Patenaude had been assigned the account, and asking whether she disputed any portion of what was stated that she owed.   Cheung Decl. at ¶ 16, Ex.2.  No response disputing the obligation was received by the Patenaude law firm.

On December 28, 2013, a summons and complaint were served at 8808 Emerson Place, Everett, Washington (the Emerson Residence").  P. Hoffman Dep. at 95, Ex. 10; Cheung Decl. at 17, Ex. 3.  The Patenaude law firm reviewed the affidavit of service, which service it had paid the process server for, and concluded that the affidavit of service was valid on its face to show valid service of process.  Cheung Decl. at ¶ 18.  Hoffman had returned to the United States prior to service of the pleadings and, after returning Hoffman still used the Emerson Residence to receive correspondence.  Hoffman Dep. at 154, 164.

Hoffman made some payments after being served with pleadings in the underlying state-court action, then ceased making payments.  (Dkt 61 at ¶¶ 45-46).   Hoffman cannot identify any writing wherein she provided a change of address to Patenaude.  Hoffman was involved in a motor vehicle accident in January 2014.  E. Hoffman Dep. at 155-56.

On January 16, 2014, at 10:52 am, Hoffman made a phone call to the Patenaude law firm from phone number 206-419-8512, which remains her phone number, and spoke with an employee of the Patenaude law firm Cheung Decl. at ¶ 19; E. Hoffman Dep. at 155-56.  During this call, Hoffman advised the Patenaude law firm that she had been injured and asked whether she could reduce her monthly payments.  *Id.  See also* (Dkt 61 at ¶ 46) ("[d]ue to a serious physical injury, Esther became unable to continue making the agreed monthly payments").

---

[3] See the Declaration of Marc Rosenberg Attaching the Deposition of Pat Hoffman ("P. Hoffman Dep.").

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 4
2:18 cv 1132-TSZ
6920999.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

The Patenaude law firm agreed to the request and set up a payment arrangement with Hoffman. Cheung Decl. ¶ 20.  Following this telephone call, Hoffman commenced a payment plan with the Patenaude law firm, and made a number of payments between February 7, 2014 and February 2, 2016.  Cheung Decl. ¶ 21.  However, Hoffman ceased making payments on her payment plan and was again in default. *Id*. *See also* E. Hoffman Dep., Ex. 9.

On April 21, 2016, the Patenaude law firm sent Hoffman a letter indicating that its payment arrangement with Hoffman was being cancelled because Patenaude had ceased receiving payments from her.  Cheung Decl. ¶ 22, Ex. 6; E Hoffman Dep., Ex. 9 (last page).

On June 8, 2016, the Patenaude law firm filed the summons and complaint on behalf of its client in *NCSLT 2004-2 v. Hoffman*, Snohomish County Superior Court, cause no. 16-2-15162-31.  Cheung Decl. at ¶ 23, Ex. 8; (Dkt 61 at 8 ¶ 47).

On July 22, 2016, the Patenaude law firm filed and served a Notice of Intent to Seek Default.  Cheung Decl. ¶ 24, Ex. 9.  There was no response from Hoffman to this notice. *Id*.

On August 25, 2016, the Patenaude law firm moved for default judgment, supported by the Affidavit of Dudley Turner, an employee of the sub-servicer of the loan, TSI.  Cheung Decl. at ¶ 25, Ex. 10; (Dkt 16-1, Exs. 4-6).  The Patenaude law firm had no reason to believe that the facts stated in the Affidavit of Mr. Turner were not true. *Id*.  Hoffman testified that she has no knowledge as to the status of her loan, E. Hoffman Dep. at 40-42, 44, 143-45, 148-49, and is not aware of anyone other than Bank of America or the Trusts through their sub-servicers that have tried to collect on the loan. *Id*. at 59-60, 117-18, 201-02.

On August 25, 2016, Judgment was entered against Hoffman.  Cheung Decl. at ¶ 26, Ex. 11.

On August 30, 2016, five days after entry of judgment, the Patenaude firm sent a letter to Hoffman advising her of the entry of judgment against her.  Cheung Decl. at ¶ 27, Ex. 12.

1

2    On January 20, 2017, Samuel Leonard of Leonard Law appeared on behalf of Hoffman.

3    Cheung Decl. ¶ 28, Ex. 13.  Hoffman never moved to set aside the default judgment in the

     superior court.  *Id*.

4

5    All these actions occurred prior to the CFPB publishing its consent order with TSI on

     September 18, 2017.  Patenaude Dec ¶ 6, Cheung Decl. at ¶ 6.

6

7    **C.    Douglass admits that she borrowed and failed to repay two student loans,
           the Patenaude law firm permissibly conducted litigation against her, and
           the state-law judge held that she has not shown improper service.**

8

9    Borrower Douglass admits borrowing $4,500.00 in two student loans.  Douglass Dep. at

10   28-29, 31, 33, 35, 39-42, 49, 50-53, 55-56, 81-82, 84, 86, Ex. 1-3; (Dkt 61 at 12 ¶¶ 69-70),[4]

11   and that she was unable to meet her payments on them.  Douglass Dep. at 58-59, 64, 141-44,

12   153-154; 159, Ex. 8. Douglass did not allege that she does not owe the money, *id*. at 118, and

     that she has the moral obligation to pay the money back.  *Id*. at 93.  Douglass asserts that she

13   (1) was not properly served with initial pleadings, and (2) does not know whether the Trusts

14   own the loans.  *Id*. at 111, 230.  Douglass's primary complaint in this lawsuit is that she

15   believed service on her was improper, but cannot say this is so.  *Id*. at 168, 191, 226-29.  The

16   superior court in the underlying case has already entered an order holding that Douglass failed

17   to show that service of process was improper, Cheung Decl. at ¶ 42, Ex. 23 at 1, and such state

18   court order should be given full faith and credit.

19   Douglass admits that she cannot testify as to whether Patenaude believed the process

20   was properly served and the lawsuit commenced.  Douglass Dep. at 158-59.  Douglass has

21   pursued this lawsuit because she wondered whether Patenaude had some duty to investigate a

22   facially accurate Affidavit of Service, *id*. at 228-229, but after years of litigation, she still does

23   not know whether Patenaude had such a duty.  *Id*. at 229.

24   _____

25   [4] See the Declaration of Marc Rosenberg Attaching the Deposition of Sarah Douglass ("Douglass Dep.").
     Douglass settled one unrelated student loan, which was not litigated and not relevant here, and so will not be
     further discussed.  Cheung Decl. at 8, fn2,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Other than what her attorneys say, Douglass has no knowledge that the Trusts do not own the loan, does not know whether the Defendants could prove their claims against her, whether the lawsuits against her lacked admissible evidence, and does not believe that there are any false statements in the TSI affidavits.  *Id*. at 116, 127, 129-130.  Douglass is not aware of any entity other than the Trusts and AES that have tried to collect on the loans she took out.  *Id*. at 167. Douglass does not have any evidence that documentation of her underlying student loans is missing, lost, or that any evidence submitted in the underlying lawsuits against her is falsified.  *Id*. at 127, 129-130.  Only the Trusts and their sub-servicer have tried to collect on these student loans, and Douglass has no evidence to suggest that anyone other than the Trusts, and its sub-servicer AES tried to collect on her student loans.  *Id*. at 167, 233-235.  Douglass has never met with or spoken with any of the other Plaintiffs in this matter.  *Id*. at 138.

On December 9, 2015, the Patenaude law firm sent two letters, one for each loan, advising that the Patenaude law firm had been assigned the accounts, and asking whether she disputed any portion of what was stated that she owed in the two loans.  Cheung decl. at ¶ 32, Ex. 14.  No response was received to these letters.  *Id*.

Douglass knew who Patenaude was at least as early as the time she received Patenaude's letters, and does not recall disputing the debt or requesting validation.  Douglass Dep. at 153.  When Douglass received the letters from Patenaude, she was aware she still owed money on her loans that had not been paid.  *Id*. at 153-154.  Douglass confirmed that the phone number Patenaude used to call her was correct.  *Id*. at 146.  Douglass does not recall returning any of the approximately 20 telephone messages left by Patenaude between December 2015 and February 2017.  Cheung Decl. at ¶ 33, Douglass Dep. at 155-156.

On February 17, 2017, two summons and complaints were served at 7950 Seward Park Ave. Park, Seattle, Washington ("the Seward Park Residence").  Cheung Decl. at ¶¶ 34-36,



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

Ex. 15 Douglass Dep. at 156, Ex. 10.   The pleadings were served on an individual calling himself Brett Douglass and identifying himself as Douglass's husband.   *Id.*   Douglass admits that she lived at the Seward Park Residence and that Bishop Kelly would have been at her house during the time that service was made at her house.   Douglass Dep. at 20; 197-98. Douglass does not know where she was when the process server served the summons and complaint.   *Id.* at 198, lns. 6-9. Douglass admits the physical description of the person served with the summons and complaint fits the description of her ex-boyfriend, and the process server's declaration is consistent with her roommate's declaration about observing service of process.   *Id.* at 209-211, ln. 15.   Patenaude paid for service, was provided with a facially valid certificate of service by the process server, and believed (and still believes) that proper service had been accomplished.   Cheung Decl. at ¶ 36; Douglass Dep., Ex. 20; (Dkt 16-2, Ex. 11).

On April 24, 2017, with no payment forthcoming, the Patenaude law firm commenced lawsuits on behalf of its client Trusts captioned *NCSLT 2006-3 v. Douglass*, King County Superior Court, cause no. 17-2-10605-4-KNT and *NCSLT 2006-3 v. Douglass*, King County Superior Court, cause no. 17-2-10604-6-KNT.   Cheung Decl. at ¶ 37, Ex. 16-17.   Douglass did not appear in the two lawsuits, Douglass Dep. at 168, so a motion for default was filed supported by an affidavit provided by a TSI employee.   Cheung Decl. at ¶ 38; (Dkt 16-2, Ex. 12, 13).   Patenaude had no reason to believe the contents of Mr. Jackson's affidavit were not true. Cheung Decl. ¶ 38.

On April 25, 2017, judgments were entered against Douglass, Cheung Decl. at ¶ 39, Ex. 20, and the Patenaude law firm swiftly sent the judgments to Douglass.   Cheung Decl., at ¶ 40, Ex. 21; Douglass Dep. at 174-176, 181-182; Ex. 12 and 13.   Upon seeing the judgments, Douglass wanted an opportunity to defend herself.   Douglass dep. at 189, 191.   When Douglass received the judgments, she sought counsel at a free legal clinic at Northwest Consumer Law

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

Center ("NCLC").  Douglass Dep. at 134-135.  NCLC provided its services to Douglass pro bono, and Douglass has not paid them any money out of pocket.  Douglass Dep. at 182-184.

On July 13, 2017, attorney Amanda Martin ("Ms. Martin") appeared on behalf of Douglass.  Cheung Decl. at ¶ 41, Ex. 22; Douglass Dep. at 185.

Douglass moved to set aside the default judgment and, on November 17, 2017, the superior court entered an order after full briefing and submission of multiple declarations, including those by Marco Ruisla and Joseph Wilde, Exs. 18-19. Douglass's testimony confirms what was stated under oath by the process server Marco Ruisla.  Douglass Dep. at 156-157, 159, 197-198, 199-204, 206, 209-211, 226; Exs. 17, 18, 20.

On November 17, 2017, the superior court **held that Douglass had failed to show that the service of process was improper**.  (Dkt 16-2, Ex. 20 at 1); Douglass Dep. at 213, 215, 218, Ex. 21.  At the same time, the superior court decided to vacate the default judgment and give Borrower Douglass a chance to challenge the lawsuit in the merits.  *Id*. at 1-2.

On March 3, 2018, Patenaude moved for voluntary dismissal, and the two lawsuits were dismissed without prejudice.  Cheung Decl. at ¶ 43, 24-25; Douglass Dep. at 222-225.

### D.    The Kims admit that they borrowed and failed to repay six student loans, and the Patenaude law firm permissibly conducted litigation against them.

A. Kim took out six student loans, for each of which at least one of his parents cosigned on, and admits he still owes money on the loans.  (Dkt 61 at ¶ 86).  A. Kim Dep. at 30, 33-34, 37-38, 41-46, 51, 53, 62, 68, 72, 84-85, 88-99,  106, 117-118, 187, 193-94, 226-27; Exs. 1-8, 12, 15, 17-20, 22;[5] I. Kim Dep. at 18, 34, 36-38, 44-45, 50-54, Exs. 2-5, 8-9, 13;[6] D. Kim Dep. at 37, 40-41, 46-48, 51-53, 55-63, 66, 69-70, Ex. 2-6.[7]  A. Kim does not know whether the

---

[5] See the Declaration of Marc Rosenberg Attaching the Deposition of Anthony Kim ("A. Kim Dep.").
[6] See the Declaration of Marc Rosenberg Attaching the Deposition of Il Kim (I. Kim Dep.").
[7] See the Declaration of Marc Rosenberg Attaching the Deposition of Daria Kim (D. Kim Dep."). While Ms. Kim appeared to have a decent grasp on English at the beginning of the deposition, after a break she claimed not to be able to understand anything, although she graduated with a degree in English, D. Kim Dep at 104, lived



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

Trusts own the debt for which suit was filed, and admits that he still owes money to whomever owns the loans. A. Kim Dep. at 163, 187, 198, 230, 234-36, 257. A. Kim has no knowledge: (1) as to whether any entity besides the Trusts owns the loans, *Id.* at 265-267; (2) of what documents Patenaude did or did not review prior to commencing the lawsuits against him, *id.* at 236, (3) what Patenaude's policies are or what they knew or did not know about the documents they relied on in the underlying litigation, *Id.* at 236; and (4) whether or not Patenaude has all the documents it needed to show that its client owned the loans sued upon. *Id.* at 257. A. Kim has no documents showing that he had an agreed payment plan for paying $50.00 per month as to all of his loans, he was merely paying the occasional $50 on tens of thousands of dollars in student loans. *Id.* at 268-273. In fact, it appears that A. Kim may have destroyed relevant documents during the course of this litigation, A. Kim Dep. at 163-166, though after he took a break and spoke with counsel he subsequently recanted this testimony.

I. Kim admits signing the loan applications as co-signer so his son could get loans to go to college, and that he understood that he would have to repay the loan if his son failed to do so. I. Kim Dep. at 18, 21-24. I. Kim has no reason to believe the Trusts are not the owners of the loans, *id.* at 73-74, and does not deny he had an obligation to pay the loans back. *Id.* at 53, lns. 22-24. I. Kim could not say whether anything was done wrong in regard to the garnishment of his earnings, and did not feel deceived, he simply went to an attorney because he could not afford to make the payments. I. Kim Dep. at 52-57, 64-65.

D. Kim did not read the Complaint before it was filed, and has never heard of the CFPB Order or proposed Consent Judgment in the Delaware case. D. Kim Dep. at 83-84, 87-88.

---

in the United States for over 40 years, *id.* at 104-105, has employment in the United States that requires her to speak in English, *id.* at 106-107, commented in English regarding a translator's translations, *id.* at 108-109, and then insulted counsel for pointing these things out. *Id.* at 109. Ms. Kim would not even admit that she understood the meaning of the words "I" or "me" right above her signature, which states: "I have kept a copy of this notice and the Credit Agreement that obligates me and the Student Borrower on this debt." D. Kim Dep. at 111-116, Ex. 4. Plaintiffs' counsel ended the deposition due to Ms. Kim's high blood pressure. *Id.* at 116.



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

On December 8, 2014, in anticipation of potential litigation, the Patenaude law firm sent Borrower A. Kim six letters, one for each loan, advising that the law firm had been assigned the accounts, and asking whether he disputed any portion of what was stated that he owed in the six loans. The six letters provided each account number and each amount owed for each account. Cheung Decl. ¶ 47, Ex. 26 – Ex. 31.

On June 15, 2015, twenty-four summons and complaints (two for each of the six lawsuits, and a copy of each) were served at 809 234th St. SE, Bothell, Washington ("the Kim Residence").   Cheung Decl. at ¶ 49, Ex. 32 – Ex. 37 [Declarations of Service]; Ex. 38 [Summons and Complaint]. It is undisputed that the Kims lived at that residence.  A. Kim Dep. at 18-19.  The Patenaude firm paid separately for service of each of the 24 lawsuits, received, facially valid certificates of service, and believed (and still believes) that proper service was accomplished upon Borrower Douglass.  *Id*. at 50.  *See also* I. Kim Dep at 28; D. Kim. Dep. at 6-7.  D. Kim did not understand the documents, set them aside until A. Kim came home, and provided them to him when he returned. A. Kim Dep. at 239.  A. Kim was not home at the time the process server came to the door, and has no personal knowledge of the interaction between the process server and his mother.  A. Kim Dep. at 239-240.  A. Kim testified he was handed a stack of documents about an inch thick.  *Id.* at 240.

Borrower Anthony Kim testified at deposition that the stack of pleadings that he received was approximately an inch-high stack.  A. Kim Dep. at 240.  The summons is three pages long and the complaint is two pages long.  Cheung Decl. at ¶ 51, Ex. 38.  These five pages are nowhere near an inch thick.  However, if you consider that Mr. Ruisla served 24 sets of pleadings (six lawsuits x two borrowers per suit, plus a copy of each), *id.*, Ex. 32 – Ex. 37, and each set of pleadings was five pages long, the stack of papers received by the Kims would have been 120 pages, which is much closer to an inch-high stack.  *Id*.  Since the pleadings had

not yet been filed, and there was no cause number on them, the Kims likely assumed it was one lawsuit with many pages, rather than 24 sets of pleadings.

Between March and May 2015, the Patenaude law firm filed each of the six lawsuits. Cheung Decl. at ¶ 52, Ex. 39 – Ex. 44.  In each of the six lawsuits, the Patenaude law firm, on behalf of its respective clients, brought dispositive motions.  Cheung Decl. at ¶ 54, Ex. 39 at 3 (dkt sub # 4 on 04/02/15), Ex. 40 at 3 (dkt sub # 4 on 04/02/15), Ex. 41 at 3 (dkt sub # 4 on 04/02/15), Ex. 42 at 3 (dkt sub # 4 on 04/02/15), Ex. 43 at 3 (dkt sub # 4 on 04/02/15), Ex. 44 at 3 (dkt sub # 4 on 04/02/15).  Each dispositive motion was supported by an Affidavit of Dudley Turner.  *Id*.  See e.g., (Dkt 16-3, Ex. 36).   The Patenaude law firm reviewed and relied on these affidavits in support of the motions for default, and the contents gave them no reason to believe that the facts stated in the Affidavits of Mr. Turner were not true.  *Id*.  To this day, the Patenaude law firm has not seen any concrete evidence that rebuts that its client owns these specific student loans and that Borrower Kim owes the money.  *Id*.

Judgment was entered against Borrower Kim in each case.  Cheung decl. at ¶ 55, Ex. 39 at 3 (dkt sub # 5 on 04/02/15), Ex. 40 at 3 (dkt sub # 5 on 04/02/15), Ex. 41 at 3 (dkt sub # 5 on 05/28/15), Ex. 42 at 3 (dkt sub # 5 on 05/28/15), Ex. 43 at 3 (dkt sub # 5 on 05/28/15), Ex. 44 at 3 (dkt sub # 5 on 05/28/15).

Garnishment proceedings commenced in each case to some degree, though most cases did not proceed to any payment.  Cheung decl. at ¶ 56, Ex. 39 at 3-5 (dkt sub # 7-15) , Ex. 40 at 3-4 (dkt sub # 7-8), Ex. 41 at  (dkt sub # 7-8), Ex. 42 at 3 (dkt sub # 7), Ex. 43 at 3-4 (dkt sub # 7-10), Ex. 44 at 7 (dkt sub # 7).

On October 28, 2015, attorney Christina Henry filed a Notice of Appearance in each case.  Cheung Decl. at ¶ 57, Ex. 39 at 5 (dkt sub # 16), Ex. 40 at 7 (dkt sub # 9), Ex. 41 at 4 (dkt sub # 9), Ex. 42 at 6 (dkt sub # 26), Ex. 43 at 4 (dkt sub # 11), Ex. 44 at 4 (dkt sub # 8).



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2          On December 1, 2015, after motions practice, the default judgments were each vacated

3   and all garnished money was swiftly returned to the Kims.  Cheung Decl. at ¶  58, Ex. 39 at 7

4   (dkt sub # 32), Ex. 40 at 6 (dkt sub # 24), Ex. 41 at 6 (dkt sub # 23), Ex. 42 at 6 (dkt sub # 23),

    Ex. 43 at 7 (dkt sub # 28), Ex. 44 at 6 (dkt sub # 23).
5

6          No further action was taken on any of the cases after 2015, and all cases were dismissed

7   for lack of prosecution.  Cheung Decl. at 59, Ex. 39 at 8 (04/25/18), Ex. 40 at 7 (07/10/18), Ex.

8   41 at 7 (07/10/18), Ex. 42 at 6 (07/10/18), Ex. 43 at 7 (07/10/18), Ex. 44 at 6 (04/25/18).

9          The Patenaude law firm did not take any action on any of the Kim cases after December

10  1, 2015, which was about two years before the CFPB published its consent order with TSI on

    September 18, 2017.  Cheung Decl. at ¶ 60, Ex. 1.
11

12         Neither Matthew Cheung nor anyone at the Patenaude law firm "knowingly filed false

13  affidavits."   Cheung Decl. at ¶ 61.   They conducted reviews, cross checked to make sure

14  information was correct, and litigated in good faith against borrowers that admit that they

15  became delinquent on their student loan obligations.  *Id*.  In regard to the very few events that

16  occurred after the TSI and CFPB consent order was published, the Patenaude law firm

17  conferred with its client, conducted an investigation, and (while it will not divulge attorney-

    client communications) came away from its communications with the understanding that the
18
    affidavits used in the cases of Borrowers Hoffman, Douglass, and Kim did not come from the
19
    specific TSI employees that were alleged to have issues regarding submission of affidavits.  *Id*.
20
    See also Patenaude Decl. at ¶¶ 6-8.  In all of its actions in representing its clients, the Patenaude
21
    law firm acted in good faith under an arguable interpretation of the law, and attempted to do its
22
    best in a difficult field.  Cheung Decl. at ¶ 61.
23

24

25

LEE
SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### III.  POINTS AND AUTHORITIES

#### A.    Summary judgment standard.

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).    The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257, 106 S.Ct. 2505. When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  *See, e.g., Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006).

*Kirchoff v. Wipro, Inc*., 894 F. Supp. 2d 1346, 1348-49 (W. D. Wash. 2012).

A party opposing summary judgment must do more than simply show metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  The non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.  *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010).  Genuine issues of material fact are not raised by conclusory or speculative allegations.  *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).

#### B.    Attorneys are not vicariously liable for their clients' actions.

"[T]here is no legal authority for the proposition that an attorney is generally liable for the actions of his client."  *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006).  The Borrowers' claims against the Patenaude law firm must stand on their own, they cannot impute to the Patenaude law firm acts alleged against others, and the Borrowers cannot succeed by innuendo and attempts at guilt by association.  As shown below, the claims against the Patenaude law firm should be dismissed.



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

**C.** **The judicial action privilege bars the Borrowers from suing their adversary's lawyer for actions Patenaude took in the course of litigation.**

Washington's "judicial-action privilege" protects lawyers from being sued for actions taken during litigation, and extends immunity for lawyers' actions beyond defamation cases and litigation privilege. *Jeckle v. Crotty,* 120 Wn. App. 374, 385, 85 P.3d 931, 937 (2004). Washington courts have applied the privilege to bar claims of interference with a business relationship, outrage, infliction of emotional distress, civil conspiracy, and statutory claims. *Id.* "Judicial-action privilege" differs from witness immunity and litigation privilege, since the latter protects the testimony of witnesses, whereas the former protects the actions that a lawyer takes during litigation. *Id.*, 120 Wn. App. at 386.

Under this privilege, "attorneys and law firms have absolute immunity from liability for acts arising out of representing their clients." *Jeckle*, 120 Wn. App. 374. As Judge Jones held:

> The Court agrees with the KBM Defendants that at the very least, Plaintiff's claims fail as a matter of law because the KBM Defendants enjoy absolute immunity for their alleged litigation conduct serving as the basis for Plaintiff's claims. Generally, Washington law establishes that an attorney is immune from litigation by an opposing party for actions taken on behalf of a client against that party, under the doctrine of the "judicial action privilege." *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.2d 931 (2004); *McNeal v. Allen*, 95 Wash. 2d 265, 621 P.2d 1285 (1980). This doctrine bars a plaintiff from suing attorneys and law firms for actions undertaken in litigation while "representing their clients." *Id.*

*Block v. Snohomish Cty.*, No. C18-1048-RAJ, 2019 WL 954809, at *5 (W.D. Wash. Feb. 27, 2019), *appeal dismissed*, No. 19-35329, 2019 WL 3297382 (9th Cir. July 9, 2019).  *See also McClain v. 1st Sec. Bank of Washington*, C15-1945 JCC, 2016 WL 8504775, at *5 (W.D. Wash. Apr. 21, 2016) ("McClain's state law claims against Huffington, McKay, and their firm are based on actions they took on behalf of FSBW ... [t]hey are therefore immune from liability for these actions").

There is some overlap between judicial-action privilege and litigation privilege/witness immunity, and the concepts are sometimes confused, though judges generally recognize the two are different.  *See Block*, 2019 WL 954809, at *7 ("the judicial action privilege, litigation



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

privilege, and judicial immunity are all common law immunities").  In a Venn diagram, there is a subset where litigation privilege intersects with judicial-action privilege, and the specific act could be protected under both doctrines, but in the vast majority of cases, there is no intersection.  A Venn diagram might look something like the following.

Witness Immunity /
Litigation Privilege

Judicial-Action
Privilege

"All witnesses are immune from all claims arising out of all testimony."
*Dexter v. Spokane Cty. Health Dist.*, 76 Wn. App. 372, 376, 884 P.2d 1353 (1994).

Lawyer seeking to have Commission reopen investigation and sharing medical information for purposes of class action.
*Jeckle v. Crotty*, 120 Wn. App. 374, 85 P.3d 931 (2004)

Expert witness who testified at trial.
*Bruce v. Byrne-Stevens & Assocs. Engineers, Inc.*, 113 Wn.2d 123, 776 P.2d 666 (1989).

Lawyer making oral argument at trial.
*McNeal v. Allen*, 95 Wn.2d 265, 621 P.2d 1285 (1980)

Release of financial information by lawyer to FDIC.
*McClain v. 1st Sec. Bank of Washington*, 2016 WL 8504775, at *4 (W.D. Wash. Apr. 21, 2016).

Non-party marriage counselor testifying on behalf of patient's wife at child custody hearing.
*Wynn v. Earin*, 163 Wn.2d 361, 181 P.3d 806 (2008)

Filing a motion for sanctions, rescheduling a hearing, and seeking to have a commissioner decide a motion.
*Block v. Snohomish Cty.*, 2019 WL 954809, at *5

The privilege of attorneys is based upon a public policy of securing to them as officers of the court the utmost freedom in their efforts to secure justice for their clients. The attorney's purpose in publishing defamatory matter, his belief in its truth, or even his knowledge of its falsity, are of importance only in determining the amenability of the attorney to the disciplinary power of the court of which he is an officer.

*McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980).

The Borrowers alleged only two claims, both of which are CPA claims (i.e., a private claim and a per se claim).  While the per se claims may rely on the FDCPA, these are still



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

ultimately CPA claims, which is why the Court of Appeals held the four-year statute of limitations applies, rather than the one-year statute of limitations in 15 U.S.C. § 1692k(d). As in *Jeckle*, *Block*, and *McClain*, this Court should dismiss all state law CPA claims against Patenaude since the Borrowers' claims are based on actions taken by Patenaude in the course of judicial actions. Even if this Court determines some discrete act occurred outside of litigation, all claims based on actions taken in furtherance of litigation should be dismissed.

        **D.**     **Plaintiff's private CPA claims fail under the *Hangman Ridge* test.**

To prevail in a private CPA action, a plaintiff must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The finding that any element is not met is fatal to a plaintiff's claim. *Id.*, 719 P.2d at 539.

A plaintiff may establish the first two elements of a CPA claim by showing a violation of a statute the legislature has identified as a per se CPA violation. *Id.*, 719 P.2d at 535, 539; RCW 19.86.093(2). The Borrowers allege a private CPA claim and per se CPA claims based on the FDCPA. (Dkt 61 at ¶¶ 164-186). The Washington Legislature has not provided that violations of the FDCPA are per se violations of the CPA. "[T]he Legislature, not this Court, is the appropriate body to establish that interaction by declaring a statutory violation to be a per se unfair trade practice." *Id.*, 719 P.2d 531, 536 (1986). Patenaude first shows that the Borrowers cannot support a private CPA claim, and then addresses why the Borrowers cannot support each of their claimed per se CPA claims. It should be remembered, of course, that the claims already fail under judicial-action privilege.

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 17
2:18 cv 1132-TSZ
6920999.doc

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

**1.      Patenaude did not engage in an unfair or deceptive act or practice.**

2

        **a.      It is not unfair or deceptive for a lawyer to file a lawsuit or submit a client affidavit in litigation.**

3

4

The first element of a CPA claim is an unfair or deceptive practice.  *Hangman Ridge*,

5

105 Wn.2d at 780.  "[W]hether a particular action gives rise to a Consumer Protection Act

6

violation is reviewable as a question of law."  *Leingang v. Pierce Cty. Med. Bureau, Inc.*,

7

131 Wn.2d 133, 150, 930 P.2d 288, 297 (1997).

8

> It is … the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor be construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se.

9

10

RCW 19.86.920 (underline added).

11

By using the disjunctive "or" in the statute, the Legislature reflected its intent that the

12

CPA not apply to: (1) acts or practices which are reasonable in relation to the development and

13

preservation of business, ***or***, (2) when acts are not injurious to the public interest, ***or***, (3) when

14

construction of the statute unreasonably restrains trade, ***or***, when construction of the statute is

15

unreasonable per se.  *See e.g., In re Pac.-Atl. Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995)

16

("[i]n construing a statute, a court should interpret subsections written in the disjunctive as

17

setting out separate and distinct alternatives").  As such, the CPA does not apply where acts or

18

practices are reasonable in relation to the development and preservation of business or

19

unreasonably restrains trade, even when it is argued that the act somehow injures to the public.

20

> In passing the Consumer Protection Act, the Legislature specifically recognized that acts or practices which are reasonable business practices or which are not injurious to the public are not the kind of acts sought to be prohibited. RCW 19.86.920.  This consideration, which is not part of the federal statutory scheme, warrants a narrower interpretation of the words "unfair method of competition" than that given by federal courts.  **By expressly allowing for reasonable business practices, our Legislature recognized that a court must weigh the public interest in prohibiting anticompetitive conduct against the recognition that businesses need some latitude within which to conduct their trade.**  In acknowledging that the letters written by respondent brokers

21

22

23

24

25

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 18
2:18 cv 1132-TSZ
6920999.doc

**LS** LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

were motivated by legitimate business concerns, the trial court implicitly acknowledged that the respondents' actions were not the kind of conduct within the scope of RCW 19.86.020.

*State v. Black*, 100 Wn.2d 793, 802–03, 676 P.2d 963, 969 (1984) (emphasis added).  *See also Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 54, 738 P.2d 665 (1987); *Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302, 307–08, 698 P.2d 578, 581 (1985).

Where conduct is motivated by legitimate business concerns, there can be no violation of RCW 19.86.  *Black*, 100 Wn.2d at 802–03, 676 P.2d 963.

Patenaude is a law firm, and Matthew Cheung is a Patenaude lawyer in Washington State.  Patenaude Dec. ¶ ¶ 2-3.  The Patenaude firm was retained to bring lawsuits on behalf of the Trusts.  *Id.* at ¶ 4.  Each of the Borrowers admit that they borrowed student loans and either admit that they never repaid the loans or do not deny it.  The Borrowers' claims against the Patenaude law firm specifically relate to lawsuits filed against them.  (Dkt 61 ¶¶ 47-48, 72-73, 88, 95).  In that state-court lawsuit, the Patenaude law firm filed affidavits on behalf of its clients, the Trusts. Cheung Dec. ¶¶ 25, 38, 54. The Borrowers allege that Patenaude violated the CPA by filing the lawsuits against them on behalf of its clients, the Trusts, and submitting affidavits in these lawsuits.  Filing lawsuits on behalf of a creditor client and submitting affidavits in lawsuits is reasonable in relation to the development and preservation of a law firm.  It would also be an unreasonable restraint of trade to prevent a law firm from filing lawsuits on behalf of clients and submitting client affidavits, and unreasonable per se to prevent a law firm from filing lawsuits and affidavits based on information provided to the attorney by the client.  Such would also be an unreasonable burden upon the legal professions.

### b. There is no evidence that the Patenaude law firm "knowingly" filed false affidavits in Washington courts.

The Borrowers primarily accuse the Patenaude law firm of "[k]nowingly filing false affidavits in Washington courts."  Even if the Borrowers could show the specific affidavits

from TSI employees filed in the underlying lawsuits were "false," (which has not been shown), the Borrowers cannot show that the Patenaude firm "knowingly" filed false affidavits, because this never happened.  In addition, all of the Borrowers concede that they lack any personal knowledge as to whether or not the Trusts own their student loan debts.  E. Hoffman Dep. at 40-42, 44, 143-45, 148-49; A. Kim Dep. at 234-35, Douglass Dep. at 116, 127, 233-35.

The Borrowers have the burden to show the defendants ***knowingly*** filed false affidavits. A knowing or willful violation of a statute requires proof that the defendant acted with knowledge that his conduct was unlawful.  *Bryan v. United States,* 524 U.S. 184, 193, 118 S. Ct. 1939, 1946, 141 L. Ed. 2d 197 (1998).  To prove a misrepresentation, Borrowers must show that Patenaude had no reasonable basis for the belief in the affidavits signed by their clients. *See In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 388 (9th Cir. 2010).  The Borrowers must state more than that they do not know or recollect an event to defeat a motion for summary judgment. *Grant v. Unifund CCR Partners,* 842 F. Supp. 2d 1234, 1241 (C.D. Cal. 2012) (plaintiff's claim that she never received a demand letter, was insufficient to defeat summary judgment in favor of defendant which presented testimony and evidence that a letter was sent).

No evidence can be presented that the Patenaude law firm knowingly filed false affidavits, because it never happened.  The Borrowers concede they have no personal knowledge about what Patenaude knew or did not know when making decision relating to the prosecution of the underlying matters.  For example, A. Kim has no personal knowledge whether the Trusts were the owner of the debt or have the documentation to prove they own his loan, A. Kim Dep. at 234-235, so he is not capable of providing testimony that declarations or affidavits filed by Mr. Cheung and Patenaude were false.  A. Kim does not have knowledge of what Patenaude reviewed before filing suit, and he has no knowledge of their policies and procedures for ensuring that the debt sued on was accurate, *id.* at 236 -238, and has no evidence



that Patenaude did not believe that suit had been properly served on D. Kim. *Id.* at 254. Douglass has no knowledge whether Patenaude believed the lawsuit was properly commenced against her, Douglass Dep. at 158, and no personal knowledge that anyone other than the Trusts is the owner of her student loan debt. *Id.* 167. Douglass has no personal knowledge as to what Patenaude believed about whether the lawsuit against her was properly commenced, *id.* at 158, and is not aware of any entity other than the Trusts and AES that have tried to collect on the loans she took out. *Id.* at 167. Hoffman admits she has no knowledge of who owns the loans or how much she owes. E. Hoffman Dep. at 40-42, 44, 143-45, 148-49. A. Kim admits that he does not know who owns the loans, A. Kim Dep. at 234-35, 265-267, and that he has no personal knowledge of what steps were taken or procedures followed by Patenaude to determine if the debt was correct. *Id.* at 236-38. Given the Borrowers' lack evidence, the Borrowers fail to meet their burden to present facts which would allow a jury to reasonably conclude that Patenaude knew that the Trusts were not the owner of the loans, or that the affiants did not have knowledge they swore they had under penalty of perjury.

### c. It is not unfair or deceptive to commence lawsuits on facially valid affidavits of service.

"In Washington, a facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular." *Mandelas v. Gordon*, 785 F. Supp. 2d 951, 956 (W.D. Wash. 2011) (citing *Woodruff v. Spence*, 88 Wn. App. 565, 945 P.2d 745, 749 (1997)). The Patenaude law firm retained a professional process server to serve the summons and complaint on each plaintiff. Cheung Decl. ¶ 10. Patenaude reviewed the affidavits of service in each of the underlying state lawsuits, found them to be properly completed, and relied on the affidavits of service when proceeding with the collection actions. *Id*. ¶ 10, 18, 36. A fully completed affidavit of service is presumptively correct. *Streeter-Dybdahl v. Nguyet*

LS LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

*Huynh*, 157 *Wn. App.* 408, 412, 236 P.3d 986, 989 (2010).   When service of process is contested, the plaintiff makes the initial showing of valid service by producing the affidavit of service.  It is the defendant's burden of proof to show by clear and convincing evidence that the service was improper.  *State ex rel. Coughlin v. Jenkins*, 102 *Wn. App.* 60, 65, 7 P.3d 818, 822 (2000).   Upon seeing nothing insufficient or suspicious in the affidavits of service to suggest that the summons and complaints were not properly served, Cheung Decl. ¶ 15, it was reasonable for Patenaude to rely on the affidavits to proceed with cases against the Borrowers.

Because a facially correct return of service is presumed valid under Washington law, it is not unfair or unconscionable to rely upon the declaration of service in obtaining a default judgment.  *Mandelas*, 785 F. Supp. 2d at 956.  Where a state court accepts the return of service as facially correct when it enters judgment, and party's recourse upon learning of the judgment is to challenge the entry of default in state court by presenting clear and convincing evidence that service was improper.  *Id*.  Thus, pursuing a collection action based on a facially correct return of service is not unfair or unconscionable conduct, even if the declaration of service is factually inaccurate or ineffective.  *Id*.

### d.     A lawyer is not required to possess all facts at the outset of representing a client or commencing a lawsuit.

Attorneys in Washington are required to comply with CR 11 when signing pleadings. CR 11 provides that an attorney's signature on a pleadings certifies that he or she:

> has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

CR 11.



The fact that a complaint does not prevail on its merits is by no means dispositive of the question of CR 11 sanctions. *Bryant v. Joseph Tree, Inc*., 119 Wn.2d 210, 220, 829 P.2d 1099 (1992). Washington's CR 11 was modeled after Fed. R. Civ. P. 11, and federal cases interpreting the federal rule are guidance for how Washington courts interpret CR 11. *Biggs v. Vail,* 124 Wn.2d 193, 197, 876 P.2d 448, 451 (1994). The courts took to what was reasonable to believe at that time the pleading or motion was submitted. *Id.* at 197. Reliance on the statement of the client when commencing litigation is not a violation of CR 11. *See MacDonald v. Korum Ford,* 80 *Wn. App.* 877, 882, 912 P.2d 1052, 1056 (1996) (holding that attorney relying almost exclusively on the client's statements when initiating lawsuit was a reasonable basis to believe that the client had a meritorious claim even if the claims were later found to be without merit). The fact that a party dismissed its claim after conducting discovery does not constitute proof that it did not have a factual basis for its allegations. *Tiger Oil Corp. v. Dep't of Licensing, State of Wash*., 88 *Wn. App.* 925, 939, 946 P.2d 1235, 1242 (1997).

The Patenaude law firm had previously performed work for the Trusts. Patenaude Decl. at ¶ 11. The Trusts and TSI provided sworn testimony and a significant amount of documentary evidence supporting the basis of their claims. *Id*. The Patenaude firm had previously successfully litigated cases on behalf of the Trusts. *Id*. The information received on the Borrowers' accounts all seemed to support the Trusts' entitlement to bring suit. Patenaude Decl. at ¶ 9. Patenaude reasonably relied on its client's statements that it had the right to pursue the litigation. Patenaude Decl. at ¶ 11. These statements show that Patenaude met the objective standards in CR 11. At the time the lawsuits were initiated, the Borrowers all admitted taking out the loans. The lawsuits were all initiated before Patenaude became aware of the consent order, and Patenaude had no reason to question the sworn affidavits provided by its client. Patenaude Decl. at ¶ 6, 11; Cheung Decl. ¶ 6, 8. Looking at Patenaude's actions

from an objective standard, Patenaude met the standards of CR 11 in its actions, and it is not unfair or deceptive for an attorney to take actions consistent with the requirements of CR 11.

> **2.     For purposes of a private CPA action, Patenaude's actions did not occur in trade or commerce, as contemplated by the CPA.**

For the second element of the *Hangman Ridge* test, a plaintiff must show acts occurring in trade or commerce.  "Trade" and "commerce" are defined as the "sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2).  "Trade" means the "sale of assets or services," but the statute does not define "commerce," which has been defined as "the exchange or buying and selling of commodities especially on a large scale and involving transportation from place to place." *A.W.R. Const., Inc. v. Washington State Dep't of Lab. & Indus.*, 152 Wn. App. 479, 486, 217 P.3d 349, 352 (2009) (quoting Webster's Third New International Dictionary, 456 (1993) (brackets omitted)).  What occurred here was neither trade nor commerce.

Claims directed at the competence of and strategy employed by a lawyer are exempt from the CPA.  *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 603, 200 P.3d 695, 699 (2009). Only claims implicating entrepreneurial aspects of a law practice meet the "trade or commerce" element of a CPA claim, so only such claims are actionable under the CPA.  *Id.*  "In a legal practice entrepreneurial aspects include how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients."  *Id.*  As Judge Coughenour held in regard to a creditor's attorney that brought lawsuits against plaintiffs:

> Plaintiffs allege that they challenge Friedman's entrepreneurial practices, because "Friedman is a debt collector who brought debt collection cases in [King County District Court] for Merchants" and "was able to secure default judgments [which] are enforced on a continuing basis by Friedman." (Dkt. No. 54 at 14.) This argument does not hold water. **The challenged conduct relates squarely to Friedman's representation of his client, as opposed to the financial management of his firm.** Thus, Plaintiffs' claims are based on conduct that is not actionable under the WCPA.



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

*Linehan v. Allianceone Receivables Mgmt.*, Inc., No. C15-1012-JCC, 2016 WL 5944564, at *3 (W.D. Wash. Oct. 13, 2016) (emphasis added).  *See also Anglin v. Merchants Credit Corp*., No. 18-CV-507-BJR, 2020 WL 4000966, at *6 (W.D. Wash. July 15, 2020) (citing cases).

Likewise, in *Genschorck v. Suttell & Hammer, P.S.*, 2013 WL 6118678 (E.D. Wash. Nov. 21, 2013), the district court held:

> Here Suttell and Filer's blunder in **filing for a garnishment based on a vacated judgment implicate a core practice of the law, the filing of pleadings.** It does not concern any entrepreneurial aspect of the practice, and therefore does not impact trade and commerce as those concepts are used in the WCPA.

*Id*. at *3 (emphasis added).

Generally, events occurring solely in litigation do not constitute "trade or commerce." *Blake v. Fed. Way Cycle Ctr*., 40 Wn. App. 302, 312, 698 P.2d 578, 584 (1985); *Medialdea v. Law Office of Evan L. Loeffler PLLC*, No. C09-55RSL, 2009 WL 1767185, at *8 (W.D. Wash. June 19, 2009).  Merely arguing that a lawyer charged a fee or sought financial benefit is insufficient to implicate the entrepreneurial aspect of the practice, since essentially all lawyers charge for their services.  There must be something more, and there is not here.  While a lawyer may have a collection agency license, and may do some things that a collection agency may do, there are many things a lawyer can do that a collection agency cannot do, such as file lawsuits.  Simply having a collection agency license does not mean one is always acting as a collection agency just like simply having a drivers license does not mean one is always driving or having a hunting license mean one is always hunting.  Here, the actions the Patenaude law firm took, such as making pre-litigation demands, filing lawsuits, filing motions, filing affidavits, and the like, were distinctively things a lawyer does.  The Borrowers' allegations do not relate to the financial management of the Patenaude law firm, they relate to the filing of lawsuits and affidavits, and therefore they fail to show the trade or commerce elements of a private CPA.

LEE
SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

The Borrowers challenge whether the Trusts can ultimately prove that they own the loans in question. But at the end of the day, the only conduct alleged against Patenaude is that it was representing the Trusts in an effort to collect student loans that the Borrowers admit they owe. This is not "trade or commerce" for purposes of a private CPA claim.

### 3.     Patenaude reserves on the public interest aspect of the claim.

Patenaude reserves its defenses on the public interest aspect of the CPA claim, as the Borrowers fail to meet other elements of the *Hangman Ridge* test, and would only argue this element if still needed in the future.

### 4.     The Borrowers were not injured by having the Patenaude law firm attempt to have them honor their student loan obligations.

The fourth element of a private CPA action requires a showing that plaintiff was injured in his "business or property." A CPA claim, even one based on *per se* claims, fails where proximate cause and/or damages are not shown. *See Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (citing *Keyes v. Bollinger*, 31 Wn. App. 286, 640 P.2d 1077, 1081 (1982). Personal injuries, including mental pain and suffering, are not compensable under the CPA. *Leingang*, 131 Wn.2d at 158.

Costs incurred in defending against a state collection action and prosecuting a CPA counterclaim are insufficient to show injury. *Sign–O–Light, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 564, 825 P.2d 714 (1992) ("mere involvement in having to defend against Sign's State Case and having to prosecute a CPA counterclaim is insufficient to show injury to her business or property"). "[F]ees and costs incurred in litigating the CPA claim cannot satisfy the injury to business or property element: if plaintiff were not injured prior to bringing suit, he cannot engineer a viable claim through litigation." *Babrauskas v. Paramount Equity Mortg.*, C13–0494RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013).

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

In addition, "plaintiffs are not injured in the amount collected when the plaintiff owed the debt even where the debt collector violated state law in doing so." *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1117 (W.D. Wash. 2012) (citing *Gray v. Suttell & Assocs.*, 2012 WL 1067962, at *6 (E.D. Wash. Mar. 28, 2012)); *Flores v. The Rawlings Co., LLC*, 177 P.3d 341, 358 (Hawaii 2008) (finding that although the defendant's collection activities might have violated state statutes, the plaintiffs were not injured by paying the underlying debt because the debt was valid); *Camacho v. Auto. Club of S. Cal.*, 142 Cal.App.4th 1394, 1405, 48 Cal.Rptr.3d 770 (2006) (finding that the plaintiff could not establish an injury from the allegedly unfair collection practice where he conceded liability and owed the amounts that were collected). The Borrowers all admit they borrowed student loans and either admit they failed to pay the loans or do not challenge their failure to pay.

### a.      Hoffman's claim of injury.

Hoffman alleges the following injury:

> Ms. Hoffman spent money and time investigating the debt that the Defendants claim she owes them. She spent money and time working with an attorney to try and settle the account, including the default judgment that she has now learned was **likely** obtained with a false declaration

(Dkt 61 at ¶ 67) (emphasis added).

As discussed above, Hoffman was not damaged to the extent that she incurred attorney fees and costs in defending against a state collection action and prosecuting a CPA claim. *Sign–O–Light*, 64 Wn. App. at 564; *Babrauskas*, 2013 WL 5743903, at *4. In addition, she is not injured in paying on student loans she admits that she owes, even if the debt collector violated state law in collecting the money. *Moritz*, 895 F. Supp. 2d at 1117; *Gray*, 2012 WL 1067962, at *6; *Flores*, 177 P.3d at 358; *Camacho*, 142 Cal.App.4th at 1405.

### b.      Douglass's claim of injury.

Douglass alleges the following injury:



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

> Ms. Douglass spent time and money investigating the default judgment and underlying debt Defendants claim she owes.  Ms. Douglass had to take time off work and paid bus fare to attend a legal aid clinic and later to meet with her attorney.  While at the legal clinic, Ms. Douglass paid to print copies of the pleadings filed in the two cases so that she could investigate the validity of the default judgment and underlying debt.

(Dkt 61 at ¶ 85) (emphasis added).

Douglass kept no records and has no documentary evidence of any of these claimed injuries. Douglass Dep. at 107, lns. 11-24. Douglass is represented by Northwest Consumer Law Center on a pro bono basis.  Cheung Decl. ¶ 23. Douglass has not paid any money for her legal representation.  Douglass Dep. at 184, lns. 8- 22.  Payments of amounts actually owed are not damages under a CPA claim.  Finally, any attorney fees incurred by a plaintiff while pursuing a CPA claim are not actual damages, for the purpose of satisfying the damage element of a CPA claim.  *Schreib,* 129 F. Supp. 3d at 1141; *Sign-O-Lite Signs,* 64 *Wn. App.* at 564-66 (having to defend a collection action and counterclaim for a CPA violation is in sufficient to show injury to business and property under the CPA).  Because Douglass has no actual damage caused by any action of Patenaude, her CPA claim against Patenaude fails as a matter of law.

### c.    The Kims' claim of injury.

The Kims allege the following injury:

> The Kims paid their attorney $11,540.00 to investigate and defend Defendants' collection attempts, including a review of the underlying documents, a review the court file and garnishments, litigation to vacate the default judgments and discovery to prepare a defense for trial

(Dkt 61 at ¶ 116).

As discussed above, the Kims are not damaged by incurring attorney fees and costs in defending against a state collection action and prosecuting a CPA claim.  *Sign–O–Light*, 64 Wn. App. at 564-66; *Babrauskas*, 2013 WL 5743903, at *4.  In addition, the Kims were not injured in paying on student loans they admit they owe, even if the debt collector violated state

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

law in collecting the money. *Moritz*, 895 F. Supp. 2d at 1117; *Gray*, 2012 WL 1067962, at *6; *Flores*, 177 P.3d at 358; *Camacho*, 142 Cal.App.4th at 1405.

### 5. Patenaude did not proximately cause injury to the Borrowers.

To support the fifth element of the *Hangman Ridge* test, there must be a causal link between the misrepresentation and the plaintiff's injury. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10, 22 (2007). Injury under the CPA must be causally linked to the unfair or deceptive act. *Schreib v. Am. Fam. Mut. Ins. Co.,* 129 F. Supp. 3d 1129, 1138 (W. D. Wash. 2015). Where there has been no violation of the CPA standards by a defendant, there can be no proof of causation between whatever costs plaintiffs have incurred as a result of defendants actions. *Blair v. Nw. Tr. Servs., Inc.,* 193 *Wn. App.* 18, 37, 372 P.3d 127 (2016).

The first prong of proximate cause is cause in fact. *Kim v. Budget Rent A Car Sys., Inc*., 143 Wn.2d 190, 203, 15 P.3d 1283, 1289 (2001). Cause in fact concerns "but for" causation. *Id*. In the context of the CPA, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard*, 170 P.3d at 22. The question of cause in fact is often left to the jury, but if reasonable minds could not differ, this issue may be determined as a matter of law. *Kim*, 15 P.3d at 1289. "Cause in fact is not established if plaintiff's injury would have occurred without defendant's breach of duty." *Walker v. Transamerica Title Ins. Co*., 65 Wn. App. 399, 403, 828 P.2d 621, 623–24 (1992); *Gaines v. Pierce Cty.*, 66 Wn. App. 715, 723, 834 P.2d 631, 635 (1992).

"Legal cause is the second prong of proximate causation and is a question of law for the court." *Kim*, 15 P.3d at 1289 (quotation marks and brackets omitted).

> Legal causation is a much more fluid concept than cause in fact. It is grounded in policy determinations as to how far the consequences of a defendant's acts should extend. The focus in legal causation analysis is on whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. This inquiry depends upon mixed



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1    considerations of logic, common sense, justice, policy, and precedent.

2    *Kim*, 15 P.3d at 1289 (internal quotation marks and brackets omitted).

3    Here, there is neither cause in fact nor legal causation. First, there is no cause in fact,

4    both because there was no unfair or deceptive act or practice, and because the Borrowers'

5    alleged injuries would have occurred without Patenaude bringing the lawsuit. The Borrowers

6    admit they did not pay their student loans. If Patenaude had not collected on these delinquent

7    accounts, someone else would have, so that the injury complained of (i.e., collection on

8    overdue student loans), would have occurred without the Patenaude law firm's alleged breach.

9    In addition, the vast majority of the Borrowers' claims are directed at the Trusts and

10   TSI. The claim is that, despite the testimony and documentary evidence submitted against

11   them in the state cases, these entities could not ultimately show ownership of the student loans.

12   Here, the connection of Patenaude to these claims is tenuous. Patenaude did not sign the

13   consent order, was not responsible for maintaining the evidence submitted by the client, and

14   was simply a law firm that brought lawsuits against an individual based on the substantial

15   documents provided by the client reflecting that the Borrowers owed the debt. Assuming

16   without conceding that all of the Borrowers' allegations against TSI and the Trusts could be

17   shown, Patenaude is not liable for its client's actions. *See Clark*, 460 F.3d at 1173 ("there is no

18   legal authority for the proposition that an attorney is generally liable for the actions of his

19   client"). Even if the Borrowers could support their claims against the trusts and TSI (which is

20   not being suggested here), an attorney is not guilty merely because he takes reasonable action

21   on behalf of that client. As a matter of mixed considerations of logic, common sense, justice,

22   policy, and precedent, it would be improper to find Patenaude liable because the Borrowers feel

23   Patenaude's clients engaged in unfair or deceptive acts or practices.

24

25

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 30
2:18 cv 1132-TSZ
6920999.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

**E.    The Borrowers' per se CPA claims based on 15 U.S.C. §§ 1692e and f should be dismissed.**

The Borrowers allege per se CPA claims based on 15 U.S.C. §§ 1692e(2)(a), 1692e(10), and 1692f.  (Dkt 61 at ¶¶ 167-169).  These per se CPA claims fail as to each of the Borrowers to the extent that they cannot support the elements of injury and causation, as argued above.  In addition, these three per se CPA claims fail for the reasons set forth below.

**1.    The Washington Legislature is aware of the FDCPA, but it appears the Legislature has not designated the FDCPA as a basis for an independent per se CPA claim.**

"A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge*, 105 Wn.2d at 786, 719 P.2d at 535.  The Washington Supreme Court felt that it was not the proper body to expand what can constitute a per se violation of the CPA, holding "the Legislature, not this Court, is the appropriate body to establish that interaction by declaring a statutory violation to be a per se unfair trade practice." *Id.*, 719 P.2d at 536.  The Washington Legislature has identified numerous statues that form the basis of per se CPA claims.[8]  The Borrowers allege per se CPA claims based on the FDCPA.  (Dkt 61 at ¶¶ 167-169).  To undersigned counsel's knowledge, the Washington Legislature has not provided that violations of the FDCPA, standing alone, are per se violations of the CPA.  If the Washington Legislature did not declare that the FDCPA supports an independent per se claim under the CPA claim, then it is questionable as to whether it is within this Court's proper purview to so expand the applicability of the CPA.

---

[8] Though it is far from the total of all per se violations identified by the Legislature, *See e.g*., RCW 18.185.210 (Bail Bond Agents); RCW 19.170.010 (Promotional Advertising of Prizes); RCW 19.52.036 (Interest – Usury); RCW 19.146.100 (Mortgage Brokers Act), RCW 19.16.440 (Collection Agency Act), RCW 19.09.340 (Charitable Solicitations), RCW 31.45.190 (Check Cashers and Sellers), RCW 46.71.070 (Automotive Repair), RCW 49.60.030(3) (Discrimination), RCW 18.11.260 (Businesses and Professions).

LEE SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

### 2. The Borrowers' claims under §§ 1692e(2)(A) and 1692e(10) should be dismissed.

There is much overlap between the claims under §§ 1692e(2)(A) and 1692e(10). As the Borrowers allege, "§§ 1692e(2)(a) and 1692e(10), the FDCPA prohibits debt collectors from making false representations of the character, amount, or legal status of any debt and from using any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." (Dkt 61 at ¶ 166). The only specific allegation made by the Borrowers in regard to the § 1692e(2)(a) and § 1692e(10) claims is that:

> Defendants violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) by making false, deceptive, and misleading representations to debtors and Washington courts concerning the documents they possessed or reviewed that allegedly showed that the NCSLTs were entitled to collect on student loan debt.

(Dkt 61 at ¶ 167).

The "character" of a debt is a reference to the type of obligation; for example, "a secured auto loan would be of one character, an unsecured credit-card debt another, a judgment debt a third." *Rhone v. Med. Bus. Bureau, LLC*, 915 F.3d 438, 440 (7th Cir. 2019). Here, the Patenaude firm indicated it was seeking to recover on unpaid student loans. This was an accurate representation of the debt. The Patenaude law firm provided letters and lawsuits providing the various amounts that the Borrowers owed at various periods of time. The burden is on the Borrowers to show that the amounts identified were inaccurate, but the Borrowers cannot show that the Patenaude firm falsely represented the amount of the debt. The Borrowers cannot show that the Patenaude firm falsely represented the legal status of the debt. The Patenaude law firm indicated that the Borrowers' student loan debt was delinquent and due and owing. All of the Borrowers admit that this was true or at least do not deny it. Douglass Dep. at 118; E. Hoffman Dep. at 40-42, 44, 143-45, 148-49; I. Kim Dep. at 18, 34, 36-38, 44-45, 50-54, Exs. 2-5, 8-9, 13; A. Kim Dep. at 30, 33-34, 37-38, 41-46, 51, 53, 62, 68, 72, 84-85, 88-99, 106, 117-118, 187, 193-94, 226-27; Exs. 1-8, 12, 15, 17-20, 22.



The allegation that the Patenaude firm allegedly violated the FDCPA by making representations to courts that the documents they possessed or reviewed that showed that the Trusts were entitled to collect on student loan debt, such representations to courts are not actionable under the FDCPA. *Jeckle*, 120 Wn. App. at 385.

Thus, the remaining claim is that Patenaude violated §§ 1692e(2)(a) and 1692e(10) by representing to the Borrowers that the documents they possessed or reviewed showed that the Trusts were entitled to collect on student loan debt. All of the documents possessed and reviewed by Patenaude reasonably support the proposition that the Trusts own the specific student loan debts at issue. Patenaude Decl. at ¶ 9, 11; Cheung Decl. at ¶ 8. The Borrowers have been litigating this case for years, and have not presented any definitive proof that the Trusts do not actually own the Borrowers' student loans. Cheung Decl. at ¶ 7. No entity other than the Trusts or sub-servicers have ever tried to collect on the Borrowers' student loan debt. Douglass Dep. at 167, lns. 6-14; E. Hoffman Dep. at 201-02; I. Kim Dep. at 73; A. Kim at 266. **The most the Borrowers may be able to do in this litigation is question the definitiveness of the Trusts' evidence of ownership of the Borrowers' student loan debt; they will not be able to definitively show that the Trusts do not actually own the student loans. As such, the Borrowers cannot support their burden of showing that the Patenaude law firm statements were "false, deceptive, and misleading."**

Directly on point is *Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 333 (6th Cir. 2006), where plaintiffs sued a creditor's attorney alleging violation of § 1692e(10) on the grounds that the attorney did not have means of proving the debt when suit was filed for collection against the debtor. The court held that the debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim, and there is no violation of 15 U.S.C. § 1692e(10) in doing so. The court concluded that an attorney does not



need to have in hand the means to prove the case when suit is filed. *Id.* at 33 (citing Fed. R. Civ. P. 11). ***A plaintiff must** allege and s**how that the debt collector does not actually own** the loan to be entitled to recover under the FDCPA. *Nickoloff v. Wolpoff & Abramson, L.L.P.*, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007).

Patenaude relied on sworn testimony and significant amounts of documentation provided by its client. Patenaude Decl. at ¶ 11; Cheung Decl. ¶ 3, 8, 18. Patenaude had history of finding this information accurate and reliable. Patenaude Decl. at ¶ 11; Cheung Decl. ¶ 8. As stated above, a large portion of the Borrowers' claims against Patenaude is based on insinuation and guilt by association. However, there is no legal authority for the proposition that an attorney is generally liable for the actions of his client. *Clark,* 460 F.3d at 1173. Unlike a motion to dismiss, opposing a motion for summary judgment requires evidence.

### 3.     The Borrowers' § 1692f claim should be dismissed.

A debt collector may not use unfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f. The term "unfair" means "marked by injustice, partiality, or deception." *Echlin v. Asset Sys., Inc.*, No. 3:12-CV-05954-BHS, 2013 WL 12108082, at *3 (W.D. Wash. Mar. 6, 2013) (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010). The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." *Id*. (quoting *LeBlanc*, 601 F.3d at 1200).

The Borrowers provide a single basis for their claim under § 1692f. The Borrowers allege: "Defendants violated 15 U.S.C. § 1692f by filing and sending as verification of debt TSI employee affidavits that were misleading or false in order to obtain debt settlements, default judgments, and summary judgments." (Dkt 61 at ¶ 169). In other words, the entire § 1692f claim is based on Patenaude filing and serving the affidavits provided to it by TSI employees to

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 34
2:18 cv 1132-TSZ
6920999.doc

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2   support motions for default or motions for summary judgment.  (Dkt 16, Exs. 6, 12-13, 35-36).

3   As indicated above, the Borrowers might, at most, be able to question the definitiveness of the

4   Trusts' evidence of ownership of the Borrowers' student loan debt; but they cannot definitively

5   show that the Trusts do not actually own the student loans.  While the Trusts sometimes

6   dismissed their claims in the state court lawsuits, it does not establish that the Trusts did not

7   own the student loans, that its attempts to collect were deceptive in nature, or that its filing suit

8   was unconscionable.

9           [T]he Supreme Court stated that "we do not see how the fact that a lawsuit turns
           out ultimately to be unsuccessful could, by itself, make the bringing of it an
10          'action that cannot legally be taken.' " *Heintz v. Jenkins*, 514 U.S. 291, 295-96,
           115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Courts in other circuits have come to
11          the same conclusion. *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172
           (2d Cir. 2015) (dismissing FDCPA claim based on the initiation of a debt
12          collection lawsuit); *Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 333 (6th
           Cir. 2006) (rejecting argument that "a lawsuit filed without the immediate means
13          of proving the existence, amount, or true owner of the debt" violates Section
           1692e)

14  *Ramos v. LVNV Funding*, LLC, 379 F. Supp. 3d 437, 444 (E.D. Pa. 2019).

15          Thus, no FDCPA violation may be inferred from the Trusts permitting many of the

16  lawsuits to be dismissed, though the judgment against Esther Hoffman still remains valid.

17          As also reflected in the facts above, all of the affidavits used in the underlying lawsuits

18  were filed and/or served by April 25, 2017, long before the CFPB consent order was published

19  in September 18, 2017.  It is not "unfair or unconscionable" for a law firm to reasonably rely on

20  sworn testimony and substantial documentation from a client that is facially consistent with its

21  claims and has, in the past, provided evidence that has been accepted by many judges as

22  competent evidence.  "The FDCPA does not impose a duty upon a debt collector to

23  independently investigate the validity of a debt and, unless it is unreasonable to do so, debt

24  collectors have the right to rely upon the information provided by their clients.  *Campbell v.*

25  *Puget Sound Collections, Inc.*, No. C21-5429RSM, 2022 WL 73867, at *4 (W.D. Wash. Jan. 7,

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 35
2:18 cv 1132-TSZ
6920999.doc

LEE
SMART

701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

2022) (citing *Clark*, 460 F.3d at 1174 (within reasonable limits, a debt collector is entitled to rely on their client's statements to verify the debt).[9]   Under the facts of the underlying state cases, at the time those lawsuits were being filed, there was nothing to suggest that it was unreasonable for the Patenaude law firm to accept the TSI affidavits at face value. Indeed, while the CFPB consent order asserts that there were some TSI employees that did not have personal knowledge regarding some of the contents of the affidavits they signed, there is no evidence that this consent order involved the specific TSI employees that provided affidavits in this case or that the issues identified in the consent order were not corrected by a date certain, which is what the consent order provided for.   And, again, Patenaude had no knowledge regarding the consent order, or any of the assertions within, until it was published by the CFPB on September 18, 2017, Patenaude Decl. at ¶ 6, Ex. 1, which was after almost all of the events relating to the Patenaude law firm.

## IV.  CONCLUSION

Patenaude requests that this Court dismiss the Borrowers' lawsuit against the Patenaude law firm.  The Borrowers admit to borrowing money and owing on multiple student loans.  The Borrowers' claims against the Patenaude law firm are based largely on guilt by association, and primarily accuse the Patenaude law firm of "[k]nowingly filing false affidavits in Washington courts."   Even if the Borrowers could show the affidavits from TSI employees filed in the underlying lawsuits were "false," the Borrowers cannot show that the Patenaude firm "knowingly" filed false declarations, because this never happened.

---

[9] *See also McNall v. Credit Bureau of Josephine Cty.,* 689 F. Supp. 2d 1265, 1276 (D. Or. 2010) (holding that the FDCPA does not impose on debt collectors any duty to investigate independently the claims presented by the creditor.) *Shapiro v. Haenn,* 222 F. Supp. 2d 29, 44 (D. Me. 2002) (attorney debt collectors may rely on the information their clients provide, and the FDCPA does not require them to conduct their own investigation into the amount or validity of the underlying loan); *Hulse v. Ocwen Fed. Bank, FSB,* 195 F. Supp. 2d 1188, 1210 (D. Or. 2002) (debt collection law firm should be able to rely on the creditor regarding the debt, and is not required to conduct an independent investigation as to the debt); *In re Cooper,* 253 B. R. 286, 292 (Bankr. N. D. Fla. 2000) ("Attorneys and debt collectors are entitled to rely on the information they receive from the creditor").



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

2          The sole cause of action alleged by the Borrowers against the Patenaude law firm is a

3   claim under the CPA, with one per se CPA claim and one private CPA claim, so all claims

4   against the Patenaude law firm are barred by the judicial action privilege and public policy.

5   Even if there were some actions that the Court finds are beyond the scope of litigation, all

6   claims that relate to the litigation are still barred and should be dismissed because the

7   Borrowers are unable to support necessary elements of the *Hangman Ridge* test needed to

8   support a claim under the CPA.

9          DATED this 28th day of April, 2022.

10                                          LEE SMART, P.S., INC.

11                                          By: /s Marc Rosenberg
                                                Marc Rosenberg, WSBA No. 31034
12                                              Of Attorneys for Defendants
                                                Patenaude & Felix, A.P.C. & Matthew Cheung
13
                                                1800 One Convention Place
14                                              701 Pike St.
                                                Seattle, WA 98101-3929
15                                              (206) 624-7990
                                                mr@leesmart.com
16

17

18

19

20

21

22

23

24

25

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 37
2:18 cv 1132-TSZ
6920999.doc



701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on the date provided at the signature below, I electronically filed

3

the preceding document with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to the following individuals:

5

Sam Leonard                    sam@seattledebtdefense.com
Christina L. Henry             chenry@hdm-legal.com

6

Guy W. Beckett                 gbeckett@beckettlaw.com
Amanda Martin                  amanda@nwclc.org

7

James K. Schultz               jschultz@sessions.legal
Justin Homes                   jhomes@sessions.legal

8

Bryan Shartle                  bshartle@sessions.legal
Bradley St. Angelo             bstangelo@sessions.legal

9

Gregory T. Casamento           gcasamento@lockelord.com
R. James DeRose, III           rderose@lockelord.com

10

J. Matthew Goodin              jmgoodin@lockelord.com
Tim J. Filer                   tim.filer@foster.com

11

Ryan W. Vollans                rvollans@williamskastner.com

12

I certify under penalty of perjury under the laws of the State of Washington that the

13

foregoing is true and correct, to the best of my knowledge.

14

Dated this 28th day of April, 2022 at Seattle, Washington.

15

LEE SMART, P.S., INC.

16

By: /s Marc Rosenberg
Marc Rosenberg, WSBA No. 31034

17

Of Attorneys for Defendants
Patenaude & Felix, A.P.C. & Matthew Cheung

18

19

1800 One Convention Place
701 Pike St.

20

Seattle, WA 98101-3929
(206) 624-7990

21

mr@leesmart.com

22

23

24

25

DEFENDANTS MATTHEW CHEUNG AND
PATENAUDE & FELIX, A.P.C.'S MOTION FOR
SUMMARY JUDGMENT - 38
2:18 cv 1132-TSZ
6920999.doc




701 Pike Street, Suite 1800
Seattle, Washington 98101
206.624.7990 · www.leesmart.com