1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ESTHER HOFFMAN, et al.,

               Plaintiffs,

    vs.

TRANSWORLD SYSTEMS INCORPORATED, et al.,

               Defendants.

Case No. C18-1132 TSZ

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOTED FOR CONSIDERATION: November 4, 2022

ORAL ARGUMENT REQUESTED

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - i
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1

## TABLE OF CONTENTS

2

I. INTRODUCTION ........................................................................................................ 1

3

II. RELEVANT FACTS ................................................................................................ 3

4

   A.    The Alleged Assignment of Student Loans to the NCSLTs, and the Attributes of

5
           the Referenced Schedules of Loans ................................................................. 3

6
      1.    The alleged transfers of student loans from the originating banks to the
            NCSLTs are purportedly recorded in Pool Supplements specific to each
7
            transfer. ......................................................................................................... 3

8
      2.    Each Pool Supplement references an "attached schedule" of loans that were
            purportedly being sold by the originating lender to the NCF, but the schedules
9
            are not  attached. ........................................................................................... 3

10
      3.    The Pool Supplements provide information on the attributes of the alleged
11
            schedules. ...................................................................................................... 4

12
   B.    The NCSLTs, TSI, P&F and Piles of Affidavits With Documents From
           Somewhere ........................................................................................................ 5
13

14
      1.    Relationship of the Parties. ........................................................................... 5

15
      2.    Forty affidavits a day with information and documents from somewhere. ............. 6

16
   C.    Collection against the Plaintiffs – Default Judgments, Voluntary Dismissals,
           Non-Negotiable Instruments and Collection Outside Litigation ................................ 8

17
      1.    Default Judgments were taken against the Plaintiffs, then vacated, and then
18
            the lawsuits were voluntarily dismissed. ....................................................... 8

19
      2.    The Non-Negotiable Instruments:................................................................... 9

20
      3.    Plaintiffs incurred expenses investigating the NCSLTs' right to collect on
            their loans, and paid collection fees, court costs and incidental expenses............. 10
21

22
      4.    To date, Plaintiffs still do not know who owns their loans................................... 11

23
   D.    This Lawsuit and the Records and Testimony Obtained.......................................... 11

24
      1.    The Consumer Financial Protection Bureau found that Defendants were using
            false and misleading affidavits to obtain judgments against consumers and
25
            lack proof of assignment, and TSI did not dispute those findings.......................... 11

26

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

2.      Plaintiffs obtained further evidence that the Defendants do not have proof of assignment or control over who can access AES's records. ................................. 12

3.      Experts dispute whether the Excel spreadsheets the Defendants claim are schedules are authentic, and the spreadsheets do not match their description in the Pool Supplements. ............................................................................. 14

III. EVIDENCE RELIED UPON ................................................................ 15

IV. ARGUMENT ................................................................................. 16

A.      Summary Judgment Standard .................................................. 16

B.      The Court Should Not Consider the Declaration of Jennifer Wilbert in Deciding the Summary Judgment Motion ................................................. 16

C.      The CPA is a Broad Remedial Consumer Protection Statute That Must Be Liberally Construed Such That Its Beneficial Purpose May Be Served .................. 19

D.      The NCSLTs Are Liable Under the CPA for the Actions of Their Agents, TSI and P&F .................................................................................. 20

E.      Defendants Engaged in Unfair and Deceptive Conduct When They Used False and Misleading Affidavits to Collect On Student Loans and Sought to Collect When Proof of Assignment is Missing or Never Existed ........................... 21

1.      The NCSLTs present no evidence that the Dudley Turner or Brian Jackson affidavits were not false or misleading. ................................................. 21

2.      Plaintiffs have presented significant evidence showing that Dudley Turner's and Brian Jackson's affidavits were false or misleading. ....................... 22

3.      Issues of fact exist as to whether the NCSLTs possess the schedules showing assignment. .............................................................................. 24

4.      The NCSLTs' argument that the TSI Consent Order is not admissible ignores binding precedent and relies on distinguishable out-of-circuit cases. .................. 26

5.      Defendants' argument that they can prove they own the loans is an attempt to deflect attention from the relevant issues. ............................................. 29

B.      The Alleged Unfair and Deceptive Acts Occurred in Trade or Commerce ............. 34

1.      Under the law of the case and the established facts, issues of material fact exist regarding whether the NCSLTs' unfair or deceptive conduct occurred in trade or commerce. .................................................................. 34

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - iii
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2.      The NCSLTs' argument that the NCSLTs do not fit within the rubric of "trade or commerce" is a misstatement of law and fact. ....................................................35

F.      Plaintiffs Have Submitted Evidence Which Shows There Are Issues of Fact Regarding the Last Two Elements of Their Standalone CPA Claims ......................37

G.      The Injunctive Relief Plaintiffs Request Against the NCSLTs Is Permitted Under the CPA ............................................................................................................39

V. CONCLUSION ............................................................................................................40

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - iv
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.  INTRODUCTION

The Defendant National Collegiate Student Loan Trusts (collectively, the "NCSLTs") attempt to avoid the obstacle of the law of the case and existing Washington law and precedent when they ask the Court to dismiss Plaintiffs' claims. Their arguments are nothing more than misdirection and deception. The Court should deny the NCSLTs' summary judgment motion in its entirety.

The Ninth Circuit, this Court and substantial Washington precedent detail what Plaintiffs must show to prevail on their standalone Consumer Protection Act ("CPA") claims brought under RCW 19.86.090. To repel the NCSLTs' attempts to dismiss their claims on summary judgment, Plaintiffs need only show that material issues of fact exist regarding each element of their CPA claims against them. Plaintiffs not only meet their burden, but exceed it.

The NCSLTs are liable both for the unfair actions of Transworld Systems Incorporated ("TSI") and Patenaude & Felix, A.P.C. ("P&F"), who act as their agents, and for their own unfair and/or deceptive attempts to collect on student loans when they do not have proof of assignment. Plaintiffs allege that the NCSLTs engaged in unfair and/or deceptive conduct in violation of Washington's Consumer Protection Act when they (1) used false or misleading affidavits to collect on student loans that the NCSLTs claim they own, and (2) continued to collect on student loans they allege they own, without the "schedules" that allegedly show the assignment of the Plaintiffs' student loans from originating lenders to the NCSLTs that claim to own them. The Ninth Circuit and this Court have agreed that if Plaintiffs can establish the above allegations, they prove the first three elements of the five elements of their standalone CPA claims.

Plaintiffs can establish the affidavits were false. Nowhere in the NCSLTs' Motion for Summary Judgment do they argue that Mr. Turner or Mr. Jackson had the "personal knowledge" they claimed they had in the affidavits used to collect against the Plaintiffs. Instead, the NCSLTs, without citation, simply conclusively state, "If the Trusts own the loans, the affidavits claiming

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4

they owned them are truthful." Dkt. #369 at 2. There is no support for this proposition. Plaintiffs have presented substantial evidence that Mr. Turner's and Mr. Jackson's affidavits ("Generic Form Affidavits"), created by TSI, contain numerous false and misleading statements. Thus, the Plaintiffs establish the first three elements of their CPA claim.

5
6
7
8
9
10
11
12
13
14
15
16
17
18

The NCSLTs also cannot (1) show that they have not lost the schedules of loans they claim were assigned or (2) prove that the schedules ever existed. Plaintiffs have presented substantial evidence that shows the existence of an issue of fact regarding whether the schedules ever existed or have been lost. Plaintiffs' expert draws into question the authenticity of the Excel spreadsheets the NCSLTs claim are the loan schedules. The spreadsheets themselves do not match their descriptions in the Pool Supplements to which they were purportedly attached. The NCSLTs contend they can prove they own the loans and argue that Plaintiffs' claims must fail, but this is merely an attempt to obfuscate the issues and deflect from their own unfair and/or deceptive conduct.[1] But even if their ownership of the loans was determinative (which it is not), issues of fact exist regarding their ownership. The NCSLTs have not submitted a single document for which authenticity is not disputed that shows they were assigned the loans upon which they attempt to collect. The declarations upon which they rely to prove ownership are inadmissible and untrustworthy. Thus, even if proving ownership is material—which it is not— the NCSLTs' motion must fail.

19
20
21
22
23

Finally, the NCSLTs attempt to argue that the ends justify the means and that the Plaintiffs cannot establish the last two elements of their standalone CPA claims, injury and causation. But they clearly do not understand the evidence Plaintiffs must provide to establish these elements. They argue that Plaintiffs have not established damages, but damages are not an element of a CPA claim. Rather, the relevant inquiry is whether the Plaintiffs can show they

24
25
26

[1] "The universe of 'unfair' business practices is broader than, and encompasses, the universe of 'deceptive' business practices." *Panag v. Farmers Ins. Co. of Washington,* 166 Wn.2d 27, 51, 204 P.3d 885 (2009). Business practices that are "deceptive" are also "unfair." *Id.* But a practice may be "unfair" without being "deceptive." *Klem v. Washington Mut. Bank,* 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4
5
6

sustained "injury" to business and property. Plaintiffs can establish injury by showing that the unfair and deceptive conduct in which the NCSLTs engaged caused them small or even unquantifiable monetary harm. Plaintiffs do not have to show monetary damages, but here they have. As the Ninth Circuit explained, if Plaintiffs can show they incurred any expense as a result of Defendant's ill-gotten default judgments, since Plaintiffs can and have established monetary damages, they meet both elements for injury and causation. *See* Dkt. #51 at 6-7.

7
8

The NCSLTs' Motion for Summary Judgment must fail. The law of the case, Washington precedent regarding the CPA, and the facts presented by the Plaintiffs require the denial.

9

## II. RELEVANT FACTS

10
11

A.      **The Alleged Assignment of Student Loans to the NCSLTs, and the Attributes of the Referenced Schedules of Loans**

12
13

1.      **The alleged transfers of student loans from the originating banks to the NCSLTs are purportedly recorded in Pool Supplements specific to each transfer.**

14
15
16
17
18
19
20
21

The NCLSTs allege that the loans were transferred in two nearly "simultaneous transactions." Dkt. #369. The NCSLTs claim that in the first transaction, originating lenders transferred student loans to National Collegiate Funding ("NCF"). The NCSLTs allege that in the second transaction, NCF transferred bundles of loans they received from originating banks to the NCSLTs. They allege that the transfer from originating banks to NCF was done pursuant to individual "Pool Supplements" specific to each originating bank. *Id*. And they claim that the transfers of loans from NCF to the individual NCSLTs was done pursuant to Deposit and Sale Agreements specific to each NCSLT. *Id*.

22
23

2.      **Each Pool Supplement references an "attached schedule" of loans that were purportedly being sold by the originating lender to the NCF, but the schedules are not  attached.**

24
25

Each of the Pool Supplements that the Defendants claim represent the sale and transfer of Plaintiffs' student loans from the originating banks to NCF references a "schedule" of loans that

26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1  was allegedly "attached." *See* Dkt. # 238, Exs. 14-21; Dkt. #375, Ex. D.[2] The first page of each

2  Pool Supplement states that the student loans on the "attached" schedule is being sold by the

3  "Program Lender" to NCF. *Id.* The "Program Lender" is the original lender for that Pool

4  Supplement. For example, the Pool Supplement that was filed in *National Collegiate Student*

5  *Loan Trust 2005-3 v. Tony Kim and Il Kim*, King Co. Sup. Ct. No. 15-2-04016-1, states:

> [T]he Program Lender hereby transfers, sells, sets over and assigns to [NCF],
> upon the terms and conditions set forth in the Agreement (which are incorporated
> herein by reference with the same force and effect as if set forth in full herein),
> each student loan set forth on the attached <u>Schedule 1</u> (the "<u>Transferred Bank One</u>
> <u>Loans</u>") ….

Dkt. #238, Ex. 19 at P&F 1996.[3] The last page of that Pool Supplement has the signature of a

Bank One, N.A. representative. *Id.* at P&F 1199. "Schedule 1" is not attached to the Pool

Supplement. On another Pool Supplement, this one associated with the 2006-3 Trust, the

language is substantially the same; however, it references a "Schedule 1," which purportedly

contains the "Transferred Bank of America Loans." Dkt. #238, Ex. 14 at P&F 0148-152.[4] But

there is no list, or "schedule," of loans attached to this Pool Supplement.

> **3.    The Pool Supplements provide information on the attributes of the alleged schedules.**

While the alleged "schedules" of loans that the originating banks agreed to sell are not

attached to the individual Pool Supplements, the Pool Supplements provide details regarding the

---

[2] The Pool Supplements produced by P&F, which are attached to the Declaration of Guy Beckett filed in support of Plaintiffs' Motion for Class Certification (Dkt. #238), were attached to the Affidavits of TSI employees Brian Jackson and Dudley Turner that were filed in Washington state courts to obtain default judgments against the Plaintiffs. The individual Pool Supplements attached to the exhibits are Ex. 14 at P&F 0148-52 (2006-3), Ex. 15 at P&F 0318-22 (2006-3), Ex. 16 at P&F 0478-81 (2004-2), Ex. 17 at P&F 1197-99 (2004-2), Ex. 18 at P&F 1594-96 (2005-2), Ex. 19 at 1996-2000 (2005-3), Ex. 20 at 2388-91 (2006-1), and Ex. 21 at 2818-22 (2007-4). The copies produced by P&F are in some instances different than the copies that were produced by TSI and attached to the Declaration of Bradley Luke in Support of Motion for Summary Judgment (Dkt. #375). For example, the Pool Supplement for the 2006-3 Trust that is attached to the NCSLT's Luke Declaration appears to have been printed from the SEC's website on August 22, 2011, whereas the Pool Supplement for the 2006-3 Trust attached to the Affidavit of Brian Jackson does not appear to have been printed from the SEC website. *Compare* Dkt. #375, Ex. D-5, *with* Dkt. #238, Ex. 15 (see footer).
[3] ECF Dkt. #238-8.
[4] ECF Dkt. #238-3.

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1  attributes of the "schedules." For example, the Pool Supplement filed in the collection case

2  brought by the 2005-3 Trust against Plaintiffs Anthony and Il Kim states that the loans that the

3  NCSLTs allege were sold to that trust were sold on a date certain, October 12, 2005. Dkt. #238,

4  Ex. 19 at 1996. The loans purportedly sold were purportedly listed in "Schedule 1." This

5  "Schedule 1" purportedly included a list of loans from a single bank, Bank One. *See id*.

6  (describing Schedule 2 as the "Transferred Bank One Loans"). The Pool Supplement was signed

7  on the same date certain as the purported sale date of the Schedule shown on the first page of the

8  Pool Supplement. *See* P&F 1999 ("the parties have caused this Supplement to be executed as of

9  the date set forth above").

10        The transfer process described by the Defendants and as purportedly evidenced in the

11  Pool Supplements is illustrated by the following diagram:



See Dkt. #369.

    **B.     The NCSLTs, TSI, P&F and Piles of Affidavits With Documents From
             Somewhere**

        **1.     Relationship of the Parties.**

        As the NCSLTs state, they have no employees and "act exclusively through third parties

    pursuant to servicing agreements, custodial agreements, trust agreements, administration

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1  agreement, and others." Dkt. #369. TSI is the NCLSTs' agent to service student loans in default,

2  and takes actions with the express authority of the NCSLTs. Dkt. #375 at ¶ 3; Dkt. #369 at 26.

3         What actions TSI must, can and cannot take on behalf of the NCSLTs is described in the

4  "Default Prevention and Collection Services Agreement" to which TSI is a party ("Default

5  Servicing Agreement"). Dkt. #373 at ¶ 5; Dkt. 375 at 161. The relationship between the NCSLTs

6  and TSI is so close that TSI's employee, Bradley Luke, acted as the NCSLTs' designated

7  representative for the Plaintiffs' Fed. R. Civ. P. 30(b)(6) deposition of the NCSLTs. *See* Leonard

8  Decl. at ¶ 3.  P&F represents the NCSLTs in debt collection litigation and collects on their behalf

9  both in and outside of litigation. *See* Dkt. #308 at 4. Pursuant to its obligations to the NCSLTs,

10  TSI identifies to P&F the NCSLT accounts P&F sues and collects upon. Dkt. #375, Ex. A at

11  107-108. P&F is audited by its client and it makes collection calls and sends collection letters on

12  the NCSLTs' accounts it is assigned to collect. Dkt. #309, Ex. 2 at 176:23-177:20. P&F's actions

13  are carefully controlled by the NCSLTs and their managing agents, and P&F's operating

14  procedures on NCSLT accounts are dictated and directed by TSI. *See* Dkt. #261-1 at 1 (Attorney

15  Network Service Agreement between TSI and P&F, requiring P&F to comply with TSI's

16  "Attorney Network Standard Operating Procedure"); Dkt. #375 at 107-108. P&F sued each of

17  the Plaintiffs on behalf of individual NCSLTs. Dkt. #284 at 2-3.

### 2.   Forty affidavits a day with information and documents from somewhere.

18
19
20         The NCSLTs sued consumers like the Plaintiffs, whose student loans they allege they

21  own. The NCSLTs use form affidavits signed in bulk by TSI employees who are  called "Legal

22  Case Managers/Legal Account Specialists" ("LCMs") to obtain default judgments in many of the

23  lawsuits filed against borrowers. Dkt. #240 (Declaration of James Cummins) at ¶ 6. These form

24  affidavits are referred to as "Generic Affidavits" by LCMs. Dkt. #240 at ¶ 7-8.

25         TSI LCMs, like James Cummins, Brian Jackson, and Dudley Turner, signed stacks of

26  affidavits every day. Mr. Cummins testified that each day he and other LCMs would receive a

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 6
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1   stack of Generic Affidavits that had exhibits attached to them. *Id*. 9. This testimony was

2   confirmed by the Defendants. Leonard Decl. Ex. 1 (TSI 30(b)(6) Luke Dep. 12/16/2021) at

3   209:1-7. LCMs could not change the information in the Generic Affidavits, and the Generic

4   Affidavits were provided to them only in paper form. TSI 30(b)(6) Luke Dep. (12/16/2021) at

5   201:10-13. Mr. Cummins stated that he could—and did—review and sign up to 40 affidavits a

6   day. Dkt. #240 at ¶8.

7          The LCMs did not know the origins of the information contained in the Generic

8   Affidavits, the origins of the documents attached to the Generic Affidavits, or the origins of the

9   information contained in TSI's computerized loan record collection system. The LCMs did not

10  retrieve the exhibits attached to the Generic Affidavits; rather, the exhibits were affixed to the

11  paper copies of the Generic Affidavits that were delivered to the LCMs to sign. Leonard Decl.

12  Ex. 1 (12/16/2021 Luke Dep.) at 208:23-209:7. Nor did LCMs populate the information

13  contained in the Generic Affidavits. *Id*. Mr. Cummins testified that as a regular and usual

14  practice, TSI affiants did not review the "schedules for the borrower's loan prior to executing the

15  Generic Affidavits, and Affiants lack personal knowledge of the representations made in the

16  Generic Affidavits." Dkt. #240 at ¶12.

17         TSI's computerized record system for loan account information was "CRS." *Id*. at 49:9-

18  50:10. The NCSLTs claim that the information in CRS was obtained from AES[5] and could be

19  updated but not deleted by TSI employees. *Id*. at 50:14-53:21. Mr. Cummins testified that he

20  "not have personal knowledge regarding how AES obtained copies of the documents in its

21  system or how they were maintained in the AES system." Dkt. #240 at ¶10. He testified that TSI

22  did not provide LCMs any "training explaining where the records held by TSI and AES came

23  from or how they were kept." *Id*. He further testified that TSI's trial witness preparation training

24

25

26  ───────────────
    [5] AES is also a servicer for loans purportedly owned by NCSLTs, but its servicing responsibilities are provided only
    with respect to loans not in default. TSI services NCSLT loans in default. *See generally,* Dkt. #240.

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

did not include any instruction on "the accuracy of the records, or how the pre-default servicer, AES, interacted with the borrowers." *Id*. at ¶21.

**C.      Collection against the Plaintiffs – Default Judgments, Voluntary Dismissals, Non-Negotiable Instruments and Collection Outside Litigation**

**1.      Default Judgments were taken against the Plaintiffs, then vacated, and then the lawsuits were voluntarily dismissed.**

As they did against thousands of other consumers, the Defendants filed lawsuits against the Plaintiffs and obtained default judgments. In support of the Motions for Default filed against the Plaintiffs, the Defendants filed Affidavits and Verifications of Account signed by TSI employees. Dkt. #238, Ex. 14-21. The NCSLTs used affidavits signed by Dudley Turner and Brian Jackson to obtain judgments against the Plaintiffs. *See* Dkt. # 238, Exs. 14-21.[6] The affidavits signed by Mr. Turner and Mr. Jackson were the same form affidavits all LCMs reviewed and signed, which the LCM's referred to as "Generic Affidavits." *See* Dkt. # 238, Exs. 14-24; Leonard Decl. Ex. 1 (NCSLT 30(b)(6) Luke Dep. 12/16/2021) at 186:16-187:10. Mr. Turner and Mr. Jackson testified in the Generic Affidavits that they were "competent to testify to the matters stated" in them. *See e.g.* Dkt. #238, Ex. 16 at P&F 0469; Dkt. #238, Ex. 15 at P&F 0305.[7] In the Generic Affidavits he signed, Mr. Turner testified that he had "personal knowledge of the record management practices and procedures of Plaintiff and the practices and procedures Plaintiff requires of its loan servicers and other agents." Dkt. #238, Ex. 16.[8] He also testified in the Generic Affidavits that loan account records are "from information transmitted from a person with knowledge of said event, by or from information transmitted by a person with knowledge of the accounts or events described within the business record." *See id*.

---

[6] P&F 0134-37, 0304-07, 0469-71, 1172-74, 1569-71, 1971-73, 2359-61, and 2794-96.
[7] Affidavit and Verification of Account signed by Dudley Turner, *NCSLT 2004-2 v. Esther Hoffman*, King Co. Sup. Ct. No. 16-2-15162-31; Affidavit and Verification of Account signed by Brian Jackson, *NCSLT 2006-3 v. Sarah Douglass*, King Co. Sup. Ct. No. 17-2-10604-6 KNT.
[8] P&F 469-70

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1    Mr. Jackson similarly testified in Generic Affidavits, "I am further competent and

2    authorized to testify regarding this educational loan through personal knowledge of the business

3    records maintained by TSI … including electronic data provided to TSI related to the

4    Defendant's educational loan, and the business records attached to this affidavit." Dkt. #238, Ex.

5    15.[9]

6    The Generic Affidavits that were filed in the lawsuits brought against the Plaintiffs all

7    had attached "Pool Supplements" and "Deposit & Sale Agreements." Dkt. #238, Exs. 14-21.

8    None of the Affidavits had attached the "schedule" of individual loans referenced in the Pool

9    Supplement. *See id.*

10   The default judgments against Ms. Douglass and the Kims were vacated when those

11   Plaintiffs hired counsel and contested the default judgments.[10] *See* Dkt. #233, Exs. 3-7; Dkt. 350,

12   Exs. 1, 2.[11] When the NCSLTs' proof of assignment of the Douglass and Kim loans was

13   questioned, the NCSLTs voluntarily dismissed their claims or let the lawsuits against the

14   Plaintiffs be dismissed for want of prosecution. Dkt. #350, Ex. 3. The NCSLTs walked away

15   without explanation, stating only that they did so "as a matter of right." *Id.*, Ex. 3.1.

16           **2.       The Non-Negotiable Instruments:**

17   Attached to the Affidavits of Mr. Jackson and Mr. Turner that were filed in state court

18   cases to obtain default judgments against the Plaintiffs were documents titled "Loan

19   Request/Credit Agreement-Signature Page." *See, e.g.,* Dkt. #238, Ex. 17 at P&F 1177. These

20   documents explicitly state at their top that they are "Non-Negotiable Credit Agreements." *See id.*

21   They also state in the fine print that they are not governed by Article 3 of the Uniform

22   Commercial Code. *Id.*[12]

23

24   _____

[9] P&F 0305.

25   [10] A default judgment was also obtained against Ms. Hoffman using an affidavit signed by a TSI employee. She has not moved to vacate the default judgment against her.

26   [11] ECF Dkt. #350-1

[12] UCC Article 3 is the section titled "Negotiable Instruments." *See* RCW Chapter 62A.3, *et seq.*

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 9
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> **3.    Plaintiffs incurred expenses investigating the NCSLTs' right to collect on their loans, and paid collection fees, court costs and incidental expenses.**

All of the Plaintiffs have incurred expenses as a result of the Defendants' attempts to collect from them. In 2014, P&F contacted Ms. Hoffman and told her she owed a debt to "National Collegiate Trust." Dkt. #311 at ¶4. She did not know who "National Collegiate Trust" was but began making payments because P&F threatened to sue her if she did not pay. *Id*. Ms. Hoffman made numerous payments to P&F between March 2014 and February 2016 to avoid being sued. *Id*. Ex. C. Each time she made a payment, Ms. Hoffman was charged a fee of $8.25. *Id*. Sometime after February 2016, Ms. Hoffman learned that NCSLT 2004-2 had obtained a judgment against her and was attempting to garnish her bank accounts. *Id*. One of the accounts it attempted to garnish contained money that was held for the benefit of Ms. Hoffman's disabled brother. *Id*. at ¶5. Ms. Hoffman spent time and incurred expenses to make sure that the funds held for the benefit of her brother were not garnished. *Id*. Fearing the garnishment, Ms. Hoffman retained attorney Sam Leonard to investigate the debt and the Defendants' claims that NCSLT 2004-2 owned her loan. *Id*. at ¶6. Ms. Hoffman has paid Mr. Leonard $1,500 for his legal services and incurred expenses traveling to Mr. Leonard's office in downtown Seattle. *Id*. at ¶8. Mr. Leonard's billing records show that much of the time Mr. Leonard spent on Mr. Hoffman's case was communicating with Defendant Matthew Cheung and investigating whether the NCSLTs had the right to collect from Ms. Hoffman. *Id*. Ex. B

When Ms. Douglass learned that the Defendants had obtained two default judgments against her, she took time off from work and paid bus fare to attend a legal clinic at the King County Superior Court in downtown Seattle to learn what her options were to respond to the judgments. Dkt. #310 at ¶1. While at the legal clinic, Ms. Douglass spent money for photocopies of pleadings she provided to the attorney she retained to review and investigate the NCSLTs' claims against her. *Id*. at ¶2. She also took time off from work and paid bus fare to consult with her attorney at Northwest Consumer Law Center. *Id*. at ¶3.

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4
5
6
7
8
9
10

Initially, the Kim family paid P&F to avoid being sued. Dkt. #239 at 3, ¶¶8-9. Anthony

Kim paid P&F $50 a month for four months in 2015. *Id*. In June 2015, Anthony Kim's bank

account was garnished for $1,035.32 and his wages were garnished for $1,146.76. *Id*. at 3, ¶10.

In August 2015, wage garnishments were processed against Il Kim and Daria Kim. *Id*. at 3, ¶13,

Ex. C. The Kims discovered that the NCSLTs had obtained five default judgments against them,

and retained Attorney Christina Henry to investigate the Defendants' claims that the NCSLTs

owned their loans and the default judgments for those loans. *Id*. at 4, ¶17. In 2015, the NCSLTs

released the funds they had garnished from Il Kim. *Id*. The money garnished from Anthony Kim

was not released until September 2018, three years after the garnishment and after this lawsuit

was filed. *Id*.

11

### 4.    To date, Plaintiffs still do not know who owns their loans.

12
13
14
15

To this day, none of the Plaintiffs know whether the NCSLTs own their student loans.

*See* Dkt. #311 at 2, ¶7; Leonard Decl. Ex. 2 (Douglass Dep.) at 111:15-112:7; Leonard Decl. Ex.

3 (Hoffman Dep.) at 129:13-18, 131:11-16, 142:15-19, 148:14-23; Leonard Decl. Ex. 4 (T.Kim

Dep.) at 234:23-235:1; Leonard Decl. Ex. 5 (I.Kim Dep.) at 73:7-24.

16

### D.    This Lawsuit and the Records and Testimony Obtained

17
18
19

### 1.    The Consumer Financial Protection Bureau found that Defendants were using false and misleading affidavits to obtain judgments against consumers and lack proof of assignment, and TSI did not dispute those findings.

20
21
22
23
24
25

On September 15, 2017, TSI entered into a Consent Order with the Consumer Financial

Protection Bureau ("CFPB"). Dkt. #61, Ex. A ("TSI Consent Order"). The TSI Consent Order

contains the findings of the CFPB from an investigation into the NCSLTs' and TSI's collection

practices on the student loans Defendants allege the NCSLTs own. Dkt. #61, Ex. A at 5-12. The

Consent Order was the result of the CFPB's investigation into the collection practices of all

fifteen of the National Collegiate Student Loan Trusts, not just the NCSLT Defendants, but the

26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 11
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2

NCSLT Defendants were indeed a subject of the investigation and the resulting TSI Consent Order. Dkt. # 61, Ex. A at 1-2.

3
4
5
6
7

In addition to its factual findings, the CFPB found that TSI had violated the Consumer Financial Protection Act ("CFPA"). TSI did not deny the factual or legal findings of the CFPB contained in the Consent Order, Dkt. #61, Ex. B, and waived its right to object to the filing of the proposed findings of fact and conclusions of law in the Consent Order and to its right to seek review of the filed Consent Order. Dkt. #61, Ex. B at 3.

8
9
10
11
12
13
14
15
16
17
18
19
20

The CFPB found that TSI--acting as agent for the NCSLTs—used false and misleading affidavits and testimony to obtain judgments on accounts allegedly owned by the NCSLTs. *Id*. at 6-8. The CFPB also found that the NCSLTs—through their agent TSI and their attorneys—filed collection lawsuits against borrowers whose loans it purportedly owned without the intent or ability to prove their claims if they were contested. *Id*. at 8-9. With respect to the affidavits signed by TSI LCMs that were filed to obtain judgments, the CFPB found that the affiants misrepresented that they had personal knowledge of account records and the alleged debt, misrepresented that they had personal knowledge of the chain of assignment records evidencing the NCSLTs' purported ownership of the loans, and misrepresented that they had personal knowledge of the record management practices and procedures of the NCSLTs. *Id*. at ¶¶18-24, 33-34. The CFPB also specifically found that Defendants lacked "documentation of a complete chain of assignment evidencing that the subject loan was transferred to and owned by the [NCSLT]." *Id*. at ¶ 26.

21
22

        **2.**      **Plaintiffs obtained further evidence that the Defendants do not have proof of assignment or control over who can access AES's records.**

23
24
25
26

Through discovery, Plaintiffs obtained additional evidence that there is no proof of assignment of the loans from the originating lenders to NCF. Plaintiffs obtained the 2015 "Servicing Performance Review of Pennsylvania Higher Education Assistance Agency" conducted by Boston Portfolio Advisors, Inc. ("BPA"). Dkt. #350, Ex. 5 ("AES Audit").

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 12
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1   Plaintiffs learned during the deposition of the BPA employee that managed the AES Audit,

2   Thomas Glanfield, that BPA's auditors reviewed a statistically significant number of NCSLT

3   accounts across all of the NCSLTs.[13] Leonard Decl. Ex. 6 (Deposition of Thomas Glanfield) at

4   32:5-33:2. Upon the auditors' review of the statistically significant sample, they observed:

5   "Assignments were not present in any of the [NCSLT] files provided by [AES]." AES Audit at

6   17; Leonard Decl., Ex. 6 (Glanfield Dep.) at 53:23-55:2, 56:2-13). Auditors also reported that

7   AES employees "did not indicate if an Assignment existed elsewhere" and concluded that

8   "[ba]sed on representations made by PHEAA, it is likely that the Assignments do not exist." Dkt.

9   #350, Ex. 5 at 17. Mr. Glanfield confirmed that this observation was based on the records the

10  auditors reviewed, verbal statements from AES employees, and observations made while onsite.

11  Leonard Decl. Ex. 6 at 53:13-56:13. The AES Audit also revealed that AES did not record the

12  names or employer of all individuals who had access to its computerized records system,

13  "COMPASS." *See* Dkt. 350, Ex. 5 at 28 (showing that 67 of 178 individuals with access to

14  COMPASS could not be identified by name or company). A statement by PHEAA regarding the

15  AES Audit and system access revealed that PHEAA clients with no relation to the NCSLTs had

16  access to NCSLTs' files in the COMPASS record system and 83 users had their access revoked.

17  Leonard Decl. Ex. 8, (AES Audit, Appendix C) at 3.

18

19  [13] Due to delays not caused by any party, the parties agreed to depose BPA's Fed. R. Civ. P. 30(b)(6) designee
    regarding the AES Audit after the deadline to disclose experts. Dkt. #293 at 4. After the Court entered an Order
20  granting leave to conduct the Fed. R. Civ. P. 30(b)(6) deposition of BPA after the discovery deadline (Dkt. #295),
    BPA disclosed that its President Mr. Glanfield, would be its designated representative for the deposition, but he
21  would not testify unless he was paid his normal expert witness fee, which Plaintiffs agreed to pay. Leonard Decl. at
    ¶ 9. At his deposition, Mr. Glanfield disclosed that he had twice been called as an expert witness in legal
22  proceedings. He also disclosed that one of the services BPA provides is the development and validation of
    securitization cash flows and that BPA and he personally have experience in the field of securitization. Mr.
23  Glanfield also has a Master's Degree in business and finance. Leonard Decl, Ex. 6 at 9:6-10:23, 100:11-101:17. The
    AES Audit was not the first audit of a student loan servicer conducted by BPA. *Id.* 10:18-10:23, 30:15-31:14. BPA
24  had previously been retained to perform a servicer audit of Sallie Mae. During his deposition, Mr. Glanfield testified
    regarding the information and conclusions contained in the AES Audit, which he oversaw. He also testified about
25  the bases for the conclusions expressed in the AES Audit and how the sample of loan accounts reviewed was
    determined to be statistically significant. *See* Leonard Decl. 6 at 8:16-16:25, 56:13. After taking Mr. Glanfield's
26  deposition, Plaintiffs notified Defendants that they may call Mr. Glanfield as a neutral expert. *Id.* at ¶ 11 and Ex. 7.
    Plaintiffs did not retain and have not retained Mr. Glanfield to testify on behalf of Plaintiffs. Leonard Decl. at ¶ 11.

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 13
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2

### 3. Experts dispute whether the Excel spreadsheets the Defendants claim are schedules are authentic, and the spreadsheets do not match their description in the Pool Supplements.

3

4

In discovery, Plaintiffs requested that TSI and the NCSLTs produce copies of the six

5

"schedules" referenced in the Pool Supplements filed in the collection lawsuits against the

Plaintiffs. *See* Dkt. #349 at 3, n.4-5.[14] Plaintiffs also requested that Defendants produce the

6

metadata associated with the "schedules" Defendants produced. Dkt. #350, Ex. 6 at 5, Ex. 7.1-

7

7.6 at 6. The NCSLTs produced six redacted Excel spreadsheets they claim are the "schedules":

8

(1) Bank of America Final Roster.xls; (2) 2005-2 Lender Payout Summary - FMC Master.xls; (3)

9

LENDER_ROSTERS_ ALL IN.xls; (4) BANK_ONE_RECON_ SUMMARY - Revised.xls; (5)

10

Bank_of_ America_Post_Sale.xls; and (6) 20074_ Lender Report - Post Sale-BANK OF

AMERICA.xls. Dkt. #381 at 2. TSI produced six redacted Excel spreadsheet with the same

11

names. *Id*. The Plaintiffs also requested that their digital forensics expert, Mike Andrew, be

12

permitted to remotely inspect the metadata and MD5 hash values of unredacted versions of the

13

spreadsheets. *Id*. Mr. Andrew compared the metadata and MD5 hash values Plaintiffs were

14

provided by the Defendants and those of the spreadsheets he remotely inspected. He determined

15

that the hash values were not consistent across the spreadsheets with the same name. He

16

concluded that Defendants had produced forensically different versions of the Excel

17

spreadsheets. Dkt. #329-3 at 2-3; *see also* Dkt. #381 at 2. Mr. Andrew also concluded, based on

18

the metadata, that the spreadsheets produced could not be the "schedules" referenced in the Pool

19

Supplements on the date the Pool Supplements were executed. *Id*. Defendants moved to exclude

20

Mr. Andrew's testimony. This Court denied Defendants' motion to the extent Mr. Andrew's

21

opinions relate to the hash values. The Court explained that Mr. Andrew's examination and

22

opinion "raised questions about the authenticity of the spreadsheets." Dkt. #381 at 5-6. The

23

24

---

[14] *Citing* Dkt. #350, Ex. 6 at 15-16 (Plaintiffs' First RFPS to TSI), Ex. 7.1 at 9, 13 (Plaintiffs' First ROGS and RFPs
to NCSLT 2004-2), Ex. 7.2 at 9, 13 (ROGs and RFPs to NCSLT 2005-2); Ex. 7.3 at 9, 13 (ROGs and RFPs to NCSLT
2005-3), Ex. 7.4 at 9, 13 (ROGs and RFPs to NCSLT 2006-1), Ex. 7.5 at 9, 13 (ROGs and RFPs to NCSLT 2006-3),
and Ex. 7.6 at 9, 13 (ROGs and RFPs to NCSLT 2007-4).

25
26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1

2

3

Court deferred until trial a ruling on Mr. Andrew's opinion that the metadata shows that "'there is no proof for any direct association' between the Excel spreadsheets and the corresponding Pool Supplements." *Id* at 6-8.

4

5

6

7

8

9

10

11

12

13

In addition to the issues with the metadata and hash values that do not match, there are other problems with the spreadsheets. For example, while each Pool Supplement relates to a single transfer from an originating bank to NCF, some of the schedules contain a list of loans from multiple banks. *See* Dkt. #350, Ex. 10. The spreadsheet LENDER_ROSTER_ALL_IN.xls contains what are alleged to be loans from numerous banks. *Id*. The NCSLTs' representations in discovery are that this spreadsheet is the schedule of loans referenced in the Pool Supplement filed in *NCSLT 2005-3 v. Tony Kim and Il Kim*, King Co. Sup. Ct. No. 15-2-04016-1. *Compare* Leonard Decl., Ex. 10 (Email of Trust to Loan), *with* Leonard Decl., Ex. 11 (metadata extract for NCSLT spreadsheets). That Pool Supplement is electronically signed and agreed to by only Bank One, not multiple banks. Dkt. #238, Ex. 19 at P&F 1996-1999.

14

15

16

17

18

Additionally, none of the Excel spreadsheets were titled "schedule" or "Transferred Loans" as identified in the Pool Supplements. Furthermore, while the Defendants claim to have kept records of all the transfers, including the original transfer files, the Pool Supplements attached to Mr. Turner' and Mr. Jackson's affidavits were, in many instances, obtained from the SEC's website in 2011. *See* Dkt. #238, Exs. 16, 17, 19, 20.

19

**III.  EVIDENCE RELIED UPON**

20

21

22

Plaintiffs' Response to Trust Defendants' Motion for Summary Judgment relies upon the Declaration of Sam Leonard in Support of Plaintiffs' Response, and the documents and records on file with the Court.

23

24

25

26

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15 (Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1

## IV.  ARGUMENT

2

### A.    Summary Judgment Standard

3

"A party is entitled to summary judgment if the 'movant shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of*

5

*Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R.

6

Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine

7

issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "Where

8

the moving party meets that burden, the burden then shifts to the non-moving party to designate

9

specific facts demonstrating the existence of genuine issues for trial." *Id*. "[T]he non-moving

10

party must come forth with evidence from which a jury could reasonably render a verdict in the

11

non-moving party's favor." *Id*. Where the defendant is the moving party, its motion must be

12

denied where it fails to show the absence of a genuine dispute of fact. *Roman v. Jan-Pro*

13

*Franchising Int'l, Inc.*, No. C 16-05961 WHA, 2022 U.S. Dist. LEXIS 137190, at *65 (N.D. Cal.

14

Aug. 2, 2022).

15

"The court must view the evidence in the light most favorable to the nonmovant and draw

16

all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. Here,

17

there are issues of fact that compel the denial of the NCSLTs' Motion for Summary Judgment.

18

### B.    The Court Should Not Consider the Declaration of Jennifer Wilbert in Deciding the Summary Judgment Motion

19

Evidence submitted in support of a motion for summary judgment must be admissible

20

under the standard articulated in Fed. R. Civ. P. 56(c). *See Keenan v. Hall,* 83 F.3d 1083, 1090

21

n.1 (9th Cir. 1996); *Anheuser-Busch, Inc. v. Nat'l Beverage Distribs.,* 69 F.3d 337, 345 n.4 (9th

22

Cir. 1995). Rule 56(c)(4) directs that affidavits or declarations in support of a summary judgment

23

motion must be made on personal knowledge and shall set forth such facts as would be

24

admissible in evidence and show affirmatively that the affiant is competent to testify to the

25

26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 16
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

matters stated in the affidavit or declaration. *Conner v. Sakai,* 15 F.3d 1463, 1470 (9th Cir. 1993), *rev'd on other grounds sub nom. Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995).

The Declaration of Jennifer Wilbert submitted by the NCSLTs in support of their motion is inadmissible hearsay, and the Court should not consider any of it when ruling on the motion. As applicable here, "'[h]earsay' means a statement that … a party offers in evidence to prove the truth of the matter asserted in the statement." Hearsay is inadmissible unless one of the applicable exceptions is present. Fed. R. Evid. 802. None of the exceptions apply to Ms. Wilbert's declaration; the Court should therefore not consider it in deciding the motion.

Ms. Wilbert readily admits that she obtained the information in her declaration "based on [her] personal knowledge and through [her] discussions with other PHEAA employees." Dkt. #372 at 121-22. To the extent she obtained the information from her discussions with other unidentified PHEAA employees, that information is inadmissible hearsay; because there is no distinction in the declaration between information of which Ms. Wilbert had personal knowledge and that which is based on hearsay discussions "with other PHEAA employees," and no way to parse which information is which, the testimony in the entire declaration must be disregarded as inadmissible hearsay.

Indeed, much of the content of Ms. Wilbert's testimony is about what unattached documents say and/or what PHEAA's COMPASS servicing system "reflects" or "shows." In other words, Ms. Wilbert is testifying about the information she can see on her computer screen, without providing the Court and the parties copies of those documents or screen shots. *See, e.g.,* Wilbert Decl. at ¶¶ 8, 9, 12, 13, 19, 21, 22, 23, 24, 25, 27, 29, 30, 31, 32, 33, 38, 40, 42, 43, 44, 45, 47, 48, 49, 50, 52, 53, 54, 55, 57, 58, 59, 60, 61, 62, 63, 64, and 65. This is the classic definition of inadmissible hearsay. Fed. R. Evid. 801, 802. The NCSLTs repeatedly rely on this inadmissible hearsay in their motion. *See, e.g.,* Dkt. #369 at 4:14-15 ("PHEAA's COMPASS servicing system shows that PHEAA began servicing Hoffman's B of A loan on August 4, 2004

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 17
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

….”); 4:23-5:2 (“PHEAA’s COMPASS servicing system shows PHEAA began servicing the first of Douglass’ BofA Loans … on December 21, 2005 ….”); 5:16-17 (PHEAA’s COMPASS servicing system shows that PHEAA serviced four JPMorgan Loans and two BofA Loans associated with Kim.”); 7:21-23 (“Contemporaneous with the closing of each securitization, PHEAA recorded on its COMPASS system of record the change in ownership of the loans from the originating bank to NCF to the Trusts.”). The Court should not consider the inadmissible hearsay or NCSLTs’ arguments relying on it when ruling on the NCSLTs’ motion.

And while Ms. Wilbert states that her declaration is “being made … for the purpose of authenticating certain business records of PHEAA,” Dkt. #372 at 2:6-7, she fails to adduce evidence in her declaration that would authorize her to authenticate documents pursuant to a recognized hearsay exception. Fed. R. Evid. 803(6) states the hearsay exception for business records and what must be shown in order for the exception to apply. Records of a regularly conducted activity, or of an “act, event, condition, opinion, or diagnosis” may be authenticated pursuant to Rule 803(6) if:

> (A)   the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C)   making the record was a regular practice of that activity;
> (D)   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E)   the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Ms. Wilbert failed to show that the documents and records which she seeks to introduce into evidence (1) were made at or near the time by, or from information transmitted by, someone with knowledge; (2) were kept in the course of a regularly conducted activity of PHEAA; (3) were made in the regular practice of that activity; or (4) that she was PHEAA’s records custodian

PLAINTIFFS’ RESPONSE TO TRUST
DEFENDANTS’ MOTION FOR
SUMMARY JUDGMENT - 18
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2   or was a qualified witness to present such testimony.[15] Because Ms. Wilbert fails to provide
3   evidence that authorizes the Court to permit her to authenticate documents under Fed. R. Evid.
4   803(6), they are inadmissible and there is no basis for the Court to consider them or the
5   NCSLTs' arguments based on the inadmissible documents or testimony about them. The
6   documents and Ms. Wilbert's testimony about them should not be considered by the Court in
7   ruling on the NCSLTs' motion. *Clark v. Los Angeles,* 650 F.2d 1033, 1037 (9th Cir. 1981).
8   *Accord, United States v. Ordonez,* 737 F.2d 793, 799 (9th Cir. 1984) (where *no evidence* was
9   offered by *any person* that records were kept by persons having knowledge of the facts recorded,
10  that the entries were made at or near the time of the transaction, or that the persons who made the
11  entries were truthful and had a clear recollection of the facts, ledger entries were inadmissible
12  because there was no knowledgeable individual present at trial who could be subjected to
    meaningful cross-examination) (emphasis in original).

13          **C.      The CPA is a Broad Remedial Consumer Protection Statute That Must Be
14                  Liberally Construed Such That Its Beneficial Purpose May Be Served**

15          The purpose of the CPA is "to complement the body of federal law governing restraints
16  on trade, unfair competition, and unfair, deceptive and fraudulent acts or practices in order to
17  protect the public and foster fair and honest competition." RCW 19.86.920. The CPA prohibits
18  unfair or deceptive acts or practices in trade or commerce. RCW 19.86.020. It also provides a
19  private right of action to consumers injured by unfair or deceptive conduct. RCW 19.86.090.

20          A "claim under the Washington CPA may be predicated upon a per se violation of
21  statute, an act or practice that has the capacity to deceive substantial portions of the public, or an
22  unfair or deceptive act or practice not regulated by statute but in violation of public interest."
23  *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). To prevail on a claim
24  brought under the CPA, a person must prove (1) an unfair or deceptive act or practice (2)

25
26  _____
    [15] The NCSLTs also claim that Ms. Wilbert "oversees [PHEAA's] servicing of the [NCSLTs'] student loan
    portfolio," *see* Dkt. #369 at 22:16-17, but Ms. Wilbert provides no testimony as to that claim, and there is no other
    evidence supporting that representation.

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 19
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

occurring in trade or commerce that (3) affects the public interest (4) and caused the person (5) injury in their business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 784, 719 P.2d 531 (1986).

The CPA must be "liberally construed that its beneficial purposes may be served." RCW 19.86.920; *Panag*, 166 Wn.2d at 37; *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d 163 (1984) Thus, even those unfair or deceptive practices not expressly prohibited under other laws can violate the CPA. *Panag,* 166 Wn.2d at 43. While the CPA acts as a mechanism for enforcing statutes that regulate debt collection, its regulation of debt collection is broader than those statutes. *Id.*

### D.    The NCSLTs Are Liable Under the CPA for the Actions of Their Agents, TSI and P&F

The NCSLTs do not dispute that they are liable for the acts of their agents, TSI and P&F. A principal is liable for the actions of its agent where the agent acts with actual authority. *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018) (citing Restatement (Third) of Agency § 7.04); *Jackson v. Harkey*, 41 Wn. App. 472, 480, 704 P.2d 687 (1985) (discussing principal liability under the CPA for the actions of its agents). A Plaintiff need only show that the principal had the right to control the agent's actions relative to the unfair conduct to establish the principal's own CPA liability for the actions of its agent. *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 183, 159 P.3d 10 (2007).

Here, the NCSLTs—acting through their managing agents—control the actions of TSI and P&F. TSI's actions are governed and controlled by the Default Servicing Agreement. Dkt. #369 at 2; Dkt. #373 at ¶ 5; Dkt. #375, Ex. A. P&F's actions are in turn controlled by TSI on behalf of the NCSLTs. "TSI enters into contracts with law firms, such as P&F to provide collection services for the NCSLTs." Dkt. #258 at 2 (Minute Order on Plaintiffs' Motion to Compel). Communications between TSI and P&F are protected under the attorney-client privilege because TSI is a speaking agent for the NCSLTs. *Id.* As P&F has argued, TSI is the

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 20
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

"functional employee" of the NCSLTs. *See* Dkt. #250 at 3, 6. And as TSI has previously stated, TSI "act[s] for and on behalf of the Trusts…regarding the collection of defaulted loans owed to the Trusts." Dkt. #249 at 10. There is no ambiguity: TSI and P&F are the NCSLTs' agents and the NCSLTs are therefore liable under the CPA for the actions of TSI and P&F that violate it.

Plaintiffs agree that the NCSLTs cannot be found liable under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. *See* 15 U.S.C. §1692a(6)(F). Hence, Plaintiffs have not pled and are not pursuing *per se* CPA claims against the NCSLTs. But, that does not alter the NCSLTs' liability for their agents' unlawful conduct under Plaintiffs' standalone CPA claims.

### E.   Defendants Engaged in Unfair and Deceptive Conduct When They Used False and Misleading Affidavits to Collect On Student Loans and Sought to Collect When Proof of Assignment is Missing or Never Existed

This Court and the Ninth Circuit have held that the allegations in the SAC support a finding that Plaintiffs have established the first three elements of their standalone CPA claims. Dkt. #51 at 2-3, 5; Dkt. #118 at 14. Plaintiffs have alleged that Defendants used false and misleading affidavits to collect on NCSLT accounts and continued to collect when the schedules proving assignment never existed or were lost. Dkt. #61 at ¶¶56-57, 80, 110, 121; *see also* Dkt. #380 at 2. There are issues of fact regarding both allegations that preclude summary judgment.

### 1.   The NCSLTs present no evidence that the Dudley Turner or Brian Jackson affidavits were not false or misleading.

The NCSLTs fail to address Plaintiffs' claims that the affidavits signed by Dudley Turner and Brian Jackson that Defendants used to collect against the Plaintiffs were unfair and/or deceptive. Because the NCSLTs have failed to meet their initial burden of showing that there are no issues of material fact, their motion fails as to the first element of these CPA claims. *See James v. Dependency Legal Grp.*, 253 F. Supp. 3d 1077, 1099 (S.D. Cal. 2015) (discussing the initial burden of a moving party on a motion for summary judgment seeking dismissal of a complaint.)

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 21
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4
5
6
7
8
9
10
11
12
13
14

    The NCSLTs make the blanket statement: "If the Trusts own the loans, the affidavits

claiming they owned them are truthful." Dkt. #369 at 2. Perhaps nothing filed in this case has so

perfectly encapsulated the error in the Defendants' thinking regarding the affidavits. Whether the

NCSLTs were assigned the loans is not determinative of whether the statements in the TSI LCM

affidavits were true; nor is it determinative of whether the Defendants violated the CPA. First,

the Defendants provide no testimony from Mr. Turner or Mr. Jackson that their Generic

Affidavits were true. Defendants provide no testimony from other LCMs that the Generic

Affidavits they signed were truthful. And nowhere in the entirety of their 40-page motion do the

NCSLTs even claim that Mr. Turner or Mr. Jackson had the personal knowledge they professed

to have in the Generic Affidavits. As such, the NCSLTs have not met their initial burden of

proving the absence of a genuine issue of material fact regarding Plaintiffs' claims that the

affidavits were false or misleading and therefore unfair and/or deceptive. The NCSLTs'

argument regarding whether Plaintiffs can establish the first element of their CPA claims

concerning the falsity of the Generic Affidavits must fail.

15
16

    **2.    Plaintiffs have presented significant evidence showing that Dudley
         Turner's and Brian Jackson's affidavits were false or misleading.**

17
18
19
20

    Even if the NCSLTs had met their initial burden on the first element of Plaintiffs'

private CPA claims regarding the affidavits, Plaintiffs have presented significant evidence

showing there are genuine issues of material fact. Where the veracity of an affidavit is in

question, summary judgment is not appropriate:

21
22
23
24
25
26

> Because the veracity of the witnesses who signed the affidavits on which Earp
> based his claim was at issue, the claim could not be adjudicated without an
> evidentiary hearing on this disputed issue of material fact. Summary judgment is
> an inappropriate vehicle for resolving claims that depend on credibility
> determinations. *See Williams v. Calderon*, 48 F. Supp. 2d 979, 989 (C.D. Cal.
> 1998) (noting in the context of a habeas claim "the Court is not to determine
> issues of credibility on a motion for summary judgment; instead, the truth of each
> party's affidavits is assumed"), *aff'd Williams*, 384 F.3d at 628; *see also United
> States v. Two Tracts of Land in Cascade County, Mont.*, 5 F.3d 1360, 1362 (9th
> Cir. 1993) (reversing and remanding summary judgment for live testimony where

1
2
3

the district court concluded on the basis of affidavits that the affiants were not credible); *Kreisner v. San Diego*, 988 F.2d 883, 900 n.1 ("Determinations of credibility are inappropriate for summary judgment."), *amended by* 1 F.3d 775 (9th Cir. 1993); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("Summary judgment is singularly inappropriate when credibility is at issue.").

4

*Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005) (citations and quotes in original).

5
6
7
8
9
10
11
12
13

Here, the veracity of the Generic Affidavits is directly at issue regarding the first element of Plaintiffs' CPA claims. *See, e.g.,* Dkt. #61 ¶¶ 155, 166-169, 184.a-d; *see also* Dkt. #380 at 2. There is substantial evidence that the Generic Affidavits used to obtain default judgments against the Plaintiffs were false and misleading. TSI's Generic Affidavits stated that Mr. Turner and Mr. Jackson were "records custodians" and had "personal knowledge" of the records attached to their affidavits and the facts contained therein. *See* Dkt. #232 (Plaintiffs' Motion for Class Certification) at 7; Dkt. #238 (Declaration of Guy W. Beckett in Support of Plaintiffs' Motion for Class Certification), Ex's 14-21 (P&F 0469-71, 1172-74, 1569-71, 1971-73, 2359-61, 2794-96). But these representations of fact in the Affidavits were untrue.

14
15
16
17
18
19
20
21
22
23
24
25
26

Mr. Turner testified that he did not even know what a "custodian of records" is. Dkt. #238, Ex. 25. Mr. Jackson testified that the term "custodian of records" sounded "vaguely familiar but I don't remember [what it is]. I can't explain it." *Id*., Ex. 26 at 38:8-11. Mr. Jackson could not recall how TSI maintained its business records or even what they were. *Id*. at 39:3-13. Mr. Cummins, who like Mr. Turner and Mr. Jackson was an LCM and signed Generic Affidavits to obtain default judgments against consumers, explained that as a matter of practice LCMs would be provided a stack of Generic Affidavits to sign, which they would whip through at up to 40 a day. LCMs were not educated on, and did not know, who attached the documents to the Generic Affidavits or who prepopulated them. LCMs could not change the information in the affidavits, which were provided in paper format, awaiting the LCMs' signatures. LCMs did not know who entered the data into the computerized loan records systems used at TSI and AES. Dkt. #240 at ¶¶ 6-10. As a matter of course, TSI affiants "did not review the schedule of the

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 23 (Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4
5
6

borrower's loan prior to executing the Generic Affidavits." Dkt. #240 at ¶12. Mr. Cummins admitted, "[a]ffiants lacked personal knowledge of the representations made in the Generic Affidavits." *Id*. When Mr. Cummins "complained to Bradley Luke regarding the issues with Generic Affidavits… nothing was done." *Id*. at ¶13. Accordingly, there is an issue of material fact regarding whether the statements of personal knowledge in the Generic Affidavits were false and/or misleading.

7
8

**3.    Issues of fact exist as to whether the NCSLTs possess the schedules showing assignment.**

9
10
11
12
13
14
15
16
17

Contrary to the NCSLTs' assertion, there is significant evidence that the NCSLTs' agent, TSI, misrepresented that the NCSLTs possess the schedules of loans they claim to own. The "schedules" Defendants produced in discovery cannot be authenticated. The Defendants continually repeat that the sales of the student loans the NCSLTs own were effectuated in two virtually "simultaneous transactions." *See e.g.* Dkt. #369 at 7; Dkt. #377 at 8. The first transaction, they claim, was the sale of student loans from originating banks to NCF pursuant to "individual Pool Supplements." *Id*. Under each Pool Supplement, the first transfer was between a single originating bank and NCF, and the loans transferred were listed on an "attached schedule." *See* Dkt. #238, Exs. 14-21.[16]

18
19
20
21
22
23

Defendants produced numerous Excel spreadsheets in response to Plaintiffs' discovery requests that sought the "schedules" referenced in the Pool Supplements. Plaintiffs had those schedules reviewed by their IT expert, Mr. Andrew, and he has concluded, *inter alia,* that (1) the authenticity of the Excel spreadsheets cannot be trusted, and (2) the spreadsheets cannot be the schedules referenced in the Pool Supplements. Dkt. #380 at 2-6. This Court has already held that Mr. Andrew's declaration calls into question the authenticity of the spreadsheets. Dkt. #381 at 5-

24
25
26

---

[16] *See* Ex. 14 at P&F 0148-52 (2006-3), Ex. 15 at P&F 0318-22 (2006-3), Ex. 16 at P&F 0478-81 (2004-2), Ex. 17 at P&F 1197-99, Ex. 18 at P&F 1594-96 (2005-2), Ex. 19 at 1996-2000 (2005-3), Ex. 20 at 2388-91 (2006-1), and Ex. 21 at 2818-22 (2007-4).

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 24 (Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

6. Therefore, there is an issue of fact about whether the schedules are lost or never existed, and thus, about whether the NCSLTs ever obtained ownership of the Plaintiffs' loans.

Further, the spreadsheets produced do not match the description of the schedules in the Pool Supplements. For example, the "Deposit and Sale Agreement" for "The National Collegiate Student Loan Trust 2005-3" states that seller NCF was selling, and purchaser NCSLT 2005-3 was purchasing, "the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A." Dkt. #238, Ex. 19 at P&F 1984. The Pool Supplement Bank One, N.A. included in the Affidavit and Verification of Account with that Deposit and Sale Agreement, was obtained from the SEC's website in 2011. *Id*. at P&F 1996. That Pool Supplement states that it effectuates the sale of "each student loan set forth on the attached *Schedule 1*" **from BankOne, N.A.** to NCF. *Id*. (emphasis added). But the referenced schedules are not the same. More importantly, the spreadsheet that Defendants produced and allege to be that Schedule 1, LENDER_ROSTER _ALL_IN.xls, includes the names of numerous banks including Bank One, N.A., but also from Bank of America, Sun Trust Bank and others. *See* Dkt. #350, Ex. 10.[17] That cannot be the "schedule" described in the Pool Supplement, because it identifies loan originators other than BankOne, N.A. Further, the spreadsheet is not named "schedule," it does not appear to be a transfer of loans from a single bank to NCF, and the metadata and hash value indicate that it is likely not authentic. This is sufficient proof that issues of fact exist which preclude summary judgment.

Plaintiffs also submit BPA's AES Audit as additional evidence that the NCSLTs do not have proof of assignment of Plaintiffs' loans. Dkt. #350, Ex. 5. Upon a review of a statistically significant sample size of NCSLTs accounts, BPA's auditors found that:

---

[17] A native copy of the Excel spreadsheet has been provided to the Court. *See* Dkt. #366. On that spreadsheet, the sheet titled "Other Rosters" reveals that the "Lender_Name" column includes the names of numerous banks other than BankOne, N.A. There are over 60,000 rows on that sheet. There is a separate sheet that has over 40,000 rows identifying loans from several alleged originators. It is highly unlikely that BankOne N.A. provided, created or reviewed a list of borrower loan information that includes loans originated by other banks, and this inference should be resolved in Plaintiffs' favor for purposes of NCSLTs' motion.

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 25 (Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2

> Assignments were not present in any of the [NCSLT] files provided by [AES] and [AES] did not indicate if an Assignment existed elsewhere. Based on representations made by PHEAA, it is likely that the Assignments do not exist.

3

AES Audit at 17. They also found that AES did not maintain adequate access control to its

4

computerized loan account records system, COMPASS, and that AES did not know the names of

5

persons or their employers that had access to the COMPASS system.

6

Plaintiffs have also submitted the findings of a CFPB investigation, in which the CFPB

7

found that TSI Affiants did not have the personal knowledge they claimed to have and that TSI

8

does not have proof of assignment of the loans to the NCSLTs. Because TSI did not admit or

9

deny the CFPB's finding or the allegations in the Consent Order, it cannot now deny the CFPB

10

findings contained in the Consent Order. *See Ives v. Ramsden*, 142 Wn. App. 369, 379 n.4, 174

11

P.3d 1231, 1236 (2008) (party to consent order that states in the order that they "neither admit

12

nor deny the findings or conclusions" cannot later deny allegations and conclusions in the order).

13

The NCSLTs' argument that Plaintiffs have not raised an issue of fact regarding whether the

14

schedules are lost or never existed accordingly fails.

15
16

> **4.**     **The NCSLTs' argument that the TSI Consent Order is not admissible ignores binding precedent and relies on distinguishable out-of-circuit cases.**

17

The Court "may take judicial notice of court filings and other matters of public record."

18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Under Fed. R.

19

Evid. 803(8)(A)(iii) "[a] record or statement of a public office" that "sets out…factual findings

20

from a legally authorized investigation" is admissible. As Judge Lasnik recently explained

21

regarding an OCC consent order, "[t]he OCC is a public office, and the consent order sets out the

22

OCC's factual findings. The OCC consent order therefore fulfills [the] requirement of [Fed. R.

23

Evid. 803(8)(A)(iii)] and is not inadmissible hearsay." *United States v. Thompson*, No. CR19-

24

159-RSL, 2022 U.S. Dist. LEXIS 101558, at *11 (W.D. Wash. June 7, 2022). The same is true

25
26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 26
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1    of the CFPB Consent Order here. The Consent Order contains the factual findings of the CFPB

2    resulting from a legally authorized investigation, and is admissible.

3        *Ford v. Midland Funding, LLC*, 264 F. Supp. 3d 849, 856 (E.D. Mich. 2017), is

4    analogous to the case here and the same result is warranted. In *Ford*, on a motion to compel

5    arbitration, the trial court considered the findings in a CFPB consent order, and the findings of

6    the OCC in a separate consent order related to the defendants' collection practices. *Id*. Following

7    a "summary-judgment-like standard," the court considered the consent order to determine

8    whether the defendant's collection practices "have included procuring and submitting misleading

9    or false business records." *Id*. at 857. The court found that the consent orders created an issue of

10   fact relative to the defendant's collection practices that precluded compelling arbitration without

11   an evidentiary hearing. *Id*. at 859. An evidentiary hearing—a trial on the claims and issues—is

12   also warranted here: the findings in the TSI Consent Order create issues of fact about whether the

13   Defendants violated the CPA by submitting the TSI Affidavits in state court collection lawsuits,

14   in which they claimed that the affiants had personal knowledge that the NCSLTs had the right to

15   collect on Plaintiffs' loans.

16       The cases cited by the NCSLTs are not binding on this Court and are distinguishable

17   from this case, in any event. The NCSLTs rely on three cases from other jurisdictions for the

18   proposition that the CFPB Consent Order "is inadmissible and cannot create an issue of fact."

19   Dkt. #369 at 30. However, the NCSLTs' reliance on *Lipsky v. Commonwealth United Corp.*, 551

20   F.2d 887, 893 (2d Cir. 1976), is misplaced. In *Lipsky*, the "[p]laintiff [did] not dispute that the

21   consent judgment, itself, or the SEC complaint [was] inadmissible." *Id*.  The cited portion of

22   *Lipsky* is therefore dicta. The court there did rule that pursuant to Fed. R. Evid. 410 "neither a

23   complaint nor references to a complaint which results in a consent judgment" could be cited in

24   the facts of a pleading because they were immaterial. *Id*. at 893. But, as courts in the Second

25   Circuit have repeatedly explained, *Lipsky* should be read very narrowly and it does not stand for

26

the broad proposition that a party cannot cite as evidence the findings of a legally authorized

government investigation. *See In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 621-22 (S.D.N.Y.

2014); *see also Hirsch v. Complex Media, Inc.*, 2018 U.S. Dist. LEXIS 209701, at *28 (S.D.N.Y.

Dec. 10, 2018) (compiling cases). No court in this Circuit has adopted *Lipsky's* outcome or

reasoning regarding the admissibility of consent orders under Fed. R. Evid. 410.

  *Benner v. Bank of Am.*, *N.A.*, 917 F. Supp. 2d 338, 366, n.8, 10 (E.D. Pa. 2013), and

*Mendez v. Bank of Am. Home Loans Servicing*, L.P., 840 F. Supp. 2d 639, 645, 658-59

(E.D.N.Y. 2012), are also distinguishable. The *Benner* court relied on *Mendez* to reach its

conclusion that the plaintiff could not rely on an FTC consent order to support an allegation of

wrongdoing. *Benner*, 917 F. Supp. at 366, n.8. The *Mendez* court, ruling that the plaintiffs in that

case could not rely on the FTC consent order, explained that the consent order stated that it was a

"settlement of disputed claims without any finding or stipulation of wrongdoing." *Mendez*, 840

F. Supp. 2d at 658. *Mendez* based its ruling on its finding that the consent order stated,

"[d]efendants have not admitted any of the allegations of wrongdoing set forth in the Complaint,

and entry of this Order is not an admission of any such allegations of wrongdoing or violation of

law." *Id*.

  The TSI Consent Order and Stipulation and Consent to the Issuance of a Consent Order

("Stipulation") are drastically different than the consent orders in *Benner* and *Mendez*. First,

nowhere in the TSI Consent Order or the Stipulation does it state that the Consent Order is a

settlement of disputed claims. *See* Dkt. #61 at Exs. A, B. Rather, TSI states in the Stipulation that

it entered into the Consent Order "in the interest of *compliance* and resolution of the matter, and

without admitting or denying any wrongdoing." Dkt. 61, Ex. B at 1 (emphasis added). TSI,

unlike the defendant in *Mendez*, entered into the TSI Consent Order to comply with the CFPA

and explicitly did not deny wrongdoing. TSI agreed in the Stipulation:

  [T]he facts described in Section V of the Consent Order will be taken as true and
  be given collateral estoppel effect, without any further proof, in any proceeding

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1

before the [CFPB], or in any subsequent civil litigation by the [CFPB] to enforce
the Consent Order.

2

3

*Id.* at 2, ¶6. TSI also waived its right to seek review of the Consent Order, to challenge "the filing

4

of proposed findings of fact and conclusions of law" or to "challenge or contest the validity of

5

the Consent Order." *Id.* at 3-4, ¶¶c. d., f. These differences are material and make the outcomes

6

and reasoning of *Benner* and *Mendez* distinguishable from the facts in this case and therefore

7

irrelevant and unpersuasive.

8

**5.    Defendants' argument that they can prove they own the loans is an attempt to deflect attention from the relevant issues.**

9

The NCSLTs go to great lengths in their summary judgment motion to prove their

10

ownership of the loans. They now argue that the "[l]oan schedules are of course not the *sole* and

11

*exclusive* evidence of a Trust's ownership of a loan." Dkt. #369 at 27 (emphasis in original). This

12

is an attempt to deflect attention away from the real issue – their agents' misrepresentations and

13

the unfair collection practices they employed. This Court and the Ninth Circuit have both ruled

14

that if the Plaintiffs can establish the allegations in their Complaint and Second Amended

15

Complaint that the Generic Affidavits the NCSLTs use to collect are false or misleading or that

16

the schedules are lost, Plaintiffs can establish the first three elements of their standalone CPA

17

claims. *See* Dkt. #51 at 2-3, 5; Dkt. #118 at 14.

18

Even if proving they own the loans could somehow cure the NCSLTs' unfair and/or

19

deceptive misrepresentations, issues of fact remain regarding the NCLSTs' ability to prove they

20

were assigned the loans. As already discussed, the evidence and expert opinion show that the

21

NCSLTs do not have originals or copies of the schedules that purportedly list the loans each

22

originating lender purportedly sold to NCF that were supposed to be attached to the Pool

23

Supplements. *See supra* at 14-15, 24.  While the NCSLTs argue that because they hold the loan

24

origination documents and copies of signed credit agreements they have sufficient proof of

25

assignment, they provide no citation to a legal authority supporting this contention. Nor can they.

26

Their contention is contrary to Washington law. *See MRC Receivables Corp. v. Zion*, 152 Wn.

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 29
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

App. 625, 630-31, 218 P.3d 621, 623-24 (2009) (quoting RCW 4.08.080 which requires written proof of assignment from the assignor).

Further, the "evidence" that the NCSLTs submitted from Mr. Wilbert, upon which they heavily rely, is inadmissible hearsay. Her declaration contains the same flaws as those that exist in the Generic Affidavits. She testifies that she received the information in her declaration from unnamed and unidentifiable sources, does not attach the documents she seeks to authenticate, and has not provided the required information to authenticate them.

Critical portions of Mr. Luke's declaration are also inadmissible, and his testimony is unreliable. Very recently, a district court in this circuit found a substantially similar declaration from Mr. Luke could not prove assignment of student loans from the originating bank to NCF because there was no admissible evidence proving the alleged assignment; therefore, the plaintiff prevailed on his FDCPA claim against TSI. *See Lizarraga-Davis v. Transworld Sys.*, No. 18-cv-04081-BLF, 2022 U.S. Dist. LEXIS 126224, at *21 (N.D. Cal. July 15, 2022). In *Lizarraga-Davis*, the plaintiff sued TSI under the FDCPA alleging that TSI violated portions of 15 U.S.C. §1692e of the FDCPA when it sued him without proof of assignment of his student loan from the originating bank to NCSLT 2006-4. *Id*. at *10. On cross motions for summary judgment, Mr. Luke provided a declaration substantially similar to the one filed in support of the NCSLTs' motion. *See* Dkt. ##373-75. His declaration in *Lizarraga-Davis* included a Pool Supplement and Deposit and Sale Agreement that he claimed evidenced the transfer of a student loan from the originating bank to NCF and the subsequent transfer from NCF to NCSLTS 2006-4. *Id*. He also attached to his declaration what he alleged was a copy of the origination documents. *Id*. But he did not include with his declaration the "attached Schedule 1" referenced in the Pool Supplement. Instead, as he did here, he referenced what he claimed to be a redacted "excerpt" of the schedule. *See Id*. at 52, *and* Dkt. #373 at 6, ¶g (citing Dkt. #161-4) ("Information regarding the Plaintiffs' Loans has been excerpted from digital Excel files constituting the schedules,

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 30 (Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1    reformatted for ease of display, and printed on standard-sized paper for the purposes of this

2    Declaration."). But, as the Court pointed out in *Lizarraga-Davis*, documents created in

3    anticipation of litigation are not admissible. *Id*. at 25. That is because they are "lacking in

4    trustworthiness." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1036-37 (9th Cir. 1981).[18]

5           The "schedule" excerpt attached to Mr. Luke's testimony here was also created in

6    anticipation of litigation, so Mr. Luke's testimony about it similarly lacks trustworthiness and is

7    therefore inadmissible, but his testimony is untrustworthy and inadmissible for other reasons as

8    well. During the pendency of this action, Mr. Luke's testimony as a records custodian was

9    excluded on a motion for summary judgment in *National Collegiate Student Loan Trust 2007-2*

10   *v. Osure Brown and Tommy Brown*, King Co. Sup. Ct. No. 19-2-09402-8. The court, granting a

11   defendant's motion for summary judgment, found that Mr. Luke's testimony was unreliable

12   because it was not based on his own personal knowledge but relied on information from other

13   people. Leonard Decl. Ex 9 at 26:18-28:7.[19] [20] The Court noted that "Mr. Luke's [] affidavit tries

14   to carefully and cautiously tailor what they know - - what he knows, and the court finds it very

15   interesting that Mr. Luke's declaration - - or affidavit … it's very artfully crafted in very

16   interesting language." *Id*. at 27:9-18. The court also found Mr. Luke's testimony to be unreliable

17   because the records he claimed he could authenticate were printed by his employer from AES's

18   server, and he is not a custodian of records for AES. *Id.* at 28:1-7. Further, the court commented,

19   "more probable that not, [Mr. Luke] is not trained and has no knowledge of the documents

20   retention policies for Bank of America, which is where the loans originated from." *Id*. at 28:8-11.

---

[18] On September 27, 2022, the District Court in *Lizarraga-Davis* denied TSI's Motion for Reconsideration of its summary judgment order. *See Lizarraga-Davis v. Transworld Systems, Inc.,* No. 18-cv-04081-BLF (N.D. Cal. Sept. 27, 2022), Dkt. #83.

[19] PLA_003661-63.

[20] The Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC*., 442 F.3d at 746 n.6; *see also Ashland Inc. v. Long, No. C10-5889BHS*, 2011 U.S. Dist. LEXIS 50915, at *10 (W.D. Wash. May 12, 2011) (citing *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)(2)) (taking judicial notice of a report of proceedings); these records are also admissible under Fed. R. Evid. 803(8).

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 31
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4

Ultimately, excluding his testimony, the Court found "there's no way to verify … that the documents upon which … Mr. Luke is relying … are actually the documents that they were purported to be and these … are actually the loans that are purported to be transferred to the trust at this point in time." *Id*. at 28:12-18.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

A careful review of Mr. Luke' declaration testimony submitted in support of the NCSLTs' motion reveals that it is similarly conclusory and therefore inadmissible. Affidavits in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Conclusory assertions not based on personal knowledge are not admissible. *Case v. Bridgestone/Firestone*, No. 93-16771, 1995 U.S. App. LEXIS 5176, at *4 (9th Cir. Mar. 15, 1995). Mr. Luke states that the Pool Supplements relating to the Plaintiffs' loans were "received from [First Marblehead Corporation] or its subsidiaries" on May 14, 2012. But he is not a records custodian for First Marblehead Corporation and his testimony reveals he does not know which entity, be it First Marblehead Corporation or its subsidiaries, actually delivered the Pool Supplements. Further, it is clear from the face of the Pool Supplements to which he is referring that most of the Pool Supplements attached to his declaration were obtained from the SEC's Edgar Archive website in 2011. *See* Dkt. #375, Ex. D. While Plaintiffs do not challenge the authenticity of the documents obtained from the government's website, they do challenge Mr. Luke's knowledge regarding the transfer of loan records. Nowhere in Mr. Luke's declaration does he explain why First Marblehead Corporation or its subsidiaries did not have the original copies of the Pool Supplements. *See generally* Dkt. #373. Mr. Luke's declaration, as his testimony has been in similar other cases, is artfully and deceptively worded and is not reliable. It is telling that Mr. Luke is always the person called upon to authenticate the records of AES, First Marblehead Corporation and its

25
26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 32
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1   subsidiaries, and not the originators of the loans who allegedly actually transferred the loans to

2   NCF.

3       Finally, the declaration of Jens Meyer is also inadmissible. Mr. Meyer declares that

4   Cognition (formerly First Marblehead Corporation) is not the records custodian for the NCSLTs.

5   Dkt. #371 at 3, ¶5. He, like Ms. Wilbert, did not attach to his declaration the records he seeks to

6   authenticate. *See* Dkt. #371. Thus, his declaration is nothing more than inadmissible hearsay

7   about the content of those documents. While he states that Cognition has an MS Access Database

8   that contains loan information that he searched to obtain the information in his declaration, Dkt.

9   #371, he provides no screenshots of the Database to support his testimony, and the information it

10  contains was not provided to the Plaintiffs for inspection or produced in discovery. Nor is it

11  attached as one or more exhibits to his declaration. He does not allege that the MS Access

12  Database contains the schedules that would prove NCSLTs' claim that it received assignments of

13  the Plaintiffs' loans, and no schedules are attached to his declaration. He makes no showing that

14  he has personal knowledge of the "facts" to which he testifies.

15  Further, Mr. Meyer provides no explanation for why First Marblehead and its subsidiaries

16  allegedly provided TSI Pool Supplements they obtained from the SEC's Edgar website. He does

17  not testify that the records he accessed were provided to TSI or TSI's predecessor, NCO. He

18  does not say that the database contains the referenced schedules. He specifically states that he is

19  not a records custodian for the NCSLTs. Mr. Meyer's testimony in fact has no value when

20  seeking to prove assignment as he is not a representative of the assignor. *See MRC*, 152 Wn.

21  App. at 630-31 (RCW 4.08.080 requires written proof of assignment from the assignor). For all

22  of these reasons, Mr. Meyer's declaration testimony is inadmissible hearsay and should not be

23  considered. Defendants' ends-justify-the-means approach to collection and determining what

24  constitutes "unfair or deceptive conduct under the CPA" must fail. This case concerns whether

25  the NCSLTs, through their agents TSI and P&F, misrepresented that they had proof of

26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 33
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

assignments of loans they do not have. It also concerns false Generic Affidavits signed at a rate of 40 per day to obtain default judgments. The NCSLTs and their agents are not permitted to make false and misleading statements to collect on debt, and they did just that. At a minimum, there are genuine issues of fact on this issue that require the denial of the NCSLTs' motion.

### B.    The Alleged Unfair and Deceptive Acts Occurred in Trade or Commerce

To establish the second element of their CPA claims, Plaintiffs must show that the unfair or deceptive acts and/or practices occurred in "trade or commerce." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 312, 858 P.2d 1054 (1993).

#### 1.    Under the law of the case and the established facts, issues of material fact exist regarding whether the NCSLTs' unfair or deceptive conduct occurred in trade or commerce.

The Ninth Circuit ruled that Plaintiffs can establish the second element of their standalone CPA claim if they can show that TSI is a collection agency. Dkt. #51 at 5 ("The complaint alleges that TSI is a debt collection agency, so its activities occurred within trade or commerce for the purpose of the CPA.") TSI admits that it is a licensed collection agency. Dkt. #141 at 4 (TSI's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint.) TSI acts with the authority of the NCSLTs pursuant to the Default Services Agreement and collects on defaulted NCSLT accounts. *See* Dkt. #373 at 2, ¶5; Dkt. #375 at 44. The NCSLTs, through the Default Services Agreement, dictate and direct TSI's "Post Default Minimum Work Standards" and "Litigation Minimum Work Standards." Dkt. #375 at 81-82, 103-116.

The NCSLTs dictate the specific work that TSI does and how TSI must do it. The NCSLTs require TSI to obtain credit reports for consumers, send collection letters, make collection calls, skip trace, track down co-borrowers, set up payment plans, and collect from consumers. *Id.* at 82-85. The NCSLTs dictate the hours that TSI must place telephone calls to borrowers, the hours and days TSI must work collecting NCSLT accounts, TSI's staffing requirements for NCSLT accounts, and the time which TSI must spend for its duties as NCSLTs'

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 34
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
3
4
5
6

agent. *Id.* at 78-93, 103-121. Most importantly here, the NCSLTs require TSI to provide affidavits and testimony in litigation. *Id*. at 47, 108. The NCSLTs require TSI to "maintain a process for pre-populating and executing Litigation Account affidavits." *Id*. at 108. The NCSLTs are aware of the CFPB action against TSI and the CFPB's findings, and continue to use TSI as their loan servicer. *See In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d 116, 128 (Del. Ch. 2020).

7
8
9
10
11
12
13

Here, the alleged unfair and deceptive acts or practices occurred in the course of TSI's debt collection activities, which are entirely controlled by the NCSLTs. Because the NCSLTs are liable for the actions of their agent TSI and control TSI's collection activities, *see supra* at 20, the unfair and/or deceptive conduct alleged by the Plaintiffs occurred in trade or commerce under the law of the case. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case.)

14
15

### 2.    The NCSLTs' argument that the NCSLTs do not fit within the rubric of "trade or commerce" is a misstatement of law and fact.

16
17
18
19
20
21
22
23
24
25

The NCSLTs incorrectly argue that Plaintiffs cannot establish the second element because the "Trusts do not fit within [the] rubric [of trade or commerce], as they do not sell any "assets or services" and do not engage in "commerce" as defined under the statute." Dkt. #369 at 16. The NCSLTs define "commerce" as "the exchange or buying and selling of commodities especially on a large scale and involving transportation from place to place." *Id*. (citing *A.W.R. Const., Inc. v. Washington State Dep't of Lab. & Indus.*, 152 Wn. App. 479, 486, 217 P.3d 349 (2009). They argue because they do not "sell any assets or services," and do not engage in commerce, which they allege requires them to "sell commodities," they do not act in trade or commerce. But the case they cite to define "commerce" is not even a CPA case, and the CPA "shall be liberally construed that its beneficial purposes may be served." RCW 19.86. 920. The

26

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 35
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1
2
cases cited by the NCSLTs purporting to give them an exclusion from CPA liability for their and their agents' unfair and/or deceptive acts and practices are therefore irrelevant.

3
4
5
6
7
8
9
10
11
12
13
Further, the test is whether the conduct in question occurred in trade or commerce. In *Panag*, Washington's Supreme Court made clear that debt collection in all its forms occurs in "trade or commerce" and is regulated under the CPA. The court explained, "[t]he deceptive use of traditional debt collection methods to induce someone to remand payment of an alleged debt is precisely the kind of 'inventive' unfair and deceptive activity the CPA was intended to reach." *Panag*, 166 Wn.2d at 49. The court explained that while the collection activity at issue was not regulated under Washington's Collection Agency Act or the FDCPA, and therefore was not a *per se* violation of the CPA, conduct regulated by the CPA is broader: "[t]hat the collection of subrogation claims is beyond the scope of the CAA does not mean deceptive subrogation collection practices are exempt from suit under the *broader scope* of the CPA." *Id*. at 54 (emphasis added).

14
15
16
17
18
19
20
21
22
Here, the same is true. The NCSLTs are not immune from liability because they are not debt collectors under the FDCPA or collection agencies under the CAA. That is the exact opposite of what the Washington Supreme Court directed in *Panag*. Further, to the extent the NCSLTs argue that there must be some consumer transaction to give rise to their liability under the CPA, that too is incorrect: Washington's Supreme Court long ago expressly rejected the argument that the "CPA only applies to unfair acts where there is a consumer transaction involving the sale of goods and services." *Fisons Corp.*, 122 Wn.2d at 312. The NCSLTs' arguments that their and their agents' conduct did not occur in "trade or commerce" are without merit.

23
24
25
The NCSLTs also argue that because the alleged wrongdoing occurred in litigation, it did not occur in "trade or commerce." Dkt. #369 at 17. But this argument was expressly rejected by the Ninth Circuit in its ruling on the Plaintiffs' successful appeal of the District Court's order

26

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 36
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

dismissing their Complaint. Dkt. #51 at 5. The Ninth Circuit acknowledged that one of the alleged wrongs for which the Plaintiffs seek recovery was the use of false affidavits in the "collection actions." Dkt. #51 at 2. The Ninth Circuit agreed with the Plaintiffs that the TSI Consent Order "make it plausible that the affidavits filed by the Defendants in the collection actions against the Plaintiffs were false[,]" and upheld the dismissal of Plaintiffs' per se CPA claims based on violations of the Washington's Collection Agency Act. *Id*. at 3-5. But the Court held that Plaintiffs' standalone CPA claims survived and that the Plaintiffs plausibly alleged facts supporting the "trade or commerce" element because "TSI is a debt collection agency, so its activities occurred within trade or commerce for the purposes of the CPA." Dkt. #51 at 3.

### F. Plaintiffs Have Submitted Evidence Which Shows There Are Issues of Fact Regarding the Last Two Elements of Their Standalone CPA Claims

To establish the last two elements of their CPA claims, injury and causation, Plaintiffs must show that Defendants' "deceptive act[s] or practice[s] proximately caused injury to [Plaintiffs'] 'business or property.'" Dkt. #118 at 16 (quoting *Panag*, 166 Wn.2d at 63-64). "Because the CPA addresses "injuries" rather than "damages," quantifiable monetary loss is not required." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014). "Even if the recipient of a deceptive demand for payment was never induced to make that payment, he or she may have been injured in other ways, including by incurring "'expenses for experts, interpreters, transcribers, attorneys, and its own employees' during [an] investigation." Dkt. #118 (quoting *Panag*, 166 Wn.2d at 64 (quoting *State Farm Firs & Ca. Co. v. Huynh*, 92 Wn. App. 454, 468, 962 P.2d 854 (1998)). "A CPA plaintiff can establish injury based on unlawful debt collection practices even where there is no dispute as to the validity of the underlying debt, and the injury element can be met even where the injury alleged is both minimal and temporary." *Cabage v. Nw. Tr. Servs.*, No. 45953-1-II, 2015 Wash. App. LEXIS 2942, at *25 (Ct. App. Dec. 1, 2015) (citing *Frias*, 181 Wn.2d at 431).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Ninth Circuit was clear: Plaintiffs can establish the last two elements of their standalone CPA claims by showing that "money has been collected from them through implementation of a writ or garnishment or otherwise." Dkt. #51 at 7. Plaintiffs have presented evidence that the Kims were garnished as a result of the ill-gotten default judgments, that Ms. Hoffman paid collection fees to P&F while on a payment plan, that Ms. Hoffman and the Kims paid attorneys to investigate the NCSLTs' ownership of the loans, and that all of the Plaintiffs incurred expenses during their investigation of the Defendants' loan collection practices and claims of ownership of the loans, which occurred prior to instituting any CPA action or appearing in the actions brought against them. This evidence meets the Plaintiffs' obligation to show they suffered injury caused by Defendants' unfair and/or deceptive acts. *See Banuelos v. TSA Wash., Inc.*, 134 Wn. App. 607, 613–615 141 P.3d 652 (2006) (awarding $4.27 in damages for lost use of funds plus $12.81 in treble damages under the CPA); *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 432, 334 P.3d 529, 538 (2014); *Panag*, 166 Wn.2d at 62 (time spent investigating validity of alleged debt constitutes injury, but not time spent consulting attorney to institute a CPA claim); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 563–64, 825 P.2d 714 (1992) (time spent away from business due to deceptive conduct constitutes injury, but noting that time spent defending against claims would not support allegations of CPA violations as counterclaims); *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 297–99, 38 P.3d 1024 (2002) (delay in providing refund); *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854–55, 792 P.2d 142 (1990) (loss of use of property); *Webb v. Ray*, 38 Wn. App. 675, 688 P.2d 534 (1984) (same).

At a minimum, as with the first three required CPA elements, the Plaintiffs have shown that issues of fact exist as to whether the fourth and fifth elements of their CPA claims are met. Accordingly, Defendants' motion to dismiss the Plaintiffs' CPA claims should be denied.

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 38 (Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1

### G.    The Injunctive Relief Plaintiffs Request Against the NCSLTs Is Permitted Under the CPA

2

3    The NCSLTs again misconstrue Washington law when they argue that the Plaintiffs'

4 requested injunctive relief is not permitted. Dkt. #369 at 34-36. The trial court is vested with

5 broad discretion to fashion injunctive relief appropriate to the facts, circumstances, and equities

6 before it. *Brown v. Voss*, 105 Wn.2d 366, 373, 715 P.2d 514 (1986). This is especially true under

7 the CPA. Washington's Supreme Court has unequivocally stated that the CPA gives the Court

the power required to end deceptive practices:

8

9    If each consumer victim were limited to injunctive relief tailored to his own individual interest, *the fraudulent practices might well continue unchecked*….

10    Indeed, in many private consumer protection cases the damage has already been done to the particular individual plaintiff at the time the lawsuit is filed, making ineffectual an injunction limited solely to the protection of the individual plaintiff.

11

12                    *      *      *

13

14    We hold that under RCW 19.86.090 an individual may seek and obtain an injunction that would, besides protecting his own interests, protect the public interest.

15 *Hockley v. Hargitt*, 82 Wn.2d 337, 350-51, 510 P.2d 1123 (1973)

16    Here, the alleged unfair conduct is the Defendants' proclivity to misrepresent facts to

17 individuals and to courts in furtherance of their efforts collect on the loans that they allege they

18 own. Courts are provided board discretion to fashion remedies when the party offending the CPA

19 "has demonstrated little understanding or regard for Washington law." *Klem*, 176 Wn.2d at 796.

20 Plaintiffs have provided evidence that draws into question the NCSLTs' right to collect on the

21 loans they claim to own. If the NCSLTs do not have written proof of assignment from the

22 assignor, their collection is unfair and unlawful. *See MRC*, 152 Wn. App. at 630 (RCW

23 4.08.080 authorizes an assignee of a chose in action to file suit in its own name but requires such

24 an assignment to be in writing).[21] Churning out up to 40 Generic Affidavits a day per employee

25

---

26 [21] RCW 4.08.080 provides: "Any assignee or assignees of any judgment, bond, specialty, book account, or other chose in action, for the payment of money, by assignment in writing, signed by the person authorized to make the

PLAINTIFFS' RESPONSE TO TRUST DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 39 (Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1   that are misleading or outright false, is unfair. The NCSLTs' belief that they are allowed to do

2   this because of their ends-justify-the-means view of their business, is the unfair conduct that the

3   Court is faced with crafting injunctive relief to stop. If the NCSLTs do not have proof of

4   assignment, they should be ordered to stop collecting from Washington borrowers whose loans

5   they allege they own. If the NCSLTs can prove which loans were assigned to NCF, then it may

6   be that the more appropriate injunctive relief is to preclude them from suing in Washington

7   Court's using affidavits signed by TSI employees.  Perhaps the most appropriate injunctive relief

8   is to require them to comply with Washington's laws, not make misrepresentations to courts and

9   the people the laws are meant to protect. *See Klem*, 176 Wn.2d at 796.

10                            **V.  CONCLUSION**

11       The Plaintiffs have demonstrated that at a minimum, issues of fact exist concerning

12   whether they are entitled to recover on their claims against the NCSLTs. The Court should deny

13   the NCSLTs' motion for summary judgment in its entirety.

14

15

16

17

18

19

20

21

22

23

24

25

26

---

same, may, by virtue of such assignment, sue and maintain an action or actions in his or her name, against the
obligor or obligors, debtor or debtors, named in such judgment, bond, specialty, book account, or other chose in
action, notwithstanding the assignor may have an interest in the thing assigned."

PLAINTIFFS' RESPONSE TO TRUST
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 40
(Case No. C18-1132 TSZ)

Leonard Law, PLLC
6040 California Ave. SW, STE C
Seattle, Washington 9811
Phone: 206-486-1176
Fax: 206-458-6028

1

2                DATED: October 10, 2022.

3    *Attorneys for Plaintiffs*:

4    LEONARD LAW, PLLC                    BERRY & BECKETT, PLLP

5     */s/ Sam Leonard*                     */s/ Guy Beckett*
6    Sam Leonard, WSBA #46498             Guy W. Beckett, WSBA #14939
     6040 California Ave. SW, STE. C      1708 Bellevue Avenue
7    Seattle, Washington  98136          Seattle, WA  98122
     Telephone:  (206) 486-1176          Telephone:  (206) 441-5444
8    Facsimile:  (206) 458-6028          Facsimile:   (206) 838-6346
9    E-mail:  sam@seattledebtdefense.com  E-mail:  gbeckett@beckettlaw.com

10   HENRY & DeGRAAF, P.S.               NORTHWEST CONSUMER LAW CENTER

11    */s/ Christina Henry*                */s/ Amanda Martin*
     Christina L. Henry, WSBA #31273     Amanda N. Martin, WSBA #49581
12   119 – 1st Ave. S., Ste. 500         936 North 34th Street, Suite 300
13   Seattle, WA  98104                  Seattle, WA 98103
     Telephone:  (206) 330-0595          Telephone:  (206) 805-0989
14   Facsimile:  (206) 400-7609          Facsimile:  (206) 805-1716
     E-mail:  chenry@HDM-legal.com       E-mail:  Amanda@NWCLC.org
15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE TO TRUST                    Leonard Law, PLLC
DEFENDANTS' MOTION FOR                      6040 California Ave. SW, STE C
SUMMARY JUDGMENT - 41                          Seattle, Washington 9811
(Case No. C18-1132 TSZ)                          Phone: 206-486-1176
                                                   Fax: 206-458-6028